# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

TIMOTHY KING, MARIAN ELLEN
SHERIDAN, JOHN EARL HAGGARD,
CHARLES JAMES RITCHARD, JAMES
DAVID HOOPER, and DAREN WADE
RUBINGH,

                     Plaintiffs,

     v.

GRETCHEN WHITMER, in her official
capacity as Governor of the State of
Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of
State, and the Michigan BOARD OF
STATE CANVASSERS,

                     Defendants.

CIVIL ACTION

No. 2:20-cv-13134-LVP-RSW

Hon. Linda V. Parker

## PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE

### EXPEDITED CONSIDERATION REQUESTED

Proposed Intervenor-Defendants DNC Services Corporation/Democratic
National Committee and Michigan Democratic Party ("Proposed Intervenors") seek
to participate as intervening defendants in the above-captioned lawsuit to safeguard
the substantial and distinct legal interests of themselves, their member candidates,
and their member voters, which will otherwise be inadequately represented in the
litigation. For the reasons discussed in the memorandum in support, filed
concurrently herewith, Proposed Intervenors are entitled to intervene in this case as

1

a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenors request permissive intervention pursuant to Rule 24(b).

Proposed Intervenors respectfully request that the Court set an expedited schedule regarding this motion to intervene to allow for their participation in any briefing schedules and hearings that are held. Otherwise, Proposed Intervenors' substantial constitutional rights are at risk of being severely and irreparably harmed, as described more fully in the memorandum in support of this motion.

Pursuant to Local Rule 7.1(a), counsel for Proposed Intervenors and for Plaintiffs had a telephonic conference on November 30, 2020, and Plaintiffs concur in the motion. Counsel for Defendants have provided their consent.

WHEREFORE, Proposed Intervenors request that the Court grant them leave to intervene in the above-captioned matter and to file their proposed motion to dismiss (Ex. 1).

Dated: November 30, 2020.                    Respectfully submitted,

                                             /s/ *Scott R. Eldridge*
                                             Scott R. Eldridge (P66452)
                                             MILLER CANFIELD
                                             One Michigan Avenue, Suite 900
                                             Lansing, Michigan 48933
                                             Telephone: (517) 483-4918
                                             eldridge@millercanfield.com

                                             Mary Ellen Gurewitz (P25724)
                                             CUMMINGS & CUMMINGS
                                             423 North Main Street, Suite 200
                                             Royal Oak, Michigan 48067
                                             Telephone: (248) 733-3405
                                             maryellen@cummingslawpllc.com

                                             Marc E. Elias (DC #442007)
                                             Jyoti Jasrasaria (DC #1671527)*
                                             PERKINS COIE LLP
                                             700 Thirteenth Street NW, Suite 800
                                             Washington, DC 20005
                                             Telephone: (202) 654-6200
                                             melias@perkinscoie.com
                                             jjasrasaria@perkinscoie.com

                                             William B. Stafford (WA #39849)*
                                             Jonathan P. Hawley (WA #56297)*
                                             PERKINS COIE LLP
                                             1201 Third Avenue, Suite 4900
                                             Seattle, Washington 98101
                                             Telephone: (206) 359-8000
                                             wstafford@perkinscoie.com
                                             jhawley@perkinscoie.com

Seth P. Waxman (DC #257337)
Brian M. Boynton (DC #483187)*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 663-6000
seth.waxman@wilmerhale.com
brian.boynton@wilmerhale.com

John F. Walsh (CO #16642)*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, Colorado 80202
Telephone: (720) 274-3154
john.walsh@wilmerhale.com

*Counsel for Proposed Intervenor-
Defendants DNC Services
Corporation/Democratic National
Committee and Michigan Democratic
Party*

*Admission forthcoming

## CERTIFICATE OF SERVICE

Scott R. Eldridge certifies that on the 30th day of November 2020, he served

a copy of the above document in this matter on all counsel of record and parties via

the ECF system.

/s/ *Scott R. Eldridge*
Scott R. Eldridge

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TIMOTHY KING, MARIAN ELLEN SHERIDAN, JOHN EARL HAGGARD, CHARLES JAMES RITCHARD, JAMES DAVID HOOPER, and DAREN WADE RUBINGH, | CIVIL ACTION |
| | No. 2:20-cv-13134-LVP-RSW |
| Plaintiffs, | Hon. Linda V. Parker |
| v. | |
| GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan, JOCELYN BENSON, in her official capacity as Michigan Secretary of State, and the Michigan BOARD OF STATE CANVASSERS, | |
| Defendants. | |

# PROPOSED INTERVENOR-DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO INTERVENE

i

## STATEMENT OF ISSUES PRESENTED

I.    Whether Proposed Intervenor-Defendants are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2).

    Proposed Intervenor-Defendants' Answer:  Yes.

    Plaintiffs concur in the relief requested.

II.   Whether, in the alternative, Proposed Intervenor-Defendants should be permitted to intervene under Rule 24(b).

    Proposed Intervenor-Defendants' Answer:  Yes.

    Plaintiffs concur in the relief requested.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Federal Rule of Civil Procedure 24

*Blount-Hill v. Zelman*, 636 F.3d 278 (6th Cir. 2011)

*Stupak-Thrall v. Glickman*, 226 F.3d 467 (6th Cir. 2000)

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997)

# I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendants DNC Services Corporation/Democratic National Committee ("DNC") and Michigan Democratic Party ("MDP," and together, "Proposed Intervenors") move to intervene as defendants in this lawsuit. Through this action, Plaintiffs seek to undo Michigan's lawful certification of the result of the presidential contest, based on nothing more than wild conspiracy theories, rank speculation, questionable evidence, and fundamentally flawed legal claims. Proposed Intervenors represent a diverse group of Democrats, including elected officials, candidates, members, and voters. Plaintiffs' requested relief—wholesale disenfranchisement of more than 5 million Michiganders—threatens to deprive Proposed Intervenors' individual members of the right to have their votes counted, undermine the electoral prospects of their candidates, and divert their limited organizational resources. Proposed Intervenors' immediate intervention to protect those interests is warranted.

Pursuant to Rule 24(c), a proposed motion to dismiss is attached as Exhibit 1.

# II.    BACKGROUND

## A.    The Election

On November 3, 2020, Michiganders voted in one of the most scrutinized elections in recent history, one that yielded record turnout amid an ongoing pandemic. Despite unprecedented levels of observation and supervision, tall tales of

1

phantom fraud have spread widely in the weeks since election day, including in Michigan, where President-elect Joe Biden prevailed by more than *150,000 votes*. *See 2020 Michigan Election Results*, Mich. Sec'y of State, https://mielections.us/election/results/2020GEN_CENR.html (Nov. 23, 2020). The *Detroit Free Press* reported that "Michigan has been no stranger to election-related falsehoods." *Clara Hendrickson* et al., *Michigan Was a Hotbed for Election-Related Misinformation: Here Are 17 Key Fact Checks*, Detroit Free Press (Nov. 9, 2020), https://www.freep.com/story/news/local/michigan/detroit/2020/11/09/misinformation-michigan-16-election-related-fact-checks/6194128002. Indeed, several pieces of misinformation that have already been debunked, *see id*, make an appearance in Plaintiffs' amended complaint. *See* First Am. Compl. for Declaratory, Emergency, & Permanent Injunctive Relief ("Am. Compl."), ECF No. 6.

Plaintiffs' allegations are rife with stories of fraud undertaken by election workers at TCF Center, where Detroit's absentee ballots were processed, but this impression could not be further from the truth. More than 100 Republican election challengers[1] observed the vote tabulation on election day, *see* Aff. of David Jaffe

---

[1] Election "challengers" are volunteers appointed by political parties or other organized groups who can observe the tabulation of absentee ballots and make challenges under certain circumstances. *See, e.g.*, Mich. Comp. Laws §§ 168.730, 168.733. Challengers are *not* permitted to "make a challenge indiscriminately," "handle the poll books . . . or the ballots," or "interfere with or unduly delay the work of the election inspectors." *Id.* § 168.727(3). "Election inspectors," by contrast, are

("Jaffe Aff.") ¶ 7 (attached as Ex. 2), and Donna MacKenzie, a credentialed challenger, attested that "there were many more Republican Party challengers than Democratic Party challengers" when she observed the count on November 4. Aff. of Donna M. MacKenzie ("MacKenzie Aff.") ¶ 6 (attached as Ex. 3).[2] David Jaffe, another credentialed challenger at TCF Center who observed the processing of ballots on November 2, 3, and 4, has attested to his "perception that all challengers had a full opportunity to observe what was going on and to raise issues with supervisors and election officials." Jaffe Aff. ¶ 10. Ms. MacKenzie further attested that "the ballot counting process was very transparent," that challengers "were given the opportunity to look at ballots whenever issues arose," and that "[t]here were more than enough challengers to have observers at each table." MacKenzie Aff. ¶¶ 4–5, 7.

---

the poll workers appointed by local clerks who perform the tabulation duties. *See id.* § 168.677.

[2] Proposed Intervenor-Defendant Michigan Democratic Party submitted the attached affidavits of David Jaffe, Donna MacKenzie, and Joseph Zimmerman along with its opposition to the plaintiffs' motion for preliminary relief in *Costantino v. City of Detroit*, No. 20-014780-AW (Mich. Cir. Ct. Nov. 11, 2020), another challenge to Wayne County's vote tabulation and election returns currently pending in state court. The court in that case credited the testimony offered in these affidavits in denying the plaintiffs' requested relief. *See Costantino v. City of Detroit*, No. 20-014780-AW, slip op. at 12 (Mich. Cir. Ct. Nov. 13, 2020) (attached as Ex. 12); *see also Costantino v. City of Detroit*, No. 355443, slip op. at 1 (Mich. Ct. App. Nov. 16, 2020) (denying motion for peremptory reversal and application for leave to appeal) (attached as Ex. 13); *Costantino v. City of Detroit*, No. 162245, slip op. at 1 (Mich. Nov. 23, 2020) (similar) (attached as Ex. 14).

While Mr. Jaffe and his fellow challengers—Democratic and Republican alike—"observed minor procedural errors by election inspectors," they "called those errors to the attention of supervisors, and were satisfied that the supervisors had corrected the error and explained proper procedure to the election inspectors." Jaffe Aff. ¶ 12. Indeed, Mr. Jaffe "spoke with several Republican challengers who expressed their view, and in a couple of cases their surprise, that there were no material issues in the counting." *Id*. Although Mr. Jaffe "received very few reports of unresolved issues from Democratic challengers," he "did receive many reports of conduct by Republican or" Election Integrity Fund ("EIF") "challengers that was aggressive, abusive toward the elections inspectors," and "clearly designed to obstruct and delay the counting of votes." Jaffe Aff. ¶ 13; *see also id.* ¶¶ 18, 20, 22–25, 30; MacKenzie Aff. ¶¶ 21–22. And although election officials attempted to maintain social distancing and other preventative measures to curb the potential transmission of COVID-19, Mr. Jaffe "observed that Republican and EIF challengers repeatedly refused to maintain the mandated distance from the elections inspectors." Jaffe Aff. ¶¶ 17–19. Consequently, some "Republican or EIF challengers were removed from the room after intimidating and disorderly conduct, or filming in the counting room in violation of the rules." *Id.* ¶ 24.

Mr. Jaffe concluded that "while some of the Republican challengers were there in good faith, attempting to monitor the procedure, the greater number of

Republican and EIF challengers were intentionally interfering with the work of the elections inspectors so as to delay the count of the ballots and to harass and intimidate election inspectors." *Id.* ¶ 25. Indeed, Joseph Zimmerman, a credentialed challenger on behalf of the Lawyers Committee for Civil Rights Under Law, observed Republican challengers "discussing a plan to begin challenging every single vote on the grounds of 'pending litigation'" and then "repeatedly challenging the counting of military ballots for no reason other than 'pending litigation.'" Aff. of Joseph Zimmerman ¶ 20 (attached as Ex. 4).

## B.   The Lawsuits

Despite widespread acknowledgement that no fraud occurred, *see, e.g.*, Nick Corasaniti et al., *The Times Called Officials in Every State: No Evidence of Voter Fraud*, N.Y. Times (Nov. 10, 2020), https://www.nytimes.com/2020/11/10/us/ politics/voting-fraud.html, various lawsuits have been filed in Michigan in an attempt to sow confusion and cast doubt on the legitimacy of the election—including lawsuits filed by Donald J. Trump for President, Inc. (the "Trump Campaign"), the campaign that Plaintiffs, as Republican presidential elector nominees, *see* Am. Compl. ¶ 24, are obligated to support. In the Trump Campaign's state court case, which featured many of the same claims now raised here, it sought an immediate cessation of the counting of absentee ballots based on allegations of insufficient oversight. *See* Verified Compl. for Immediate Declaratory & Injunctive Relief,

*Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ (Mich. Ct. Cl. Nov. 4, 2020) (attached as Ex. 5). The Michigan Court of Claims denied the Trump Campaign's emergency motion for declaratory relief, concluding that it was unlikely to succeed on the merits and that, even "overlooking the problems with the factual and evidentiary record," the matter had become moot because "the complaint and emergency motion were not filed until approximately 4:00 p.m. on November 4, 2020—despite being announced to various media outlets much earlier in the day." *Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ, slip op. at 5 (Mich. Ct. Cl. Nov. 6, 2020) (attached as Ex. 6). The Trump Campaign has since sought an appeal, *see* Mot. for Immediate Consideration of Appeal Under MCR 7.211(C)(6), *Donald J. Trump for President, Inc. v. Benson*, No. 355378 (Mich. Ct. App. Nov. 6, 2020) (attached as Ex. 7), but has failed to correct numerous filing defects as requested by the Michigan Court of Appeals three weeks ago, *see* Appellate Docket Sheet, *Donald J. Trump for President, Inc. v. Benson*, No. 355378 (Mich. Ct. App.) (attached as Ex. 8).

The Trump Campaign also filed a similar action in the U.S. District Court for the Western District of Michigan, *see* Compl. for Declaratory, Emergency, & Permanent Injunctive Relief, *Donald J. Trump for President, Inc. v. Benson*, No. 1:20-cv-01083-JTN-PJG (W.D. Mich. Nov. 17, 2020), ECF No. 1, in which Proposed Intervenors were granted intervention, *see Donald J. Trump for President,*

6

*Inc. v. Benson*, No. 1:20-cv-01083-JTN-PJG, slip op. at 5 (W.D. Mich. Nov. 17, 2020), ECF No. 20. After the court set a briefing schedule on Proposed Intervenors' motion to dismiss, *see id.* at 6; *see also* Proposed Intervenor-Defs.' Mot. to Dismiss, *Donald J. Trump for President, Inc. v. Benson*, No. 1:20-cv-01083-JTN-PJG (W.D. Mich. Nov. 14, 2020), ECF No. 10-3—which raised many of the same arguments that Proposed Intervenors now assert here, *see* Ex. 1—the Trump Campaign voluntarily dismissed its suit, *see* Notice of Voluntary Dismissal, *Donald J. Trump for President, Inc. v. Benson*, No. 1:20-cv-01083-JTN-PJG (W.D. Mich. Nov. 19, 2020), ECF No. 33.

Other challenges to Michigan's election procedures and results have been rejected as having no legal or factual merit. On election day, the Michigan Court of Claims denied an emergency motion to increase election oversight. *See Polasek-Savage v. Benson*, No. 20-000217-MM, slip op. at 3 (Mich. Ct. Cl. Nov. 3, 2020) (attached as Ex. 9). And on November 6, the Third Judicial Circuit Court for Wayne County rejected an EIF-backed effort to delay certification of that County's ballots:

> This Court finds that it is mere speculation by plaintiffs that hundreds or thousands of ballots have, in fact, been changed and presumably falsified. . . .
>
> A delay in counting and finalizing the votes from the City of Detroit without any evidentiary basis for doing so, engenders a lack of confidence in the City of Detroit to conduct full and fair elections. The City of Detroit should not be harmed when there is no evidence to support accusations of voter fraud.

*Stoddard v. City Election Comm'n*, No. 20-014604-CZ, slip op. at 4 (Mich. Cir. Ct. Nov. 6, 2020) (attached as Ex. 10).

MDP was granted intervention in another challenge to Wayne County's returns in the Third Judicial Circuit Court. *See Costantino v. City of Detroit*, No. 20-014780-AW, slip op. at 2 (Mich. Cir. Ct. Nov. 13, 2020) (attached as Ex. 11). On November 13, the court denied the plaintiffs' motion for preliminary injunction in that case. After discounting affidavits reporting vague allegations of suspicious conduct at TCF Center and concluding that the "[p]laintiffs' interpretation of events is incorrect and not credible," the court observed that

> [i]t would be an unprecedented exercise of judicial activism for this Court to stop the certification process of the Wayne County Board of Canvassers. . . .
>
> Waiting for the Court to locate and appoint an independent, nonpartisan auditor to examine the votes, reach a conclusion and then finally report to the Court would involve untold delay. It would cause delay in establishing the Presidential vote tabulation, as well as all other County and State races. It would also undermine faith in the Electoral System.

*Costantino v. City of Detroit*, No. 20-014780-AW, slip op. at 11–13 (Mich. Cir. Ct. Nov. 13, 2020) (attached as Ex. 12). The Michigan Court of Appeals later denied the plaintiffs' motion for peremptory reversal and application for leave to appeal the circuit court's order, *see Costantino v. City of Detroit*, No. 355443, slip op. at 1 (Mich. Ct. App. Nov. 16, 2020) (attached as Ex. 13), and the Michigan Supreme Court then denied a further application for leave to appeal the decision of the Court

of Appeals, *see Costantino v. City of Detroit*, No. 162245, slip op. at 1 (Mich. Nov. 23, 2020) (attached as Ex. 14).

Others challenges to Michigan's returns—raising yet further iterations of the same general (and unsubstantiated) allegations brought in the other lawsuits, including this one—were filed in the U.S. District Court for the Western District of Michigan and then abandoned. *See* Verified Compl. for Declaratory & Injunctive Relief, *Bally v. Whitmer*, No. 1:20-cv-01088-JTN-PJG (W.D. Mich. Nov. 11, 2020), ECF No. 1; Compl., *Johnson v. Benson*, No. 1:20-cv-01098-JTN-PJG (W.D. Mich. Nov. 18, 2020), ECF No. 1. In *Bally*, the plaintiffs voluntarily dismissed their complaint within a week of filing. *See* Notice of Voluntary Dismissal, *Bally v. Whitmer*, No. 1:20-cv-01088-JTN-PJG (W.D. Mich. Nov. 11, 2020), ECF No. 14. In *Johnson*, after Proposed Intervenors moved to intervene with an accompanying motion to dismiss, *see* Proposed Intervenor-Defs.' Mot. to Intervene, *Johnson v. Benson*, No. 1:20-cv-01098-JTN-PJG (W.D. Mich. Nov. 18, 2020), ECF No. 6; Proposed Intervenor-Defs.' Mot. to Dismiss, *Johnson v. Benson*, No. 1:20-cv-01098-JTN-PJG (W.D. Mich. Nov. 18, 2020), ECF No. 6-2, the *Johnson* plaintiffs also voluntarily dismissed their action, *see* Pls.' Voluntary Dismissal, *Johnson v. Benson*, No. 1:20-cv-01098-JTN-PJG (W.D. Mich. Nov. 18, 2020), ECF No. 12.

One of the *Johnson* plaintiffs has since filed a petition with the Michigan Supreme Court seeking, among other things, an order enjoining the State "from

finally certifying the election results and declaring winners of the 2020 general election to the United States Department of State or United States Congress until after a special master can be appointed to review and certify the legality of all absentee ballots ordered through the Secretary of State's absentee ballot scheme." Pet. for Extraordinary Writs & Declaratory Relief at 52–54, *Johnson v. Benson*, No. 162286 (Mich. Nov. 26, 2020) (attached as Ex. 15).

Defendant Jocelyn Benson, the Michigan Secretary of State—recognizing that "voters continue to be inundated with misinformation" even though "no evidence of widespread wrongdoing has been presented to date"—has announced that Michigan will conduct a "statewide risk-limiting audit . . . paired with comprehensive local audits." Jocelyn Benson, *Benson Pens Oped to Michigan: The Will of the People Is Clear—and Facts Will Carry the Day*, Detroit Free Press (Nov. 23, 2020), https://www.freep.com/story/opinion/contributors/2020/11/23/benson-says-michigan-audit-presidential-election-after-votes-certified/6389371002; *see also Statement from Secretary of State Jocelyn Benson on Planned Audits to Follow Certification of the Nov. 3, 2020, General Election*, Mich. Sec'y of State (Nov. 19, 2020), https://www.michigan.gov/documents/sos/SOS_Sstatement_on_Audits_708290_7.pdf.

Despite the failure of previous challenges to Michigan's returns and the promise of a comprehensive audit, Plaintiffs have filed yet another baseless attempt to disrupt the democratic process; indeed, this one is even more frivolous than the

ones before it, asserting claims rooted in (among many other things) an alleged "criminal conspiracy to manipulate Venezuelan elections in favor of dictator Hugo Chavez." Am. Compl. ¶ 6. And although they had the opportunity to strengthen their arguments and allegations with an amended complaint, their second bite at the apple is no less meritless and farfetched than their first.

Proposed Intervenors now move to intervene. DNC is a national political committee as defined in 52 U.S.C. § 30101 that is, among other things, dedicated to electing local, state, and national candidates of the Democratic Party in Michigan. MDP is the Democratic Party's official state party committee for the State of Michigan, and its mission is to elect Democratic Party candidates to offices across Michigan, up and down the ballot. Both seek intervention on their own behalf and on behalf of their members, candidates, and voters.

### III.   STANDARD OF LAW

The requirements for intervention under Rule 24 "should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

To intervene as of right under Rule 24(a), the proposed intervenor must show that "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be

11

impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)).

"Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 759–60 (E.D. Mich. 2020) (citing *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). "On a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The interest of the intervenors, for the purposes of permissive intervention, only needs to be "distinct" from the defendants, regardless of whether it is "substantial." *Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 800 (E.D. Mich. 2020) (quoting *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018)).

## IV.   ARGUMENT

**A.   Proposed Intervenors are entitled to intervene as of right.**

**1.   The motion to intervene is timely.**

First, this motion is timely. Courts consider the following factors when deciding whether a motion to intervene is timely:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Stupak-Thrall*, 226 F.3d at 472–73 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Zelman*, 636 F.3d at 284.

Proposed Intervenors' motion is timely. It follows only five days after Plaintiffs filed their initial complaint, and before any significant action in the case has occurred. *See Priorities USA*, 448 F. Supp. 3d at 763 (concluding that it was "difficult to imagine a more timely intervention" where legislature moved to intervene twenty days after lawsuit was filed without being formally noticed). Proposed Intervenors seek to intervene to protect against irreparable harm to themselves and to safeguard their members' fundamental rights. This is unquestionably a "legitimate" purpose, and this is a case where "the motion to intervene was timely in light of the stated purpose for intervening." *Kirsch v. Dean*, 733 F. App'x 268, 275 (6th Cir. 2018) (quoting *Linton ex rel. Arnold v. Comm'r of*

13

*Health & Env't*, 973 F.2d 1311, 1318 (6th Cir. 1992)). Nor is there any risk of prejudice to other parties if intervention is granted. Proposed Intervenors are prepared to follow any briefing schedule the Court sets and participate in any future hearings or oral arguments, without delay. Finally, there are no unusual circumstances that should dissuade the Court from granting intervention.

### 2. Proposed Intervenors have significant protectable interests that might be impaired by this litigation.

Second and third, Proposed Intervenors have significant cognizable interests that might, as a practical matter, be impaired by Plaintiffs' action. Intervenors "'must have a direct and substantial interest in the litigation' such that it is a 'real party in interest in the transaction which is the subject of the proceeding.'" *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 372 (6th Cir. 2014) (citation omitted) (first quoting *Grubbs*, 870 F.2d at 346; and then quoting *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005)). The Sixth Circuit has described this requirement as "rather expansive," *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), and one that courts should "construe[] liberally." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). For example, an intervenor need not have the same standing necessary to initiate a lawsuit, and the Sixth Circuit has rejected the notion that Rule 24(a)(2) requires a "specific legal or equitable interest." *Mich. State AFL-CIO*, 103 F.3d at 1245. The burden of establishing impairment of a protectable interest is "minimal," *id.* at 1247, and an

14

intervenor need only demonstrate that impairment is *possible*. *See Purnell*, 925 F.2d at 948. Moreover, the Sixth Circuit "has recognized that the time-sensitive nature of a case may be a factor in our intervention analysis," *Mich. State AFL-CIO*, 103 F.3d at 1247, and has found impairment of interest when the proposed intervenor "may lose the opportunity to ensure that one or more electoral campaigns in Michigan are conducted under legislatively approved terms that [the proposed intervenor] believes to be fair and constitutional." *Id.* at 1247.

Here, Proposed Intervenors have several legally cognizable interests that might be impaired by this lawsuit. First, Plaintiffs seek to disrupt the certification of lawfully cast ballots and cast doubt on the legitimacy of the election of Proposed Intervenors' candidates. Courts have often concluded that such interference with a political party's electoral prospects constitutes a legally cognizable injury. *See, e.g.*, *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006) (recognizing that "harm to [] election prospects" constitutes "a concrete and particularized injury"); *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding that "the potential loss of an election" is sufficient injury to confer Article III standing). Indeed, political parties—including Proposed Intervenors—have been granted intervention in several recent voting cases on these grounds. *See, e.g.*, *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention to state party and party committee where

"Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates" (quoting *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020))).

Moreover, Plaintiffs' requested relief of undoing the certification process threatens Proposed Intervenors' members' right to vote. "[T]o refuse to count and return the vote as cast [is] as much an infringement of that personal right as to exclude the voter from the polling place." *United States v. Saylor*, 322 U.S. 385, 387–88 (1944). In turn, the disruptive and potentially disenfranchising effects of Plaintiffs' action would require Proposed Intervenors to divert resources to safeguard the timely certification of statewide results, thus implicating another of their protected interests. *See, e.g.*, *Ne. Ohio Coal. for Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016) (finding concrete, particularized harm where organization had to "redirect its focus" and divert its "limited resources" due to election laws); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding that electoral change "injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert []

16

resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *see also Issa*, 2020 WL 3074351, at *3 (granting intervention and citing this protected interest).

### 3. Proposed Intervenors' interests are not adequately represented by the current parties.

Finally, Proposed Intervenors' interests are not adequately represented by Plaintiffs or Defendants. "Although a would-be intervenor is said to shoulder the burden with respect to establishing that its interest is not adequately protected by the existing parties to the action, this burden 'is minimal because it is sufficient that the movant[] prove that representation *may* be inadequate.'" *Mich. AFL-CIO*, 103 F.3d at 1247 (alteration in original) (emphasis added) (quoting *Linton*, 973 F.2d at 1319). "The question of adequate representation does not arise unless the applicant is somehow represented in the action. An interest that is not represented at all is surely not 'adequately represented,' and intervention in that case must be allowed." *Grubbs*, 870 F.2d at 347. Where one of the original parties to the suit is a government entity whose "views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," courts have found that "the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citing *Conservation Law Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)).

Here, while Defendants have an interest in defending the actions of state officials, Proposed Intervenors have different objectives: ensuring that the valid ballot of every Democratic voter in Michigan is counted and safeguarding the election of Democratic candidates. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))). That is the case here. Proposed Intervenors have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither Defendants nor any other party in this lawsuit share. *See Paher*, 2020 WL 2042365, at *3 (granting intervention as of right where proposed intervenors "may present arguments about the need to safeguard [the] right to vote that are distinct from [state defendants'] arguments"). As one court recently explained under similar circumstances,

> [w]hile Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors [including a state political party] are concerned with ensuring their party members and the voters they

represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures. As a result, the parties' interests are neither "identical" nor "the same."

*Issa*, 2020 WL 3074351, at *3 (citation omitted). Because Proposed Intervenors' particular interests are not shared by the present parties, they cannot rely on Defendants or anyone else to provide adequate representation. They have thus satisfied the four requirements for intervention as of right under Rule 24(a)(2). *See id.* at *3–4; *Paher*, 2020 WL 2042365, at *3.

## B. Alternatively, Proposed Intervenors should be granted permissive intervention.

Even if Proposed Intervenors were not entitled to intervene as of right, permissive intervention is warranted under Rule 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA*, 448 F. Supp. 3d at 759–60. Proposed intervenors need only show that their interest is "'distinct' from the defendants, regardless of whether it is 'substantial.'"

*Pub. Interest Legal Found.*, 463 F. Supp. 3d at 800 (quoting *League of Women Voters*, 902 F.3d at 579).

Proposed Intervenors easily meet these requirements. First, their motion is timely and intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Part IV.A.1 *supra*. Moreover, Proposed Intervenors' interests are distinct and not adequately represented by the existing defendants. *See* Part IV.A.3 *supra*. And Proposed Intervenors will undoubtedly raise common questions of law and fact in opposing Plaintiffs' suit. In addition to challenging Plaintiffs' claims as a matter of law, *see* Ex. 1, Proposed Intervenors will also submit affidavits from election volunteers refuting the amended complaint's baseless allegations. *See, e.g.*, Exs. 2–4.

## V.    CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully ask this Court to grant their motion to intervene.

Dated: November 30, 2020.                   Respectfully submitted,

                                            /s/ *Scott R. Eldridge*
                                            Scott R. Eldridge (P66452)
                                            MILLER CANFIELD
                                            One Michigan Avenue, Suite 900
                                            Lansing, Michigan 48933
                                            Telephone: (517) 483-4918
                                            eldridge@millercanfield.com

                                            Mary Ellen Gurewitz (P25724)
                                            CUMMINGS & CUMMINGS
                                            423 North Main Street, Suite 200
                                            Royal Oak, Michigan 48067
                                            Telephone: (248) 733-3405
                                            maryellen@cummingslawpllc.com

                                            Marc E. Elias (DC #442007)
                                            Jyoti Jasrasaria (DC #1671527)*
                                            PERKINS COIE LLP
                                            700 Thirteenth Street NW, Suite 800
                                            Washington, DC 20005
                                            Telephone: (202) 654-6200
                                            melias@perkinscoie.com
                                            jjasrasaria@perkinscoie.com

                                            William B. Stafford (WA #39849)*
                                            Jonathan P. Hawley (WA #56297)*
                                            PERKINS COIE LLP
                                            1201 Third Avenue, Suite 4900
                                            Seattle, Washington 98101
                                            Telephone: (206) 359-8000
                                            wstafford@perkinscoie.com
                                            jhawley@perkinscoie.com

Seth P. Waxman (DC #257337)
Brian M. Boynton (DC #483187)*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 663-6000
seth.waxman@wilmerhale.com
brian.boynton@wilmerhale.com

John F. Walsh (CO #16642)*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, Colorado 80202
Telephone: (720) 274-3154
john.walsh@wilmerhale.com

*Counsel for Proposed Intervenor-
Defendants DNC Services
Corporation/Democratic National
Committee and Michigan Democratic
Party*

*Admission forthcoming