# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

TIMOTHY KING, MARIAN ELLEN
SHERIDAN, JOHN EARL HAGGARD,
CHARLES JAMES RITCHARD, JAMES
DAVID HOOPER, and DAREN WADE
RUBINGH,

                Plaintiffs,

      v.

GRETCHEN WHITMER, in her official
capacity as Governor of Michigan,
JOCELYN BENSON, in her official
capacity as Michigan Secretary of State,
and MICHIGAN BOARD OF STATE
CANVASSERS.

                Defendants.

CIVIL ACTION

Case No. 2:20-CV-13134

Hon. Linda V. Parker

---

## PROPOSED INTERVENOR-DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Proposed Intervenor-Defendants DNC Services Corporation/Democratic National Committee and Michigan Democratic Party hereby move to dismiss Plaintiffs' first amended complaint in its entirety for numerous reasons: (1) doctrines of federalism and comity favor abstention; (2) Plaintiffs' claims are barred by the Eleventh Amendment; (3) Plaintiffs lack standing; and (4) Plaintiffs have failed to state viable claims on which relief can be granted.

Pursuant to Local Rule 7.1(a), counsel for Proposed Intervenor-Defendants and Plaintiffs had a telephonic conference on November 30, 2020, and Plaintiffs do not concur, thereby making this motion necessary.

WHEREFORE, for the reasons stated more fully in the accompanying brief, Proposed Intervenor-Defendants respectfully request that the Court dismiss this action in its entirety, and award any other relief that the Court deems appropriate under the circumstances.

Dated: November 30, 2020.  Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
MILLER CANFIELD
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
Telephone: (517) 483-4918
eldridge@millercanfield.com

Mary Ellen Gurewitz (P25724)
CUMMINGS & CUMMINGS
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
Telephone: (248) 733-3405
maryellen@cummingslawpllc.com

Marc E. Elias (DC #442007)
Jyoti Jasrasaria (DC #1671527)*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
Telephone: (202) 654-6200
melias@perkinscoie.com
jjasrasaria@perkinscoie.com

William B. Stafford (WA #39849)*
Jonathan P. Hawley (WA #56297)*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
wstafford@perkinscoie.com
jhawley@perkinscoie.com

Seth P. Waxman (DC #257337)
Brian M. Boynton (DC #483187)*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 663-6000
seth.waxman@wilmerhale.com
brian.boynton@wilmerhale.com

John F. Walsh (CO #16642)*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, Colorado 80202
Telephone: (720) 274-3154
john.walsh@wilmerhale.com

*Counsel for Proposed Intervenor-
Defendants DNC Services
Corporation/Democratic National
Committee and Michigan Democratic
Party*

*Admission forthcoming

4

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

TIMOTHY KING, MARIAN ELLEN
SHERIDAN, JOHN EARL HAGGARD,
CHARLES JAMES RITCHARD, JAMES
DAVID HOOPER, and DAREN WADE
RUBINGH,

                Plaintiffs,

    v.

GRETCHEN WHITMER, in her official
capacity as Governor of Michigan,
JOCELYN BENSON, in her official
capacity as Michigan Secretary of State,
and MICHIGAN BOARD OF STATE
CANVASSERS.

                Defendants.

CIVIL ACTION

Case No. 2:20-CV-13134

Hon. Linda V. Parker

## PROPOSED INTERVENOR-DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.................................................................. ii

CONTROLLING AND APPROPRIATE AUTHORITY ...................................... iii

I.    INTRODUCTION.......................................................................................1

II.   BACKGROUND..........................................................................................2

III.  LEGAL STANDARD .................................................................................6

IV.   ARGUMENT...............................................................................................7

   A.   Principles of federalism and comity strongly favor abstention.......................7

   B.   The Eleventh Amendment bars Plaintiffs' claims.........................................10

   C.   Plaintiffs lack standing. ................................................................................12

   D.   Plaintiffs fail to state a claim on which relief can be granted. ......................15

      1.   Plaintiffs' claims are not plausible.........................................................16

      2.   Plaintiffs have not pleaded a viable equal protection claim. ....................19

      3.   Plaintiffs have not pleaded a due process claim. ......................................20

      4.   Plaintiffs have not stated an Elections and Electors Clause claim. ...........21

      5.   Plaintiffs' claim under the Michigan Constitution and Michigan Election Code fails a matter of law. ........................................................................22

   E.   Plaintiffs are not entitled to the relief they seek............................................24

V.   CONCLUSION .............................................................................................24

## STATEMENT OF ISSUES PRESENTED

I.   Whether principles of federalism and comity require this Court to abstain.

Proposed Intervenor-Defendants' Answer:  Yes.

II.  Whether the Eleventh Amendment bars Plaintiffs' claims.

Proposed Intervenor-Defendants' Answer:  Yes.

III. Whether Plaintiffs lack Article III standing and prudential standing.

Proposed Intervenor-Defendants' Answer:  Yes.

IV.  Whether Plaintiffs fail to state a claim on which relief can be granted where Plaintiffs' claims are not plausible; Plaintiffs have not pleaded a viable equal protection claim; Plaintiffs have not pleaded a viable due process claim; Plaintiff have not pleaded a viable claim under the Elections and Electors Clauses; and Plaintiffs' claim under the Michigan Constitution and Michigan Election Code fails as a matter of law.

Proposed Intervenor-Defendants' Answer:  Yes.

## CONTROLLING AND APPROPRIATE AUTHORITY

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)

*Lance v. Coffman*, 549 U.S. 437 (2007)

*Costantino v. City of Detroit*, No. 20-014780-AW (Mich. Cir. Ct. Nov. 13, 2020)

*Bognet v. Sec'y of Commonwealth*, No. 20-3214, 2020 WL 6686120 (3d Cir. Nov. 13, 2020)

*Donald J. Trump for President, Inc. v. Sec'y of Commonwealth*, No. 20-3371, 2020 WL 7012522 (3d Cir. Nov. 27, 2020)

## I.     INTRODUCTION

Since the 2020 general election, various groups and individuals—unwilling to accept President-elect Biden's victory in Michigan—have filed baseless lawsuits attacking the election's legitimacy. This suit, alleging an "interstate fraudulent scheme to rig the 2020 General Election for Joe Biden," takes to new heights the increasingly feverish conspiracy theories animating these post-election challenges. First Am. Compl. for Declaratory, Emergency & Permanent Injunctive Relief ("Am. Compl."), ECF No. 6, ¶ 112. Plaintiffs' requested relief is as absurd as their allegations—they ask this Court to order Michigan's officials to "de-certify" the election results and order the Governor to declare "that President Donald Trump is the winner of the election." *Id.* ¶ 233. Courts do not decide who wins elections in a democracy; voters do. This Court should reject Plaintiffs' request to disenfranchise 5.5 million Michiganders based on implausible allegations of electoral malfeasance.

This Court should dismiss this case on multiple grounds. First, the Court should abstain in deference to ongoing state court proceedings raising some of the same issues and allegations Plaintiffs raise here. Second, the Eleventh Amendment prohibits this suit because a federal court cannot require state officials to comply with state law. Third, Plaintiffs lack Article III standing to bring their claims, and further lack prudential standing to assert the Michigan Legislature's interests. Each of these jurisdictional bars precludes this Court from adjudicating Plaintiffs' suit.

Even if this Court had jurisdiction, Plaintiffs' claims fail as a matter of law. Their complaint reads more like a Hollywood potboiler than a serious filing made in compliance with Rule 11, let alone Rules 8 and 9(b). Finally, Plaintiffs' requested relief—an unprecedented judicial override of the State's democratic process— would violate the constitutional rights of millions of Michiganders.

Ultimately, Plaintiffs' lawsuit is part of a broader and deeply troubling national effort to enlist the judiciary to overturn the will of the voters. Having failed to secure the election of their preferred candidate, and to secure favorable rulings in state court, Plaintiffs have now turned to this forum to recycle the same meritless claims. Every other court confronted with these efforts has promptly and properly rejected them. This Court should do the same.

## II.    BACKGROUND

More than 5.5 million Michiganders cast ballots in the November election. The presidential election was not close. The Michigan State Board of Canvassers certified that President-elect Biden prevailed over President Donald Trump by a margin of 154,188 votes. *See* Am. Compl. ¶ 31. But that has not stopped the Trump Campaign and its supporters from repeatedly filing meritless lawsuits.

### A.    State Court Lawsuits

In the past month, various challenges to Michigan's election procedures and results have been filed in state court, many of which are currently being litigated and

bear a striking resemblance (or are identical, as explained below) to Plaintiffs' suit. The day after election day, the Trump Campaign sought an immediate cessation of the counting of absentee ballots based on allegations of insufficient oversight. *See* Verified Compl. for Immediate Declaratory & Injunctive Relief, *Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ (Mich. Ct. Cl. Nov. 4, 2020) (attached as Ex. 5).[1] The Michigan Court of Claims denied the Trump Campaign's emergency motion, noting "the problems with the factual and evidentiary record" and concluding that the Trump Campaign was unlikely to succeed on the merits, among other issues. *Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ, slip op. at 5 (Mich. Ct. Cl. Nov. 6, 2020) (attached as Ex. 6). The Trump Campaign has since sought an appeal, which is still pending in state court. *See* Mot. for Immediate Consideration of Appeal Under MCR 7.211(C)(6), *Donald J. Trump for President, Inc. v. Benson*, No. 355378 (Mich. Ct. App. Nov. 6, 2020) (attached as Ex. 7).

Similarly, two sets of plaintiffs brought suits in Wayne County based on many of the same allegations Plaintiffs rehash here. In the first, the plaintiffs sought to delay certification of Wayne County's results based on alleged lack of oversight and

---

[1] Exhibit cites refer to the exhibits attached to Proposed Intervenor-Defendants' motion to intervene, filed concurrently. "Courts may [] take judicial notice of public records" like court opinions when ruling on motions to dismiss. *Geiling v. Wirt Fin. Servs., Inc.*, No. 14-11027, 2014 WL 8473822, at *6 (E.D. Mich. Dec. 31, 2014) (collecting cases), *aff'd*, No. 15-1393, 2017 WL 6945559 (6th Cir. June 8, 2017).

violations of Michigan's election code at Detroit's TCF Center. *See* First Am. Verified Compl. for Emergency & Permanent Injunctive Relief, *Stoddard v. City Election Comm'n*, No. 20-014604-CZ (Mich. Cir. Ct. Nov. 5, 2020) (attached as Ex. 16). Chief Judge Kenny of the Third Judicial Circuit Court denied that motion for injunctive relief, finding "it is mere speculation by plaintiffs that hundreds or thousands of ballots have, in fact, been changed and presumably falsified." *Stoddard v. City Election Comm'n*, No. 20-014604-CZ, slip op. at 4 (Mich. Cir. Ct. Nov. 6, 2020) (attached as Ex. 10). In the second, the same court denied a motion for injunctive relief. *See Costantino v. City of Detroit*, No. 20-014780-AW, slip op. at 13 (Mich. Cir. Ct. Nov. 13, 2020) (attached as Ex. 12). After reviewing affidavits raising vague allegations of suspicious conduct at TCF Center and concluding that the "[p]laintiffs' interpretation of events is incorrect and not credible," Chief Judge Kenny observed that "[i]t would be an unprecedented exercise of judicial activism for this Court to stop the certification process of the Wayne County Board of Canvassers." *Id.* at 11–13. Plaintiffs unsuccessfully appealed the denial of their motion to both the Michigan Court of Appeals and Michigan Supreme Court. *See Costantino v. City of Detroit*, No. 355443, slip op. at 1 (Mich. Ct. App. Nov. 16, 2020) (attached as Ex. 13); *Costantino v. City of Detroit*, No. 162245, slip op. at 1 (Mich. Nov. 23, 2020) (attached as Ex. 14). As described below, Plaintiffs' suit here

attempts to "incorporate[] by reference" the rejected allegations presented to the court in *Costantino*, which Plaintiffs call the "GLJC Complaint." Am. Compl. ¶ 81.

Finally, a petition filed with the Michigan Supreme Court just a few days ago brings many of the same issues Plaintiffs raise here, including a claimed right under Article II, section 4 of the Michigan Constitution to an audit of election results and a request for an order enjoining certification. *See* Pet. for Extraordinary Writs & Declaratory Relief, *Johnson v. Benson*, No. 162286 (Mich. Nov. 26, 2020) (attached as Ex. 15). Each of these state court actions remains ongoing.[2]

## B.    Plaintiffs' Suit

Plaintiffs initiated this lawsuit three weeks after election day and after the State Board of Canvassers certified the election for President-elect Biden. *See* Am. Compl. ¶ 31. Plaintiffs' complaint is hard to follow, but its basic gist is that Michigan election officials engaged in a massive, shadowy, transnational conspiracy to manufacture "hundreds of thousands of illegal, ineligible, duplicate, or purely

---

[2] Separately, every effort to challenge President-elect Biden's victory in federal courts in other states, many raising claims similar to Plaintiffs', has been soundly rejected. *See generally, e.g.*, *Donald J. Trump for President, Inc. v. Sec'y of Commonwealth*, No. 20-3371, 2020 WL 7012522 (3d Cir. Nov. 27, 2020) (affirming district court's refusal to enjoin Pennsylvania from certifying election results based on similar equal protection claims); *Bognet v. Sec'y of Commonwealth*, No. 20-3214, 2020 WL 6686120 (3d Cir. Nov. 13, 2020) (affirming denial of preliminary relief based on equal protection claim premised on vote dilution by purportedly illegal ballots); *Wood v. Raffensperger*, No. 1:20-cv-04561-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020) (rejecting plaintiffs' motion to enjoin Georgia from certifying election results based on similar equal protection claims).

fictitious ballots in the State of Michigan" to elect Joe Biden. *Id.* ¶¶ 2–3, 17. As noted, the complaint purports to "incorporate[] by reference" the entirety of other state court complaints not before this Court, *id.* ¶¶ 81–100, and is riddled with conclusory allegations as to the fraudulent manufacturing of ballots to "rig" the election for President-elect Biden, *id.* ¶¶ 84, 112. Plaintiffs' complaint is also "supported" by "expert" declarations written for other lawsuits, concerning entirely different issues, in different states. *See id.* ¶¶ 8, 10, 157–58.

From these incredible allegations, Plaintiffs assert various causes of action under the U.S. and Michigan Constitutions as well as assorted provisions of Michigan's Election Code. Among other requests, Plaintiffs ask this Court to order Defendants to "decertify" the election and affirmatively certify results "in favor of President Donald Trump." *Id*. ¶¶ 229–30, 233.

### III.   LEGAL STANDARD

Whether a party has Article III standing is a question of a court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1), . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (emphasis omitted) (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court presumes that all well-pleaded material allegations in the complaint are true, *see Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)). Courts need not accept as true legal conclusions or unwarranted factual inferences. *See Total Benefits Plan.*, 552 F.3d at 434. Where, as here, a complaint expressly alleges "fraud," Rule 9(b) requires pleading with "particularity." This pleading standard requires "[a]t a minimum" that allegations of fraud "specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (alteration in original) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

## IV.   ARGUMENT

### A.   Principles of federalism and comity strongly favor abstention.

The relief Plaintiffs seek calls for an extraordinary intrusion on state sovereignty by a federal court. Under the *Pullman*, *Colorado River*, and *Buford* abstention doctrines, the claims Plaintiffs raise should be addressed in state court.

*Pullman* recognizes that "'federal courts should avoid the unnecessary resolution of federal constitutional issues and that state courts provide the authoritative adjudication of questions of state law.'" *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 508 (1985)); *see also R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 501 (1941). Under *Pullman*, the court should abstain if (1) "state law is unclear," and (2) "a clarification of that law would preclude the need to adjudicate the federal question," *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011). Both requirements are met here.

*First*, Plaintiffs' federal constitutional claims focus on questions of state law. The complaint is premised on multiple alleged "violations of the Michigan Election Code," including provisions related to poll challengers, inspectors, and the counting of ballots. Am. Compl. ¶¶ 1, 208–28. Whether such violations occurred is a question of state law that a state court can and should adjudicate.

*Second*, clarification of these state law issues would preclude the need to adjudicate the federal questions in this case. Indeed, if a state court concludes that election officials did not "deviate from the requirements of the Michigan Election Code," *id.* ¶ 179, Plaintiffs' Elections and Electors Clauses claim vanishes. Similarly, Plaintiffs' Equal Protection Clause and Due Process Clause claims are based on Defendants' alleged "fail[ure] to comply with the requirements of the

Michigan Election Code," which Plaintiffs allege "diluted the[ir] lawful ballots." *Id.* ¶¶ 188, 205. Numerous other cases that allege near-identical instances of illegality and fraud—on which Plaintiffs' federal constitutional claims are premised—are pending in state court. *See supra* at 3–5. If these state courts definitively interpret Michigan law, there would be nothing left for this Court to decide. Allowing Michigan courts to interpret these state law questions thus "may obviate the federal claims" and "eliminate the need to reach the federal question," and this Court should therefore abstain. *GTE N., Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir. 2000).

*Colorado River Water Conservation District v. United States* also counsels abstention in favor of ongoing, parallel state proceedings for reasons of "'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" 424 U.S. 800, 817 (1976) (alteration in original) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). As noted, Michigan state courts are currently weighing many of the issues Plaintiffs raise, including specifically the alleged right to an audit under the Michigan Constitution. *See supra* at 5. The other *Colorado River* factors—avoiding piecemeal litigation, the order and relative progress of the cases, the critical issues of state law at stake, and the adequacy of the state court to continue addressing these issues—also weigh in favor of abstention. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 340–42 (6th Cir. 1998).

Finally, Plaintiffs' claims are precluded under *Burford* abstention, which is appropriate, as here,

> where timely and adequate state-court review is available and (1) a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar," or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002) (quoting *New Orleans Pub. Serv., Inc. v. Council*, 491 U.S. 350, 361 (1989)); *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 334 (1943). As Plaintiffs themselves note, the U.S. Constitution delegates *to the states* the responsibility for determining the "Manner" in which each appoints presidential electors. U.S. Const. art. I, § 4, cl. 1. Indeed, as Plaintiffs' complaint also notes, Michigan has an extensive Election Code that provides for an orderly certification of election results. Because the State has "primary authority over the administration of elections," *Hunter*, 635 F.3d at 232, abstention is proper—this case implicates an area where "the State's interests are paramount" and thus "would best be adjudicated in a state forum." *Caudill*, 301 F.3d at 660 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)).

## B.  The Eleventh Amendment bars Plaintiffs' claims.

As the Supreme Court explained in *Pennhurst State School & Hospital v. Halderman*, the Eleventh Amendment prohibits federal courts from granting "relief

against state officials on the basis of state law, whether prospective or retroactive." 465 U.S. 89, 106 (1984). This is true even when state law claims are styled as federal causes of action. *See, e.g.*, *Balsam v. Sec'y of State*, 607 F. App'x 177, 183–84 (3d Cir. 2015) (Eleventh Amendment bars state law claims even when "premised on violations of the federal Constitution"); *Massey v. Coon*, No. 87-3768, 1989 WL 884, at *2 (9th Cir. Jan. 3, 1989) (affirming dismissal where "on its face the complaint states a claim under the due process and equal protection clauses of the Constitution, [but] these constitutional claims are entirely based on the failure of defendants to conform to state law").

Count IV, which alleges *only* violations of Michigan law, is indisputably barred under *Pennhurst*. The same is true of Plaintiffs' other claims, each of which, although presented in the garb of a federal cause of action, ultimately asks the Court to determine that state officials violated state law and compel state officials to do what Plaintiffs believe *Michigan* law requires. Counts II and III hinge on alleged violations of Michigan law that have "diluted" Plaintiffs' votes. *See* Am. Compl. ¶¶ 188, 205. But whether Defendants abided by their statutory responsibilities is a question of *state law*, not federal law. The same is true of Count I; although couched as a claim under the Elections and Electors Clauses, Plaintiffs' core allegation is that Defendants "fail[ed] to follow the requirements of the Michigan Election Code, as enacted by the Michigan Legislature." *Id.* ¶ 180. This Court cannot order Defendants

to de-certify the election based on alleged violations of Michigan law without running afoul of the Eleventh Amendment. *See, e.g.*, *Ohio Republican Party v. Brunner*, 543 F.3d 357, 360–61 (6th Cir. 2008) (holding *Pennhurst* bars claim that Secretary of State violated state election law). Thus, the Eleventh Amendment bars Plaintiffs' claims.

## C.    Plaintiffs lack standing.

To avoid dismissal on Article III grounds, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs fail to establish a sufficient injury-in-fact under Article III, and they lack prudential standing to bring Count I.

*First*, Plaintiffs do not allege harms sufficient to establish Article III standing on any of their claims. Plaintiffs do not allege that they were deprived of the right to vote; instead, they allege they are harmed by violations of Michigan law which "diluted" their votes. Am. Compl. ¶¶ 188, 205. But this purported injury of vote-dilution-through-unlawful balloting has been repeatedly rejected as a viable basis for standing, and for good reason: any purported vote dilution somehow caused by counting allegedly improper votes would affect *all* Michigan voters and candidates, not just Plaintiffs, and therefore constitutes a generalized grievance insufficient for

standing. *See Bognet v. Sec'y of Commonwealth*, No. 20-3214, 2020 WL 6686120, at *11–14 (3d Cir. Nov. 13, 2020) (rejecting identical theory for standing and explaining that "[t]his conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment"); *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445, 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020) (similar).

Plaintiffs also claim they have suffered harm as a result of alleged violations of the Elections and Electors Clauses, but that injury too "is precisely the kind of undifferentiated, generalized grievance about the conduct of government" insufficient for Article III standing. *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam); *accord Wood v. Raffensperger*, No. 1:20-cv-04561-SDG, 2020 WL 6817513, at *5 (N.D. Ga. Nov. 20, 2020).

Plaintiffs rely on *Carson v. Simon*, in which the Eighth Circuit held that "[a]n inaccurate vote tally is a concrete and particularized injury" to electors under the theory that Minnesota electors are candidates for office under Minnesota law. 978 F.3d 1051, 1058 (8th Cir. 2020); *see also* Am. Compl. ¶ 25. But *Carson* is neither binding on this Court nor in the legal mainstream; federal courts have *repeatedly* held that even candidates for office lack Article III standing to challenged alleged violations of state law under the Elections Clause. *See Bognet*, 2020 WL 6686120,

at *6–7 (voters and candidate lacked Article III standing to bring claims under Elections and Electors Clauses); *Hotze v. Hollins*, No. 4:20-cv-03709, 2020 WL 6437668, at *2 (S.D. Tex. Nov. 2, 2020) (holding candidate lacked standing under Elections Clause and concluding that Supreme Court's cases "stand for the proposition that only the state legislature (or a majority of the members thereof) have standing to assert a violation of the Elections Clause").[3]

*Second*, Plaintiffs also lack Article III standing because they do not allege injury that is traceable to the named Defendants or redressable. Any alleged injury is attributable to officials from Wayne County and Detroit or other third parties, not the named state officials. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (requiring causal connection between injury and defendant's conduct). Moreover, Plaintiffs cite no authority for the proposition that a federal court has the power to order state officials to "de-certify" an election they have already certified.

*Third*, Plaintiffs lack prudential standing to bring their Elections and Electors Clauses claim. "Even if an injury in fact is demonstrated, the usual rule"—applicable here—"is that a party may assert only a violation of its own rights." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988). Plaintiffs' Count I, by contrast,

---

[3] Although separate constitutional provisions, the Electors and Elections Clauses share "considerable similarity" and should be interpreted in the same manner. *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 839 (2015) (Roberts, C.J., dissenting); *see also Bognet*, 2020 WL 6686120, at *7 (applying same test for standing under both Elections and Electors Clauses).

"rest[s] . . . on the legal rights or interests of third parties,'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)—specifically, *the Michigan Legislature's* purported rights under the Elections and Electors Clauses. *See* Am. Compl. ¶ 179 (alleging "Defendants are not part of the Michigan Legislature and cannot exercise legislative power"). But Plaintiffs have no authority to assert the rights of the Michigan Legislature. *See Lance*, 549 U.S. at 442 (rejecting notion that "private citizens acting on their own behalf" can bring Elections Clause claim); *Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018) (per curiam) ("[T]he Elections Clause claims asserted in the verified complaint belong, if they belong to anyone, only to the Pennsylvania General Assembly."); *Bognet*, 2020 WL 6686120, at \*7 (similar). "Absent a 'hindrance' to the [Legislature's] ability to defend its own rights, this prudential limitation on standing cannot be excused." *Corman*, 287 F. Supp. 3d at 572 (quoting *Kowalski*, 543 U.S. at 130). Plaintiffs have not attempted to identify such a hindrance and Count I should be dismissed on this additional ground.

**D.     Plaintiffs fail to state a claim on which relief can be granted.**

Even if this Court had jurisdiction to consider Plaintiffs' claims, their complaint should be dismissed under Rule 12(b)(6). Plaintiffs' wild-eyed allegations of widespread fraud and malfeasance are the antithesis of plausible claims for relief.

### 1.   Plaintiffs' claims are not plausible.

Under the Federal Rules, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While Rule 8 "does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The shortcomings in Plaintiffs' complaint become even more apparent when considered through the lens of Rule 9(b), which demands Plaintiffs "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiffs' complaint does not satisfy the standards of Rule 8, much less Rule 9(b). The complaint suggests a massive, coordinated effort among election software systems, local election officials, and hostile foreign actors to perpetrate electoral fraud and swing a presidential election. *See, e.g.*, Am. Compl. ¶ 112 (alleging an "interstate fraudulent scheme to rig the 2020 General Election for Joe Biden"). The Supreme Court has instructed that "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. It challenges both experience and common sense to accept Plaintiffs' overarching theory that widespread fraud occurred during the most scrutinized election in modern history, particularly based on the allegations advanced in the complaint.

16

Even a cursory glance at these allegations demonstrates their utter lack of plausibility. For example, Plaintiffs cite as "[p]erhaps [their] most probative evidence" a witness's claim that she saw two vans arrive at TCF Center on November 4, which she assumed were for food but "never saw any food coming out of these vans." Am. Compl. ¶ 84. The witness "noted the coincidence that 'Michigan had discovered over 100,000 more ballots—not even two hours after the last van left,'" which Plaintiffs conclude evidences an "illegal vote dump." *Id*. But as much as Plaintiffs would like to draw such an extraordinary inference, the witness did not see 100,000 ballots come out of the vans. *See id.* Ex. 5. And seeing two vans in downtown Detroit does not render plausible a claim that those vans were brimming with fraudulent ballots.[4] The Court need not accept unwarranted factual inferences of this ilk. *See Total Benefits Plan.*, 552 F.3d at 434; *see also United States v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) ("[I]nferences and implications are not what Civil Rule 9(b) requires. It demands specifics—at least if the claimant wishes to raise allegations of fraud against someone.").

---

[4] Plaintiffs' allegations of nefarious fraud at the TCF Center have already been rejected, including specifically in *Costantino*, the case Plaintiffs now attempt to incorporate by reference. *See* slip op. at 6 (explaining that one affidavit was "rife with speculation and guess-work about sinister motives") (attached as Ex. 12); *id.* at 7 ("[T]he allegations [in the affidavit] are simply not credible."); *id.* at 8 (affidavits contradicted by other individuals who were present); *id.* at 9 (affiant lacked knowledge and experience with vote-counting process).

Similarly, Plaintiffs allege massive fraud in election software, explaining that their expert found a "dramatic shift in votes between the two major party candidates as the tabulation of the turnout increased, and more importantly, the change in voting share before and after 2 AM on November 4, 2020." Am. Compl. ¶ 142. But even under the traditional pleading standard, "[w]here a complaint pleads facts that are 'merely *consistent* with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (emphasis added) (quoting *Twombly*, 550 U.S. at 557). Here, the sequencing of vote tabulation is instead consistent with the opposite inference—namely, the well-reported fact that absentee ballots, which could not be processed and counted in Michigan until election day, heavily favored President-elect Biden. Given that "obvious alternative explanation" for the facts alleged by Plaintiffs, *Twombly*, 550 U.S. at 567, this Court need not credit Plaintiffs' unwarranted factual inferences and conclusory allegations.[5] Their complaint should be dismissed.

_____

[5] Far from supporting the complaint, the attached exhibits only prove this point, and also make unsupported, conclusory, and wildly implausible allegations. They include an anonymous declaration claiming that the Dominion voting system—which has been vetted by the U.S. government and dozens of state governments—was "certainly compromised by rogue actors, such as Iran and China," Am. Compl. Ex. 25 ¶ 21, and another anonymous declaration alleging, without factual basis, that "the vote counting was abruptly stopped in five states using Dominion software," *id.* Ex. 1 ¶ 26.

## 2.   Plaintiffs have not pleaded a viable equal protection claim.

Even if their complaint were plausible, Plaintiffs have not stated a cognizable equal protection claim. Counts II alleges that "Defendants['] fail[ure] to comply with the requirements of the Michigan Election Code [] diluted [their] lawful ballots." Am. Compl. ¶ 188. This is not an equal protection injury. Vote dilution is a viable basis for federal claims only in certain contexts, such as when laws structurally devalue one community's votes over another's. *See, e.g.*, *Bognet*, 2020 WL 6686120, at *11 ("[V]ote dilution under the Equal Protection Clause is concerned with votes being weighed differently."). But Plaintiffs' "conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment." *Id.*; *see also Wood*, 2020 WL 6817513, at *8–10 (concluding that vote-dilution injury is not "cognizable in the equal protection framework"). Indeed, "if dilution of lawfully cast ballots by the 'unlawful' counting of invalidly cast ballots 'were a true equal-protection problem, then it would transform every violation of state election law . . . into a potential federal equal-protection claim.'" *Bognet*, 2020 WL 6686120, at *11 (quoting *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680 at *45-46 (W.D. Pa. Oct. 10, 2020)).

Plaintiffs also briefly insinuate an equal protection claim by alleging that Defendants "violate[d] Plaintiffs' right to be present and have actual observation and

access to the electoral process," Am. Compl. ¶ 193, but this too lacks merit. Courts have repeatedly held "there is no individual constitutional right to serve as a poll watcher." *Boockvar*, 2020 WL 5997680, at *7 (quoting *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 385 (Pa. 2020)). Plaintiffs cite no authority to the contrary.

### 3. Plaintiffs have not pleaded a due process claim.

With Count III, Plaintiffs attempt to mold their purported violations of Michigan's Election Code into a due process violation, once again alleging that these violations of state law diluted their votes. *See* Am. Compl. ¶¶ 203–05. But as discussed *supra* at 19, vote dilution is a context-specific theory of constitutional harm premised on the Equal Protection Clause, *not* the Due Process Clause, and at any rate, Plaintiffs have failed to plead a cognizable vote-dilution claim.

Even if this Court construed Plaintiffs' allegations as attempting to state a "fundamental fairness" due process claim, the complaint would still fall short. "The Constitution is not an election fraud statute," *Minn. Voters All. v. Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013), and it "d[oes] not authorize federal courts to be state election monitors." *Gamza v. Aguirre*, 619 F.2d 449, 454 (5th Cir. 1980). Even "a deliberate violation of state election laws by state election officials does not transgress against the Constitution." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062 (7th Cir. 2020) (quoting *Kasper v. Bd. of Election Comm'rs*, 814 F.2d 332, 342 (7th Cir. 1987)). As the Ninth Circuit has explained,

> [A] court will strike down an election on substantive due process grounds if two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures.

*Bennett v. Yoshina*, 140 F.3d 1218, 1226–27 (9th Cir. 1998). In other words, the sort of unconstitutional irregularities that courts have entertained under the Due Process Clause consist of widescale disenfranchisement. But Plaintiffs' complaint does not allege disenfranchisement at all. To the contrary, it is *Plaintiffs* who seek to negate the votes cast by millions of eligible Michigan voters. Count III therefore does not state a due process claim and must be dismissed.

### 4.    Plaintiffs have not stated an Elections and Electors Clause claim.

Count I alleges that Defendants "fail[ed] to follow the requirements of the Michigan Election Code," Am. Compl. ¶ 180. This is not a violation of the Elections and Electors Clauses; it is simply not the case, as Plaintiffs suggest, that any deviation from statutory election procedures automatically constitutes a violation of these Clauses.

Indeed, the distinction between an *actual* federal claim under the Elections and Electors Clauses and a state law claim masquerading as a federal claim (like Count I) becomes clear after examining other cases brought under these Clauses. In *Cook v. Gralike*, for example, the Supreme Court struck down a Missouri law mandating a particular ballot designation for any congressional candidate who

refused to commit to term limits after concluding that such a statute constituted a "'regulation' of congressional elections" under the Elections Clause. 531 U.S. 510, 525–26 (2001) (quoting U.S. Const. art. I, § 4, cl. 1). And in *Arizona State Legislature v. Arizona Independent Redistricting Commission*, the Supreme Court upheld a law that delegated the redistricting process to an independent commission after reaffirming that "the Legislature" as used in the Elections Clause includes "the State's lawmaking processes." 576 U.S. 787, 824 (2015). In these cases, the task of federal courts was to measure state laws against *federal* mandates set out under the Elections Clause—in the former, what is a "regulation"; in the latter, who is "the Legislature." No such federal question is posed here. Instead, the only issue presented here is whether Defendants followed Michigan's Election Code. Count I, like Plaintiffs' other claims, is premised solely on violations of state law. It does not raise an Elections and Electors Clauses claim and should therefore be dismissed.

   **5.    Plaintiffs' claim under the Michigan Constitution and Michigan Election Code fails a matter of law.**

   Count IV of Plaintiffs' complaint alleges that Defendants violated several provisions of Michigan's Election Code, primarily related to the rights of election challengers and inspectors, which they then assert gives them the right to conduct a

free-wheeling audit and "void[] the election" under Article II, section 4 of the Michigan Constitution. Am. Compl. ¶¶ 208–28.[6]

But Plaintiffs omit essential text from the constitutional provision they seek to vindicate, which unequivocally states that Michigan voters have only the right to an audit "*in such a manner as prescribed by law*." Mich. Const. art. II, § 4(1)(h) (emphasis added). Since passing that constitutional amendment in 2018, Michigan has indeed implemented procedures, under Michigan law, for the Secretary of State to conduct an audit after an election. *See* Mich. Comp. Laws § 168.31a. Indeed, Secretary Benson has confirmed that the State *will* conduct an audit of the 2020 general election, as Michigan law requires her to do.[7] Plaintiffs are entitled to nothing more under the Michigan Constitution or Michigan Election Code. Indeed, it is Plaintiffs' request for an extralegal audit and order "voiding the election" that

---

[6] For this claim, Plaintiffs rely on the *Costantino* complaint, which Plaintiffs seek to "incorporate[] by reference." Am. Compl. ¶ 81. Even though the claims in *Costantino* have been found unlikely to succeed, and two appeals of that ruling have been rejected, Plaintiffs lift entire allegations from the *Costantino* complaint and place them in their own. *Compare id.* ¶ 216 ("Defendants even physically blocked and obstructed election inspectors from the Republican party, including Plaintiff, by adhering large pieces of cardboard to the transparent glass doors so the counting of absent voter ballots was not viewable."), *with id.* Ex. 4 ¶ 93 (same). It hardly needs stating Plaintiffs cannot assert injuries of parties not before this Court.

[7] *See Statement from Secretary of State Jocelyn Benson on Planned Audits to Follow Certification of the Nov. 3, 2020, General Election*, Mich. Sec'y of State (Nov. 19, 2020), https://www.michigan.gov/documents/sos/SOS_Sstatement_on_Audits_ 708290_7.pdf. The Court can take judicial notice of this statement, which is a public document published on the Michigan Secretary of State's website. *See, e.g.*, *Geiling*, 2014 WL 8473822, at *6.

would rewrite the statutory and constitutional provisions under which they purport to bring this claim. Am. Compl. ¶ 228. Count IV should therefore be dismissed.

**E.      Plaintiffs are not entitled to the relief they seek.**

Lastly, rather than *remedying* a constitutional violation, Plaintiffs' requested relief would *create* one. No court has ever done what Plaintiffs ask this Court to do—throw out the election results, discard 5.5 million votes, and ordain the losing candidate the victor by judicial proclamation. As another federal court stated this past week when the Trump Campaign sought an order prohibiting Pennsylvania's officials from certifying election results, "[t]his Court has been unable to find any case in which a plaintiff has sought such a drastic remedy in the contest of an election, in terms of the sheer volume of votes asked to be invalidated." *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992, at *1 (M.D. Pa. Nov. 21, 2020), *aff'd*, No. 20-3371 (3d Cir. Nov. 27, 2020).

America is a democracy. "Voters, not lawyers, choose the President. Ballots, not briefs, decide elections." *Boockvar*, 2020 WL 7012522 at *9.

## V.      CONCLUSION

For the foregoing reasons, Proposed Intervenor-Defendants respectfully request that the Court dismiss Plaintiffs' amended complaint.

Dated: November 30, 2020.            Respectfully submitted,

*/s/ Scott R. Eldridge*

Marc E. Elias (DC #442007)          Scott R. Eldridge (P66452)
Jyoti Jasrasaria (DC #1671527)*     MILLER CANFIELD
PERKINS COIE LLP                    One Michigan Avenue, Suite 900
700 Thirteenth Street NW, Suite 800 Lansing, Michigan 48933
Washington, DC 20005                Telephone: (517) 483-4918
Telephone: (202) 654-6200           eldridge@millercanfield.com
melias@perkinscoie.com
jjasrasaria@perkinscoie.com
                                    Mary Ellen Gurewitz (P25724)
                                    CUMMINGS & CUMMINGS
William B. Stafford (WA #39849)*    423 North Main Street, Suite 200
Jonathan P. Hawley (WA #56297)*     Royal Oak, Michigan 48067
PERKINS COIE LLP                    Telephone: (248) 733-3405
1201 Third Avenue, Suite 4900       maryellen@cummingslawpllc.com
Seattle, Washington 98101
Telephone: (206) 359-8000
wstafford@perkinscoie.com           Seth P. Waxman (DC #257337)
jhawley@perkinscoie.com             Brian M. Boynton (DC #483187)*
                                    WILMER CUTLER PICKERING
                                    HALE AND DORR LLP
John F. Walsh (CO #16642)*          1875 Pennsylvania Avenue NW
WILMER CUTLER PICKERING             Washington, D.C. 20006
HALE AND DORR LLP                   Telephone: (202) 663-6000
1225 Seventeenth Street, Suite 2600 seth.waxman@wilmerhale.com
Denver, Colorado 80202              brian.boynton@wilmerhale.com
Telephone: (720) 274-3154
john.walsh@wilmerhale.com

*Counsel for Proposed Intervenor-Defendants DNC Services
Corporation/Democratic National Committee and Michigan Democratic
Party*

*Admission forthcoming

25