# EXHIBIT 16

STATE OF MICHIGAN
IN THE THIRD JUDICIAL CIRCUIT COURT
COUNTY OF WAYNE

| | |
|---|---|
| SARAH STODDARD and ELECTION INTEGRITY FUND, <br><br> Plaintiffs, <br><br> v. <br><br> CITY ELECTION COMMISSION of the City of Detroit, and <br><br> JANICE WINFREY, in her official capacity as Detroit City Clerk and chairperson of the City Election Commission, and <br><br> WAYNE COUNTY BOARD OF CANVASSERS, <br><br> Defendants. | Case No. 20-014604-CZ <br> Hon. Timothy M. Kenny, Chief Judge |

There is no other pending or resolved civil action
arising out of the same transaction or occurrence
alleged in the Complaint.

**FIRST AMENDED VERIFIED COMPLAINT
FOR EMERGENCY AND PERMANENT INJUNCTIVE RELIEF**

**INTRODUCTION**

1. This lawsuit challenges the ongoing action of the City Election Commission of the City of Detroit and the Detroit City Clerk with respect to one-party control of the Absent Voter Counting Board ("AVCB") operating out of TCF Center (formerly known as Cobo Hall). Specifically, individual inspectors from a single major political party are "curing" rejected absentee ballots – those absentee ballots that cannot be properly read by the electronic counting machine -- including transposing the voter's perceived choices onto a new ballot, without the

1

required oversight and signatures of two election inspectors—one from each major political party. These rejected absentee ballots are reviewed by only one inspector, in most cases a Democratic inspector, who then unilaterally decides how the voter intended to vote and creates a ballot that can be read reflecting the inspector's unilateral decision.

2. This violates MCL 168.765a (10), which requires one inspector from each party to be present at the AVCB. It also violates the Secretary of State's rule, as set forth in her controlling Election Officials' Manual, requiring that any cured ballot bear the signature of two election inspectors who have expressed a preference for different political parties. *See* 168.765a(13). In application, this arrangement in the TCF Center fails to comply with Michigan law and invites fraud.

3. This action seeks an order: (a) halting further "curing" of absentee ballots rejected by the counting machines until one inspector from each party is present to observe the cure and sign the cured ballot; and (b) segregating the rejected and cured ballots; and (c) halting certification until the statutorily-required inspectors can be located and used to ensure election integrity.

## PARTIES

4. Plaintiffs are an individual Michigan citizen and election challenger working at the TCF Center in Detroit and a nonprofit organization devoted to ensuring election integrity that credentialed that individual as a challenger, the Election Integrity Fund. Both Plaintiffs have standing to enforce local officials' compliance with their clear legal duty under Michigan election laws and regulations that protect the purity of Michigan elections. Mich. Const. art. 4, section 2.

5. The City Election Commission, which consists of the City Clerk, the City Council president, and the Corporation Counsel, is responsible for establishing and supervising the operation of an AVCB in the City of Detroit. The City Clerk is the chief election official for the

Document received by the MI Wayne 3rd Circuit Court.

City of Detroit and serves as chair of the Commission. The Commission and Clerk ("the City Defendants") had and have authority to allow and to halt the conduct complained of here, and to take the remedial actions sought by Plaintiff.

6. The Wayne County Board of Canvassers, which consists of four members (Monica Palmer, Jonathan Kinloch, William Hartmann, and Allen Wilson), is responsible for canvassing the vote in Wayne County and the City of Detroit once the City Defendants have completed their canvass and delivered the results to the Wayne County Board of Canvassers. The Wayne County Board of Canvassers has the power, authority, and responsibility to ensure that all legally cast ballots are counted, and the concomitant responsibility to ensure that **only** legally cast ballots are counted. The Wayne County Board of Canvassers also has the statutory authority to correct erroneous, incorrect, and fraudulent tabulations of votes before sending the results to the Secretary of State. MCL 168.823. Per Michigan Law (MCL 168.821), the Wayne County Board of Canvassers could begin their canvass of the election results – including the correction of any mistakes or errors in the counting process – on November 5, 2020 at 9:00 A.M.

## BACKGROUND

7. For 2020, the Defendants decided to establish a combined AVCB at TCF Center in Detroit, Michigan. This means that absentee ballots for hundreds of precincts are being processed and counted at the facility under the control of a single AVCB. At over 100 tables, groups of election inspectors (between one and approximately five inspectors per table) are processing and counting ballots.

8. Under the Michigan Constitution, the legislature has authority to pass laws to regulate the conduct of elections and to ensure their purity and integrity. Pursuant to that authority,

Document received by the MI Wayne 3rd Circuit Court.

3

the Michigan Legislature passed MCL 168.765a, which requires absentee votes to be counted by election inspectors in a particular manner. It requires, in relevant part:

> (10) The oaths administered under subsection (9) must be placed in an envelope provided for the purpose and sealed with the red state seal. Following the election, the oaths must be delivered to the city or township clerk. Except as otherwise provided in subsection (12), a person in attendance at the absent voter counting place or combined absent voter counting place shall not leave the counting place after the tallying has begun until the polls close. Subject to this subsection, the clerk of a city or township may allow the election inspectors appointed to an absent voter counting board in that city or township to work in shifts. A second or subsequent shift of election inspectors appointed for an absent voter counting board may begin that shift at any time on election day as provided by the city or township clerk. However, an election inspector shall not leave the absent voter counting place after the tallying has begun until the polls close. If the election inspectors appointed to an absent voter counting board are authorized to work in shifts, at no time shall there be a gap between shifts and the election inspectors must never leave the absent voter ballots unattended. **At all times, at least 1 election inspector from each major political party must be present at the absent voter counting place and the policies and procedures adopted by the secretary of state regarding the counting of absent voter ballots must be followed**. A person who causes the polls to be closed or who discloses an election result or in any manner characterizes how any ballot being counted has been voted in a voting precinct before the time the polls can be legally closed on election day is guilty of a felony.

*See* MCL 168.765a (10) (emphasis added).

9. Pursuant to MCL 168.31, the Secretary of State has authority to issue instructions and rules that are consistent with the Michigan statutes and Constitution, and that bind local election authorities, including Defendants. Likewise, pursuant to MCL 168.765a(13), the Secretary has the authority to develop instructions consistent with the law for the conduct of AVCBs or combined AVCBs. "The instructions developed under [] subsection [13] are binding upon the operation of an absent voter counting board or combined absent voter counting board used in an election conducted by a county, city, or township."

Document received by the MI Wayne 3rd Circuit Court.

10. Under her statutory authority, the Secretary of State promulgated an election manual that requires the following:

> *Each ballot rejected by the tabulator must be visually inspected by an election inspector to verify the reason for the rejection. **If the rejection is due to a false read the ballot must be duplicated by two election inspectors who have expressed a preference for different political parties.** Duplications may not be made until after 8 p.m. in the precinct (place the ballot requiring duplication in the auxiliary bin). At an AV counting board duplications can be completed throughout the day. NOTE: The Bureau of Elections has developed a video training series that summarizes key election day management issues, including a video on Duplicating Ballots. These videos can be accessed at the Bureau of Elections web site at www.michigan.gov/elections; under "Information for Election Administrators"; Election Day Management Training Videos. Election Officials Manual, Michigan Bureau of Elections, Chapter 8, last revised October 2020.*
>
> https://www.michigan.gov/documents/sos/VIII_Absent_Voter_County_Boards_265998_7.pdf

## COUNT I: INJUNCTIVE RELIEF

11. Defendants are failing to comply with MCL 168.765a, in that there is not, at all times, at least one inspector from each political party at the absentee voter counting place. Rather, many of the tables assigned to precincts under the authority of the AVCB are staffed by inspectors of only one party. Those inspectors alone are making decisions regarding the processing and counting of ballots.

12. This includes the filling out of brand new "cure" or "duplicate" ballots. The process Defendants have sanctioned works in the following manner. When an absentee ballot is processed and approved for counting, it is fed into a counting machine. Some ballots are rejected—that is, they are a "false read"—because of tears, staining (such as coffee spills) over-votes, and other errors. In some of these cases, inspectors can personally, visually inspect the rejected ballot and determine what is causing the machine to find a "false read." When this happens, the inspectors

5

Document received by the MI Wayne 3rd Circuit Court.

can duplicate the ballot, expressing the voter's intent in a new ballot that can then be fed into the machine and counted.

13. However, under MCL 168.765a and the Secretary of State's controlling manual, as cited above, an inspector from each major party must be present and must actually sign to indicate that they approve of the duplication.

14. Rather than following this controlling mandate, the AVCB is allowing a Democratic Party inspector only to fill out a duplicate. Republicans sign only "if available."

15. On information and belief, Defendants are allowing hundreds or thousands of ballots to be "duplicated" solely by the Democratic Party inspectors and then counted.

16. This is in clear violation of the law and Defendants should stop it immediately. The duplicated ballots should be preserved and segregated, and no further duplication of absentee ballots should occur unless an inspector from each major party is present.

WHEREFORE, Plaintiffs respectfully request that this Court grant temporary, preliminary, and permanent injunctive relief:

(1) Enjoining the all Defendants to immediately cease and desist from allowing any further duplication of absentee ballots until one inspector from each major party observes and approves the duplication process;

(2) Enjoining all Defendants to immediately preserve and segregate all duplicate ballots and the underlying ballots originally rejected by the tabulators;

(3) Enjoining the Wayne County Board of Canvassers from certifying or delivering election results to the Secretary of State or State Board of Canvassers until the ballots at issue have been properly verified by members of both major political parties and re-tabulated;

Document received by the MI Wayne 3rd Circuit Court.

(4) Enjoining the Wayne County Board of Canvassers to exercise their authority under MCL 168.823 to correct the errors identified herein; and,

(5) Granting such further and additional relief as is just and proper.

## VERIFICATION

I declare under the penalties of perjury that this verified complaint for Emergency and Permanent Injunctive Relief has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

*Sarah A. Stoddard* (signature)

Verification Dated: November 4, 2020

Dated: November 5, 2020

Respectfully submitted,

Edward D. Greim (pro hac forthcoming)

*Edward Greim* (signature)

Special Counsel, Thomas More Society

7

Document received by the MI Wayne 3rd Circuit Court.

Missouri Bar No. 54034
GRAVES GARRETT, LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com

*[signature]*

Ian A. Northon (P65082)
RHOADES MCKEE PC
55 Campau Ave NW #300
Grand Rapids, MI 49503
Tel.: (616) 233-5125
Fax: (616) 233-5269
ian@rhoadesmckee.com
smd@rhoadesmckee.com
Special Counsel, Thomas More Society
Counsel for Plaintiffs

Document received by the MI Wayne 3rd Circuit Court.