# EXHIBIT 7


T# 35771

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF ANTRIM

WILLIAM BAILEY

    Plaintiff

Case No. 20-9238-CZ

v.

ANTRIM COUNTY

HON. _____

    Defendant.

---

Matthew S. DePerno (P52622)
DePerno Law Office, PLLC
Attorney for Plaintiff
951 W. Milham Avenue
PO Box 1595
Portage, MI 49081
(269) 321-5064

---

## VERIFIED COMPLAINT

NOW COMES Plaintiff, WILLIAM BAILEY, by and through his attorney, DePERNO LAW OFFICE, PLLC and for his Complaint against ANTRIM COUNTY, states the following:

### JURISDICTION and VENUE

1. Plaintiff WILLIAM BAILEY ("Plaintiff") is an individual residing at 1592 N. Intermediate Lake Road, Central Lake, Michigan 49622, Antrim County, Michigan. Plaintiff is a registered voter and Antrim County, Michigan. On November 3, 2020 Plaintiff voted in person in the 2020 presidential election at the polling location in Central Lake Township, Antrim County.

2. Defendant ANTRIM COUNTY ("Defendant") is a public agency with its registered office located at 203 E. Cayuga St., Bellaire, MI 49615.

3. Defendant is tasked with the obligation to hold all elections in Antrim County in a fair and legal manner. Antrim County is made up of 22 precincts.

4. The transactions that give rise to this cause of action occurred in Antrim County, State of Michigan.

5. Plaintiff respectfully requests that this Honorable Court grant injunction relief, for all the reasons stated in his complaint, motion for temporary restraining order, supporting affidavit, exhibits, and accompanying brief, which are all incorporated herein by reference.

6. Pursuant to MCL 600.4545(1), "[a]n action may be brought in the circuit court of any county of this state whenever it appears that material fraud or error has been committed at any election in such county at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township, or municipality thereof."

7. Michigan's Constitution declares that "[n]o person shall be denied the equal protection of the laws ...." Mich. Const. 1963, art 1, §2.

8. The Michigan Constitution's "purity of elections" clause states that "the legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting." Mich. Const. 1963, art 2, §4(2).

9. Plaintiff requests relief as recognized in *Shoemaker v City of Southgate*, 24 Mich App 676; 180 NW2d 815 (1970).

10. This action is properly filed in Antrim County Circuit Court pursuant to MCR 3.306(A)(2), Mich. Const. art. 1, §2 and art. 2, §4, MCL 600.4545, and MCL 600.605.

2

11. Plaintiff requests this Court order "a speedy hearing" of this action and "advance it on the calendar" as provided by MCR 2.605(D).

12. Venue is proper pursuant to MCR 3.306(D).

## COMMON ALLEGATIONS

13. The general election was held on Tuesday, November 3, 2020.

14. Antrim County uses the Dominion Voting Systems election management system and voting machines (tabulators) ("Dominion"). These tabulators were shown to miscount votes cast for President Donald Trump and instead count them for Presidential Candidate Joe Biden.

15. Antrim County is just one of 47 counties in Michigan that uses the Dominion voting system to process ballots. As noted in the letter attached hereto from Senate President Pro Tempore Aric Nesbitt [Exhibit 1], "[t]his is particularly concerning when at least one other secretary of state, specifically in Texas, refused to certify Dominion Voting Systems for use because the examiner could not verify that the system was 'safe from fraudulent or unauthorized manipulation.'" This letter is signed by 40 Michigan State Senators and Representatives.

16. The letter references that the allegations are "backed up by sworn affidavits of over 100 Michigan citizens, real people, willing to face legal consequences to their lives and livelihoods to stand by their assertions.

17. In addition, the letter attached hereto from 22nd District Representative Lana Theis [Exhibit 2] expresses similar concerns about the issue in Antrim County with Dominion voting systems.

18. At 9:30 am on Wednesday, November 4, 2020, unofficial results posted by the Antrim County Clerk showed that 16,047 voters had cast a ballot in the presidential election.

DEPERNO LAW OFFICE, PLLC • 951 W. MILHAM AVENUE, PO BOX 1595 • PORTAGE, MI 49081
(269) 321-5064 (PHONE) • (269) 321-5164 (FAX)

Presidential Candidate Joe Biden received 7,769 votes in the county and President Donald Trump received 4,509 [Exhibit 3].[1]

19. Antrim County voted 62% in favor of President Trump in 2016.

20. Democratic candidates Gary Peters and Dana Ferguson also outperformed their Republican opponents in the county.

21. On Wednesday morning, November 4, 2020, Plaintiff turned on the television to watch the local news and was shocked to see an election map showing Antrim County in bright blue – meaning that the majority of voters in Antrim County had voted Democrat. Plaintiff immediately contacted Jim Gurr (who worked for Helena Township (Antrim County) election. Upon information and belief, Jim Gurr then contacted Defendant County Clerk Sheryl Guy's office and asked her office to review the results, which appeared skewed and incorrect.

22. On November 5, 2020, Defendant County Clerk Sheryl Guy released amended results which showed that 18,059 residents had cast a ballot in the election [Exhibit 4].[2] Of those, Presidential Candidate Joe Biden received 7,289 votes in the county and President Donald Trump received 9,783; resulting in President Donald Trump receiving 54%, still significantly less than 2016.

23. On November 21, 2020, Defendant County Clerk Sheryl Guy released second amended results[3] which now show 16,044 residents had cast a ballot in the election [Exhibit 5].[4] Of those, Presidential Candidate Joe Biden received 5,960 votes in the county and President

---

[1] Only including pages 1-14 (results for President, Senator, Congress 1st District, State Legislature 105th District

[2] Only including pages 3-14. Pages 1-2 not available on Antrim County website.

[3] http://www.antrimcounty.org/elections.asp

[4] Only including pages 1-14.

Donald Trump received 9,748; resulting in President Donald Trump receiving 60.75%, which was more in line and consistent with 2016.

24. Of serious concern is why Presidential Candidate Joe Biden had more than 7,700 votes on election night.

25. Of equal concern is why Presidential Candidate Joe Biden had 7,289 votes on November 5, 2020.

26. Of equal concern is why Presidential Candidate Joe Biden's vote count dropped to 5,960 votes on November 21, 2020. What happened to the mysterious 1,740+ overvotes registered on election night?

27. Of equal concern is why Defendant's vote count for registered voters dropped from 18,059 on November 5, 2020 to 16,044 on November 21, 2020. That is a startling 11.2% reducing in total voters.

28. It is an obvious fact that Presidential Candidate Joe Biden received more votes than actually cast for him, including an extra 2,015 "phantom votes." But for Plaintiff contacting Jim Gurr, who contacted Defendant County Clerk Sheryl Guy's office, this mistake would not have been corrected.

29. There are many other questions that remain unanswered, including but not limited to (1) whether the Dominion tabulators in Antrim County were tampered with, (2) whether they have the capacity to connect to the internet, (3) whether they had any open VPN ports during the election, (4) if connected to the internet, was the connection secure, (5) whether the machines were accessed via the use of removable media to transfer voting information, (6) whether the ballot images were preserved in every precinct per federal and state election law, (7) whether the audit logs were preserved and synchronized, (8) whether the audit logs were altered or edited by

any person operating the system, (9) whether Dominion pre-loaded any algorithms and configurations on the machines that alter the results, and if so, what algorithms and configurations were pre-loaded, and (10) whether the "purge option" that is built into Dominion utilized to cancel, switch, or manipulate votes, in the same way it has historically been utilized in Venezuela and Cuba.

30. Plaintiff and others seek to learn the answers to these questions, including why Defendant initially registered "phantom voters" for Presidential Candidate Joe Biden and why the Dominion machines altered and switched votes for him.

31. Secretary of State Benson released a statement blaming the county clerk for not updating certain "media drives," but her statement failed to provide any coherent explanation of how the Dominion Voting Systems software and vote tabulators produced such a massive miscount.[5]

32. Secretary Benson continued: "After discovering the error in reporting the unofficial results, the clerk worked diligently to report correct unofficial results by reviewing the printed totals tape on each tabulator and hand-entering the results for each race, for each precinct in the county." *Id.*

33. What Secretary Benson fails to address is what would have happened if no one "discover[ed] the error." Indeed, when Sheryl Guy testified before Michigan's Joint Oversight Committee on November 19, 2020, she failed to and was unable to answer this question.

34. Tabulator errors related to Dominion occurred elsewhere in Michigan on election night. For instance, Wayne County and Oakland County used the same Dominion voting system tabulators as did Antrim County. In Oakland County, Democrat Melanie Hartman was wrongly

---

[5] https://www.michigan.gov/documents/sos/Antrim_Fact_Check_707197_7.pdf
(emphasis in original).

declared the winner of the commissioner's race by a 104-vote margin. A computer issue at the Rochester Hills clerk's office caused them to double-count some votes. After elections officials caught the error, Republican Adam Kochenderfer was declared the winner with 1,127 more votes than Hartman.[6]

35. These vote tabulator failures are a mechanical malfunction that, under MCL 168.831-168.839, requires a "special election" in the precincts affected.

36. Michigan's Election Code, MCL 168.831-168.839, provides the board of canvassers shall order a special election as governed by those precincts affected by the defect or mechanical malfunction. The board of county canvassers "is responsible for resolving any claims that malfunctioning voting equipment or defective ballots may have affected the outcome of a vote on an office appearing on the ballot." Michigan Manual for Boards of County Canvassers.

## COUNT 1
## CONSTITUTIONAL RIGHT TO ACCURACY AND INTEGRITY OF ELECTIONS
### Michigan Constitution – Article 2, Section 4, Paragraph 1(h)

37. Plaintiff restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

38. Plaintiff's constitutional rights have been violated. Plaintiff brings this action to vindicate his constitutional right to a free and fair election ensuring the accuracy and integrity of the process pursuant to the Michigan Constitution, art. 2, sec. 4, par. 1(h), which states all Michigan citizens have:

> "The right to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections."

---

[6] https://www.freep.com/story/news/politics/elections/2020/11/08/election-misinformation-michigan-vote-antrim-county/6209693002/

39. The Mich. Const., art. 2, sec. 4, further states, "All rights set forth in this subsection shall be self-executing. This subsection shall be liberally construed in favor of voters' rights in order to effectuate its purposes."

40. Based upon all the allegations of fraud, statutory violations, and other misconduct, as stated herein, it is necessary to permit Plaintiff to immediately take a forensic image of the 22 precinct tabulators, thumb drives, related software, the Clerk's "master tabulator," and conduct an investigation of those images, after which a manual recount of the election results and an independent audit of the November 3, 2020 election may be ordered to ensure the accuracy and integrity of the election.

## COUNT 2
## VIOLATION OF "PURITY OF ELECTIONS" CLAUSE
### Michigan Constitution – Article 2, Section 4, Paragraph 2

41. Plaintiff restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

42. The Michigan Constitution's "purity of elections" clause states, "the legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of ballot, to guard against abuses of elective franchise, and to provide for a system of voter registration and absentee voting. Const. 1963, art 2, §4(2).

43. "The phrase 'purity of elections' does not have a single precise meaning. But it unmistakably requires fairness and evenhandedness in the election laws of this state." *Barrow v Detroit Election Comm'n*, 305 Mich App 649, 676; 854 NW2d 489 (2014).

44. Michigan statutes protect the purity of elections by allowing one person to case one vote and not permitting manipulation of votes through mechanical means or otherwise.

45. Based upon the above allegations of fraud, statutory violations, and other misconduct, as stated herein, it is necessary to permit Plaintiff to immediately take a forensic image of the 22 precinct tabulators, thumb drives, related software, the Clerk's "master tabulator," and conduct an investigation of those images, after which a manual recount of the election results and an independent audit of the November 3, 2020 election may be ordered to ensure the accuracy and integrity of the election.

## COUNT 3
## ELECTION FRAUD; MCL 600.4545(2); MCL 158.861

46. Plaintiff restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

47. MCL 600.4545(1) permits an "[a]n action may be brought in the circuit court of any county of this state whenever it appears that material fraud or error has been committed at any election in such county at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township, or municipality thereof."

48. Such action may be brought to remedy fraudulent or illegal voting or tampering with ballots or ballot boxes before a recount pursuant to MCL 168.861, which states,

> "For fraudulent or illegal voting, or tampering with the ballots or ballot boxes before a recount by the board of county canvassers, the remedy by quo warranto shall remain in full force, together with any other remedies now existing."

49. Based upon the allegations contained herein, material fraud or error occurred in this election so that the outcome of the election was affected.

50. Based upon the above allegations of fraud, statutory violations, and other misconduct, as stated herein, it is necessary to permit Plaintiff to immediately take a forensic image of the 22 precinct tabulators thumb drives, related software, and the Clerk's "master

9

tabulator," and conduct an investigation of those images, after which a manual recount of the election results and an independent audit of the November 3, 2020 election may be ordered to ensure the accuracy and integrity of the election.

## COUNT 4
## COMMON LAW ELECTION FRAUD

51. Plaintiff restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

52. MCR 3.306(B)(2) permits an action to request the issuance of a writ of quo warranto. An application to proceed by quo warranto must disclose sufficient facts and grounds and sufficient apparent merit to justify further inquiry.

53. Quo warranto is warranted whenever it appears that material fraud or error has been committed at any election. This type of action is brought to challenge the validity of the election itself. *Barrow v Detroit Mayor*, 290 Mich App 530, 543; 820 NW2d 658 (2010). For all the reasons stated herein material fraud or error was committed during the election as it relates to the Dominion voting systems used in Antrim County's 22 precincts.

54. This quo warranto claim is brought to remedy fraudulent or illegal voting or tampering with ballots via Dominion. Based upon the allegations contained herein, material fraud or error occurred in this election so that the outcome of the election was affected.

55. Based upon the above allegations of fraud, statutory violations, and other misconduct, as stated herein, it is necessary to permit Plaintiff to immediately take a forensic image of the 22 precinct tabulators, thumb drives, related software, the Clerk's "master tabulator," and conduct an investigation of those images, after which a manual recount of the election results and an independent audit of the November 3, 2020 election may be ordered to ensure the accuracy and integrity of the election.

## COUNT 5
## EQUAL PROTECTION VIOLATION

### Mich Const, art 1, § 2

56. Plaintiff restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

57. The Equal Protection Clause of the Michigan Constitution provides that "[n]o person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights." Mich Const, art I, § 2.

58. This clause is coexistensive with the United States Constitution's Equal Protection Clause. *Harville v State Plumbing & Heating*, 218 Mich App 302, 305-306; 553 NW2d 377 (1996). See also *Bush v Gore*, 531 US 98, 104 (2000) ("Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."); *Harper v Virginia Bd. of Elections*, 383 US 663, 665 (1966) ("Once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Claus of the Fourteenth Amendment.")[7]

59. The right to vote is a fundamental civil right and a political right. The Equal Protection Clause forbids election officials granting the right to vote on equal terms but later devaluing a person's vote through failing to use specific standards and uniform rules.

60. Only specific standards and uniform rules provide sufficient guarantees of equal treatment. Every person has the right to vote, with their vote counted as one vote, and not have his or her vote diluted and voided out by the counting of an illegal vote.

---

[7] Most United States Supreme Court rulings concerning the right to vote frame the issue in terms of the Equal Protection Clause. Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance & Procedure* §18.31(a) (2012 & Supp. 2015).

11

61. Defendant's handling of the election, as described herein, establishes how rampant and systemic fraud devalued and diluted Plaintiff's civil and political rights.

62. The illegal procedures, illegal standards, and illegal treatment of the ballots and the counting of ballots in Antrim County unconstitutionally burden the fundamental right to vote.

63. Defendant has no legitimate interest in counting illegal and improper ballots, counting ballots more than once, improperly handling the collection and counting of ballots, or using the Dominion voting system to do the same in a way that dilutes and cancels out rightfully and properly cast votes.

64. Based upon the above allegations of fraud, statutory violations, and other misconduct, as stated herein, it is necessary to permit Plaintiff to immediately take a forensic image of the 22 precinct tabulators, thumb drives, related software, the Clerk's "master tabulator," and conduct an investigation of those images, after which a manual recount of the election results and an independent audit of the November 3, 2020 election may be ordered to ensure the accuracy and integrity of the election.

## COUNT 6
## STATUTORY ELECTION LAW VIOLATIONS
## MCL 168.765(5)

65. Plaintiff restates and incorporates as if set forth fully herein all preceding allegations contained in this Complaint.

66. Michigan election law, MCL 168.765(5), requires Defendants to post the following absentee voting information anytime an election is conducted which involves a state or federal office:

   a. The clerk must post before 8:00 a.m. on Election Day: 1) the number of absent voter ballots distributed to absent voters 2) the number of absent voter ballots returned before Election Day and 3) the number of absent voter ballots delivered for processing.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (fax)

  b. The clerk must post before 9:00 p.m. on Election Day: 1) the number of absent voter ballots returned on Election Day 2) the number of absent voter ballots returned on Election Day which were delivered for processing 3) the total number of absent voter ballots returned both before and on Election Day and 4) the total number of absent voter ballots returned both before and on Election Day which were delivered for processing.

  c. The clerk must post immediately after all precinct returns are complete: 1) the total number of absent voter ballots returned by voters and 2) the total number of absent voter ballots received for processing.

67. Upon information and belief, Defendant failed to post by 8:00 a.m. on Election Day the number of absentee ballots distributed to absent voters and failed to post before 9:00 p.m. the number of absent voters returned before on Election Day. Indeed, none of that information is available on Defendant's website.

68. Per Michigan Election law, all absentee voter ballots must be returned to the clerk before polls close at 8:00 pm. MCL 168.764a. Any absentee voter ballots received by the clerk after the close of the polls on election day will not be counted.

69. Upon information and belief, if Defendant received additional absentee ballots in the early morning hours after election day and after the counting of the absentee ballots had concluded, without proper oversight, then Defendant failed to follow proper election protocol.

70. Based upon the above allegations of fraud, statutory violations, and other misconduct, as stated herein, it is necessary to permit Plaintiff to immediately take a forensic image of the 22 precinct tabulators, thumb drives, related software, the Clerk's "master tabulator," and conduct an investigation of those images, after which a manual recount of the election results and an independent audit of the November 3, 2020 election may be ordered to ensure the accuracy and integrity of the election.

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (Phone) • (269) 321-5164 (Fax)

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court grant the following relief:

A. issue an order requiring allowing Plaintiff to take a forensic image of the 22 precinct tabulators, thumb drives, related software, the Clerk's "master tabulator," and conduct an investigation of those images.

B. issue an order allowing Plaintiff to conduct an independent and non-partisan audit to determine the accuracy and integrity of the November 3, 2020 election;

C. issue a protective order as requested in the attached Motion for TRO.

D. grant such other and further relief as is equitable and just and grant him costs, expenses and attorney fees incurred in having to bring this action.

Respectfully submitted

DePERNO LAW OFFICE, PLLC

Dated: November 23, 2020

Matthew S. DePerno (P52622)

## VERIFICATION

I, WILLIAM BAILEY, hereby state and affirm that I have read the foregoing Complaint and that it is true and accurate to the best of my information, knowledge, and belief.

DATED: November 23, 2020

William Bailey

14

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 321-5164 (fax)