# EXHIBIT 10

**STATE OF MICHIGAN**
**COURT OF APPEALS**

DONALD J. TRUMP FOR
PRESIDENT, INC., and
ERIC OSTERGREN,

       Plaintiffs-Appellants,

v.

JOCELYN BENSON, in her official
Capacity as SECRETARY OF STATE,

       Defendant-Appellee.

Court of Appeals No. 355378

Court of Claims No. 20-000225-MZ

**APPEAL INVOLVING AN
EMERGENCY ELECTION
DISPUTE**

**ORAL ARGUMENT REQUESTED**

---

Mark F. (Thor) Hearne, II (P40231)
Stephen S. Davis (*pro hac* pending)
TRUE NORTH LAW, LLC
112 S. Hanley Road, Suite 200
St. Louis, MO 63105
(314) 296-4000
thor@truenorthlawgroup.com

*Counsel for Plaintiffs-Appellants*

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Attorney General's Office
Post Office Box 30736
Lansing, MI 48989
(517) 335-7659
meingasth@michigan.gov

*Counsel for Defendant-Appellee*

---

**BRIEF IN SUPPORT OF APPLICATION FOR LEAVE TO APPEAL UNDER
MCR 7.105 AND IN SUPPORT OF MOTION FOR IMMEDIATE
CONSIDERATION UNDER MCR 7.211(C)(6)**

---

RECEIVED by MCOA 11/30/2020 11:21:02 PM

## TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES ..................................................................... iii

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF QUESTIONS INVOLVED ...................................................1

INTRODUCTION ...........................................................................2

BACKGROUND ............................................................................2

STANDARD OF REVIEW ...................................................................6

ARGUMENT 7

    I.    Jocelyn Benson, as Michigan's Secretary of State and "Chief Election
        Officer," is the proper defendant. ...........................................7

        A.    Secretary of State Jocelyn Benson is Michigan's "Chief Election
                Officer" required to enforce Michigan election law in a uniform
                and equal manner throughout the state. .....................................7

        B.    Michigan's election code provides for the critically important
                role of challengers as a bipartisan method to secure free and fair
                elections. ...............................................................14

    II.    Judge Stephens was wrong to dismiss the plaintiffs' action as moot. . .................19

    III.    Jessica Connarn's affidavit is not hearsay. ...........................................22

CONCLUSION AND RELIEF SOUGHT .......................................................24

PROOF OF SERVICE ....................................................................27

ADDENDUM ............................................................................28

RECEIVED by MCOA 11/30/2020 11:21:02 PM

# INDEX OF AUTHORITIES

## CASES

*Barrow v. Detroit Election Comm.*,
   854 N.W.2d 489 (Mich. Ct. App. 2014) ................................................................ 18

*Citizens Protecting Michigan's Constitution v. Secretary of State*,
   922 N.W.2d 404 (Mich. Ct. App. 2018), *aff'd* 921 N.W.2d 247 (Mich. 2018)....... 10

*City of Novi v Robert Adell Children's Funded Trust*,
   701 N.W.2d 144 (Mich. 2005)............................................................................... 20

*Costantino, et al. v. City of Detroit, et al.*,
   No. 20-014780-AW (Wayne County Circuit Court filed Nov. 8, 2020) ................... 4

*Davis v. Secretary of State*,
   2020 Mich. App. LEXIS 6128 (Mich. Ct. App. Sep. 16, 2020) ............................... 9

*Donkers v Kovach*,
   745 N.W.2d 154 (Mich. Ct. App. 2007) ................................................................... 6

*Elher v. Misra*,
   878 N.W.2d 790 (Mich. 2016).................................................................................. 6

*Federated Publications, Inc. v. Lansing*,
   649 N.W.2d 383 (Mich. 2002)................................................................................ 20

*Fitzpatrick v. Secretary of State*,
   440 N.W.2d 45 (Mich. Ct. App. 1989) ................................................................... 10

*Gawlik v Rengachary*,
   714 N.W.2d 386 (Mich. Ct. App. 2006) ................................................................... 6

*Gleason v. Kincaid*,
   917 N.W.2d 685 (Mich. Ct. App. 2018) ................................................................. 21

*Hare v. Berrien County Board of Election*,
   129 N.W.2d 864 (Mich. 1964).................................................................................. 9

*Lawrence v. Blackwell*,
   430 F.3d 368 (6th Cir. 2005) ................................................................................. 22

*League of Women Voters of Michigan v. Secretary of State*,
   2020 Mich. App. LEXIS 709 (Mich. Ct. App. Jan. 27, 2020)............................. 6, 10

RECEIVED by MCOA 11/30/2020 11:21:02 PM

*Merle v. United States*, 3
    51 F.3d 92 (3rd Cir. 2003) ................................................................. 21

*MGM Grand Detroit, LLC v Community Coalition for Empowerment, Inc.*,
    633 N.W.2d 357 (Mich. 2001) ........................................................... 20

*Michigan Alliance for Retired Americans v. Secretary of State*,
    2020 Mich. App. LEXIS 6931 (Mich. Ct. App. Oct. 16, 2020) ................... 6, 9, 15

*Mitchell v. Kalamazoo Anesthesiology*,
    908 N.W.2d 918 (Mich. Ct. App. 2017) ............................................. 6, 23

*Moore v. Ogilvie*,
    394 U.S. 814 (1969) .......................................................................... 21

*Paquin v. City of St. Ignace*,
    934 N.W.2d 650 (Mich. 2019) ........................................................ 20, 21

*People v. Corridore*,
    2019 Mich. App. LEXIS 3537 (Mich. Ct. App. June 27, 2019) ................... 23

*People v. Davis*,
    363 N.W.2d 35 (Mich. Ct. App. 1984) ................................................ 23

*People v. Douglas*,
    852 N.W.2d 587 (Mich. 2014) ............................................................ 23

*People v. Silver*,
    2015 Mich. App. LEXIS 1504 (Mich. Ct. App. July 28, 2015) ................... 23

*Rosario v. Rockefeller*,
    410 U.S. 752 (1973) .......................................................................... 21

**STATUTES**

Const. 1963, art 2, §4(2) ........................................................................ 18

MCL 168.1 ........................................................................................... 10

MCL 168.21 ...................................................................................... 9, 10

MCL 168.31 ...................................................................................... 9, 10

MCL 168.32 ........................................................................................... 10

MCL 168.761d ...................................................................................... 15

RECEIVED by MCOA 11/30/2020 11:21:02 PM

MCL 168.765a .................................................................................................... 15, 16

MCL 168.801 .............................................................................................................. 7

MCL 168.809 .............................................................................................................. 7

MCL 168.811 .............................................................................................................. 7

MCL 168.821 ......................................................................................................... 7, 18

MCL 168.822 ...................................................................................................... 7, 8, 9

MCL 168.841 ............................................................................................................ 18

MCL 168.842 .............................................................................................................. 9

MCL 168.932(f) ........................................................................................................ 15

MCL 600.6446 ............................................................................................................ 1

MCL 168.810a ............................................................................................................ 7

## MICHIGAN RULES

MCR 7.203(B)(1) ......................................................................................................... 1

MCR 7.205(A)(1) ........................................................................................................ 1

MRE 801 ............................................................................................................... 23, 24

## OTHER AUTHORITIES

*Boards of County Canvassers Manual*, ch. 4, p. 13 ................................................ 18

*Michigan Election Officials' Manual* ...................................................................... 18

RECEIVED by MCOA 11/30/2020 11:21:02 PM

## JURISDICTIONAL STATEMENT

The Michigan Court of Claims entered an Opinion and Order denying the motion for emergency injunctive relief filed by Donald J. Trump for President, Inc. (Trump campaign), and Eric Ostergren on November 6, 2020.  Appx. 1-6.  This Court has jurisdiction under MCL 600.6446 and MCR 7.203(B)(1).  This appeal is timely because it was filed on November 6, 2020. MCR 7.205(A)(1).

## STATEMENT OF QUESTIONS INVOLVED

1.      Is Secretary of State Jocelyn Benson, as Michigan's "chief election officer," the proper defendant who can grant the relief sought in the Trump campaign's and Eric Ostergren's motion for emergency injunctive relief?

> The Court of Claims said no.
> The Secretary of State said no.
> The Plaintiffs say yes.

2.      Is the plaintiffs' motion for emergency injunctive relief rendered moot because the Court of Claims' hearing was conducted after most of the absent voter ballots had been processed?

> The Court of Claims said yes.
> The Secretary of State said yes.
> The Plaintiffs say no.

3.      Was Jessica Connarn's affidavit describing her personal first-hand observations and including supporting evidence hearsay?

> The Court of Claims said yes.
> The Secretary of State said yes.
> The Plaintiffs say no.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

## INTRODUCTION

Because Michigan Secretary of State Jocelyn Benson (who is Michigan's chief election officer) did not require the local election officials she supervises and directs to comply with Michigan election law when conducting this year's general election, President Trump's campaign committee and a Michigan citizen, voter, and designated challenger, Eric Ostergren, filed a complaint in the Michigan Court of Claims and filed an emergency motion for declaratory judgment. *See* Appx. 30-48. The case was assigned to Judge Cynthia Stephens.

Judge Stephens denied the Plaintiffs' motion for emergency injunctive relief for three reasons. *First*, Judge Stephens held, "the relief requested [can] not issue against the Secretary of State. This is so, Judge Stephens concluded, even though Secretary of State Benson is Michigan's "chief elections officer" responsible for overseeing the conduct of Michigan elections which includes the obligation to exercise supervisory authority over local election officials. *Second*, Judge Stephens denied the relief requested in the verified petition because Judge Stephens ruled the Jessica Connarn sworn affidavit was hearsay. *Finally*, Judge Stephens denied the Plaintiffs' motion because she concluded it was moot. Judge Stephens is wrong on all three points. The Plaintiffs bring this Application for Leave to Appeal under Rule 7.105 and their Motion for Immediate Consideration under Rule 7.211(C)(6). Immediate consideration is sought because this concerns the conduct of the general election and the Electoral College meets on December 14.

## BACKGROUND

There is a difference between a ballot and a vote. A ballot is a piece of paper. A vote is a ballot that has been completed by a citizen registered to vote who is eligible to cast a ballot and who cast that ballot in compliance with Michigan election law by, among other things, verifying their identity and casting the ballot on or before Election Day. The Michigan election code

2

RECEIVED by MCOA 11/30/2020 11:21:02 PM

provides detailed rules for the conduct of elections.  The Michigan election code must be uniformly and equally followed by all Michigan election authorities so that all Michigan voters have an equal opportunity to cast a lawful ballot.

It is the task of Secretary Benson and Michigan election officials under her supervision and direction to assure that only ballots cast by individuals entitled to cast a vote are counted, that all ballots cast by lawful voters are counted, and that the election is uniformly and equally conducted in accord with the United States Constitution, Michigan's Constitution, and Michigan's election code.

A fraudulent ballot, if counted, disenfranchises a lawful vote cast by a Michigan citizen. Ballots that are ineligible to be counted will cancel out ballots eligible voters cast, effectively disenfranchising the lawful vote of a Michigan citizen.  Challengers play an important role in assuring the transparency and integrity of elections.  For example, Michigan law provides it is a felony punishable by up to two years in state prison for any person to threaten or intimidate a challenger or prevent a challenger from exercising their rights or failing to provide a challenger with "conveniences for the performance of the[ir] duties."  MCL 168.734.

Unfortunately, some local election jurisdictions, including Wayne County, did not conduct the general election as required by Michigan law.  And Secretary of State Benson did not require local election jurisdictions to allow challengers to meaningfully observe the conduct of the election and the tabulation and tallying of ballots.

Among other violations of Michigan's election code, election officials in Wayne County refused to permit statutorily designated challengers from meaningfully observing the conduct of the election and the processing and tabulation of ballots.  Some election officials pre-dated ballots that were not eligible to be counted by altering the date the ballot was received.  And challengers

RECEIVED by MCOA 11/30/2020 11:21:02 PM

were not allowed to review any video recordings of the remote unattended ballot drop boxes. *See* verified complaint, Appx. 33-34.[1]

The Plaintiffs brought this action in the Court of Claims asking the Court to order Secretary Benson to direct local election officials and election inspectors to provide meaningful access to observe the counting of absentee ballots. *See* Appx. 32-33 ¶¶10-15. The complaint was a verified complaint sworn and attested to by Eric Ostergren. Appx. 38. *See also* MCR 600.6434(2). The complaint was supported with an affidavit with an exhibit. *See* Appx. 64-60. Jessica Connarn testified in her affidavit that she personally witnessed a poll worker's distress because that poll worker was instructed to count ineligible ballots being tallied as lawful votes at the Detroit central counting board. Appx. 67. The verified complaint explained that the counting board had excluded Republican challengers from being able to meaningfully observe the processing of absentee ballots and that challengers were not allowed to observe the video surveillance of remote unattended ballot drop boxes. Appx. 30 ¶2, 32 ¶11, 37 ¶9.

---

[1] See also affidavits in support of complaint filed in the U.S. District Court for the Western District of Michigan in *Donald J. Trump for President, Inc., et al. v. Benson, et al.*, No. 1:20CV1083 (W.D. Mich. filed Nov. 11, 2020), Exhibit 1, ECF No. 1-1 (Deluca aff. ¶¶7-9, 16-18; Langer aff. ¶3; Papsdorf aff. ¶3; Frego aff. ¶9; Downing aff. ¶¶2-9, 11, 15, 22; Sankey aff. ¶¶5-8; Ostin aff. ¶¶5-7; Cavaliere aff. ¶3; Cassin aff. ¶4; Rose aff. ¶18; Zimmerman aff. ¶8; Langer aff. ¶3; Poplawski aff. ¶3; Henderson aff. ¶7; Fuqua-Frey aff. ¶5; Ungar aff. ¶4; Eilf aff. ¶¶9, 17; Jeup aff. ¶¶6-7; Tietz aff. ¶¶9-18; McCall aff. ¶¶5-6; Arnoldy aff. ¶¶5, 8-9) (regarding Republican challengers not being admitted to ballot counting boards). *See also id.* (Pettibone aff. ¶3; Kinney aff., p. 1; Wasilewski aff., p. 1; Schornak aff. ¶¶18-19; Dixon aff., p. 1; Kolanagireddy aff., p. 1; Kordenbrock aff. ¶¶3-4; Seidl aff., p. 1; Kerstein aff. ¶4; Harris aff. ¶3; Sitek aff. ¶4) (regarding lack of bipartisan teams of election workers duplicating ballots). *See also id.* (A. Seely aff. ¶15; Wasilewski aff., p. 1; Schornak aff. ¶13; Brunell aff. ¶¶17, 19; Papsdorf aff. ¶3; Spalding aff. ¶¶8, 11; Antonie aff. ¶3; Daavettila aff., p. 3; Atkins aff. ¶3; Harris aff. ¶3; Sherer aff. ¶21; Drzewiecki aff. ¶¶5-6; Klamer aff. ¶4; Rauf aff. ¶¶9-14; Roush aff. ¶¶5-7; Kinney aff. ¶5) (regarding ballot numbers not matching ballot envelopes and challengers thereto ignored). *See also id.* (Henderson aff. ¶8) (regarding counting table of election workers having lost eight ballot envelopes). *See also id.* (Meyers aff. ¶3, 4, 7) (regarding ballot drop box). *See also* affidavits submitted in support of complaint in *Costantino, et al. v. City of Detroit, et al.*, No. 20-014780-AW (Wayne County Circuit Court filed Nov. 8, 2020).

RECEIVED by MCOA 11/30/2020 11:21:02 PM

The verified complaint and motion seeking emergency relief was filed on November 4, the day after the general election when the Wayne County central counting board was still processing absentee ballots.  This case was assigned to Judge Cynthia Stephens.  Judge Stephens held a hearing on November 5 and issued an opinion and order on November 6.  Judge Stephens denied the Plaintiffs' emergency motion for declaratory judgment.  *See* Appx. 1,

An absent voter ballot, unlike a ballot cast in person, is not cast by an eligible voter who presents himself or herself at the polling place and validates their bona fides as an eligible voter with identification confirmed by a bipartisan team of election officials who also confirm the individual is an eligible registered voter whose name is in the poll book.  Rather, an absent voter ballot is delivered to the election inspectors by mail or by being deposited in an unattended remote ballot drop box.

Michigan's election code vests Secretary of State Jocelyn Benson, as Michigan's "chief election officer," with the responsibility to direct and oversee Michigan counties', townships', and villages' conduct of elections.  Michigan's election code contains a host of provisions intended to prevent fraudulent or ineligible ballots from being counted.  Michigan election law also requires that challengers be allowed to observe the casting, processing, and certification of ballots and that the remote and unattended ballot drop boxes be secure and monitored by video.  Because Secretary Benson did not require local election officials to allow challengers to meaningfully observe the conduct of the election and the video surveillance of the remote, unattended ballot drop boxes, the Plaintiffs brought this action.

5

RECEIVED by MCOA 11/30/2020 11:21:02 PM

## STANDARD OF REVIEW

Plaintiffs filed an "emergency motion for declaratory relief under MCR 2.605(D)."  Appx. 1.  As this Court recently held in another case involving this election, *Michigan Alliance for Retired Americans v. Secretary of State*, "[t]his Court reviews de novo a trial court's decision on a motion for summary disposition in an action seeking declaratory relief."  2020 Mich. App. LEXIS 6931, *12 (Mich. Ct. App. Oct. 16, 2020) (citing *League of Women Voters of Mich. v. Secretary of State*, 2020 Mich. App. LEXIS 709, *7 (Mich. Ct. App. Jan. 27, 2020)).

Although this Court generally reviews "a trial judge's evidentiary decisions for an abuse of discretion," *Elher v. Misra*, 878 N.W.2d 790, 794 (Mich. 2016), this Court "review[s] de novo whether the trial judge properly interpreted and applied the rules of evidence to the facts."  *Mitchell v. Kalamazoo Anesthesiology*, 908 N.W.2d 918, 925 (Mich. Ct. App. 2017) (citing *Donkers v Kovach*, 745 N.W.2d 154, 156 (Mich. Ct. App. 2007).  "An error of law may lead a trial court to abuse its discretion…."  *Donkers*, 745 N.W.2d at 156 (quoting *Gawlik v Rengachary*, 714 N.W.2d 386, 391 (Mich. Ct. App. 2006).  "A trial judge abuses his or her discretion when the judge selects an outcome that is outside the range of principled outcomes."  *Mitchell*, 908 N.W.2d at 325 (citing *Elher*, 878 N.W.2d at 790.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

**ARGUMENT**

I.      **Jocelyn Benson, as Michigan's Secretary of State and "Chief Election Officer," is the proper defendant.**

      A.      **Secretary of State Jocelyn Benson is Michigan's "Chief Election Officer" required to enforce Michigan election law in a uniform and equal manner throughout the state.**

The Michigan Legislature entrusted the conduct of elections to three administrative bodies who report to the Secretary of State; a "board of inspectors," a "board of county canvassers," and the "board of state canvassers."  The board of inspectors, among its other duties, canvasses the ballots and compares the ballots to the poll books.  *See* MCL 168.801.  "Such canvass shall be public and the doors to the polling places and at least 1 door in the building housing the polling places and giving ready access to them shall not be locked during such canvas."  *Id.*  The members of the board of inspectors (one from each party) are required to seal the ballots and election equipment and certify the statement of returns and tally sheets and deliver the statement of returns and tally sheet to the township or city clerk, who shall deliver it to the probate court judge, who will then deliver the statement of returns and tally sheet to the "board of county canvassers."  MCL 168.809.  "All election returns, *including poll lists, statements, tally sheets, absent voters' return envelopes bearing the statement required [to cast an absentee ballot] ... must be carefully preserved*."  MCL.168.810a and 168.811 (emphasis added).

Each county has a board of county canvassers, which is "responsible for canvassing the votes cast within the county [it] serve[s].  The Board members certify elections for local, countywide and district offices which are contained entirely within the county they serve.  The Board members are also responsible for inspecting the county's ballot containers every four years."  *Michigan Election Officials' Manual*, p. 5.  *See also* MCL 168.821, *et seq.*

7

After the board of inspectors completes its duties, the board of county canvassers is to meet at the county clerk's office "no later than 9 a.m. on the Thursday after" the election.  November 5, 2020 is the date for the meeting.  MCL 168.821.  The board of county canvassers has power to summon and open ballot boxes, correct errors, and summon election inspectors to appear.  Among other duties and responsibilities, the board of county canvassers shall do the following provided in MCL 168.823(3).

The board of county canvassers shall correct obvious mathematical errors in the tallies and returns.  The board of county canvassers may, if necessary for a proper determination, summon the election inspectors before them, and require them to count any ballots that the election inspectors failed to count, to make correct returns in case, in the judgment of the board of county canvassers after examining the returns, poll lists, or tally sheets, the returns already made are incorrect or incomplete, and the board of county canvassers shall canvass the votes from the corrected returns.  In the alternative to summoning the election inspectors before them, the board of county canvassers may designate staff members from the county clerk's office to count any ballots that the election inspectors failed to count, to make correct returns in case, in the judgment of the board of county canvassers after examining the returns, poll lists, or tally sheets, the returns already made are incorrect or incomplete, and the board of county canvassers shall canvass the votes from the corrected returns.  When the examination of the papers is completed, or the ballots have been counted, they shall be returned to the ballot boxes or delivered to the persons entitled by law to their custody, and the boxes shall be locked and sealed and delivered to the legal custodians.

The county board of canvassers shall "conclude the canvass at the earliest possible time and in every case no later than the fourteenth day after the election," which this year is November

RECEIVED by MCOA 11/30/2020 11:21:02 PM

17.  MCL 168.822(1).  But, "[i]f the board of county canvassers fails to certify the results of any election for any office or proposition by the fourteenth day after the election as provided, the board of county canvassers shall immediately deliver to the secretary of the board of state canvassers all records and other information pertaining to the election.  The board of state canvassers shall meet immediately and make the necessary determinations and certify the results within the 10 days immediately following the receipt of the records from the board of county canvassers."  MCL 168.822(2).

The Michigan board of state canvassers then meets at the Secretary of State's office the twentieth day after the election to announce its determination of the canvass "not later than the fortieth day after the election."  For this general election this year those dates are November 23 and December 3, respectively.  MCL 168.842.  Michigan law provides the Secretary of State may direct an expedited canvass of the returns for the election of electors for President and Vice President.

Jocelyn Benson is Michigan's Secretary of State and is the "chief election officer" responsible for overseeing the conduct of Michigan elections.  MCL 168.21 ("The secretary of state shall be the chief election officer of the state and shall have supervisory control over local election officials in the performance of their duties under the provisions of this act."); 168.31(1)(a) (the "Secretary of State shall … issue instructions and promulgate rules … for the conduct of elections and registrations in accordance with the laws of this state").

Local election officials must follow Secretary Benson's instructions regarding the conduct of elections.  Michigan law directs Secretary Benson to "[a]dvise and direct local election officials as to the proper methods of conducting elections."  MCL 168.31(1)(b).  *See also Hare v. Berrien County Board of Election*, 129 N.W.2d 864 (Mich. 1964); *Davis v. Secretary of State*, 2020 Mich.

9

App. LEXIS 6128, at *9 (Mich. Ct. App. Sep. 16, 2020).  With regard to absent voter ballots, for example, this Court has recently recognized that Secretary Benson "has issued instructions to clerks to transmit a ballot to a voter by mail only where adequate time exists for the voter to receive the ballot by mail, vote, and return the ballot before 8:00 p.m. on election day."  *Michigan Alliance for Retired Americans v. Secretary of State*, 2020 Mich. App. LEXIS 6931, *5 (Mich. Ct. App. Oct. 16, 2020).

Secretary Benson is responsible for assuring Michigan's local election officials conduct elections in a fair, just, and lawful manner.  *See* MCL 168.21; 168.31; 168.32.  *See also League of Women Voters of Michigan v. Secretary of State*, 2020 Mich. App. LEXIS 709, *3 (Mich. Ct. App. Jan. 27, 2020); *Citizens Protecting Michigan's Constitution v. Secretary of State*, 922 N.W.2d 404 (Mich. Ct. App. 2018), *aff'd* 921 N.W.2d 247 (Mich. 2018); *Fitzpatrick v. Secretary of State*, 440 N.W.2d 45 (Mich. Ct. App. 1989).  Secretary Benson directly oversees and supervises the work of election inspectors, counting boards, the boards of county canvassers and the board of state canvassers.  Secretary Benson is the official ultimately responsible for ensuring that challengers be permitted to meaningfully observe the canvassing process at all levels.

Secretary Benson agrees that "Michigan election law designates the Secretary of State as Michigan's 'chief election officer' with *supervisory control over local election officials in the performance of their election related duties*."[2]  *See also Powell v. Benson*, No. 2:20CV11023 (E.D. Mich. May 19, 2020), ECF No. 31, Consent Decree ¶5 ("Defendant Secretary Benson is the chief election officer of the State of Michigan and has supervisory control over local election officials in the performance of their duties under the Michigan Election Law, MCL 168.1 *et seq.*  In this

---

[2] *Michigan's Election System Structure Overview*, Secretary of State website at: https://www.michigan.gov/sos/0,4670,7-127-1633_8716-27476--,00.html (emphasis added).

RECEIVED by MCOA 11/30/2020 11:21:02 PM

capacity, she oversees Michigan's absentee voting program and maintains and operates the Secretary of State's voter information website.").[3]

Secretary Benson's website also states, "Jocelyn Benson is Michigan's 43rd Secretary of State.  In this role she is focused on ensuring elections are secure and accessible, and dramatically improving customer experiences for all who interact with our offices."[4]  The website continues, "Benson is the author of *State Secretaries of State: Guardians of the Democratic Process*, the first major book on the role of the secretary of state in *enforcing election and campaign finance laws*." *Id.* (emphasis added).

According to Secretary Benson's website, "Michigan's elections system is administered by 1,603 county and local election officials making it the most decentralized elections system in the nation."[5]  Michigan elections are run "primarily by more than 1,500 city and township clerks, with 83 county clerks also carrying significant responsibilities."  Benson congressional testimony, pp. 1-2.  Requiring all candidates and voters to sue every local election jurisdiction in Michigan (as Judge Stephens apparently believed) is contrary to Secretary Benson's acknowledged responsibility to enforce Michigan election law and oversee local election officials conducting the election under her supervision.

Secretary Benson has agreed in a pending federal case, that it is not necessary to name as a separate defendant every one of (or even some of) Michigan's eighty-three local election jurisdictions or Michigan's more than 1,520 election officials.  See *Daunt v. Benson*, No. 1:20CV522 (W.D. Mich. 2020), pending before Federal District Judge Jonker in the U.S. District

---

[3] Available at:  https://www.michigan.gov/documents/sos/consent_decree_696315_7.pdf.

[4] *Michigan Secretary of State Jocelyn Benson*, Secretary of State website at: https://www.michigan.gov/sos/0,4670,7-127-1640_9105---,00.html.

[5] Available at:  https://www.michigan.gov/sos/0,4670,7-127-1633_8716-27476--,00.html.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

Court for the Western District of Michigan.  In *Daunt*, a Michigan registered voter did name local election jurisdictions in addition to Secretary Benson.  Secretary Benson stipulated that, "Plaintiff and State Defendants agree that the County Defendants are not necessary parties to this litigation. Though the city and county clerks play a role, the Secretary of State has the ultimate responsibility for maintaining Michigan's voter rolls."  ECF No. 27 (filed Sept. 17, 2020).  The local election officials and jurisdictions were dismissed and the case proceeded against just Secretary Benson.

Despite Secretary Benson's authority and responsibility as Michigan's "chief election officer," Judge Stephens denied the request for an injunction because "the day-to-day operation of an absent voter counting board is controlled by the pertinent city or township clerk" and "the relief requested [can] not issue against the Secretary of State, who is the only named defendant in this action…."  Appx. 3, 5.

Judge Stephens denied the motion for emergency declaratory judgment, in part, because she concluded that the plaintiffs "have not presented this Court with any statute making the Secretary of State responsible for maintaining a database of [ballot drop] boxes," and because Judge Stephens believed Plaintiffs have not "directed the Court's attention to any authority directing the Secretary of State to segregate the ballots that come from such drop-boxes, thereby undermining plaintiffs' request to have such ballots segregated…and rendering it impossible for the Court to grant the requested relief against this defendant."  Appx. 4-5.  Judge Stephens, thus, held that "the relief requested [can]not issue against the Secretary of State, who is the only named defendant in this action…."  *Id.* at 5.

But, less than a week earlier, on October 29, 2020, in *Carra*, Judge Stephens issued an order, acknowledged and cited in her opinion, that directed Secretary Benson to require local election officials to provide poll challengers meaningful access provided the challengers wore face

RECEIVED by MCOA 11/30/2020 11:21:02 PM

masks and practiced social distancing.  Appx. 3 ("the Court notes that recent guidance from the Secretary of State, as was detailed in matter before this Court in *Carra et al v. Benson et al*, Docket No. 20-000211-MZ, expressly advised local election officials to admit credentialed election challengers, provided that the challengers adhered to face-covering and social-distancing requirements").  Judge Stephens' order in *Carra v. Benson* directed Secretary Benson to instruct local election authorities to admit challengers.  This is the precise relief, in part, these Plaintiffs requested in their emergency motion.

In *Carra v. Benson*, Judge Stephens entered a Stipulated Final Order on November 10, 2020.  The Order stated Secretary Benson "shall issue amended written guidance to local election officials" regarding access of poll challengers and watchers.[6]

Judge Stephens' Order further provided Secretary Benson "shall provide this amended directive to local election officials in a manner most likely to ensure timely receipt."  Order of November 10, 2020 in *Carra v. Benson*.  Judge Stephens Order further stated that it would be enforced through contempt of court proceedings.  *Id.*  Clearly in *Carra v. Benson*, Judge Stephens

---

[6] Judge Stephens' amended order further provided:

"**Challengers / Poll Watchers:**  Challengers and poll watchers have their rights and responsibilities established under law.  Challengers and poll watchers are required to wear masks that cover their nose and mouth unless they cannot medically tolerate a face covering.  Challengers and poll watchers who cannot medically tolerate a face covering should wear a face shield if possible.  Election workers may require that challengers and poll watchers observe proper social distancing, meaning that challengers and poll watchers should maintain at least six (6) feet of distance between themselves and election workers, as much as possible.  However, challengers may stand in closer proximity to election workers to have a challenge heard, observe the poll book, or perform other tasks established under law provided that these close personal interactions are as brief as reasonably possible.  Once a challenge, observation, or other permitted task is complete, challengers and poll watchers should resume remaining six (6) feet away from voters and poll workers.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

believed Secretary Benson was the proper defendant and that Judge Stephens had jurisdiction and authority to direct Secretary Benson to issue an amended directive to local election officials.

Judge Stephens' decision in this case is wrong.  Judge Stephens' decision is contrary to Michigan's election code, contrary to Secretary Benson's own declarations and contrary to Judge Stephens' own prior decision in *Carra*.  Accordingly, this Court should reverse the Court of Claims' decision holding that the "relief requested [can]not issue against the Secretary of State…." Appx. 5.

**B.     Michigan's election code provides for the critically important role of challengers as a bipartisan method to secure free and fair elections.**

Challengers provide the transparency and accountability to assure ballots are lawfully cast and counted as provided in Michigan's election code and voters can be confident the outcome of the election was honestly and fairly determined by eligible voters.  Challengers representing a political party, candidate, or organization interested in the outcome of the election provide a critically important role in protecting the integrity of elections including the prevention of voter fraud and other conduct (whether maliciously undertaken or by incompetence) that could affect the conduct of the election.  *See* MCL 168.730-738.

In her recent testimony before Congress, Secretary Benson emphasized the importance of protecting the bipartisan conduct of elections.

> Although we all aspire to bipartisanship when it comes to strengthening our democratic institutions, election security is an area where we cannot afford to be divided.  Without a functioning voting system, which the American people trust to deliver accurate results, we cannot maintain a representative democracy.
>
> Despite the politically charged environment, I am encouraged by the bipartisanship and spirit of cooperation that exists among election officials in our state and across the country, particularly when it comes to election security.
>
> *Testimony of Jocelyn Benson Before the Committee on House Administration*,

14

RECEIVED by MCOA 11/30/2020 11:21:02 PM

United States Congress (May 8, 2019), p. 6.[7]

Bipartisan measures protecting election integrity comprise a fundamental and significant part of the Michigan election code.  For example, MCL 168.765a requires that absent voter counting boards be composed of bipartisan teams of election inspectors.

> At all times, at least 1 election inspector from each major political party must be present at the absent voter counting place and the policies and procedures adopted by the secretary of state regarding the counting of absent voter ballots must be followed.

Michigan absent voter counting boards, under the authority of Secretary Benson, did not comply with this statute.  These boards were processing and tallying ballots without inspectors from each party being present.  Former Detroit Director of Elections Daniel Baxter testified at the Michigan board of state canvassers' November 23 meeting that the law (MCL 168.765a) was not followed.  Former Detroit Director of Elections Baxter testified that the Wayne County counting board proceeded to process and tally absent voter ballots without bipartisan teams.  Board of state canvassers member Norman Shinkle questioned Former Director Baxter about the lack of Republican poll workers.

| | |
|---|---|
| Norman Shinkle: | Are you familiar with the law that says each major party should have one person of each party in every poll precinct? |
| Daniel Baxter: | Yes, I am familiar with that. |
| Norman Shinkle: | Okay, is it your opinion that we had 134 Republicans at the AB count board on election night? |
| Daniel Baxter: | No there were not 134 Republicans at the Central Counting Board on November 2nd, 3rd, or the 4th. |
| Norman Shinkle: | In your opinion, why wasn't the law followed in your opinion? |

---

[7] Available at:  https://www.michigan.gov/documents/sos/SOS_Benson_Testimony_CHA_ Hearing_05_08_19_654675_7.pdf.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

Daniel Baxter:         Well, when we went to recruit Republican poll workers, we could
                        not get the allotted number of poll workers to make sure that there
                        were enough at each one of the tabulation stations – at each one of
                        the central counting boards – and as such, we had to govern
                        ourselves based upon standard operational procedures, which means
                        that we continue to move forward with the tabulation of absentee
                        ballots with the staff that we received, recruited, and trained.[8]

Michigan law also requires that challengers be allowed to observe and challenge the

conduct of the election.  A political party, incorporated organization, or organized committee of

interested citizens may designate one "challenger" to serve at each counting board.  MCL 168.730.

Michigan's election code provides that challengers shall have the following rights and

responsibilities:

a.      An election challenger shall be provided a space within a polling place
        where they can observe the election procedure and each person applying to
        vote.  MCL 168.733(1).

b.      An election challenger must be allowed opportunity to inspect poll books
        as ballots are issued to electors and witness the electors' names being
        entered in the poll book.  MCL 168.733(1)(a).

c.      An election Challenger must be allowed to observe the manner in which the
        duties of the election inspectors are being performed.  MCL 168.733(1)(b).

d.      An election challenger is authorized to challenge the voting rights of a
        person who the challenger has good reason to believe is not a registered
        elector.  MCL 168.733(1)(c).

e.      An election challenger is authorized to challenge an election procedure that
        is not being properly performed.  MCL 168.733(1)(d).

f.      An election challenger may bring to an election inspector's attention any of
        the following: (1) improper handling of a ballot by an elector or election
        inspector; (2) a violation of a regulation made by the board of election
        inspectors with regard to the time in which an elector may remain in the
        polling place; (3) campaigning and fundraising being performed by an
        election inspector or other person covered by MCL 168.744; and/or (4) any

---

[8] Video of November 23, 2020 meeting of Michigan Board of State Canvassers, available at:
https://www.youtube.com/watch?v=lytepDbGK5E.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

other violation of election law or other prescribed election procedure.  MCL 168.733(1)(e).

g.      An election challenger may remain present during the canvass of votes and until the statement of returns is duly signed and made.  MCL 168.733(1)(f).

h.      An election challenger may examine each ballot as it is being counted.  MCL 168.733(1)(g).

i.      An election challenger may keep records of votes cast and other election procedures as the challenger desires.  MCL 168.733(1)(h).

j.      An election challenger may observe the recording of absent voter ballots on voting machines.  MCL 168.733(1)(i).

Part of the county canvass process is "examin[ation of] the 'Challenged Voters' and 'Challenged Procedures' sections of the Poll Book" and absent voter ballot challenges.  *Boards of County Canvassers Manual*, ch. 4, p. 13.  Review of absent uniformed services voter or overseas voter ballots was still ongoing when Judge Stephens held her November 5 hearing.  Review of these ballots must be performed by bipartisan teams of election inspectors.  *See* MCL 168.733.  Challengers must be allowed to oversee the conduct of the election to assure transparency and public confidence in the conduct of the election.  *See id.*  The Michigan board of state canvassers is "responsible for approv[ing] voting equipment for use in the state, certify[ing] the result of elections held statewide …."  *Michigan Election Officials' Manual*, p. 4.  *See also* MCL 168.841, *et seq.*

Jessica Connarn is an attorney who was acting as a Republican challenger at the TCF Center in Wayne County.  Appx 65.  Jessica Connarn's affidavit describes how an election poll worker told Jessica Connarn that the poll worker "was being told to change the date on ballots to reflect that the ballots were received on an earlier date."  *Id.* at 66 ¶1.  Jessica Connarn also provided a photograph of a note handed to her by the poll worker in which the poll worker indicated she (the poll worker) was instructed to change the date ballots were received.  *See id.* at 67-68.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

Jessica Connarn's affidavit demonstrates that poll workers in Wayne County were pre-dating absent voter ballots, so that absent voter ballots received after 8:00 p.m. on Election Day could be counted.

Secretary Benson failed to direct that local election officials must allow challengers to observe the video surveillance of remote, unattended ballot drop boxes. Michigan's election code, MCL 168.932(f) prohibits "A person other than an absent voter," and certain others, such as an immediate family member, from possessing and returning an absent voter ballot. *See also Michigan Alliance for Retired Americans v. Secretary of State*, 2020 Mich. App. LEXIS 6931, *23-24 (Mich. Ct. App. Oct. 16, 2020) ("On balance, the ballot-handling restrictions pass constitutional muster given the State's strong interest in preventing fraud."). In prior litigation Judge Stephens invalidated this law that was intended to prevent vote fraud and "ballot harvesting." This Court overturned Judge Stephens finding that she did not have authority to modify the Michigan Legislature's laws governing the conduct of the election. Ballot harvesting, which Michigan law forbids, and this Court upheld, is especially relevant to remote, unattended ballot drop boxes.

Last month the Michigan Legislature amended Michigan's election code to allow election authorities to establish remote unattended ballot drop-off boxes. *See* MCL 168.761d. A remote, unattended ballot drop box is equivalent to a polling place where a person can deposit a ballot. But, unlike a polling place, there is no validation that the individual depositing a ballot in the box is an individual who is qualified to cast a vote or to lawfully deliver a ballot cast by a lawful voter.

The Michigan Constitution's "purity of elections" clause states, "the legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective

RECEIVED by MCOA 11/30/2020 11:21:02 PM

franchise, and to provide for a system of voter registration and absentee voting." Const. 1963, art 2, §4(2). "The phrase 'purity of elections' does not have a single precise meaning. But it unmistakably requires fairness and evenhandedness in the election laws of this state." *Barrow v. Detroit Election Comm.*, 854 N.W.2d 489, 504 (Mich. Ct. App. 2014). Michigan statutes protect the purity of elections by allowing ballot challengers and bipartisan election inspectors to monitor absentee ballots at counting boards and the video surveillance of remote, unattended ballot drop boxes. This did not happen because Secretary Benson did not direct that local election officials under her direction and authority make sure challengers could observe these aspects of the conduct of the election.

## II.    Judge Stephens was wrong to dismiss the plaintiffs' action as moot.

Judge Stephens erroneously held this case has been mooted and relief unavailable because the counting of ballots "is now complete." Appx. 5. This action was filed on November 4, the day after the election when Wayne County was still processing ballots. Appx. 7. While it may be true that by the time Judge Stephens held a hearing on the afternoon of November 5, the initial counting of absent voter ballots had been largely completed, the work of the election inspectors was still ongoing and the preliminary ballot tallies had not yet been provided to the Wayne County board of county canvassers. Additionally, at the time of the hearing, the overseas and military absent voter ballots had not yet been processed or tallied.

The Michigan Supreme Court recognizes that it "does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before us *unless* the issue is one of public significance that is likely to recur, yet evade judicial review." *Paquin v. City of St. Ignace*, 504 Mich. 124, 149, 934 N.W.2d 650, 663 (Mich. 2019) (quoting *Federated Publications, Inc. v. Lansing*, 467 Mich. 98, 112; 649 NW2d 383 (Mich. 2002)) (emphasis added).

RECEIVED by MCOA 11/30/2020 11:21:02 PM

A party seeking to dismiss an action as moot – especially one of such profound importance as the laws governing the conduct of elections – must satisfy a "heavy burden required to demonstrate mootness." *Paquin*, 504 Mich. at 131 n.4 (citing *City of Novi v Robert Adell Children's Funded Trust*, 473 Mich. 242, 255; 701 N.W.2d 144 n.12 (Mich. 2005); *see also MGM Grand Detroit, LLC v Community Coalition for Empowerment, Inc*., 465 Mich. 303, 306-307; 633 N.W.2d 357 (Mich. 2001) ("[T]o get an appeal dismissed as moot, thus depriving a party seeking redress of a day in court, the party urging mootness on the court must make a very convincing showing that the opportunity for an appellate court to review the matter should be denied.  Not surprisingly, it is rare for a court to grant such a motion.").

This election is still not over, and the Electoral College does not meet until December 14.  Additionally, there are countless opportunities for the issues brought up in this case to arise again.  As we all know, Michigan conducts a presidential election every four years, United States House of Representative elections occur every two years, and United States Senate elections every six years.  Michigan state and local governments conduct their own elections even more frequently.

The "challenged action [will be] in its duration too short to be fully litigated prior to cessation or expiration." *Paquin*, 504 Mich. at 144.  Here, the "challenged action" is preventing designated challengers from meaningfully observing the processing of absent voter ballots and from reviewing the video surveillance of remote unattended ballot drop boxes.  This case was filed less than twenty-four hours after the Wayne County counting board began excluding challengers from the TCF Center, and the election inspectors continued counting without bipartisan teams and without allowing challengers to be present.  This failure to comply within Michigan law cannot be litigated on Election Day or the day after it occurs.  For this reason, *Paquin* and other cases recognized that an election ending does not make a case moot.  *Gleason v. Kincaid*, 323 Mich.

20

RECEIVED by MCOA 11/30/2020 11:21:02 PM

App. 308, 316, 917 N.W.2d 685, 690 (Mich. Ct. App. 2018) (rejecting mootness argument on appeal because "the strict time constraints of the election process necessitate that, in all likelihood, such challenges often will not be completed before a given election occurs"); *see also Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973) (noting that "[a]lthough the June primary election has been completed and the petitioners will be eligible to vote in the next scheduled New York primary, this case is not moot, since the question the petitioners raise is 'capable of repetition, yet evading review.'").

The Michigan Supreme Court in *Paquin* noted that there is some disagreement among courts about "whether the issue must be likely to recur as to the particular party involved in the case." *Paquin*, 504 Mich. at 145. The *Paquin* court appears to have adopted this requirement, although with relaxed standards. Federal courts have done the same. *See, e.g.*, *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969) (applying the "capable of repetition, yet evading review" exception without examining the likelihood of the plaintiffs running for office in the future); *Merle v. United States*, 351 F.3d 92, 95 (3rd Cir. 2003) (holding that the case was not moot because it was reasonable to expect that the plaintiff would seek to run for office again); *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) ("[a]lthough Lawrence has not specifically stated that he plans to run in a future election, he is certainly capable of doing so, and under the circumstances it is reasonable to expect that he will do so."). Secretary Benson has two years left in her current term and will be supervising and directing many elections during this time.

Judge Stephens was wrong to deny the Plaintiffs' complaint and motion for emergency declaratory judgment to be moot. Likewise, this appeal is not moot.

21

RECEIVED by MCOA 11/30/2020 11:21:02 PM

III.     **Jessica Connarn's affidavit is not hearsay.**

The plaintiffs submitted a sworn affidavit executed by Michigan attorney Jessica Connarn in support of their motion.  Jessica Connarn was a Republican challenger at the TCF Center in Wayne County where absentee ballots were being processed.  Appx 65.  Jessica Connarn's affidavit describes how an election poll worker told Jessica Connarn that the poll worker "was being told to change the date on ballots to reflect that the ballots were received on an earlier date." *Id.* at 66 ¶1.  Jessica Connarn also presented physical evidence – a photograph of a note handed to her by the poll worker in which the poll worker indicated she (the poll worker) was instructed to change the date ballots were received.  *See id.* at 67-68.  Jessica Connarn attempted to speak with the poll worker again in order to get the poll worker's name, photo, and additional information, but "upon returning to see if the poll worker was still at her location, I noticed the poll worker was moved up on to the adjudication stage where we were not able to communicate with her."  *Id.* ¶4.

Jessica Connarn's affidavit describes a first-hand experience Jessica Connarn had with a specific election official and included physical evidence (a written note) the election official gave Jessica Connarn.  Jessica Connarn observed that poll workers were being told to change the dates on ballots and that when Jessica Connarn investigated the situation, she swore in her affidavit that she was "yelled at" and told to go away.  Jessica Connarn's affidavit and the note are attached in the Addendum and are also available at Appx. 67-69.

Judge Stephens ruled that Jessica Connarn's affidavit was "inadmissible as hearsay." Appx. 4.  Judge Stephens wrote that "plaintiffs have not presented an argument as to why the Court should consider the [supplemental evidence], given the general prohibitions against hearsay evidence."  *Id.*  Judge Stephens is wrong.

22

Plaintiffs did provide an argument. Plaintiffs stated the affidavit and note was not hearsay because it reported Jessica Connarn's "firsthand personal knowledge…of what she physically observed…." Appx. 12 (transcript p. 11). Judge Stephens misapplied the rule of evidence regarding hearsay, and this Court should review the Court of Claims' decision de novo. *See Mitchell*, 908 N.W.2d at 925.

Hearsay is a statement "offered in evidence to prove the truth of the matter asserted." *People v. Douglas*, 496 Mich. 557, 573, 852 N.W.2d 587, 596 (Mich. 2014). *See also* MRE 801. "MRE 801(a) defines a statement for hearsay purposes as: (1) an oral or written assertion or, (2) nonverbal conduct of a person, if it is intended by him as an assertion. Crying can hardly be considered an oral or written assertion…." *People v. Davis*, 139 Mich. App. 811, 812, 363 N.W.2d 35, 36 (Mich. Ct. App. 1984). "The record before us is void of any indication that the victim intended to make an assertion by her spontaneous act of crying. This is an instance of behavior so patently involuntary that it cannot by any stretch of the imagination be treated as a verbal assertion by the victim within the scope of MRE 801(a)(2)." *Id.* at 813.

Jessica Connarn's first-hand personal observations of activity at the TCF Center are not hearsay. *People v. Corridore*, No. 338670, 2019 Mich. App. LEXIS 3537, at *41 (Mich. Ct. App. June 27, 2019) (observations are not hearsay); *People v. Silver*, No. 322651, 2015 Mich. App. LEXIS 1504, at *7 (Mich. Ct. App. July 28, 2015) (same).

Much of Jessica Connarn's affidavit contains her first-hand observations, and therefore, is not hearsay at all. MRE 801(a). Jessica Connarn's affidavit also presented physical evidence – the photograph Jessica Connarn took of the note written by an election official. *See* Appx. 67-69. What Connarn testified to in her affidavit is not hearsay. Jessica Connarn affirms and swears to what she personally saw and heard. Jessica Connarn also swears she was "yelled at by the other

RECEIVED by MCOA 11/30/2020 11:21:02 PM

poll workers" and told to leave.  These are words Jessica Connarn heard and conduct of election officials that Jessica Connarn personally observed.  Appx. 67 ¶2.  MRE 801(c).  Jessica Connarn also personally observed that the poll worker who handed her the note "was nearly in tears" because of what the poll worker had been told.  Appx. 67 ¶1.  This observation is not hearsay.  *See People v. Davis*, 139 Mich. App. 811, 812-13, 363 N.W.2d 35, 36 (Mich. Ct. App. 1984) ("MRE 801(a) defines a statement for hearsay purposes as: (1) an oral or written assertion or, (2) nonverbal conduct of a person, if it is intended by him as an assertion.  Crying can hardly be considered an oral or written assertion…. The record before us is void of any indication that the victim intended to make an assertion by her spontaneous act of crying.  This is an instance of behavior so patently involuntary that it cannot by any stretch of the imagination be treated as a verbal assertion by the victim within the scope of MRE 801(a)(2).").  Connarn swore the poll worker "slipped me a note." Appx. 67 ¶2.  These are all first-hand, personal observations of conduct.  Because Jessica Connarn's sworn personal, first-hand observations are not hearsay, Judge Stephens was wrong to deny the Plaintiffs' motion on this basis.

## CONCLUSION AND RELIEF SOUGHT

The conduct of the general election in Wayne County was a disaster.  The Wayne County board of county canvassers found that more than seventy-one percent of the precincts did not balance.  More than *seventy-one percent!*  A precinct is out of balance when the number of ballots counted does not equal the number of names on the pollbook.  Some precincts were out of balance by as many as six hundred votes.  See testimony during Wayne County board of county canvassers on November 23, 2020.  *See* note 7, *supra*.  *See also* Addendum (affidavit of William Hartmann ¶6 and affidavit of Monica Palmer ¶7).

RECEIVED by MCOA 11/30/2020 11:21:02 PM

Two members of the Wayne County board of county canvassers, Chairwoman Monica Palmer and Member William Hartmann, voted to not certify the ballot tally.  Chairwoman Palmer and Member Hartmann were personally harassed and threatened during the public comment portion of the meeting and received a number of threats against them and their family.  Then, after a closed-door meeting in which the two Democratic members agreed to have Secretary Benson conduct an audit of Wayne County's election, Chairwoman Palmer and Member Hartmann agreed to certify the ballot tally.  But Secretary Benson then said she would not conduct an audit of the Wayne County election.  Chairwoman Palmer and Member Hartmann then withdrew their votes to certify the ballot tally.  See Addendum (affidavits of Monica Palmer and William Hartmann). The matter then went to the board of state canvassers, where Vice-Chair Aaron Van Langevelde stated he understood his role was merely ministerial and he did not have the option of not certifying the Michigan state ballot tally.  Another member, Norman Shinkle, would not vote to certify the ballot tally and abstained.[9]

This is no way to conduct an election.  Irrespective of the ultimate outcome of this presidential election and the election of the United States Senator to represent Michigan and the election of candidates in the other state and federal races on the November 3 general election ballot, the conduct of the election, especially in Wayne County, has been an embarrassment to the State of Michigan and undermined the confidence Michigan citizens have in the integrity of Michigan elections.  Kicking challengers and observers out of counting boards and denying challengers a meaningful opportunity to observe the conduct of the election and tallying of ballots further undermines confidence in the integrity of the election. If there is nothing to hide in the tallying of

---

[9] See November 23 meeting minutes, available at:  https://www.michigan.gov/sos/0,4670,7-127-1633_41221---,00.html.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

the ballots, why prevent challengers from having a meaningful opportunity to observe and, where appropriate, challenge the processing and tabulating of ballots?

The complaint and motion President Trump's campaign committee and Eric Ostergren filed and the relief they sought was not – and is not – moot.  This Court is asked to reverse Judge Stephens' order denying the Plaintiffs' motion.  This Court is asked to help restore public confidence in Michigan elections by issuing a decision holding that Michigan's Secretary of State must assure that the local election officials she oversees and supervises comply with Michigan's election laws and provide challengers a meaningful opportunity to perform the important role Michigan law designates for challengers.

We ask this Court to find that Secretary Benson violated the Michigan Constitution and Michigan election law by allowing absent voter ballots to be counted without allowing challengers to observe the processing and tallying of the ballots and without allowing challengers to observe the surveillance video of the remote unattended ballot drop boxes.  Secretary Benson's failure to supervise and direct the manner in which local election officials conducted the election undermines the constitutional right of all Michigan voters to participate in fair and lawful elections.

The Plaintiffs ask this Court to reverse Judge Stephens' decision and order that designated challengers must be granted meaningful access to observe and review the tabulation and processing of absent voter ballots.  The Plaintiffs ask this Court to order that the Secretary of State direct the election officials she oversees and supervises to assure that challengers have the meaningful ability to observe the processing and tabulation of absent voter ballots and to allow challengers to observe the surveillance video recordings of remote unattended ballot drop boxes.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

Dated: November 30, 2020                Respectfully submitted,

                                        */s/ Mark F. (Thor) Hearne, II*
                                        Mark F. (Thor) Hearne, II (P40231)
                                        Stephen S. Davis (*pro hac* pending)
                                        TRUE NORTH LAW, LLC
                                        112 S. Hanley Road, Suite 200
                                        St. Louis, MO 63105
                                        (314) 296-4000
                                        thor@truenorthlawgroup.com

                                        *Counsel for Plaintiffs-Appellants*

### PROOF OF SERVICE

The undersigned certifies that on November 30, 2020, he served the foregoing Brief in Support of Plaintiffs' Application for Leave to Appeal with Appellant's Appendix via First Class Mail and this Court's electronic filing system, which initiated electronic service upon Erik A. Grill, Assistant Attorney General, Civil Litigation, Elections, & Employment Division at grille@michigan.gov, and Heather Meingast, Assistant Attorney General, at meingasth@michigan.gov.

                                        */s/ Mark F. (Thor) Hearne, II*
                                        MARK F. (THOR) HEARNE, II
                                        *Counsel for Appellants*

RECEIVED by MCOA 11/30/2020 11:21:02 PM

# **ADDENDUM**

RECEIVED by MCOA 11/30/2020 11:21:02 PM

**STATE OF MICHIGAN**
**COURT OF CLAIMS**

DONALD J. TRUMP FOR )
PRESIDENT, INC., *et al.*, )
)
    Plaintiffs, )
)
v. )     No. 20-000225-MZ
)
SECRETARY OF STATE JOCELYN )
BENSON, )
)
    Defendant. )

**AFFIDAVIT OF JESSICA CONNARN**

I, Jessica Connarn, being first duly sworn, depose and state the following:

1.    I was working as the attorney acting as poll challenger with the Michigan Republican Party in a designated area of zone 12-15 when I was approached by a Republican Party poll challenger, who stated that a hired poll worker of the TCF Center, in Wayne County, Michigan, was nearly in tears because she was being told by other hired poll workers at her table to change the date the ballot was received when entering ballots into the computer.

2.    When I approached the poll worker, she stated to me that she was being told to change the date on ballots to reflect that the ballots were received on an earlier date. I went to inform a supervisor of this, and I was asked to get the poll worker's name. When I went back to the poll worker's table, I was yelled at by the other poll workers working at her table, who told me that I needed to go away and that I was not allowed to talk to the poll worker with whom I spoke earlier. The poll worker slipped me a note that read "entered receive date as 11/2/20 on 11/4/20." I have attached a photograph I took of this note as Exhibit 1.

3.    Based upon what I was told by this poll worker, I believe that poll workers working at the adjudication table were changing the dates ballots were received.

**Appx. 067**

RECEIVED by MCOA 11/30/2020 11:21:02 PM

4. I was told to obtain a photo of the poll worker and upon returning to see if the poll worker was still at her location, I noticed the poll worker was moved up on to the adjudication stage where we were not able to communicate with her.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of November, 2020.

_Jessica Connarn_
JESSICA CONNARN

Subscribed and sworn to before me this 4th day of November, 2020.

_Paul Garon_
Notary Public

_Wayne_ County, Michigan

My Commission Expires: _July 2021_    11/4/2020

PAUL GARON

**Appx. 068**

RECEIVED by MCOA 11/30/2020 11:21:02 PM



EXHIBIT 1
**Appx. 069**

RECEIVED by MCOA 11/30/2020 11:21:02 PM

## AFFIDAVIT

The Affiant, William C. Hartmann, being first duly sworn, hereby deposes and states as follows:

1. My name is William C. Hartmann.  I am an adult citizen, voter, and resident of the State of Michigan.

2. I am a member of the Board of Canvassers of Wayne County, Michigan.

3. I personally observed the Absent Voter Counting Boards in Detroit at TCF Center.

4. Since the election on November 3rd, I have attended the Wayne County Canvass on an almost daily basis.

5. On November 17, 2020, at 3:00 p.m. there was a meeting of the Board of Canvassers to determine whether to certify the results of Wayne County.  The meeting did not start until 5:00 p.m.  We were told it was delayed so that representatives of the Democrat Board members could obtain additional affidavits.

6. At 5:00 p.m. an open meeting and discussion began to discuss the issue of whether to certify the vote.  In my review of the results, I determined that approximately 71% of Detroit's 134 Absent Voter Counting Boards (AVCB) were left unbalanced and many *unexplained*. I informed the Board members of the discrepancies, but soon thereafter, a motion to certify was

RECEIVED by MCOA 11/30/2020 11:21:02 PM

made by Vice-Chairman Jonathan Kinloch.  After further discussion, I renewed my concerns that the reason that the numbers did not balance for the majority of AVCB's in Detroit, and importantly, could not be explained.  If the vote totals did not match, there should have been a documented reason explaining why.

7. The Board considered the ultimate question of whether to certify the vote, and the motion to certify the Wayne County elections failed 2-2.

8. This vote was followed by public derision from our two democrat colleagues.  I, and Monica Palmer, who also voted against certification, were berated and ridiculed by members of the public and other Board members.  This conduct included specious claims that I was racially motivated in my decision.  This public ostracism continued for hours during which time we were not provided an opportunity to break for dinner and were not advised that we could depart and resume the hearing on another date.

9. I discussed a potential resolution with Vice-Chair Kinloch in confidence.  Ms. Anderson-Davis told us that we must vote to certify on that night.  We were told that we could not consider matters such as the unexplained reasons that most of Detroit's AVCB's did not balance and no one knew why.  We

were informed that this consideration was outside of the scope of the Board's authority.

10. During the evening, Wayne County counsel, Ms. Janet Anderson-Davis, and my colleagues on the Board, continued to discuss irregularities in the AVCB's. Ms. Anderson-Davis advised the Board that the discrepancies were not a reason to reject the certification, and based on her explicit legal guidance, I was under the belief that I could not exercise my independent judgment in opposition to the certification. Therefore, I voted to certify the results.

11. Late in the evening, I was enticed to agree to certify based on the promise that a full and independent audit would take place. I would not have agreed to the certification but for the promise of an audit.

12. Vice-Chairman Jonathan Kinloch then assured us that if we voted to certify the election, a full, independent, and complete audit of Detroit's election, would be undertaken. We relied on this assurance in coming to an agreement. Without this assurance, I would not have agreed to certify Wayne County on November 17th.

13. After the meeting, I was made aware that Michigan Secretary of State, Jocelyn Benson made a public claim that the representations made by Mr. Kinlock, on which we had relied, would not be followed.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

c. I am also concerned about the use of private monies directing local officials regarding the management of the elections, how those funds were used and whether such funds were used to pay election workers. I have not received answers to these questions, and I believe the people of Michigan deserve these answers. Can we release the logs to the tabulators demonstrating what happened in Detroit?

d. Why do the pollbooks, Qualified Voter Files, and final tallies not match or balance?

e. 71% of Detroit AVCB's did not balance, why not?

f. Did the chairperson of each of Detroit's 134 AVCB's keep logs of shift changes?

g. Why were republicans *not* used in signing seals certified at the end of the night on Monday, and Wednesday evening before ballot boxes were documented, closed, and locked?

h. How many challenged ballots were counted?

i. Was any information placed directly into the Qualified Voter Files in the AVCB's?

j. How many voter birthdates were altered in the pollbooks?

RECEIVED by MCOA 11/30/2020 11:21:02 PM

k.  Were ballots counted in TCF that were not reflected in the electronic pollbook or paper supplemental list?

l.  Based upon information and belief, there were over 18,000 same-day registrations in Detroit on November 3.  Were these new applicants verified as proper voters prior to the tabulation of their ballots?

18. I voted not to certify, and I still believe this vote should *not* be certified.

19. Until these questions are addressed, I remain opposed to certification of the Wayne County results.

19.  The above information is true to the best of my information, knowledge, and belief.

I certify under penalty of perjury, that my statement and the evidence submitted with it, are all true and correct.

Printed Name: _William C. Hartmann_____

Signed Name: _William C. H._____

Date:

Sworn to before me this _18th_ day of November, 2020 at _6:39pm_

_Melissa Wojnar-Raycraft_
Notary Public Melissa Wojnar-Raycraft

My Commission expires on: _Feb. 9, 2023_____



Melissa Wojnar-Raycraft
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
MY COMMISSION EXPIRES FEBRUARY 9, 2023
ACTING IN THE COUNTY OF _Wayne_

RECEIVED by MCOA 11/30/2020 11:21:02 PM

## AFFIDAVIT

I, Monica Palmer, being first duly sworn, and under oath, state:

1. I am the Chairperson of the Wayne County Board of Canvassers.

2. The Board is a four-member board, required to have two Republican and two Democrat members, and I serve as one of the Republican members.

3. On August 4, 2020, the Michigan primary election was held.

4. On August 18, 2020, the Board held a public meeting at the Board's office in Detroit. I attended the meeting with the other three members of the Board.

5. The Board reviewed the Wayne County election results and considered whether to certify the August 4, 2020 primary election.

6. As reflected in the meeting minutes, Wayne County Election Director Gregory Mahar gave the Board a report at the meeting that included the following findings:

   - Staff encountered difficulties while trying to canvass the City of Detroit absentee precincts. "He indicated that aside from receiving the poll books on the first Friday and Sunday after the canvass began, the list of voters received made it difficult to determine how many voters actually returned their ballot. He reported that the City of Detroit used the QVF printed list of voters but there was also a handwritten list of voters, which is common to use both, but the two lists combined put the precincts severely out of balance."

   - "Director Mahar also reported on the difficulties staff encountered with trying to retabulate any absentee precincts that were out of balance. He stated that according to the Election Management system, he could see the City of Detroit did not scan a single precinct within a batch. When multiple precincts are scanned within a batch, it makes it nearly impossible to retabulate a precinct without potentially disrupting a perfectly balanced precinct."

   - "Deputy Director Jennifer Redmond reported on the irregularities she encountered while trying to retabulate out of balance precincts. She indicated that in some cases staff could not retabulate because the number of physical ballots counted in the container did not match the number of voters according to the poll book. Staff also requested the applications to vote for Detroit precinct 444 and precinct 262. Both containers ha[d] fewer ballots in the container than the number of voters according to the poll book, but what was strange was there appeared to be some missing applications." *Id.*

7. It was reported that in the August 2020 primary that 72% of Detroit's absentee voting precincts were out of balance.

8. After discussion among the Board members, I voted along with all the other canvassers in a unanimous vote in favor of certifying the August 4, 2020 Primary Election.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

9. Although certifying the primary election results, all Board members expressed serious concerns about the irregularities and inaccuracies. The Board unanimously approved a proposed joint resolution titled "Requesting a State Election Monitor and Investigation" that stated "Now Therefore Be it Resolved That, The Board of Canvassers for the County of Wayne, Michigan, request for the Secretary of State as Michigan's Chief Election Officer, to appoint a monitor to supervise the training and administration of the City of Detroit, Absentee Voter Counting Boards in the 2020 November General Election. Be it Finally Resolved, That, the Board of Canvassers for the County of Wayne, Michigan, request an investigation be conducted by the State Department of Elections into the training and processes used by the City of Detroit in the 2020 August Primary Election."

10. On November 3, 2020, the general election was held. I went to observe the election process at the TCF Center on November 3, 2020 and November 4, 2020.

11. Since November 5, I went to the Wayne County Canvas almost every day and helped the Wayne County staff.

12. On November 17, 2020, there was a board of Canvassers meeting scheduled to start at 3:00pm to determine whether or not to certify the November election. The meeting did not begin until 4:46pm.

13. Minutes before the meeting began at 4:46pm, I was given a report on the final canvas. We were not given an executive summary which was customary at most other certification meetings.

14. During this meeting, I determined that more than 70% of Detroit's 134 Absent Voter Counting Boards (AVCB) did not balance and many had no explanation to why they did not balance.

15. Vice-Chair Kinloch made a motion to certify the vote. I noted our prior reservations about unbalanced precincts in August 2020 and determined the record had discrepancies and irregularities and was incomplete.

16. A motion was made to certify the vote, and I voted not to certify. The vote to certify the Wayne County elections failed 2-2.

17. After the vote, my Democrat colleagues chided me and Mr. Hartmann for voting to not certify.

18. After the vote, public comment period began and dozens of people made personal remarks against me and Mr. Hartmann. The comments made accusations of racism and threatened me and members of my family. The public comment continued for over two hours and I felt pressured to continue the meeting without break.

19. After several hours of harsh comments, Vice-Chair Kinloch suggested a potential resolution. Wayne County Corporate Counsel Janet Anderson-Davis told me that I had to certify the vote that night. She told the members their role was ministerial and they could not use their discretion on matters like the record being incomplete. We were told that discretion was outside the board's authority.

20. After being told by Ms. Anderson-Davis that I could not use my discretion regarding the anomalies, I believed I had no choice but to certify the results despite my desire to oppose certification based on the incomplete record.

21. Additionally, we were presented with a resolution that promised a full, independent audit that would present answers to the incomplete record. I voted to agree to certify based on the promise of a full, independent audit. I would not have agreed to vote to certify but for that promise of a full, independent audit.

RECEIVED by MCOA 11/30/2020 11:21:02 PM

22. Vice-Chairman Jonathan Kinloch gave me assurances that voting for the certification of the November election would result in a full, independent audit of Detroit's unbalanced precincts. I relied on that assurance and voted to certify the election based on that assurance. Without that assurance I would not have voted to certify the Wayne County November election.

23. Later that evening, I was sent statements that Secretary Jocelyn Benson made saying that she did not view our audit resolution to be binding. Her comments disputed the representations made by Vice-Chair Kinloch on which I relied.

24. As a result of these facts, I rescind my prior vote to certify Wayne County elections.

25. I fully believe the Wayne County vote should not be certified.

26. The Wayne County election had serious process flaws which deserve investigation. I continue to ask for information to assure Wayne County voters that these elections were conducted fairly and accurately. Despite repeated requests, I have not received the requisite information and believe an additional 10 days of canvas by the State Board of Canvassers will help provide the information necessary.

27. I initially voted not to certify the election, and I still believe this vote should *not* be certified and the State Board of Canvassers should canvass for an additional period.

28. Until these questions are addressed, I remain opposed to certification of the Wayne County results.

The above information is true to the best of my information, knowledge, and belief.

I certify under penalty of perjury, that my statement and the evidence submitted with it, are all true and correct.

Printed Name: *Monica S Palmer*

Signed Name: *Monica J Palmer*

Date:

Sworn to before me this _18_ day of November 2020 at _9:33 pm_

My Commission expires on: _08/3/2022_

**JANICE L. DANIELS**
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF OAKLAND
My Commission Expires August 3, 2022
Acting in the County of _WAYNE_

RECEIVED by MCOA 11/30/2020 11:21:02 PM