US DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

King, et. al.

    Plaintiffs

Vs.                                                            Case Number 20-cv-13134

Whitmer, et al.

    Defendants

___

COMES NOW ARTHUR J. CLEMENS JR. SEEKING PERMISSION OF THE COURT TO FILE AN AMICUS CURIAE BRIEF

## LEGAL STANDARD FOR ALLOWING AMICUS CURIAE BRIEF

Although there is no federal rule or statute governing participation by amicus curiae at the district court level, see United States v. Gotti, 755 F.Supp. 1157, 1158 (E.D.N.Y. 1991), a federal district court has the inherent authority to invite participation by amicus curiae to assist the court in its proceedings. United States v. Louisiana, 751 F.Supp. 608, 620 (E.D. La. 1990); United States v. Michigan, 116 F.R.D. 655, 660 (W.D. Mich. 1987). The decision to invite or accept participation by an amicus is committed to the sound discretion of the court. Alexander v. Hall, 64 F.R.D. 152, 155 (D.S.C. 1974). The classic role of the amicus curiae is to assist in a case of general public interest, supplement the efforts of counsel, and draw the court's attention to law or **facts** that may otherwise escape consideration.

Miller-Wohl Co., Inc. v. Commissioner of Labor and Indus., 694 F.2d 203, 204 (9 Cir. 1982); see th also New England Patriots Football Club, Inc., v. University of Colorado, 592 F.2d 1196, 1198 n. 3 (1 Cir. 1979) (historically, the role of an amicus was "to aid the court in resolving doubtful issues of law"). There is no requirement that an amicus be disinterested. Funbus Systems, Inc. v California Public Utilities Commission, 801 F.2d 1120, 1125 (9 Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, th 1260 (9 Cir. 1982).

## BACKGROUND AND QUALIFICATIONS OF AMICUS CURIAE

Amicus Curiae Arthur J. Clemens Jr. is a registered voter and a taxpayer who voted in the 2020 Presidential Election.

Amicus Curiae served on the General Staff of the 101st Airborne Division in Vietnam as a Clerk and is familiar with the office procedures necessary to run an Army Division. He was awarded the Bronze Star for Service. See Exhibit A.

Amicus Curiae also was paid a reward and received a letter of recommendation (See Exhibit B) by the world's largest privately held corporation for making suggestions to improve the accounting system used for concessions at Busch Stadium in St. Louis which resulting in greatly reducing losses for theft of funds by employees, and stopping the firing of

innocent employees for theft that was actually committed by others, thus saving the jobs of many competent and honest workers.

In 2016, Clemens filed an Amicus Curiae Brief with the Missouri Supreme Court in the case of <u>Cooperative Home, et al. vs. City of St. Lous, et al., Case # SC95401</u> in favor of the City of St. Louis which is a matter of public record.  The City of St. Louis prevailed in the case.

Amicus Curiae also filed a pro se public interest lawsuit in the United States District Court of Eastern Tennessee, entitled <u>Clemens vs. Lewinsky</u> in 1998 which he later moved to dismiss without prejudice.

Amicus Curiae worked as a door to door canvasser in two elections and used a hand held computer which had a sophisticated listing of the names of home addresses of citizens who were likely to vote in elections and how they were likely to vote.

Amicus Curiae has also published an article on the internet at thegovernmentrag.com entitled "Verifying Mail-In Ballots" which is available for the Court, the public and interested parties in this case to read.

Amicus Curiae is of the belief that his background and experience gives him expertise that could be brought to bear in this case regarding suggesting

to the Court facts that are available for determining the validity of mail in ballots on a recount.

## ARGUMENT

Pending the approval of the Court to allow this brief to be filed, Amicus Curiae states and alleges as follows:

### VOTE COUNTING ANAMOLIES ESTABLISH PROBABLE CAUSE FOR INVESTIGATION

The website https://votepatternanalysis.substack.com/p/voting-anomalies-2020 lists the following anomalies in the updating of counting of Michigan votes and also in other battleground states:

The four vote updates in question are:

1. An update in **Michigan** listed as of 6:31AM Eastern Time on November 4th, 2020, which shows 141,258 votes for Joe Biden and 5,968 votes for Donald Trump
2. An update in Wisconsin listed as 3:42AM Central Time on November 4th, 2020, which shows 143,379 votes for Joe Biden and 25,163 votes for Donald Trump
3. A vote update in Georgia listed at 1:34AM Eastern Time on November 4th, 2020, which shows 136,155 votes for Joe Biden and 29,115 votes for Donald Trump
4. An update in **Michigan** listed as of 3:50AM Eastern Time on November 4th, 2020, which shows 54,497 votes for Joe Biden and 4,718 votes for Donald Trump

Amicus Curiae suggests that said statistics establish that there is probable cause to believe that there was election fraud in this election.

## INVESTIGATIVE TOOLS AVAILABLE TO THE COURT

(1)   Voters who show up to vote in person at the polls must identify themselves, usually by showing proper identification cards, such as Drivers' Licenses.

(2)   It is much more difficult to verify the identity of those who mailed in ballots.

(3)   An important piece of evidence for determining the validity of a mail in ballot is the envelope that was used to mail in the ballot. Said envelope could contain DNA evidence in the form of saliva, fingerprints, a handwriting sample, a return address, and a postmark, which includes where the stamp was cancelled.   In the event an envelope is typewritten, the typing can be used to determine the machine that typed the envelope.

(4)   This evidence needs to be preserved by stapling the envelope to the ballot, or otherwise cataloging the envelope in such a way that it can be matched to the ballot.

(5) **In the event an envelope is destroyed or otherwise rendered useless, this constitutes destruction of evidence and obstruction of justice.**

WHEREFORE, AMICUS CURIAE PRAYS THAT THE COURT ORDER AS FOLLOWS:

1. All mail in ballots which do not have a corresponding outer envelope attached that is available for inspection should be declared null and void.

2. All mail in ballots which have a corresponding envelope that do not have a return address should be declared null and void.

3. All mail in ballots which have a corresponding envelope with a return address should be checked with a list of who mail in ballots were mailed to by election authorities and if the return address does not match, then the voter should be contacted for an explanation of why the address does not match before counting the vote. Additionally, envelopes with out of state postmarks should be checked with the voter who sent the ballot in for an explanation of such mailing.

4. All parties who were sent mail in ballots which are not listed as being sent in need to be contacted to determine whether they might have sent in a ballot that was not received.

4. A representative sample of signatures on ballots and handwriting and other evidence from envelopes should be examined by experts and if ballots are determined to be fraudulent, then this examination should be expanded.

Respectfully Submitted, *Arthur J. Clemens Jr.*

                                  Arthur J. Clemens Jr.
                                  400 N. 4th Street, #1008
                                  St. Louis, MO 63102
                                  314-297-8474
                                  Lawscan2001@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd of December, 2020, a copy of the foregoing brief sent by electronic case filing and the United States Mail to the United States District Court of Eastern Michigan, 231 W. Lafayette Blvd. Detroit, MI 48226,

Copies were also sent to by email:

**Gregory J. Rohl**   at    gregoryrohl@yahoo.com

**Heather S. Meingast**  at    meingasth@michigan.gov

                      Signed: *Arthur J. Clemens Jr.*