UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KING, MARIAN ELLEN
SHERIDAN, JOHN EARL HAGGARD,
CHARLES JAMES RITCHARD, JAMES
DAVID HOOPER, and DARREN WADE
RUBINGH,

       Plaintiffs,

v

GRETCHEN WHITMER, in her official
capacity as Governor of the State of
Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of
State and the Michigan BOARD OF STATE
CANVASSERS,

       Defendants,

CITY OF DETROIT,

       Intervening Defendant,

ROBERT DAVIS,

       Intervening Defendant,

DEMOCRATIC NATIONAL
COMMITTEE and MICHIGAN
DEMOCRATIC PARTY,

       Intervening Defendant.

_____

No. 2-20-cv-13134

HON. LINDA V. PARKER

MAG. R. STEVEN WHALEN

**STATE DEFENDANT'S
MOTION TO DISMISS**

Gregory J. Rohl (P39185)
Attorney for Plaintiffs
41850 West 11 Mile Road, Suite 110
Novi, Michigan 48375
248.380.9404
gregoryrohl@yahoo.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

David Fink (P28235)
Attorney for Proposed Intervenor City of Detroit
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
248.971.2500
dfrink@finkbressack.com

Mary Ellen Gurewitz (P25724)
Attorney for Proposed Intervenor DNC/MDP
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
313.204.6979
maryellen@cummingslawpllc.com

Scott R. Eldridge
Attorney for Proposed Intervenor DNC/MDP
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
517.483.4918
eldridge@millercanfield.com

Andrew A. Paterson (P18690)
Attorney for Proposed Intervenor Davis
2893 East Eisenhower Parkway
Ann Arbor, Michigan 48108
248.568.9712
Aap43@outlook.com

## STATE DEFENDANT'S MOTION TO DISMISS

Defendants Governor Gretchen Whitmer, Secretary of State Jocelyn Benson, and the Michigan Board of State Canvassers (the State Defendants) move for dismissal of Plaintiffs' amended complaint pursuant to Fed. R. Civ. Proc. 12(b)(4) and (6), for the following reasons:

1. Plaintiffs' amended complaint challenges the legality of the November 3, 2020 election and the subsequent tabulation of votes.

2. Plaintiffs' claims are barred by the doctrine of laches because Plaintiffs delayed unreasonably in raising their claims before this Court and the State Defendants were prejudiced by this delay.

3. Plaintiffs' claims are now moot because the election is over, the votes have been counted, and the presidential electors have been appointed and have finished voting.  As a result, there is no relief that may be granted by this Court.

4. Plaintiffs lack legal standing to raise their claims before this Court.

5. Some or all of Plaintiffs' claims are barred by the Eleventh Amendment.

6. Plaintiffs' federal constitutional claims should be dismissed because Plaintiffs fail to state a claim upon which relief may be granted.

7. Plaintiffs' state law claims should be dismissed because Plaintiffs fail to state a claim for which relief may be granted.

8. Concurrence was sought for the relief requested in this motion, but was not obtained.

For these reasons and the reasons stated more fully in the accompanying brief in support, Defendants Governor Gretchen Whitmer, Secretary of State Jocelyn Benson, and the Michigan Board of State Canvassers respectfully request that this Honorable Court enter an order dismissing Plaintiff's complaint against her in its entirety and with prejudice, pursuant to Fed. R. Civ. Proc. 12(b)(4) and (6).

Respectfully submitted,

Dana Nessel
Attorney General

*s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  meingasth@michigan.gov
P55439

Dated:  December 22, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KING, MARIAN ELLEN
SHERIDAN, JOHN EARL HAGGARD,
CHARLES JAMES RITCHARD, JAMES
DAVID HOOPER, and DARREN WADE       No. 2-20-cv-13134
RUBINGH,

        Plaintiffs,                 HON. LINDA V. PARKER

v                                   MAG. R. STEVEN WHALEN

GRETCHEN WHITMER, in her official   **STATE DEFENDANTS' BRIEF**
capacity as Governor of the State of **IN SUPPORT OF MOTION TO**
Michigan, JOCELYN BENSON, in her    **DISMISS**
official capacity as Michigan Secretary of
State and the Michigan BOARD OF STATE
CANVASSERS,

        Defendants,

CITY OF DETROIT,

        Intervening Defendant,

ROBERT DAVIS,

        Intervening Defendant,

DEMOCRATIC NATIONAL
COMMITTEE and MICHIGAN
DEMOCRATIC PARTY,

        Intervening Defendant.

_____

Gregory J. Rohl (P39185)
Attorney for Plaintiffs
41850 West 11 Mile Road, Suite 110
Novi, Michigan 48375
248.380.9404
gregoryrohl@yahoo.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

David Fink (P28235)
Attorney for Proposed Intervenor City of Detroit
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
248.971.2500
dfrink@finkbressack.com

Mary Ellen Gurewitz (P25724)
Attorney for Proposed Intervenor DNC/MDP
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
313.204.6979
maryellen@cummingslawpllc.com

Scott R. Eldridge
Attorney for Proposed Intervenor DNC/MDP
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
517.483.4918
eldridge@millercanfield.com

Andrew A. Paterson (P18690)
Attorney for Proposed Intervenor Davis
2893 East Eisenhower Parkway
Ann Arbor, Michigan 48108
248.568.9712
Aap43@outlook.com

_____/

## STATE DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO DISMISS

Dana Nessel
Attorney General

Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

Dated:  December 22, 2020

# TABLE OF CONTENTS

Page

Table of Contents.................................................................................. i

Index of Authorities............................................................................. iii

Concise Statement of Issues Presented............................................... ix

Introduction ..........................................................................................1

Statement of Facts.................................................................................2

Argument...............................................................................................6

I.      Plaintiffs' claims are barred by the Eleventh Amendment............................6

II.     Plaintiffs' claims must be dismissed because they are moot.......................15

III.    Plaintiffs' claims are barred by laches.........................................................18

IV.     Plaintiffs' claims fail as a matter of law because they lack standing...........21

        A.      Plaintiffs lack standing to raise an Equal Protection claim. ...............22

        B.      Elections Clause and Electors Clause Claims....................................23

V.      This Court should abstain from exercising jurisdiction. ..............................26

VI.     Plaintiffs' federal constitutional claims are without merit and must be
        dismissed. ...................................................................................................38

        A.      Plaintiffs fail to state a claim for violation of the Electors and
                Elections Clauses of the U.S. Constitution. ......................................38

        B.      Plaintiffs fail to state a claim for a violation of Equal
                Protection...........................................................................................43

        C.      Plaintiffs have failed to state a claim for a violation of the Due
                Process Clause. ..................................................................................48

VII.    Plaintiffs' state-law statutory claims are without merit...............................51

Conclusion and Relief Requested.........................................................62

Certificate of Service ............................................................................63

# INDEX OF AUTHORITIES

Page

**Cases**

*Abick v. Michigan*, 803 F.2d 874 (6th Cir. 1986) ....................................................8

*Alabama v. Pugh,* 438 U.S. 781 (1978)....................................................6

*Albright v. Oliver*, 510 U.S. 266 (1994) ....................................................49

*Alden v. Maine*, 527 U.S. 706 (1999) ....................................................6

*Ariz. State Leg. v. Ariz. Indep. Red. Comm'n*, 576 U.S. 787 (2015)...........24, 25, 42

*Baker v. Carr*, 369 U.S. 186 (1962) ....................................................44

*Balsam v. Sec'y of State*, 607 F. App'x 177 (3d Cir. 2015) ....................................................13

*Barden Detroit Casino L.L.C. v. City of Detroit,* 59 F. Supp. 2d 641 (E.D. Mich. 1999)....................................................39

*Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569 (6th Cir. 1994)..............27

*Bates v. Van Buren Tp.*, 122 F. App'x 803 (6th Cir. 2004) ....................................................27

*Bodine v. Elkhart Cnty. Election Bd.*, 788 F.2d 1270 (7th Cir. 1986)....................48

*Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680 (6th Cir. 2000)....................................................19

*Bush v. Gore*, 531 U.S. 98 (2000) ....................................................40, 43, 45

*Bush v. Palm Beach County Canvassing Bd.,* 531 U.S. 70 (2000)....................39

*Carson v. Simon*, 78 F.3d 1051 (8th Cir. 2020)....................................................25

*Carten v. Kent State Univ.*, 282 F.3d 391 (6th Cir. 2002)....................................................7

*Church of Scientology v. United States,* 506 U.S. 9 (1992) ....................................................16

*Colegrove v. Green*, 328 U.S. 549 (1946)....................................................23, 44

*Cook v. Gralike*, 531 U.S. 510 (2001)....................................................42

*Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2016)..............................................20

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)...................................21, 23

*Davis v. Detroit Pub. Sch. Cmty. Dist.*, 2017 U.S. Dist. LEXIS 114749 (E.D. Mich., July 24, 2017)...................................................................................49

*DeFunis v. Odegaard*, 416 U.S. 312 (1974)........................................................16

*Deleeuw v. State Bd. of Canvassers*, 688 N.W.2d 847 (Mich. Ct. App. 2004).........8

*Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956 (6th Cir. 2013)..................................10

*Dugan v. Rank*, 372 U.S. 609 (1963)....................................................................7

*Edelman v. Jordan*, 415 U.S. 651 (1974) ...........................................................7, 9

*Ex parte Young*, 209 U.S. 123 (1908)............................................................8, 9, 10

*Ford v. Wilder*, 469 F.3d 500 (6th Cir. 2006).......................................................16

*Foster v. Love*, 522 U.S. 67 (1997) .....................................................................23

*Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980)..................................................48

*George v. Hargett*, 879 F.3d 711 (6th Cir. 2018) .................................................45

*Gill v. Whitford*, 138 S. Ct. 1916 (2018) .......................................................22, 44

*Gottfried v. Med. Planning Servs.*, 142 F.3d 326 (6th Cir. 1998) ...................35, 37

*Great Earth Cos. v. Simons*, 288 F.3d 878 (6th Cir. 2002)...................................27

*Harrison v. NAACP*, 360 U.S. 167 (1959).............................................................36

*Healthcare Co. v. Upward Mobility, Inc.*, 784 F. App'x 390 (6th Cir. 2019).........28

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997).................................8

*Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261 (1997).........................................9, 10

*In re Ohio Execution Protocol Litig.*, 709 F. App'x 779 (6th Cir. 2017)...........9, 13

*Johnson v. Bredesen*, 356 F. App'x 781 (6th Cir. 2009).......................................24

*Johnson v. Unknown Dellatifa*, 357 F.3d 539 (6th Cir. 2004) ................................8

*Jon Jon's Inc. v. City of Warren*, 162 F. Supp.3d 592 (E.D. Mich. 2016)..............49

*Kay v. Austin*, 621 F.2d 809 (6th Cir. 1980).............................................................20

*Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588 (6th Cir. 2014)................................15

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952)............35

*King Lincoln Bronzeville Neighborhood Ass'n v. Husted*, No. 2:06-cv-00745, 2012 WL 395030 (S.D. Ohio Feb. 7, 2012) ...........................................11

*Lance v. Coffman*, 549 U.S. 437 (2007) .................................................................24

*League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008) .........49

*Lewis v. Casey*, 518 U.S. 343 (1996)......................................................................23

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990) ..................................................15

*Los Angeles County v. Davis,* 440 U.S. 625 (1979)................................................16

*Lucking v. Schram*, 117 F.2d 160 (6th Cir. 1941)...................................................18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..............................................21

*Massey v. Coon*, No. 87-3768, 1989 U.S. App. LEXIS 23130 (9th Cir. Jan. 3, 1989) .........................................................................................................13

*McDonald v. Cnty. of San Diego*, 124 F. App'x 588 (9th Cir. 2005)....................20

*McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453 (6th Cir. 1997) ........................................................................................................ 16, 39

*Minn. Voters All. v. Ritchie*, 720 F.3d 1029 (8th Cir. 2013) .................................48

*Mosely v. Hairson*, 920 F.2d 409 (6th Cir. 1990) ..................................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .........33

*Northeast Ohio Coalition for the Homeless v. Husted,* 696 F.3d 580 (6th Cir. 2012)................................................................................................49, 50

*Obama for America v Husted*, 697 F3d 423 (6th Cir. 2012).................................49

*Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468 (6th Cir. 2008) ..............................15

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001) ...................................27

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984) .................*passim*

*Philips v. Snyder,* 836 F.3d 707 (6th Cir. 2016) ..............................................49, 50

*Rios v. Blackwell*, 433 F. Supp. 2d 848 (N.D. Ohio Feb. 7, 2006) .......................11

*Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998) ....................27, 33, 34

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) ..............................10

*Six v. Newsom*, 462 F. Supp. 3d 1060 (C.D. Cal. 2020) .........................................14

*Skaggs v. Brunner*, 588 F. Supp. 2d 828 (S.D. Ohio 2008) ...................................45

*Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176 (9th Cir. 1988) ................................................................................................................21

*United States v. Hays*, 515 U.S. 737 (1995) .........................................................44

*Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635 (2002) ..............................9

*Wesberry v. Sanders*, 376 U.S. 1 (1964) .........................................................43, 44

*White v. Morris*, 972 F.2d 350 (Table) (6th Cir. Aug. 6, 1992) ...........................35

*Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989) ...............................7, 8

*Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008) ....................11, 49

*Wood v. Raffensperger*, __ F.3d __, 2020 WL 7094866 (11th Cir. Dec. 5, 2020) ...............................................................................................................18

**Statutes**

Mich. Comp. Laws § 168.46 ...................................................................................42

Mich. Comp. Laws § 168.47 ...................................................................................42

Mich. Comp. Laws § 168.672 .................................................................................53

Mich. Comp. Laws § 168.674(2) .............................................................................53

Mich. Comp. Laws § 168.678 ................................................................58

Mich. Comp. Laws § 168.765a(10) ......................................................54

Mich. Comp. Laws § 168.801 ................................................................41

Mich. Comp. Laws § 168.821 ................................................................41

Mich. Comp. Laws § 168.822 ........................................................ 19, 41

Mich. Comp. Laws § 168.842(1) ...........................................................41

Mich. Comp. Laws § 168.843 ................................................................17

Mich. Comp. Laws § 168.21 .......................................................... 55, 58

Mich. Comp. Laws § 168.46 ..................................................................14

Mich. Comp. Laws § 168.674 ........................................................ 52, 53

Mich. Comp. Laws § 168.730 .................................................. 51, 56, 61

Mich. Comp. Laws § 168.733(1) ................................................... 51, 57

Mich. Comp. Laws § 168.733(2) ...........................................................56

Mich. Comp. Laws § 168.733(3) ...........................................................57

Mich. Comp. Laws § 168.733(4) ...........................................................57

Mich. Comp. Laws § 168.734 ........................................................ 58, 59

Mich. Comp. Laws § 168.764a ..............................................................60

Mich. Comp. Laws § 168.765(5) ...........................................................60

Mich. Comp. Laws § 168.765a ...................................................... 52, 54

Mich. Comp. Laws § 168.822(1) ...........................................................19

Mich. Comp. Laws § 168.832 ................................................................17

Mich. Comp. Laws § 168.879 ........................................................ 17, 41

Mich. Comp. Laws § 168.931(1)(h) ............................................ 55, 59, 61

Mich. Comp. Laws § 168.939 .................................................................59

Mich. Comp. Laws § 168.941 .................................................................59

Mich. Comp. Laws § 168.831 .................................................................17

## Constitutional Provisions

42 U.S.C. §1983............................................................................................6

U.S. Const., Art. I, § 4, cl. 1.........................................................23, 25

U.S. Const., Art. III, § 2 ........................................................................21

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Whether Plaintiffs' claims are barred by the doctrine of laches?

2.    Whether Plaintiffs' claims should be dismissed because they are moot?

3.    Whether Plaintiffs lack standing to bring their claims?

4.    Whether some or all of Plaintiffs' claims are barred by the Eleventh Amendment?

5.    Whether Plaintiffs' federal constitutional claims are without merit?

6.    Whether Plaintiffs' state law claims are without merit?

**INTRODUCTION**

This case is one of the last of a series of lawsuits filed since Michigan held its general election on November 3, and it alleges the same litany of far-fetched claims of fraud and irregularity in the conducting of the November 3 general election.  These made-up and misrepresented "fraud" claims focus on the City of Detroit's election—and, in particular, on activities that took place at Detroit's absent voter counting boards in the TCF Center—but these unsubstantiated claims have already been rejected by multiple courts.  Plaintiffs' complaint offers nothing other than conspiracy theories unaccompanied by any actual evidence of fraud.  In addition, Plaintiffs' make a number of bizarre allegations concerning the use of Dominion voting machines and software, as well as allegations concerning the counting of ballots in Antrim County.  These allegations are similarly erroneous and based upon an incomplete understanding of Michigan's elections.

This Court has already held that Plaintiffs have failed to demonstrate a likelihood of success on their claims, and the State Defendants now request that the Complaint be dismissed in its entirety and with prejudice for the same reasons.

## STATEMENT OF FACTS

Plaintiffs' amended complaint consists of over 200 numbered paragraphs and over 900 additional pages of affidavits and other documents, in which they raise the same litany of perceived fraud and irregularities.  However, these claims have been addressed previously in various state-court actions and were succinctly explained by Christopher Thomas, Michigan's long-serving former Director of Elections, whose affidavit from a prior case is attached here.  (ECF No. 31-2, PageID.2231-2242.)  In addition, the attached declaration of Director of Elections Jonathan Brater further explains how the Plaintiffs' claims are erroneous and based a lack of understanding of Michigan law.  (ECF No. 31-3, PageID.2243-2255.)

As this Court has observed, a record 5.5 million Michiganders voted in the presidential election ("2020 General Election"), and many of those votes were cast by absentee ballot. (ECF No. 36-4, PageID.2622.) This was due in part to the coronavirus pandemic and a ballot measure the Michigan voters passed in 2018 allowing for no-reason absentee voting. When the polls closed and the votes were counted, former Vice President Joseph R. Biden, Jr. had secured over 150,000 more votes than President Donald J. Trump in Michigan. (*Id.*)

The Michigan Board of State Canvassers was required to meet to canvass the results of the 2020 General Election by November 23, 2020. Mich. Comp. Laws § 168.842.  The State Board voted to certify the results the same day by a 3-0

vote, determining the results "for the Electors of President and Vice President," among other offices. (ECF No. 36-5, PageID.2624.)  That same day, Governor Gretchen Whitmer signed the Certificates of Ascertainment for the slate of electors for Vice President Biden and Senator Kamala D. Harris. (ECF No. 36-6, PageID.2627-29.)  Those certificates were transmitted to and received by the Archivist of the United States.  (*Id.*)

Federal law provides that if election results are contested in any state, and if the state, prior to election day, has enacted procedures to decide controversies or contests over electors and electoral votes, and if these procedures have been applied, and the decisions are made at least six days before the electors' meetings, then the decisions are considered conclusive and will apply in counting the electoral votes. 3 U.S.C. § 5. This date (the "Safe Harbor" deadline) fell on December 8, 2020. Under the federal statutory timetable for presidential elections, the Electoral College must meet on "the first Monday after the second Wednesday in December," 3 U.S.C. § 7, which was December 14 this year. The electors met on December 14, 2020 and cast their votes for President and Vice-President.

Plaintiffs filed the current lawsuit against Defendants at 11:48 p.m. on November 25, 2020—the eve of the Thanksgiving holiday.  (ECF No. 1, PageID.1.)  Plaintiffs alleged widespread fraud in the distribution, collection, and counting of ballots in Michigan, as well as violations of state law as to certain

election challengers and the manipulation of ballots through corrupt election

machines and software.  (*Id.*)  Plaintiffs are registered Michigan voters and

nominees of the Republican Party to be Presidential Electors on behalf of the State

of Michigan.  (ECF No. 6, Page.ID 882.)  They are suing Governor Whitmer and

Secretary of State Jocelyn Benson in their official capacities, as well as the

Michigan Board of State Canvassers.

On November 29, 2020, Plaintiffs filed a First Amended Complaint (ECF

No. 6, PageID.882), "Emergency Motion for Declaratory, Emergency, and

Permanent Injunctive Relief and Memorandum in Support Thereof" (ECF No. 7,

PageID.1832), and Emergency Motion to Seal.  (ECF No. 8. PageID.1850.)  In

their First Amended Complaint, Plaintiffs allege three claims pursuant to 42 U.S.C.

§ 1983: (Count I) violation of the Elections and Electors Clauses; (Count II)

violation of the Fourteenth Amendment Equal Protection Clause; and, (Count III)

denial of the Fourteenth Amendment Due Process Clause.  (ECF No. 6,

PageID.882.)  Plaintiffs also assert one count alleging violations of the Michigan

Election Code.  (*Id.*)

By December 1, motions to intervene had been filed by the City of Detroit

(ECF No. 15, PageID.2090), Robert Davis (ECF No. 12, PageID.1860), and the

Democratic National Committee and Michigan Democratic Party ("DNC/MDP").

(ECF No. 14, PageID.1878.)  On December 2, the Court granted the motions to

intervene.  (ECF No. 28, Page ID.2142.)  Response and reply briefs with respect to Plaintiffs' emergency motions were thereafter filed.  (ECF Nos. 29, 31, 32, 34, 35, 36, 37, 39, 49, 50.)  Amicus curiae Michigan State Conference NAACP subsequently moved and was granted leave to file a brief in support of Defendants' position.  (ECF Nos. 48, PageID.3039; 55, PageID.3173.)  Supplemental briefs also were filed by the parties.  (ECF Nos. 57, PageID.3198, 58, PageID.3264.)

On December 7, 2020, this Court entered an Order denying the Plaintiffs' motion for temporary restraining order, finding that the Plaintiffs failed to demonstrate a likelihood of success on the merits.  Plaintiffs thereafter filed a notice of appeal to the Sixth Circuit but have not taken any steps to prosecute their appeal.  *See* Sixth Circuit Case No. 20-2205.  Plaintiffs have also filed a petition for certiorari in the U.S. Supreme Court and requested expedited treatment.  *See* U.S. Supreme Court No. 20-815.[1]  But that Court has taken no action as of yet.

For the reasons explained in detail below, this Court should likewise dismiss the Complaint in its entirety and with prejudice.

---

[1] Docket sheet and filings available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-815.html.

# ARGUMENT

## I.    Plaintiffs' claims are barred by the Eleventh Amendment.

Plaintiffs' Amended Complaint names three defendants:  Governor Gretchen Whitmer in her official capacity, Secretary of State Jocelyn Benson in her official capacity, and the Board of State Canvassers.  Counts I through III of the Amended Complaint raise claims under 42 U.S.C. §1983, while Count IV alleges violations of state law.  Each count—even those framed as federal claims—are in reality state-law claims barred by the Eleventh Amendment because they depend on resolution of state-law issues.

The United States Constitution, Amendment XI, provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

The Eleventh Amendment to the United States Constitution prevents a state from being sued in federal court without its consent.  *Alabama v. Pugh,* 438 U.S. 781, 782 (1978).  An unconsenting state is immune from lawsuits brought in federal court by its own citizens, as well as by citizens of another state.  *Alden v. Maine*, 527 U.S. 706, 712-713 (1999); *see also Ladd v. Marchbanks*, 971 F.3d 574, 578 (6th Cir. 2020) (citing *Hans v. Louisiana*, 134 U.S. 1, 18-19 (1890)).  The Eleventh Amendment is a constitutional restriction on the federal judicial power "based in large part on 'the problems of federalism inherent in making one

6

sovereign appear against its will in the courts of the other.'" *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).

The U.S. Supreme Court has consistently ruled that the Eleventh Amendment is a bar to lawsuits against states, state agencies or state departments unless specifically overridden by an act of Congress, or unless the state has consented to be sued. *Id.*; *Pugh,* 438 U.S. at 782; *Edelman v. Jordan*, 415 U.S. 651 (1974). A suit against a State, a state agency or its department, or a state official is in fact a suit against the State and is barred "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100-02 (citations omitted). "'The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'" *Pennhurst,* 465 U.S. at 101 n.11 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)) (internal quotation marks omitted). Further, state officials acting in their official capacity are also not "persons" under § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity is subject to three exceptions: (1) congressional abrogation; (2) waiver by the State; and (3) "a suit against a state official seeking prospective injunctive relief to end a continuing violation of federal law." *See Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002)

7

(citations omitted).  Congress did not abrogate the States' sovereign immunity when it enacted 42 U.S.C. § 1983.  *Will*, 491 U.S. 58, 66 (1989).  Also, the State of Michigan has not waived its immunity.  *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) (citing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986)).  The Eleventh Amendment therefore bars Plaintiffs' claims against the Michigan Board of State Canvassers.  *See McLeod v. Kelly*, 7 N.W.2d 240, 242 (Mich. 1942) ("The board of State canvassers is a State agency ..."); *see also Deleeuw v. State Bd. of Canvassers*, 688 N.W.2d 847, 850 (Mich. Ct. App. 2004).

And Plaintiffs' claims against Governor Whitmer and Secretary Benson also do not fall within the exception rising from the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908).  As the Supreme Court has advised:

> To interpret Young to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle ... that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading. Application of the Young exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction.

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997).  Further, "the theory of *Young* has not been provided an expansive interpretation."  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102.  "'In determining whether the doctrine of *Ex*

*parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. 296 (O'Connor, J., concurring)).

*Ex parte Young* does not apply, however, to *state law* claims against state officials, regardless of the relief sought. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.  On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *see also In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 787 (6th Cir. 2017) ("If the plaintiff sues a state official under state law in federal court for actions taken within the scope of his authority, sovereign immunity bars the lawsuit regardless of whether the action seeks monetary or injunctive relief.").  Here, without question, Plaintiffs' state law claims against the State Defendants are barred by Eleventh Amendment immunity.

Further, it is far from clear whether Plaintiffs' requested injunctive relief is prospective in nature, as opposed to retroactive.  *See Edelman v. Jordan*, 415 U.S. 651, 666-667 (1974).  Plaintiffs do not seek to require state officials to conform

their conduct to the law in the future, but rather to retroactively *undo* the actions of state officials, and—indeed—to substitute new actions in their place, in effect having this Court make determinations in place of state officials.  Such a request is not consistent with long-established principles of state sovereignty.  As a result, the *Ex Parte Young* exception to the Eleventh Amendment does not apply to these claims.

Moreover, even if Plaintiffs' claims for injunctive and declaratory relief had been properly pleaded, they would still be barred by the Eleventh Amendment. "To interpret *Young* to permit a federal court-action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle…that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261, 270 (1997).  Federal courts cannot order state officials to conform to state law. *See Pennhurst*, 465 U.S. at 106.

Again, "'[i]n order to fall with the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law.'" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (quoting *Diaz v. Mich. Dep't of Corr*., 703 F.3d 956, 964 (6th Cir. 2013)).  Unlike *Russell*, this is not a case where a plaintiff is seeking to enjoin the continuing enforcement of a statute

that is allegedly unconstitutional.  *See id*. at 1044, 1047 (plaintiff claimed that

Kentucky law creating a 300-foot no-political-speech buffer zone around polling

location violated his free-speech rights).

As this Court has previously noted, the Michigan Board of State Canvassers

has already certified the results of the election, and the Governor has issued the

Certificates of Ascertainment for electors.  (ECF No. 62, PageID.3306.)  As a

result, there is no continuing violation to enjoin. *See id.,* (citing *Rios v. Blackwell*,

433 F. Supp. 2d 848 (N.D. Ohio Feb. 7, 2006); *see also King Lincoln Bronzeville*

*Neighborhood Ass'n v. Husted*, No. 2:06-cv-00745, 2012 WL 395030, at *4-5

(S.D. Ohio Feb. 7, 2012); cf. *League of Women Voters of Ohio v. Brunner*, 548

F.3d 463, 475 (6th Cir. 2008)).

Here, each count of Plaintiffs' complaint—even Counts I, II, and III, which

claim to raise violations of federal law—is predicated on the election being

conducted contrary to Michigan law.  In fact, Plaintiffs' amended complaint

explicitly requests a declaration that ballot fraud occurred in violation of state law.

(ECF No. 6, Am. Complt., PageID.956.)  The Eleventh Amendment bars this

Court's exercise of judicial power to issue Plaintiffs' requested relief.

Plaintiffs' complaint is filled with references to Michigan law and how the

allegedly unlawful actions of election workers in Detroit and elsewhere violated

state law. Count IV is premised entirely upon officials' alleged violations of state

statutes.  (ECF No. 6, Am. Compl., ¶¶ 208-228.)  And, as stated above, even Counts I, II and III, although framed as violations of federal constitutional rights, are still based upon violations of Michigan law.  (*Id.*, ¶179-180, PageID.938, ¶186-188, PageID.940-941, ¶206, PageID.948, and ¶211-227, PageID.949-953.)

Count I is pleaded as a federal claim under the Elections and Electors Clauses of the U.S. Constitution, but it is based solely on perceived violations of state law.  (*Id.*, PageID.938, ¶180.)  Although Plaintiffs have styled this claim as a federal cause of action, the substance of their allegations focuses entirely on state officials' alleged failure to follow the requirements of the Michigan Election Code by allegedly failing to uphold the rights of election challengers and by failing to prevent fraudulent votes.  Count II is pleaded as a claim under the Equal Protection Clause of the Fourteenth Amendment but is similarly premised upon the rights and access of election challengers and the alleged failure of the Defendants to comply with the Michigan Election Law.  (*Id.*, ¶186-190, PageID.940-943.)  Count III seeks to raise claims of substantive due process under the Fourteenth Amendment, but it likewise rests upon the same alleged violations of state law.  (*Id.*, ¶206, PageID.948.)  And, finally, Count IV expressly alleges only violations of state law.  Accordingly, each of these claims requires this Court to adjudicate whether Defendants violated state law, either through "de-certifying" the election results,

conducting an audit or recount, or transmitting Plaintiffs' desired results.  (*Id*.,

PageID.955-956.)

This Court cannot make that determination.  As the U.S. Supreme Court held

in *Pennhurst*, federal courts are prohibited from granting "relief against state

officials on the basis of state law, whether prospective or retroactive."  465 U.S. at

106; *see also id*. at 117 ("[A] federal suit against state officials on the basis of state

law contravenes the Eleventh Amendment when . . . the relief sought and ordered

has an impact directly on the state itself.").  *See also In re Ohio Execution Protocol*

*Litig*., 709 F. App'x 779, 787 (6th Cir. 2017) ("If the plaintiff sues a state official

under state law in federal court for actions taken within the scope of his authority,

sovereign immunity bars the lawsuit regardless of whether the action seeks

monetary or injunctive relief.").

Framing the claims as federal causes of action does not enable this court to

reach these state law issues raised against state officials.  *See*, e.g., *Balsam v. Sec'y*

*of State*, 607 F. App'x 177, 183-84 (3d Cir. 2015) (holding that Eleventh

Amendment bars state law claims even when "premised on violations of the

federal Constitution"); *Massey v. Coon*, No. 87-3768, 1989 U.S. App. LEXIS

23130, at *4 (9th Cir. Jan. 3, 1989) (affirming dismissal of suit where "[a]though

on its face the complaint states a claim under the due process and equal protection

clauses of the Constitution, these constitutional claims are entirely based on the

failure of defendants to conform to state law" and "when a plaintiff alleges that a state official has violated state law…the entire basis for the doctrine of *Young*…disappears."); *Six v. Newsom*, 462 F. Supp. 3d 1060, 1073 (C.D. Cal. 2020) (denying temporary restraining order in part because Fifth and Fourteenth Amendment claims were predicated on violations of state law); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 626 (E.D. Pa. 2018) ("Even when voters attempt to 'tie their state law claims into their federal claims,' the Eleventh Amendment bars the state law claims." (quoting *Balsam*, 607 F. App'x at 183)); *Thompson v. Alabama*, No. 2:16-CV-783-WKW, 2017 U.S. Dist. LEXIS 118606, at *25-26 (M.D. Ala. July 28, 2017) (denying injunction where plaintiffs' federal constitutional claims rested on premise that state officials failed to implement state law in a particular manner, and the requested injunction would have required the court to supervise and direct state officials in how they should carry out their duties).

As state officials, the Governor, the Secretary, and the Board are indisputably shielded by the Eleventh Amendment.  The actions sought to be enjoined are required by state law.  Mich. Comp. Laws § 168.46 requires that the "governor shall certify" the results of the election after the State Board has determined the result.

All three of Plaintiffs' claims, including those nominally styled as federal claims, are barred under *Pennhurst* because they depend on an adjudication of Michigan law and state officials' application of it.  But "[a] federal court may not enjoin a state official to follow state law." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 479 (6th Cir. 2008).  *Pennhurst* made clear that there is no "greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."  465 U.S. at 106.  Because Count IV is based entirely on violations of state law, and seeks to enjoin state officials, it is barred by the Eleventh Amendment. Counts I, II, and III—although purporting to raise claims based upon violations of federal law—depend entirely on whether state officials followed state law.  They are, therefore, barred for the same reasons as Count IV—again, when an issue of state law is simply re-stated as a federal cause of action, it is barred under *Pennhurst*.

As a result, all of Plaintiffs' claims are barred by the Eleventh Amendment and must be dismissed as a matter of law.

## II.   Plaintiffs' claims must be dismissed because they are moot.

Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.  *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  Federal courts have a continuing duty to ensure that they adjudicate only

genuine disputes between adverse parties, where the relief requested would have a real impact on the legal interests of those parties. *See Church of Scientology v. United States,* 506 U.S. 9, 12 (1992); *McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453, 458 (6th Cir. 1997) (en banc).

If "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," then the case is moot and the court has no jurisdiction. *Los Angeles County v. Davis,* 440 U.S. 625, 631 (1979). A "live" controversy is one that "persists in 'definite and concrete' form even after intervening events have made some change in the parties' circumstances." *Mosely v. Hairson*, 920 F.2d 409, 414 (6th Cir. 1990) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974)); *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) ("The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.") (internal quotation marks and citation omitted). In other words, a case is moot where the court lacks "the ability to give meaningful relief[.]" *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019).

In their amended complaint, Plaintiffs request various forms of relief. Among other things, they ask this Court to order the Defendants and non-party Wayne County to "de-certify the election results"; enjoin Governor Whitmer from transmitting the certified election results; order the Governor to transmit certified results that declare President Trump is the winner of the election, order the

impounding of voting machines and software for inspection by Plaintiffs; order a recount; and an order that no votes received or tabulated by non-certified machines be counted.  (ECF No. 6, Am. Complt., PageID.955, ¶ 233.)  The relief they request is either beyond the ability of this Court to grant or is simply no longer available.  (*See* ECF 62, PageID.3308.)

As stated above, all 83 counties in Michigan finished canvassing their results for all elections by Tuesday, November 17, and reported their results for state office races to the Secretary of State and the Board of State Canvassers by the next day, *see* Mich. Comp. Laws § 168.843.  The Board of State Canvassers certified the results of the November 3 general election on November 23, and the Governor sent the slate of presidential electors the same day.  The time for requesting a special election based on mechanical errors or malfunctions in voting machines has expired.  *See* Mich. Comp. Laws §§ 168.831, 168.832.  So too, has the time for requesting a recount for the office of President.  *See* Mich. Comp. Laws § 168.879.  And Michigan's electors met and voted on December 14.  Mich. Comp. Laws § 168.47; 3 U.S.C. § 7.

As the Eleventh Circuit Court of Appeals recently observed in a similar, post-election lawsuit brought to specifically overturn the results of the 2020 presidential election:

> "We cannot turn back the clock and create a world in which" the 2020 election results are not certified. *Fleming v. Gutierrez*, 785 F.3d 442,

445 (10th Cir. 2015). And it is not possible for us to delay
certification nor meaningful to order a new recount when the results
are already final and certified.

*Wood v. Raffensperger*, __ F.3d __, 2020 WL 7094866 (11th Cir. Dec. 5, 2020).

The named Defendants have already performed any duties they have under the law with respect to the conducting of and certification of the November 3 general election, and there is no mechanism available for de-certifying Michigan's election results or for retracting the slate of electors the Governor has already sent to the Archivist.  Moreover, as explained below, the named Defendants did not engage in any of the unlawful conduct alleged by Plaintiffs.  Even if Plaintiffs were somehow entitled to declaratory relief on their constitutional and statutory claims, which they are not, it would not make a difference in the legal interests of the parties because Plaintiffs' claims are moot.

## III.   Plaintiffs' claims are barred by laches.

The defense of laches is rooted in the principle that "equity aids the vigilant, not those who slumber on their rights."  *Lucking v. Schram*, 117 F.2d 160 (6th Cir. 1941).  Courts apply laches in election cases. *See, e.g.*, *Detroit Unity Fund v. Whitmer*, 819 F. App'x 421, 422 (6th Cir. 2020)  An action may be barred by the equitable defense of laches if: (1) the plaintiff delayed unreasonably in asserting their rights and (2) the defendant is prejudiced by this delay.  *Brown-Graves Co. v.*

18

*Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). Laches applies in this case for both of these reasons.

Plaintiffs unreasonably delayed raising their claims before this Court. Plaintiffs filed this action on November 25, 2020 (ECF No. 6, Am. Cmplt., PageID.1-830)—more than 21 days after the November 3, 2020 general election, and it was not served upon the Defendants until December 1, 2020. (ECF No. 21, Service, PageID.2109-2114.) Any concerns about the application of state law prior to the election could have been brought far in advance of election day. Also, the counting of votes in Michigan was completed by the 83 boards of county canvassers on November 17, and by the Board of State Canvassers on November 23. Mich. Comp. Laws §§ 168.822(1), 168.841, 168.842(2), 168.845. There is no reason why Plaintiffs' claims of irregularities on election day or during the canvass should not have been brought much sooner—if not promptly at the time of the purported events. Plaintiffs' claims related to election machines and software that are based upon "expert and fact witness" reports discussing "glitches" and other alleged vulnerabilities that date as far back as 2010. (See e.g., ECF No. 6 at PageID.927-933, ¶¶ 157(C)-(E), (G), 158, 160, 167.) Plaintiffs could have filed such claims years before the 2020 General Election, but Plaintiffs took no action until after the election was over and votes were counted.

Plaintiffs' delay is simply unreasonable.  In fact, Plaintiffs make little or no attempt to explain why they waited so long to file this suit.  According to Plaintiffs themselves, "[m]anipulation of votes was apparent *shortly after the polls closed on November 3, 2020*." (ECF No. 7, PageID.1837 (emphasis added).)  As this Court has previously observed, where there is no reasonable explanation, there can be no true justification. (ECF No. 62, PageID.3312) (citing *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (identifying the "first and most essential" reason to issue a stay of an election-related injunction is plaintiff offering "no reasonable explanation for waiting so long to file this action")).

The Defendants have most certainly been prejudiced by Plaintiffs' delay. See *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) ("As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible by his having slept on his rights.") This is especially true here, where Plaintiffs' lawsuit was filed not just at last-minute—but well after the fact. While Plaintiffs delayed, the ballots were cast; the votes were counted; and the results were certified.  As this Court noted, the rationale for interposing the doctrine of laches is now at its peak. (ECF No. 62, PageID.3313) (citing *McDonald v. Cnty. of San Diego*, 124 F. App'x 588 (9th Cir. 2005); *Soules v. Kauaians for Nukolii Campaign Comm.*, 849

F.2d 1176, 1180 (9th Cir. 1988)).  Plaintiffs have unreasonably delayed in raising

their claims before this Court, and the consequences of their delay have prejudiced

the State Defendants.  Their claims are, therefore, barred by the doctrine of laches

and should be dismissed.

## IV. Plaintiffs' claims fail as a matter of law because they lack standing.

Under Article III of the United States Constitution, federal courts can

resolve only "cases" and "controversies."  U.S. Const., Art. III, § 2. The case-or-

controversy requirement is satisfied only where a plaintiff has standing to bring

suit.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24,

2016). Each plaintiff must demonstrate standing for each claim he or she seeks to

press.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation

omitted) ("[A] plaintiff must demonstrate standing separately for each form of

relief sought.").  To establish standing, a plaintiff must show that he or she: (1) has

suffered an injury in fact that is "concrete and particularized" and "actual or

imminent"; (2) the injury is "fairly . . . trace[able] to the challenged action of the

defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-62 (1992) (internal quotation marks and citations omitted).

As an initial matter, this Court has already held that Plaintiffs have failed to

state a claim for a due process.  Plaintiffs have done nothing to expand or develop

that claim, and so the same deficiencies remain.  The Plaintiffs lack standing to make their remaining claims for the reasons below.

### A.    Plaintiffs lack standing to raise an Equal Protection claim.

Plaintiffs have alleged that the Defendants engaged in "several schemes" to, among other things, "destroy," "discard," and "switch" votes for President Trump, thereby "devalu[ing] Republican votes" and "diluting" the influence of their individual votes. (ECF No. 49, PageID.3079.)  Plaintiffs contend that "the vote dilution resulting from this systemic and illegal conduct did not affect all Michigan voters equally; it had the intent and effect of inflating the number of votes for Democratic candidates and reducing the number of votes for President Trump and Republican candidates." (ECF No. 49, Page.ID 3079.)  Even assuming, for purposes of argument only, that Plaintiffs could establish injury-in-fact and causation under this theory, their constitutional claim cannot stand because Plaintiffs fail to establish redressability.

Plaintiffs fail to establish that the alleged injury of vote-dilution could be redressed by a favorable decision from this Court. Plaintiffs ask this Court to de-certify the results of the 2020 General Election in Michigan.  But an order invalidating approximately 2.8 million people would not reverse or remedy the dilution of Plaintiffs' vote. To be sure, standing is not "dispensed in gross: A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill*,

138 S. Ct. at 1934 (citing Cuno, 547 U.S. at 353); *Cuno*, 547 U.S. at 353 ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  Plaintiffs' alleged injury does not entitle them to seek their requested remedy because the harm of having one's vote invalidated or diluted is not remedied by denying millions of others their right to vote.  Accordingly, Plaintiffs have failed to show that their injury can be redressed by the relief they seek and thus possess no standing to pursue their equal protection claim.

### B.    Elections Clause and Electors Clause Claims

The provision of the United States Constitution known as the Elections Clause states in part: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof[.]"  U.S. Const., Art. I, § 4, cl. 1. "The Elections Clause effectively gives state governments the 'default' authority to regulate the mechanics of federal elections, *Foster v. Love*, 522 U.S. 67, 69 [ ] (1997), with Congress retaining 'exclusive control' to 'make or alter' any state's regulations, *Colegrove v. Green*, 328 U.S. 549, 554 [ ] (1946)." *Bognet v. Sec'y Commonwealth of Pa.,* No. 20-3214, 2020 WL 6686120, at *1 (3d Cir. Nov. 13, 2020).  The "Electors Clause" of the Constitution states: "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors ...."  U.S. Const., Art. II, § 1,

cl. 2.  Although separate constitutional provisions, the Electors Clause and

Elections Clause share "considerable similarity," *Ariz. State Leg. v. Ariz. Indep.*

*Redistricting Comm'n*, 576 U.S. 787, 839 (2015) (Roberts, C.J., dissenting).

Plaintiffs argue that, as "nominees of the Republican Party to be Presidential

Electors on behalf of the State of Michigan, they have standing to allege violations

of the Elections Clause and Electors Clause because "a vote for President Trump

and Vice-President Pence in Michigan ... is a vote for each Republican elector[],

and ... illegal conduct aimed at harming candidates for President similarly injures

Presidential Electors." (ECF No. 7 at PageID.1837-38; ECF No. 49, PageID.3076-

78.)  But where, as here, the only injury Plaintiffs have alleged is that the Elections

Clause has not been followed, the U.S. Supreme Court has made clear that "[the]

injury is precisely the kind of undifferentiated, generalized grievance about the

conduct of government that [courts] have refused to countenance." *Lance v.*

*Coffman*, 549 U.S. 437, 442 (2007).  Because Plaintiffs "assert no particularized

stake in the litigation," Plaintiffs fail to establish injury- in-fact and thus standing

to bring their Elections Clause and Electors Clause claims.  *Id*.; *see also Johnson v.*

*Bredesen*, 356 F. App'x 781, 784 (6th Cir. 2009) (citing *Lance*, 549 U.S. at 441-

42) (affirming district court that citizens did not allege injury-in-fact to support

standing for claim that the State of Tennessee violated constitutional law).

24

This is so because the Elections Clause grants rights to "the Legislature" of "each State." U.S. Const., Art. I, § 4, cl. 1. The Supreme Court interprets the words "the Legislature," as used in that clause, to mean the lawmaking bodies of a state. *Ariz. State Legislature*, 135 S. Ct. at 2673. The Elections Clause, therefore, grants rights to state legislatures and to other entities to which a State may delegate lawmaking authority. *See id*. at 2668.  Plaintiffs' Elections Clause claims thus belong, if to anyone, Michigan's state legislature. *Bognet*, 2020 WL 6686120, *7. Plaintiffs here are six presidential elector nominees; they are not a part of Michigan's lawmaking bodies nor do they have a relationship to them.

To support their contention that they have standing, Plaintiffs have previously relied on *Carson v. Simon*, 78 F.3d 1051 (8th Cir. 2020), a decision finding that electors had standing to bring challenges under the Electors Clause. (ECF No. 7, PageID.1839) (citing *Carson*, 978 F.3d at 1057).  In that case, which was based on the specific content and contours of Minnesota state law, the Eighth Circuit Court of Appeals concluded that because "the plain text of Minnesota law treats prospective electors as candidates," it too would treat presidential elector nominees as candidates. *Carson*, 78 F.3d at 1057. This Court, however, should not follow the majority's holding in Carson for the reasons stated in that case's dissent:

> I am not convinced the Electors have Article III standing to assert claims under the Electors Clause. Although Minnesota law at times refers to them as "candidates," see, e.g., Minn. Stat. § 204B.03 (2020), the Electors are not candidates for public office as that term is

25

> commonly understood. Whether they ultimately assume the office of elector depends entirely on the outcome of the state popular vote for president. Id. § 208.04 subdiv. 1 ("[A] vote cast for the party candidates for president and vice president shall be deemed a vote for that party's electors."). They are not presented to and chosen by the voting public for their office, but instead automatically assume that office based on the public's selection of entirely different individuals.

78 F.3d at 1063 (Kelly, J., dissenting).

Because Plaintiffs lack standing to assert any of their claims, this Court should dismiss their amended complaint.

## V.     This Court should abstain from exercising jurisdiction.

This Court should abstain from exercising jurisdiction at this time.  In Count I, Plaintiffs argue that Defendants violated the Electors Clause of the U.S. Constitution by failing to conduct the November 3 general election in accordance with the election laws enacted by the Michigan Legislature.  (ECF No. 6, Am. Compl., PageID.937-939, ¶¶ 177-181.)  In Count II, Plaintiffs argue that Defendants violated the Equal Protection Clause by causing the debasement or dilution of Plaintiffs' votes by failing to comply with Michigan's election laws. (*Id*., PageID.939-945, ¶¶ 183-197.)  In Count III, Plaintiffs similarly allege that Defendants violated their substantive due process rights by diluting their votes through the counting of unlawful or illegal votes.  (*Id*., PageID.945-948, ¶¶ 199-207.)  Finally, in Count IV, Plaintiffs allege state-law statutory violations.  (*Id*., PageID.949-953, ¶¶ 209-228.)  But the same or similar claims are already pending

before the Michigan state courts. Thus, this Court should dismiss Plaintiffs' claims

or at least abstain under *Colorado River Water Conservation District v. United*

*States*, 424 U.S. 800 (1976).

In *Colorado River*, the Supreme Court held that federal courts may abstain

from hearing a case solely because similar pending state court litigation exists.

424 U.S. 800, 817 (1976); *accord Romine v. Compuserve Corp.*, 160 F.3d 337,

339-41 (6th Cir. 1998). "[D]espite the virtually unflagging obligation of the

federal courts to exercise the jurisdiction given them, . . . considerations of judicial

economy and federal-state comity may justify abstention in situations involving the

contemporaneous exercise of jurisdiction by state and federal courts." *Romine*, 160

F.3d at 339 (quotation removed). To abstain from exercising jurisdiction, a state

court action must be "parallel." *Id.* at 340; *accord Baskin v. Bath Tp. Bd. of*

*Zoning Appeals*, 15 F.3d 569, 571-72 (6th Cir. 1994). If state proceedings are

parallel, eight factors must weigh in favor of abstention. *PaineWebber, Inc. v.*

*Cohen*, 276 F.3d 197, 206-07 (6th Cir. 2001); *accord Great Earth Cos. v. Simons*,

288 F.3d 878, 886 (6th Cir. 2002). "Exact parallelism is not required; it is enough

if the two proceedings are substantially similar." *Romine*, 160 F.3d at 340

(quotation removed); *accord Bates v. Van Buren Tp.*, 122 F. App'x 803, 806 (6th

Cir. 2004). "Where ... the parties are substantially similar and ... [the claims] are

predicated on the same allegations as to the same material facts ... the actions must

be considered 'parallel.' "  *Romine*, 160 F.3d at 340; *accord Healthcare Co. v. Upward Mobility, Inc.*, 784 F. App'x 390, 394 (6th Cir. 2019).

As noted, similar claims are pending in the Michigan state courts.

> a.   ***Bailey v. Antrim County*, Antrim Circuit Court No. 20-9238.**

On or about November 23, an individual voter filed a complaint for declaratory and injunctive relief against Antrim County, alleging constitutional and statutory violations based on purported fraud in the conducting of the November 3 general election in Antrim County based on its use of the Dominion Voting Systems election management system and voting machines.  (ECF No. 31-8, PageID.2322-2337.)  The parties have retained experts and already have a scheduling order in that case and are engaging in discovery with trial set for Spring 2021.  This case thus presents similar claims regarding the Dominion Voting Systems as the present case and remains pending before the Antrim Circuit Court.

> b.   ***Donald J. Trump for President, Inc., et al. v. Secretary of State*, Michigan Court of Claims Case No. 20-0225.**

On November 4, the Trump Committee and an individual voter and Republican poll challenger filed a complaint in the Michigan Court of Claims generally alleging that insufficient numbers of Republican election inspectors or challengers were present at unidentified absent voter counting boards in the State, and that challengers were being denied access to surveillance videotapes of AV

ballot drop boxes at the unidentified absent voter counting boards.  The plaintiffs

sought to halt the canvass.  (ECF No. 31-9, PageID.2338-2347.)  The Michigan

Court of Claims denied the plaintiffs' motion for emergency and/or injunctive

relief (ECF No. 31-10, PageID.2348-2354) and plaintiffs appealed to the Michigan

Court of Appeals.  The Court of Appeals denied leave to appeal on December 4,

2020.[2]   The plaintiffs filed an application for leave to appeal with the Michigan

Supreme Court, but leave was denied on December 11, 2020.[3]  A motion to

dismiss is currently before the Court of Claims.  This case thus present similar

claims as to the issues of challengers and inspectors.

### c.   *Stoddard, et al. v. Detroit Election Commission, et al., Wayne Circuit Court No. 20-014604.*

Also on or about November 4, the Election Integrity Fund and an

Republican challenger at TCF, filed a complaint in Wayne Circuit Court against

Detroit and Wayne County election officials alleging that a sufficient number of

Republican election inspectors were not present at Detroit's absent voter counting

board at TCF, and that ballots were being duplicated without the presence of

Republican election inspectors.  (ECF No. 31-12, PageID.2400-2408.)  The

---

[2] See December 4, 2020, Michigan Court of Appeals order denying leave, Docket
Nos. 355378, 355397, available at
http://publicdocs.courts.mi.gov/coa/public/orders/2020/355378_17_01.pdf.
[3] See December 11, 2020, Michigan Supreme Court order denying leave, Docket
No. 162320, available at
http://publicdocs.courts.mi.gov/sct/public/orders/162320_28_01.pdf.

plaintiffs sought injunctive relief to stop the duplication of ballots without a Republican inspector being present. The circuit court denied the request for injunctive relief, concluding that plaintiffs' claims that thousands of ballots had been changed or falsified were speculative. (ECF No. 31-13, PageID.2409-2413.) The plaintiffs did not appeal, and their case remains pending in the circuit court.

> ### d. *Costantino, et al. v. City of Detroit, et al.*, Wayne Circuit Court No. 20-014780.

On or about November 8, another lawsuit was filed in Wayne Circuit Court against City of Detroit and Wayne County election officials. Plaintiffs Cheryl Costantino and Edward McCall, voters and Republican challengers, alleged a litany of errors in the processing of AV ballots at TCF, including that:

    a. Defendants systematically processed and counted ballots from voters whose name failed to appear in either the Qualified Voter File (QVF) or in the supplemental sheets. When a voter's name could not be found, the election worker assigned the ballot to a random name already in the QVF to a person who had not voted.

    b. Defendants instructed election workers to not verify signatures on absentee ballots, to backdate absentee ballots, and to process such ballots regardless of their validity.

    c. After election officials announced the last absentee ballots had been received, another batch of unsecured and unsealed ballots, without envelopes, arrived in trays at the TCF Center. There were tens of thousands of these absentee ballots, and apparently every ballot was counted and attributed only to Democratic candidates.

    d. Defendants instructed election workers to process ballots that appeared after the election deadline and to falsely report that those ballots had been received prior to November 3, 2020 deadline.

e.   Defendants systematically used false information to process ballots, such as using incorrect or false birthdays. Many times, the election workers inserted new names into the QVF after the election and recorded these new voters as having a birthdate of 1/1/1900.

f.   On a daily basis leading up to the election, City of Detroit election workers and employees coached voters to vote for Joe Biden and the Democrat party. These workers and employees encouraged voters to do a straight Democrat ballot. These election workers and employees went over to the voting booths with voters in order to watch them vote and coach them for whom to vote.

g.   Unsecured ballots arrived at the TCF Center loading garage, not in sealed ballot boxes, without any chain of custody, and without envelopes.

h.   Defendant election officials and workers refused to record challenges to their processes and removed challengers from the site if they politely voiced a challenge.

i.   After poll challengers started discovering the fraud taking place at the TCF Center, Defendant election officials and workers locked credentialed challengers out of the counting room so they could not observe the process, during which time tens of thousands of ballots were processed.

j.   Defendant election officials and workers allowed ballots to be duplicated by hand without allowing poll challengers to check if the duplication was accurate. In fact, election officials and workers repeatedly obstructed poll challengers from observing. Defendants permitted thousands of ballots to be filled out by hand and duplicated on site without oversight from poll challengers.

(ECF 31-14, PageID.2414-2436, pp 3-4.)  The plaintiffs requested injunctive relief,

asking the state court to order the defendants to conduct an independent audit to

determine the accuracy of the November 3 election; to prohibit the defendants

from certifying the election results; and to issue an order voiding the election

results.  *Id.*, p 20.  The circuit court denied the motion for injunctive relief on

November 13.  (ECF No. 31-15, PageID.2437-2450.)  The court concluded that the

claims of fraud and improprieties lacked credibility and were often based on

misunderstandings of the law and the actual processes that occurred at TCF, as

demonstrated by the affidavit of Christopher Thomas, Michigan's former,

longstanding Director of Elections.  *Id.*  The plaintiffs appealed the denial of their

request for injunctive relief to the Michigan Court of Appeals, which denied

relief,[4]

and the plaintiffs then appealed to the Michigan Supreme Court.  On November 23,

the Michigan Supreme Court denied leave to appeal.  (ECF No. 31-16,

PageID.2451-2458.)  This case remains open and pending before the Wayne

Circuit Court.

These five actions are sufficiently parallel to Plaintiffs' instant claims to

warrant abstention under *Colorado River.*

With the actions being parallel, the court must weigh eight factors to

determine if abstention is appropriate:

> (1) whether the state court has assumed jurisdiction over any res or
> property;

---

[4] *See* Michigan Court of Appeals Docket No. 3553443, available at
https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?Searc
hType=1&CaseNumber=162245&CourtType_CaseNumber=1.

(2) whether the federal forum is less convenient to the parties;

(3) avoidance of piecemeal litigation;

(4) the order in which jurisdiction was obtained;

(5) whether the source of governing law is state or federal;

(6) the adequacy of the state court action to protect the federal plaintiff's rights;

(7) the relative progress of the state and federal proceedings; and

(8) the presence or absence of concurrent jurisdiction.

*Cohen*, 276 F.3d at 206 (quotation removed).  Here, the third, fourth, fifth, sixth, and seventh factors weigh in support of abstention.

The third factor, the avoidance of piecemeal litigation, "was paramount in *Colorado River* itself."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).  "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results."  *Romine*, 160 F.3d at 341.  This factor weighs in favor of abstention. By allowing Plaintiffs to litigate their constitutional and statutory claims, and especially if the court were to decide Plaintiffs' motion for a preliminary injunction, the court would potentially duplicate the efforts of the state courts and risk conflicting orders.  The Michigan state courts currently have before them nearly identical factual and legal claims. Allowing Plaintiffs to continue here while there are appeals and cases pending in state court, would undermine just adjudication and fairness to the Defendants.  "The legitimacy of the court system

in the eyes of the public and fairness to the individual litigants . . . are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications." *Romine*, 160 F.3d at 341.

The order in which jurisdiction was obtained, the fourth factor of *Colorado River* analysis, also supports abstention. The state cases discussed above were all filed before this case, and several of the cases, *Trump*, *Stoddard*, and *Constantino*, are far more advanced than this case.

The Michigan courts are also capable of protecting Plaintiffs' rights, the sixth *Colorado River* factor. The state courts can address and resolve federal constitutional questions, especially where equal protection and dur process principles overlap, and the state courts are certainly the better venue for interpreting and resolving state statutory claims. This factor weighs in favor abstention.

Last, the progress of the proceedings, factor number seven, also weighs in favor of abstention. No discovery has taken place in this case; the court has not reviewed the merits of the claims or Plaintiffs' motion for a temporary restraining order. But most of the state court litigation has advanced further than this action, and is or has already been to the Michigan appellate courts.

While abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424

U.S. at 813.  Abstention is warranted because the driving principle of *Colorado*

*River* abstention is "[w]ise judicial administration, giving regard to conservation of

judicial resources and comprehensive disposition of litigation."  *Colorado River*,

424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342

U.S. 180, 183 (1952)). Where sufficient relief may be provided in the state

proceedings that were filed first and are farther along than this federal proceeding,

declining to abstain would contravene the spirit of the *Colorado River* doctrine.

Thus, this Court should abstain from adjudicating Plaintiffs' Electors Clause, equal

protection, substantive due process, and state statutory claims, and exercise its

discretion to dismiss it, rather than simply stay the claim.  *E.g., White v. Morris*,

972 F.2d 350 (Table), at *2 (6th Cir. Aug. 6, 1992); *Preston v. Eriksen*, 106 F.3d

401 (Table), at *4 (Jan. 14, 1997).

This Court should also abstain under the principles articulated by the Sixth

Circuit in *Gottfried v. Med. Planning Servs.*, 142 F.3d 326 (6th Cir. 1998).  In

*Gottfried*, the Sixth Circuit recognized that under certain circumstances, a federal

district court should refrain from exercising its jurisdiction based on considerations

of "equity, comity, and our federalist judicial system" even though the case might

not "precisely fit any of the jurisdictional doctrines normally applicable."  *Id.* at

330.

35

The plaintiff in *Gottfried* wanted to picket outside the home, office, and abortion clinic of a doctor. But the doctor had obtained a state-court injunction years earlier restricting picketing at those locations that remained in effect. *Id.* at 328. Concerned she would be arrested if the injunction were to be enforced against her, the plaintiff filed suit asking that the federal court declare the injunction unconstitutional and enjoin the city from enforcing it against her. *Id.* The Sixth Circuit determined that none of the recognized abstention doctrines applied, as the plaintiff had not been a party to the injunction and there was no ongoing state action. *Id.* at 329-30. Nevertheless, the Court held that "equity, comity, and our federalist judicial system require the federal court to give the state judge the first chance to bring the injunction into compliance with constitutional law." *Id.* at 330.

In so holding, the Sixth Court relied on the rationale underlying the *Pullman* abstention doctrine, which "requires a federal court, faced with a constitutional challenge to an uncertain state law, to defer the constitutional question and avoid a direct confrontation if a decision from the state court 'might avoid in whole or in part the necessity for federal constitutional adjudication.' " *Id.* at 331 (quoting *Harrison v. NAACP*, 360 U.S. 167, 177 (1959)). Based on this principle of constitutional avoidance, the *Gottfried* Court held that "a federal court should abstain when a nonparty to a state court injunction brings a First Amendment challenge to the injunction in federal court before requesting relief from the state

36

court." *Id.* at 332.  The Court further reasoned that this approach would be more efficient, as it would permit the state court to take into consideration changes in the law that had occurred and to reassess the continuing need for the injunction and its scope.  *Id.*  Doing so also afforded the state court the respect due as an equal in the federalist judicial system.  *Id.* at 332-333.

For all the same reasons articulated above in support of *Colorado River* abstention, abstention is warranted under *Gottfried*.  As the Court observed there:

> Treating an injunction like a statute, those who want to exercise their speech rights but do not wish to violate the injunction often file suit in federal court against a host of state and local officials for every imaginable constitutional violation, rather than simply asking the state judge who has ongoing jurisdiction over the matter for relief. This has become the pattern in today's litigious era, and it causes a host of problems that only multiply where, as here, the law has changed in the interim and a new state judge has inherited a permanent injunction drafted by a predecessor.

> Under these circumstances, we believe equity, comity, and our federalist judicial system require the federal court to give the state judge the first chance to bring the injunction into compliance with constitutional law.  [*Id.* at 330.]

Here, Plaintiffs could have filed their constitutional and statutory claims in state court. And regardless, there are pending state cases that may resolve Plaintiffs' concerns without the need for this Court's intervention and the threat of possibly conflicting decisions.  Waiting for the state court decisions preserves principles of comity as well.  This Court should thus abstain from resolving Plaintiffs' constitutional and statutory claims.

37

**VI.    Plaintiffs' federal constitutional claims are without merit and must be dismissed.**

Plaintiffs bring four counts, three of which raise federal causes of action.

For the reasons stated below, none of these claims has any legal merit.

**A.    Plaintiffs fail to state a claim for violation of the Electors and Elections Clauses of the U.S. Constitution.**

As argued earlier, Plaintiffs lack standing to bring this claim, but even

assuming Plaintiffs had standing, the claim based upon the Electors and Elections

Clauses would still fail.  Count I of Plaintiffs' complaint contends that, because the

Michigan Legislature has established laws for the administration of elections,

including presidential elections, the Defendants violated the Electors Clause and

the Elections Clause by "failing to follow the requirements of the Michigan

Election Law."  (ECF No. 6, Am. Complt., ¶179-180, PageID.938.)  It is worth

noting that Plaintiffs' theory here would effectively constitutionalize *any and every*

claimed violation of state election law—no matter how minor, fleeting, or

inconsequential—any time there was a presidential election.  If adopted by this

Court, Plaintiffs' argument would dramatically expand federal court oversight of

state elections, and any deviation from state law by local officials anywhere in the

state would be a matter of federal review.  Plaintiffs offer no support for such an

expansive reading the Electors and Elections Clauses, and no other court appears to

have adopted this approach.  Indeed, as discussed in greater detail in the section

below addressing Plaintiffs' equal protection claim, such federal court management of state elections has been rejected by other courts.

In *Bush v. Palm Beach County Canvassing Bd.,* 531 U.S. 70, 76 (2000) the Supreme Court held that state legislatures enacting laws governing the selection of presidential electors are acting under a grant of authority under Article II, § 1, cl. 2 of the U.S. Constitution.  The Supreme Court has also held that the power to define the method of selecting presidential electors is exclusive to the state legislature, *McPherson v. Blacker,* 146 U.S. 1, 27 (1892), and cannot be "taken or modified" even by the state constitutions.  *Bush v. Gore,* 531 U.S. 98, 112-13 (2000) (C.J. Rehnquist, concurring).  From this modest premise, Plaintiffs contend that any violation of the Michigan Election Law is tantamount to a modification of the Legislature's enactments.  But neither *Bush* nor *McPherson* hold as much.

But the principal problem with Plaintiffs' argument, of course, is that the Defendants have done nothing to violate the Michigan Election Law.  The Eastern District of Michigan has held that public officials are presumed to have "properly discharged their official duties" and that the burden falls on the party asserting an *ultra vires* act to show otherwise.  *Barden Detroit Casino L.L.C. v. City of Detroit,* 59 F. Supp. 2d 641, 661 (E.D. Mich. 1999)(citing *Bracy v. Gramley,* 520 U.S. 899, 909 (1997)).  Here, Plaintiffs have failed to offer evidence rebutting that presumption.  The Secretary of State, in fact, expressly issued instructions and

guidance providing for how poll challengers may perform their functions while maintaining social distance to protect the health of election workers.  Plaintiffs fail to demonstrate how the Governor or Board of State Canvassers violated any provision of the Michigan Election Law.  The Plaintiffs have simply not alleged how the Defendants failed to follow the Legislature's enactments.  Absent from Plaintiffs' complaint is any reference to any act or decision by any of the Defendants that supposedly "violates" state law—let alone the Electors and Elections Clauses as a consequence thereof.

In *Bush v. Gore*, Justice Rhenquist observed that federal courts' review of state court decisions affecting presidential electors under Article II was still deferential:

> In order to determine whether a state court has infringed upon the legislature's authority, we necessarily must examine the law of the State as it existed prior to the action of the court. Though we generally defer to state courts on the interpretation of state law -- see, e.g., *Mullaney v. Wilbur*, 421 U.S. 684 [ ] (1975) -- there are of course areas in which the Constitution requires this Court to undertake an independent, if still deferential, analysis of state law.

*Bush,* 531 U.S. at 114.  Here, neither the Governor, the Secretary, nor the Board have "infringed" upon the authority of "the Legislature."

Further, the Defendants have not done anything to violate the Elections Clause.  The Elections Clause provides:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature

thereof; but Congress may at any time make or alter such Regulations, except as to the Place of chusing Senators.

Frankly, it is not entirely clear how this clause applies to the present case. The election was held on November 3, 2020 in conformity with state law. As to the timing for counting ballots and certifying the results, the canvass of the votes at the precinct level must, by statute, commence immediately after the polls close. Mich. Comp. Laws § 168.801. The boards of county canvassers must meet on the Thursday immediately following any election to commence the canvass of the counties' returns of votes, and the county canvass must be completed by the 14th day after an election, which was November 17 for this election cycle. Mich. Comp. Laws §§ 168.821, 168.822. The canvass began as required, and the county canvasses were completed.

Under Mich. Comp. Laws § 168.842(1), the Board of State Canvassers must meet on or before the twentieth day after the election to certify the results but must complete the canvas no later than the fortieth day. The twentieth day for this election cycle was November 23, and the fortieth day was December 13. The Board of Canvassers did, in fact, certify the results on November 23, 2020 at a meeting that was both widely-reported and streamed live over the internet. No presidential candidate subsequently requested a recount within the time provided under state law. Mich. Comp. Laws § 168.879(1)(c).

Under Mich. Comp. Laws § 168.46, "[a]s soon as practicable after the state board of canvassers has" certified the results the Governor must certify the list of presidential electors to the U.S. Secretary of the Senate. *See also* 3 U.S.C. § 6. This, also, has already been done.

Lastly, § 47 provides that the presidential electors "shall convene" in the State's capitol "on the first Monday after the second Wednesday in December following their election," which was December 14 for this election cycle. Mich. Comp. Laws § 168.47; 3 U.S.C. § 7. This, too, has been done; the electors have cast their ballots. Plaintiffs' requested relief—an order requiring the Governor to transmit results naming electors for a candidate *other than the one certified to have won the election*—would itself violate the Electors Clause because such electors would not have been appointed in the manner provided by state law.

In reviewing claims under these clauses, the Supreme Court has generally weighed state election laws against federal requirements—but has not examined alleged *violations* of enacted state laws against those federal requirements. *See e.g. Cook v. Gralike*, 531 U.S. 510, 525-26 (2001); *Arizona State Legislature*, 576 U.S. at 824. Plaintiffs can provide no cases or authority supporting the claims they raise here, and Defendants can find none. This claim fails as a matter of law and must be dismissed.

**B.     Plaintiffs fail to state a claim for a violation of Equal Protection.**

Plaintiffs attempt to establish an Equal Protection claim based on the theory

that Defendants engaged in "several schemes" to, among other things, "destroy,"

"discard," and "switch" votes for President Trump, thereby "devalu[ing]

Republican votes" and "diluting" the influence of their individual votes. (ECF No.

49, PageID.3079.)

"Equal protection of the laws" means that "[h]aving once granted the right to

vote on equal terms, the State may not, by later arbitrary and disparate treatment,

value one person's vote over that of another." *Bush*, 531 U.S. at 104-05.  Voting

rights can be impermissibly burdened "by a debasement or dilution of the weight

of a citizen's vote just as effectively as by wholly prohibiting the free exercise of

the franchise."  *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)).  "Our

Constitution leaves no room for classification of people in a way that unnecessarily

abridges this right [to vote]."  *Reynolds*, 377 U.S. at 559 (quoting *Wesberry v.

Sanders*, 376 U.S. 1, 17-18 (1964)).  "[A]ll who participate in the election are to

have an equal vote—whatever their race, whatever their sex, whatever their

occupation, whatever their income, and wherever their home may be."  *Reynolds*,

377 U.S. at 557–58 (quoting *Gray v. Sanders*, 372 U.S. 368, 379 (1963)).  Thus, "a

law that would expressly give certain citizens a half-vote and others a full vote"

would be violative of the Equal Protection Clause.  *Wesberry*, 376 U.S. at 19

(quoting *Colegrove v. Green*, 328 U.S. 549, 569 (1946)).

In some cases, vote dilution can be a cognizable injury that confers standing.

*e.g.*, *United States v. Hays*, 515 U.S. 737, 744-45 (1995).  But it does not

necessarily follow that all forms of vote dilution give rise to standing.  Plaintiffs

have not explained, for instance, why the principles underlying standing in racial

gerrymandering cases (where a state legislature or redistricting committee takes

affirmative action that dilutes or restricts the votes of a specific minority

population) should apply here, in a case based only upon unsubstantiated

allegations of breaches of state election law by unidentified individuals at

unspecified times.

In *Gill v. Whitford*, the Supreme Court recognized that plaintiffs in past

vote-dilution cases had standing when their claimed injuries were "individual and

personal in nature," and the plaintiffs had alleged "facts showing disadvantage to

themselves as individuals."  138 S. Ct. 1916, 1929-30 (2018) (quoting *Reynolds v.*

*Sims*, 377 U.S. 533, 561 (1964), and *Baker v. Carr*, 369 U.S. 186, 206 (1962)).

This case is different. Plaintiffs broadly allege that their votes will be diluted, but

they fail to explain why their votes would be "diluted" at all.  Simply put—diluted

by whom?  The alleged "dilution" would affect all Michigan voters equally, giving

no particular advantage to one class or group, or any identifiable disadvantage to the Plaintiffs.

Here, no group has been given preference or advantage—indeed, it is impossible at this time to determine with any level of accuracy whether any supposed "invalid" votes were for or against any candidate for whom Plaintiffs voted.  Plaintiffs fail to identify by name a single voter who voted when they should not have—let alone anything resembling widespread election fraud.  Similarly, Plaintiffs have not identified any election workers who supposedly engaged in misconduct or malfeasance.  Upon information and belief, none of the affiants have submitted any complaints of election fraud to a law enforcement agency.

Moreover, there has simply been no valuation of any person's—or group of persons'—votes as being more valuable than others.  There has been no disparate treatment, and so nothing to violate "one-person, one-vote jurisprudence."  *Bush*, 531 U.S. at 107 (citing *Gray*, 372 U.S. 368.)  See, e.g., *George v. Hargett*, 879 F.3d 711 (6th Cir. 2018) (method for counting votes on state proposal did not violate equal protection); *State ex rel Skaggs v. Brunner*, 588 F. Supp. 2d 828 (S.D. Ohio 2008) (counting provisional ballots of otherwise eligible voters did not dilute vote).  Plaintiffs' equal protection claim is not supported by any allegation that Defendants' alleged schemes caused votes for President Trump to be changed to

votes for Vice President Biden.  The closest Plaintiffs get to alleging that physical ballots were altered in such a way is the following statement in an election challenger's sworn affidavit: "I believe some of these workers were changing votes that had been cast for Donald Trump and other Republican candidates." (ECF No. 6, PageID.902, ¶ 91 (citing Aff. Articia Bomer, ECF No. 6-3, PaegeID.1008-1010).) But, as this Court has observed, "[a] belief is not evidence" and falls far short of what is required to obtain any relief, much less the extraordinary relief Plaintiffs request. (ECF No. 62, PageID.3327)(citing *United States v. O'Connor*, No. 96-2992, 1997 WL 413594, at *1 (7th Cir. 1997); *see Brown v. City of Franklin*, 430 F. App'x 382, 387 (6th Cir. 2011)).  Similarly, the closest Plaintiffs get to alleging that election machines and software changed votes for President Trump to Vice President Biden in Wayne County is an amalgamation of theories, conjecture, and speculation that such alterations were *possible*. (*See e.g.,* ECF No. 6 at ¶¶ 7-11, 17, 125, 129, 138-43, 147-48, 155-58, 160-63, 167, 171.)  And Plaintiffs do not at all explain how the question of whether the treatment of election challengers complied with state law bears on the validity of votes, or otherwise establishes an equal protection claim.

With nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden, Plaintiffs' equal protection claim fails. *See Wood*, 2020 WL 7094866 (quoting *Bognet*, 2020

WL 6686120, at *12) ("'[N]o single voter is specifically disadvantaged' if a vote is counted improperly, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every vote.'").

While Plaintiffs argue that some poll challengers were treated inappropriately, that has no bearing on the validity or integrity of any votes.  As argued elsewhere, the penalty for interfering with a poll challenger is to punish the person who violated the law—not to punish voters by invalidating their votes for reasons over which they had no control.

Also, the Third Circuit in *Bognet* rejected this precise claim:

Contrary to the Voter Plaintiffs' conceptualization, vote dilution under the Equal Protection Clause is concerned with votes being weighed differently. See *Rucho v. Common Cause*, 139 S. Ct. 2484, 2501 [ ] (2019) ("'[V]ote dilution' in the one-person, one-vote cases refers to the idea that each vote must carry equal weight." (emphasis added)); cf. *Baten v. McMaster*, 967 F.3d 345, 355 (4th Cir. 2020), as amended (July 27, 2020) ("[N]o vote in the South Carolina system is diluted. Every qualified person gets one vote and each vote is counted equally in determining the final tally."). As explained below, the Voter Plaintiffs cannot analogize their Equal Protection claim to gerrymandering cases in which votes were weighted differently. Instead, Plaintiffs advance an Equal Protection Clause argument based solely on state officials' alleged violation of state law that does not cause unequal treatment. And if dilution of lawfully cast ballots by the "unlawful" counting of invalidly cast ballots "were a true equal-protection problem, then it would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's 'interest' in failing to do more to stop the illegal activity." *Trump for Pres. v. Boockvar*, 2020 U.S. Dist. LEXIS 188390, 2020 WL 5997680, at *45-46. **That is not how the Equal Protection Clause works.**

*Bognet, supra,* at *31-32 (emphasis added).  Similarly, the Eighth Circuit has held

that, "[t]he Constitution is not an election fraud statute." *Minn. Voters All. v.*

*Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013) (quoting *Bodine v. Elkhart Cnty.*

*Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986)).  And the Fifth Circuit has also

recognized that the Constitution, "d[oes] not authorize federal courts to be state

election monitors." *Gamza v. Aguirre*, 619 F.2d 449, 454 (5th Cir. 1980).

This Court should also adopt the reasoning of these courts and conclude that

Plaintiffs have failed to state a claim for a violation of Equal Protection.

### C.    Plaintiffs have failed to state a claim for a violation of the Due Process Clause.

As stated earlier, Plaintiffs' offer minimal allegations to support their Due

Process claim, but to the extent such a claim is raised it necessarily fails as a matter

of law.  In Count III, Plaintiffs claim that violations of state election law constitute

"widespread and systemic" violations of the Due Process Clause.  In particular,

Plaintiffs cite to their allegations that Republican poll challengers were denied a

"meaningful" opportunity to observe the processing and counting of ballots, that

election workers altered ballots, and other violations of state law that allowed for

the counting of "ineligible, illegal, or duplicate ballots."  (ECF No. 6, Am.

Complt., ¶206, PageID.948).

But the Supreme Court has never recognized the right to vote as a right

qualifying for substantive due process protection.  *Davis v. Detroit Pub. Sch. Cmty.*

48

*Dist.*, 2017 U.S. Dist. LEXIS 114749, *37 (E.D. Mich., July 24, 2017)(quoting

*Philips v. Snyder*, 2014 U.S. Dist. LEXIS 16097, *16 (E.D. Mich., November 19,

2014)).  Instead, the Supreme Court has held that "[w]here a particular

Amendment provides an explicit source of constitutional protection against a

particular sort of government behavior, that Amendment, not the more generalized

notion of 'substantive due process,' must be the guide for analyzing these claims."

*Jon Jon's Inc. v. City of Warren*, 162 F. Supp.3d 592, 605 (E.D. Mich. 2016)

(quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).  Vote-dilution claims are

typically analyzed under the Equal Protection Clause.  Equal protection also

applies when a state either classifies voters in disparate ways or places undue

restrictions on the right to vote.  *Obama for America v Husted*, 697 F3d 423, 428

(6th Cir. 2012).  For the reasons stated in the argument above, there is no violation

of the Equal Protection Clause.  Consequently, there is also no violation of

substantive due process.

It is true that the Sixth Circuit has held that the Due Process Clause is

"implicated" in "exceptional cases where a state's voting system is fundamentally

unfair."  *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir.

2008).  *See also*, *Northeast Ohio Coalition for the Homeless v. Husted,* 696 F.3d

580, 597 (6th Cir. 2012).  But the *League of Women Voters* case involved "non-

uniform rules, standards, and procedures," involving missing names from voter

rolls, inadequate numbers of voting machines, and refusal of assistance to disabled

voters which resulted in "massive disenfranchisement and unreasonable dilution of

the vote." *Id.* And *NE Coalition for the Homeless* involved "poll-worker error

[that] cause[d] thousands of qualified voters to cast wrong-precinct ballots from the

correct polling locations." 696 F.3d at 597. Neither circumstance is present in this

case. Further, the Sixth Circuit in *Philips v. Snyder,* 836 F.3d 707, 716 (6th Cir.

2016) instructed that these cases were to be interpreted narrowly, and that they

"address[ed] whether states' entire election processes impaired citizens' abilities to

participate in state elections on an equal basis with other qualified voters."

*Phillips*, 836 F.3d at 716. As a result, although case law recognizes that a

substantive due process right to vote *may* come into play upon a showing of

"fundamental unfairness," the necessary unfairness only arises when a profound

irregularity comprises "non-uniform rules, standards, and procedures." Here,

Plaintiffs do not allege non-uniform rules or standards, and instead premise their

claim on alleged *violations* of the rules by unknown individuals. As a result, their

claims fail to demonstrate any irregularity of such magnitude that it rises to a

constitutional violation.

Moreover, Plaintiffs' allegations are insufficient to establish widespread or

systemic violation of the Michigan Election Law. For example, Plaintiffs' claims

about the ability of challengers to observe the counting of ballots are not consistent

with the statute.  All that is required is that the "board of election inspectors shall provide space for the challengers within the polling place that enables the challengers to observe the election procedure and each person applying to vote." Mich. Comp. Laws § 168.733(1).  The statute does not, however, provide that challengers get to stand a certain distance from the counting of the ballots, or that their view must be sufficiently unobstructed.  Similarly, the Michigan Election Law provides that "a political party [or interested organization] may designate not more than 2 challengers to serve in a precinct at any 1 time," Mich. Comp. Laws § 168.730, and that "[a]n election challenger is authorized to challenge an election procedure that is not being properly performed," Mich. Comp. Laws § 168.733(1)(d).  Plaintiffs do not appear to claim that there were *no* Republican challengers—only that some were not allowed back in after leaving.  (ECF No. 6, Am. Complt., ¶62-63 PageID.892-893).  Such claims simply fail to rise to the level of "fundamental unfairness."

## VII.   Plaintiffs' state-law statutory claims are without merit.

In Count IV, Plaintiffs allege various state-law statutory violations.  For the reasons argued earlier regarding the Eleventh Amendment, mootness, standing, and abstention, this Court should not decide these claims.  But should the Court reach the claims that the State Defendants violated state law, these claims

demonstrate Plaintiffs' complete failure to understand the law and the roles of various election officials and are without merit.

### a.  Mich. Comp. Laws § 168.765a

Plaintiffs argue that "Defendants habitually and systematically disallowed election inspectors from the Republican Party, including Plaintiff, to be present in the voter counting place and refused access to election inspectors from the Republican Party, including Plaintiff, to be within a close enough distance from the absent voter ballots to be able to see for whom the ballots were cast."  (ECF No. 6, Am. Compl., PageID.79-80, ¶¶ 215-216.)  Plaintiffs cite Mich. Comp. Laws § 168.765a.  (*Id.*, PageID.79, ¶ 214.)  These claims are without merit since none of the named Defendants—the Governor, Secretary Benson, or the Board—engaged in any conduct preventing election inspectors from accessing TCF or have any duties with respect to the appointment of election inspectors.

In this argument, Plaintiffs appear to conflate election inspectors and election challengers.  A challenger is not the same thing as an election inspector—challengers are appointed in different manners and have different responsibilities. Compare *e.g.* Mich. Comp. Laws §§ 168.674 and 168.730.

For Election Day, city or township election commissioners must appoint at least three election inspectors to each election precinct, and "not less than a majority of the inspectors shall be present in the precinct polling place during the

time the polls are open." Mich. Comp. Laws § 168.672. This is generally true for absent voter counting boards (AVCBs) associated with the precincts as well, and the inspectors appointed to AVCBs have the same authority as election inspectors at in-person voting precincts. Mich. Comp. Laws § 168.765a(1), (4).[5] The election commissioners "shall designate 1 appointed election inspector as chairperson," and "shall appoint at least 1 election inspector from each major political party and shall appoint an equal number, as nearly as possible, of election inspectors in each election precinct from each major political party." Mich. Comp. Laws § 168.674(2). With respect to AVCBs, section 765a(10) provides:

> Subject to this subsection, the clerk of a city or township may allow the election inspectors appointed to an absent voter counting board in that city or township to work in shifts. A second or subsequent shift of election inspectors appointed for an absent voter counting board may begin that shift at any time on election day as provided by the city or township clerk. However, an election inspector shall not leave the absent voter counting place after the tallying has begun until the polls close. If the election inspectors appointed to an absent voter counting board are authorized to work in shifts, at no time shall there be a gap between shifts and the election inspectors must never leave the absent voter ballots unattended. **At all times, at least 1 election inspector from each major political party must be present at the absent voter counting place** and the policies and procedures adopted by the secretary of state regarding the counting of absent voter ballots must be followed.

---

[5] Not every jurisdiction chooses to establish AVCBs for the processing and counting of absent voter ballots. Mich. Comp. Laws 168.765a(1) ("if a city or township decides to use absent voter counting boards").

Mich. Comp. Laws § 168.765a(10) (emphasis added).  Under section 765a(4),

more than one AVCB may be located in a building or place.  Mich. Comp. Laws §

168.765a(4).  Read in context, it is reasonable to conclude that subsection 765a(10)

is intended to ensure proper staffing over the course of election day at an AVCB.

It is the State Defendants' understanding that the City of Detroit established

134 AVCBs for the November election and all 134 counting boards were located at

the TCF Center—in one place.  Section 765a, as the State Defendants interpret it,

did not require the City of Detroit to have one Republican election inspector

present at all times at TCF for each of the 134 AVCBs.  In other words, the statutes

did not require Detroit to have 134 Republican (and 134 Democratic) election

inspectors present at TCF at all times that ballots were being processed and

counted.

But regardless, Plaintiffs' claims are misdirected.  The named State

Defendants did not engage in any activity at TCF and do not have any duties with

respect to a jurisdiction's, like the City of Detroit, decision to establish an AVCB,

where and how an AVCB will be held, or in the appointment of election inspectors

to serve at AVCBs.  The election inspectors for Detroit's AVCBs at TCF were

appointed by the City of Detroit's Board of Election Commissioners.  Mich. Comp.

Laws § 168.765a(2).  Thus, who was appointed as an election inspector and how

many inspectors were appointed, Republican and Democratic, was determined by

that Board—not by the Secretary, the Governor, or the Board of State Canvassers. And while the Secretary of State exercises supervisory control over local election officials, including clerks, election commissioners, and election inspectors, *see* Mich. Comp. Laws § 168.21, the Secretary does not directly supervise an election commission's appointment of inspectors, or directly supervise how many election inspectors are present at a polling place or an AVCB at any given time.

And in any event, the Legislature has not imposed any specific penalty upon election officials for failing to comply with section 765a. At best, the election commissioners or others could face a possible criminal prosecution. Section 931(1)(h) makes it a misdemeanor for a person to "willfully fail to perform a duty imposed upon that person by [the Michigan Election law], or disobey a lawful instruction or order of the secretary of state as chief state election officer or of a board of county election commissioners, board of city election commissioners, or board of inspectors of election." Mich. Comp. Laws § 168.931(1)(h). There is no statutory support for Plaintiffs' requested relief, which is to enjoin certification, order a recount, or void the election. (ECF No. 6, Am. Compl., PageID.953, ¶ 228.)

### b.      Mich. Comp. Laws § 168.733.

Plaintiffs argue that "Defendants habitually and systematically failed to provide space for election inspectors from the Republican party, including

Plaintiff, to observe election procedure, failed to allow the inspection of poll

books, failed to share the names of the electors being entered in the poll books,

failed to allow the examination of each ballot as it was being counted, and failed to

keep records of obvious and observed fraud." (ECF. No. 6, Am. Complt.,

PageID.951, ¶ 218.) Here, Plaintiffs again conflate inspectors and challengers.

Challengers are appointed under Mich. Comp. Laws § 168.730. Under

section 733(2), "[t]he **board of election inspectors** shall provide space for each

challenger, if any, at each counting board that enables the challengers to observe

the counting of the ballots. A challenger at the counting board may do 1 or more of

the activities allowed in subsection (1), as applicable." Mich. Comp. Laws §

168.733(2) (emphasis added). Subsection 733(1) provides, in pertinent part, for

the following duties and authority of challengers:

> A challenger may do 1 or more of the following:
>
>  (a) Under the scrutiny of an election inspector, inspect without
> handling the poll books as ballots are issued to electors and the
> electors' names being entered in the poll book.
>
>  (b) Observe the manner in which the duties of the election inspectors
> are being performed.
>
>  (c) Challenge the voting rights of a person who the challenger has
> good reason to believe is not a registered elector.
>
>  (d) Challenge an election procedure that is not being properly
> performed.
>
>  (e) Bring to an election inspector's attention any of the following:

   (i) Improper handling of a ballot by an elector or election inspector.

   (ii) A violation of a regulation made by the board of election inspectors pursuant to section 742.

   (iii) Campaigning being performed by an election inspector or other person in violation of section 744.

   (iv) A violation of election law or other prescribed election procedure.

   (f) Remain during the canvass of votes and until the statement of returns is duly signed and made.

   (g) Examine without handling each ballot as it is being counted.

   (h) Keep records of votes cast and other election procedures as the challenger desires.

   (i) Observe the recording of absent voter ballots on voting machines.

Mich. Comp. Laws § 168.733(1). Section 733(3) provides that "disorderly conduct is sufficient cause for the expulsion of a challenger from the polling place or the counting board." Mich. Comp. Laws § 168.733(3). And that "election inspectors and other election officials on duty shall protect a challenger in the discharge of his or her duties." *Id.* Section 733(4) similarly provides that a "person shall not threaten or intimidate a challenger while performing an activity allowed under subsection [733](1)." Mich. Comp. Laws § 168.733(4).[6]

---

[6] The Secretary of State has published guidance on the rights of challengers and poll watchers. *See*, The Appointment, Rights and Duties of Election Challengers and Poll Watchers, available at https://www.michigan.gov/documents/SOS_ED_2_CHALLENGERS_77017_7.pdf.

The penalty or punishment for interfering with the rights of a challenger is

set forth in section 734:

> Any officer or election board who shall prevent the presence of any
> such challenger as above provided, or shall refuse or fail to provide
> such challenger with conveniences for the performance of the duties
> expected of him, shall, upon conviction, be punished by a fine not
> exceeding $1,000.00, or by imprisonment in the state prison not
> exceeding 2 years, or by both such fine and imprisonment in the
> discretion of the court.

Mich. Comp. Laws § 168.734.

Under these statutes, Plaintiffs claims against the State Defendants are

misdirected and without merit.  The State Defendants did not fail to do anything or

interfere with any Republican challenger's rights at the TCF Center.  The Governor

and the Board of State Canvassers have no role in election-day activities conducted

at the city and township level.  Indeed, Plaintiffs make no allegations that that they

do.  And while the Secretary of State exercises supervisory control over local

election officials, including city and township clerks and election inspectors, *see*

Mich. Comp. Laws § 168.21, election inspectors have primary supervisory

authority over polling places and AVCBs on Election Day.  *See* Mich. Comp.

Laws § 168.678 ("Each board of election inspectors shall possess full authority to

maintain peace, regularity and order at its polling place, and to enforce obedience

to their lawful commands during any . . . election[.]")  It is the election inspectors

at the AVCBs that have the duty to provide space for challengers and to ensure that

their rights are not being infringed upon—not the Defendants.  If Republican

challengers were experiencing difficulties at TCF it was the challengers' obligation

to bring it to the attention of the appointed election inspectors present at TCF, who

could then have sought further guidance from City of Detroit election officials

present at TCF to address or rectify the situation.

In addition, sections 733 and 734 do not provide Plaintiffs with a cause of

action or right enforceable through civil proceedings.  The Michigan Legislature

determined in section 734 that violations of the rights of challengers as set forth in

section 733 should be enforced through criminal proceedings.  If Republican

challengers believe that their rights were violated their remedy is to make a

complaint to law enforcement for investigation and possible prosecution.  *See*

Mich. Comp. Laws §§ 168.734, 168.931(1)(h), 168.939, 168.940, 168.941.

### c.   Mich. Comp. Laws §§ 168.765 and 168.764a.

Plaintiffs allege that the State Defendants violated sections 765 and 764a.

(ECF No. 6, Am. Complt., PageID.952, ¶¶ 220-224.)  But this allegation too, is

without merit since the statutes impose no duties or obligations on the State

Defendants.

Section 765(5) provides that:

On or before 8 a.m. on election day, **the clerk** shall post in the clerk's
office or otherwise make public the number of absent voter ballots the
clerk distributed to absent voters and the number of absent voter ballot
return envelopes containing the marked ballots of absent voters

received by the clerk before election day and to be delivered to the
board of election inspectors or the absent voter counting boards under
this act.

Mich. Comp. Laws § 168.765(5) (emphasis added).  That section goes on to

provide that:

On or before 9 p.m. on election day, **the clerk** shall post in the clerk's
office or otherwise make public the number of absent voter ballot
return envelopes containing the marked ballots of absent voters
received by the clerk on election day and delivered to the board of
election inspectors . . . along with the total number of absent voter
ballot return envelopes containing the marked ballots of absent voters
received by the clerk both before and on election day and delivered to
the board of election inspectors or the absent voter counting boards
under this act. . . .

*Id*. (emphasis added).  Section 764a instructs voters to return their completed AV

ballots to the clerk's office by 8 p.m. on election day.  Mich. Comp. Laws §

168.764a.

Section 765(5) does not impose any duty or obligation upon Secretary

Benson, Governor Whitmer, or the Board.  Rather, it imposes a duty on the local

clerks to post the required information.  With respect to Plaintiffs' claims it was the

obligation of the City of Detroit Clerk to post the required information by the

required time.  The State Defendants do not have any personal knowledge of

whether the City of Detroit met these reporting or disclosure requirements.  There

is no obligation under these statutes for the 1,500 or so local clerks to

contemporaneously report compliance with the requirements to the Secretary of

State (or any other Defendant) on election day.  Plaintiffs simply have no claim against the named Defendants for the alleged violation of these statutes.

And regardless, the Legislature has not imposed any specific penalty upon clerks for failing to comply with section 765(5).  At best, a clerk could face a possible criminal prosecution.  Again, section 931(1)(h) provides that "[a] person shall not willfully fail to perform a duty imposed upon that person by this act. . . ." Mich. Comp. Laws § 168.931(1)(h).  But, as already stated above, there is no support in Michigan law for the sweeping relief requested by Plaintiff for the purported violation of these statutes.

### d.      Mich. Comp. Laws § 168.730.

Last, Plaintiffs allege that Secretary Benson and "election officials in Wayne County" violated the rights of Republican challengers under sections 730 through 734 to participate and meaningfully observe the processing and counting of AV ballots.  (ECF No. 6, Am. Complt., PageID.952-953, ¶¶ 225-227.)  Of course, Wayne County is not a defendant here, and as explained above, Secretary Benson does not directly supervise the activities of election inspectors and challengers at polling places and AVCBs on election day, or the days before or after election day. Polling places and AVCBs are supervised by the appointed election inspectors and then by the city or township clerks and their deputies.  Further, the remedy for interference with the rights of challengers is a subsequent criminal prosecution.

61

Because Plaintiffs' statutory claims as pleaded against the named Defendants are completely without merit, Plaintiffs have no likelihood of succeeding on the merits of these claims.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants Governor Gretchen Whitmer, Secretary of State Jocelyn Benson, and the Michigan Board of State Canvassers respectfully request that this Honorable Court enter an Order granting their motion and dismissing the Amended Complaint in its entirety and with prejudice, together with any other relief that the Court determines to be appropriate under the circumstances, including the award of sanctions and/or costs and fees incurred in defending against this baseless lawsuit.

Respectfully submitted,

DANA NESSEL
Attorney General

*s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email: grille@michigan.gov
P64713

Dated: December 22, 2020

62

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2020, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Erik A. Grill*
Erik A. Grill (P64713)
Assistant Attorney General
Attorney for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659