## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY KING, MARIAN ELLEN SHERIDAN, JOHN EARL HAGGARD, CHARLES JAMES RITCHARD, JAMES DAVID HOOPER and DAREN WADE RUBINGH,<br><br>        Plaintiffs,<br><br>  v.<br><br>GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan, JOCELYN BENSON, in her official capacity as Michigan Secretary of State and the Michigan BOARD OF STATE CANVASSERS,<br><br>        Defendants. | No. 2:20-cv-13134<br><br>Hon. Linda V. Parker |

## THE CITY OF DETROIT'S MOTION TO DISMISS

## AND

## FOR AN AWARD OF SANCTIONS

The City of Detroit (the "City") respectfully submits this Motion to Dismiss Plaintiffs' Complaint with Prejudice and with Sanctions.

This Motion is supported by the accompanying Brief.

Pursuant to Local Rule 7.1(a), on December 22, 2020, Counsel for the City contacted Counsel for the Plaintiffs and explained the nature of this Motion and its

legal bases and requested concurrence in the relief sought but the Plaintiffs did not concur.

WHEREFORE, for the foregoing reasons and the reasons stated in the accompanying brief, the City of Detroit respectfully requests that this Court enter an Order dismissing Plaintiffs' Complaint with prejudice and requiring Plaintiffs and their counsel to pay all costs and fees incurred by all Defendants and Intervenor-Defendants.

December 22, 2020                    Respectfully submitted,

**FINK BRESSACK**

By:   /s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
*Attorneys for City of Detroit*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
dbressack@finkbressack.com
nfink@finkbressack.com

**CITY OF DETROIT
LAW DEPARTMENT**
Lawrence T. Garcia (P54890)
James D. Noseda (P52563)
*Attorneys for City of Detroit*
2 Woodward Ave., 5th Floor
Detroit, MI 48226
Tel: (313) 237-5037
garcial@detroitmi.goc
nosej@detroitmi.gov

ii

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY KING, MARIAN ELLEN SHERIDAN, JOHN EARL HAGGARD, CHARLES JAMES RITCHARD, JAMES DAVID HOOPER and DAREN WADE RUBINGH,<br><br>         Plaintiffs,<br><br>  v.<br><br><br>GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan, JOCELYN BENSON, in her official capacity as Michigan Secretary of State and the Michigan BOARD OF STATE CANVASSERS,<br><br>       Defendants. | No. 2:20-cv-13134<br><br>Hon. Linda V. Parker |

## BRIEF IN SUPPORT OF
## THE CITY OF DETROIT'S MOTION TO DISMISS

## AND

## FOR AN AWARD OF SANCTIONS

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES.......................... vii

INTRODUCTION ............................................................................1

ARGUMENT ..................................................................................6

I.   Applicable Legal Standards............................................................6

I.   The Complaint Should be Dismissed Because the Case is Moot....................7

II.  The Complaint Should be Dismissed Pursuant to the Doctrine of Laches
     10

III. The Complaint Should be Dismissed Under Abstention Principles ..............11

IV. The Complaint Must be Dismissed Because Plaintiffs do not have
     Standing ...............................................................................13

     A.   Plaintiffs Do Not Have Standing to Pursue Claims Under the Electors
          and Election Clauses ..........................................................14

     B.   Plaintiffs Do Not Have Standing to Pursue Their Equal Protection, Due
          Process or Michigan Electoral Law Theories .........................................16

     V.  The Complaint Should be Dismissed on its Lack of Merit............................18

     VI. Plaintiffs and their Counsel Should be Sanctioned ........................................23

CONCLUSION ...............................................................................25

## INDEX OF AUTHORITIES

**Cases**

*Am. Civil Rights Union v. Martinez-Rivera*,
 166 F. Supp. 3d 779 (W.D. Tex. 2015) ...................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................6

*Blachy v. Butcher*, 221 F.3d 896 (6th Cir.2000)..........................................13

*Bodine v. Elkhart Cnty. Election Bd.*, 788 F.2d 1270 (7th Cir. 1986).....................19

*Bognet v. Secretary Commonwealth of Pennsylvania*,
 980 F.3d 336 (3rd Cir., Nov. 13, 2020) ...................................... 15, 16, 17

*Bowyer v. Ducey*, CV-20-02321, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020) .......16

*Breedlove v. Suttles*, 302 U.S. 277 (1937),
 overruled by Harper v. Virginia State Bd. of Elections, 383 U.S. 663 (1966).......22

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020).....................................15

*Chirco v. Crosswinds Communities, Inc.,* 474 F.3d 227 (6th Cir. 2007) ...............10

*Civil Rights Cases*, 109 U.S. 3 (1883) ....................................................22

*Colorado River Water Conservation District v. United States*,

 424 U.S. 800 (1976)............................................................................4, 11

*Costantino v Detroit*, No. 162245, 2020 WL 6882586 (Mich. Nov. 23, 2020) ........5

*Courtney v. Smith*, 297 F.3d 455 (6th Cir. 2002).....................................13

*Donald J. Trump for President, Inc v. Secy' of State*,
Mich. Court of Claims Case No. 20-000225-MZ,
 Opinion and Order (Nov. 4, 2020)...........................................................4

*Donald J. Trump for President, Inc. v. Boockvar*,
No. 4:20-CV-02078, 2020 WL 6821992 (M.D. Pa. Nov. 21, 2020), *aff'd sub nom.*
*Donald J. Trump for President, Inc. v. Pennsylvania*, No. 20-3371, 2020 WL
7012522 (3d Cir. Nov. 27, 2020)...................................................................... 18, 22

*Donald J. Trump for President, Inc. v. Secy of State*,
No. 162320, 2020 WL 7315923 (Mich. Dec. 11, 2020)....................................5, 12

*Dred Scott v. Sandford*, 60 U.S. 393 (1857) ...........................................................22

*Feehan v. Wisconsin Elections Comm'n*, 20-CV-177,
2020 WL 7250219 (E.D. Wis. Dec. 9, 2020) .........................................................16

*Feehan v. Wisconsin Elections Comm'n*, No. 20-CV-1771, 2020 WL 7250219 (E.D.
Wis. Dec. 9, 2020)..................................................................................................17

*Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008)..................................................6

*Georgia Republican Party v. Secy of State of Georgia*,
No. 20-14741, 2020 WL 7488181 (11th Cir. Dec. 21, 2020)................................17

*Gleason v. Kincaid*, 323 Mich. App. 308, 314; 917 N.W.2d 685 (2018)................8

*Hotze v. Hollins*, 4:20-CV-03709, 2020 WL 6437668 (S.D. Tex. Nov. 2, 2020)...15

*Johnson v. Secy of State*,
No. 162286, 2020 WL 7251084 (Mich. Dec. 9, 2020)......................................5, 13

*King v. Whitmer*,
No. CV 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020) ....................3, 7

*Korematsu v. United States*,
323 U.S. 214 (1944); abrogated by Trump v. Hawaii, 138 S. Ct. 2392 (2018) .....22

*Lance v. Coffman*, 549 U.S. 437 (2007) ................................................................15

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ....................................................14

*Martel v. Condos*, No. 5:20-cv-131,
—— F.Supp.3d ——, 2020 WL 5755289 (D. Vt. Sept. 16, 2020)..........................17

*Minn. Voters All. v. Ritchie*, 720 F.3d 1029 (8th Cir. 2013)....................................19

*Paher v. Cegavske*, 457 F. Supp. 3d 919 (D. Nev. 2020)........................................17

*Plessy v. Ferguson*, 163 U.S. 537 (1896), overruled by Brown v. Bd. of Ed. of
    Topeka, Shawnee Cty., Kan., 347 U.S. 483 (1954) ............................................22

*Reynolds v. Sims*, 377 U.S. 533 (1964)........................................................... 18, 19

*Sanderson v. HCA-Healthcare Co.*, 447 F.3d 873 (6th Cir. 2006) .........................6

*Stoddard v. City Elect Comm of the City of Detroit*, Wayne County Circuit Court
    Case No. 20-014604-CZ, Opinion and Order (Nov. 6, 2020)................................5

*Texas v Pennsylvania*, No. 155 ORIG., 2020 WL 7296814 (U.S., Dec. 11, 2020) ..5

*United States v. Hays*, 515 U.S. 737 (1995) ...........................................................18

*Valley Forge Christian Coll. v. Americans United for Separation of Church and
    State, Inc.*, 454 U.S. 464 (1982) .................................................................. 14, 15

*Wood v. Raffensperger*,
    No. 1:20-CV-04651, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020)............... 16, 17

**Statutes**

28 U.S.C. § 1927 .....................................................................................................22
3 U.S.C. § 5 ...............................................................................................................9
3 U.S.C. § 7 ...............................................................................................................9
M.C.L. § 168.47 .........................................................................................................9
M.C.L. § 168.730 .....................................................................................................19
M.C.L. § 168.764a .............................................................................................. 19, 20
M.C.L. § 168.765(5) ........................................................................................... 19, 20
M.C.L. § 168.765a ...................................................................................................19
M.C.L. § 168.843 .......................................................................................................7
M.CL. § 168.832 .......................................................................................................7

M.CL. § 168.879 ...................................................................................................7

**Other Authorities**

U.S. Const. art. III, § 2 ......................................................................................12

**Rules**

Fed R. Civ. P. 12(b)(6).........................................................................................5

Fed. R. Civ. P. 9(b) ..............................................................................................6

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

I.   Should the Complaint be dismissed because Plaintiffs do not have standing?

  The City answers: "Yes."


II.   Should the Complaint be dismissed under abstention principles?

  The City answers: "Yes."


III.   Should the Complaint be dismissed based on laches?

  The City answers: "Yes."


IV.   Should Plaintiffs' counsel be ordered to pay sanctions pursuant to 28 U.S.C. § 1927?

  The City answers "Yes"

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)

*Costantino v. Detroit et al*, Wayne County Circuit Case No. 20-014780-AW

*Courtney v. Smith*, 297 F.3d 455 (6th Cir. 2002)

*Donald J. Trump for President, Inc. v. Pennsylvania*, No. 20-3371, 2020 WL 7012522 (3d Cir. Nov. 27, 2020)

*King v. Whitmer*, No. CV 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020)

*Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982)

U.S. Const. art. III, § 2

28 U.S.C. § 1927

Fed. R. Civ. P. 9(b)

## **INTRODUCTION**

Plaintiffs and their counsel surely know that this case is built on lie upon lie, each easily disproven by basic objective facts. They know that their so-called experts rely on conspiracy theories to spew obviously flawed conclusions, based on junk science. But they choose to deliberately spread their falsehoods by filing them with this Court and not withdrawing them when given the opportunity (after the various Defendants sought concurrence). While one might be tempted to laugh at the absurdity of their claims, the point of these lawsuits is not to prevail. Certainly, no court in the free world would ever seriously entertain this nonsense. No, the point of all of these lawsuits was to sow doubt, to delegitimize the Biden presidency, to create space for people to press the President to declare martial law, and, perhaps, to fundraise from the millions who believe there must be some truth to these spurious allegations because they are included in court filings and "affidavits."

Some numbers put this in perspective:

- Certified popular vote totals for Biden/Harris: **81,281,888**[1]
- Certified popular vote totals for Trump/Pence: **74,223,251**[2]
- Michigan certified vote totals for Biden/Harris: **2,804,040**[3]

---

[1] *2020 Presidential Election Results & Electoral Map,* USA Today, https://www.usatoday.com/elections/results/2020-11-03/presidential/?itm_source=oembed&itm_medium=news&itm_campaign=electionresults-home&itm_content=presidential (last visited December 22, 2020).

[2] *Id.*

[3] *Id.*

- Michigan certified vote totals for Trump/Pence: **2,649,852**[4]
- Electoral College votes committed to Biden/Harris: **306**[5]
- Electoral College votes committed to Trump/Pence: **232**[6]
- Post-elections lawsuits challenging election lost or dismissed: **59**[7]
- Vote tally net change in Georgia's three recounts: **891 for Trump**[8]
- Vote tally net change in Wisconsin recount: **132 for Biden**[9]
- Vote tally net change in Antrim County hand count audit: **11 for Trump**[10]
- Number of recounts requested by Trump in Michigan: **0**
- Percentage of Americans who reportedly believe the election lies: **36%**[11]

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] Running tally which changes almost daily, and includes cases where the relief was denied, but case not yet formally dismissed.

[8] David Wickert, Patricia Murphy and Mark Niesse, *Georgia recount confirms Biden win, again, but Trump still battling,* Atlanta Journal Constitution (December 7, 2020), https://www.ajc.com/politics/election/georgia-recount-confirms-biden-win-again-but-trump-still-battling/OZGAOQCMKVFG7G43L5PSF3BNHM/.

[9] Joe Biden gains votes in Wisconsin county after Trump-ordered recount, *The Guardian, https*://www.theguardian.com/us-news/2020/nov/28/joe-biden-gains-votes-in-wisconsin-county-after-trump-ordered-recount (last visited December 22, 2020).

[10] Beth LeBlanc, *Antrim County audit shows 12-vote gain for* Trump, The DetroitNews,https://www.detroitnews.com/story/news/local/michigan/2020/12/17/antrim-county-audit-shows-12-vote-gain-trump/3938988001/ (last visited December 22, 2020).

[11] https://www.rasmussenreports.com/public_content/politics/elections/election_2020/most_say_mail_in_voting_worked_but_47_say_fraud_likely. According to the Rasmussen poll, 47% of likely voters say it is likely that Democrats stole votes or destroyed pro-Trump ballots in several states to ensure that Joe Biden would win. 49% consider that unlikely. This includes 36% who say voter fraud was very likely.

- Number of stabbings at pro-Trump white supremacist rally in D.C.: **4**[12]
- Violent incidents by paid election fraud "investigators": **3**[13] [14]
- Dollars raised by Sidney Powell based upon election lawsuits: **undisclosed**
- Dollars raised off election lawsuits by Trump: **at least $200 million.**[15]

The City has served Plaintiffs with a proposed Rule 11 Motion and intends to file that Motion at an appropriate time. But, for now, Plaintiffs' counsel should be sanctioned under 28 U.S.C. § 1927 and ordered to pay the City of Detroit the costs, expenses, and attorneys' fees incurred because of their conduct.

The reasons for dismissal are straightforward and were explained by this Court in its December 7, 2020, Opinion and Order Denying Plaintiffs' "Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief." *King v. Whitmer*, No. CV 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020). There, this Court made numerous rulings, which not only applied to the denial of injunctive relief, but which also apply to dismissal.

---

[12] https://www.washingtonpost.com/local/public-safety/enrique-tarrio-proud-boys-black-lives-matter-sign/2020/12/18/c056c05e-415a-11eb-8db8-395dedaaa036_story.html.

[13] Eric Miller, *Fake ballots, Q Anon, and a Virginia senator: "Alarming" incident prompts gun charges for men outside Philly vote-counting center,* MSN.com, https://www.msn.com/en-us/news/politics/fake-ballots-q-anon-and-a-virgi nia-senator-alarming-incident-prompts-gun-charges-for-men-outside-a-philly-vote-counting-center/ar-BB1aMpKA (last visited December 22, 2020).

[14] US election:  Texas ex-officer charged for botched conspiracy, *BBC*.com, (December 16, 2020), https://www.bbc.com/news/world-us-canada-55342288.

[15] https://www.theguardian.com/us-news/2020/dec/19/trump-raised-200m-from-false-election-claims-what-happens-to-the-money-now?CMP=oth_b-aplnews_d-1.

First, the Court ruled that Plaintiffs' claims against Defendants (Governor Whitmer, Secretary of State Benson and the Board of State Canvassers) are barred by Eleventh Amendment immunity. *Id.* at *3-5. Second, the case is moot because, even by December 7, the time had "passed to provide most of the relief Plaintiffs request in their Amended Complaint" with the remaining relief "beyond the power of any court." *Id.* at *5-6. Third, the case was barred by laches as of November 7 because Plaintiffs "waited too long to knock on the Court's door." *Id.* at *6-7. Fourth, abstention is appropriate under the *Colorado River* doctrine[16] because the same allegations and claims are being (and have been) litigated in Michigan state courts. *Id.* at *7-9. Fifth, the Plaintiffs did not have standing to pursue their purported claims under the Equal Protection or Elections/Electors clauses. *Id.* at *9-11.

This Court's Opinion and Order denying injunctive relief was entered on December 7. All subsequent court decisions relating to the election in Michigan have only lent further support for dismissal. As of December 7, the Michigan Court of Appeals had rejected the request for injunctive relief in *Donald J. Trump for President, Inc v. Secy' of State*, Mich. Court of Claims Case No. 20-000225-MZ, Opinion and Order (Nov. 4, 2020) (Ex. 1). The Michigan Supreme Court had already denied the Application for Leave to Appeal from the denial of injunctive relief in the

---

[16] *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

*Costantino* matter. *Costantino v Detroit*, No. 162245, 2020 WL 6882586 (Mich. Nov. 23, 2020). The Michigan Third Judicial District had denied injunctive relief in *Stoddard v. City Elect Comm of the City of Detroit*, Wayne County Circuit Court Case No. 20-014604-CZ, Opinion and Order (Nov. 6, 2020) (Ex. 2). Since December 7, the Michigan Supreme Court has rejected the Application for Appeal from the denial of injunctive relief in *Donald J. Trump for President, Inc. v. Secy of State*, No. 162320, 2020 WL 7315923 (Mich. Dec. 11, 2020). The Michigan Supreme Court also rejected the petition for extraordinary writs in *Johnson v. Secy of State*, No. 162286, 2020 WL 7251084 (Mich. Dec. 9, 2020). And, the U.S. Supreme Court rejected the lawsuit filed by the State of Texas. *Texas v Pennsylvania*, No. 155 ORIG., 2020 WL 7296814, *1 (U.S., Dec. 11, 2020).[17]

Every attempt to overturn the election has been turned away by the judiciary. That is something we should all be proud of as Americans. There is no reason for a different result here. Nevertheless, Plaintiffs refuse to dismiss their case, continuing to use this Court to promote and profit from their false narrative. The case should be dismissed and Plaintiffs and their counsel should be severely sanctioned.

---

[17] Since this Motion is being filed under Fed. R. Civ. P. 12(b)(6), the City is not including a rebuttal of the numerous falsehoods and outlandish claims in the Complaint. The City, however, relies on the rebuttals contained in its Response to Plaintiffs' Emergency Motion for Declaratory, Emergency and Permanent Injunctive Relief. ECF No. 39. The City intends to file a Motion for Rule 11 sanctions (after the safe harbor expires) laying out many of the intentional misrepresentations made by Plaintiffs in their filings in this case.

## ARGUMENT

### I.   Applicable Legal Standards

Under Fed R. Civ. P. 12(b)(6), a court should dismiss a claim where a plaintiff fails to plead facts sufficient to state a claim upon which relief can be granted. A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* at 678. Allegations that are mere conclusions "are not entitled to the assumption of truth." *Id.* Claims that are "conceivable" or "possible," but not plausible, also fall short of the standard. *Twombly* at 570.

In alleging fraud, a party must state with particularity the "circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must "alert the defendants to the precise misconduct with which they are charged" to protect them "against spurious charges of immoral and fraudulent behavior." *Sanderson v. HCA-Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotations omitted). A complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)  (internal quotations omitted).

## I.     The Complaint Should be Dismissed Because the Case is Moot[18]

As this Court held in its December 7 Opinion and Order, as of November 25,

the date this case was filed, it was already moot. The operative Complaint asked the

Court to:

> (a) order Defendants to decertify the results of the election; (b) enjoin
> Secretary Benson and Governor Whitmer from transmitting the
> certified election results to the Electoral College; (c) order Defendants
> "to transmit certified election results that state that President Donald
> Trump is the winner of the election"; (d) impound all voting machines
> and software in Michigan for expert inspection; (e) order that no votes
> received or tabulated by machines not certified as required by federal
> and state law be counted; and, (f) enter a declaratory judgment that
> mail-in and absentee ballot fraud must be remedied with a manual
> recount or statistically valid sampling.

*King*, 2020 WL, at *5 (quoting ECF No. 6 at Pg ID 955-56, ¶ 233). However, the

request was moot because by the time the Complaint was filed, "all 83 counties in

Michigan had finished canvassing their results for all elections and reported their

results … The State Board had certified the results of the 2020 General Election and

Governor Whitmer had submitted the slate of Presidential Electors to the

Archivists." *Id.*, at *6 (citing record and M.C.L. § 168.843). The time to request a

special election had expired, as "had the time for requesting a recount for the office

of President." *Id.* (citing record and M.CL. §§ 168.831, 168.832 and § 168.879).

---

[18] Although the City does not repeat them here, the City full concurs with the
State's arguments regarding Eleventh Amendment immunity.

Michigan state courts have reached similar conclusions. As early as November 6, 2020, the Michigan Court of Claims determined that these challenges to the election were moot. In *Donald J. Trump Inc. v Benson*, *supra*, the plaintiffs sought an order in the Michigan Court of Claims that the "counting and processing of absentee votes cease immediately." The court stated that:

> the complaint and emergency motion were not filed until approximately 4:00 p.m. on November 4, 2020—despite being announced to various media outlets much earlier in the day. By the time this action was filed, the votes had largely been counted, and the counting is now complete. Accordingly, and even assuming the requested relief were available against the Secretary of State—and overlooking the problems with the factual and evidentiary record noted above—the matter is now moot, as it is impossible to issue the requested relief. See *Gleason v Kincaid*, 323 Mich App 308, 314; 917 NW2d 685 (2018).

Ex. 1. Donald J. Trump for President, Inc. and the other plaintiff delayed 24 days in perfecting their appeal, so the Michigan Court of Appeals looked at the mootness question anew, holding:

> Once the election results have been certified, "[a] candidate for office who believes he or she is aggrieved on account of fraud or mistake in the canvass or returns of the votes by the election inspectors may petition for a recount of the votes cast for that office in any precinct or precincts as provided by in this chapter." MCL 168.862 ….
>
> Here, plaintiff filed its purportedly emergent application on November 6, 2020, but did not perfect the filing until 11:21 p.m. on November 30, 2020, when it filed its brief in support. The Wayne County Board of Canvassers certified the results of the November 3rd election on November 17, 2020, almost a full two weeks before plaintiff perfected the instant application. The Michigan Board of State Canvassers certified the presidential election results on November 23, 2020, a full week before plaintiff perfected its application. Plaintiff does not

address whether the certification of the election result by the Board of State Canvassers had any impact on the viability of its suit below or on the viability of the instant application.

Perhaps the reason for plaintiff failing to discuss the impact of the certification is because such action by the Michigan State Board of Canvassers clearly rendered plaintiff's claims for relief moot. The Michigan State Board of Canvassers' certification of the presidential election results and the legislative directive found in MCL 168.862, requires plaintiff to pursue its fraud allegations by way of a recount of the ballots cast in Wayne County. Because plaintiff failed to follow the clear law in Michigan relative to such matters, their action is moot. MCL 168.862.

Ex. 3.[19] The Michigan Supreme Court rejected leave to appeal from the Court of

Claims and Court of Appeals decisions.

---

[19] Instead of immediately perfecting the appeal (by submitted the required application for leave to appeal), Donald J. Trump for President, Inc. went forum shopping in the Western District of Michigan, filing a new Complaint there as part of a group of election cases, where the plaintiffs submitted a notice of related action for a case assigned to Judge Robert Jonker, even though the supposedly related action clearly had no relation whatsoever to the post-election lawsuits. *Donald J. Trump for President Inc. v. Secy' of State*, W.D. Mich. Case No. 20-cv-01083 (filed Nov 11, 2020). The gambit to choose their own judge failed and the cases were assigned to District Judge Janet T. Neff. Within days of the judicial reassignment, all of the plaintiffs in the Western District voluntarily dismissed their cases under Fed. R. Civ. P. 41(a)(1)(A). The filing by Donald J. Trump for President, Inc., effectively conceded the case was being dismissed because it was mooted by the fact that the Wayne County Board of Canvassers had met. Even though the plaintiffs speciously asserted that the Board had refused to certify the election results (belied by the obvious fact that the certification occurred in open public session) they cannot deny that they stated they were dismissing because their request to enjoin certification by Secretary Benson, the Board of State Canvassers and the Wayne County Board of Canvassers was moot.

Additional events which have transpired subsequent to this Court's December 7 Opinion have further mooted the case. The federal "safe harbor" provision regarding certification of electors by states passed on December 8. *See* 3 U.S.C. § 5. On December 14, Michigan's presidential electors convened in Lansing. M.C.L. § 168.47; 3 U.S.C. § 7. There, Michigan's electors voted and confirmed that all Michigan electoral college votes were for Joe Biden.[20] Joe Biden defeated Donald Trump in the State of Michigan by 154,188 votes. On that same day, the Electoral College in all 50 states met and cast their votes. Joe Biden will be our next President and Kamala Harris will be our next Vice-President.

## II.    The Complaint Should be Dismissed Pursuant to the Doctrine of Laches

Laches arises from a "(1) lack of diligence by the party against whom the defense is asserted, here the plaintiffs, and (2) prejudice to the party asserting the defense." *Chirco v. Crosswinds Communities, Inc.,* 474 F.3d 227, 231 (6th Cir. 2007) (citation omitted)).

All of Plaintiffs' claims arise from allegations relating to supposed events which occurred well-before the election (including years before the election) or on the 3rd and 4th of November. If Plaintiffs had legitimate claims regarding Dominion Voting Systems, they could have brought those claims years ago. If Plaintiffs had

---

[20] https://www.mlive.com/politics/2020/12/michigan-casts-electoral-college-votes-for-president-elect-joe-biden.html.

legitimate claims relating to the processing and tabulation of ballots in Detroit, they could have brought the claims at the time. Instead of bringing the claims when they were timely (albeit still frivolous), they issued press releases and fundraised. Plaintiffs chose to wait until after the election had been certified. The claims cannot proceed.

### III.  The Complaint Should be Dismissed Under Abstention Principles

The *Colorado River* doctrine counsels deference to parallel state court proceedings. *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). While there is much extraneous noise in the Complaint, it is clear from the actual legal Counts that virtually all of the "factual" assertions actually relevant to the Counts relate to the processing and tabulation of ballots in Detroit, primarily at the TCF Center. *See*, *e.g.*, Compl. ¶¶ 180-192, 206, 211, 213-228. The integrity of the process in Detroit has already been litigated in state court in active lawsuits (all of which denied any injunctive or declaratory relief based on the specious claims). The "facts" identified in the Counts—which are the only "facts" actually offered in support of the relief in the Counts—are claims that election officials: did not allow Republican challengers to observe the counting and processing of ballots; discriminated against Republican challengers; added "batches" of ballots; added voters to the Qualified Voter File; changed dates on ballots; altered votes on ballots; double counted ballots; violated ballot security; accepted "unsecured" ballots;

counted ineligible ballots; and, failed to check ballot signatures. Besides their falsity, the one thing the allegations have in common is that they are based on claims raised in Michigan state courts. In fact, each and every one of those allegations is based on the allegations and "evidence" submitted in the *Constantino* matter.[21]

All of Plaintiffs' claims (frivolous as they may be) are being (or have been) litigated in State Court. The fact that the Plaintiffs here may, incredibly enough, be making even more frivolous allegations than the litigants in *Constantino* does not change the fact that the same underlying issue—the integrity of the process employed in Detroit—is already in suit. The Wayne County Circuit Court has already decided that the claims were frivolous and not worthy of injunctive relief. The Michigan Court of Appeals and the Michigan Supreme Court reviewed the trial court's decision on an expedited basis and did not disagree. The claims remain before Judge Kenny, which is the proper court to see them through to their inevitable dismissal with prejudice. The claims were also brought and rejected in: *Donald J. Trump for President, Inc. v. Secy of State*, 2020 WL 7315923 ; *Stoddard v. City Elect*

---

[21] The other allegations in the Complaint are essentially offered to provide "support" for the central theory that there was somehow widespread fraud in Detroit that resulted in President Elect Biden receiving 154,000 more votes than Donald Trump in the State.

*Comm of the City of Detroit*, 20-014604; and, *Johnson v. Secy of State*, No. 2020 WL 7251084.[22]

## IV. The Complaint Must be Dismissed Because Plaintiffs do not have Standing

Article III of the United States Constitution restricts the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "To satisfy this 'case-or-controversy' requirement, 'a plaintiff must establish three elements: (1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue—the injury must be fairly traceable to the defendant's action; and (3) [a] likelihood that the injury would be redressed by a favorable decision of the Court.'" *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002), *quoting Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir.2000).

The first requirement—that plaintiffs establish an "injury in fact"—limits justiciability to those cases involving a well-defined injury to the plaintiff, which allows the parties to develop the necessary facts and seek responsive remedies. As the Supreme Court has repeatedly instructed, "[t]he requirement of 'actual injury

---

[22] Various pre-election lawsuits filed in Michigan made somewhat related claims against the Secretary of State: *Cooper-Keel v. Benson*, Mich. Court of Claims Case No. 20-000091-MM (filed May 20, 2020); *Black v. Benson*, Mich. Court of Claims Case No. 20-000096-MZ (filed May 26, 2020); *Davis v Benson*, Mich. Court of Claims Case No. 20-000099-MM (filed May 28, 2020); *Election Integrity Fund v. Benson*, Mich. Court of Claims Case No. 20-000169-MM; *Ryan v. Benson*, Mich. Court of Claims Case No. 20-000198-MZ (filed Oct. 5, 2020).

redressable by the court' . . . tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) . To this end, the Supreme Court "repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." *Id.* at 482–83. Moreover, the Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992).

### A. Plaintiffs Do Not Have Standing to Pursue Claims Under the Electors and Election Clauses

Count I of the Complaint purports to bring a claim under the Elections and Electors clause of the U.S. Constitution. But, the underlying "factual allegations" are the same "allegations" made throughout the Complaint: that Defendants supposedly failed to follow the Michigan Election Code, relating to election challengers and the processing and tabulation of ballots in Detroit. *See*, *e.g.*, Compl. ¶ 180. Plaintiffs *do not* allege that their ballots were not counted or that they were

14

not allowed to vote. Plaintiffs' claim is precisely the type of claim that is "predicated on the right, possessed by every citizen, to require that the Government be administered according to law" that is insufficient to confer standing. *See*, *e.g.*, *Valley Forge*, 454 U.S. at 472.

Plaintiffs reliance on *Carson v. Simon* is misplaced. Brief at 8, *citing Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020). *Carson* is an outlier that erroneously conflated candidates for electors with candidates for office based on a quirk of Minnesota law. *Id.* Meanwhile, the Supreme Court has been clear that citizens do not have Article III standing under the clauses. *See*, *e.g.*, *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (Holding plaintiffs did not have standing because the "only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past."). And, all other courts ruling on similar challenges to the November 2020 general election have held that the expansion of standing in *Carson v. Simon* was unwarranted and that plaintiffs (citizens, electors, and candidate) do not have standing under the clause. *See*, *e.g.*, *Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336 (3rd Cir., Nov. 13, 2020); *Hotze v. Hollins*, 4:20-CV-03709, 2020 WL 6437668 at *2 (S.D. Tex. Nov. 2, 2020); *Wood v. Raffensperger*, 1:20-CV-04651, 2020 WL 6817513, at *5 (N.D. Ga. Nov. 20, 2020) (L. Lin Wood

as plaintiff); *Feehan v. Wisconsin Elections Comm'n*, No. 20-CV-1771, 2020 WL 7250219, at *12 (E.D. Wis. Dec. 9, 2020) (one of the three Sidney Powell, L. Lin Wood "Kraken" cases); *Bowyer v. Ducey*, CV-20-02321, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020) (one of the three Sidney Powell, L. Lin Wood "Kraken" cases).

Additionally, these particular Plaintiffs do not have standing for the claims, because they are actually purporting to bring claims that, if they could be brought, could only be brought by the Michigan Legislature. Plaintiffs are effectively seeking to enforce "rights" of that body, not rights that are particular to themselves. *See*, *e.g.*, *Bognet*, 980 F.3d at 349-50 (concluding that the plaintiffs' Elections and Electors Clause claims "belong, if they belong to anyone, only to the Pennsylvania General Assembly") (citation omitted).

### B. Plaintiffs Do Not Have Standing to Pursue Their Equal Protection, Due Process or Michigan Electoral Law Theories

The equal protection, due process and Michigan Election Law theories (Counts II – IV) also rely on the allegations relating to the processing and tabulation of votes in Detroit. *See* Compl. ¶¶ 118-192, 206, 211, 213-228. Once again, Plaintiffs do not—and cannot—allege an actual, particularized injury in fact. They do not claim they were denied the right to vote; instead, they claim that the grant of the franchise to others, somehow infringed on their right to equal protection, due process and compliance with Michigan law. The apparent remedy for allowing the "wrong type

of people" to vote, is to take away the vote from everyone. Setting aside just how absurd this theory is, it is clear that these Plaintiffs do not have standing to pursue it.

Plaintiffs are alleging an "injury" identical to the injury supposedly incurred by every Michigan voter. Under Plaintiffs' theory, the "effect" of an erroneously counted vote will proportionally impact every Michigan voter to the same mathematical degree. Because the approximately 5.5 million Michigan voters in the Presidential election suffer the identical incremental dilution, the alleged injury constitutes a quintessential generalized injury incapable of conferring standing. Federal courts have addressed this "novel" voter dilution claim, with each court finding the claim fails to constitute an injury in fact. *See Paher v. Cegavske*, 457 F. Supp. 3d 919, 926–27 (D. Nev. 2020); *Martel v. Condos*, No. 5:20-cv-131, —— F.Supp.3d ——, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020); *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015). Numerous courts have also addressed the issue in the context of the post-election lawsuits filed in the "battleground" states, also concluding the plaintiffs lacked standing. *See*, *e.g.*, *Bognet v. Pennsylvania*, 980 F.3d at 352-60; *Wood v. Raffensperger*, 2020 WL 6817513, at *5; *Feehan v. Wisconsin*, 2020 WL 7250219, at *8-10 ; *Bowyer v. Ducey*, 2020 WL 7238261 at *5-6; *Georgia Republican Party v. Secy of State of Georgia*, No. 20-14741, 2020 WL 7488181 (11th Cir. Dec. 21, 2020); *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992, at

*1 (M.D. Pa. Nov. 21, 2020), *aff'd sub nom. Donald J. Trump for President, Inc. v. Pennsylvania*, No. 20-3371, 2020 WL 7012522 (3d Cir. Nov. 27, 2020);

This is not to say that a claim under the label of "voter dilution" can never be brought in federal court; but such claims can only survive with facts starkly different from the case at bar. First, voter dilution claims may be appropriate in cases of racial gerrymandering, where the legislature impermissibly relied on race when drawing legislative districts. *See, e.g., United States v. Hays*, 515 U.S. 737, 744–45 (1995). Second, voter dilution claims may proceed in apportionment cases, where un-updated legislative districts disfavor voters in specific districts merely due to the voter's geographic location. *See, e.g., Reynolds v. Sims*, 377 U.S. 533 (1964). Neither theory provides any support for Plaintiffs' claims. The injury in the colorable dilution claims is particularized to a specific group. In contrast to the specific class of minority voters in a racially gerrymandered district, or voters living in a growing but un-reapportioned district, the supposed dilution here is shared in proportion by *every* single Michigan voter. In alleging a generalized injury rather than an actual and particularized injury in fact, Plaintiffs lack standing.

## V. The Complaint Should be Dismissed on its Lack of Merit

The Complaint should also be dismissed because Plaintiffs' legal theories are untenable. Plaintiffs' equal protection, due process, and state law claims are predicated on their "voter dilution" theories. Equal protection voter dilution claims

exist only under a narrow set of circumstances. *See*, *e.g.*, *Reynolds*, 377 U.S. at 568 ("Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State."). In those unique cases, the plaintiffs can allege disparate treatment from similarly situated voters. *See*, *e.g.*, *id.* at 537 (The plaintiffs alleging devalued voting power when compared to similarly situated voters in other parts of the state.).

In contrast, the gravamen of Plaintiffs' claim—that Michigan voters will have the value of their votes diluted—falls far wide of the mark. Plaintiffs allege breaches of the Michigan Election Code due to a lack of access provided to poll watchers, as well as a number of often hyper-localized violations of the Michigan Election Code. However, even if Plaintiffs successfully showed an impermissible lack of meaningful access for poll challengers, such a showing is plainly insufficient to prove fraudulent votes were *actually* counted. And with regard to the allegations of localized Election Code violations, the fundamental principle at issue is that "[t]he Constitution is not an election fraud statute." *Minn. Voters All. v. Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013), *quoting Bodine v. Elkhart Cnty. Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986). No case supports the notion that the Equal Protection Clause of the U.S. Constitution can be turned into the weapon of oppression sought by Plaintiffs.

The Michigan law claims fair no better. Plaintiffs allege violations of M.C.L. §§ 168.730, 168.733, 168.764a, 168.765a and 168.765(5) (all supposedly at the TCF Center) but for each claim either don't understand the statute or rely on facts that have been rejected by Michigan courts, especially the Circuit Court, Court of Appeals and Supreme Court in *Costantino*.

M.C.L. §§ 168.730 and 168.733 are statutory provisions allowing partisan challengers to observe the vote counting process. As the *Costantino* court concluded, Republican challengers were always in the TCF Center, and, as long as they were not yelling and causing disruptions (including by chanting "stop the vote"), they were allowed to observe the process in full compliance with the law. Even if the allegations were true, they could not possibly entitle Plaintiffs to any *post-election* remedy. The "remedy" is in the statute itself, and does not include disenfranchisement of all voters.

M.C.L. § 168.765(5) relates to a deadline to post certain information relating to absentee ballots. Tellingly, as has been the case each time plaintiffs filed Complaints derived from the same allegations, the allegation is made "upon information and belief." FAC ¶ 221. No plaintiff has ever presented an iota of evidence, let alone a claim not made "upon information and belief" about this issue. And, again, the "remedy" of disregarding the Constitution and throwing out

thousands or millions of votes is not something that could possibly be available for an alleged violation of the deadline.

M.C.L. § 168.764a provides that ballots received after 8:00 p.m. on election day cannot be counted. This allegation is also based "upon information and belief." FAC ¶ 224. Obviously, an "information and belief" allegation is woefully deficient to obtain any relief, let alone the extraordinary relief Plaintiffs' seek. And, even if Plaintiffs proved that some ballots received after the deadline were counted (they cannot), the "remedy" is not wholesale disenfranchisement.

MCL § 168.765a provides for ballots to be duplicated under the supervision of *inspectors* (i.e., paid workers) from both major parties. Plaintiffs' claim is based on their conflation of the role of ballot *inspectors* and ballot *challengers*. Plaintiffs' false claim about Republicans being excluded from the TCF Center, relates to challengers, not inspectors. There was a short period of time when excess overflow challengers of all parties were not able to enter the TCF Center until a challenger of their party left, but there was never a time when *inspectors* were disallowed. And, the "remedies" sought are not available even if Plaintiffs were correct.

Plaintiffs bring false claims, ostensibly available to every Michigan voter in the event of any voting error, with the outrageous "remedy" being the rejection of hundreds of thousands, if not millions, of votes. As a district court recently held in one of the Trump election lawsuits brought in Pennsylvania, "[t]his Court has been

unable to find any case in which a plaintiff has sought such a drastic remedy in the contest of an election, in terms of the sheer volume of votes asked to be invalidated." *Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 6821992, at *1. Plaintiffs are asking for "relief" that would easily rank among the most momentous and most reviled legal decisions in U.S. history, joining the ranks of cases we know by shorthand, *Dred Scott*, the *Civil Rights Cases*, *Plessy v. Ferguson*, *Breedlove*, and *Korematsu*.[23] Even though Plaintiffs and their lawyers strongly desire to be on the wrong side of a reviled court decision, nothing they allege, or could allege, could possibly entitle them to that actual relief. They must be content with knowing that their filing of this lawsuit already puts them on the wrong side of history, even though the lawsuit cannot accomplish anything more than line the attorneys' pockets with cash.

---

[23] *Dred Scott v. Sandford*, 60 U.S. 393 (1857) (denying citizenship and basic rights for all black people, slave or free), *superseded* (1868); *Civil Rights Cases*, 109 U.S. 3 (1883) (precluding Congress from outlawing racial discrimination); *Plessy v. Ferguson*, 163 U.S. 537 (1896) (affirming constitutionality of "separate but equal" segregation), *overruled by Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan.*, 347 U.S. 483 (1954); *Breedlove v. Suttles*, 302 U.S. 277 (1937) (upholding poll taxes), *overruled by Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966); *Korematsu v. United States*, 323 U.S. 214 (1944) (affirming internment of American citizens of Japanese descent), *abrogated by Trump v. Hawaii*, 138 S. Ct. 2392 (2018).

## VI.     Plaintiffs and their Counsel Should be Sanctioned

28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under § 1927 "are warranted when an attorney objectively "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Ruben v. Warren City Sch.,* 825 F.2d 977, 984 (6th Cir. 1987). They deter dilatory litigation practices and punish tactics that exceed zealous advocacy. *See Jones v. Continental Corp.,* 789 F.2d 1225, 1230-31 (6th Cir. 1986); *see also Thurmond v. Wayne Cty. Sheriff Dep't*, 564 F. App'x 823, 834 (6th Cir. 2014) (Affirming § 1927 where plaintiff "ignored opposing counsel's reasonable requests to voluntarily withdraw the complaint, necessitating the filing of a motion to dismiss and motion for sanctions."). Thus, the sanctioned attorney is required to personally satisfy the excess costs attributable to their conduct. *See In re Ruben*, 825 F.2d at 983.

If sanctions are not deserved in this case, it is hard to imagine a case where they would be. Sidney Powell has stated that the courts have rejected her lawsuits "because the corruption goes deep and wide."[24] But, in truth, she filed lawsuits devoid of any factual or legal merit, hoping not to prevail but to damage democracy.

---

[24] https://twitter.com/AKA_RealDirty/status/1338401580299681793.

This Court correctly concluded that Plaintiffs have "nothing but speculation and conjecture" and that "this lawsuit seems to be less about achieving the relief Plaintiffs seek—as much of that relief is beyond the power of this Court—and more about the impact of their allegations on People's faith in the democratic process and their trust in our government." *King*, 2020 WL 7134198, at *13.

This lawsuit is part a dangerous attack on the integrity of the democratic process for the election of the President of the United States. Sidney Powell's co-counsel L. Lin Wood has said on Twitter that "Georgia, Michigan, Arizona, Nevada, Wisconsin, Minnesota & Pennsylvania are states in which martial law should be imposed & machines/ballots seized." Wood has said "[p]atriots are praying tonight that @realDonaldTrump will impose martial law in disputed states, seize voting machines for forensic examination, & appoint @SidneyPowell as special counsel to investigate election fraud." And, he has said "[i]t is time for Chief Justice John Roberts to resign, admit his corruption & ask for forgiveness."[25]

---

[25] Greg Rohl, another attorney for the Plaintiffs in this case, and the only one admitted to the Eastern District of Michigan, has previously been sanctioned for filing a case which was deemed "frivolous from its inception" and ordered to pay over $200,000 in costs and attorneys fees. *See DeGeorge v. Warheit*, 276 Mich. App. 587, 589, 741 N.W.2d 384 (2007). He was then held in criminal contempt and sentenced to jail—affirmed by the Court of Appeals—for attempting to transfer assets to evade payment. *Id.* The Court of Appeals noted that a bankruptcy court had concluded that Rohl "intended to hinder, delay and defraud … and create a sham transaction to prevent [a creditor] from reaching Rohl's interest in his law firm through the appointment of a receiver." *Id.* at 590.

In a case involving the election of the President of the United States, the parties and their attorneys should be held to the highest standards of factual and legal due diligence; instead, they have raised false allegations and pursued unsupportable legal theories. Apparently, this frivolous lawsuit continues because it serves other, more nefarious, purposes. While the pending complaint cannot possibly result in meaningful relief, it does serve the purpose of conveying to the world the impression that something fraudulent occurred in Detroit's vote count. This is not a legitimate lawsuit; it is a public relations and fundraising weapon being used to advance the false narrative that our democratic system is broken. Plaintiffs are trying to send the message that our democracy cannot be trusted. It is time for this Court to send a message back: lies and frivolous claims will not be tolerated. This abuse of our legal system deserves the strongest possible sanctions. For now, those sanctions should be under § 1927, later they should be under Rule 11.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, the City of Detroit respectfully requests that this Court enter an Order dismissing Plaintiffs' Complaint with prejudice and requiring Plaintiffs and their counsel to pay all costs and fees incurred by all Defendants and Intervenor-Defendants.

December 22, 2020                              Respectfully submitted,

**FINK BRESSACK**

By:     /s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
*Attorneys for City of Detroit*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
dbressack@finkbressack.com
nfin@finkbressack.com

**CITY OF DETROIT
LAW DEPARTMENT**
Lawrence T. Garcia (P54890)
James D. Noseda (P52563)
*Attorneys for City of Detroit*
2 Woodward Ave., 5th Floor
Detroit, MI 48226
Tel: (313) 237-5037
garcial@detroitmi.goc
nosej@detroitmi.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

**FINK BRESSACK**

By:    */s/ John L. Mack*
       John L. Mack (P80710)
       38500 Woodward Ave., Ste. 350
       Bloomfield Hills, MI 48304
       Tel.: (248) 971-2500
       jmack@finkbressack.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY KING, MARIAN ELLEN SHERIDAN, JOHN EARL HAGGARD, CHARLES JAMES RITCHARD, JAMES DAVID HOOPER and DAREN WADE RUBINGH,<br><br>         Plaintiffs,<br><br>  v.<br><br>GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan, JOCELYN BENSON, in her official capacity as Michigan Secretary of State and the Michigan BOARD OF STATE CANVASSERS,<br><br>         Defendants. | No. 2:20-cv-13134<br><br>Hon. Linda V. Parker |

## THE CITY OF DETROIT'S MOTION TO DISMISS
## AND
## FOR AN AWARD OF SANCTIONS

### Index of Exhibits

Exhibit 1 – November 4, 2020 Opinion and Order in *Donald J. Trump for President, Inc v. Secy' of State*

Exhibit 2 – November 6, 2020 Opinion and Order in *Stoddard v. City Elect Comm of the City of Detroit*

Exhibit 3 – December 4, 2020 Order in *Donald J. Trump for President, Inc v. Secy' of State*

# EXHIBIT 1

# STATE OF MICHIGAN

# COURT OF CLAIMS

DONALD J. TRUMP FOR PRESIDENT, INC.
and ERIC OSTEGREN,

**OPINION AND ORDER**

          Plaintiffs,

v

Case No.  20-000225-MZ

JOCELYN BENSON, in her official capacity as
Secretary of State,

Hon. Cynthia Diane Stephens

          Defendants.

_____/

Pending before the Court are two motions.  The first is plaintiffs' November 4, 2020 emergency motion for declaratory relief under MCR 2.605(D).  For the reasons stated on the record and incorporated herein, the motion is DENIED.  Also pending before the Court is the motion to intervene as a plaintiff filed by the Democratic National Committee.  Because the relief requested by plaintiffs in this case will not issue, the Court DENIES as moot the motion to intervene.

According to the allegations in plaintiffs' complaint, plaintiff Eric Ostegren is a credentialed election challenger under MCL 168.730.  Paragraph 2 of the complaint alleges that plaintiff Ostegren was "excluded from the counting board during the absent voter ballot review process."  The complaint does not specify when, where, or by whom plaintiff was excluded.  Nor does the complaint provide any details about why the alleged exclusion occurred.

The complaint contains allegations concerning absent voter ballot drop-boxes.  Plaintiffs allege that state law requires that ballot containers must be monitored by video surveillance. Plaintiff contends that election challengers must be given an opportunity to observe video of ballot drop-boxes with referencing the provision(s) of the statute that purportedly grant such access, . See MCL 168.761d(4)(c).

Plaintiffs' emergency motion asks the Court to order all counting and processing of absentee ballots to cease until an "election inspector" from each political party is allowed to be present at every absent voter counting board, and asks that this court require the Secretary of State to order the immediate segregation of all ballots that are not being inspected and monitored as required by law.  Plaintiffs argue that the Secretary of State's failure to act has undermined the rights of all Michigan voters.  While the advocate at oral argument posited the prayer for relief as one to order "meaningful access" to the ballot tabulation process, plaintiffs have asked the Court to enter a preliminary injunction to enjoin the counting of ballots.   A party requesting this "extraordinary and drastic use of judicial power" must convince the Court of the necessity of the relief based on the following factors:

> (1) the likelihood that the party seeking the injunction will prevail on the merits, (2) the danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) the risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the relief, and (4) the harm to the public interest if the injunction is issued.  [*Davis v Detroit Fin Review Team*, 296 Mich App 568, 613; 821 NW2d 896 (2012).]

As stated on the record at the November 5, 2020 hearing, plaintiffs are not entitled to the extraordinary form of emergency relief they have requested.

## I.    SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

## A.  OSTEGREN CLAIM

Plaintiff Ostegren avers that he was removed from an absent voter counting board.  It is true that the Secretary of State has general supervisory control over the conduct of elections.  See MCL 168.21; MCL 168.31.  However, the day-to-day operation of an absent voter counting board is controlled by the pertinent city or township clerk.  See MCL 168.764d.  The complaint does not allege that the Secretary of State was a party to or had knowledge of, the alleged exclusion of plaintiff Ostegren from the unnamed absent voter counting board.  Moreover, the Court notes that recent guidance from the Secretary of State, as was detailed in matter before this Court in *Carra et al v Benson et al*, Docket No. 20-000211-MZ, expressly advised local election officials to admit credentialed election challengers, provided that the challengers adhered to face-covering and social-distancing requirements.  Thus, allegations regarding the purported conduct of an unknown local election official do not lend themselves to the issuance of a remedy against the Secretary of State.

## B.  CONNARN AFFIDAVIT

Plaintiffs have submitted what they refer to as "supplemental evidence" in support of their request for relief.  The evidence consists of: (1) an affidavit from Jessica Connarn, a designated poll watcher; and (2) a photograph of a handwritten yellow sticky note.  In her affidavit, Connarn avers that, when she was working as a poll watcher, she was contacted by an unnamed poll worker who was allegedly "being told by other hired poll workers at her table to change the date the ballot was received when entering ballots into the computer."  She avers that this unnamed poll worker later handed her a sticky note that says "entered receive date as 11/2/20 on 11/4/20."  Plaintiffs contend that this documentary evidence confirms that some unnamed persons engaged in

fraudulent activity in order to count invalid absent voter ballots that were received after election day.

This "supplemental evidence" is inadmissible as hearsay. The assertion that Connarn was informed by an unknown individual what "other hired poll workers at her table" had been told is inadmissible hearsay within hearsay, and plaintiffs have provided no hearsay exception for either level of hearsay that would warrant consideration of the evidence. See MRE 801(c). The note—which is vague and equivocal—is likewise hearsay. And again, plaintiffs have not presented an argument as to why the Court could consider the same, given the general prohibitions against hearsay evidence. See *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 105; 776 NW2d 114 (2009). Moreover, even overlooking the evidentiary issues, the Court notes that there are still no allegations implicating the Secretary of State's general supervisory control over the conduct of elections. Rather, any alleged action would have been taken by some unknown individual at a polling location.

## C.  BALLOT BOX VIDEOS

It should be noted at the outset that the statute providing for video surveillance of drop boxes only applies to those boxes that were installed after October 1, 2020. See MCL 168.761d(2). There is no evidence in the record whether there are any boxes subject to this requirement, how many there are, or where they are. The plaintiffs have not cited any statutory authority that requires any video to be subject to review by election challengers. They have not presented this Court with any statute making the Secretary of State responsible for maintaining a database of such boxes. The clear language of the statute directs that "[t]he city or township clerk must use video monitoring of that drop box to ensure effective monitoring of that drop box." MCL 168.761d(4)(c) Additionally, plaintiffs have not directed the Court's attention to any authority directing the

-4-

Secretary of State to segregate the ballots that come from such drop-boxes, thereby undermining plaintiffs' request to have such ballots segregated from other ballots, and rendering it impossible for the Court to grant the requested relief against this defendant. Not only can the relief requested not issue against the Secretary of State, who is the only named defendant in this action, but the factual record does not support the relief requested. As a result, plaintiffs are unable to show a likelihood of success on the merits.

## II.   MOOTNESS

Moreover, even if the requested relief could issue against the Secretary of State, the Court notes that the complaint and emergency motion were not filed until approximately 4:00 p.m. on November 4, 2020—despite being announced to various media outlets much earlier in the day. By the time this action was filed, the votes had largely been counted, and the counting is now complete. Accordingly, and even assuming the requested relief were available against the Secretary of State—and overlooking the problems with the factual and evidentiary record noted above—the matter is now moot, as it is impossible to issue the requested relief. See *Gleason v Kincaid*, 323 Mich App 308, 314; 917 NW2d 685 (2018)

IT IS HEREBY ORDERED that plaintiff's November 4, 2020 emergency motion for declaratory judgment is DENIED.

IT IS HEREBY FURTHER ORDERED that proposed intervenor's motion to intervene is DENIED as MOOT.

This is not a final order and it does not resolve the last pending claim or close the case.

November 6, 2020

Cynthia Diane Stephens
Judge, Court of Claims

# EXHIBIT 2

STATE OF MICHIGAN

IN THE THIRD JUDICIAL CIRCUIT COURT FOR THE COUNTY OF WAYNE

Sarah Stoddard and
Election Integrity Fund,

                                                   Hon. Timothy M. Kenny

v                                              Case No. 20-014604-CZ

City Election Commission of
The City of Detroit and
Janice Winfrey, in her official
Capacity as Detroit City Clerk and
Chairperson of the City Election
Commission, and
Wayne County Board of
Canvassers,

_____/

## **OPINION & ORDER**

At a session of this Court
Held on: November 6, 2020
In the Coleman A. Young Municipal Center
County of Wayne, Detroit, MI

PRESENT: Honorable Timothy M. Kenny
Chief Judge
Third Judicial Circuit Court of Michigan

      Plaintiffs Sarah Stoddard and the Election Integrity Fund petition this Court for preliminary injunctive relief seeking:

1. Defendants be required to retain all original and duplicate ballots and poll books.
2. The Wayne County Board of Canvassers not certify the election results until both Republican and Democratic party inspectors compare the duplicate ballots with original ballots.
3. The Wayne County Board of Canvassers unseal all ballot containers and remove all duplicate and original ballots for comparison purposes.
4. The Court provide expedited discovery to plaintiffs, such as limited interrogatories and depositions.

1

When considering a petition for injunctive relief the Court must apply the following four-prong test:

1. The likelihood the party seeking the injunction will prevail on the merits.
2. The danger the party seeking the injunction will suffer irreparable harm if the injunction is not granted.
3. The risk the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the injunction.
4. The harm to the public interest if the injunction is issued. *Davis v City of Detroit Financial Review Team*, 296 Mich. App. 568, 613; 821 NW2d 896 (2012).

In the *Davis* opinion, the Court also stated that injunctive relief "represents an extraordinary and drastic use of judicial power that should be employed sparingly and only with full conviction of its urgent necessity" Id at 612 fn 135, quoting *Senior Accountants, Analysts & Appraisers Ass'n v. Detroit*, 218 Mich. App. 263, 269; 553 NW2d 679 (1996).

When deciding whether injunctive relief is appropriate MCR 3.310 (A)(4) indicates that the plaintiff bears the burden of proving the preliminary injunction should be granted.

Plaintiffs' pleadings do not persuade this Court that they are likely to prevail on the merits for several reasons. First, this Court believes plaintiffs misinterpret the required placement of major party inspectors at the absent voter counting board location. MCL 168.765a (10) states in part "At least one election inspector from each major political party must be present <u>at the absent voter counting place</u>…" While plaintiffs contends the statutory section mandates there be a Republican and Democratic inspector at each table inside the room, the statute does not identify this requirement. This Court believes the plain language of the statute requires there be election inspectors at the TCF Center facility, the site of the absentee counting effort.

Pursuant to MCL 168.73a the County chairs for Republican and Democratic parties were permitted and did submit names of absent voter counting board inspectors to the City of Detroit Clerk. Consistent with MCL 168.674, the Detroit City Clerk did make appointments of inspectors. Both Republican and Democratic inspectors were present throughout the absent voter counting board location.

An affidavit supplied by Lawrence Garcia, Corporation Counsel for the City of Detroit, indicated he was present throughout the time of the counting of absentee

ballots at the TCF Center.  Mr. Garcia indicated there were always Republican and Democratic inspectors there at the location.  He also indicated he was unaware of any unresolved counting activity problems.

By contrast, plaintiffs do not offer any affidavits or specific eyewitness evidence to substantiate their assertions.  Plaintiffs merely assert in their verified complaint "Hundreds or thousands of ballots were duplicated solely by Democratic party inspectors and then counted."  Plaintiffs' allegation is mere speculation.

Plaintiffs' pleadings do not set forth a cause of action.  They seek discovery in hopes of finding facts to establish a cause of action.  Since there is no cause of action, the injunctive relief remedy is unavailable.  *Terlecki v Stewart*, 278 Mich. App. 644; 754 NW2d 899 (2008).

The Court must also consider whether plaintiffs will suffer irreparable harm. Irreparable harm requires "A particularized showing of concrete irreparable harm or injury in order to obtain a preliminary injunction." *Michigan Coalition of State Employee Unions v Michigan Civil Service Commission*, 465 Mich. 212, 225; 634 NW2d 692, (2001).

In *Dunlap v City of Southfield*, 54 Mich. App. 398, 403; 221 NW2d 237 (1974), the Michigan Court of Appeals stated "An injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural."

In the present case, Plaintiffs allege that the preparation and submission of "duplicate ballots" for "false reads" without the presence of inspectors of both parties violates both state law, MCL 168.765a (10), and the Secretary of State election manual.  However, Plaintiffs fail to identify the occurrence and scope of any alleged violation  The only "substantive" allegation appears in paragraph 15 of the First Amended Complaint, where Plaintiffs' allege "on information and belief" that hundreds or thousands of ballots have been impacted by this improper practice.  Plaintiffs' Supplemental Motion fails to present any further specifics.  In short, the motion is based upon speculation and conjecture.  Absent any evidence of an improper practice, the Court cannot identify if this alleged violation occurred, and, if it did, the frequency of such violations.  Consequently, Plaintiffs fail to move past mere apprehension of a future injury or to establish that a threatened injury is more than speculative or conjectural.

This Court finds that it is mere speculation by plaintiffs that hundreds or thousands of ballots have, in fact, been changed and presumably falsified. Even with this assertion, plaintiffs do have several other remedies available. Plaintiffs are entitled to bring their challenge to the Wayne County Board of Canvassers pursuant to MCL 168.801 *et seq.* and MCL 168.821 *et seq.* Additionally, plaintiffs can file for a recount of the vote if they believe the canvass of the votes suffers from fraud or mistake. MCL168.865-168.868. Thus, this Court cannot conclude that plaintiffs would experience irreparable harm if a preliminary injunction were not issued.

Additionally, this Court must consider whether plaintiffs would be harmed more by the absence of injunctive relief than the defendants would be harmed with one.

If this Court denied plaintiffs' request for injunctive relief, the statutory ability to seek relief from the Wayne County Board of Canvassers (MCL 168.801 et seq. and MCL 168.821 et seq.) and also through a recount (MCL 168.865-868) would be available. By contrast, injunctive relief granted in this case could potentially delay the counting of ballots in this County and therefore in the state. Such delays could jeopardize Detroit's, Wayne County's, and Michigan's ability to certify the election. This in turn could impede the ability of Michigan's elector's to participate in the Electoral College.

Finally, the Court must consider the harm to the public interest. A delay in counting and finalizing the votes from the City of Detroit without any evidentiary basis for doing so, engenders a lack of confidence in the City of Detroit to conduct full and fair elections. The City of Detroit should not be harmed when there is no evidence to support accusations of voter fraud.

Clearly, every legitimate vote should be counted. Plaintiffs contend this has not been done in the 2020 Presidential election. However, plaintiffs have made only a claim but have offered no evidence to support their assertions. Plaintiffs are unable to meet their burden for the relief sought and for the above-mentioned reasons, the plaintiffs' petition for injunctive relief is denied.

It is so ordered.

November 6, 2020
Date

Hon. Timothy M. Kenny
Chief Judge
Third Judicial Circuit Court of Michigan

4

# EXHIBIT 3

# Court of Appeals, State of Michigan

# ORDER

Donald J Trump for President Inc v Secretary of State

Docket Nos.    355378; 355397

LC No.        2020-000225-MZ

Stephen L. Borrello
Presiding Judge

Patrick M. Meter

Amy Ronayne Krause
Judges

---

The motions for immediate consideration are GRANTED.

The motion to intervene filed by the City of Detroit is DENIED, without prejudice to refiling the motion in the proceedings below should the City of Detroit still deem intervention necessary.

The Democratic National Committee's motion for leave to file amicus brief in Docket No. 355378 is GRANTED, and the brief received on December 3, 2020 is accepted for filing.

The applications for leave to appeal are DENIED.  However, the Democratic National Committee shall retain its status as amicus curiae in the Court of Claims.

We respond to our dissenting colleague because his assertions are not supported by law or by fact.  As the defendant correctly points out, Michigan's election results have been certified.  Once the election results have been certified, "[a] candidate for office who believes he or she is aggrieved on account of fraud or mistake in the canvass or returns of the votes by the election inspectors may petition for a recount of the votes cast for that office in any precinct or precincts as provided by in this chapter." MCL 168.862; see also MCL 168.847, MCL 168.867; MCL 168.879.  Recounts are remedial in nature. *Attorney General v Board of State Canvassers*, 318 Mich App 242, 252; 896 NW2d 485 (2016), lv den 500 Mich 917 (2016).  " 'The purpose of a recount is to determine whether the results of the first count of the ballots should stand or should be changed because of fraud or mistake in the canvass of the votes . . . ' " *Id*., quoting *Michigan Education Ass'n Political Action Committee v Secretary of State*, 241 Mich App 432, 440; 616 NW2d 234 (2000), lv den 463 Mich 997 (2001).

Here, plaintiff filed its purportedly emergent application on November 6, 2020, but did not perfect the filing until 11:21 p.m. on November 30, 2020, when it filed its brief in support.  The Wayne County Board of Canvassers certified the results of the November 3rd election on November 17, 2020, almost a full two weeks before plaintiff perfected the instant application.  The Michigan Board of State Canvassers certified the presidential election results on November 23, 2020, a full week before plaintiff perfected its application.[1]  Plaintiff does not address whether the certification of the election

---

[1] The Secretary of State represents that the Governor has sent Michigan's official slate of presidential electors to the United States Secretary of the Senate.

result by the Board of State Canvassers had any impact on the viability of its suit below or on the viability of the instant application.

Perhaps the reason for plaintiff failing to discuss the impact of the certification is because such action by the Michigan State Board of Canvassers clearly rendered plaintiff's claims for relief moot. The Michigan State Board of Canvassers' certification of the presidential election results and the legislative directive found in MCL 168.862, requires plaintiff to pursue its fraud allegations by way of a recount of the ballots cast in Wayne County. Because plaintiff failed to follow the clear law in Michigan relative to such matters, their action is moot. MCL 168.862.

_____
Presiding Judge

Meter, J., would grant leave to appeal in each case, with the direction that the Clerk draw a random 3 judge panel to decide the cases within 3 days of filing of these orders, without oral argument.

The issue of mootness is more than the "elephant in the room". The issues are not moot because state electors have not yet been seated, the Electoral College has not yet been assembled, and Congress has not yet convened to consider whether to exercise its powers under Art.2, Sec. 1 and Am 20.

Further plaintiff's prayer for segregation of absentee ballots has, on information, not yet been ordered by defendant Secretary of State. Also, the right of plaintiff to election inspectors and to observe video of ballot drop boxes is self-evident under state law, thus entitling plaintiff to, at the least, declaratory relief.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

_____
December 4, 2020
Date

_____
Chief Clerk