# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WISCONSIN VOTERS ALLIANCE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VICE PRESIDENT MICHAEL R. PENCE, *et al.*, <br><br> Defendants. | Civil Action No. 20-3791 (JEB) |

## MEMORANDUM OPINION

Plaintiffs' aims in this election challenge are bold indeed: they ask this Court to declare unconstitutional several decades-old federal statutes governing the appointment of electors and the counting of electoral votes for President of the United States; to invalidate multiple state statutes regulating the certification of Presidential votes; to ignore certain Supreme Court decisions; and, the *coup de grace*, to enjoin the U.S. Congress from counting the electoral votes on January 6, 2021, and declaring Joseph R. Biden the next President.

Voter groups and individual voters from the states of Wisconsin, Pennsylvania, Georgia, Michigan, and Arizona have brought this action against Vice President Michael R. Pence, in his official capacity as President of the Senate; both houses of Congress and the Electoral College itself; and various leaders of the five aforementioned states. Simultaneous with the filing of their Complaint, Plaintiffs moved this Court to preliminarily enjoin the certifying of the electors from the five states and the counting of their votes. In addition to being filed on behalf of Plaintiffs without standing and (at least as to the state Defendants) in the wrong court and with no effort to even serve their adversaries, the suit rests on a fundamental and obvious misreading of the

1

Constitution. It would be risible were its target not so grave: the undermining of a democratic election for President of the United States. The Court will deny the Motion.

## I. Background

To say that Plaintiffs' 116-page Complaint, replete with 310 footnotes, is prolix would be a gross understatement. After explicitly disclaiming any theory of fraud, see ECF No. 1 (Complaint), ¶ 44 ("This lawsuit is not about voter fraud."), Plaintiffs spend scores of pages cataloguing every conceivable discrepancy or irregularity in the 2020 vote in the five relevant states, already debunked or not, most of which they nonetheless describe as a species of fraud. E.g., id., at 37–109. Those allegations notwithstanding, Plaintiffs' central contention is that certain federal and state election statutes ignore the express mandate of Article II of the Constitution, thus rendering them invalid. Id. at 109–12. Although the Complaint also asserts causes of action for violations of the Equal Protection and Due Process Clauses, those are merely derivative of its first count. Id. at 112–15.

In order to provide an equitable briefing and hearing schedule on a very tight timetable, this Court immediately instructed Plaintiffs to file proofs of service on Defendants so that they could proceed on their preliminary-injunction Motion. See 12/23/20 Min. Order; Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."). Twelve days later, Plaintiffs have still not provided proof of notice to any Defendant, let alone filed a single proof of service or explained their inability to do so.

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. NRDC, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the

2

absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting Winter, 555 U.S. at 20). "The moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted." Hospitality Staffing Solutions, LLC v. Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (citing Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in Winter, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291–92 (D.C. Cir. 2009) (quoting Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 1999)). Both before and after Winter, however, one thing is clear: a failure to show a likelihood of success on the merits alone is sufficient to defeat the motion. Ark. Dairy Coop. Ass'n, Inc. v. USDA, 573 F.3d 815, 832 (D.C. Cir. 2009) (citing Apotex, Inc. v. FDA, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006)); Archdiocese of Wash. v. Wash. Metro. Area Transit Auth., 281 F. Supp. 3d 88, 99 (D.D.C. 2017), aff'd on other grounds, 897 F.3d 314 (D.C. Cir. 2018).

**III. Analysis**

Given that time is short and the legal errors underpinning this action manifold, the Court treats only the central ones and in the order of who, where, what, and why. Most obviously, Plaintiffs have not demonstrated the "irreducible constitutional minimum of standing." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Although they claim to have been "disenfranchised," ECF No. 4 (PI Mem.) at 37, this is plainly not true. Their votes have been counted and their electors certified pursuant to state-authorized procedures; indeed, any vote nullification would obtain only were their own suit to succeed. To the extent that they argue

3

Case 2:20-cv-01771-PP Case 1:20-cv-03791-JEB Document 78 Filed 12/04/24 Filed 01/05/21 Page 5 of Page 5 of 8

more broadly that voters maintain an interest in an election conducted in conformity with the Constitution, id. at 38, they merely assert a "generalized grievance" stemming from an attempt to have the Government act in accordance with their view of the law. Hollingsworth v. Perry, 570 U.S. 693, 706 (2013). This does not satisfy Article III's demand for a "concrete and particularized" injury, id. at 704, as other courts have recently noted in rejecting comparable election challenges. See Wood v. Raffensperger, 981 F.3d 1307, 1314–15 (11th Cir. 2020); Bowyer v. Ducey, No. 20-2321, 2020 WL 7238261, at *4–5 (D. Ariz. Dec. 9, 2020); King v. Whitmer, No. 20-13134, 2020 WL 7134198, at *10 (E.D. Mich. Dec. 7, 2020). Plaintiffs' contention that the state legislature is being deprived of its authority to certify elections, moreover, cannot suffice to establish a distinct injury-in-fact to the individuals and organizations before this Court. Finally, to the extent that Plaintiffs seek an injunction preventing certain state officials from certifying their election results, see PI Mem. at 1, that claim is moot as certification has already occurred. Wood, 981 F.3d at 1317.

Moving on from subject-matter jurisdiction, the Court must also pause at personal jurisdiction. Plaintiffs cannot simply sue anyone they wish here in the District of Columbia. On the contrary, they must find a court or courts that have personal jurisdiction over each Defendant, and they never explain how a court in this city can subject to its jurisdiction, say, the Majority Leader of the Wisconsin State Senate. Absent personal jurisdiction over a particular Defendant, of course, this Court lacks authority to compel him to do anything.

Even if the Court had subject-matter and personal jurisdiction, it still could not rule in Plaintiffs' favor because their central contention is flat-out wrong. "Plaintiffs claim that Article II of the U.S. Constitution provides a voter a constitutional right to the voter's Presidential vote being certified as part of the state legislature's post-election certification of Presidential electors.

4

Absence [*sic*] such certification, the Presidential electors' votes from that state cannot be counted by the federal Defendants toward the election of President and Vice President." Compl., ¶ 32 (emphasis added); see also PI Mem. at 1. More specifically, "Plaintiffs [*sic*] constitutional claims in this lawsuit are principally based on one sentence in Article II of the U.S. Constitution." Compl., ¶ 54; see also PI Mem. at 1. That sentence states in relevant part that the President "shall hold his Office during the Term of four Years, and . . . be elected[] as follows: [¶] Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors . . . ." U.S. Const., art. II, § 1.

Plaintiffs somehow interpret this straightforward passage to mean that state legislatures alone must certify Presidential votes and Presidential electors after each election, and that Governors or other entities have no constitutionally permitted role. See Compl., ¶ 55. As a result, state statutes that delegate the certification to the Secretary of State or the Governor or anyone else are invalid. Id., ¶ 58. That, however, is not at all what Article II says. The above-quoted language makes manifest that a state appoints electors in "such Manner as the Legislature thereof may direct." So if the legislature directs that the Governor, Secretary of State, or other executive-branch entity shall make the certification, that is entirely constitutional. This is precisely what has happened: in each of the five states, the legislature has passed a statute directing how votes are to be certified and electors selected. See Ariz. Rev. Stat. Ann. § 16-212(B); Ga. Code Ann. § 21-2-499(b); Mich. Comp. Laws Ann. § 168.46; Wis. Stat. Ann. § 7.70(5)(b); 25 Pa. Stat. § 3166.

For example, Georgia requires its Secretary of State to "certify the votes cast for all candidates . . . and lay the returns for presidential electors before the Governor. The Governor shall enumerate and ascertain the number of votes for each person so voted and shall certify the

slates of presidential electors receiving the highest number of votes." Ga. Code Ann. § 21-2-499(b). Similarly, under Michigan law, "the governor shall certify, under the seal of the state, to the United States secretary of state, the names and addresses of the electors of this state chosen as electors of president and vice-president of the United States." Mich. Comp. Laws Ann. § 168.46. Plaintiffs' theory that all of these laws are unconstitutional and that the Court should instead require state legislatures themselves to certify every Presidential election lies somewhere between a willful misreading of the Constitution and fantasy.

Plaintiffs readily acknowledge that their position also means that the Supreme Court's decisions in Bush v. Gore, 531 U.S. 98 (2000), and Texas v. Pennsylvania, No. 155 (Orig.), 2020 WL 7296814 (U.S. Dec. 11, 2020), "are in constitutional error." Compl., ¶ 76. They do not, however, explain how this District Court has authority to disregard Supreme Court precedent. Nor do they ever mention why they have waited until seven weeks after the election to bring this action and seek a preliminary injunction based on purportedly unconstitutional statutes that have existed for decades — since 1948 in the case of the federal ones. It is not a stretch to find a serious lack of good faith here. See Trump v. Wis. Elections Comm'n, No. 20-3414, 2020 WL 7654295, at *4 (7th Cir. Dec. 24, 2020).

Yet even that may be letting Plaintiffs off the hook too lightly. Their failure to make any effort to serve or formally notify any Defendant — even after reminder by the Court in its Minute Order — renders it difficult to believe that the suit is meant seriously. Courts are not instruments through which parties engage in such gamesmanship or symbolic political gestures. As a result, at the conclusion of this litigation, the Court will determine whether to issue an order to show cause why this matter should not be referred to its Committee on Grievances for potential discipline of Plaintiffs' counsel.

## IV. Conclusion

As Plaintiffs have established no likelihood of success on the merits here, the Court will deny their Motion for Preliminary Injunction. A contemporaneous Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: January 4, 2021

7