## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY KING, MARIAN ELLEN SHERIDAN, JOHN EARL HAGGARD, CHARLES JAMES RITCHARD, JAMES DAVID HOOPER and DAREN WADE RUBINGH,<br><br><br>Plaintiffs,<br><br>v.<br><br><br><br>GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan, et al,<br><br>Defendants,<br><br>and<br><br>CITY OF DETROIT, et al,<br><br>Intervenor-Defendants. | No. 2:20-cv-13134<br><br>Hon. Linda V. Parker |

## THE CITY OF DETROIT'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS, FOR DISCIPLINARY ACTION, FOR DISBARMENT REFERRAL AND FOR REFERRAL TO <u>STATE BAR DISCIPLINARY BODIES</u>

Let there be no mistake, there is blood on Lin Wood and Sidney Powell's hands and on the hands of all those who pushed this lawsuit. Brian Sicknick, a Trump supporting Capitol Police Officer, died defending the Capitol against those who were deranged by Plaintiffs' counsel and their ilk. Ex. 1. Rosanne Boyland, of Kennesaw, Georgia, who fell prey to the election lies, was crushed to death by fellow rioters. *Id.* The life of Ashli Babbitt, a 35-year-old Air Force veteran from California, was cut short because she tragically believed the lies spread in this lawsuit. *Id.* Ms. Babbitt's final tweet was a retweet of L. Lin Wood stating, "Mike Pence@vp @Mike_Pence must resign & thereafter be charged with TREASON," and "Chief Justice John Roberts must RESIGN." Ex. 2. As the rioters stormed the Capitol, they created makeshift gallows and screamed for the hanging of Mike Pence. Ex. 3. Meanwhile, Wood was tweeting "1776 Again," "the time has come Patriots … Time to take back our country … Time to fight for our freedom." Ex. 4. "WE TRIED TO WARN THEM … YOU COULD HAVE PREVENTED THIS," he wrote. Ex. 5 (all caps in original). Sidney Powell approvingly retweeted someone calling the assault a "last resort to petition the government for grievances." Ex. 6.

Instead of accepting responsibility for their part inciting the mob, both Powell and Wood quickly pivoted to assigning blame to others: Powell tweets "It's #Antifa." Ex. 7. Wood started the rumor that Antifa activists were behind the violence by posting photos of two of the rioters which were on the website of a local

1

Antifa group. Ex. 8. Wood, of course, did not advise his 800,000 followers that the photos were from pages on the website which identified known white supremacists. Ex. 9. Wood then tried to claim that Ms. Babbitt's death was a "false flag" operation to "frame" him. Ex. 10. He also continued unabated, posting to "free speech" website Parler that "Mike Pence is a dark soul … [h]e uses 13, 14, & 15 year old boys for his own self-serving purposes …." Ex. 11.

Even though Plaintiffs voluntarily dismissed their lawsuit on the day they would have had to defend it on the merits, they chose to use their Response brief to repeat their misrepresentations. They continue to assert *all* of their false claims and add more. They even accuse the City of filing its Motion for Sanctions "to distract from explosive evidence of voter fraud"-- evidence that has not been presented here or anywhere else. An attorney sincerely withdrawing or correcting misrepresentations in compliance with Rule 11 would not repeat those false claims.

Plaintiffs and their counsel appear dangerously incapable of understanding the consequences of their actions. They are unrepentant and refuse to correct the damage they helped create. Plaintiffs, and, more importantly, their attorneys, must face the most severe consequences available to this Court.

## I.    Plaintiffs' "Procedural" and Safe Harbor Arguments Fail

Plaintiffs make several "procedural arguments" arguing against sanctions under Fed. R. Civ. P. 11. Each argument is misplaced.

### A. Signatures

Incredibly, in a Response intended to prove that they have not misrepresented facts to this Court, Plaintiffs repeatedly misrepresent other facts. Plaintiffs falsely claim that only the Michigan attorneys signed the sanctionable pleadings and motions. *See* Response, PageID.4118. This is blatantly false, and it is mindboggling that these attorneys misrepresent facts about their own actions. The Complaint was signed by Michigan attorneys Scott Hagerstrom and Gregory Rohl, *and it was also signed by* Sidney Powell. ECF No. 1, PageID.75. It also included signature blocks for Lin Wood, Howard Kleinhendler, Emily Newman and Julia Haller:

Respectfully submitted, this 25th day of November, 2020.

/s Sidney Powell*
Sidney Powell PC

Texas Bar No. 16209700

/s/ Scott Hagerstrom
Michigan State Bar No. 57885
222 West Genesee
Lansing, MI 48933
(517) 763-7499
Scotthagerstrom @yahoo.com

/s/ Gregory J. Rohl P39185
The Law Offices of Gregory J. Rohl, P.C.
41850 West 11 Mile Road, Suite 110
Novi, MI 48375
248-380-9404
gregoryrohl@yahoo.com

Of Counsel:
Emily P. Newman (Virginia Bar No. 84265)
Julia Z. Haller (D.C. Bar No. 466921)

2911 Turtle Creek Blvd, Suite 300
Dallas, Texas 75219

*Application for admission pro hac vice
Forthcoming

L. Lin Wood
GA Bar No. 774588
L. LIN WOOD, P.C.
P.O. Box 52584
Atlanta, GA 30305-0584
Telephone: (404) 891-1402

Howard Kleinhendler
New York Bar No. 2657120
Howard Kleinhendler Esquire
369 Lexington Avenue, 12th Floor
New York, New York 10017
(917) 793-1188
howard@kleinhendler.com

*Id.*

The First Amended Complaint was signed by the same two Michigan attorneys *and by* Sidney Powell, with signature blocks for the other attorneys. ECF No. 6, PageID.957. The Emergency Motion for Temporary Restraining Order was signed by Sidney Powell, with *secondary* signatures from the two Michigan attorneys and a signature block for Howard Kleinhendler. ECF No. 7, PageID.1847-49. The Emergency Motion to Seal was signed by Sidney Powell. ECF No. 8, PageID.1854. The Reply in support of the TRO was signed by Sidney Powell, again with secondary signatures by the Michigan attorneys. ECF No. 49, PageID.3098. The Petition for Writ of Certiorari was signed by Howard Kleinhendler, with signature blocks for the other attorneys identified above and a new one for Stefanie Lambert Junttila. Ex. 12.[1]

Irrespective of this extraordinary misrepresentation, Plaintiffs' legal argument is dead wrong. They rely entirely on case law interpreting the 1983 version of the Rule (*Oliveri* (2nd Cir. 1986), *Giebelhaus* (9th Cir. 1991), *In re Ruben* (6th Cir. 1987) and *White v. American Airlines* (10th Cir. 1990))[2] while failing to acknowledge that Rule 11 was fundamentally altered in 1993 in a manner that

---

[1] To the extent Plaintiffs are suggesting that Rule 11 does not apply because signature lines were typewritten, Rule 11 would be a dead letter. Today, almost all attorney signatures on court filings are electronic signatures.

[2] *Oliveri v. Thompson*, 803 F.2d 1265 (2nd Cir. 1986); *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962 (9th Cir. 1991); *In re Ruben*, 825 F.2d 977 (6th Cir. 1987); *White v. American Airlines, Inc.*, 915 F.2d 1414 (10th Cir. 1990).

renders their cited case law wholly inapposite. Based on the pre-1993 case law, Plaintiffs argue that courts may only sanction the attorney who signs a paper or the parties. However, the modern version of Rule 11(c) changes the paradigm; the sanctions in 11(c) now specifically apply not to violations of 11(a), which relates to signatures, but to violations of 11(b), which is not concerned with who signs a document. The requirements of 11(b) unambiguously apply to *anyone* who presents "to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it …." FRCP 11(b). While the 1983 version restricted sanctions to the signing attorney and the represented party, the current Rule states that if "the court determines that *Rule 11(b)* has been violated, the court may impose an appropriate sanction on *any attorney*, *law firm, or party* that violated the rule *or is responsible for the violation*." Rule 11(c)(1) (emphasis added).[3] The reference to 11(b) makes clear that no longer are signatories or parties solely responsible for filings; responsibility now extends to any attorney involved in a case who advocates for a filing with an improper purpose, with unwarranted legal contentions, or with facts without evidentiary support. *See*, *e.g.*, *U.S. Bank Nat. Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 471 (7th Cir. 2005); *In re Lane*, 604 B.R. 23, 31 (B.A.P. 6th

---

[3] The Advisory Committee on Rules' note on the 1993 amendment states "[t]he revision permits the court to consider whether other attorneys in the firm, *co-counsel*, other law firms, or the party itself should be held accountable for their part in causing a violation."

Cir. 2019) (distinguishing *In re Ruben* and the pre-1993 case law while holding that attorneys listed as "additional counsel" could be sanctioned); *Stalley ex rel. U.S. v. Mountain States Health All.*, 644 F.3d 349 (6th Cir. 2011) (imposing sanctions against non-signatory for bringing vexatious lawsuit). Plaintiffs do not cite a single case interpreting the 1993 amendment.

In the present case, each attorney either signed frivolous documents or advocated for frivolous positions. Indeed, this case was not local counsel's case; it was Sidney Powell's case. She announced she was filing it. She promoted the claims and the "experts." It was also Lin Wood's case. He announced he was filing it. He promoted the claims, even adopting the Parler username @krakenwood. Plaintiffs' attorneys have engaged in a systematic and coordinated attack on our democracy in courts across the country, filing remarkably similar and equally disturbing suits in multiple states. *See Feehan v. Wisconsin Elections Comm'n*, No. 20-CV-1771, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020); *Bowyer v. Ducey*, CV-20-02321, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020); and *Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. Ga. Dec. 7, 2020). And, incredibly, they continue that campaign even after dismissing the lawsuits, including by pushing misrepresentations in Response to the instant Rule 11 Motion.[4]

---

[4] Plaintiffs claim that the subjective belief of Powell and Wood cannot be considered by the Court because only the motivations of those who signed

### B. "Combining" Motions

Plaintiffs argue that the City's motion for "both Rule 11 sanctions and for disbarment of attorneys and their referral to state bar associations for disciplinary action is procedurally improper" because a Rule 11 sanctions motion "must be made separate from *any other motion*." ECF No. 95, PageID.4114-15 (emphasis in original) (quoting Fed R. Civ. P. 11(c)(2)). The text of Rule 11 clearly contemplates both monetary and nonmonetary relief, providing that a "sanction may include nonmonetary directives" in addition to fines. Fed. R. Civ. P. 11(c)(4). *See also Tropf v. Fid. Nat. Title Ins. Co.*, 289 F.3d 929, 939-40 (6th Cir. 2002) (noting that, in addition to fines, "Rule 11 also authorizes nonmonetary sanctions"). Further, as the committee notes to that rule explain:

> The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; *referring the matter to disciplinary authorities*… etc.

---

sanctionable pleadings and motions are material. Again, this assertion is factually incorrect, because Powell signed numerous documents in this case. And, again, Plaintiffs mistakenly rely on pre-1993 amendment case law. The case they rely on— *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990)—held that "[c]ircumstantial facts surrounding the filing may also be considered as evidence of the signer's purpose." However, the scope of the Rule has since changed to cover all attorneys in a case, not just the one who signed a pleading. The pleadings and motions were facially and objectively sanctionable, but the statements made by the attorneys further demonstrate the improper purpose for these filings.

Fed. R. Civ. P. 11(c)(4), advisory committee's note to the 1993 Amendments (emphasis added). A request for both monetary and nonmonetary sanctions does not violate Rule 11(c)(2)'s prohibition against mixing sanction and non-sanction relief in a single motion.

Furthermore, Sixth Circuit precedent directly refutes Plaintiffs' argument. As the Sixth Circuit has explained, Rule 11's single motion requirement "is intended to highlight the sanctions request by preventing it from being tacked onto or buried in motions on the merits, such as motions to dismiss or for summary judgment." *Ridder v. City of Springfield*, 109 F.3d 288, 294 n. 7 (6th Cir. 1997). However, "[t]he requirement does not foreclose combining a Rule 11 request with other provisions regulating attorney behavior," in that case, 42 U.S.C. § 1988 and § 1927. *Id.* Requiring parties to file "Rule 11 sanctions separate from other requests for attorney fees based on the same conduct would amount to needless duplication of paper, time, and effort, for practitioners as well as the courts." *Id.*

The Michigan Rules of Professional Conduct, the Eastern District of Michigan Local Rules and the Code of Conduct for United States Judges all support the requested disciplinary referrals:

• The out-of-state lawyers who have participated in this lawsuit are subject to professional discipline in Michigan as well as in their home states. Michigan's discipline authority extends to any "lawyer not admitted in this jurisdiction" who "provides or offers to provide any legal services in this jurisdiction". MRPC 8.5(a);

• "When misconduct or allegations of misconduct that, if substantiated, would warrant discipline of an attorney who is a member of the bar of this court or has practiced in this court as permitted by LR 83.20 come to the attention of a judicial officer . . . whether by complaint or otherwise, the judicial officer may refer the matter to: (1) the Michigan Attorney Grievance Commission for investigation and prosecution, (2) another disciplinary authority that has jurisdiction over the attorney, or (3) the chief judge for institution of disciplinary proceedings by this court under LR 83.22(e)". E D Mich LR 83.22(c);[1],[2] and

• a federal judge is ethically required to report lawyers' unprofessional conduct to disciplinary authorities. Code of Conduct for United States Judges, Canon 3(B)(6) ("A judge should take appropriate action upon receipt of reliable information indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct.").

Plaintiffs do not address this Court's authority to make the requested referrals.

### C. The Safe Harbor Period

Plaintiffs mistakenly argue that the City failed to comply with Rule 11(c)(2)'s

safe harbor provision. Response, PgID.4118-20. To comply with this provision,

litigants must follow a "two-step process: first, serve the Rule 11 motion on the

---

[1]"'[P]ractice in this court' means, in connection with an action or proceeding pending in this court, to appear in, commence, conduct, prosecute, or defend the action or proceeding; appear in open court; sign a paper; participate in a pretrial conference; represent a client at a deposition; or otherwise practice in this court or before an officer of this court. A person practicing in this court must know these rules, including the provisions for sanctions for violating the rules. A person is not permitted to circumvent this rule by directing the conduct of litigation if that person would not be eligible to practice in this court." E D Mich LR 83.20(a)(1).

[2]See also, generally, MRPC 8.3(a), which provides in relevant part that *every* lawyer "having knowledge that another lawyer has committed a significant violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer *shall inform the Attorney Grievance Commission*" (emphasis added).

9

opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Ridder*, 109 F.3d at 294. The purpose of this 21-day waiting period is to give the offending party an opportunity to "withdraw[] or correct[] the challenged document or position after receiving notice of the allegedly violative conduct." *Id.*

The City complied with the Rule. As Plaintiffs concede, the City served its motion for sanctions on December 15th, then waited until January 5th to submit its motion to the court, along with an accompanying brief. *See* Response, PageID.4118-19. Plaintiffs contend, however, that the safe harbor period only began to run when the City filed its brief with this Court, as the initial notice did not identify the conduct that violated Rule 11(b) or "identify any specific allegation or witness that lacks evidentiary support." *Id.* at PageID.4119. Yet the City's motion describes Plaintiffs' violative conduct in detail. It identifies Plaintiffs' improper purpose in pursuing this litigation; specifically, their intent to "raise doubts in the minds of millions of Americans about the legitimacy of the 2020 Presidential Election," ECF No. 78, PageID.3618. It also identifies how Plaintiffs' claims were not supported by existing law and did not constitute a good-faith attempt to change the law or create new law; while most of Plaintiffs' claims were procedurally deficient—clearly moot or barred by the doctrine of laches—they were substantively deficient as well, lacking legal authority or basis in fact beyond mere speculation or conjecture. *Id.* at PageID.3619-

21. The motion also explains that Plaintiffs' contentions lacked evidentiary support, referring them to 125 pages of material in the record of this proceeding debunking Plaintiffs' various baseless claims and assertions. *Id.* at PageID.3621-22 (citing ECF No. 39 PageID.2808-2933).

Essentially, Plaintiffs are arguing that the Rule 11 Motion served on them did not include the same detail as the one filed, because the served Motion did not include a brief. However, Rule 11(c)(2) requires service of a motion, not a brief in support. *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012) (delivery of sanctions motion was sufficient for Rule 11(c)(2) notice, even though it was not accompanied by "supporting affidavits or a memorandum of law"); *see also Ideal Instruments, Inc. v. Rivard Instruments, Inc.,* 243 F.R.D. 322, 339 (N.D. Iowa 2007) ("Rule 11 says nothing about requiring service of the *brief* in support of a Rule 11 motion to trigger the twenty-one day 'safe harbor.'") (emphasis in original).[5]

Finally, it must be noted that Plaintiffs have not actually "withdrawn or corrected the challenged document[s] or position[s]." They filed Notices of

---

[5] It is not clear why Plaintiffs reference the "substantial compliance" doctrine, which has been rejected since the 1993 amendments to Rule 11. *See Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997). The doctrine held that the notice provision of Rule 11 could be satisfied by "substantial compliance" of providing "informal notice" in lieu of serving a Motion. *Id.* Here, Plaintiffs were not provided informal notice, they were served with a Rule 11 Motion.

Voluntary Dismissal as to the Defendants who did not file an Answer, just in time to avoid having to defend their case on the merits. But even after those dismissals, Plaintiffs continue to advance their specious claims and repeat the same falsehoods. They did so in their Response to the City's Motion for § 1927 sanctions, ECF No. 85, and again in Response to the instant Motion. Instead of withdrawing or correcting their lies, counsel repeats them, using the judicial system to again and again publish the same harmful falsehoods.

## II. The Claims in this Lawsuit did not have Legitimate Evidentiary Support

Plaintiffs' counsel not only argue that they had a good-faith basis to believe their allegations, but they also use their brief to continue to broadcast those baseless allegations. They pressed so many objectively false claims—including, for instance, lying about the credentials of *Spyder* to pretend that he would have had a foundation to make his outlandish claims—that it would be impossible to go through each one without a long evidentiary hearing. However, the first 9 pages of the First Amended Complaint (ECF No. 6, the "FAC") do a pretty good job of summarizing the lies:

- *Plaintiffs and their counsel allege that this case "brings to light a massive election fraud … a scheme and artifice to defraud [] for the purpose of illegally and fraudulently manipulating the vote count to elect Joe Biden as President of the United States."* FAC ¶¶ *1-2.* In fact, the case presented *no* legitimate evidence of election fraud, let alone "massive" election fraud. They presented *no*

evidence that a single vote was manipulated. The unsupported claims of fellow conspiracy theorists and academic hucksters did not come close.

- *Plaintiffs and their counsel assert that the FAC "details an especially egregious range of conduct in Wayne County and the City of Detroit" and that "[e]lection workers [in Detroit] illegally forged, added, removed or otherwise altered information on ballots, the Qualified Voter File (QVF) and Other Voting Records." Id. ¶¶ 2, 14.* In fact, as Plaintiffs and their counsel knew full well, the FAC detailed no such thing. Every *single* allegation related to Wayne County and Detroit has either been repeatedly disproven, been shown to be mistaken or was based on fantasy. Even in the unlikely event that the initial declarants were innocently mistaken about the process, by the time the attorneys in this case latched on to them, the allegations had been conclusively disproven by objective facts. And, crucially, it is clear that Plaintiffs' counsel did not investigate the veracity of any of these allegations, because the allegations were compiled entirely from allegations and witness statements gathered by partisans in other cases. Counsel here merely pulled the statements off court filings in other cases and adopted them verbatim.

- *The FAC alleges that "Dominion systems derive from the software designed by Smartmatic Corporation," that "Smartmatic and Dominion were founded by foreign oligarchs and dictators" as part of "a criminal conspiracy to manipulate Venezuelan elections in favor of dictator Hugo Chavez." Id. ¶¶ 4-6.*

13

There is simply no evidence supporting these wild claims. The fact that trolls from sundry corners of the internet and other fraudsters make the claim, does not protect Plaintiffs' counsel from the obligation to independently confirm the representations.

- *Plaintiffs and their counsel allege that there "is incontrovertible physical evidence that the standards of physical security of the voting machines and the software were breached, and machines were connected to the internet in violation of professional standards, which violates federal election law on the preservation of evidence." Id.* ¶ 9. There was *no* evidence that the physical security of the machines and software were breached, and, indeed, the flawed and fabricated reports from the various "experts" do not actually make that claim, instead (falsely) asserting that the machines and software were susceptible to breach.[6]

- *Plaintiffs and their counsel alleged that "Detroit election workers added "tens of thousands of new ballots and/or new voters to QVF in two separate batches on November 4, 2020, all or nearly all of which were votes for Joe Biden." Id.* ¶ 14a. There was never any legitimate support for the claim. And, by the time

---

[6] Plaintiffs argue that they should not be sanctioned because other attorneys and various politicians also advanced similar frivolous claims, including from identical witness statements. The attorneys here do not get a pass for jumping off the bridge of ethical conduct, just because other people did. We have all witnessed the deadly consequences of shared delirium. Rule 11 is clear that every attorney in a case has an obligation to independently confirm the accuracy of the information they present to a court.

these plaintiffs and their attorneys attached the witness statements and allegations made in prior lawsuits, they had been proven false.[7]

- *Plaintiffs and their counsel allege that Detroit election workers counted "ineligible ballots – and in many cases – multiple times;" and counted ballots "without signatures, or without attempting to match signatures and ballots without postmarks, pursuant to direct instructions from Defendants." Id.* ¶ 15. As with all the other allegations about Detroit and Wayne County, these claims were objectively disproven. It was pure speculation to claim that "ineligible" ballots were counted, when, in fact, the City demonstrably followed election law and disallowed the tabulation of any ballot received after 8:00 p.m. on election day. Similarly, there was no legitimate basis for anyone to claim that signatures were not verified—a claim based entirely on statements that signatures were not being verified at the TCF Center—when verification occurred before the ballots were delivered to the TCF

---

[7] The Superior Court for the State of Delaware recently revoked Lin Wood's *pro hac vice* admission. *See Page v. Oath*, Case No. S20C-07-030, Memorandum Opinion & Order (Del Sup. Ct. Jan. 11, 2020). Ex. 17. There, like here, Wood sought to evade accountability by claiming he was not the "filing" attorney. *Id.*, *7. But the court found that contrary to his obligation "to file only cases which have a good faith basis in fact or law" his Georgia election lawsuit "was textbook frivolous litigation," with Wood's failure to review for accuracy "an error-ridden affidavit of an expert witness" "either mendacious or incompetent." *Id.*, *6. "The conduct of Mr. Wood [in pursuing frivolous election lawsuits], albeit not in my jurisdiction, exhibited a toxic stew or mendacity, prevarication and surprising incompetence. What has been shown in Court decisions of our sister States [Wisconsin and Georgia] satisfies me that it would be inappropriate and inadvisable to continue Mr. Wood's permission to practice before this Court." *Id.*, * 7.

Center. Plaintiffs and their counsel cannot hide behind the ignorance of challengers at the TCF Center or people who did not understand the process; they had a duty to investigate the veracity of the claims before regurgitating them.

- *Plaintiffs and their counsel also try to hide behind their expert reports.* That does not work, because, as outlined in Defendants' briefing in this case, the reports are not based in fact or supported by legitimate expert analysis. They are all tied together by a uniform disregard for the facts: absentee ballots were predicted to, and did, favor the Democratic candidates; in Michigan, where absentee ballots could not be counted before election day, the reporting of results for absentee ballots generally trail those for in-person votes; unofficial results are released in data "dumps" on election night and during the tabulation, rather than being updated on a continual basis; most urban areas in the country, including Detroit and Wayne County, strongly favor Democratic candidates for federal office; the preference of many voters change based on the conduct and policies of the candidates; Michigan uses paper ballots, so each and every one of Plaintiffs' claims can be tested by a hand recount or other audit of those ballots; no candidate demanded a recount; canvassing and recounting of paper ballots conclusively disproved claims that votes were changed in tabulating machines. All of these facts were ignored in order to make specious statistical analysis, comparing irrelevant data points, to get to a contrived pre-determined outcome.

16

Not satisfied with their original "experts," Plaintiffs now add a new report from John Lott, Jr. This new "expert," who was once a respected academic, is now well-known for academic fraud and various misrepresentations. Plaintiffs, of course, fail to note that as of January 5, 2021, Lott had admitted that the findings in much of his "paper" were "a mistake." Ex. 13. The one conclusion in his report that he has not conceded was wrong, essentially boils down to the nonsensical claim that a 1 or 2 percentage point "higher than expected," "unexplained" turnout in Wayne County and the other urban counties "targeted" in post-election lawsuits in Pennsylvania, Wisconsin, Arizona and Nevada, is proof of voter fraud.[8] Lott's sleight of hand is accomplished by inexplicably comparing Wayne County and the other urban counties sued post-election, not with other counties in the state (which also would not lead to accurate results) but with counties in other states which did not have "suspicious" counties (i.e. a county sued in one of the frivolous post-election lawsuits) and which had lower increases in voter turnout such as Florida, Ohio and North Carolina. So, if turnout increased in the counties targeted with election lawsuits (all of which are large urban counties with comparable racial demographics in states that went for Biden), as compared to states Trump won that had lower turnout increases, Lott concludes that there was voter fraud, even if the counties in

---

[8] It should be noted that the increase in turnout in Wayne County was approximately 10%, which is less than most other counties in the state. Ex. 14.

the lawsuits had lower increases than other counties in their own state. The only conclusion Lott could have reached in good faith is that his methodology was nonsensical.[9]

When Lott retracted his finding, he stated "when u make a mistake, u make a mistake." Ex. 13. That is correct. Statisticians (or those who pose as statisticians) make mistakes. Attorneys make mistakes. But, where you make countless "mistakes" and every single one is in favor of your preferred pre-determined outcome, you no longer get the benefit of the doubt. None of the lies in this lawsuit were made in mistake or out of ignorance. Plaintiffs' counsel knew exactly what they were doing and must be held to account.[10]

## III.   This Lawsuit Was Filed for Nefarious Purposes

Plaintiffs argue they did not file for "any improper purpose," or to harass the City, because "the City was not accused of conducting elections improperly ... It does not conduct elections for the President of the United States … States, through

---

[9] Because Lott couches his conclusions in statistical double-speak and unclear data points, the City is attaching a comprehensive dismantling co-authored by three highly respected academics from Stanford and the University of Chicago. Ex. 15.

[10] As argued in the City's opening brief, most of Plaintiffs' legal arguments were frivolous. Plaintiffs argue that it was not frivolous for them to assert they had standing as electors because the claim was novel in this Circuit and other circuits were split, with the Eighth alone in finding standing. The Eighth Circuit opinion was interpreting the contours of Minnesota's unique election law, not Michigan's. More importantly, there was no basis for Plaintiffs' counsel to pursue the legal theory where their underlying claims were false. There is no non-frivolous argument "for establishing new law" based on false allegations.

18

their counties, do … So while Detroit sits in Wayne County, and allegations were made concerning fraudulent election activity in that county, the City of Detroit has no role in the matter, and it should not have intervened." That is clearly false. Michigan elections are primarily conducted at the local level. M.C.L. § 168.801. Indeed, Michigan Court of Claims Judge Cynthia Stephens provided clear guidance on the issue, advising the plaintiffs in the first of this series of lawsuits that "the day-to-day operation of an absent voter counting board is controlled by the pertinent city or township clerk." *Donald J. Trump for President, Inc. et al v Benson*, Mich. Court of Claims Case No. 20-000225-MZ, Opinion and Order (Nov 6, 2020) Ex. 16. *All* the (false) allegations about election fraud in Wayne County were (false) allegations against the City of Detroit.[11]

That said, the fact that the City was not initially named in the lawsuit is of no moment. Rule 11(b)(1) does not limit sanctions to parties initially in a lawsuit. The Rule clearly states that sanctions can attach to any filing "presented for any improper purpose, such as to harass" and does not limit that improper purpose or harassment to a particular party. Fed. R. Civ. P. 11(b)(1). The improper purpose of the lawsuit

---

[11] Plaintiffs assert an evidentiary hearing is necessary to determine whether the lawsuit was file for an improper purpose, because credibility is best determined after an evidentiary hearing. This Court has more than sufficient information to reach a conclusion with each Rule 11 factor—counsels' actions and filings speak for themselves.

is obvious from the face of the lawsuit itself. A lawsuit this full of misstatements of fact and law could not possibly have been filed for anything other than an improper purpose. Plaintiffs' purpose was subverting democracy by obtaining judicial imprimatur to lend credence to baseless election conspiracy theories.[12]

January 26, 2021                              Respectfully submitted,

                                             **FINK BRESSACK**[13]

                                             By:    /s/ David H. Fink
                                             David H. Fink (P28235)
                                             Nathan J. Fink (P75185)
                                             *Attorneys for City of Detroit*
                                             38500 Woodward Ave., Ste. 350
                                             Bloomfield Hills, MI 48304
                                             Tel: (248) 971-2500
                                             dfink@finkbressack.com
                                             nfink@finkbressack.com

                                             **CITY OF DETROIT**
                                             **LAW DEPARTMENT**
                                             Lawrence T. Garcia (P54890)
                                             James D. Noseda (P52563)
                                             *Attorneys for City of Detroit*
                                             2 Woodward Ave., 5th Floor
                                             Detroit, MI 48226
                                             Tel: (313) 237-5037
                                             garcial@detroitmi.gov
                                             nosej@detroitmi.gov

---

[12] Plaintiffs' arguments all relate to Rule 11 sanctions, not disciplinary action. In fact, the only argument against disciplinary action under the local rules or the rules of professional conduct is their erroneous claim that those requests cannot be combined with a Rule 11 Motion.

[13] The "third rate five-man Detroit law firm" referenced by Plaintiffs. (ECF No. 95; PageID.4140)

20

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 26, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

**FINK BRESSACK**

By: */s/ Nathan J. Fink*
Nathan J. Fink (P75185)
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
nfink@finkbressack.com