UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KING, MARIAN ELLEN
SHERIDAN, JOHN EARL HAGGARD,
CHARLES JAMES RITCHARD, JAMES
DAVID HOOPER, and DARREN WADE
RUBINGH,

       Plaintiffs,

v

GRETCHEN WHITMER, in her official
capacity as Governor of the State of
Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of
State and the Michigan BOARD OF STATE
CANVASSERS,

       Defendants,

CITY OF DETROIT,
       Intervening Defendant,

ROBERT DAVIS,
       Intervening Defendant,

DEMOCRATIC NATIONAL
COMMITTEE and MICHIGAN
DEMOCRATIC PARTY,

       Intervening Defendants.

No. 2-20-cv-13134

HON. LINDA V. PARKER

MAG. R. STEVEN WHALEN

**DEFENDANTS WHITMER
AND BENSON'S MOTION
FOR SANCTIONS UNDER
28 U.S.C. § 1927**

_____

Sidney Powell (Texas Bar No. 16209700)
Attorney for Plaintiffs
Sidney Powell, P.C.
2911 Turtle Creek, Blvd
Dallas, TX 75219
(517) 763-7499
sidney@federalappeals.com

Stefanie Lambert Junttila (P71303)
Attorney for Plaintiffs
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 963-4740
attorneystefanielambert@gmail.com

Scott Hagerstrom (P57885)
Attorney for Plaintiffs
222 West Genesee
Lansing, MI 48933
(517) 763-7499
Scotthagerstrom @yahoo.com

Gregory J. Rohl (P39185)
Attorney for Plaintiffs
41850 West 11 Mile Road, Suite 110
Novi, Michigan 48375
248.380.9404
gregoryrohl@yahoo.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

David Fink (P28235)
Attorney for Intervenor City of Detroit
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
248.971.2500
dfrink@finkbressack.com

Mary Ellen Gurewitz (P25724)
Attorney for Intervenor DNC/MDP
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
313.204.6979
maryellen@cummingslawpllc.com

Scott R. Eldridge
Attorney for Intervenor DNC/MDP
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
517.483.4918
eldridge@millercanfield.com

Andrew A. Paterson (P18690)
Attorney for Intervenor Davis
2893 East Eisenhower Parkway
Ann Arbor, Michigan 48108
248.568.9712
Aap43@outlook.com

_____/

## DEFENDANTS WHITMER AND BENSON'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

Defendants Governor Gretchen Whitmer and Secretary of State Jocelyn Benson,[1] move for sanctions and an award of attorneys' fees pursuant to 28 U.S.C. § 1927 for the following reasons:

1.     Section 1927 states that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

2.     Under this statute, the attorney's subjective bad faith is not relevant because the court applies an objective standard, and "sanctions under section 1927 [are appropriate] when it determines that an attorney reasonably should know that a claim pursued is frivolous."  *Salkil v. Mount Sterling Tp. Police Dep't,* 458 F.3d

---

[1] Defendant Board of State Canvassers does not join in this motion.

520, 532 (6th Cir. 2006) (quoting *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir.1986)).

3.      The imposition of sanctions against Plaintiffs' counsel is warranted for two reasons under this statute.

4.      First, Plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings in this litigation by failing to dismiss the case when their claims became moot, which plainly occurred upon the vote of Michigan's electors on December 14, if not earlier.

5.      And second, Plaintiffs' counsel knew or should have known that their legal claims were frivolous, but counsel pursued them nonetheless, even after the Court's opinion concluding that Plaintiffs' were unlikely to succeed on the merits of their claims for multiple reasons.

6.      As a result, this Court should impose sanctions against Plaintiffs' counsel and award attorneys' fees to Defendants' counsel, the Michigan Department of Attorney General.

7.      Alternatively, or in addition to § 1927, this Court should exercise its inherent authority to sanction Plaintiffs' counsel and award attorneys' fees.

8.      Federal courts have "inherent power to assess attorney's fees against counsel who willfully abuse judicial processes or who otherwise act in bad faith." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 646 (6th Cir. 2006).

9.     Attorney's fees are appropriate where a court finds: "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (internal quotation marks and citations omitted).

10.     Here, Plaintiffs' claims of fraud in Michigan's election were unsupported by any credible evidence and their legal claims were without merit for numerous reasons, as explained by the Court in its December 7 opinion and order.  And Plaintiffs' counsel knew or should have known this to be the case.

11.     Further, Plaintiffs filed this litigation for an improper purpose.  This is amply demonstrated by Plaintiffs' counsels' filings and the manner in which they litigated this case.

12.     Indeed, it was never about winning on the merits of the claims, but rather Plaintiffs' purpose was to undermine the integrity of the election results and the people's trust in the electoral process and in government.

13.     The filing of litigation for that purpose is clearly an abuse of the judicial process and warrants the imposition of sanctions.

14.     Concurrence was sought for the relief requested in this motion but was not obtained.

For these reasons and the reasons stated more fully in the accompanying brief in support, Defendants Governor Gretchen Whitmer and Secretary of State

Jocelyn Benson respectfully request that this Honorable Court enter an Order

granting their motion for sanctions under 28 U.S.C. § 1927 or the Court's inherent

authority, and award attorneys' fees in the amount of $11,071.00 to the Michigan

Department of Attorney General.

<div style="margin-left:40%">

Respectfully submitted,

Dana Nessel
Attorney General

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
P55439

</div>

Dated:  January 28, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KING, MARIAN ELLEN
SHERIDAN, JOHN EARL HAGGARD,
CHARLES JAMES RITCHARD, JAMES        No. 2-20-cv-13134
DAVID HOOPER, and DARREN WADE
RUBINGH,                              HON. LINDA V. PARKER

      Plaintiffs,                 MAG. R. STEVEN WHALEN

v                                     **DEFENDANTS WHITMER**
                                      **AND BENSON'S BRIEF IN**
GRETCHEN WHITMER, in her official     **SUPPORT OF MOTION FOR**
capacity as Governor of the State of  **SANCTIONS UNDER**
Michigan, JOCELYN BENSON, in her      **28 U.S.C. § 1927**
official capacity as Michigan Secretary of
State and the Michigan BOARD OF STATE
CANVASSERS,

      Defendants,

CITY OF DETROIT,
      Intervening Defendant,

ROBERT DAVIS,
      Intervening Defendant,

DEMOCRATIC NATIONAL
COMMITTEE and MICHIGAN
DEMOCRATIC PARTY,
      Intervening Defendants.
_____

Sidney Powell (Texas Bar No. 16209700)
Attorney for Plaintiffs
Sidney Powell, P.C.
2911 Turtle Creek, Blvd
Dallas, TX 75219
(517) 763-7499
sidney@federalappeals.com

Stefanie Lambert Junttila (P71303)
Attorney for Plaintiffs
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 963-4740
attorneystefanielambert@gmail.com

Scott Hagerstrom (P57885)
Attorney for Plaintiffs
222 West Genesee
Lansing, MI 48933
(517) 763-7499
Scotthagerstrom@yahoo.com

Gregory J. Rohl (P39185)
Attorney for Plaintiffs
41850 West 11 Mile Road, Suite 110
Novi, Michigan 48375
248.380.9404
gregoryrohl@yahoo.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

David Fink (P28235)
Attorney for Intervenor City of Detroit
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
248.971.2500
dfrink@finkbressack.com

Mary Ellen Gurewitz (P25724)
Attorney for Intervenor DNC/MDP
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
313.204.6979
maryellen@cummingslawpllc.com

Scott R. Eldridge
Attorney for Intervenor DNC/MDP
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
517.483.4918
eldridge@millercanfield.com

Andrew A. Paterson (P18690)
Attorney for Intervenor Davis
2893 East Eisenhower Parkway
Ann Arbor, Michigan 48108
248.568.9712
Aap43@outlook.com

_____/

## DEFENDANTS WHITMER AND BENSON'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

Dana Nessel
Attorney General

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

Dated:  January 28, 2021

# TABLE OF CONTENTS

<div align="right">Page</div>

Table of Contents ................................................................................ i

Index of Authorities .......................................................................... iii

Concise Statement of Issue Presented ................................................... v

Introduction ...................................................................................... 1

Statement of Facts ............................................................................. 3

    A.    Michigan certifies the November election. ........................... 3

    B.    Plaintiffs file suit and the Court denies their motion for injunctive relief on numerous grounds. ................................. 4

    C.    Plaintiffs continue to press their claims despite the Court's ruling and subsequent events rendering the case moot. ........... 6

Argument ......................................................................................... 11

I.    Defendants Governor Whitmer and Secretary Benson are entitled to sanctions and an award of attorneys' fees under 28 U.S.C. § 1927 after Plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings in this frivolous case.  Alternatively, this Court should exercise its inherent authority to impose sanctions and award attorneys' fees in favor of these Defendants. ............................... 11

    A.    Defendants are entitled to sanctions under 28 U.S.C. § 1927 ............ 11

        1.    Standards for granting sanctions under § 1927 ................. 11

        2.    Plaintiffs' counsel unreasonably and vexatiously perpetuated moot and frivolous claims. ................... 12

    B.    Alternatively, this Court should exercise its inherent authority and award attorneys' fees to Defendants where Plaintiffs' counsel abused the judicial process. .................................. 21

        1.    Standards for granting fees under the Court's inherent authority. ................................................. 21

<div align="center">i</div>

       2.      Plaintiffs' claims were meritless, their counsel should have known this, and their real motive in filing suit was for an improper purpose...........................................................22

   C.    This Court should award attorneys' fees to the Michigan Department of Attorney General.........................................27

Conclusion and Relief Requested ............................................................30

Certificate of Service ...............................................................................31

ii

# INDEX OF AUTHORITIES

Page

**Cases**

*Big Yank Corp. v. Liberty Mut. Fire Ins. Co.* 125 F.3d 308 (6th Cir. 1997) .......5, 22

*Dahnke v. Teamsters Local 695,* 906 F.2d 1192 (7th Cir. 1990) ...........................16

*In re Ruben,* 825 F.2d 977 (6th Cir. 1987) .............................................................12

*Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986) ..................... 4, 1, 12, 21

*Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223 (7th Cir. 1984) ..........................21

*McLeod v. Kelly*, 810 Mich 120 (1942) .................................................................18

*Parrish v. Bennett,* No. 3:20-CV-275, 2020 WL 7641185 (M.D. Tenn. Dec. 23, 2020) ..........................................................................................................28

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642 (6th Cir. 2006) ...................................................................................... 4, 16, 21

*Ruben v. Warren City Sch.*, 825 F.2d 977 (6th Cir. 1987) ......................................16

*Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir.1997) ........................ 12, 21, 27

*Salkil v. Mount Sterling Tp. Police Dep't,* 458 F.3d 520 (6th Cir. 2006) ........ 12, 18

*United States v. Perfecto*, No. 1:06-cr-20387-JDB-2, 2010 WL 11602757 (W.D. Tenn. July 21, 2010) ................................................................................27

**Statutes**

Mich. Comp. Laws § 168.43 .....................................................................................3

Mich. Comp. Laws § 168.22 .....................................................................................3

Mich. Comp. Laws § 168.46 .....................................................................................4

Mich. Comp. Laws § 168.47 .....................................................................................8

Mich. Comp. Laws § 168.794a ...............................................................................18

Mich. Comp. Laws § 168.801 ................................................................3

Mich. Comp. Laws § 168.821 ...........................................................3, 17

Mich. Comp. Laws § 168.822 ...........................................................3, 17

Mich. Comp. Laws § 168.842(1) ............................................................3

Mich. Comp. Laws § 168.879 ...............................................................17

Mich. Comp. Laws § 168.879(1)(c) .........................................................3

Mich. Comp. Laws § 168.879(1)(g) .......................................................17

**Rules**

L.R. 7.1(e)(1)(B) ................................................................................16

**Constitutional Provisions**

28 U.S.C. § 1927 ....................................................................... *passim*

3 U.S.C. § 5 .....................................................................................5

3 U.S.C. § 6 .....................................................................................4

3 U.S.C. § 7 .....................................................................................8

42 U.S.C. § 1983 .............................................................................5

## CONCISE STATEMENT OF ISSUE PRESENTED

1.   Whether Defendants Whitmer and Benson's motion for sanctions
     should be granted and an award of attorneys' fees entered in favor of
     the Michigan Department of Attorney General under 28 U.S.C. §
     1927 or under the Court's inherent authority to award fees where
     Plaintiffs' counsel unreasonably multiplied the proceedings in this
     case and abused the judicial process?

# INTRODUCTION

An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise "unreasonable and vexatious." Accordingly, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney.[1]

Plaintiffs' counsel—Sidney Powell, Stefanie Lambert Junttila, Greg Rohl, and Scott Hagerstrom—lost sight of the professional duties owed to this Court and to the public in pursuing this litigation.  Filed at the eleventh hour and repeating allegations of election fraud supported by nothing more than speculation and conjecture, Plaintiffs' counsel pursued legal claims that they knew or should have known were frivolous.  Further, Plaintiffs' counsel unreasonably and vexatiously extended this case by failing to dismiss when it was clearly moot by their own acknowledgement.  As a result, imposing sanctions is entirely appropriate and warranted in this matter.  28 U.S.C. § 1927.

This Court also has inherent authority to impose sanctions and award attorneys' fees where counsel pursues frivolous claims and does so for an improper purpose.  Again, Plaintiffs' complaint offered nothing more than conspiracy

---

[1] *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).

theories unaccompanied by any actual evidence of fraud affecting the results of Michigan's presidential election.  Where their legal claims were frivolous, and the timing of the lawsuit and the nature of the relief requested suspect, it is plain counsels' motive in filing suit was improper.  This Court recognized as much, stating in its earlier opinion that this "lawsuit seems to be less about achieving the relief Plaintiffs seek . . . and more about the impact of their allegations on People's faith in the democratic process and their trust in our government."  (ECF No. 62, Op. & Order, PageID.3329-3330.)

The Court was right.  The apparent purpose of this case—one of Ms. Powell's "Kraken" lawsuits—was to foment distrust in the process and provide a false narrative upon which individuals could advocate for overturning Michigan's vote.[2]  This was a clear abuse of the judicial process, and Plaintiffs' counsel should be sanctioned as a result.

---

[2] *See* Sidney Powell's 'Kraken' Voter Fraud Lawsuits Ridiculed by Legal Experts Over Typos, Lack of Evidence, 11/26/20, available at https://www.newsweek.com/sidney-powell-kraken-lawsuit-typo-voter-fraud-1550534 (accessed January 28, 2021.)

## STATEMENT OF FACTS

**A.    Michigan certifies the November election.**

Michigan, like the other states and the District of Columbia, held an election on November 3, 2020 to select electors for president and vice president.  See Mich. Comp Laws § 168.43.

Michigan's city and township clerks began canvassing results immediately after the polls closed on November 3.  Mich. Comp. Laws § 168.801.  The boards of county canvassers commenced canvassing two days later, and the 83 county boards completed their canvasses by November 17.  Mich. Comp. Laws §§ 168.821, 168.822.

Defendant Board of State Canvassers, a bi-partisan board, see Mich. Comp. Laws § 168.22, was required to meet by the twentieth day after the election to certify the results.  Mich. Comp. Laws § 168.842(1).  The Board met on November 23 and certified the statewide results by a 3-0 vote.[3]  President-elect Joe Biden defeated President Donald Trump by 154,188 votes.[4]  No presidential candidate requested a recount within the time permitted.  See Mich. Comp. Laws § 168.879(1)(c).

---

[3] *See* 11/23/20 Draft Meeting Minutes, Board of State Canvassers, available at https://www.michigan.gov/documents/sos/112320_draft_minutes_708672_7.pdf, (accessed January 28, 2021.)

[4] *See* November 2020 General Election Results, available at https://mielections.us/election/results/2020GEN_CENR.html., (accessed January 28, 2021.)

"As soon as practicable after the state board of canvassers has" certified the results, the Governor must certify the presidential electors to the Archivist for the United States.  Mich. Comp. Laws § 168.46; 3 U.S.C. § 6.[5]  Defendant Governor Whitmer certified the electors the same day the Board certified the results.[6]

### B.    Plaintiffs file suit and the Court denies their motion for injunctive relief on numerous grounds.

Late in the evening on November 25 and the day before Thanksgiving, Plaintiffs, several Republican Party electors and operatives, filed their complaint for declaratory and injunctive relief in this Court against Michigan Secretary of State Jocelyn Benson, Governor Whitmer, and the Board of State Canvassers. (ECF No. 1, PageID.1.)  Plaintiffs alleged widespread fraud in the distribution, collection, and counting of ballots in Michigan, as well as violations of state law as to certain election challengers and the manipulation of ballots through corrupt election machines and software.  (*Id.*)  Four days later, Plaintiffs filed an amended complaint (ECF No. 6, Am. Compl., PageID.872), an emergency motion for declaratory and injunctive relief on November 29, 2020 (ECF No. 7, Mot., PageID.1832), and an emergency motion to seal.  (ECF No. 8. PageID.1850.)

---

[5] Although Michigan's statute continues to refer to the U.S. Secretary of State, under 3 U.S.C. § 6 the Certificate of Ascertainment is sent to the Archivist of the United States.

[6] *See* Michigan's Certificate of Ascertainment, available at https://www.archives.gov/files/electoral-college/2020/ascertainment-michigan.pdf, (accessed January 28, 2021.)

Plaintiffs asserted in their injunctive motion that relief "must be granted in advance of December 8, 2020." (ECF No. 7, Plfs' Mot, PageID.1846).[7]

Plaintiffs' amended complaint consisted of over 200 numbered paragraphs and over 900 additional pages of affidavits and other documents, in which they raised the same litany of perceived fraud and irregularities that had been alleged in other Michigan cases and rejected by the courts. (ECF No. 6, Am. Compl., PageID.872.) Plaintiffs alleged three claims pursuant to 42 U.S.C. § 1983: (Count I) violation of the Elections and Electors Clauses; (Count II) violation of the Fourteenth Amendment Equal Protection Clause; and (Count III) denial of the Fourteenth Amendment Due Process Clause. (ECF No. 6, PageID.882.) In Count IV, Plaintiffs alleged violations of the Michigan Election Law. (*Id.*)

On December 1, motions to intervene were filed by the City of Detroit (ECF No. 15, PageID.2090), Robert Davis (ECF No. 12, PageID.1860), and the Democratic National Committee and Michigan Democratic Party ("DNC/MDP"). (ECF No. 14, PageID.1878.) On December 2, the Court granted the motions to intervene. (ECF No. 28, Page ID.2142.) Defendants filed response briefs with respect to Plaintiffs' emergency motions by 8:00 p.m. the same day. (ECF Nos. 29, 31, 32, 34, 35, 36, 37, 39, 49, 50.)

---

[7] Under federal law, the "safe harbor" provision regarding Michigan's certification of electors was set to activate on December 8. *See* 3 U.S.C. § 5.

On December 7, 2020, this Court entered an opinion and order denying Plaintiffs' emergency motion for injunctive relief, holding that Plaintiffs failed to demonstrate a likelihood of success on the merits of their claims for numerous reasons.  (ECF No. 62, Op. & Order, PageID.3301–3328.)  The Court further concluded that the irreparable harm, balance of harm, and public interest factors weighed against granting relief.  (*Id*. at PageID.3329.)

### C.   Plaintiffs continue to press their claims despite the Court's ruling and subsequent events rendering the case moot.

The next day, December 8, Plaintiffs filed a notice of appeal to the Sixth Circuit Court of Appeals.  (ECF No. 64, PageID.333.)  But Plaintiffs did not move to expedite their appeal, likely because the State of Texas moved to file an original action against Michigan and several other "swing" states in the U.S. Supreme Court on December 7, alleging similar allegations of widespread fraud in Michigan's general election, and requesting that the Supreme Court overturn Michigan's certified results.  See *Texas* v. *Pennsylvania, et al*., 20-22O155.  But on December 11, the Supreme Court denied Texas's motion "for lack of standing under Article III of the Constitution" because "Texas ha[d] not demonstrated a

judicially cognizable interest in the manner in which another State conducts its elections."[8]

Plaintiffs then pivoted and filed a petition for certiorari in the Supreme Court on December 11, seeking to bypass review of this Court's opinion by the Sixth Circuit. *See* U.S. Supreme Court No. 20-815.[9]  Plaintiffs did not move to expedite their petition at that time.[10]

Three days later, on December 14, and as required by law, Michigan's presidential electors "convene[d]" in the State's capitol and cast their votes for

---

[8] *See* order dated December 11, 2020, in Case No. 20-22O155, available at https://www.supremecourt.gov/orders/courtorders/121120zr_p860.pdf (accessed January 28, 2021.)

[9] Docket sheet and filings available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-815.html.

[10]  Plaintiffs submitted to the Supreme Court a "preliminary report" of a purported forensic exam of a single Dominion Voting Systems tabulator used in Antrim County, Michigan, and generated in connection with pending litigation in *Bailey v. Antrim County, et al.*, Antrim Circuit Court No. 20-9238. The report was released on December 14 and is not part of the record here. But this report has largely been repudiated.  *See* Antrim County audit shows 12-vote gain for Trump, 12/17/20, The Detroit News, available at https://www.detroitnews.com/story/news/local/michigan/2020/12/17/antrim-county-audit-shows-12-vote-gain-trump/3938988001/ (accessed January 28, 2021.) And Michigan legislators have stated that there is no evidence of fraud perpetuated by Dominion Voting Systems.  *See, e.g.*, statement by State Senator Ed McBroom, available at https://www.detroitnews.com/story/news/local/michigan/2020/12/17/antrim-county-audit-shows-12-vote-gain-trump/3938988001/ (accessed January 28, 2021).

President-elect Biden.  Mich. Comp. Laws § 168.47; 3 U.S.C. § 7.[11]  They did so

under heavy security in light of credible threats of violence that required the capitol

and other state buildings be closed to the public.[12]

On the same day and outside Michigan's capitol, presidential electors

selected by the Republican Party, presumably including some of the Plaintiffs

herein, sought access to the capitol in order to cast alternate votes for President

Trump.  They were not allowed access to the building, however, because there is

no process for permitting the unsuccessful electors to cast their votes.[13]

Furthermore, leadership for both the Michigan House of Representatives and the

Michigan Senate had indicated that the results of the election and the presidential

electors' must stand under the law.[14]

---

[11] *See* Michigan's Certificate of the Votes, available at
https://www.archives.gov/files/electoral-college/2020/vote-michigan.pdf (accessed
January 28, 2021.)

[12] *See* Michigan Gov. Whitmer Addresses Security Threat to Electoral College
Vote, 12/14/20, National Public Radio, available at
https://www.npr.org/sections/biden-transition-
updates/2020/12/14/946243439/michigan-gov-whitmer-addresses-security-threat-
to-electoral-college-vote (accessed January 28, 2021.)

[13] *See* Michigan Republicans who cast electoral votes for Trump have no chance of
changing Electoral College result, 12/15/20, MLIVE, available at
https://www.mlive.com/public-interest/2020/12/michigan-republicans-who-cast-
electoral-votes-for-trump-have-no-chance-of-changing-electoral-college-
result.html (accessed January 28, 2021.)

[14] *Id.*

Days later, on December 18, Plaintiffs moved to expedite their petition for certiorari in the Supreme Court and to consolidate it with another pending petition.[15]  Defendants Whitmer, Benson and the Board filed a response in opposition to Plaintiffs' motion.[16]

Back in this Court, on December 22, Defendants Whitmer, Benson and the Board, (ECF No. 70, Defs' Mot. & Brf., PageID.3350-3428), along with Intervening Defendants City of Detroit, the DNC and the MDP, filed motions to dismiss the case.

On January 6, 2021, Congress convened in a joint session as required by 3 U.S.C. § 15 to count the electoral votes of the fifty states and the District of Columbia.  Despite the shocking events that later occurred, in the early hours of January 7, Congress counted Michigan's 16 electoral votes for President-elect Biden.  And at the end of the joint session, Mr. Biden was certified the winner and the new President.  With that declaration, the November 3, 2020, presidential election concluded.

Not surprisingly, the Supreme Court thereafter denied Plaintiffs' motion to expedite their appeal on January 11, 2021 in a short order.[17]

---

[15] Docket sheet and filings available at
https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-815.html.
[16] *Id.*
[17] *Id.*

The next day, back in this Court, Plaintiffs requested an extension until January 19 to respond to the motions to dismiss, (ECF No. 82), and the City of Detroit filed a response in opposition (ECF No. 83). By text order, this Court granted Plaintiffs an extension until January 14, 2021.

On January 14, instead of responding to the motions to dismiss, Plaintiffs filed notices of voluntary dismissal under Rule 41 as to all Defendants except Robert Davis (who had answered the amended complaint). (ECF Nos. 86 through 91.) Subsequently, Plaintiffs moved for a voluntary dismissal as to Davis. (ECF No. 92.)

Notably, also on January 14, Defendants Whitmer, Benson, and the Board, as well as the City of Detroit, filed responses in opposition to Plaintiffs' petition in the Supreme Court since Plaintiffs had not withdrawn or dismissed that appeal despite the vote in Congress seven days earlier.[18]

Defendants Governor Whitmer and Secretary Benson now bring the instant motion for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority to sanction counsel and award attorneys' fees.[19]

---

[18] *Id.*

[19] Defendant Board of State Canvassers does not join in this motion.

## ARGUMENT

I.   **Defendants Governor Whitmer and Secretary Benson are entitled to sanctions and an award of attorneys' fees under 28 U.S.C. § 1927 after Plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings in this frivolous case. Alternatively, this Court should exercise its inherent authority to impose sanctions and award attorneys' fees in favor of these Defendants.**

Plaintiffs' counsel, Michigan attorneys Greg Rohl (P39185), Richard Scott Hagerstrom (P57885), and Stefanie Lambert Juntilla (P71303), and Texas attorney Sydney Powell (Texas Bar No. 16209700), should be sanctioned under 28 U.S.C. § 1927, and an award of attorneys' fees be entered in this matter. Alternatively, or in addition to § 1927, this Court should impose sanctions and award fees pursuant to its inherent authority.

### A.   Defendants are entitled to sanctions under 28 U.S.C. § 1927.

#### 1.   Standards for granting sanctions under § 1927.

Defendants seek sanctions under 28 U.S.C. § 1927. That statute states that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Under this statute, the attorney's subjective bad faith is not relevant because the court applies an objective standard, and "sanctions under section 1927 [are appropriate] when it determines that an attorney reasonably should know that a claim pursued is frivolous." *Salkil v. Mount Sterling Tp. Police Dep't,* 458 F.3d

11

520, 532 (6th Cir. 2006) (quoting *Jones v. Continental Corp.,* 789 F.2d 1225, 1230

(6th Cir.1986)).  "Simple inadvertence or negligence, however, will not support

sanctions under § 1927."  *Salkil*, 458 F.3d at 532 (citing *Ridder v. City of*

*Springfield,* 109 F.3d 288, 298 (6th Cir.1997).)  " 'There must be some conduct on

the part of the subject attorney that trial judges, applying collective wisdom of their

experience on the bench could agree falls short of the obligations owed by a

member of the bar to the court.' "  *Id.* (quoting *Ridder*, 109 F.3d at 298, quoting *In*

*re Ruben,* 825 F.2d 977, 984 (6th Cir. 1987)).

### 2.     Plaintiffs' counsel unreasonably and vexatiously perpetuated moot and frivolous claims.

In denying Plaintiffs' emergency motion for declaratory and injunctive

relief, this Court concluded that the Eleventh Amendment barred Plaintiffs' claims,

including their state-law claims; that their claims were moot; that their claims were

barred by laches; that abstention applied; that Plaintiffs lacked standing to bring

their equal protection, Electors Clause and Elections Clause claims; and that as a

result Plaintiffs had no likelihood of succeeding on the merits of their claims.

(ECF No. 62, Op. & Order, PageID.3301-3328.)

In addressing mootness, this Court observed, "[t]he time has passed to

provide most of the relief Plaintiffs request in their Amended Complaint; the

remaining relief is beyond the power of any court."  *Id*., PageID.3307.  The Court

summarized the relief Plaintiffs' requested in their amended complaint:

12

> Plaintiffs ask the Court to: (a) order Defendants to decertify the results
> of the election; (b) enjoin Secretary Benson and Governor Whitmer
> from transmitting the certified election results to the Electoral
> College; (c) order Defendants "to transmit certified election results
> that state that President Donald Trump is the winner of the election";
> (d) impound all voting machines and software in Michigan for expert
> inspection; (e) order that no votes received or tabulated by machines
> not certified as required by federal and state law be counted; and, (f)
> enter a declaratory judgment that mail-in and absentee ballot fraud
> must be remedied with a manual recount or statistically valid
> sampling. (ECF No. 6 at Pg ID 955-56, ¶ 233.)

*Id.*, PageID.3308.  The Court observed that "[w]hat relief [it] could grant Plaintiffs

is no longer available."  *Id.*  As the Court recognized, all 83 Michigan Counties

and the Defendant Board of State Canvassers had certified the election results, and

Defendant Whitmer had already certified Michigan's electors before Plaintiffs

even filed their lawsuit.  *Id.*  Further, the time had also run for challenging the

election based on voting equipment errors and for seeking a recount under

Michigan's statutory processes.  *Id.*, PageID.3309.  Indeed, Plaintiffs could have

requested a recount under Michigan Election Law, but did not, asking this Court to

order one instead.  As the Court noted, "[a]ny avenue for this Court to provide

meaningful relief has been foreclosed," and thus "Plaintiffs' requested relief

concerning the 2020 General Election is moot."  *Id.*, PageID.3309-3310.

The Court rendered this decision on December 7, Plaintiffs filed a notice of

appeal to the Sixth Circuit on December 8, and then did nothing to advance that

appeal.  (ECF No. 64, PageID.3332.)  They waited three days and then filed their

petition for certiorari on December 11, and then waited another seven days to move to expedite their petition before the Supreme Court. That was four days after Michigan's electors had voted, an act Plaintiffs sought to enjoin.

Notably, in their petition for certiorari, Plaintiffs and their counsel recognized that their claims would be moot absent expedited consideration by that Court. They noted they sought "immediate preliminary relief . . . to maintain the status quo *so that the passage of time and the actions of [Defendants] do not render the case moot*, depriving [the Supreme] Court of the opportunity to resolve the weighty issues presented herein and [Defendants] of any possibility of obtaining meaningful relief." (Ex. A, Petition w/o exs, p. 1) (emphasis added.)

Plaintiffs asked the Supreme Court to "exercise its authority to issue the writ of certiorari and stay the vote for the Electors in Michigan," to "stay or set aside the results of the 2020 General Election in Michigan," and to "stay the Electoral College Vote[.]" (*Id*., pp 10, 15-16.) Similarly, they argued that "the Michigan results must be decertified, [and] the process for seating electors stayed[.]" (*Id*., p. 17.) They requested an "injunction prohibiting the State Respondents from transmitting the certified results[.]" (*Id*., p. 22.) In their conclusion, they asked the Supreme Court to enter an emergency order "instructing [Defendants] to de-certify the results of the General Election for the Office of President," or alternatively to order Defendants "to certify the results of the General Election for Office of the

President in favor of President Donald Trump." (*Id.*, p 31.)  Plaintiffs expressly

acknowledged to that Court that "[*o*]*nce the electoral votes are cast, subsequent*

*relief would be pointless*," and "*the petition would be moot*."  (*Id.*, pp. 7, 15)

(emphasis added.)

Thus, to the extent the case was not already moot as this Court held on

December 7, Plaintiffs and their counsel knew that this case would be moot once

the electors voted on December 14.  Yet, that date came and went with no

acknowledgement by Plaintiffs and their counsel to Defendants or this Court.  As a

result, Defendants Whitmer, Benson and the Board were required to follow

through with filing a first responsive pleading to Plaintiffs' amended complaint on

December 22.  Defendants filed a motion to dismiss in lieu of answering.  (ECF

No. 70, Defs' Mot. & Brf., PageID.3350-3428).

In response to defense counsel's e-mail to Plaintiffs' counsel seeking

concurrence in their motion to dismiss, Plaintiffs' counsel Ms. Lambert Junttila

responded that since "[t]his case is on appeal to the Sixth Circuit and to the United

States Supreme Court," Plaintiffs' counsel was "not in a position to respond to [the

request for concurrence] until these appeals are decided," and counsel did "not

believe [this Court] has jurisdiction to consider [Defendants'] motion while the

case is on appeal."  (Ex. B, 12/22/20 email.)  This statement by Plaintiffs' counsel

was of course incorrect since no stay had been entered by this Court, by the Sixth

Circuit, or by the Supreme Court in this case. In fact, Plaintiffs did not move for a stay of this case in any court. Plaintiffs' counsel presumably realized their error as they subsequently asked for an extension of time to respond to Defendants' motion on January 12, 2021, (ECF No. 82), the day their response was due under the court rule. *See* L.R. 7.1(e)(1)(B). And then, two days later, Plaintiffs' counsel filed the voluntary dismissal as to Defendants instead of responding—a month after the vote of the electors on December 14 and eight days after Congress voted.

Again, § 1927 sanctions are appropriate where "an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.' " *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 646 (6th Cir. 2006) (quoting *Ruben v. Warren City Sch.*, 825 F.2d 977, 984 (6th Cir. 1987)). Such sanctions are intended to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios*, 465 F.3d at 646. Section 1927 has been interpreted "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable." *Dahnke v. Teamsters Local 695,* 906 F.2d 1192, 1201 n. 6 (7th Cir.1990). An attorney who is sanctioned pursuant to this statute must "personally satisfy the excess costs attributable to his [or her] misconduct." *Red Carpet Studios*, 465 F.3d at 646.

16

Here, Plaintiffs' case was not well-taken from its inception. As the Court noted, Plaintiffs' requested relief was nearly moot before their case was even filed. All votes, in-person or by absentee ballot, had been counted by the local clerks and canvassed by the county clerks by November 17, 2020. Mich. Comp. Laws §§ 168.821, 168.822. And once absentee ballots are taken out of their return envelopes, there is no longer any way to tie the ballot to the voter who voted it, and there is no way to tell an in-person ballot from an absentee voter ballot. The ballots become anonymous (unless the ballot was marked as a challenged ballot) once they are processed and counted. Again, the county canvasses were all completed by November 17.

The Defendant Board of State Canvassers certified the statewide election results on November 23, and the Governor sent the certificates of ascertainment the same day. The former President and/or his representatives had until 4:34 p.m. on November 25, to file for a recount based on claims of fraud or mistake in the canvass. *See* Mich. Comp. Laws § 168.879.[20] Notably, a recount need not be requested of the entire state; rather, recounts can be requested in the jurisdictions in which fraud or mistake is alleged to have occurred, i.e., Wayne County or the City of Detroit. Mich. Comp. Laws § 168.879(1)(g). But no authorized person

---

[20] Announcement of recount deadlines, 11/23/20, available at https://www.michigan.gov/documents/sos/112320_Recount_Announcement_708670_7.pdf (accessed January 28, 2021.)

requested a presidential recount, even though a recount is the mechanism for

determining errors. *See, e.g*, *McLeod v. Kelly*, Mich 120, 129 (1942)

(acknowledging that the plaintiff claimed mistakes and irregularities occurred in

conducting an election, but that those were issues "to be determined only by a

recount"). Instead, Plaintiffs requested that this Court order a recount, even though

the former President had not requested one. Plaintiffs also requested that the Court

impound all voting machines. But the cities, townships, and counties all own

and/or possess custody of their voting machines, *see* Mich. Comp. Laws §

168.794a and 794b, Defendants Whitmer, Benson, and the Board, the original

Defendants, do not have custody or control over any voting machines. So,

Plaintiffs did not even sue the right parties with respect to that claim for relief.

There simply was no practical or effective legal relief this Court could

provide at the time the original complaint was filed on November 25.

Nevertheless, five days later, Plaintiffs' counsel filed an amended complaint and

"emergency" motions for injunctive relief and to file documents under seal on

November 30. Defendants were ordered to respond to Plaintiffs' emergency

motions by 8:00 p.m. on December 2, which Defendants did. Plaintiffs' counsel

should reasonably have known by that time that pursuing relief on their claims was

frivolous. *Salkil*, 458 F.3d at 532. By filing the amended complaint and the

emergency motions when this case was already moot, Plaintiffs' counsel

unreasonably and vexatiously multiplied the proceedings in this matter and caused unnecessary expense to the undersigned counsel and the Michigan Department of Attorney General.

And if that was not true by December 2, it was certainly true by December 14 after Michigan's electors had voted.  As discussed above, Plaintiffs' counsel represented to this Nation's highest court that their claims would be moot after Michigan's electors voted.  But still, Plaintiffs and their counsel did not dismiss this case, thereby necessitating the filing of motions to dismiss on December 22. Of course, Defendants did so only to have Plaintiffs' counsel voluntarily dismiss the case when it came time for their response.  Again, by refusing to timely dismiss this case as moot, Plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings and caused unnecessary expense to the undersigned counsel and the Department of Attorney General.

In addition to this case being moot from the beginning (or barred by laches), Plaintiffs' substantive claims were likewise frivolous.  As demonstrated by the responses to Plaintiffs' emergency motion for injunctive relief filed by the instant Defendants, (ECF No. 31), the City of Detroit, (ECF No. 36,) and the DNC and MDP, (ECF No. 39), Plaintiffs' claims suffered from numerous procedural or prudential deficiencies.  Further, Plaintiffs simply failed to plead viable Election Clause and Electors Clause claims, or equal protection and due process claims.

This Court, given the time that it had, walked carefully through each of these issues in denying Plaintiffs' emergency motion for injunctive relief.  (ECF No. 62, Op. & Order, PageID.3301-3328.)

Even if it could be said that Plaintiffs' counsel did not reasonably know that their claims were not well pled at the time the complaints were filed, certainly that cannot be true after this Court's comprehensive December 7 opinion and order. Indeed, this Court called Plaintiffs' and their counsel out multiple times in the opinion as to the weakness of their legal claims and the lack of factual support.

As to the lack of factual support, the Court observed that Plaintiffs' claims of mishandled ballots, improper counting, and vote switching were based on the "belief[s]" of various affiants, which are not evidence.  (*Id*., PageID.3326 n 9, 3327-3328.)  "The closest Plaintiffs get to alleging that election machines and software changed votes for President Trump to Vice President Biden in Wayne County is an amalgamation of theories, conjecture, and speculation that such alterations were *possible*."  (*Id*., PageID.3327-3328.)  The Court concluded that "[w]ith nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden, Plaintiffs' equal protection claim fail[ed]."  (*Id*., PageID.3328.)

Nevertheless, Plaintiffs' counsel pursued the case against Defendants "long after it should have become clear that the claims lacked any plausible factual [or

20

legal] basis." *Ridder,* 109 F.3d at 298 (citing *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir.1986) (citing with approval a Seventh Circuit case affirming § 1927 sanctions where "an attorney, though not guilty of conscious impropriety, 'intentionally ... [pursues] a claim that lacks plausible legal or factual basis.' ") (quoting *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 226-27 (7th Cir.1984)) (alteration in *Jones*).  By pursuing this case after this Court's December 7 opinion, Plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings and caused unnecessary expense to the undersigned counsel and the Department of Attorney General.

Here, counsels' zealousness clearly clouded their legal judgment and led them to engage in tactics that fell far short of the obligations they owed this Court as licensed attorneys. *Ridder*, 109 F.3d at 298.  As a result, Defendants Whitmer and Benson request that Plaintiffs' counsel be sanctioned under § 1927.

**B.  Alternatively, this Court should exercise its inherent authority and award attorneys' fees to Defendants where Plaintiffs' counsel abused the judicial process.**

Alternatively, or in addition to § 1927, this Court should impose sanctions on Plaintiffs' counsel pursuant to its inherent authority.

**1.  Standards for granting fees under the Court's inherent authority.**

Federal courts have "inherent power to assess attorney's fees against counsel who willfully abuse judicial processes or who otherwise act in bad faith." *Red*

*Carpet Studios*, 465 F.3d at 646.  Attorney's fees are appropriate where a court finds: "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment."  *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (internal quotation marks and citations omitted).

> **2.  Plaintiffs' claims were meritless, their counsel should have known this, and their real motive in filing suit was for an improper purpose.**

For the reasons already discussed above, Plaintiffs' claims were meritless, and Plaintiffs' counsel knew or should have known this to be so.  Further, Defendants submit that Plaintiffs' and counsels' motive in filing this suit was for an improper purpose.  This is amply demonstrated by Plaintiffs' counsels' filings and the manner in which they litigated this case.

First, there is the issue of timing.  As the Court noted in its laches analysis, Plaintiffs "showed no diligence in asserting" their claims, and could have brought their claims regarding election challengers, ballot processing or tabulating errors, and "glitches" in election machines and software before Election Day or shortly thereafter, but certainly before the election results were certified.  (ECF No. 62, Op. & Order, PageID.3311.)  But Plaintiffs proffered "no persuasive explanation as to why they waited so long to file this suit."  *Id*.  And "where there is no reasonable

explanation, there can be no true justification." *Id*. Indeed, "Plaintiffs could have lodged their constitutional challenges much sooner than they did, and certainly not three weeks after Election Day and one week after certification of almost three million votes." (*Id*., PageID.3313.)

Second, there is the issue of the relief requested. As this Court noted, the relief Plaintiffs sought was "stunning it its scope and breathtaking in its reach. If granted, the relief would disenfranchise the votes" of millions of Michigan voters. (*Id*., PageID.3296.) Indeed, Plaintiff sought to "undo what ha[d] already occurred" with respect to the certification of the election results and the electors, and "[t]o the extent Plaintiffs ask[ed] the Court to certify the results in favor of President Donald J. Trump, such relief [was] beyond its powers." (*Id*., PageID.3306 & n 2.) And Plaintiffs sought this relief, despite the fact Michigan's Election Law provides a specific mechanism for challenging results based on fraud or mistake—a recount. As the Court observed, "Plaintiffs ask[ed] this Court to ignore the orderly statutory scheme established to challenge elections and to ignore the will of millions of voters." (*Id*., PageID.3330.)

Third, there is the issue of the factual underpinnings of Plaintiffs' lawsuit. As Defendants noted in their response to Plaintiffs' emergency motion for injunctive relief, virtually all the fraud and irregularities alleged by Plaintiffs to have occurred in the City of Detroit or elsewhere were already at issue in pending

state cases, and had been explained and/or rejected by the courts.  (ECF No. 31,

Defs Resp, PageID.2162, 2173, 2191-2203; *see also* ECF No. 31-2, PageID.2232;

ECF No. 31-3, PageID.2244; ECF No. 31-7, PageID.2268; ECF No. 31-8,

PageID.2323; ECF No. 31-10, PageID.2349; ECF No. 31-13, PageID.2410; ECF

No. 31-15, PageID.2438; ECF No. 31-16, PageID.2452.)  The City of Detroit's

brief in support of its motion for sanctions fully details this point, (ECF No. 78,

Detroit Rule 11 Brf, PageID.3644-3649), and Defendants incorporate that

argument herein.  Plaintiffs knew this as they incorporated and relied on some of

the same affidavits filed in the state-court cases.  (See, e.g., ECF No. 6, Amend.

Compl., PageID.898; ECF No. 6-4; ECF No. 6-6.) And, as noted by the Court,

many of these affidavits were based on "beliefs" and speculation, not evidence.

(ECF No. 62, Op. & Order, PageID.3326-3328.)

Plaintiffs also supported various factual allegations concerning Michigan's

election results with alleged "expert" affidavits or reports.  (See, e.g., ECF No. 6,

Amend. Compl.; ECF No. 6-1; ECF No. 6-21; ECF No. 6-22; ECF No. 6-23; ECF

No. 6-24; ECF No. 6-25; ECF No. 6-26; ECF No. 6-29.)  But as the City of Detroit

sets forth persuasively in its brief, these submissions were lacking in credibility for

numerous reasons, including the reliance on lies or misapplication or

misunderstanding of Michigan Election Law and the election results.  (ECF No.

78, Detroit Rule 11 Brf, PageID.3649-3658.)  Defendants incorporate that

argument herein as well.  It is plain from the record that Plaintiffs' counsel knew or should have known that the factual bases for their claims were frivolous.

And finally, there is the issue of Plaintiffs' counsels' tactics in this case. Plaintiffs filed this case minutes before Midnight the day before the Thanksgiving Holiday weekend, and then filed the amended complaint with its 900 pages of attachments and their emergency motions on Sunday, November 29.  Plaintiffs' requested relief before December 8.  Plaintiffs could not have reasonably believed that Defendants Whitmer, Benson, and the Board would have any meaningful opportunity to review these filings, including the alleged "expert" filings, and retain any experts of their own.  And indeed, Defendants did not as they were required to respond by December 2.  And when Plaintiffs lost their emergency motion, they quickly appealed to the Sixth Circuit, but then did nothing in that court.  Instead taking the unusual step of filing a petition for certiorari in the Supreme Court in which they admitted their case would be moot once Michigan's electors voted on December 14.

But when that day came and went with no relief from the Supreme Court, Plaintiffs took no steps to dismiss this case.  As a result, Defendants were required to respond to the amended complaint by filing a motion to dismiss on December 22.  Plaintiffs' counsel took the incorrect position that Defendants could not move to dismiss because of the pending appeals.  Subsequently, Congress convened on

January 6 and 7, accepted Michigan's electoral votes and declared Mr. Biden the new President. But still Plaintiffs took no steps to dismiss any part of this case. On January 12, Plaintiffs' counsel requested an extension for responding to the motions to dismiss, which was denied for the most part, and then turned around and filed a voluntary dismissal as to Defendants on January 14. The voluntary dismissals contained nothing of substance and plainly could have been filed days if not weeks earlier. Notably, earlier in the day on the fourteenth, because Plaintiffs had not taken steps to dismiss this suit, the undersigned counsel had to respond to Plaintiffs' petition for certiorari in the Supreme Court. And although Plaintiffs' counsel has now dismissed the Sixth Circuit appeal, they have taken no steps to apprise the Supreme Court of these events.

Plaintiffs' pleadings and the way they have litigated this case leads inevitably to a conclusion that this matter was filed for an improper purpose. This Court recognized as much, stating in its December 7 opinion that "this lawsuit seems to be less about achieving the relief Plaintiffs seek—as much of that relief is beyond the power of this Court—and more about the impact of their allegations on People's faith in the democratic process and their trust in our government." (ECF No. 62, Op. & Order, PageID.3329-3330.) It was never about winning on the merits of Plaintiffs' claims. Rather, this lawsuit was another attempt by Trump loyalists to sow doubt in the integrity of Michigan's presidential election results,

just as the former President's supporters attempted to do in other "swing" states. Their purpose was to provide like-minded government officials, whether state legislators, Congress, or executive branch members, a basis upon which to advocate for the rejection of Michigan's electoral vote.  While this effort was unsuccessful, the terrible by-product of Plaintiffs' and their counsels' efforts is reflected in the January 6 insurrection at our Nation's Capital.

As Judge Boasberg of the D.C. Circuit stated in another lawsuit challenging the election in Michigan and other swing states, "[c]ourts are not instruments through which parties engage in [ ] gamesmanship or symbolic political gestures." (Ex. C, 1/4/21 Opinion, *Wisconsin Voters Alliance, et al v. Vice President Michael R. Pence, et al*.)  But that is precisely what Plaintiffs and their counsel have done here.  This Court should therefore exercise its inherent authority and impose sanctions against Plaintiffs' counsel.

## C.    This Court should award attorneys' fees to the Michigan Department of Attorney General.

Defendants Whitmer and Benson request that this Court award the Department of Attorney General $11,071.00 in attorneys' fees as a sanction for the reasons stated above.[21]  The undersigned counsel, Assistant Attorneys General

---

[21] Attorney's fees are available under § 1927, regardless of whether a party is represented by private counsel or the government. *See, e.g., Ridder*, 109 F.3d at 298-99; *United States v. Perfecto*, No. 1:06-cr-20387-JDB-2, 2010 WL 11602757, at *2 (W.D. Tenn. July 21, 2010) (denying a motion to set aside costs that had

(AAGs) Meingast and Grill, have attached declarations in support of the request for fees. (Ex. D, Meingast Dec; Ex. E, Grill Dec.) While this case has not required the filing of numerous pleadings by defense counsel, given the length and complexity of Plaintiffs' filings, the novel claims and unprecedented relief requested, the case has involved significant review, research, and drafting.

Plaintiffs' November 25 complaint was 211 paragraphs long, and the total filing consisted of 830 pages, which included numerous exhibits for which no separate index or description was provided. (ECF No. 1, PageID.1-830.) Plaintiffs' amended complaint, filed November 29, was 233 paragraphs long, and the filing consisted of 960 pages. (ECF No. 6, Amend. Compl., PageID.872-1831.) Again, there were numerous exhibits with no index and no tabs or markings. *Id.* On the same day, Plaintiffs filed their emergency motion for declaratory and injunctive relief, which mercifully, if not surprisingly, was only 16 pages long. (ECF No. 7, Plfs Mot, PageID.1832.) These filings required significant review by defense counsel, which was exacerbated by Plaintiffs' disorganized filings.

Plaintiffs' unique Electors Clause and Elections Clause claims required research, along with the vote dilution and substantive due process claims. The

---

previously been awarded to the government); *Parrish v. Bennett,* No. 3:20-CV-275, 2020 WL 7641185, at *5 (M.D. Tenn. Dec. 23, 2020).

many deficiencies presented in Plaintiffs' filing required research on defenses, like standing, abstention, and the Eleventh Amendment. And given the short time frame Defendants were afforded for responding to Plaintiffs' motion, it was necessary for both undersigned counsel to work on the response and divide tasks. Defendants' response was 55 pages long and included over 200 pages in exhibits. (ECF No. 31, Defs Resp, PageID.2162-2458.) The deficiencies in Plaintiffs' legal and factual claims raised numerous issues and defenses, and constitutional claims almost always require more full and complex analysis. And in the end, this Court agreed, in some manner, with every single argument raised in Defendants' response in its December 7 opinion and order. (ECF No. 62, Op. & Order.)

As discussed above, Defendants, through the undersigned counsel, were required to file a first responsive pleading to the amended complaint. Defendants filed a motion to dismiss in lieu of an answer. (ECF No. 70, Defs Mot & Brf to Dismiss, PageID.3350-3427.) And while much of the research and drafting for this motion could be taken from Defendants' prior response, the motion and brief still required defense counsel to incorporate the Court's December 7 opinion and order, modify the legal arguments, and update other areas of the brief. This motion and brief were 62 pages in length.

In addition to these filings, defense counsel performed other small tasks, such as responding to the motion to seal, communicating with clients, and

reviewing the City of Detroit's motion for sanctions and filing a concurrence in that motion, which were necessary and reasonable under the circumstances.

The undersigned counsel have practiced for 23 years (AAG Meingast) and 19 years (AAG Grill), respectively, and are senior attorneys within the Department of Attorney General. Both have significant experience in litigating election cases in state and federal court. An hourly rate for AAG Meingast of $395 and an hourly rate of $375 for AAG Grill is reasonable in light of their experience and is consistent with the rates charged by election attorneys practicing in the Lansing area.[22]

Based on the above, Defendants request $11,071.00 in attorneys' fees be awarded to the Michigan Department of Attorney General.

## CONCLUSION AND RELIEF REQUESTED

For all of the reasons discussed above, Defendants Governor Gretchen Whitmer and Secretary of State Jocelyn Benson respectfully request that this Honorable Court enter an Order granting their motion for sanctions under 28 U.S.C. § 1927 or the Court's inherent authority, and award attorneys' fees in the amount of $11,071.00 to the Michigan Department of Attorney General.

---

[22] *See* State Bar of Michigan's 2020 Economics of Law Practice in Michigan Survey, p 55, https://www.michbar.org/file/pmrc/articles/0000156.pdf, (accessed January 28, 2021.)

Respectfully submitted,

DANA NESSEL
Attorney General

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
P55439

Dated:  January 28, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659

31