# EXHIBIT 2



**STATE OF MICHIGAN**
JOCELYN BENSON, SECRETARY OF STATE
DEPARTMENT OF STATE
LANSING

| | |
|---|---|
| To: | Office of the Chief Disciplinary Counsel, State Bar of Texas |
| From: | Jocelyn Benson, Michigan Secretary of State |
| Date: | February 1, 2021 |
| Re: | Sidney Powell (16209700) Grievance |

**Attachment to Grievance Form – Section IV, Question 3**

The highest court in the land has recognized that "[o]f all classes and professions, the lawyer is most sacredly bound to uphold the laws." *Ex parte Wall*, 107 U.S. 265, 274 (1883). Texas's highest state court has spoken in that same vein, recognizing that attorneys have an "obligation to maintain confidence in our judicial system," that they " 'should use the law's procedure's only for legitimate purposes,' " and that they are required to " 'maintain the highest standards of ethical conduct' through representation." *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 367 (Tex. 2014) (quoting Tex. Disc. R. of Prof. Conduct ¶¶ 1, 4). Texas courts recognize that "[a] lawyer assumes a position of responsibility to the law itself," and that lawyers are "charged with obedience to the laws of this State and of the United States," as well as "with the responsibility to maintain due respect for the judicial system and its rules of law." *Muniz v. State*, 575 S.W.2d 408, 411 (Tex. App.—Corpus Christi 1978).

As the words of these courts demonstrate, a license to practice law is more than just permission to practice one's chosen profession. It is a grave responsibility—one that requires attorneys to use the immense power of the law only within the confines of the highest ethical standards. An attorney who misuses that power can imperil fortunes, endanger liberties, and jeopardize lives. And as an officer of the court, an attorney who abuses the court system places in peril the very administration of justice that we cherish and depend on.

Texas attorney Sidney Powell (16209700) is such an attorney. She did not just tiptoe near a precarious ethical line—she outright crossed it. By filing a frivolous lawsuit based on false statements and by brazenly attempting to disenfranchise Michigan voters during the recent presidential election, she engaged in grave attorney misconduct.

Case 2:20-cv-13134-LVP-RSW ECF No. 108-2, PageID.4476 Filed 02/04/21 Page 3 of 7

Sidney Powell (162209700) Grievance                                                     Page 2 of 6
Attachment to Grievance Form for Section IV, Question 3.

Michigan's Attorney General, Secretary of State, and Governor therefore write jointly to ask you to hold Ms. Powell accountable to the attorney oath and ethical rules (particularly Rules 3.01, 3.03(a)(1) and 3.03(a)(3) of the Texas Disciplinary Rules of Professional Conduct) that govern her conduct. The Attorney General cares deeply about protecting the administration of justice and sending an important message about appropriate attorney conduct. The Secretary of State in her role as chief elections officer is equally concerned about protecting the voter franchise and the integrity of elections. And the Governor is the chief executive of the state, constitutionally charged with ensuring that the laws are faithfully executed. We urge you to find that Ms. Powell has abused her privilege to practice law and to impose the harshest sanctions available. Nothing short of permanent disbarment would be appropriate under these circumstances. Nor could any lesser sanction cleanse the taint that Ms. Powell brings to the Texas Bar by her continued association with it.

On November 25, 2020, Ms. Powell signed a complaint in the United States District Court for the Eastern District of Michigan seeking to overturn the results of the 2020 presidential election in Michigan and disenfranchise the more than 5.4 million Michiganders who voted in that election. (*King, et al. v. Whitmer*, E.D. Mich. No. 2:20-cv-13134.) The factual allegations made in support of the complaint were outrageous and patently false, and the legal arguments advanced were frivolous. The complaint's complete lack of merit caused federal Judge Linda V. Parker to deny the plaintiffs' motion for a temporary restraining order, and in doing so, to say the following: "[T]his lawsuit seems to be less about achieving the relief Plaintiffs seek—as much of that relief is beyond the power of this Court—and more about the impact of their allegations on People's faith in the democratic process and their trust in our government." ___ F Supp. 3d ___; 2020 WL 7134198, at *13.

Although Ms. Powell's attempt inevitably failed, it served a second, more sinister purpose—one that is not easily remedied, even by the court's dismissal of baseless legal claims: it cast unwarranted doubt on the results of Michigan's free and fair elections. Indeed, it undermined the faith of millions of Americans in our democracy and the legitimacy of our President. As a direct result of Ms. Powell's efforts and the allied efforts of other unethical attorneys, the unhinged conspiracy theories and untrue statements surrounding the 2020 presidential election gained a patina of unearned respectability.

It is not unheard of for lay individuals who are disappointed by the result of the election to claim that the election is "rigged" and the winner illegitimate. Those claims might even have some limited, negative impact. But when untruths of that nature are spread in courts of law by licensed attorneys, the impact and the resultant harm are exponentially greater.

Here, a direct line can be drawn from the fabrications of Ms. Powell and her associates to the unprecedented insurrection at the Capitol Building in Washington D.C. on January 6 that sought to topple our national government. Every election

Case 2:20-cv-13134-LVP-RSW ECF No. 108-2, PageID.4477 Filed 02/04/21 Page 4 of 7

Sidney Powell (162209700) Grievance								Page 3 of 6
Attachment to Grievance Form for Section IV, Question 3.

results in millions of voters disappointed that their preferred candidate lost. But what made this year's presidential transition so volatile and violent were the false accusations of widespread election fraud that spurred on many disappointed Trump voters into believing that the election was tainted and the result was illegitimate. And because those untruths were spread by attorneys, not just by a candidate or a candidate's supporters, they won particular credence. Thankfully, they did not culminate in the dismantling of our national government. But they did force Congress to delay the certification, cause serious property damage, and contribute to the death of seven people, including two U.S. Capitol Police officers and a D.C. Police officer. And regrettably, they end our nation's 220-year uninterrupted streak of peaceful transfers of presidential power.

And why did the imprimatur of licensed attorneys such as Ms. Powell lend credence to these false allegations? Because the public knows that attorneys are bound by both oath and ethical rules. Therefore, the public presumes that attorneys possess the character and fitness necessary to practice law. Accordingly, the public should be able to expect that when an attorney makes a public statement or signs a complaint, that attorney's factual allegations are either true or rooted in a good-faith belief as to their truth. And the public ought to be able to expect that the attorney's legal claims are at least colorable, if not meritorious. Neither of those were true with respect to Ms. Powell. Her factual allegations were false and her claims were not colorable. She violated both her oath and the ethical rules by which she is bound.

Texas attorneys swear an oath to "support the Constitutions of the United States, and of" Texas, to "honestly demean [themselves] in the practice of law," and to "conduct themselves with integrity and civility in dealing and communicating with the court and all parties." In filing the *King* complaint, Ms. Powell did not honestly demean herself, nor did she conduct herself with integrity, as she sought to mislead a federal judge through false statements.

Ms. Powell also violated multiple ethical rules when she filed that complaint. To begin, she violated **Rule 3.01 of the Texas Disciplinary Rules of Professional Conduct.** That rule provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous." Ms. Powell violated Rule 3.01 when she signed the frivolous *King* complaint and submitted it to the court. The district court's denial of the plaintiffs' motion for a preliminary judgment, 2020 WL 7134198, was sweeping in its scope and eliminated all possible contention that the claims had any colorable value. The district court held that the claims violated the Eleventh Amendment, *id.* at *5, that they were moot, *id.*, that they were barred by laches, *id.* at *7, that the plaintiffs lacked standing, *id.* at *9–11, and that the claims were utterly meritless, *id.* at *11–13. With respect to the merits, the court held that the claims the plaintiffs sought to raise under the Elections and Electors Clause were only "state law claims disguised as federal

Case 2:20-cv-13134-LVP-RSW ECF No. 108-2, PageID.4478 Filed 02/04/21 Page 5 of 7

Sidney Powell (162209700) Grievance Page 4 of 6
Attachment to Grievance Form for Section IV, Question 3.

claims," *id.* at *11, and noted that plaintiffs did not cite a single case supporting the theory that the federal court could review them, *id.* at *12. And as for the claims under the Equal Protection Clause, the court noted that the plaintiffs provided "nothing but speculation and conjecture" in support, and that the factual allegations raised, as weak as they were, were also completely disconnected from their claim for relief. *Id.* at *12.

Again, it is worth recalling Judge Parker's assessment that the complaint had been filed not to achieve relief but to undermine the "People's faith in the democratic process and their trust in our government." *Id* at *13. This is not only an ethically improper reason to file a lawsuit, but under these circumstances, a dangerous one.

There was no non-frivolous basis for the complaint she filed on November 25, 2020, and Ms. Powell violated Rule 3.01 when she filed it.

Ms. Powell also violated **Rule 3.03(a)(1) of the Texas Disciplinary Rules of Professional Conduct,** which provides that "[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal[,]" and **Rule 3.03(a)(5)**, which provides that "[a] lawyer shall not offer or use evidence that the lawyer knows to be false." The complaint she filed in *King* violated these rules because it was based on reams of known falsehoods intended to deceive the courts and overturn a free and fair election.

For example, Ms. Powell and her team submitted a pseudonymous affidavit from one "Spyder," who falsely claimed to be a military intelligence analyst. Fortunately, through the incompetence of Ms. Powell's team, "Spyder's" name was revealed, and it was learned that he was no intelligence analyst at all, but instead a former soldier who was dismissed from military intelligence training.

Ms. Powell and her team also submitted the affidavit of Russell Ramsland, who made numerous false statements about the election. Ramsland blamed Dominion voting machines for an error in the election results in Antrim County, Michigan, even though it is known that the error in that county (which was found and corrected) was not a result of software error or fraud, but rather, simple human error. Ramsland also made false statements about turnout rates in certain Michigan communities, claiming for example a 781.91% turnout rate in North Muskegon, where the actual turnout rate was 78%, and 460.51% in Zeeland Charter Township, where the actual rate was 80%.

Also attached to the complaint as a declaration was a bizarre piece of short fiction (again, with the author's name redacted) that attempted to establish that the use of Dominion software is necessarily fraudulent because Smartmatic (a Dominion competitor) was allegedly involved in rigging elections for Hugo Chavez and Nicolas Maduro in Venezuela, and because Smartmatic and Dominion have previously done business. Dominion has filed a defamation lawsuit against Ms. Powell, personally, alleging that these and other statements that she made in *King* lawsuit, in other

Case 2:20-cv-13134-LVP-RSW ECF No. 108-2, PageID.4479 Filed 02/04/21 Page 6 of 7

Sidney Powell (162209700) Grievance
Page 5 of 6
Attachment to Grievance Form for Section IV, Question 3.

lawsuits in other states, and in public statements are untrue and defamatory. Although that lawsuit has yet to be resolved, the salient point is that she signed the *King* complaint without ensuring that the complaint's factual contentions about Dominion had evidentiary support or would likely have evidentiary support after further investigation or discovery.

Ms. Powell also alleged that Republican challengers were denied access to a location where votes were being counted in Wayne County, that there was supposedly improper "pre-dating" of absentee ballots, and that ballots were being counted multiple times—all the while knowing that these were false statements because they had already been debunked in a previous lawsuit, *Constantino v. Detroit*, in our state court.

When Ms. Powell took *King*, along with a similar lawsuit from Georgia, to the United States Supreme Court, the plaintiffs filed a motion to consolidate those cases with each other and with two similar cases from Arizona and Wisconsin. That motion contained another serious lie: that there were "competing slates of electors from the four states at issue in the four cases"; i.e., Michigan, Georgia, Arizona, and Wisconsin, as well as from three other states. (Mot. to Consol. at 4.) The motion told the Court, "On December 14, 2020, pursuant to the requirements of applicable state laws and the Electoral Count Act[,] the **Michigan** Republican slate of Presidential Electors attempted to meet inside the State Capitol and cast their votes for President and Vice President but were denied entry by law enforcement[.]" (*Id.* at 3.) This was a half-truth at best—it is true that the unsuccessful candidates for Republican presidential elector attempted to enter the Capitol in Lansing to cast their votes. But it is not true that these individuals were "the Michigan Republican slate of Presidential Electors," because there is no such thing. Only one slate of presidential electors won the 2020 election in Michigan, and it was not the Republican slate. It was also false to say that these losing candidates met pursuant to the requirements of any state or federal law. There is no law that requires the losing candidates for presidential elector to do anything.

But the lies got worse from there—the motion also claimed that there were competing slates of electors and that the losing slates "have received the endorsement of the legislatures in each of these States[.]" (Mot. to Consol. at 4.) There was *nothing* true about this statement, which was intended to establish that there was in fact some viable controversy about the election results in Michigan and the other states, when in reality there was none. The Michigan Legislature (led, it bears mentioning, by Republicans) respected the will of Michigan's voters and did nothing to endorse the fraudulent "competing slate" of Republican pretenders. The motion contained more lies: that in the lower courts the plaintiffs had "laid out extensive evidence of massive election fraud and other illegal conduct," that "fact and expert witnesses presented sworn and unrebutted testimony establishing that tens of thousands of illegal ballots were counted in favor of candidate Biden," and that, in *King* and in the other cases, "the District Courts failed to grapple with, or

Case 2:20-cv-13134-LVP-RSW ECF No. 108-2, PageID.4480 Filed 02/04/21 Page 7 of 7
Sidney Powell (162097700) Grievance  Page 6 of 6
Attachment to Grievance Form for Section IV, Question 3.

even to examine with care, these showings." (Mot. to Consol. at 4–5.) All false, and Ms. Powell knew it.

All of these false statements helped fuel the fire of the dangerous conspiracy theories that have undermined faith in the 2020 election. No responsible attorney would have spread these untruths, much less submit them to a court of law. Ms. Powell violated Rules 3.03(a)(1) and (5) when she did so.

Lastly, Ms. Powell violated **Rule 8.04 of the Texas Disciplinary Rules of Professional Conduct.** That rule provides in part that "a lawyer shall not: (1) violate these rules, . . . [or] (3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The dishonest and disgraceful litigation described above violated these rules. Ms. Powell brought frivolous claims that were barred by constitutional, statutory, and equitable defenses, and that were supported by false statements and wild speculation.

In sum, Ms. Powell has abused the trust the State Bar of Texas placed in her. She filed a complaint based on falsehoods, used her law license in an attempt to disenfranchise Michigan voters and undermine the faith of the public in the legitimacy of the recent presidential election, and lent credence to untruths that led to violence and unrest. In doing so, she violated both her attorney oath and the rules of professional conduct that govern the practice of law. "Lawyers . . . owe to the courts duties of scrupulous honesty, forthrightness, and the highest degree of ethical conduct." *In re J.B.K.*, 931 S.W.2d 581, 583 (Tex. App.—El Paso 1996); *accord Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 145 (Tex.App.—Texarkana 2000) It is beyond all peradventure that Ms. Powell has failed to live up to those high standards; her ethical violations bring disrepute on all attorneys, jeopardize the public's confidence in the State Bar and the legal system, and compromise an important foundation of our civil society and the very bulwark of our democratic institutions. Her violations are irredeemable because, as Justice Frankfurter so eloquently stated in his concurrence in *Schware v. Board of Bar Exam. of New Mexico*, 353 U.S. 232 (1957), "[i]t is a fair characterization of the lawyer's responsibility in our society that he stands 'as a shield,' to quote Devlin, J., in defense of right and to ward off wrong. From a profession charged with such responsibilities there must be exacted those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have, throughout the centuries, been compendiously described as 'moral character.' "

Ms. Powell is unfit to practice law and should be disbarred.