UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KING, MARIAN ELLEN
SHERIDAN, JOHN EARL HAGGARD,
CHARLES JAMES RITCHARD, JAMES
DAVID HOOPER, and DARREN WADE
RUBINGH,

        Plaintiffs,

v

GRETCHEN WHITMER, in her official
capacity as Governor of the State of
Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of
State and the Michigan BOARD OF STATE
CANVASSERS,

        Defendants,

CITY OF DETROIT,
        Intervening Defendant,

ROBERT DAVIS,
        Intervening Defendant,

DEMOCRATIC NATIONAL
COMMITTEE and MICHIGAN
DEMOCRATIC PARTY,
        Intervening Defendants.

No. 2-20-cv-13134

HON. LINDA V. PARKER

MAG. R. STEVEN WHALEN

**DEFENDANTS WHITMER
AND BENSON'S REPLY
BRIEF IN SUPPORT OF
MOTION FOR SANCTIONS
UNDER 28 U.S.C. § 1927**

_____

Sidney Powell (Texas Bar No. 16209700)
Attorney for Plaintiffs
Sidney Powell, P.C.
2911 Turtle Creek Blvd
Dallas, TX 75219
(517) 763-7499
sidney@federalappeals.com

Stefanie Lambert Junttila (P71303)
Attorney for Plaintiffs
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 963-4740
attorneystefanielambert@gmail.com

Scott Hagerstrom (P57885)
Attorney for Plaintiffs
222 West Genesee
Lansing, MI 48933
(517) 763-7499
Scotthagerstrom@yahoo.com

Gregory J. Rohl (P39185)
Attorney for Plaintiffs
41850 West 11 Mile Road, Suite 110
Novi, Michigan 48375
248.380.9404
gregoryrohl@yahoo.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

David Fink (P28235)
Attorney for Intervenor City of Detroit
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
248.971.2500
dfrink@finkbressack.com

Mary Ellen Gurewitz (P25724)
Attorney for Intervenor DNC/MDP
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
313.204.6979
maryellen@cummingslawpllc.com

Scott R. Eldridge
Attorney for Intervenor DNC/MDP
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
517.483.4918
eldridge@millercanfield.com

Andrew A. Paterson (P18690)
Attorney for Intervenor Davis
2893 East Eisenhower Parkway
Ann Arbor, Michigan 48108
248.568.9712
Aap43@outlook.com

_____/


# DEFENDANTS WHITMER AND BENSON'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

Dana Nessel
Attorney General

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

Dated: March 11, 2021

# TABLE OF CONTENTS

Page

Table of Contents ...................................................................................... i

Index of Authorities ................................................................................. ii

Concise Statement of Issue Presented ............................................... iv

Introduction .............................................................................................. 1

Argument ................................................................................................... 2

I.   The State Defendants are entitled to sanctions and an award of attorneys' fees either under 28 U.S.C. § 1927, or based on this Court's inherent authority. ................................................................................. 2

    A.   The State Defendants' motion does not violate 28 U.S.C. § 1927. .............................................................................................. 2

    B.   Plaintiffs' arguments about counsels' "tweets" and protected speech are misdirected. ................................................................... 4

    C.   The State Defendants did not violate any rule of professional conduct. ......................................................................................... 5

        1.   Press statements ................................................................... 5

        2.   Actions of others. ................................................................ 9

    D.   Defendants are entitled to sanctions under 28 U.S.C. § 1927 where Plaintiffs' counsel unreasonably and vexatiously perpetuated moot and frivolous claims. ........................................ 10

    E.   Plaintiffs' attempt to re-argue and supplement the factual basis for the lawsuit is unavailing. ........................................................ 18

Conclusion and Relief Requested ...................................................... 22

Certificate of Service ............................................................................ 23

# INDEX OF AUTHORITIES

Page

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ...................................................14

*Arizona State Legislature v. Arizona Independent Redistricting Comm.*, 575 U.S. 787 (2015) ................................................................13

*Bd. of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238 (1985) ....................12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .......................................21

*Beverly v. Shermeta Law Grp., PLLC*, 2020 WL 2556674 (E.D. Mich. May 20, 2020) ......................................................................4

*Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336 (3rd Cir. 2020) ................................................................ 13, 14

*Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020) ...................................................................17

*Bush v. Gore,* 531 U.S. 98 (2000) ..........................................................14

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) .........................................14

*Cook v. Gralike*, 531 U.S. 510 (2001) .......................................................13

*Curling v. Raffensperger*, Case No. 17-cv-2989; 2020 WL 5994029 (N.D. Ga. 2020) ......................................................................19

*Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) .........................................14

*Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771-pp, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020) ...........................................................17

*Gentile v. State Bar. of Nev.*, 501 U.S. 1030 (1991) .......................................7

*Gill v. Whitford*, 138 S. Ct. 1916 (2018) ...................................................14

*League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008) .........15

*Northeast Ohio Coalition for the Homeless v. Husted,* 696 F.3d 580 (6th Cir. 2012) ................................................................................................15

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984) .......................15

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642 (6th Cir. 2006) .....................................................................................17

*Roadway Express, Inc. v. Piper,* 447 U.S. 752 [ ] (1980) ....................................12

*Rucho v. Common Cause,* 139 S. Ct. 2484 (2019) ................................................14

*Salkil v. Mount Sterling Tp. Police Dep't,* 458 F.3d 520 (6th Cir. 2006) ..............16

*Sanderson v. HCA-Healthcare Co.,* 447 F.3d 873 (6th Cir. 2006) .......................21

*Sullivan v. Benningfield,* 920 F.3d 401 (6th Cir. 2019) ...........................................11

*Wood v. Raffensperger,* 981 F.3d 1307 (11th Cir. 2020) ................... 11, 13, 14, 16

## Statutes

Mich. Comp. Laws § 169.201 ..................................................................................10

Mich. Comp. Laws § 169.215(5) .............................................................................10

## Constitutional Provisions

28 U.S.C. 1927 ................................................................................. *passim*

## Other Authorities

MRPC 3.6 ..............................................................................................................6, 7

MRPC 8.3(a) .............................................................................................................8

**CONCISE STATEMENT OF ISSUE PRESENTED**

1.   Whether Defendants Whitmer and Benson's motion for sanctions should be granted and an award of attorneys' fees entered in favor of the Michigan Department of Attorney General under 28 U.S.C. § 1927 or under the Court's inherent authority to award fees where Plaintiffs' counsel unreasonably multiplied the proceedings in this case and abused the judicial process?

## INTRODUCTION

Governor Whitmer and Secretary Benson moved for sanctions because counsel engaged in sanctionable conduct by unreasonably and vexatiously pursuing their meritless claims.  They did not do so as a "new form of political retribution" as Plaintiffs baselessly assert.  Nor did they violate any rule of professional conduct in filing their motion.

Plaintiffs argue that their complaint alleging massive voter fraud in the November election was supported by a "voluminous record" that consisted of "hundreds of factual and expert affidavits."  But volume does not equate to credibility.

Plaintiffs' factual allegations and most of their affidavits regarding errors by Detroit officials in processing or tabulating absent voter ballots were recycled from other cases where the "errors" had been dispelled and rejected.  And Plaintiffs' purported "expert" reports regarding voting systems, early results, and absent voter ballots were scientifically unsound and premised on conspiracy theories and misunderstandings of Michigan law.

Plaintiffs now request a "full evidentiary hearing" to "present evidence in support of their claims."  But this last-ditch effort to rehabilitate their claims and proofs should be rejected; Plaintiffs' filings speak for themselves.

More troubling, Plaintiffs' legal claims were not well-grounded in the "facts," they were plainly procedurally barred in numerous ways, and they were not supported by existing case law.  But despite these defects in their factual underpinnings and legal claims, Plaintiffs' counsel perpetuated this case—and did so far beyond when they knew or should have known this lawsuit was moot and frivolous.

As a result, imposing sanctions is entirely appropriate and warranted in this matter, whether the Court does so under 28 U.S.C. § 1927 or pursuant to its inherent authority.

## ARGUMENT

### I.    The State Defendants are entitled to sanctions and an award of attorneys' fees either under 28 U.S.C. § 1927, or based on this Court's inherent authority.

Plaintiffs filed their response to Defendants Whitmer and Benson's (the State Defendants) motion on February 11, 2021.  (ECF No. 112, Plfs' Brf, PageID.4600.)  The State Defendants make the following points in reply.

### A.    The State Defendants' motion does not violate 28 U.S.C. § 1927.

Plaintiffs argue that the State Defendants' motion itself violates § 1927 because it is redundant and represents Defendants' "third 'bite at the apple'" as to

2

sanctions.  (ECF No. 112, Plfs' Brf, PageID.4609.)[1]  But the State Defendants'

motion to dismiss, (ECF No. 70, PageID.3427), in which they made a passing

request for sanctions, was rendered moot by Plaintiffs' subsequent voluntary

dismissal of the case.  And while the State Defendants filed a concurrence, (ECF

No. 84), in the City of Detroit's motion for sanctions, that motion was brought only

under Fed. R. Civ. P. 11—not § 1927.  (ECF No. 78, PageID.3616.)  Moreover, the

State Defendants expressly noted in their concurrence that they may file their own

motion.  (ECF No. 84, PageID.3881.)  Thus, the State Defendants' instant motion

is the only motion for sanctions under § 1927 that these Defendants have pending

before this Court.  Further, there is nothing improper in seeking sanctions under

different theories, i.e., Rule 11, § 1927, or under the Court's inherent authority.

And to the extent Plaintiffs suggest Defendants' motion is late, a motion for

sanctions under § 1927 can be filed even after final judgment in a case.  *Ridder v.*

*City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997).

Plaintiffs also argue that motions under § 1927 cannot be based on amended

complaints.  (ECF No. 112, Plfs' Brf, PageID.4609.)  Case law says just the

opposite: courts "generally do not impose sanctions under [ ] § 1927 based on the

filing of an *initial* complaint[.]"  *Beverly v. Shermeta Law Grp., PLLC*, 2020 WL

---

[1] Plaintiffs repeat this argument later in their brief.  (ECF No. 112, PageID.4624-25.)

2556674, at *1 (E.D. Mich. May 20, 2020) (citations omitted) (emphasis added).

Defendants base their § 1927 sanctions request from the filing of Plaintiffs'

Amended Complaint forward.

### B. Plaintiffs' arguments about counsels' "tweets" and protected speech are misdirected.

Plaintiffs argue that the "State Defendants Fail to State a Basis for Sanctions

Because of The Tweets Cited." (ECF No. 112, Plfs' Brf, PageID.4611.) They

complain about the City of Detroit's discussion of tweets in its Rule 11 sanctions

brief but acknowledge that the "tweets by Plaintiffs' counsel" were not cited in the

State Defendants' pleadings. (*Id.*, PageID.4611-12.) Confusingly, Plaintiffs go on

to assert that the State Defendants "cite to two tweets by Sidney Powell on January

2, 2021 generally related to election fraud." (*Id.*, PageID.4612.) But the State

Defendants did not "cite" to any tweets by Ms. Powell on January 2 in their motion

or brief, or to any other tweets for that matter.[2]

Plaintiffs then discuss how counsels' tweets and out-of-court statements are

protected by the "litigation privilege" or "judicial proceedings privilege" and the

First Amendment. (*Id.*, PageID.4613-15.) The State Defendants do not agree that

counsels' public statements cannot be considered by the Court in assessing

---

[2] The State Defendants referenced one news article in which Ms. Powell was identified as calling the instant case one of the "Kraken" lawsuits. (ECF No. 105, PageID.4349 & n.2.)

sanctions.  But it matters not as to the State Defendants' motion since this motion is not based on out-of-court speech by any of Plaintiffs' counsel.  Here, Plaintiffs' counsels' misconduct is aptly demonstrated by the pleadings they filed in this case and the timing and sequence of events.  Plaintiffs' arguments are thus misdirected and irrelevant with respect to the State Defendants' motion.

### C.   The State Defendants did not violate any rule of professional conduct.

Plaintiffs next spend several pages trying to turn the tables by arguing that it was Defendants Whitmer and Benson and Attorney General Nessel, a non-party, who violated Michigan's Rules of Professional Conduct (MRPC), and that sanctions "motions brought by attorneys in violation of those rules should not even be considered."  (ECF No. 112, PageID.4615-4622, 4623.)  These arguments fail.

### 1.   Press statements

Plaintiffs assert that Defendants sought to "improperly influence this Court through whipping up massive press coverage and negative public opinion against Plaintiffs and their counsel . . . seeking to destroy their reputations."  (*Id.*, PageID.4615.)  Plaintiffs cite a February 1, 2021 press release by the Attorney General announcing the submission of the bar grievances against Plaintiffs' counsel by Whitmer, Benson, and Nessel, and several December 2020 articles in which the Attorney General is quoted or represented as saying that sanctions would be sought.  (*Id.*, PageID.4616-4618, 4623.)

5

Plaintiffs suggest that these statements violate Rule 3.5 because they might influence this Court's decision regarding the pending sanctions motion. (*Id.*, PageID.4617.) Plaintiffs further suggest that the statements violate Rule 3.6 because they constitute extrajudicial statements that have a substantial likelihood of materially prejudicing an adjudicative proceeding. (*Id.*, PageID.4617-18.) But Defendants Whitmer and Benson, and the Attorney General have not violated any rule.

Governor Whitmer, Secretary Benson and the Attorney General are the State of Michigan's highest elected officials and bear tremendous responsibility to protect the interests of the State and its people. This includes an obligation to alert the public to baseless attacks on Michigan's democratic institutions. And to the extent all three are attorneys as well, the rules expressly recognize that *any* lawyer must be free to make public statements about litigation where the case involves "matters of general public concern." MRPC 3.6, *cmt*. Moreover, the public "has a legitimate interest in the conduct of judicial proceedings." (*Id.*) It is difficult to imagine a case of greater public concern than one intended to "disenfranchise the votes of the more than 5.5 million Michigan citizens" who voted in the 2020 election. (ECF No. 62, Opinion, PageID.3296.)

Further, the statements, principally made by the Attorney General, who is not a party or a movant, do not violate either Rule 3.5 or Rule 3.6 because the

statements have no likelihood of influencing the outcome of any judicial or adjudicative proceeding.  States must interpret prohibitions on extrajudicial statements in a "narrow manner" to avoid violating the First Amendment, particularly when the speech is political in nature.  *Gentile v. State Bar. of Nev.*, 501 U.S. 1030, 1036 (1991).  Courts may only restrict extrajudicial speech "that creates a danger of imminent and substantial harm" to the judicial proceedings. *Id.*

Here, there is no danger of any harm at all.  The public statements by the Attorney General regarding the *King* litigation and Plaintiffs' counsels' conduct therein are nearly identical to the arguments the undersigned counsel have made before this Court.  It is difficult to understand how statements made out-of-court could have any influence on this Court when they are essentially identical to statements already made in court.  Rather, the Attorney General's statements involve the sorts of "matters of general public concern" on which the rules explicitly permit public comment.  *See* MRPC 3.6, *cmt.*

Plaintiffs also suggest that Defendants and the Attorney General have violated Rule 8.4, which generally prohibits misconduct by a lawyer by filing the motion for sanctions and the subsequent bar grievances for "political gain."  (ECF No. 112, PageID.4621.)  But these officials had the right, if not an obligation, to do both.

As members of the State Bar of Michigan, Whitmer, Benson, and Nessel each have an obligation to inform the State's disciplinary authority if they have "knowledge that another lawyer has committed a significant violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer." MRPC 8.3(a). This reporting mechanism is essential to preserve the unique "self-governing" nature of the legal profession. *See* MRPC *Preamble: A Lawyer's Responsibilities*. It is up to the reporting attorney to exercise "[a] measure of judgment" to determine when a violation of the Rules is "substantial" enough to require referral to the Commission. MRPC 8.3 *cmt*.

Here, it was in Whitmer's, Benson's and the Attorney General's judgment that Plaintiffs' counsels' conduct in this case rose to the level of a "substantial" violation of multiple rules that raise substantial questions as to their honesty, trustworthiness, and fitness as a lawyer. And this misconduct is aptly demonstrated in Defendants' pending motion for sanctions, which was properly brought for all the reasons stated in the motion and in the instant reply brief. Neither the motion nor the grievances were filed for "political gain"; they were filed because Defendants firmly believe Plaintiffs' counsel abused the judicial process and violated Michigan's Rules of Professional Conduct.

### 2.    Actions of others.

Finally, Plaintiffs also appear to argue that Defendants and the Attorney General violated certain rules based on the actions of others.  Plaintiffs describe statements made by Marc Elias, an attorney representing Intervenors Democratic National Committee and the Michigan Democratic Party; David Fink, an attorney representing Intervenor City of Detroit; the "cease and desist" letter sent by another attorney in the Department of Attorney General; and the unnamed author of "Dana's Dispatch" emails sent on behalf of the Friends of Dana Nessel campaign committee.  (ECF No. 112, PageID.4618-4623.)

But Defendants and the Attorney General can hardly be held to have violated an ethics rule based on public statements made by other attorneys in this case.  And Defendants Whitmer and Benson were not involved in the issuance of the "cease and desist" letter.  That letter, issued on October 28, 2020, nearly a month before this lawsuit was filed, was sent in response to a Department of Attorney General investigation which determined that a video posted on a website had been manipulated and contained false and misleading election-related information.  (Ex A, 10/28/20 Letter.)  The issuance of that letter was plainly within the authority of the Attorney General as the State's chief law enforcement officer.  And it had nothing to do with this litigation, nor could it have given its timing.  Similarly, Defendants Whitmer and Benson were not involved in the

publication sent on behalf of the Friends of Dana Nessel campaign committee.

Also, the activities of private parties associated with the campaign committee have

no bearing on the Attorney General's professional conduct.[3]

Defendants Whitmer and Benson and the Attorney General have not violated

any ethics rule, and the Plaintiffs' arguments to the contrary are simply an effort to

divert the Court's attention from their own wrongdoing.

### D. Defendants are entitled to sanctions under 28 U.S.C. § 1927 where Plaintiffs' counsel unreasonably and vexatiously perpetuated moot and frivolous claims.

Plaintiffs essentially argue that they did not unreasonably and vexatiously

multiply and perpetuate the proceedings in this case because the case only lasted

from November 25, 2020 to January 14, 2021, when they voluntarily dismissed the

case as to Defendants, and Defendants did not have to file numerous pleadings.

(ECF No. 112, PageID.4624-4627.)  Plaintiffs also argue that the cases Defendants

cited in their brief, which were cited for controlling legal principles, are not on

point or are distinguishable.  (*Id*., PageID.4627-4632.)

But Plaintiffs cite no case for the proposition that the duration of a case must

be lengthy and pleadings numerous for sanctions to issue under § 1927.  Further,

election cases are often time-sensitive and litigated faster than other civil suits.

---

[3] The committee is subject to regulation under the Michigan Campaign Finance
Act, Mich. Comp. Laws § 169.201 *et seq.* If Plaintiffs believe the committee has
violated that Act they can file a complaint.  Mich. Comp. Laws § 169.215(5).

The fact that the cases cited by Defendants in their principal brief concerned litigation of longer duration does not mean sanctions are not warranted based on the particular facts of this case.  The Tenth Circuit rejected a similar argument by the plaintiffs in a sanctions case before it on appeal:

> The [plaintiffs'] main argument here boils down to a comparison of this case to some of our other § 1927 cases they claim exemplify more egregious conduct. Even if that were true, however, none of those cases suggested they were establishing a floor below which a court could not permissibly impose sanctions. In a vacuum, it matters little to our review for abuse of discretion that some lawyers may have acted worse than the [plaintiffs] did. If they acted in a way the court could have justifiably found to be objectively unreasonable, § 1927 requires no more.  [*Baca v. Berry*, 806 F.3d 1262, 1277 (10th Cir. 2015).]

Here, Plaintiffs' counsel acted in a manner that was objectively unreasonable in two ways.

First, even assuming Plaintiffs' legal claims were well-pled, Plaintiffs unreasonably perpetuated these claims after they became moot.  A case is moot where the court lacks "the ability to give meaningful relief[.]"  *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019).  As explained in the State Defendants' principal brief, and as this Court observed previously, Plaintiffs' claims were moot before this case had even been filed, and were plainly moot, by Plaintiffs' counsels' own admissions, after Michigan's electors voted on December 14.  (ECF No. 105. PageID.4359-4366; ECF No. 62, PageID.3307).  *See also Wood v. Raffensperger*, 981 F.3d 1307, 1316-1318 (11th Cir. 2020) (affirming that

post-certification challenge to Georgia's 2020 election results were moot.)  These issues were brought to Plaintiffs' attention by the City of Detroit, which served its draft Rule 11 motion on Plaintiffs' counsel on December 15, 2020.  (ECF No. 78, Detroit Mot, PageID.3617.)  "It is the duty of counsel to bring to [a] federal tribunal's attention, 'without delay,' facts that may raise a question of mootness." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68, n. 23 (quoting *Bd. of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (per curiam) (emphasis in original)).  Here, Plaintiffs did nothing, ultimately denying concurrence in the State Defendants' motion to dismiss, (ECF No. 105, PageId.4362-4363), thus requiring the State Defendants to file their motion on December 22.

In *Baca*, the Tenth Circuit observed that the failure to act could be unreasonable and vexatious conduct.  "We do not discount the possibility that in some cases, failing to act can be sanctionable conduct under § 1927." *Baca*, 806 F.3d at 1278 (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 755-57, 760 [ ] (1980) (observing a party's "uncooperative behavior" and "deliberate inaction in handling" a case leading to sanctions (internal quotation marks omitted)).  "After all, the statute 'authoriz[es] the assessment of costs against dilatory attorneys.' " *ld.* (quoting *Roadway Express*, 447 U.S. at 760 [ ]).  "Surely an attorney's failure to act could be objectively unreasonable and vexatious and multiply the

proceedings in a case by causing the opposing party to file motions to compel action." *Id.* And, "in a meritless case, protracted failure to do anything but dismiss the case . . . might be sanctionable." *Id.*

Plaintiffs' failure to take action to end this litigation earlier should be considered sanctionable conduct.

Second, setting aside the other procedural defects this Court rightly found, i.e., laches, abstention, and immunity, Plaintiffs' legal claims were wholly lacking in merit from the litigation's inception.

Plaintiffs' Elections/Electors Clause claims in Count I were inconsistent or unsupported by prior Supreme Court cases interpreting those clauses from a standing and/or substantive aspect. *See Cook v. Gralike*, 531 U.S. 510 (2001); *Lance v. Coffman,* 549 U.S. 437, 442 (2007); *Arizona State Legislature v. Arizona Independent Redistricting Comm.,* 575 U.S. 787 (2015). And lower federal courts in other cases had come to similar conclusions before Plaintiffs filed suit or their amended complaint. *See Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336, 343-344, 349 (3rd Cir. 2020) (November 13, 2020, decision); *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445 JCM (VCF), 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020); *Wood v. Raffensperger*, No. 1:20-CV-04651-SDG, 2020 WL 6817513, at *5 (N.D. Ga. Nov. 20, 2020), aff'd, 981 F.3d 1307 (11th Cir. 2020) (December 5, 2020, decision); Cf. *Carson v. Simon*, 978

13

F.3d 1051, 1057 (8th Cir. 2020) (holding that Republican presidential electors had

standing to bring Electors Clause claim under Minnesota law) (October 29, 2020

decision).

Similarly, Plaintiffs' vote-dilution, equal protection claim in Count II was

plainly meritless.  A vote-dilution claim is generally only viable, and a party only

has standing to assert such a claim, where the law devalues certain voters' votes

over another group of voters' votes.  *See, e.g., Rucho v. Common Cause*, 139 S. Ct.

2484, 2501 (2019); *Gill v. Whitford*, 138 S. Ct. 1916, 1929-30 (2018); *Bush v.

Gore,* 531 U.S. 98, 104-05 (2000) and the cases cited therein.  But here, Plaintiffs'

claims of harm in counting supposedly invalid ballots affected *all* voters, not just

Plaintiffs.  And, as above, other federal courts had rejected similar claims before

Plaintiffs filed suit.  *See, e.g., Bognet*, 980 F.3d at 354-55; *Wood*, 2020 WL

6817513, at *8-10 (concluding that vote-dilution injury is not "cognizable in the

equal protection framework"); *Donald J. Trump for President, Inc. v. Boockvar*,

No.  2:20-CV-966,  2020  WL 5997680 at *45–46 (W.D. Pa. Oct. 10, 2020)).

With respect to Plaintiffs' substantive Due Process Clause claim in Count

III, which this Court previously declined to address because it was so poorly pled,

(ECF No. 62, Opinion, PageID.3317, n. 5), to the extent it was pled as a vote-

dilution claim, such claims are analyzed under equal protection, not due process.

*See, e.g*., *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (specific amendment applies

14

over generalized concept of substantive due process).  And while the Sixth Circuit has held that due process may be "implicated" in "exceptional cases where a state's *voting system* is fundamentally unfair," and leads to "massive disenfranchisement and unreasonable dilution of the vote," *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008) (emphasis added),  Plaintiffs did not allege widespread disenfranchisement through system-wide process failures, but rather localized and sporadic failures to follow election statutes.  *See Northeast Ohio Coalition for the Homeless v. Husted,* 696 F.3d 580, 597 (6th Cir. 2012).

Finally, in Count IV, Plaintiffs alleged violations of state election statutes relating to challengers and precinct inspectors, and the posting of information regarding absent voter ballots, in connection with the City of Detroit's election. (ECF No. 6, Am. Compl., PageID.949-953.)  These state-law claims were plainly barred by the Eleventh Amendment.  *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984).  Moreover, these claims were completely misdirected at the named Defendants, and remedies for violating any of these laws was not disenfranchisement.

These arguments were made in the State Defendants' December 2 response in opposition to the preliminary injunction, (ECF No. 31, PageID.2162), and again in their December 22 motion to dismiss, (ECF No. 70, PageID.3350).  They were also made by Intervenors City of Detroit, the DNC, and the MDP in their

respective responses, (ECF No. 36, DNC & MDP Resp, PageID.2486; ECF No. 39, Detroit Resp, PageID.2808), and motions, (ECF No. 72, DNC & MDP Mot, PageID.3433; ECF No. 73, Detroit Mot, Page ID.3544.)

Despite their argument to the contrary, Plaintiffs did not have a reasonable legal basis to bring their claims against the State Defendants in federal court.  And when they filed an amended complaint, a motion for emergency injunctive relief, took appeals that they failed to prosecute expeditiously, declined to dismiss after the December 14, and forced Defendants to file motions to dismiss, Plaintiffs vexatiously multiplied these proceedings.  Their conduct fell far short of the obligations owed by members of the bar to this Court.  *Salkil v. Mount Sterling Tp. Police Dep't,* 458 F.3d 520, 532 (6th Cir. 2006).

Indeed, this case was not some garden-variety, civil litigation.  Plaintiffs attacked the integrity of Michigan's election of the President of the United States, and the votes of millions of Michiganders.  Plaintiffs asked this Court to declare a new winner by judicial fiat.  This Court recognized the unprecedented scope of the relief requested, and other federal courts around the country made similar observations in the cases before them. *See, e.g.*, *Wood*, 2020 WL 6817513, at *13 ("To interfere with the result of an election that has already concluded  would  be unprecedented  and  harm  the  public  in  countless  ways."); *Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771-pp, 2020 WL 7250219, at *1 (E.D.  Wis.

16

Dec. 9, 2020) ("Federal judges do not appoint the president in this country. One wonders why the plaintiffs came to federal court and asked a federal judge to do so."), appeal docketed, No. 20-3448 (7th Cir. Dec. 16, 2020); *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261, at *16 (D. Ariz. Dec. 9, 2020) ("Allegations that find favor in the public sphere of gossip and innuendo cannot be a substitute for earnest pleadings and procedure in federal court. They most certainly cannot be the basis for upending Arizona's 2020 General Election."); *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992, at *1 (M.D. Pa. Nov. 21, 2020) ("This Court has been unable to find any case in which a plaintiff has sought such a drastic remedy in the contest of an election, in terms of the sheer volume of votes asked to be invalidated."), aff'd 830 Fed. Appx. 377, 388 (3d Cir. Nov. 27, 2020) ("[T]he . . . Complaint seeks breathtaking relief: barring the Commonwealth from certifying its results or else declaring the election results defective and ordering the Pennsylvania General Assembly, not the voters, to choose Pennsylvania's presidential electors.")

The purpose of a sanctions award under § 1927 is to "deter and punish those who abuse the judicial process." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 645 (6th Cir. 2006). Plaintiffs' legal claims were

baseless and tore at the very fabric of our American democracy.  Plaintiffs should be sanctioned for their unreasonable perpetuation of these claims.

### E.    Plaintiffs' attempt to re-argue and supplement the factual basis for the lawsuit is unavailing.

Plaintiffs spend twenty pages of their brief re-arguing their alleged proofs of fraud, i.e., the affidavits and "expert" reports they submitted in support of their amended complaint and motion and describing alleged additional "evidence" of fraud that Plaintiffs did *not* rely on in their earlier pleadings, and suggest they were wrongly denied an evidentiary hearing and that a hearing should be held now. (ECF No. 112, PageID.4640-4661.)

Notably, Plaintiffs filed their amended complaint and emergency motion on Sunday, November 29, 2020, and requested relief before Tuesday, December 8, 2020, (ECF No. 7, PageID.1846-47), leaving a mere six business days for all briefing to be completed and a decision entered by this Court.  There was no time to hold an evidentiary hearing, nor did Plaintiffs even propose how the Court and the parties could have a conducted a hearing of hundreds of witnesses and purported experts in that time frame.  As it was, the State Defendants did not have time to adequately respond to this "evidence" by securing their own witnesses and experts in the two business days they were given to respond to the injunction motion.

Further, Plaintiffs' request for an evidentiary hearing rings hollow.  If Plaintiffs had really wanted their alleged evidence of fraud tried before this Court Plaintiffs would not have voluntarily dismissed this case.  Instead, Plaintiffs would have opposed the State Defendants' and Intervenors' motions to dismiss and/or sought to amend their complaint accordingly to press their claims and litigate this case.  Asking for a hearing now is too late and is an obvious effort by Plaintiffs to resuscitate their inflammatory claims of fraud.

As for Plaintiffs' "new" or "additional" evidence, they cite a Georgia federal court decision discussing that state's use of ballot-marking devices by Dominion Voting Systems, which devices and associated software Michigan does not use. (ECF No. 112, PageID.4645-46) (quoting *Curling v. Raffensperger*, Case No. 17-cv-2989; 2020 WL 5994029 (N.D. Ga. 2020).)  Plaintiffs also note that the Oversight Committees for the Michigan House and Senate, which held six hearings regarding the November election, heard testimony from over 88 people, including people making many of the same allegations of fraud regarding the events at the TCF Center and the use of Dominion Voting Systems.  (*Id.*, PageID.4646-4650.) But neither Committee issued any findings or report determining that any fraud occurred.[4]  In fact, former Chair Senator Ed McBroom issued a statement

---

[4] *See* press release by former Chair Representative Matt Hall, February 1, 2021, and January 25, 2021, letter, available at https://gophouse.org/posts/rep-hall-lays-out-framework-for-improving-elections-in-new-legislative-term.

accepting that the reporting error in Antrim County was the result of human error, not rigged voting systems.[5]

Plaintiffs also cite a January 6, 2021 study regarding absentee ballot fraud by John Lott, Ph.D., (*id*., PageID.4650), which the City of Detroit noted in its brief was roundly criticized for its methodology and even the author conceded error in portions of his study.  (ECF No. 103, Detroit Reply, PageID.4197-98.)  Last, Plaintiffs point out that Mike Lindell, of "MyPillow.com" fame, produced a biased, one-sided movie purporting to document election fraud in Michigan and other states.  (ECF No. 112, PageID.4650-51.)  But anyone can make a movie, and Plaintiffs do not purport that Lindell is an expert in Michigan Election law or election security.  Further, continuing to give "air time" to these same claims of fraud in Michigan's election does not make these false claims true.

Plaintiffs then launch into a summary of their alleged "expert" reports, which supposedly demonstrate vote-flipping and other frauds.  (*Id*., PageID.4651-4660.)  But these reports were simply not credible as they were the product of flawed statistical analyses, supposition, and speculation.  Defendants DNC and MDP succinctly described for this Court the flaws in these reports in their response in opposition to Plaintiffs' motion for injunctive relief, which they supported with

---

[5] *See* Statement by Senator McBroom, December 22, 2020, available at https://www.senatoredmcbroom.com/mcbroom-statement-on-dominion-voting-systems-oversight-committee-testimony/.

expert reports as well.  (*See* ECF No. 36, DNC & MDP Resp, PageID.2498-2505.)

The City of Detroit also addressed the reports in their response to Plaintiffs'

motion.  (*See* ECF No. 39, Detroit's Resp, PageID.2830-2833.)

Plaintiffs' wildly improbable claims of fraud in the counting of ballots were

thus supported by just as improbable expert reports.  Notably, the Arizona District

Court was confronted with a similar lawsuit filed by Ms. Powell that included

similar reports by some of the same experts in this case (Briggs and Ramsland),

which that court rejected as implausible as well.  *See Bowyer*, 2020 WL 7238261

at * 12-15.

Plaintiffs' claims in this case simply were not plausible under the standards

set forth in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) and *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  Further, fraud must be plead with particularity.

Fed. R. Civ. P. 9(b). *See Sanderson  v.  HCA-Healthcare Co.,* 447 F.3d 873, 877

(6th Cir. 2006).  Contrary to these well-established pleading standards, Plaintiffs'

theory of massive, coordinated acts by local election officials, Dominion software,

and foreign actors to perpetuate fraud by rigging the vote in favor of President

Biden defied all common sense and required great leaps as to both fact and logic.

This case should never have been filed, and the Plaintiffs' perpetuation of the

litigation past the filing of their initial complaint was objectively unreasonable, and

fully merits sanctions under § 1927 or pursuant to this Court's inherent authority to issue sanctions.[6]

## CONCLUSION AND RELIEF REQUESTED

For all the reasons discussed above and in their principal brief, Defendants Governor Gretchen Whitmer and Secretary of State Jocelyn Benson request that this Court enter an Order granting their motion for sanctions under 28 U.S.C. § 1927 or the Court's inherent authority, and award attorneys' fees in the amount of $11,071.00 to the Michigan Department of Attorney General.

Respectfully submitted,

DANA NESSEL
Attorney General

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
P55439

Dated:  March 11, 2021

---

[6] Plaintiffs did not expressly address Defendants' alternative request that the Court issue sanctions pursuant to its inherent authority. Nor did Plaintiffs object to or address the calculation and amount of attorney fees requested by the undersigned counsel.

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2021, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659