# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

TIMOTHY KING, MARIAN SHERIDAN,
JOHN HAGGARD, CHARLES RITCHARD,
JAMES HOOPER, DAREN RUBINGH,

                  Plaintiffs,

v.

GRETCHEN WHITMER, in her
official capacity as the Governor of the
State of Michigan, JOCELYN
BENSON, in her official capacity as
Michigan Secretary of State and the
Michigan BOARD OF STATE
CANVASSERS,

                  Defendants,

and

CITY OF DETROIT, DEMOCRATIC
NATIONAL COMMITTEE and
MICHIGAN DEMOCRATIC PARTY,

                  Intervenor-Defendants.

No. 2:20-cv-13134
Hon. Linda v. Parker
Mag. R. Steven Whalen

---

Stefanie Lambert Junttila (P71303)
Attorney for Plaintiffs
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 963-4740
attorneystefanielambert@gmail.com

Scott Hagerstrom (P57885)
Attorney for Plaintiffs
222 West Genesee
Lansing, MI 48933
(517) 763-7499
scotthagerstrom@yahoo.com

Gregory J. Rohl (P39185)
Attorney for Plaintiffs
41850 West 11 Mile Road, Suite 110
Novi, Michigan 48375
(248) 380-9404
gregoryrohl@yahoo.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713(
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
(517) 335-7659
meingasth@michigan.gov
grille@michigan.gov

David Fink (P28235)
Attorney for Intervenor City of Detroit
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfrink@finkbressack.com

Mary Ellen Gurewitz (P25724)
Attorney for Intervenor DNC/MDP
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
(313) 204-6979
maryellen@cummingslawpllc.com

**PLAINTIFFS' RESPONSE TO DEFENDANTS WHITMER AND BENSON'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927**

Plaintiffs, Timothy King, Marian Sheridan, John Haggard, Charles Ritchard, James Hooper, and Daren Rubingh ("Plaintiffs"), by and through their counsel, file this their Response to Defendants Whitmer and Benson's Supplemental Brief in Support of Motion for Sanctions under 28 U.S.C. § 1927.[1]

## QUESTION PRESENTED

Whether sanctions can be imposed under Section 1927 for the mere filing of a substantial complaint supported by sworn affidavits and in violation of the core of the Constitution: the Right to Petition the government for grievance.

## INTRODUCTION AND BACKGROUND

Defendants Whitmer and Benson have filed a supplemental brief in support of their motion for sanctions under 28 U.S.C. § 1927. The purpose of their brief is to direct this Court to a lawsuit filed the United States District Court, District of

---

[1] State Defendants cite to *NCMIC Ins. Co. v. Smith*, 375 F. Supp. 3d 831, 836 (S.D. Ohio 2019) to support their motion for leave to file a Supplemental brief. But that case, however, makes clear that the standard for leave rests on the question of prejudice. *Id.* Plaintiffs are the ones suffering prejudice from Defendants repeated and dilatory filings asking for the imposition of sanctions and for disbarment of plaintiffs' attorneys. As the Court knows from prior filings, Defendants have tried their best to stir up public outrage against Plaintiffs through ad hoc press interviews and press announcements where they maliciously accuse plaintiffs and their attorneys of having blood on their hands for having caused the January 6 riots at the Capitol. [ECF 112]. Indeed, the Attorney General's office put out a public statement announcing the filing of this most recent Supplemental brief filled with the same incendiary, self-promoting bluster as in previous announcements. See https://www.michigan.gov/ag/0,4534,7-359-92297_47203-556385--,00.html. But Plaintiffs were not given an opportunity to oppose Defendants' submission. Defendants filed the Motion for Leave on April 6, 2021 and the Court granted the Motion by text Order on April 9, 2021.

3

Columbia, styled *US Dominion, Inc. et al v. Powell, et al*, 21-cv-00040-CJN (D.D.C. 2021) ("Dominion Action"). Defendants' argument is that a Sydney Powell "all but admits that she and her co-counsel here have engaged in sanctionable conduct before the court." *Defendants' Brief*, at 1. Defendants' new argument fails for the reasons set forth in this brief.

On January 8, 2021, Dominion Voting Systems and its affiliates sued Sidney Powell in federal court in the District of Columbia for defamation. But this was not an isolated lawsuit. Dominion also sued Rudolph Guliani (Case No. 1:21-cv-00231) and My Pillow and Michael J. Lindell (Case No. 1:21-cv-00445). Simultaneously with the filing of each lawsuit, Domininon filed multiple "*Notice of Designation of Related Civil Cases Pending in this or other United States Court*." Dominion wanted the court and everyone else to know that each case was not mutually exclusive but were all connected. Defendants in this case did not tell this Court about these related cases or their impact in each other.

In its lawsuit against Ms. Powell, Dominion claimed that Ms. Powell made false and defamatory statements about its voting machines and software used in the 2020 general election through a number of tweets and appearances on television and radio, and at rallies and press conferences. (ECF 118-2, Exhibit B at p. 74-119.) Ms. Powell moved to dismiss the complaint under FRCP 12(b)(6) arguing, among other things, that she cannot be held liable for defamation because all her statements were based on facts she had presented to courts around the country through sworn affidavits, declarations, expert reports and documentary evidence. In her brief, Ms.

4

Powell was making that point that as a matter of law, opinions are not statements of fact. This is a simple concept that is part of well-developed federal jurisprudence. Indeed, based on case law, Ms. Powell's statements are not legally considered "fact." Rather, by placing her statements in the broad and specific context of political debate, there are legally considered "opinion." "When 'the bases for . . . the conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related.'" *Biospherics, Inc. v. Forbes, Inc.* 151 F.3d 180, 185 (4th Cir. 1998) (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.3d 1087, 1093 (4th Cir. 1993)); see also *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994) ("Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation.")

The national media misunderstood this statement and widely panned it as "an admission." Of course we should expect this from the media. However, the State Defendants know better. Rather than accept the statement as a legal arguments – for which it was intended in the context of a legal documents – the State Defendants have now contrived a so-called "admission" from the Dominion brief that says Ms. Powell concedes that her election fraud theories were not believable, or that she never investigated the claims she brought in this court. In fact, the State Defendants intentionally mislead this Court when they state:

5

> Addressing statements made by Plaintiffs in this action, Ms. Powell concedes in the Dominion Action that "no reasonable person would conclude that the statements were truly statements of fact."

The State Defendants' attorneys should know better; and indeed, should be sanctioned for filing this frivolous brief based on the intentional misrepresentation of a legal argument. As explained herein, the snippets of partial sentences and paragraphs taken out of context by the State Defendants to sow a false narrative and a phony argument do not support their frivolous motion for $11,000 in sanctions. These State Defendants have actually engaged in the very same conduct they try to condemn. They pathetically believe that such malicious and unethical conduct will bolster their political careers. This Court should not be misguided by the State Defendants' continued frenzy of frivolous and repetitive filings, even though, sadly enough, they are brought by the highest officers in the state.

## ARGUMENT

The Dominion Action involves claims of defamation and deceptive trade practices – claims entirely separate, on law and on the facts, from the matter before this Court. (ECF 118-2, Exhibit B at pp. 74-124.) Dominion alleges that Ms. Powell made false and defamatory statements through a number of tweets and appearances on television and radio, and at rallies and press conferences. (ECF 118-2, Exhibit B at p. 74-119.) Ms. Powell responded with a Memorandum of Law in Support of Defendants' Motion to Dismiss (hereinafter referred to as the "Memorandum"), under, among other things, FRCP 12(b)(6), which discussed Dominion's failure to state a claim because the offensive statements attributable to Ms. Powell alleged in Dominion's complaint are constitutionally protected and not actionable. (*See* ECF

6

118-2, Exhibit A.) Similar motions were filed in the related actions by My Pillow, Michael J. Lindell, and Rudolph Guiliani, which also point of the reasons why Dominion's collective lawsuits will be dismissed. See Exhibits C and D.

Defendants misrepresent the arguments of Ms. Powell's counsel in the Memorandum, stating that in "discussing statements that form the very foundation of this action, she admits that 'no reasonable person would conclude that the statements were truly statements of fact.'" (ECF 118-2 at p. 6.) Using this out of context snippet, Defendants attempt to link Ms. Powell's legal arguments on a Rule 12(b)(6) motion to a defamation claim in a case pending in the United States District Court for the District of Columbia, to the frivolous sanctions motion filed against her here under § 1927. This is nonsense.

The Dominion Memorandum's explanation that "no reasonable person would conclude that the statements were truly statements of fact" was not an admission that the complaint filed in this court was not based on facts. A simple reading of the full context of the brief demonstrates nothing of the sort. Specifically, the statement was made as part of a full discussion of how, under applicable Colorado law (Dominion is a Colorado company), Powell's statements would not be actionable for defamation **because she disclosed the underlying facts supporting her statements and her statements were legally opinion**.

The Memorandum first sets out a general discussion of the applicable defamation law. There, the Memorandum cites the two-step test set down by the

7

Colorado Supreme Court in *Keohane v. Stewart,* 882 P.2d 1293 (Colo. 1994) for how to determine whether statements are actionable for defamation:

> In *Keohane*, the Colorado Supreme Court identified a two-step inquiry to determine whether a statement is protected. The first is whether the statement is "sufficiently factual to be susceptible of being proved true or false." *Id.* (quoting *Milkovich*, 497 U.S. at 20). The ***second is whether "reasonable people" would conclude that the assertion is one of fact***. *Id.* . . .
>
> ***Of particular importance in evaluating the actionability of a statement is whether the underlying facts on which it is based have been disclosed***. In *NBC Subsidiary*, decided the same day as *Keohane*, the Colorado Supreme Court applied this test in determining that two broadcasts stating that the plaintiff's living-will package was a "scam," and that plaintiff's customers had been "totally taken" were not actionable. 879 P.2d at 7-8. Discussing the United States Supreme Court's decision in *Milkovich*, the Colorado Supreme Court noted that the statements were based on facts disclosed during the broadcasts. The Court thus concluded:
>
>> [*Milkovich*] unquestionably excludes from defamation liability not only statements of rhetorical hyperbole – the type of speech at issue in the Bressler-Letter Carriers-Falwell cases – ***but also statements clearly recognizable as pure opinion because their factual premises are revealed***. Both type of assertions have an identical impact on readers – neither reasonably appearing factual – and hence are protected equally under the principles espoused in Milkovich.
>
> *Id.* at 12 (brackets in original) (citing *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 731 n.13 (1st Cir. 1992)).
>
> ***This makes sense, because "when a defendant provides the facts underlying the challenged statements, it is 'clear that the challenged statements represent his own interpretation of those facts,' which 'leav[es] the reader free to draw his own conclusions***.'" *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 11 at n. 7 (D.D.C. 2019) (quoting *Adelson v. Harris*, 973 F. Supp. 2d 467, 490 (S.D.N.Y. 2013), *aff'd* 774 F.3d 803 (2d Cir. 2014)). ***"When 'the bases for ... the conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related.'"*** *Biospherics, Inc. v. Forbes, Inc.* 151 F.3d 180, 185 (4th Cir. 1998) (quoting *Chapin v. Knight-Ridder,*

8

*Inc.*, 993 F.3d 1087, 1093 (4th Cir. 1993)); see also Moldea v. N.Y. Times Co., 22 F.3d 310, 317 (D.C. Cir. 1994) *("Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation.")* (quoting *Moldea v. New York Times Co.*, 15 F. 3d 1137, 1144-45 (D.C. Cir. 1994)).

Memorandum, pp 20-22 (ECF 118-2, Exhibit A pp 20-22.)

It is against this legal backdrop, that the Memorandum continued to make the point that: "Given the highly charged and political context of the statements, it is clear that Powell was describing the facts on which she based the lawsuits she filed in support of President Trump." Memorandum at 32.

The Memorandum also focused on the First Amendment protections afforded to Ms. Powell's statements. It elaborated on the Constitutional basis for public debate on matters of public concern, arguing that Powell's claims were opinions and legal theories of matters relating to a free and fair election, stating:

> In short, the speech at issue here is not actionable. As political speech, it lies at the core of First Amendment protection; such speech must be "uninhibited, robust, and wide-open." *N.Y. Times Co.*, 376 U.S. at 270. Additionally, in light of all the circumstances surrounding the statements, their context, and the availability of the facts on which the statements were based, it was clear to reasonable persons that Powell's claims were her opinions and legal theories on a matter of utmost public concern. Those members of the public who were interested in the controversy were free to, and did, review that evidence and reached their own conclusions—or awaited resolution of the matter by the courts before making up their minds. Under these circumstances, the statements are not actionable. *Keohane*, 882 P.2d at 1299; *NBC Subsidiary*, 879 P.2d at 11, 12; *Milkovich*, 497 U.S. at 20.

(ECF 118-2, Exhibit A at p. 33.)

9

Additionally, Ms. Powell's statements discussed in the Dominion Memorandum were made as part of "the normal process of litigating issues of momentous significance and immense public interest." (ECF 118-2, Exhibit A at p. 34.) As cited in the Memorandum, these are the very rights protected by the First Amendment – and those that are applied with particular force where a party "[r]esort[s] to the courts to seek vindication of constitutional rights" or "employs constitutionally privileged means of expression to secure constitutionally guaranteed civil rights." *NAACP v. Button*, 371 U.S. 415, 442-43 (1963).

Defendants' bad-faith arguments are further revealed in their effort to twist the free speech arguments of Powell's counsel in the Dominion Action. Defendants allege that Powell:

> tacitly admits that neither she nor her co-counsel made any effort to investigate the veracity they relied upon in bringing Plaintiffs' claims, arguing that "[l]awyers involved in fast-moving litigation" cannot be held to account for blindly relying on statements that "turn out not to be true."

(ECF 118-2 at p. 7.)

This argument is false. The Memorandum never stated that lawyers cannot be held to account. Instead, the Memorandum justifies lawyers being afforded the same type of Constitutional protections as journalists, stating, "[l]awyers involved in fast-moving litigation concerning matters of transcendent importance, who rely on sworn declarations, are entitled to no less protection" than journalists. (ECF 118-2, Exhibit A at p. 37.) The Memorandum further noted that that journalists – and thus lawyers – who sometimes repeat statements from sources that "turn out not to be true," would lose the protection afforded to them by the Supreme Court in *N.Y. Times Co. v.*

10

*Sullivan* if they were "drawn into long court battles designed to deconstruct the accuracy of sources on which they rely." (ECF 118-2, Exhibit A at pp. 36-37.)

Unable to argue the merits, Defendants would have this Court accept their false premise that "Ms. Powell asserts that the First Amendment excuses her co-counsel and her from having to investigate the veracity of the statements on which she based Plaintiffs' claims in this case." (ECF 118-2 at p. 8.) This is a remarkably inaccurate statement that tries to obscure the distinction between a defamation defense and the standard for sanctions. Again, the Memorandum was making an argument based on existing defamation law that Dominion's complaint was insufficient because First Amendment protections are so robust that:

> reckless conduct is not measured by whether a reasonably product man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.

(ECF 118-2, Exhibit A at p. 37, citing *St. Amant v. Thompson*, 397 U.S. 727, 731 (1968).)

In sum, there is no admission by Ms. Powell in the Dominion Action that the facts presented to this Court were false or non-believable. There is no admission that Ms. Powell failed to investigate the facts before bringing this case.

Defendants' tired and speculative assertions cannot form the basis of a 1927 motion. 28 USC § 1927 speaks to counsel that "multiplies the proceedings in any case unreasonably and vexatiously."[2] As set forth in plaintiffs' prior submissions, there is

---

[2] Specifically, 28 USC § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so

11

no basis whatsoever to apply section 1927 here. This action was commenced by a complaint filed on Wednesday evening November 25, 2020 [ECF 1], Thanksgiving Eve, and amended on Sunday November 29, 2020 [ECF 6]. The case was effectively ended by the court's decision on December 7, 2020 [ECF 62], which held, among other things that plaintiffs lacked standing and hence this Court has no subject matter jurisdiction. There simply is no way, under these undisputed facts, that counsel multiplied the proceedings "unreasonably and vexatiously." None of the cases cited by Defendants come within miles of imposing sanctions on the facts we have here.

*Salkil v. Mount Sterling Twp. Police Dep't.*, 458 F.3d 520, 532 (6th Cir. 2006), cited by Defendants, is inapposite. There, the Sixth Circuit in fact *reversed* an order imposing sanctions under Rule 11 and § 1927. *Salkil*, 458 F.3d at 527. While it noted that the district court's determination that the party lacked standing "was probably correct," the Sixth Circuit observed that the standing issue "was not a proper basis for Rule 11 sanctions" and that the attorney's failure to recognize the standing issue "most certainly did not constitute egregious misconduct." *Id. at 530, 532*. Similarly, Defendants also find no support in *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). That court, while addressing a Rule 60(b) post trial motion, in fact held that "an award of attorneys' fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct."

Defendants further cite *Shrock v. Altru Nurses Registry*, 810 F.2d 658, 661-662

---

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

12

(7th Cir. 1987), which is inapplicable. That case involved a suit by a *pro se* plaintiff who did not investigate the factual basis of his lawsuit and the Court found that the fact that he was unrepresented did not excuse his failure to investigate. *Shrock*, 810 F.2d at 662. That is not the case here.

Plaintiffs submitted hundreds of pages of exhibits, scholarly articles, government sources, Congressional statements and sworn declarations and affidavits from both fact witnesses and experts in support of their claims. State Defendants admittedly argued in the most recent motion for sanctions that while this case has not required the filing of numerous pleadings by defense counsel, given the length and complexity of Plaintiffs' filings, the novel claims and unprecedented relief requested, the case has involved significant review, research, and drafting. (See ECF 105, p. 28).

A more recent Seventh Circuit decision affirmed a denial of sanctions explaining that "[t]he federal courts have the inherent power to impose a wide range of sanctions upon parties for abusive litigation. **This inherent power, however, is limited to "cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders."** *Id*. at 799 (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 47, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *see also Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009)), (emphasis added).

Further, the Sixth Circuit recently reiterated the high bar for imposing sanctions under 28 U.S.C. § 1927 when it held:

> In our view, sanctions should generally be reserved only for "truly egregious cases of misconduct." (*Williams v. Shelby Cnty. Sch. Sys.*, 815

13

F. App'x 842, 846 (6th Cir. 2020) (quoting *Ridder*, 109 F.3d 288, 299 (6th Cir. 1997)).

*Saenz v. Kohl's Dep't Stores, Inc.*, 2020 FED App. 0618N (6th Cir. 2020), 2020 U.S. App. LEXIS 34753, *11, 15, 2020 WL 6393335. The Sixth Circuit has also stated that the test for whether sanctions should be imposed is whether the attorney's conduct was **objectively reasonable under the circumstances**, which is a mixed question of law and fact. *Business Guides v Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 544 (1991); *Mann v. G & G Manufacturing, Inc.*, 900 F.2d 953, 958 (6th Cir. 1990) (*citations omitted*). While the district court is given some discretion to determine whether the conduct of the attorney was reasonable, the court "is expected to avoid using the wisdom of hindsight and should test the signor's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Mann, Id.* (*citations omitted*).

Moreover, the Supreme Court observed in considering a similar statute providing for recovery of attorney's fees for frivolous claims:

> [I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic would discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

State Defendants have not presented any admissible evidence to permit this Court to conclude that any counsel in this case engaged in egregious misconduct. They simply parrot newspaper articles, general statements from officials who did not appear in this action and were not subject to cross-examination, and a general self-

14

righteous indignation by the political left against anyone who would possibly challenge the results of an election held in Michigan. Let us not forget that the State of Texas, joined by 18 other state Attorney Generals, asked the United States Supreme Court to throw out Michigan's 2020 election results because they were the result of fraud. [ECF 93]. Clearly, the allegations set forth in the Complaint here were not a singularly held belief by one set of attorneys, as the State Defendants would have this Court believe.

## **CONCLUSION**

Defendants' latest filing is not good-faith legal argument. It is political bluster and a continued abuse of process. The State Defendants' motion for sanctions should be denied.

| | |
|---|---|
| Dated: April 23, 2021 | */s/ Stefanie Lambert Juntilla* <br> Stefanie Lambert Junttila (P71303) <br> Attorney for Plaintiffs <br> 500 Griswold Street, Suite 2340 <br> Detroit, MI 48226 <br> (313) 963-4740 <br> attorneystefanielambert@gmail.com |

15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2021, I electronically filed the foregoing document with the Clerk of this Court using the ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

/s/ Stefanie Lambert Junttila
STEFANIE LAMBERT JUNTTILA
(P71303)
Attorney for the Plaintiffs
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(313) 963-4740
attorneystefanielambert@gmail.com
