IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KING, MARIAN SHERIDAN,
JOHN HAGGARD, CHARLES RITCHARD,
JAMES HOOPER, DAREN RUBINGH,

    Plaintiffs,     No. 2:20-cv-13134

v.            Judge Linda V. Parker

              Mag. R. Steven Whalen

GRETCHEN WHITMER, in her
official capacity as the Governor of the
State of Michigan, JOCELYN
BENSON, in her official capacity as
Michigan Secretary of State and the
Michigan BOARD OF STATE
CANVASSERS,

     Defendants,

and

CITY OF DETROIT, DEMOCRATIC
NATIONAL COMMITTEE and
MICHIGAN DEMOCRATIC PARTY,

     Intervenor-Defendants.

---

**Supplemental Brief of Gregory Rohl, Brandon Johnson,
Howard Kleinhendler, Sidney Powell, Julia Haller, and Scott
Hagerstrom per This Court's July 12, 2021 Order [ECF No. 150]**

# Table of Contents

Summary of Argument ..........................................................................................1

Argument ...............................................................................................................3

  1.  The Court cannot issue sanctions under Rule 11 or its inherent
      authority. ......................................................................................................3

  2.  Sanctions are not warranted under § 1927 because the Attorneys did
      not unreasonably and vexatiously multiply these proceedings............8

  3.  Federal courts have authority to grant injunctive relief to protect the
      fundamental right to have one's vote counted. .....................................11

  4.  The Attorneys' reliance on the affidavits submitted with the complaint
      was not misconduct and warrants no sanctions. ...................................16

Conclusion............................................................................................................20

Certificate of Service ..........................................................................................21

# Table of Authorities

## *Cases*

*Acosta v. Pablo Restrepo,*
470 F. Supp. 3d 161 (D.R.I. 2020) .......................................................................14

*Beverly v. Shermeta Law Group,*
Case No. 2:19-cv-11473-TGB (E.D. Mich. May 20, 2020)..............................10

*Bush v Gore,*
531 U.S. 98 (2000) ................................................................................... 11, 14, 15

*Carter v. Hickory Healthcare, Inc.,*
905 F.3d 963 (6th Cir. 2018)...............................................................................10

*Chambers v. Nasco, Inc.,*
501 U.S. 32 (1991) ..................................................................................................5

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990) ................................................................................................3

*Costantino v. City of Detroit,*
950 N.W.2d 707 (Mich. 2020).................................................................... 17, 18

*Curtis v. Oliver,*
479 F. Supp. 3d 1039 (D.N.M. 2020) .................................................................13

*Esshaki v. Whitmer,*
813 Fed. Appx. 170 (6th Cir. 2020)....................................................................13

*Ford v. Tennessee Senate,*
No. 06-2031 D V, 2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006) ..................15

*Griffin v. Burns,*
570 F.2d 1065 (1st Cir. 1978) ..............................................................................13

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*,
 558 F.3d 1368 (Fed. Cir. 2009)...............................................................................1

*In re Cardizem CD Antitrust Litig.*,
 481 F.3d 355 (6th Cir. 2007)...................................................................................3

*Kidis v. Reid*,
 976 F.3d 708 (6th Cir. 2020)........................................................................ 8, 9, 20

*Krieger v. City of Peoria*,
 No.CV–14–01762–PHX–DGC, 2014 WL 4187500 (D.Ariz. Aug. 22, 2014).12

*Larry E. Parrish, P.C. v. Bennett*,
 989 F.3d 452 (6th Cir. 2021)...................................................................................8

*Michigan Div.-Monument Builders of N. Am. v. Michigan Cemetery Ass'n*,
 524 F.3d 726 (6th Cir. 2008)...................................................................................1

*Moore v. Johnson*,
 No. 14–11903, 2014 WL 4924409 (E.D. Mich. May 23, 2014)........................14

*Morris v. Peterson*,
 871 F.2d 948 (10th Cir. 1989)................................................................................3

*Penn v. Prosper Business Development Corp.*,
 773 F.3d 764 (6th Cir. 2014)..................................................................................7

*Reynolds v. Sims*,
 377 U.S. 533 (1964) .............................................................................................15

*Ridder v. City of Springfield*,
 109 F.3d 288 (6th Cir. 1997)....................................................................... 8, 9, 10

*Shannon v. Jacobowitz*,
 301 F. Supp. 2d 249 (N.D.N.Y. 2003) .................................................................12

*Shannon v. Jacobowitz,*
   394 F.3d 90 (2d Cir. 2005)...................................................................................13

*Webster v. Sowders*,
   846 F.2d 1032 (6th Cir. 1988)..............................................................................3

*Williams Huron Gardens 397 Trust v. Waterford Township,*
   2019 WL 659009 (E.D. Mich. 2019) ...................................................................7

*Williams v. Pennsylvania,*
   136 S.Ct 1899 (2016) ..........................................................................................19

### *Statutes*

28 U.S.C. § 1927...............................................................................................passim

### *Other Authorities*

Associated Press, *106 Congressional Republicans Join 17 state Attorneys General in Support of Texas Suit to Overturn Election Results in Ga., Mich., Pa., Wis.,* Market Watch, https://www.marketwatch.com/story/106-congressional-republicans-join-17-state-attorneys-general-in-support-of-texas-suit-to-overturn-election-results-in-ga-mich-pa-wis-01607658751 (last visited July 25, 2021) ................................................................................19

*Election Litigation: Case Studies in Emergency Election Litigation,* Fed. Jud. Center, https://www.fjc.gov/content/case-studies (last visited July 20, 2021).....................................................................................................................11

*Election Litigation: Voting Irregularities,* Fed. Jud. Center, https://www.fjc.gov/content/voting-irregularities (last visited July 20, 2021).....................................................................................................................12

William C. Smith, *Bush vs. Gore: Evermore,* 87-May ABAJ 16 (2001)..............14

iv

## *Rules*

Fed. R. Civ. P. 11............................................................................................. passim

Fed. R. Civ. P. 5....................................................................................................6

L.R. 83.20(d)(2)....................................................................................................6

## *Constitutional Provisions*

Const. 1963, art. 2, § 4 ........................................................................................18

## Summary of Argument

The hearing on July 12, 2021 laid to rest any basis for this Court to grant any sanctions against either the Plaintiffs or their Attorneys.[1] While this Court questioned the believability of a handful of factual affidavits, the Rule 11 inquiry does not turn on guesses about the truthfulness of an affidavit executed by an affiant whose credibility has not been vetted through the adversary process. On the contrary, in the Sixth Circuit, "the test for the imposition of Rule 11 sanctions is whether the individual attorney's conduct was reasonable under the circumstances." *Michigan Div.-Monument Builders of N. Am. v. Michigan Cemetery Ass'n*, 524 F.3d 726, 738-39 (6th Cir. 2008) (internal quotation marks and citation omitted).[2]

Affidavits are rarely filed in support of a complaint. Here, however, the Attorneys filed nearly 1,000 pages of evidence with the amended

---

[1] "Attorneys" refers to Gregory Rohl, Brandon Johnson, Howard Kleinhendler, Sidney Powell, Julia Haller, and Scott Hagerstrom. The Transcript of the July 12 proceedings is submitted as *Attachment A.*

[2] Other circuits have articulated similar tests. *See, e.g.*, *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368, 1375 (Fed. Cir. 2009) ("Before awarding Rule 11 sanctions, 'a district court must conduct a two-prong inquiry to determine (1) whether the complaint [or relevant document] is legally or factually "baseless" from an objective perspective, and (2) if the attorney has conducted "a reasonable and competent inquiry" before signing and filing it.'") (internal citations omitted; alteration in original).

complaint in this case. The immense work reflected in those affidavits and expert reports and counsel's testimony at the hearing demonstrate that the complaint was not baseless and that counsel conducted a reasonable and competent inquiry before filing it.

Further, the Rule 11 and § 1927 motions were improperly filed. First, the City of Detroit did not initially serve its Rule 11 Motion properly. The letter and outline of argument Nathan Fink served on December 15, 2020, was not the motion and accompanying 38-page brief filed on January 5, 2021. (*Attachment B, Safe-Harbor Notice*; Motion for Sanctions, ECF No. 78). Accordingly, the 21-day safe harbor period did not commence until January 5, 2021. Plaintiffs withdrew their complaint against the City of Detroit on January 14, 2021. (ECF No. 87). No other defendant or intervenor has filed a properly noticed Rule 11 Motion. This Court's *sua sponte* order to show cause under Rule 11 announced at the July 12, 2021 hearing is invalid under Fed. R. Civ. P. 11(c)(5)(B). It came after voluntary dismissal of Plaintiffs' claims against all parties. (ECF No. 86-92, 149).

There is also no basis for § 1927 sanctions. This Court's December 7, 2020 decision, issued eight days after Plaintiffs filed their amended complaint and TRO motion, effectively ended the Court's consideration of

2

the merits of the case. (ECF No. 62). Under these facts, there is no plausible basis upon which this Court may honestly conclude that plaintiffs "multiplie[d] the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927. And this Court cannot issue sanctions under § 1927 based on Plaintiffs' appeal and arguments to the Sixth Circuit and United States Supreme Court. See, e.g., *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 362 (6th Cir. 2007) (quoting *Morris v. Peterson*, 871 F.2d 948, 952 (10th Cir. 1989)), for the rule that "sanctioning 'attorneys for conduct on appeal is not within the authority of the district courts and is reserved to the court in which the appellate conduct occurred'").[3]

Accordingly, the Attorneys respectfully request that the Court deny all relief sought in the sanctions motions. (ECF Nos. 69, 78, 105).

## Argument

### 1. The Court cannot issue sanctions under Rule 11 or its inherent authority.

As an initial matter, several procedural issues limit the Court's ability

---

[3] *See also, e.g., Webster v. Sowders*, 846 F.2d 1032, 1039–40 (6th Cir. 1988). This court also cannot issue Rule 11 sanctions based on Plaintiffs' appeal and arguments before those courts. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406 (1990) ("On its face, Rule 11 does not apply to appellate proceedings.").

to grant sanctions. First, Federal Rule of Civil Procedure 11 states that a court may not impose monetary sanctions on its own motion unless it issues a show-cause order under Rule 11(c)(3) *before voluntary dismissal* or settlement:

(5) Limitations on Monetary Sanctions. The court *must not* impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, *unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal* or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

Fed. R. Civ. P. 11(c)(5) (emphasis added).

This Court has not complied with Rule 11. Plaintiffs dismissed all claims against Secretary Benson, the City of Detroit, Governor Whitmer, the Democratic National Committee, the Michigan Board of State Canvassers, and the Michigan Democratic Party on January 14, 2021. (ECF Nos. 86-92). The Court granted plaintiffs' motion to dismiss any claims against Robert Davis on July 9, 2021. (ECF No. 149, PageID.5267). The Court indicated at the July 12, 2021 hearing that it was considering imposing sanctions on its own motion. (*Attachment A,* July 12, 2021 Transcript, at 11). That notice was after dismissal of all claims. It is therefore insufficient under Rule 11(c)(3). In the words of Rule 11, the Court "must not" impose sanctions on its own motion,

4

having failed to provide notice under Rule 11(c)(3) before dismissal. Fed. R. Civ. P. 11(c)(3).

Relying on the Court's inherent authority to sanction misconduct does not avoid this problem. The comments accompanying Rule 11 indicate that its *procedures* are controlling when the Court exercises its inherent authority. *See* Fed. R. Civ. P. 11, 1993 cmts ("The power of the court to act on its own initiative is retained, but with the condition that this be done through a show cause order."); *id.* (stating that "the procedures specified in Rule 11 . . . should ordinarily be employed when imposing a sanction under the court's inherent powers").[4] Because the Court did not follow those procedures by issuing a show-cause notice under Rule 11(c)(3) before voluntary dismissal, it cannot impose sanctions under its inherent authority.

The Court is also unable to impose sanctions under Rule 11 based on the defendants' and intervenors' motions. Governor Whitmer and Secretary

---

[4] *Chambers v. Nasco, Inc.,* 501 U.S. 32 (1991), states that Rule 11's procedures are the norm when a court relies on its inherent authority. *Id.* at 50. ("…[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, *the court ordinarily should rely on the Rules rather than the inherent powe*r. But if in the informed discretion of the court, neither the statue nor the Rules are up to the task, the court may safely rely on its inherent power.") (emphasis added).

Benson's motion does not claim that they are entitled to sanctions under Rule 11. (ECF No. 105).[5] Intervenor Robert Davis seeks sanctions under Rule 11 but did not comply with Rule 11's safe-harbor requirements. (ECF No. 69). *See* Fed. R. Civ. P. 11(c)(2) (stating that a sanctions motion "must" be served under Fed. R. Civ. P. 5 at least 21 days before the motion is filed).

That leaves only the City of Detroit's motion. That motion says that counsel for Detroit served a copy of a motion for sanctions via email on December 15, 2020. (ECF No. 78, PageID.3617).[6] There can be no dispute, however, that the City of Detroit failed to serve the brief that it later filed with this Court. The City of Detroit tries to excuse this oversight by citing non-binding cases holding that Rule 11's safe-harbor requirement only requires service of a "motion." (*See* ECF No. 103, PageID.4191). That argument overlooks the rules that govern in *this* district. This Court's local rules state that each motion "*must* be accompanied by a single brief." L.R.

---

[5] Governor Whitmer and Secretary Benson suggest that the Court can award sanctions under its inherent authority. (ECF No. 105, PageID.4357). They ignore Fed. R. Civ. P. 11(c)(3), which establishes the procedure for court-initiated sanctions. That procedure was not followed here.

[6] A Rule 11 motion must be served under Rule 5. (Fed. R. Civ. P. 11(c)(2)). Further, Julia Haller and Brandon Johnson have never practiced in this court or applied for admission under L.R. 83.20(d)(2). This Court has no jurisdiction to sanction them.

7.1(d)(1)(A) (emphasis added). This Court would reject a motion filed without a brief as an improper motion. *Williams Huron Gardens 397 Trust v. Waterford Township,* 2019 WL 659009 (E.D. Mich. 2019) (unpublished) (*Attachment C)* (striking motion filed without brief and noting that even *pro se* litigants are supposed to consult and follow the Local Rules). In the same way, a safe-harbor motion without a brief is not a proper motion at all.

The City of Detroit's failure to comply with the Court's rules had a material impact on this case. The document that the City of Detroit served as its "safe harbor" notice did not cite a *single* case or fact supporting the City of Detroit's arguments. (*Attachment B, Safe-Harbor Notice*). It offered only conclusory statements devoid of legal or factual support. Thus, the Attorneys could not meaningfully consider the City of Detroit's legal position and decide whether to withdraw their complaint. *See Penn v. Prosper Business Development Corp.,* 773 F.3d 764, 767 (6th Cir. 2014) (stating that the safe-harbor requirement is "to allow the nonmovant a reasonable period to reconsider the legal and factual basis for his contentions …"). It was an empty notice that defeated the very purpose of Fed. R. Civ. P. 11. Consequently, sanctions under Rule 11 are not available here.

**2. Sanctions are not warranted under § 1927 because the Attorneys did not unreasonably and vexatiously multiply these proceedings.**

Because none of the parties complied with Rule 11's safe-harbor rules and this Court did not issue a show-cause order under Rule 11(c)(3) before dismissal, the only remaining authority to consider for sanctions is 28 U.S.C. § 1927. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions are appropriate under this rule when "an attorney objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Larry E. Parrish, P.C. v. Bennett,* 989 F.3d 452, 458 (6th Cir. 2021).

Sanctions under § 1927 do not require a showing of "subjective bad faith," but "the attorney in question must at least knowingly disregard the risk of abusing the judicial system, not be merely negligent." *Kidis v. Reid,* 976 F.3d 708, 723 (6th Cir. 2020). For example, an attorney was sanctioned in *Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir. 1997), because he pursued

8

a meritless claim for five years—even after the Court warned him against doing so. *See Kidis,* 976 F.3d at 723 (discussing *Ridder*).

The Attorneys did not multiply these proceedings. They filed a complaint on November 25, 2020. (ECF No. 1). They promptly amended the complaint (ECF No. 6) and filed a motion for a temporary restraining order (ECF No. 7). Just over a week later, on December 7, 2020, the Court issued an order denying it. (ECF No. 62). On January 14, 2021—not yet two months after filing their complaint—the plaintiffs voluntarily dismissed their claims. (ECF Nos. 86-91). In the meantime, there were intervention motions and various procedural motions, and briefing in response to those motions. But none of the Attorneys' actions vexatiously multiplied these proceedings. In other words, the facts of this case are a far cry from *Ridder.* A proceeding that wraps up in under two months does not qualify for sanctions under 28 U.S.C. § 1927—particularly since the plaintiffs voluntarily dismissed their claims after the Court indicated that they were not meritorious.

The defendants and intervenors may claim that simply initiating this lawsuit was enough for sanctions under 28 U.S.C. § 1927. However, as Judge Berg concluded last year in an order denying sanctions, "[c]ourts generally do not impose sanctions under 28 U.S.C. § 1927 based on the filing of an

initial complaint that turns out to be meritless." *Beverly v. Shermeta Law Group,* Case No. 2:19-cv-11473-TGB, slip op. at 3-4 (E.D. Mich. May 20, 2020) (citing cases).[7] Although *Ridder* seems at first blush to allow sanctions under § 1927 just for the initial complaint, Judge Berg correctly "read[ ] *Ridder* to be affirming a sanction for the five years of legal wrangling that resulted from the filing of the initial complaint—not for the filing of the complaint itself." *Id.* at *3.

Even if sanctions were appropriate under § 1927, the City of Detroit and Robert Davis are not entitled to them. A party seeking sanctions under 28 U.S.C. § 1927 has a duty to mitigate their damages. *Carter v. Hickory Healthcare, Inc.,* 905 F.3d 963, 970 (6th Cir. 2018) ("True, the party seeking sanctions under § 1927 must mitigate damages."). Robert Davis and the City of Detroit did the precise opposite of mitigating their damages: they chose to intervene in this proceeding, volunteering to spend time and money in

---

[7] *Carter v. Hickory Healthcare, Inc.,* 905 F.3d 963 (6th Cir. 2018), supports Judge Berg's conclusion. The Court cited "[*m*]*aintaining* a clearly time-barred lawsuit" as "a classic example of conduct that warrants a sanction." *Id.* at 969 (emphasis added). The Court noted that the plaintiff was told about the statute-of-limitations problem but "pressed on anyway." *Id.* "On this record," the Court wrote, "the court did not abuse its discretion in awarding sanctions." *Id.*

10

this litigation even though they were not sued. There was no need to do so. The defendants already had very capable attorneys. And if the plaintiffs' claims were as frivolous as Davis and the City of Detroit have claimed, they had no reasonable basis to believe that the defendants' counsel needed assistance. Even if there were a basis for sanctions under § 1927 (and there is not), the mitigation rule precludes any award for Robert Davis and the City of Detroit.

## 3. Federal courts have authority to grant injunctive relief to protect the fundamental right to have one's vote counted.

The defendants and intervenors have also presented erroneous arguments in support of their requests for sanctions. One of their primary themes is that there is no precedent for the relief the plaintiffs sought in this case. That is incorrect.

According to the Federal Judicial Center, federal district courts have adjudicated 3,622 election cases since 2000 – or since *Bush v Gore*, 531 U.S. 98 (2000). *See Election Litigation: Case Studies in Emergency Election Litigation,* Fed. Jud. Center, https://www.fjc.gov/content/case-studies (last visited July 20, 2021). An examination of those lawsuits belies defendants' argument that the relief sought in this case is unprecedented.

Consider *Krieger v. City of Peoria*, No. CV–14–01762–PHX–DGC, 2014 WL 4187500 (D. Ariz. Aug. 22, 2014) (unpublished) (*Attachment D*). There, a candidate for Peoria City Council was left off the ballot—twice. *Id.* at \*1. The city's solution was to count all votes from the first two ballots but allow voters to cast a third ballot that could replace their initial ballots. *Id.* at \*2. The court found that solution to be inadequate and contrary to the plaintiffs' due-process rights. *Id.* at \*6. The court therefore ordered exactly the kind of relief sought in this case: It prohibited the city from counting already-cast votes and ordered the city to hold a special election. *Id.* at \*7.[8]

Or consider *Shannon v. Jacobowitz,* 301 F. Supp. 2d 249 (N.D.N.Y. 2003). There, a voting machine malfunctioned, costing an incumbent candidate a victory. The district court issued an order enjoining the county board of elections from certifying a winner and enjoining the purported winner from taking office. *Id.* at 258. The Second Circuit Court of Appeals disagreed with the district court's analysis and vacated its injunctions. *Shannon v. Jacobowitz,*

---

[8] The Federal Judicial Center reports that "[t]he judge and the parties resolved issues of whether the special election would allow for a runoff election and how campaign finance rules would apply." *See Election Litigation: Voting Irregularities,* Fed. Jud. Center, https://www.fjc.gov/content/voting-irregularities (last visited July 20, 2021).

394 F.3d 90, 97 (2d Cir. 2005). But the fact that the district court awarded exactly the kind of injunctive relief that plaintiffs sought here belies the argument that this lawsuit is unprecedented. In fact, it shows that there is room for reasonable minds to disagree on this issue.

*Curtis v. Oliver,* 479 F. Supp. 3d 1039 (D.N.M. 2020), is another example. There, a Libertarian candidate was 26 votes shy in the primary election of qualifying for the general election. *Id.* at 1053. The Libertarian Party asserted that it "received feedback from its members that numerous voters, well above the 230-vote threshold, cast votes for" that candidate. *Id.* (cleaned up). Citing irregularities in vote counting, the candidate sought a recount. The court found sufficient evidence of irregularities in only one county—and it granted an injunction directing a recount in that county. *Id.* at 1148.

Federal courts have affected elections in other ways, too. *See, e.g., Esshaki v. Whitmer,* 813 Fed. Appx. 170, 171 (6th Cir. 2020) ("uphold[ing] the core of the [district court's] injunction, which enjoins the State from enforcing the statute's two ballot-access provisions at issue unless the State provides some reasonable accommodation to aggrieved candidates"); *Griffin v. Burns*, 570 F.2d 1065, 1066, 1077-80 (1st Cir. 1978) (affirming a district court order directing a new primary election and postponing the general election

13

in a Rhode Island municipality, and providing a framework for determining when federal intervention is appropriate); *Acosta v. Pablo Restrepo,* 470 F. Supp. 3d 161 (D.R.I. 2020) (suspending state election law requiring in-person solicitation only for 2020 because of pandemic-related exigencies); *Moore v. Johnson,* No. 14–11903, 2014 WL 4924409 (E.D. Mich. May 23, 2014) (unpublished) (*Attachment E*) (holding that Michigan statute regulating who can circulate petitions was invalid and ordering that the Wayne County Election Commission "shall place Mr. [John] Conyers on the ballot for the August 2014 primary election").

And, of course, in *Bush v. Gore,* 531 U.S. 98 (2000), the United States Supreme Court held that Florida's recount procedures were so unclear that they violated equal protection and due process. *Id.* at 110. It therefore ordered Florida to stop counting votes. *Id.* at 111. There was no doubt that, in doing so, the Supreme Court effectively decided the winner of the 2000 presidential election.[9] The Court even offered an apology of sorts for selecting the nation's president:

> None are more conscious of the vital limits of judicial authority

---

[9] *See, e.g.,* William C. Smith, *Bush vs. Gore: Evermore,* 87-May ABAJ 16 (2001) (noting that "the U.S. Supreme Court essentially decided the presidential election" in *Bush*).

14

than are the Members of this Court, and none stand more in admiration of the Constitution's design to leave the selection of the President to the people, through their legislatures, and to the political sphere. When contending parties invoke the process of the courts, however, it becomes our unsought responsibility to resolve the federal and constitutional issues the judicial system has been forced to confront.

*Bush,* 531 U.S. at 111.

At the July 12, 2021, hearing, the Court expressed skepticism about whether *Bush*'s holding—which decided a presidential election by *halting* a recount—could support deciding a presidential election by *ordering* a recount. (*Attachment A*, July 12, 2021 Transcript, at 25). *Bush* itself does not support such a limited reading. As Judge Bernice Donald wrote in 2006, "… [T]he lesson from *Bush v. Gore* is that there must be standards in place to assure the guarantees of the Equal Protection Clause, and that judicial review is appropriate to protect fundamental federal rights." *Ford v. Tennessee Senate,* No. 06-2031 D V, 2006 WL 8435145, \*6 (W.D. Tenn. Feb. 1, 2006) (unpublished) (*Attachment F*). And the right to have one's vote counted is a fundamental right. *Id.* at \*2 (citing *Reynolds v. Sims,* 377 U.S. 533 (1964)).

The Attorneys and their clients learned that "lesson" from *Bush* as well. They believed that *Bush* recognizes a federal court's authority—indeed, its responsibility—to ensure that all votes are properly counted. *Bush,* 531 U.S.

at 111 (citing the Court's "unsought responsibility," despite the political implications). The Court fulfilled that responsibility, and the Attorneys accept its conclusions. The argument that the Attorneys had no basis to invoke that responsibility, however, is incorrect.

## 4. The Attorneys' reliance on the affidavits submitted with the complaint was not misconduct and warrants no sanctions.

Much of the sanctions discussion at the July 12, 2021 hearing focused on whether the Attorneys could reasonably rely on certain affidavits submitted with their complaint. The defendants and intervenors, however, do not allege that the Attorneys intentionally submitted false affidavits or that the affidavits were falsely executed. They cite some alleged factual errors and argue that the Attorneys should have caught these. But they primarily argue that the Attorneys submitted affidavits without adequate vetting that, even if true, do not add up to the kind of election fraud that would support the relief sought in plaintiffs' complaint. This is mere conjecture because there was never an evidentiary hearing held to determine whether these questioned affidavits included factual errors, or did not, in conjunction with the other evidence submitted with the Amended

Complaint, support the claims asserted.[10]

Further, the Attorneys did, in fact, vet the affidavits, assessing their

veracity and legal significance.[11] Even more importantly, the defendants and

intervenors' argument does not support a finding of sanctionable conduct

under 28 U.S.C. § 1927. These affidavits did not multiply these proceedings,

---

[10] The proper method for evaluating affidavits is an evidentiary hearing. See, e.g., *Costantino v. City of Detroit*, 950 N.W.2d 707, 709 (Mich. 2020) (Zahra, J., concurring); *id*. at 710 n. 2 (Viviano, J., dissenting) ("The court's credibility determinations were made without the benefit of an evidentiary hearing. Ordinarily, an evidentiary hearing is required where the conflicting affidavits create factual questions that are material to the trial court's decision on a motion for a preliminary injunction under MCR 3.310. See 4 Longhofer, Michigan Court Rules Practice, Text (7th ed., 2020 update), § 3310.6, pp. 518-519. See also *Fancy v. Egrin*, 177 Mich. App. 714, 723, 442 N.W.2d 765 (1989) (an evidentiary hearing is mandatory 'where the circumstances of the individual case so require')." The court never held an evidentiary hearing in *Constantio* and, as a result, did not properly assess the merits of the action. This was one of the reasons why the Attorneys presented affidavits from that action in this case.

[11] For example, multiple attorneys reviewed Russell Ramsland's affidavit, spoke with him several times, and even pushed back against some of the "improbable" numbers in the affidavit. (*Attachment A*, July 12, 2021 Transcript, at 56-57, 77-78, 93-94.) Howard Kleinhendler spoke with Joshua Merritt ("Spider") regarding his background, qualifications, and opinions and honestly believed that the statements Spider included in his affidavit were accurate. (*Id*. at 71-72, 84.) Julia Haller spoke with Ronald Watkins about his reports, the sources of his data, and the basis for his conclusions (*Id*. at 76.) And the Attorneys analyzed the affidavits filed in other actions, determining that the statements therein were consistent with the findings of plaintiffs' experts and other information presented to the Court. (*Id*. at 113, 125, 139, 148-149, 154-155.)

which ended in fewer than two months.

Moreover, the Attorneys are not the only individuals who viewed these affidavits as evidence of serious fraud. When they filed this case, members of two of the federal government's three branches—including the now former President of the United States—were insisting that there was massive voter fraud. Many Americans instantly disregarded those claims. But millions of other Americans believed those claims—and believed that their president would not intentionally mislead them. This context is so significant that Justice Brian Zahra mentioned it in his concurrence in *Costantino v. City of Detroit*, 950 N.W.2d 707, 709 (Mich. 2020) ("I am cognizant that many Americans believe that plaintiffs' claims of electoral fraud and misconduct are frivolous and obstructive, *but I am equally cognizant that many Americans are of the view that the 2020 election was not fully free and fair*. . .. The latter is a view that strikes at the core of concerns about this election's lack of both 'accuracy' and 'integrity'—values that Const. 1963, art. 2, § 4(1)(h) appears designed to secure.") (emphasis added).[12]

---

[12] On December 7, 2020, the Attorney General of Texas asked the United States Supreme Court to throw out the election results in Georgia, Michigan, Pennsylvania, and Wisconsin. (ECF No. 85-1). Specific mention was made of actual fraud at Detroit's TCF Center. (ECF No. 85-1, PageID.3946-48, pars.

Of course, attorneys should look beyond their prejudices and political beliefs, and view evidence with a level of professional skepticism. But no one is immune to confirmation bias. *See, e.g., Williams v. Pennsylvania*, 136 S.Ct 1899, 1907 (2016) (creating objective standard for judicial recusal where judges are prone to confirmation bias). In this case, the Attorneys didn't just have suspicions based merely on their own beliefs. They had evidence that those working at the highest levels of the United States government shared their suspicions. That context makes this case exceptional—and it is a reason for the Court to deny their defendants' and intervenors' requests for sanctions.

As for the factual errors in those affidavits, § 1927 requires "*knowing[]*

---

94-102). Seventeen other State Attorney Generals and 106 Republican members of Congress joined Texas' demand to the Supreme Court. Associated Press, *106 Congressional Republicans Join 17 state Attorneys General in Support of Texas Suit to Overturn Election Results in Ga., Mich., Pa., Wis.*, Market Watch, [https://www.marketwatch.com/story/106-congressional-republicans-join-17-state-attorneys-general-in-support-of-texas-suit-to-overturn-election-results-in-ga-mich-pa-wis-01607658751](https://www.marketwatch.com/story/106-congressional-republicans-join-17-state-attorneys-general-in-support-of-texas-suit-to-overturn-election-results-in-ga-mich-pa-wis-01607658751) (last visited July 25, 2021).

While this Court, sitting in Detroit, may have inherent doubts about such claims, sanctioning the Attorneys for making the same claims that 18 State Attorney Generals and 106 Congressman urged before the United Supreme Court would be a gross abuse of discretion.

*disregard* [of] the risk of abusing the judicial system," rather than mere negligence. *Kidis,* 976 F.3d at 723 (emphasis added). If the Attorneys failed to catch imperfect statements about Michigan counties, their conduct was not improper. And, crucially, their acts did not multiply these proceedings because the plaintiffs voluntarily dismissed their claims in under two months. Sanctions cannot be awarded under § 1927 merely because the Attorneys placed greater weight on the affidavits than this Court.

## Conclusion

The Attorneys respectfully request, therefore, that the Court deny the defendants' and intervenors' motions for sanctions.

Respectfully submitted,

COLLINS EINHORN FARREL PC

*/s/ Donald D. Campbell*
DONALD D. CAMPBELL (P43088)
Attorneys for Counsel for Plaintiffs:
Hagerstrom, Haller, Johnson,
Kleinhendler, Powell, and Rohl
4000 Town Center, 9th Fl.
Southfield, MI 48075
Dated: July 26, 2021     Donald.campbell@ceflawyers.com

20

# Certificate of Service

I certify that, on July 26, 2021, I electronically filed the above with the

Clerk of the Court using the ECF system, and that a copy was electronically

served on all parties via the ECF system.

COLLINS EINHORN FARRELL PC

*/s/ Donald D. Campbell*
DONALD D. CAMPBELL (P43088)
Attorneys for Counsel for Plaintiffs:
Hagerstrom, Haller, Johnson,
Kleinhendler, Powell, and Rohl
4000 Town Center, 9th Fl.
Southfield, MI 48075

Dated: July 26, 2021          Donald.campbell@ceflawyers.com

21