## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY KING, et al, <br><br><br>           Plaintiffs, <br><br>  v. <br><br> GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan, et al, <br><br>           Defendants, <br><br>  and <br><br> CITY OF DETROIT, et al, <br><br>           Intervenor-Defendants. | No. 2:20-cv-13134 <br><br><br> Hon. Linda V. Parker |

## INTERVENOR-DEFENDANT CITY OF DETROIT'S SUPPLEMENTAL BRIEF IN SUPPORT OF SANCTIONS

## INTRODUCTION

In a shocking abuse of this Court's processes, nine lawyers used their privileges as members of the bar to spread dangerous lies that undermined the credibility of the 2020 presidential election and threatened to prevent our nation's peaceful transition of power. It is now time to hold every one of them accountable.

1

There is no excuse for the reckless disregard for the truth that permeated this lawsuit, and there should be no safe harbor for attorneys who pretended to file legitimate claims, while misrepresenting the facts and the law. This is not a case of subtle misunderstandings. Reasonable minds cannot differ about whether Michigan has party registration, whether Michigan voters can vote absentee without using the mail, whether the Antrim County tabulation error was discovered by a hand recount, whether there was a 139% turnout in Detroit, whether "Spyder" is a military intelligence expert, or whether it was evidence of fraud that Joe Biden received a greater share of the absentee ballot vote than Donald Trump. No diligent attorney could reasonably believe that the internet mantra that "fraud vitiates everything" means that Michigan's election laws and legal precedent can be ignored. In the end, Plaintiffs' lawyers defend their presentation of false claims and their reliance on non-existent legal precedent with the argument that all of this "appears consistent with the narrative." (Ex. 1 - July 12, 2021 Hearing Tr.; Statement of Mr. Kleinhendler; Tr. 149). In other words, it's ok to say anything in court, if it fits their storyline.

These nine attorneys know that it is impossible to defend their actions, so they search for excuses to avoid accountability. Sidney Powell signed seven pleadings, motions and briefs filed in this case, and then she prepared responses to the City's sanctions motion claiming that she had never signed anything. Lin Wood argues that he cannot be sanctioned because he never entered an appearance, while the Michigan

attorneys who did file appearances say that Powell and Wood "spearheaded" the litigation, with local counsel exercising no independent judgment. All nine of these lawyers have one thing in common—they knew that their names were on the signature blocks and not one of them asked to be removed. They allowed their names and reputations as attorneys to be used to endorse this mendacious litigation, and now they should answer for the harm they caused.

## ARGUMENT

### I.     The Rule 11 Safe Harbor Notice Was Properly Served

For the first time, at the July 12, 2021 hearing, Lin Wood and Emily Newman claimed that they did not receive the Rule 11 Motion and Safe Harbor Letter ("the Safe Harbor Letter"). (Tr. at 203; 206). That claim was not made in the briefs filed by Plaintiffs' counsel. *See* Plaintiffs' Opposition to the City of Detroit's Motion for Sanctions, for Disciplinary Action, for Disbarment Referral and for Referral to State Bar Disciplinary Bodies, ECF No. 95 and Plaintiffs' Supplemental Opposition, ECF No. 111. To the contrary, Plaintiffs' counsel admitted that "[t]he City served a copy of notice of an anticipated [Rule 11] Motion on Plaintiffs' counsel on December 15, 2020." Plaintiffs' Opposition, ECF No. 95, PageID.4118-4119.

In fact, the City served the Safe Harbor Letter on December 15, 2020, by first class mail. (Ex. 2 - Affidavit of Kimberly Hunt). It was mailed to the "last known address" for each of the attorneys named in the Rule 11 Motion, and, thus, service

was proper under Fed. R. Civ. P. 5(b)(1)(C). *Id.* The City obtained Plaintiffs' counsel's last known addresses (except Ms. Junttila's) from the signature block on the Amended Complaint (ECF No. 6, PageID.957) and found Ms. Junttila's last known address on her Appearance of Counsel (ECF No. 63, PageID.3331). None of the letters were returned. (Ex. 2). Only Lin Wood and Emily Newman claim they did not receive the Rule 11 letter. [1] (Tr. at 203; 206).

The Safe Harbor Letter was sent to Lin Wood and Emily Newman at the addresses listed on the signature block of the Amended Complaint (ECF No. 6, PageID.958):

Of Counsel:
Emily P. Newman (Virginia Bar No. 84265)
Julia Z. Haller (D.C. Bar No. 466921)
Brandon Johnson (D.C. Bar No. 491730)

2911 Turtle Creek Blvd, Suite 300
Dallas, Texas 75219

*Application for admission pro hac vice
Forthcoming

L. Lin Wood
GA Bar No. 774588
L. LIN WOOD, P.C.
P.O. Box 52584
Atlanta, GA 30305-0584
Telephone: (404) 891-1402

These same addresses appeared on the signature block of the Complaint (ECF No. 1, PageID.75) and on the signature blocks of Plaintiffs' Petition for Writ of Certiorari

---

[1] While Emily Newman now claims that she did not receive the Safe Harbor Letter, three other attorneys—Sidney Powell, Julia Haller and Brandon Johnson—were served by mail at the same address (the address identified for all of them on the pleadings), and none of them denied being served.

and Notice of Supplemental Authority filed in the Supreme Court of the United States. In addition to service by first class mail, as a courtesy to Plaintiffs' counsel, the City's counsel sent copies of the Safe Harbor Letter to email addresses they were able to find for seven of these attorneys. The City's counsel searched online for email addresses that were not included on Plaintiffs' counsel's filings and were not available on the docket because most of Plaintiffs' counsel had not provided their email addresses to the Court and counsel (as would have been required had they filed proper appearances in this Court). (Ex. 3 - Email to Plaintiffs' Counsel With Copy of Safe Harbor Letter).

Finally, Plaintiffs' counsel had *actual* notice of the Safe Harbor Letter. On December 15, 2020, after the City's counsel sent copies of the Safe Harbor Letter via email to Plaintiffs' attorneys, counsel for Intervenor-Defendants DNC and MDP, Marc Elias, tweeted a copy of the entire Safe Harbor Letter, with the attached Rule 11 Motion. (Ex. 4 - Law and Crime Article of Dec. 15, 2020). Shortly thereafter (and still on December 15, 2020), Lin Wood took credit for the lawsuit, tweeting a link to an article containing a copy of the City's Safe Harbor Letter, stating "[w]hen you get falsely accused by the likes of David Fink & Marc Elias of Perkins Coie (The Hillary Clinton Firm) in a propaganda rag like Law & Crime, you smile because you know you are over the target and the enemy is runningscared (sic)!" (Ex. 5 - Wood Tweet of Dec. 15, 2020). Then, on January 5, 2021, the day the City filed its Rule

11 Motion with the Court, Lin Wood tweeted a link to an article with the City's Rule 11 Motion, stating that it was "unfair" for the City to seek sanctions against him. (Ex. 6 – Wood Tweet of Jan. 5, 2021). The evidence is irrefutable that Lin Wood, Emily Newman and all of Plaintiffs' counsel were properly served with the Safe Harbor Letter, and they all had actual notice.

Despite his public statements about the City's Safe Harbor Letter, on December 15, 2020, and his public statements about the City's Rule 11 Motion, on January 5, 2021, Mr. Wood sought to escape responsibility at the July 12, 2021 hearing with the following incredible statement:

> I didn't receive any notice about this until I saw something in the newspaper about being sanctioned…Let me say, because if I had been, I would have obviously had a duty to consider whether or not to withdraw, but I can't withdraw from something I've never asked to be a part of. (Tr. at 64).

Mr. Wood cannot have it both ways. He was aggrieved by what he called false allegations on December 15, 2020, but claims ignorance of those same allegations on July 12, 2021.

## II.   Plaintiffs' Attorneys Refuse to Objectively Review the Ramsland Affidavit

As the Court noted at the July 12, 2021 hearing, the affidavit of Russell James Ramsland, Jr., dated November 24, 2020, incorrectly states that a discrepancy in the Antrim County results was "only discoverable through a **hand counted manual recount**." (ECF No. 6-24, PageID.1573, at ¶ 10).   When the Court asked why

Plaintiffs' counsel had not corrected Ramsland's claim that the Antrim County error was discoverable only through a hand recount, when no hand recounts had been conducted in Michigan as of the date his affidavit was signed, Plaintiffs' counsel doubled down on this misrepresentation.

First, Ms. Haller made the following claim:

> Your Honor, if I may correct the record for that. It was the Michigan Secretary – the county secretary who did that **hand recount**, and that's reported on at that time. So there was what they called a **hand recount**. (Tr. at 96; emphasis added).

Then, Mr. Kleinhendler added: "My understanding was that somebody recounted it **by hand**." (Tr. at 97; emphasis added). There was no factual basis for either of those claims.

To buttress their arguments, Mr. Kleinhendler referred the Court to a December 3, 2020 report by Mr. Ramsland, with an appended report prepared by ASOG, an organization affiliated with Mr. Ramsland. Mr. Kleinhendler claimed "[Ramsland] has a photograph, a photograph of the **hand recount** that was done in Antrim County." (Tr. at 105; emphasis added; ECF No. 49-3, PageID.3119). Mr. Campbell piled on:

> Your Honor, if I can, can we have Mr. Fink explain why there's a photograph of something that shows a **hand recount** when he's telling everybody there's been no hand recount? (Tr. at 105; emphasis added).

Of course, there is no such photographic evidence. The photograph appended to the referenced affidavit simply depicts the results of a machine re-tabulation of ballots that occurred on November 6, 2020. The photograph shows printouts from tabulation machines and makes no reference to a hand recount. The ASOG report clearly states that the photograph depicts "'two separate totals tape' from Tabulator ID 2." (ECF No. 49-3, PageID.3118). The narrative accompanying the photographs explains that, at the request of the County Clerk, the Township Clerk, under the oversight of the canvassing board, "re-ran the original election day ballots" with a machine tabulator. (ECF No. 49-3, PageID.3122). There is nothing in the ASOG report that even remotely suggests that a hand recount was performed on November 6, 2020.

The photograph touted by Plaintiffs' counsel does include the word "recount," and these attorneys apparently chose to end their inquiry there. The slightest critical analysis, however, would have immediately revealed that this "evidence" provided no support for their position. Furthermore, the very photo upon which they rely shows a difference of only one vote (not 6,000)—the machine "recount" found one less vote for Donald Trump.

Yet, on July 12, 2021, all nine of these attorneys and the attorneys representing them were prepared to foist yet another misrepresentation on this Court without the slightest bit of objective inquiry. This false representation to this Court is particularly troubling when it comes fully six months after the issue of the factual basis for

Ramsland's affidavit was highlighted in the City's Motion for Sanctions and more than seven months after Ramsland's significant factual error was raised in the City's Response to Plaintiffs' Emergency Motion.

### III. These Attorneys Ignored Michigan Election Law and Procedures and Support Their Claims With Internet Memes Rather Than Rigorous Legal Analysis

When the Court asked why Plaintiffs' attorneys did not avail themselves of the procedures for challenging elections under Michigan law, the responses were a strangely disconnected set of references to ripeness, the Twelfth Amendment and the Court's "inherent equitable authority." When the Court asked for case authority, Mr. Kleinhendler offered the following revealing insight into counsel's legal analysis:

> I did look it up, your Honor, just briefly while we were here…I would refer you to the United States Supreme Court case, *United States versus Throckmorton*...I believe that case states the general equitable jurisdiction that this Court has, fraud vitiates everything, and this Court has the equitable power. (Tr. at 30-33).

The Court expressed understandable surprise that Plaintiffs would cite a case decided 143 years ago. A review of the record suggests that there is a disturbing reason for this citation. The Court, in *Throckmorton,* does refer to a treatise that states "fraud vitiates everything." *United States v. Throckmorton*, 98 U.S. 61, 66 (1878). But, the *Throckmorton* Court's holding that a prior judgment confirming a land grant could **not** be collaterally attacked on the basis that the judgment was procured through fraud is directly contrary to Plaintiffs' claim that "fraud vitiates

everything." *Id*., at 68-69. Nothing about this case has any meaningful application to the issues before this Court.

On first impression, Plaintiffs' citation to an obscure 143-year-old Supreme Court case that does not support their position is puzzling; *Throckmorton* was last cited by the Supreme Court 75 years ago. *See Knauer v. United States*, 328 U.S. 654, 66 S.Ct. 1304 (1946). But the source of this "lawyering" becomes apparent with a quick internet search. *Throckmorton* and the phrase "fraud vitiates everything" have become a meme on extremist social media accounts, where it is repeatedly parroted as a basis for overturning the 2020 election. (Ex. 7 - *Throckmorton* Tweets). That *Throckmorton* has made the leap from uninformed social media commentary to citation by Plaintiffs' counsel as the legal basis for this far-reaching and unfounded lawsuit demonstrates that this suit has been driven by partisan political posturing, entirely disconnected from the law. This lawsuit is the dangerous product of an online feedback loop, with these attorneys citing "legal precedent" derived not from a serious analysis of case law, but from the rantings of conspiracy theorists sharing amateur analysis and legal fantasy in their social media echo chamber.

## IV.   The Shifting Sands of Plaintiffs' Attorneys' Positions

### a. With Constantly Changing Rationales, Plaintiffs' Counsel Repeatedly Refused to Dismiss Their Baseless Claims

On January 19, 2021, Plaintiffs' attorneys made the following claim:

> Since its initial filings, Plaintiffs have taken every reasonable measure to expedite this proceeding and to terminate the proceeding once their claims were no longer viable. (ECF No. 95, PageID.4114).

Nothing could be further from the truth.  At every stage, Plaintiffs' counsel unreasonably prolonged this litigation.

Plaintiffs admitted that "the case at bar was … effectively over on December 7, 2020…." (ECF No. 112, PageID.4610). But they did not dismiss on December 7.

In Plaintiffs Petition for a Writ of Certiorari to the Supreme Court they admitted that "[o]nce the electoral votes are cast, subsequent relief would be pointless," and "the petition would be moot." (Ex. 8 – Plaintiffs' Petition for Writ of Certiorari, p. 7). But after Michigan's presidential electors convened and cast their votes on December 14, 2020, Plaintiffs still did not dismiss, and they refused to concur in Defendants' Motions to Dismiss.[2]

On December 15, 2020, one day after the electors voted, Plaintiffs' counsel were served with the Rule 11 Safe Harbor Letter, but not one of the nine attorneys took a single step to withdraw their claims.

---

[2] At the July 12, 2021 hearing, Mr. Campbell argued that the about-face on whether the case became moot arose because "three of our Plaintiffs were, **in their opinion,** elected as electors…once they were elected as electors in Lansing, **they believe,** according to the Constitution, to be the electors. That changed things, and now the Supreme Court's determination did have life." (Tr. at 44; emphasis added). The suggestion that three clients' subjective beliefs, without a shred of factual or legal support, exonerates misconduct by an attorney is farcical.

On the night of January 6, 2021, after a day of insurrection at the Capitol, Congress certified Joe Biden as the winner of the 2020 presidential election. Plaintiffs later admitted that "[o]n January 6, 2021 the US Congress 'certified the election,' rendering Plaintiffs' claims moot." (ECF No. 95, PageID.4114). And yet, Plaintiffs still did not dismiss. On January 11, 2021, the Supreme Court denied Plaintiffs' motion to expedite their Cert Petition. Because Plaintiffs would not dismiss, the Defendants were compelled to file responses in the Supreme Court. Then, at the very last minute, when Plaintiffs had no choice but to respond to Defendants' Motions to Dismiss, Plaintiffs purported to "voluntarily dismiss." Plaintiffs never responded to the Motions to Dismiss, but they did the damage they set out to do.

Plaintiffs filed purported notices of voluntary dismissal on January 14, 2021. But, even then, they did not dismiss their appeals in the Sixth Circuit or the Supreme Court. On January 18, 2021, counsel for the City, Darryl Bressack, sent an email to Ms. Lambert Junttila asking about withdrawal of the appeals. She responded by requesting the City's consent to withdraw, which was promptly given. On January 21, 2021, counsel for the City sent an email to Ms. Lambert Junttila asking if she had filed the withdrawal. She replied "[i]t's my understanding that Sidney Powell's team is preparing it and I will submit it as soon as I receive it." (Ex. 9 – Email

Exchange). But, no withdrawal was filed. Instead, two weeks later Sidney Powell posted the following to her Telegram account on February 4, 2021:



On February 22, 2021 the Supreme Court denied Plaintiffs' Cert Petition. (Ex. 10 – Order Denying Petition for Writ of Certiorari). Until that day, Plaintiffs continued to press this baseless litigation, forcing Defendants to defend against these bogus claims, all in the service of the lie that the 2020 election was stolen.

### b. Each Attorney Has a Different Excuse to Avoid Accountability, But All Nine Attorneys Should be Sanctioned

The Michigan lawyers say they signed the filings, but did not prepare them, so they should not be responsible, while the out of state attorneys say they prepared the filings, but they did not sign them, so they should not be responsible. And, the out of state attorneys say that even if they did prepare and sign the filings, they are immune from this Court's review, because they never followed this Court's rules to be admitted. The cynical attempt to sidestep the authority of this Court by failing to be sworn into our District simply does not work. E.D. Mich. LR 83.20(j) states that "[a]n attorney…who practices in this court as permitted by this rule is subject to the Rules of Professional Conduct adopted by the Michigan Supreme Court…." And those rules do not reward the gamesmanship displayed here. Michigan Rule of

13

Professional Conduct 8.5(a) states that "[a] lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction." That rule applies to every one of the lawyers in this case.

### 1. Sidney Powell

On July 12, 2021, after six hours of argument, Sidney Powell, for the first time said:

> I take full responsibility myself for the pleadings in this case. Ms. Newman, Mr. Wood, Mr. Johnson, and local counsel had no role whatsoever in the drafting and content of these complaints. It was my responsibility and Mr. Kleinhendler's, not theirs. (Tr. at 231).

This is the same Sidney Powell who prepared (but did not sign) the brief arguing that she could not be sanctioned because she did not sign the pleadings.[3] (ECF No. 95, PageID.4118, 4122-4124).

---

[3] Directly contrary to Ms. Powell's claim, Stefanie Lambert Junttila, one of the local attorneys who Powell seeks to shelter with her eleventh hour magnanimous claim of responsibility, appeared on "The Gateway Pundit" the day after the sanctions hearing, where she admitted that she was not simply hired as local counsel, she "reached out to the Sidney Powell team and the Rudy Giuliani team to provide evidence" of supposed election fraud. Available at https://rumble.com/vjsv8v-live-at-5-pm-cdt-bombshell-report-michigan-election-2020-case-with-atty.-st.html, last accessed July 20, 2021. She then appeared on "One America News Network" on July 14, 2021 and promised that "new suits will be filed in Michigan and other states as well." Available at https://rumble.com/vjvnhx-real-america-dan-w-stefanie-lambert-july-14-2021.html, last accessed July 20, 2021.

These misrepresentations about the signing of the pleadings were not made out of ignorance or mistake, they were made by Sidney Powell herself. Attached as an exhibit to Plaintiffs' Supplemental Brief in Opposition is the affidavit of Plaintiffs' local counsel Gregory Rohl. (ECF No. 111-1, PageID.4597-4599). Rohl swears that he was asked to assist in "litigation involving alleged election fraud in Michigan which was being spearheaded by Sidney Powell and Lin Wood." (ECF No. 111-1, PageID.4597, at ¶ 2). Rohl states that he was to "serve as a conduit for pleadings and essentially 'hold the fort' until Sidney Powell's Pro Hac Vice application was accepted by the Court." (ECF No. 111-1, PageID.4598, at ¶ 7). After the filing of the City's Motion for Sanctions, Rohl states that "Ms. Lambert Junttila surprisingly advised Rohl that she was not the one preparing the response to the Rule 11 Sanction Motion, and that it was being provided for review by Sidney Powell's team." (ECF No. 111-1, PageID.4599, at ¶ 13).

Despite Sidney Powell's repeated footnotes that her application for *pro hac vice* admission was forthcoming, neither she nor any of the out-of-state Plaintiffs' attorneys ever sought admission to this Court. While this Court has not recognized *pro hac vice* admissions for forty years, the process to be admitted to the Eastern District of Michigan is not onerous. Sidney Powell never sought admission to practice before this Court, apparently hoping to evade this Court's disciplinary authority by orchestrating litigation through local counsel.

### 2.  Lin Wood

Lin Wood argued on July 12, 2021 that he cannot be sanctioned because he claimed he had "no involvement whatsoever" in this litigation. (Tr. at 58). But his co-counsel, Mr.  Rohl, said Wood, with Powell, "spearheaded" this lawsuit. (ECF No. 111-1, PageID.4597, at ¶ 2). Wood admitted during the hearing that he offered his services as a "trial lawyer" to Powell in connection with this case; that alone satisfies the MRPC 8.5(a) criterion of an attorney who "offers to provide" services. (Tr. at 58, 60-61). And, despite his denials during the hearing, he has admitted elsewhere that he "signed on" to assist with this case. (Ex. 11 – Transcript of Jan. 11, 2021 Hearing in *La Liberte v. Reid*, p. 10). Wood has taken credit for his participation in this lawsuit when he believes it is to his advantage, and, until confronted with sanctions, he had never disavowed his involvement or sought to remove his name from any filing.

Wood admitted at the July 12, 2021 hearing that he had "indicated to Sidney Powell that if she needed a…trial lawyer that [he] would certainly be willing and available to help her." (Tr. at 58). When Wood was asked why, if his name was on the pleadings without his permission, he did not notify the Court, Wood argued that, because he "never moved to be admitted *pro hac vice*" (again misstating the Local Rules) he had no duty to tell the Court that he did not represent the Plaintiffs. (Tr. at 65).

16

Wood's co-counsel did not confirm his story. Sidney Powell stated:

> My view, your Honor, is that I did specifically ask Mr. Wood for his permission. I can't imagine that I would have put his name on any pleading without understanding that he had given me permission to do that. (Tr. at 69).

When directly asked by the Court whether he spoke with Wood before placing his name on the pleading, Mr. Kleinhendler curiously responded "[h]onestly, your Honor, I don't recall." (Tr. at 69).

Wood's sudden modesty about his participation in Michigan is an anomaly. Throughout the post-election litigation, Wood took a high profile, supporting challenges to the election results and even endorsing martial law. Wood's signature block appears on pleadings in cases filed by many of these same lawyers seeking to overturn the election results in Georgia, Wisconsin, and Arizona.[4] In a brief submitted in the Delaware Supreme Court in an appeal of the revocation of his *pro hac vice* admission, Wood claimed, through his counsel:

> [Wood] represented plaintiffs challenging the results of the 2020 Presidential election in Michigan and Wisconsin…Among those cases in which Wood became involved were lawsuits in Wisconsin, Michigan, and Wood's own suit in the State of Georgia"

---

[4] *Pearson v. Kemp*, 1:20-cv-04809, filed in the Northern District of Georgia on November 25, 2020; *Feehan v. Wisconsin Elections Commission*, 2:20-cv-01771, filed in the Eastern District of Wisconsin on December 1, 2020; and *Bowyer v. Ducey*, 2:20-cv-02321, filed in the District of Arizona on December 2, 2020.

17

(Ex. 12 – Appellant's Opening Brief in *Page v. Oath, Inc.*, p. 4 and p. 5).[5]

On January 11, 2021, in the Eastern District of New York, Wood was more candid about his involvement in the election lawsuits in Wisconsin and Michigan:

> What I have done with Sidney Powell is, she asked me to sign on to two or three lawsuits where she was the lead, in anticipation that there may be a need for a trial lawyer. I didn't draft the lawsuits. There were some typographical errors and things done in some of them that upset a judge in Wisconsin, I believe, maybe Michigan…I didn't have anything to do with that, other than I did agree to sign on to help Sidney. (Ex. 11, p. 10).

Like any bully, when Wood thought he was safe and it might help him, he admitted his involvement in Michigan, but, now that he is personally at risk, he cowardly abandons his comrades and feigns ignorance. [6]

Wood has been aware of the City's sanctions request since December 15, 2020. (Ex. 5). At that time, he took personal credit for the litigation, metaphorically thumping his chest with a military analogy claiming "you know you are over the

---

[5] At the hearing on July 12, 2021, Wood asserted yet another incomprehensibly-absurd defense, when he claimed, "I was not afforded any type of a hearing on the Delaware proceedings. **I didn't take any position**…So I'm not sure what he's referring to there." (Tr. at p 64; emphasis added). Every word quoted here was written by Wood's attorney, Ronald G. Poliquin, in Appellant's Opening Brief, challenging the revocation of Wood's *pro hac vice* admission to represent Carter Page in The Superior Court for the State of Delaware.

[6] Notably, in the New York federal court, Wood was fully aware of the pending sanctions motion about which he now claims ignorance. There, on January 11, 2021, after bragging that he has practiced in 27 states, he complained "Even in Michigan, the City of Detroit is trying to get me disbarred. Why? I'm not a member of the Michigan Bar." (Ex. 11, p. 16).

target," when people like the undersigned accuse you of misconduct. But, he was only "over the target" if this was his case. As long as he thought he was safe and others were doing the dirty work of protecting him, he never attempted to disavow his participation in this case. The record is clear. Lin Wood takes credit for this case when it serves his purposes, but he runs and hides when faced with the consequences.

## V.     Plaintiffs' Attorneys Continue To Flout This District's Civility Principles

After the sanctions hearing, Plaintiffs' counsel continued their assault on this District's Civility Principles. As this Court is aware, Lin Wood posted a video recording of the July 12, 2021, hearing on Telegram in direct contravention of Eastern District of Michigan Local Rule 83.32(e)(2). Despite being afforded a six-hour hearing at which to state his defense, Wood claimed in the now-deleted Telegram post that he "thought [he] was attending a hearing in Venezuela or Communist China. The rule of law and due process does not exist at this time in our country except in a very, very few courtrooms. Both were absent in Michigan today." (Ex. 13 – Wood Deleted Telegram post of July 12, 2021). Wood continued to display his disrespect for this Court, stating "Federal Judge Linda Parker is an Obama appointee. I think that pretty much says it all, don't you." (Ex.14 - Wood Telegram post of 22:03 on July 12, 2021).

Wood also posted an unhinged allegation implying that the City of Detroit filed the motion for sanctions on January 5, 2021, predicting interference with the

19

peaceful transition of power, because the undersigned was involved in the planning of the insurrection:

> David Fink said he filed the motion for sanctions against Sidney and me on January 5. Then Fink says I was responsible for causing the January 6 "insurrection" the next day!!! Wow! What timing! One might almost think it was planned!!! There are no coincidences. This is like watching a movie! (Ex. 15 – Wood Telegram post of 23:34 on July 12, 2021).

There are no words to describe how detached these lawyers are from the basic rules of professional responsibility, civility and ethical legal representation. They must not be given the opportunity to further abuse our judicial system and to undermine our democracy.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the City of Detroit respectfully asks this Court to grant the City's Motion for Rule 11 Sanctions in its entirety and enter an Order imposing the full measure of sanctions requested against all of Plaintiffs' counsel.

Respectfully submitted,

July 28, 2021          **FINK BRESSACK**

By:    /s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
*Attorneys for City of Detroit*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304

Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

**CITY OF DETROIT**
**LAW DEPARTMENT**
Lawrence T. Garcia (P54890)
Charles N. Raimi (P29746)
James D. Noseda (P52563)
*Attorneys for City of Detroit*
2 Woodward Ave., 5th Floor
Detroit, MI 48226
Tel: (313) 237-5037
garcial@detroitmi.gov
raimic@detroitmi.gov
nosej@detroitmi.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 28, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

**FINK BRESSACK**

By:   */s/* Nathan J. Fink
Nathan J. Fink (P75185)
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
nfink@finkbressack.com