# EXHIBIT 1

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MICHIGAN
                   SOUTHERN DIVISION

TIMOTHY KING, MARIAN ELLEN SHERIDAN,
JOHN EARL HAGGARD, CHARLES JAMES RITCHARD,
JAMES DAVID HOOPER and DAREN WADE RUBINGH,
                   Plaintiffs,


V.                                     CIVIL ACTION
                                       NO. 20-cv-13134
GRETCHEN WHITMER, in her official capacity
As Governor of the State of Michigan
JOCELYN BENSON, in her official capacity
As Michigan Secretary of State, the Michigan
BOARD OF STATE CANVASSERS,
                   Defendants,

And

THE DEMOCRATIC NATIONAL COMMITTEE and THE
MICHIGAN DEMOCRATIC PARTY, and ROBERT DAVIS
And THE CITY OF DETROIT,
                   Intervenors,

And

SCOTT HAGERSTROM, JULIA HALLER,
ROBERT JOHNSON, L. LIN WOOD, HOWARD
KLEINHENDER, SIDNEY POWELL, and GREGORY ROHL,
                   Intersted Parties,
And

MICHIGAN STATE CONFERENCE NAACP,
                   Amicus.
_____/

                   MOTION HEARING
         BEFORE THE HONORABLE LINDA V. PARKER
              United States District Judge
                   Detroit, Michigan
                  Monday, July 12, 2021

         (All parties appearing via videoconference.)
```

APPEARANCES:

•GREGORY J. ROHL
The Law Offices of Gregory J. Rohl, P.C.
41850 W. 11 Mile Road
Suite 110
Novi, MI 48375
248-380-9404
Email: greg@rohllaw.com

   On behalf of Plaintiffs King, Sheridan, Haggard,
Ritchard, Hooper, and Rubingh.

•HEATHER MEINGAST
Michigan Department of Attorney General
Civil Litigation, Employment & Elections Division
PO Box 30736
Lansing, MI 48909
517-335-7659
Email: meingasth@michigan.gov

   On behalf of Defendant, Jocelyn Benson.

•DAVID H. FINK, NATHAN J. FINK
Fink Bressack PLLC
38500 Woodward Ave.
Suite 350
Bloomfield Hills, MI 48304
248-971-2500.
Email: dfink@finkbressack.com, nfink@finkbressack.com

   On behalf of Intervenor, City of Detroit.

•MARY ELLEN GUREWITZ
Cummings & Cummings Law PLLC
423 North Main Street
Suite 200
Royal Oak, MI 48067
313-204-6979
Email: megurewitz@gmail.com.

   On behalf of the Defendant Intervenors, Democratic
National Committee and the Michigan Democratic Party.

APPEARANCES, cont'd:

•SCOTT R. ELDRIDGE
Miller, Canfield
One Michigan Avenue
Suite 900
Lansing, MI 48933-1609
517-483-4918
Email: eldridge@millercanfield.com

       On behalf of the Defendant Intervenors, Democratic
National Committee and the Michigan Democratic Party.

•ANDREW A. PATERSON , JR.
46350 Grand River Ave.
Novi, MI 48374
248 568-9712
Email: aap43@hotmail.com

       On behalf of Defendant Intervenor, Robert Davis.

•DONALD D. CAMPBELL, PATRICK K. McGLINN
Collins, Einhorn
4000 Town Center
Suite 909
Southfield, MI 48075-1473
248-355-4141
Email: donald.campbell@ceflawyers.com,
patrick.mcglinn@ceflawyers.com

       On behalf of Interested Parties, Rohl, Hagerstrom,
Haller, Johnson, Wood, Kleinhendler, Powell.

•THOMAS M. BUCHANAN
Winston & Strawn, LLP.
1901 L. Street NW.
Washington DC  20036
(202)282-5787
Email:  Tbuchana@winston.com

       On behalf of Interested Party, Emily Newman.

# I N D E X

| Proceeding | Page |
|---|---|
| Discussion of drafting of the Complaint & Amended Complaint | 20 |
| Discussion of Court's authority to issue The relief sought | 22 |
| Discussion of timing of filing Of the Complaint | 34 |
| Discussion of Mootness | 42 |
| Discussion of the legal obligation to review Facts alleged in the Complaint | 54 |
| Discussion of Ramsland Affidavit | 56 |
| Discussion of Expert Merritt | 70 |
| Discussion of Expert Braynard | 74 |
| Discussion of Expert Briggs | 75 |
| Discussion of Expert Watkins | 76 |
| Discussion of Ramsland Affidavit | 76 |
| Discussion of Expert Merritt | 77 |
| Discussion of whether an attorney should be Sanctioned for his or her failure to correct Or withdraw allegations that an attorney comes To know or came to know are untrue | 85 |
| Discussion of Expert Briggs | 88 |
| Discussion of Sitto Affidavit | 108 |
| Discussion of Carone Affidavit | 122 |
| Discussion of Connarn Affidavit | 135 |

**I N D E X** (Cont'd)

| Proceeding | Page. |
|---|---|
| Discussion of Jacob Affidvit..................... | 138 |
| Discussion of Bomer Affidavit................... | 146 |
| Discussion of Jacob Affidvit..................... | 150 |
| Discussion of Helminen, Waskilewski Mandelbaum, Rose, Sitek, Posch Champagne & Bomer Affidvit..................... | 155 |
| Discussion of Brunell, Spalding & Sherer Affidavit............................ | 163 |
| Discussion of Larsen Affidavit.................. | 171 |
| Discussion of Gustafson Affidavit.............. | 176 |
| Discussion of Meyers Affidavit................. | 184. |

- - - - - - - -

| Closing Remarks by Mr. Campbell................. | 197 |
|---|---|
| Closing Remarks by Mr. Buchanan................. | 203 |
| Closing Remarks by Mr. Wood..................... | 206 |
| Closing Remarks by Ms. Gurewitz................ | 216 |
| Closing Remarks by Mr. Paterson................ | 217 |
| Closing Remarks by Mr. David Fink.............. | 217 |
| Closing Remarks by Ms. Meingast................ | 230 |
| Closing Remarks by Ms. Powell................... | 231 |

**E X H I B I T S**

| Exhibit No. | Offered | Received |
|---|---|---|
| | (None Offered) | |

Motion hrg.                                      7/12/2021

 1              Detroit, Michigan

 2              July 12, 2021

 3              8:36 a.m.

 4                      -   -   -   -

 5      **THE CLERK:**  The United States District Court for the

 6  Eastern District of Michigan is now in session, the Honorable

 7  Linda V. Parker presiding.

 8          Your Honor, the Court calls civil matter 20-13134,

 9  Timothy King and others versus Governor Whitmer and others.

10  Today is the date and time set for a motion hearing in this

11  matter.

12      **THE COURT:**  I'd like counsel please to place their

13  names on the record, and I will start first with counsel for

14  Plaintiffs' counsel.

15      **MR. ROHL:**  Thank you, your Honor.  Good morning.  For

16  the record, may it please the court, Greg Rohl on behalf of

17  Plaintiffs.

18      **THE COURT:**  All right.  Mr. Rohl, thank you.

19      **MR. CAMPBELL:**  Thank you, your Honor.

20  Donald Campbell here on behalf of the following lawyers:

21  Sidney Powell, Howard Kleinhendler, Greg Rohl, Scott

22  Hagerstrom, Julia Haller, Brandon Johnson, and Lin Wood.  All

23  of them are here pursuant to your order.

24      **THE COURT:**  All right.  Thank you.

25          And what about Mr. McGlinn, is he here with us this

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   morning?

2           **MR. CAMPBELL:**  Yes, I'm sorry.  Mr. McGlinn is here.

3   He's co-counsel with me.  He is in the same room.  He does not

4   have a separate video feed.  He can hear things off of this

5   computer.  If necessary, he can even come and take the screen

6   from me, but he was not going to have his own screen or his own

7   sound to avoid any interference.

8           **THE COURT:**  All right.  Thank you.

9           And I understand that Mr. Buchanan is also

10  representing Ms. Newman.  Is he here?

11          **MR. BUCHANAN:**  Yes, I am here, and so is Ms. Newman.

12          **THE COURT:**  Thank you.

13          Now, I'm going to, in a sense take -- well, let me

14  have Plaintiffs' counsel state their names for the record and

15  let me -- let me start with Mr. Hagerstrom.  Are you here, sir?

16          **MR. HAGERSTROM:**  I am.

17          **THE COURT:**  State your name.

18          **MR. HAGERSTROM:**  Scott Hagerstrom.

19          **THE COURT:**  Ms. Haller?

20          **MS. HALLER:**  Yes, your Honor.

21          **THE COURT:**  State your name, please, after I've

22  called you.

23          **MS. HALLER:**  Julia Haller.

24          **THE COURT:**  All right.  Mr. Brandon Johnson?

25          **MR. JOHNSON:**  Yes, your Honor, Brandon Johnson.

Motion hrg.                                    7/12/2021

1          THE COURT:  Thank you.

2          And Ms. Stefanie Lambert.

3          MS. LAMBERT:  Good morning, your Honor.

4  Stefanie Lambert.

5          THE COURT:  All right.  Your name, please, for the

6  record.

7          MS. LAMBERT:  Stefanie Lambert Junttila, P-71303.

8          THE COURT:  Mr. Kleinhendler.

9          MR. KLEINHENDLER:  Howard Kleinhendler.

10         THE COURT:  Thank, you sir.

11         And Ms. Newman.

12         MS. NEWMAN:  Good morning.  Emily Newman.

13         THE COURT:  Thank you, Ms. Newman.

14         Ms. Powell.

15         MS. POWELL:  Sidney Powell.

16         THE COURT:  Thank you.

17         And, Mr. Rohl, you've already placed your name on the

18  record.

19         Mr. Wood?

20         MR. WOOD:  Yes.  This is Lin Wood, your Honor.  Good

21  morning.

22         THE COURT:  Good morning.

23         All right.  Counsel, thank you very much.  Have I

24  missed anyone?

25         Mr. Fink, I don't recall calling your name.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **MR. DAVID FINK:**  No, your Honor.  I am counsel for

2    the City of Detroit, and also with me is my partner and son.  I

3    have to mute so I don't get feedback.

4          **THE COURT:**  Thank you.  All right.

5          **MR. NATHAN FINK:**  Good morning, your Honor, Nathan

6    Fink on behalf of the Intervenor Defendant, City of Detroit.

7          **THE COURT:**  All right.  Thank you.

8          And do we have counsel on the line for the State

9    defendants?

10         **MS. MEINGAST:**  Yes, your Honor.  Assistant Attorney

11   General Heather Meingast on behalf of Governor Whitmer and

12   Secretary Benson.

13         **THE COURT:**  Thank you very much.

14         And I see -- I'm sorry, Ms. Gurewitz.

15         **MS. GUREWITZ:**  Yes.  Mary Ellen Gurewitz, on behalf

16   of the Michigan Democratic Party and the Democratic National

17   Committee.

18         **MR. ELDRIDGE:**  Good morning, your Honor.

19   Scott Eldridge, also on behalf of the DNC and the MDP.

20         **THE COURT:**  And, Mr. Davis, are you here with counsel

21   today, sir?

22         **MR. DAVIS:**  Yes, your Honor.  Mr. Paterson is on the

23   line, your Honor.

24         **THE COURT:**  All right.  Thank you.  You can -- so

25   Robert Davis is here, and your counsel is Mr. Paterson.  Okay.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1   He is not -- I see that his square appears, but I don't hear

2   him.  All right.  Let me just make a note of that.

3           All right.  I think I've covered everyone -- and

4   Mr. Owen, Jason Owen.

5           **INTERNET TECHNICIAN:**  Good morning, Judge.  I'm IT

6   support.

7           **THE COURT:**  Thank you, Mr. Owen.  Thank you very

8   much.  Probably one the most critical individuals on this call,

9   would you say, counsel?  All right.  Thank you, Jason.

10          All right.  Ladies and gentlemen, thank you so much

11  for your appearance here -- your prompt appearance, and I want

12  to just make some opening remarks and underscore that the

13  purpose of today's hearing is to address three pending motions

14  for sanctions.  Those motions are as follows:  Intervening

15  Defendant Robert Davis' motion for sanctions against Plaintiffs

16  and Plaintiffs' counsel in which Mr. Davis seeks sanctions

17  pursuant to the Court's inherent authority and also under 28

18  U.S.C. 1927.

19          The second motion for sanctions has been filed by

20  intervening Defendant City of Detroit's motion for sanctions,

21  for disciplinary act, for disbarment referral, and for referral

22  to state bar disciplinary bodies, and, here, the City seeks

23  sanctions under Rule 11 of the Federal Rules of Civil

24  Procedure.

25          And, finally, the State Defendants, Secretary of

Motion hrg.                              7/12/2021

1  State Jocelyn Benson and Governor Gretchen Whitmer, they have

2  filed motions for sanctions under 28 U.S.C. Section 1927 in

3  which Defendants alternatively seek sanctions under the Court's

4  inherent authority.

5          All right.  Now, the Court finds for this record that

6  the referenced motions adequately put Plaintiffs and

7  Plaintiffs' counsel on notice of the conduct alleged to be

8  sanctionable.  Plaintiffs and their counsel have had the

9  opportunity to respond to these allegations in their briefs.

10 However, I've called this hearing to provide them with an

11 additional opportunity to respond to those claims and to answer

12 questions that I deem relevant to deciding whether Rule 11 or

13 Section 1927 have been violated, and/or, counsel, whether the

14 Court's inherent powers to sanction should be utilized.

15         It bears mentioning that I recognize that there is

16 disagreement about whether the City of Detroit followed the

17 Safe Harbor provisions with exactitude.  Nevertheless, I want

18 to advise Plaintiffs and Plaintiffs' counsel that Rule 11

19 allows a court, on its own initiative, to require a party to

20 show cause why sanctions should not be imposed under the rule

21 and to impose Rule 11 sanctions if, after notice and a

22 reasonable opportunity to respond, which I am providing today,

23 the Court determines that Rule 11(b) has been violated if after

24 that notice.

25         I'll tell you, counsel, I do not need today to rehear

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1  the arguments that have been advanced in the parties' briefs at

2  this hearing.  I have thoroughly reviewed every filing.  After

3  I ask my questions, however, I will give the parties the

4  opportunity to make a brief statement on their own to the Court

5  concerning the matter at hand.

6          Now, I ordered the personal appearance at this

7  hearing of all attorneys whose names appear on any of the

8  Plaintiffs' pleadings and briefs because I have questions that

9  I want to give you the opportunity to answer.  I ask counsel to

10 provide clear and direct answers to the Court's questions, and

11 let me be clear, that these questions are not seeking the

12 mental impressions, conclusions, opinions, or legal theories of

13 counsel.

14         Each question that I ask is directed to all of the

15 attorneys whose names appear on any of the Plaintiffs'

16 pleadings or briefs.  I will not call out any of your

17 individual names unless the question is specifically crafted

18 for a particular attorney, and there are a couple of those.

19 After I ask a question, the attorney best equipped to answer

20 the question may respond.  When I've received a complete answer

21 to a line of questioning, I will give all other attorneys the

22 opportunity to comment or add to the answers on the record.

23 Note that if no other attorneys speaks, the Court finds that --

24 will find that all other attorneys agree with the answer that

25 has been placed on the record.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

 1          Now, that brings me, counsel, to a potential issue as

 2   we now have counsel representing counsel for Plaintiffs.  The

 3   Michigan Rules of Professional Responsibility, as I'm certain

 4   everyone on this call should know, prohibit a lawyer from

 5   representing a client if the representation will be directly

 6   adverse to another client unless the lawyer reasonably believes

 7   the representation will not adversely affect the relationship

 8   of the other client, and, secondly, each client consents after

 9   consultation.

10          Now, at this time I would like to confirm on the

11   record, through Mr. McGlinn and Mr. Campbell to determine -- I

12   would like to confirm that they have addressed this potential

13   conflict issue with their clients.

14          **MR. CAMPBELL:**  I have, your Honor, and they have

15   given me their consent to proceed.  I do also wish to make an

16   objection, so that you have it for the record, on one of the

17   statements that you made about proceeding on the possibility of

18   the Court's own power with regard to Rule 11 and the show

19   cause.

20          **THE COURT:**  Yes.

21          **MR. CAMPBELL:**  May I, briefly?

22          **THE COURT:**  Briefly, yes.

23          **MR. CAMPBELL:**  Your Honor, I believe under Rule 11(c)

24   that the court can seek a show cause on notice prior to a

25   dismissal.  I believe after the dismissal that is not part of

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   the power that the Court retains.  So I do object, on those

2   grounds, for the Court's consideration of its own show cause.

3         **THE COURT:**  Okay.  I'll make a note of that, and at

4   this moment let me ask counsel for the Defendants if they would

5   like to respond to that, any of counsel?  Let me start with

6   Mr. Fink.

7         **MR. DAVID FINK:**  Your Honor, the rule itself does not

8   include that requirement.  The rule simply says on its own the

9   court may order an attorney, law firm, or party to show cause

10  why conduct specifically described in the order has not

11  violated Rule 11(b).

12        Notwithstanding that, I do want to be clear for the

13  Court that -- and I believe the Court is aware of this -- a

14  proper Rule 11 notice was sent to all of the parties, all of

15  the attorneys.  While they make general objections to it, the

16  notice included a detailed motion, which was, with minor

17  exceptions, the same motion that was filed, and we can provide

18  that to the Court.

19        We have met all the prerequisites for a Rule 11

20  proceeding, with or without a request on the part or an order

21  to show cause from the Court.  They have had several months to

22  respond, and the issue is clearly before the Court properly

23  today.

24        **THE COURT:**  All right.  Thank you, Mr. Fink.

25        Mr. Campbell, let me go back to you, sir.  What's the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    authority for your position?

2         **MR. CAMPBELL:**  Your Honor, I believe it's Rule 11(c).

3    If you give me some time, I can probably pull it up, but I

4    wasn't prepared to address the Court's inherent or, if you

5    will, the Court's show cause powers because we hadn't gotten

6    notice of that coming into this proceeding so I apologize for

7    that so I'm going off memory.

8         **THE COURT:**  All right.  I'm going to make a note of

9    that, and, if needed, we'll come back to that.

10        **MR. CAMPBELL:**  Happy to address that for the Court if

11   need be and in writing.

12        **THE COURT:**  We'll see if I need that.  Thank you.

13        Counsel, if there are not any other comments at this

14   point, the way I intend to proceed, I'm going to go ahead and

15   move forward.

16        Any other housekeeping that we need to take care of

17   at this point?

18        **MR. BUCHANAN:**  Thank you, your Honor.  This is

19   Mr. Buchanan on behalf of Ms. Newman.

20        **THE COURT:**  Yes.

21        **MR. BUCHANAN:**  I don't believe my client was ever

22   served with the papers at the time in question.  Ultimately,

23   she became aware generally, but my client was a contract lawyer

24   working from home, who spent maybe five hours on this matter so

25   she really wasn't involved in, you know, when the motions were

Motion hrg.                                    7/12/2021

1   filed and lawyers were retained and pleadings were filed.  So I

2   just want to note that.

3           We're -- she's aware now.  She just recently hired

4   me, and I thank the Court for getting my admission process so

5   quickly.  Her role is de minimus; and so she was never, as I

6   understand, sent the pleadings at the time in question.  They

7   were served on local counsel, but she was never part of a law

8   firm.  She is listed as "of counsel" on two of the pleadings,

9   the first amended complaint and the complaint, but she was

10  never an employee of that firm.  That was something that

11  someone put on the pleadings.  She was a contract lawyer, 1099

12  employee, who spent five hours on the matter.  I just wanted to

13  note that for the Court.  Thank you.

14          **MR. CAMPBELL:**  If I may, briefly, to add to that.  I

15  know Mr. Fink will have a response.  It's my belief that he did

16  serve local counsel if he used the ECF for service.  There are

17  a number of folks who would not have received it that way.  I

18  don't know what he says is service.  There is also the factual

19  issue of what was served under the Safe Harbor provision versus

20  what was filed.  That is addressed a little bit in the briefs

21  also, your Honor, but those same circumstances and situations

22  would apply.

23          So that when he says this was properly served and

24  this is a proper Rule 11 motion on behalf of the City, we, of

25  course, have the initial issue of whether the City, as an

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    intervenor, is a proper party to bring a Rule 11, at least in

2    this matter at all, and, secondly, I'm not sure what he means

3    by service.  So I don't want my silence to be a confirmation of

4    that.  So, with that, I've made my remarks.  Thank you.

5            **THE COURT:**  Mr. Fink.

6            **MR. DAVID FINK:**  Your Honor, I have and can provide

7    to the court -- I'm not sure how to do this, but we can -- I've

8    got it -- I can provide it in a PDF.  I have letter, which was

9    sent by first class mail, and it identifies, among the

10   addressees at Sidney Powell's office, Sidney Powell,

11   Emily Newman, Julia Haller, and Brandon Johnson.  They're all

12   included on an e-mail that was sent -- and, I'm sorry, a letter

13   that was sent by first class mail to Sidney Powell, P.C., at

14   2911 Turtle Creek Boulevard, Suite 300, in Dallas, Texas.

15           The issue has never been raised before in this case.

16   We have not heard from anybody claiming that somebody or that

17   any one of these parties did not receive the Rule 11 notice.

18   This is hardly the time to suddenly say they didn't receive it.

19   We did -- and we also sent it by e-mail.

20           What I can't confirm for the Court right now, because

21   I'm not set up, but we're trying to find it, is whether the

22   e-mail was directly sent to Ms. Newman.  It was definitely sent

23   to the parties who we had e-mail addresses for, but I don't

24   believe, at the time, we may not have had an e-mail address for

25   Ms. Newman, but we definitely sent it to her first class mail.

Motion hrg.                                    7/12/2021

1          **THE COURT:**  All right.  That sounds like something

2    we're obviously going to need to sort that out, and I will

3    determine, before this proceeding is over, to what extent, if

4    any, I'm going to need any briefs on it, all right, but it's a

5    flagged issue.

6          Yes, Mr. Fink.

7          **MR. DAVID FINK:**  Would the Court like us to provide a

8    PDF to the Court right now of the -- and I'm not sure how to

9    produce things on this record, but we can produce a PDF of the

10   notice.

11         **THE COURT:**  Mr. Flanigan, would that be a

12   screen-sharing issue?  Is that something -- I don't know if we

13   can do that through Mr. Fink is my question.

14         **THE CLERK:**  He should be able to screen share.

15         **THE COURT:**  Okay.  Do you know how to do that,

16   Mr. Fink?

17         **MR. DAVID FINK:**  Fortunately, the younger Mr. Fink

18   probably does.

19         **THE COURT:**  Okay.

20         **MR. DAVID FINK:**  I'm going to mute for a second so he

21   can talk to me about technology.

22         **THE COURT:**  Yeah, just a few seconds, because I think

23   I really want to move forward, and it's something -- but let's

24   just -- I'll give you a couple minutes -- just 60 seconds.  How

25   about that?  Yeah.  Honestly, it is something that can be

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                          7/12/2021

1  docketed, Mr. Fink -- let me let him -- Mr. Fink.

2          **MR. DAVID FINK:**  Yes, your Honor.

3          **THE COURT:**  I think the better way to do this is go

4  ahead and docket what you have, and the Court will take a look

5  at it, and others can do the same, and I'll advise whether or

6  not there needs to be any briefing on that issue.  Okay?

7          **MR. DAVID FINK:**  Yes, your Honor, I understand.  My

8  son even knows how to docket.

9          **THE COURT:**  Duly noted.  All right.

10         **MR. BUCHANAN:**  Your Honor, one quick point.  I'm not

11  disputing Mr. Fink's representations of, you know, sending it

12  to Sidney Powell's office.  My client was working from home in

13  Washington, D.C., a fact Mr. Fink would not have been aware of.

14  Again, she was a contract lawyer.  She was listed on the

15  pleading as being at the location or at least "of counsel" at

16  Ms. Powell's office, but she really was not of counsel.  It was

17  just, you know, recorded, but so that's my point that she --

18         **THE COURT:**  Okay.  Fair enough.

19         **MR. BUCHANAN:**  She did not receive it.  Thank you.

20         **MR. DAVID FINK:**  Your Honor, may I very briefly speak

21  to that point, very briefly, because it's a theme that runs

22  through the entire case for us, and that is counsel knew that

23  she had been presented as being an attorney representing the

24  Plaintiffs.  She knew that her address was provided to the

25  court in the manner it was provided.  It was not our obligation

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

1  or ability to do any kind of investigation.  It was her

2  responsibility to no longer use the privilege she had as an

3  attorney to endorse this case without coming forward.

4          I know, your Honor, perhaps I'm getting carried away.

5  I apologize.  I just want to say it's a theme that's going to

6  come up all through this.

7          **THE COURT:**  Okay.  It's -- I have been duly noted,

8  counsel, and we will address that in due course.  File what

9  you -- docket what you need to docket and we'll pick it up from

10 there, all right?

11         All right.  Anything else before the Court proceeds?

12 Good.  Thank you.

13         All right.  My first question to Plaintiffs' counsel

14 is:  Who wrote the complaint or the amended complaint in this

15 matter?

16         **MR. CAMPBELL:**  Your Honor, this is Don Campbell.

17 You said "Plaintiffs' counsel."  This is counsel for

18 Plaintiffs' counsel.  I think I am in the best position to give

19 the initial answer to the Court on that, if I may?

20         **THE COURT:**  You may.

21         **MR. CAMPBELL:**  Thank you.  If you're looking for the

22 principal author, it would be Howard Kleinhendler.  If you're

23 looking for the lawyer who worked closest with him, it's

24 Sidney Powell.

25         **THE COURT:**  Okay.

              King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **MR. CAMPBELL:**  Between them, it is their work product

2    primarily, if you will.  There are others who helped, some very

3    briefly, as Mr. Buchanan mentioned, some only on the amended

4    complaint.  That's Brandon Johnson, again, only with some

5    research, but in terms of the folks who helped to draft or,

6    really, the final product that gets filed in Michigan is

7    primarily a product of Sidney Powell and of

8    Howard Kleinhendler.

9          **THE COURT:**  All right.  Does anybody else want to add

10   to that?

11         All right.  Thank you.  Let's move --

12         **MR. WOOD:**  Your Honor, may I?  Your Honor, this is

13   Lin Wood.

14         **THE COURT:**  Yes, sir.

15         **MR. WOOD:**  If I might answer.  I played absolutely no

16   role in the drafting of the complaint.

17         **THE COURT:**  Okay.

18         **MR. WOOD:**  Just to be clear.

19         **MR. CAMPBELL:**  All my clients agree on that, your

20   Honor.

21         **THE COURT:**  Okay.  Is there anybody else that feels

22   that they played no role in the drafting of the complaint?

23         **MS. NEWMAN:**  Your Honor --

24         **MR. BUCHANAN:**  Yes, your Honor.  My client,

25   Emily Newman, as I said, spent a total of five hours.

Motion hrg.                                    7/12/2021

1          **THE COURT:**  Okay.  We're fine.  I'm clear on that.

2   I'm clear on that.  I think -- you know what?  I think I've got

3   a straight -- a good enough, clear answer from Mr. Campbell.  I

4   understand that Mr. Wood has not played any role in that, but

5   under -- the answer that I am taking is, is that

6   Mr. Howard Kleinhendler, as well as Ms. Sidney Powell, were the

7   principal drafters of the complaint.  All right.

8          **MS. NEWMAN:**  Your Honor, the Court should note -- I'm

9   sorry, your Honor.  The Court should know that I did not play a

10  role in drafting the complaint.

11         **THE COURT:**  I'm very -- yes, it's clear from the

12  record.  It's clear from the record that you have not.  So the

13  complaint or the amended complaint in this matter were drafted

14  principally by Mr. Howard Kleinhendler and Ms. Sidney Powell.

15         The Court is moving on.

16         All right.  Let's talk about -- I'd like to now talk

17  about the relief that the complaint -- the amended complaint

18  seeks, and I ask this question to counsel for Plaintiffs'

19  counsel, or Plaintiffs' counsel, and you all can decide who you

20  feel is best equipped to answer the question, and the first

21  question is:

22         What authority enabled this Court to issue any of the

23  relief sought in this case, such as decertifying the election

24  results or declaring an outcome that is different than that

25  which was declared by the State?

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1        **MR. CAMPBELL:**  Well, your Honor, I guess, first, you

2    start with the Constitution of the United States; secondly,

3    *Bush v Gore* decided 20 years earlier.  That was a case where

4    the court ordered the State of Florida to stop a count and

5    decided the 2000 presidential election.

6        Since that time, there have been other cases that

7    have been developed under the *Bush v Gore* doctrine.  This idea

8    that, again, was not invented in *Bush v Gore* but has existed

9    since the founding fathers put it into the Constitution, and

10   that is that the court has a role to play in challenges and

11   deciding those challenges on due process grounds, on the

12   Eleventh Amendment, looking at the electors clause and the

13   Twelfth Amendment.  So those things which came up, and which

14   there was another *Bush v The Board of Canvassers*.  I believe

15   that it was decided at the same time.  I have that cite from

16   one of the briefs that we have.  So, again, another example of

17   where the court did take into consideration.  Of course,

18   ultimately*, Bush v Gore* decided the election, and other suits

19   were no longer necessary to be held.

20       There's also the *Carson* case from the Eighth Circuit,

21   and I understand -- and I, of course, read your opinion, your

22   Honor, that this Court has adopted the dissent from *Carson*,

23   but, as you can rightly imagine, a lawyer bringing the majority

24   opinion as part of the basis for the bringing of the action is

25   not unusual, extraordinary, and certainly shouldn't expose

Motion hrg.                                    7/12/2021

1    anybody to sanctions simply because they were unable to

2    determine ahead of time that this Court would choose to follow

3    the dissent.

4           Judge, I can't, obviously, distill down into a few

5    moments all of the authorities that were placed in the motion.

6    I do want to point out to the Court, because the Court

7    identified in its order, the relief that was requested, and it

8    identified relief that was in the amended complaint, but in the

9    request, the motion, actually, for the restraining order, there

10   were, as I recall -- and I hope I have this accurately -- at

11   Page 16 of what would have been, I believe, ECF 7, there were

12   three requests, decertify or stay the delivery of the vote

13   count and results, conserve the status quo, and, thirdly,

14   impound the voting machines, and that was the -- those were the

15   great relief requested within the motion.

16          I should also point out the names on the motion were

17   Sidney Powell, Greg Rohl, Scott Hagerstrom, and

18   Howard Kleinhendler.  The other lawyers do not appear on that

19   document when it was filed.  So I hope that's a response --

20   responsive to the Court's question.

21          **THE COURT:**  What is the authority, specifically, that

22   allows a court to decertify an election?  I mean what specific

23   case are you looking at?

24          **MR. CAMPBELL:**  Well, again, if you're looking at

25   cases, I would say it's *Bush v Gore*.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1           Now, it is, in some respects, the obverse, right?  In

2    *Bush v Gore*, it was a direction to stop an election count.  If

3    you have the authority to stop an election count, I think it's

4    a reasonable inference to believe that the Court has the

5    authority to start a count.  And, again, if that theory is

6    wrong -- and in this case you ruled the Sixth Circuit didn't

7    disturb that.  The U.S. Supreme Court didn't disturb that.  My

8    clients are lawyers.  They understand that, and they respect

9    that.  That's the ruling in this case, but until you gave that

10   ruling, Judge, I don't think that result was as obvious as the

11   Defense has made it out to be.

12           And I have more arguments about that, but I'll

13   reserve that.  You haven't asked me that question yet.

14           **THE COURT:**  You feel that based upon basically an

15   extrapolation of a court's ruling you can conclude the direct

16   opposite?  If it's A, then it could be B.  I don't really

17   understand that.

18           Let me get the Defenses' thoughts on that.  Let me

19   hear -- I'll hear from Mr. Fink, and then I'd like to hear from

20   Ms. Meingast and Ms. Gurewitz.  Go ahead.

21           No, I'm sorry.  I'm sorry, Ms. Gurewitz.  I'm just

22   looking at those -- the State Defendants' counsel and the

23   Intervening Defendants', including Mr. Fink.

24           Go ahead, Mr. Fink.

25           **MR. DAVID FINK:**  Your Honor, in this case the

Motion hrg.                                          7/12/2021

1    Plaintiffs chose to ignore centuries of precedent.  They chose

2    to ignore the procedures that are in place.  They did not

3    seek -- the Trump campaign did not seek, nor did any of the

4    Plaintiffs, a recount.  Instead, they tried, somehow, to

5    collaterally attack everything that had happened.  There was no

6    basis.

7          This Court's opinion and order of December 7th, 2020,

8    extremely well and properly addressed the weakness of all of

9    the claims.  I'm happy to argue or respond to any specific one,

10   but there was no basis for what was argued here.  This was,

11   from the beginning to the end, an attempt to get a message out

12   that was extrajudicial.  They were trying to use the court to

13   get a message out.  We could not find a basis in law for what

14   they were trying to do.

15          **THE COURT:**  Ms. Meingast.

16          **MS. MEINGAST:**  Thank you, your Honor.

17          I would agree with Mr. Fink.  You know, I think we've

18   argued in the numerous briefs that were submitted here really

19   *Bush v Gore* was not even applicable to this case on a

20   substantive theory of dilution.  That wasn't even really what

21   was pled here, and to the extent *Bush v Gore* has any meaning

22   for being able to stop, you know, a vote, stop ballots being

23   counted, that's not what happened here.  Here we went all the

24   way through vote counting, all the way through canvassing, and

25   all the way through certification, and all the way of sending

Motion hrg.                              7/12/2021

1    the slate of electors to the U.S. archivist before this case

2    was even filed.

3          So I don't believe that *Bush v Gore* has any support

4    for disenfranchising millions of Michigan voters after the

5    election has already been certified through our processes, and,

6    as Mr. Fink pointed out, the proper recourse here, with respect

7    to these claims of fraud and misconduct in the election --

8    which of course we disagree with -- was to seek a recount.

9    That's the ordinary process.  You go and ask for a recount.

10   That's the remedy for mistake or fraud in the results of an

11   election.  That's the process that should have been pursued

12   here.  It was not.

13         We even have processes for filing a challenge if you

14   think that the voting equipment malfunctions, and neither of

15   those processes occurred.

16         It's our position that *Bush v Gore* isn't applicable

17   and that the relief requested here is essentially undoing an

18   election and asking this Court to choose a new winner is

19   unprecedented and unsupported by any case law extant.  Thank

20   you.

21         **THE COURT:**  Thank you -- and hang on, Mr. Campbell.

22         Mr. Davis, do you want to be heard on this issue or

23   your counsel, Mr. Paterson?

24         **MR. DAVIS:**  I'm not sure if Mr. Paterson's audio is

25   working properly.  So, your Honor, if you can try and  -- I

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                          7/12/2021

1    defer to my counsel.

2          **THE COURT:**  Well, I mean I'm here.  Mr. Paterson, can

3    you hear the Court?  All right.

4          Mr. Campbell, what -- we don't have to -- I've asked

5    the question.  You've given me the answer.  I've heard from

6    defense counsel.

7          **MR. CAMPBELL:**  Would the Court allow me to give two

8    quick cites, one from the Eastern District of Michigan?

9          **THE COURT:**  Okay.

10         **MR. CAMPBELL:**  -- and one from Colorado.

11         So the first from the Eastern District of Michigan is

12   *Stein versus Thomas*, 222 F.Sup.3d 539.  This was cited in the

13   briefing as well, and, there this Court said, "The fundamental

14   right of vote by plaintiffs, the right to vote," and, "To have

15   that vote conducted and counted accurately."

16         This Court began its order dismissing the request for

17   the injunction by saying, "The right to vote is sacred, and

18   it's uniquely American."  In fact, it's this aspect of having

19   the count conducted and challenged by petition to the judiciary

20   that is uniquely American.

21         Everybody -- a lot of folks vote.  Nazi Germany had

22   plebiscites.  The Soviets had regular voting.  Even Hugo Chavez

23   let you vote for him as many as times as you wanted.  That's

24   not uniquely American.  What's uniquely American is the ability

25   to challenge it, to address that and petition to this court.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   That's what *Bush v Gore* decided.  It decided that the court can

2   get involved, must get involved under the Constitution.

3          So the other -- the continuation of that quote is,

4   "And to have the vote conducted and counted accurately is the

5   bedrock of our nation.  Without elections that are conducted

6   fairly and perceived to be fairly conducted, public confidence

7   in our political institutions will swiftly erode."

8          It is the executive that did the counting, and that

9   was the issue here.  They created the issues that disrupted

10  elements of society that resulted, in this instance, in a case

11  being brought to the court, as it should be in our democracy

12  and in our republic.

13         The other case, by the way, is *Common Cause Georgia*

14  *versus Kemp*.  That's 347 F.Supp.3d 1270, from 2018.  And I

15  think I called it Georgia.  It's obviously -- I think I called

16  it Colorado.  It's obviously Georgia.  There, the court looked

17  at a combination of statistical evidence and witness

18  declarations enough to demonstrate that there -- it could take

19  some action.

20         That's what you had here.  You had the eyewitness

21  reports, which are dismissed by the Defendants as being

22  uneducated statements or statements by uneducated --

23         **THE COURT:**  Yeah, I'm going to get into those

24  statements in just a minute.

25         **MR. CAMPBELL:**  So those things all combine to show

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

1    that using what was available to determine a path, and then,

2    remember, Judge -- this is very important -- three of the

3    Plaintiffs -- and that would be King, Sheridan, and Haggard --

4    they are not just voters.  All six of the Plaintiffs are

5    voters, and every vote is important under the Constitution and

6    the case law, but these three are electors.  And, in order to

7    bring their claims, it was the consideration of counsel in this

8    case that certain acts had to be completed by the State.  The

9    State finally completed those on November 23rd, and this is

10   also explained and gone over in the Supreme Court filings.  The

11   last acts were done by November 23rd, and this case was filed

12   on November 23rd.

13          **THE COURT:**  Mr. Campbell, let me ask you something:

14   Do you agree that the state law establishes an extensive

15   procedure for challenging elections?

16          **MR. CAMPBELL:**  Yes.

17          **THE COURT:**  Did the Plaintiffs avail themselves of

18   any of these procedures?

19          **MR. CAMPBELL:**  No.

20          **THE COURT:**  And why is that?

21          **MR. CAMPBELL:**  Well, with regard to those procedures,

22   in part because before the claims on behalf of the electors

23   could be fully ripe that those processes had taken place.

24   Again, there are a number of different claims that were

25   pending.  You know, Judge, because it's bean cited that the

Motion hrg.                                    7/12/2021

1   U.S. Attorneys, 18 U.S. -- I'm sorry, attorneys generals, 18

2   attorneys generals had their own claim and their own approach

3   to this.  There are a number of other suits.  People took

4   different paths, all seeking to get what they thought the

5   Constitution permitted these courts to undertake on behalf of a

6   petition to address a grievance from a citizen.  In this case,

7   not just citizens, but at least, in the instance, of three

8   electors and so --

9           **THE COURT:**  But the procedures --

10          **MR. CAMPBELL:**  (Indiscernible.)

11          **THE COURT:**  The procedures --

12          **MR. CAMPBELL:**  (Indiscernible.)

13          **THE COURT:**  The procedures were there for them to

14  avail themselves of, you would not -- you disagree with that?

15          **MR. CAMPBELL:**  Oh, no --

16          **THE COURT:**  They were --

17          **MR. CAMPBELL:**  In terms of the procedures under the

18  statutes were there, and, Judge, if this is a case that my

19  clients, those are the lawyers, misjudged the timeline and got

20  it wrong, then that's -- then that's what it is, but that is a

21  long way from anything that could be sanctionable or has been

22  argued by the Defendants, and in terms of issues --

23          **THE COURT:**  Let me -- all right.  Let me -- Mr. Fink,

24  I'm going to give everybody -- I have one more question to ask

25  about the relief that's been sought here and then I'll give you

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    an opportunity to speak.

2          **MR. DAVID FINK:**  Your Honor, I didn't want to speak

3    to substance.  It wasn't substance.  It was a point of concern.

4    That is, it appears that Sidney Powell has left the proceeding,

5    and at least we don't see her, and I just -- I know we want all

6    of the Plaintiffs to be present.

7          **THE CLERK:**  It looks here as if she turned the camera

8    off.

9          **THE COURT:**  Okay.  All right.  There we go.  Maintain

10   the camera, Ms. Powell, please.  I'd like to have everyone

11   here.

12         All right.  My question to Plaintiffs' counsel or

13   counsel for --

14         **MR. KLEINHENDLER:**  Your Honor, I apologize.  Before

15   you move to your next question, I just wanted to add something

16   to what Mr. Campbell said, if I may.

17         **THE COURT:**  Okay.

18         **MR. KLEINHENDLER:**  You asked what is the authority

19   for the relief requested.

20         **THE COURT:**  Yes.

21         **MR. KLEINHENDLER:**  This Court, in the face of a claim

22   of fraud, has inherent equitable authority to do as it sees

23   fit.  Fraud vitiates everything, and that is another basis that

24   this Court has.

25         I also want to make another point that I think is

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1    escaping, particularly what Ms. Meingast had mentioned.  There

2    was no way on this planet that the electors could have used the

3    State of Michigan electoral processes, because that's not what

4    they were trying to accomplish.  What they were trying to

5    accomplish was what are their rights under the Twelfth

6    Amendment and what are their rights heading into the vote of an

7    electoral college, which had not yet taken place, and that was

8    the purpose of the TRO, not to have what is typically

9    considered -- and that's what you're hearing from the Defense.

10   A candidate who loses an election, what resources does that

11   specific candidate have in order to unwind or preserve his or

12   her position?

13       **THE COURT:**  Mr. Kleinhendler, do you have any case

14   authority for the proposition of inherent equitable authority

15   to address fraud?

16       **MR. KLEINHENDLER:**  Your Honor, I haven't.  I don't

17   have it with me.  I did look it up, your Honor, just briefly

18   while we were here.  There is a -- there are many cases that --

19   I would refer you to the United States Supreme Court case,

20   *United States versus Throckmorton*.  It's old.  98 U.S. 61 in

21   1878.  I believe that case states the general equitable

22   jurisdiction that this Court has, fraud vitiates everything,

23   and this Court has the equitable power.

24           And I also just want to point out one other thing

25   that Mr. Campbell --

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **THE COURT:**  I can't imagine it's been over 100 years

2     since -- that this is --

3          **MR. KLEINHENDLER:**  Sorry.  It's just the quickest

4     case I could pull up.  There are more modern cases, and I'd be

5     happy to present them to you, your Honor, but that's just one

6     case that came up quickly while we are here. And --

7          **THE COURT:**  That's fine.  Okay.  Let me stop you,

8     Mr. Kleinhendler.  I'm going to move on.  I need to move on,

9     and I want to ask, and it's relevant, too.  It's really a segue

10    to what you're saying.

11         So let me just ask -- this is a timing issue, and the

12    question from the Court is, is that why did the Plaintiffs wait

13    for almost three weeks after the election to assert challenges

14    regarding voting machines and election procedures, some of

15    which Plaintiffs themselves claim were well-known far before

16    the November 3rd election and others which were known by the

17    close of election day?

18         So, again, we're talking about State procedures that

19    are there, that were there when you -- you know, had been in

20    place for Plaintiffs, Plaintiffs' counsel to for -- counsel to

21    access.  Why -- what was -- what was the reason for the delay?

22         Let me direct that to Mr. Campbell, and then I'll

23    hear from whomever else.

24         **MR. CAMPBELL:**  Well, as we've already expressed, my

25    clients have already expressed, in the written matters both

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1  before this Court and also through the United States Supreme

2  Court filings, the reasons for the delay had to do with, one,

3  the gathering of that information.  The Court says, "Well, all

4  this was well-known."  It wasn't known that the election was

5  going to go as the election did until the election; right?  In

6  fact, it's the day after the election because --

7            **THE COURT:**  Okay.

8            **MR. CAMPBELL:**  -- people went to bed.  On election

9  night there was one result anticipated, and another came out,

10  at least in Michigan, the next day.  So there is a reaction

11  time to that.

12            **THE COURT:**  Certainly, but three weeks?

13            **MR. CAMPBELL:**  Judge, if anything, and it's said

14  already in the briefing, it was filed too early.  It shows

15  you -- again, you've seen the number of lawyers who did

16  contribute.  It's not that there was a lack of effort to get it

17  done.  It's not that there was a lack of direction to get it

18  done, although this is a novel proceeding, we candidly admit.

19            Now, it's not completely novel.  It was pursued in

20  other states, but this was really the first of those states

21  that it was pursued in, but it was believed to be done in good

22  faith by everybody.  And, again, I haven't talked to

23  Emily Newman, but I talked to her counsel.  It was believed to

24  be done in good faith by everybody, and they -- they worked

25  diligently to get it done, and, as Mr. Kleinhendler has said

Motion hrg.                                    7/12/2021

1    and as I will reiterate, the fact is that part of the theory

2    rested on certain processes being completed by the State so

3    that the electors could raise their particular and specialized

4    causes of action and claims.  So there is a ripeness issue

5    here, along with the clock that the Court said was running for

6    three weeks.

7              **THE COURT:**  Any response from Defense counsel?

8              You can start, Mr. Fink.

9              **MR. DAVID FINK:**  Absolutely, your Honor.  This is a

10   case about the election of the President of the United States.

11   There simply is no case that could be of greater magnitude,

12   and, in considering the extent of diligence necessary in going

13   forward, certainly, no case warranted more serious due

14   diligence and hard work on the part of the attorneys.  The

15   suggestion that it would take three weeks to file a lawsuit to

16   raise issues that became -- many of which were stale by the

17   time they were brought.  The possibility that they say they

18   were pulling together the facts, when, in fact, all they did

19   was append affidavits that were filed in other cases and, by

20   the way, rejected in those other cases.  This is a case in

21   which the most diligence received the least.

22             This Court has said in its ruling that the --

23   correctly, "That this case was stunning in its scope and

24   breathtaking in its reach," very well-worded of course.  And I

25   have to -- excuse me, your Honor, but I have to say that the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

 1   Court summed it up:  It was "breathtaking in its reach."  In a

 2   case like that, you do the hard work.  The suggestion that

 3   people couldn't work long hours and put something out quickly

 4   is absolutely insulting to the Court and to all of the parties.

 5            We all worked on the schedule that was created by

 6   this.  We filed briefs in the Supreme Court on just a couple

 7   days' notice.  We filed briefs in this Court on just a couple

 8   of days' notice, and our briefs were comprehensive.  What they

 9   filed, in the first complaint in this case, was an

10   embarrassment to the legal profession.  It was sloppy.  It was

11   unreadable.  It was mocked publicly until they then filed

12   another version a couple of days later.  The fact is this was a

13   sloppy, careless effort, and it was long delayed.  They had

14   plenty of time, and they absolutely should have filed more

15   quickly.

16            **THE COURT:**  Thank you, Mr. Fink.

17            **MR. DAVID FINK:**  Obviously, it should never have been

18   filed.

19            **THE COURT:**  Ms. Meingast, would you like to add

20   anything to that?  You don't have to.

21            **MS. MEINGAST:**  I agree with what Mr. Fink just said,

22   your Honor.

23            **THE COURT:**  All right.  Mr. Paterson, counsel for

24   Mr. Davis, you're on a phone line.  Did you want to add

25   anything?

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          Can you hear the Court, sir?

2          All right.  We're going to move on.

3          **MR. KLEINHENDLER:**  Your Honor, I'd --

4          **THE COURT:**  Mr. Paterson?

5          **MR. PATERSON:**  I would agree with Mr. Fink and

6    Ms. Meingast, Mr. Davis, on behalf of the

7    five-and-a-half-million voters in the state of Michigan, who

8    were attempted to be misled by this complaint.  It was an

9    absolute effort on the part of the Plaintiffs not to challenge

10   the results of the election but to throw shade on the election.

11   I think it's entirely appropriate to have this proceeding and

12   to proceed and make the Court's determination.  So I would

13   agree with Mr. Fink and Ms. Meingast and urge the Court to

14   grant the relief that's being sought.

15         **THE COURT:**  Thank you, Mr. Paterson.

16         Let me just say to counsel, at the close of this

17   hearing I am going to give you -- everyone an opportunity to

18   make a statement.  Please do not feel that you need to comment

19   every opportunity given to you.  Please, if you want to add

20   something that you feel that has not yet been stated, please

21   feel free to do so.  I'm not trying to chill your right at all.

22   I want you to be able to make your record.

23         **MR. KLEINHENDLER:**  Yes, your Honor.

24         **THE COURT:**  All right.  Thank you.  All right.

25         **MR. KLEINHENDLER:**  I wanted to say --

Motion hrg.                                    7/12/2021

 1          **THE COURT:**  Let me move --

 2          **MR. KLEINHENDLER:**  No, your Honor, I would like to

 3  make a record here, and this is not been said.  Number one,

 4  we've been criticized that the attachments --

 5          **THE COURT:**  Hang on, Mr. Kleinhendler.  Let me ask

 6  you something, sir.  What -- tell me -- now, you have already

 7  spoken, and I was asking -- that my specific last question was

 8  "Why did Plaintiffs wait three weeks after the election?"  Are

 9  you going to address that?  Without regard to what Mr. Fink or

10  others have said, did you want to address that to --

11          **MR. KLEINHENDLER:**  Yes, your Honor.

12          **THE COURT:**  -- the Court?

13          **MR. KLEINHENDLER:**  Yes, that's exactly what I wanted

14  to address.

15          **THE COURT:**  All right.  Proceed, sir.

16          **MR. KLEINHENDLER:**  Your Honor, yes, there was

17  suspicion about the voting machines prior to the election.

18  Yes, there was a court decision in Georgia that had called into

19  question the security of the Dominion machines, but it wasn't

20  until the voting was counted, and that took multiple days, even

21  in Michigan, until the scope of what many people perceived to

22  be irregularities was understood.  So we didn't even get a -- I

23  don't even think the networks announced the winner of the

24  election until November 7th or November 8th.

25          One second.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                         7/12/2021

 1          Okay.  Now, it took us time to put together the

 2    Ramsland affidavit, the affidavit from Spider, the affidavit

 3    from many of the other people, and what Mr. Fink said is simply

 4    not accurate.  To say that every single affidavit, declaration

 5    that was presented to you in this complaint was filed in other

 6    cases is absolutely false.  Okay.  Look at what we filed.  Look

 7    at the record.

 8          Second, it took time to put together those

 9    affidavits.  We did not -- we chose not to simply file a

10    speaking complaint.  We chose to file the complaint supported

11    by 960 pages, your Honor, of documents, affidavits, many of

12    which were original to this proceeding.

13          Further, your Honor, I want to make the point very

14    clear to you.  It was not possible to bring this complaint

15    before the election was certified because we are here on behalf

16    of electors.  This is a case that is heading towards the

17    electoral college.  This mantra that you're hearing over and

18    over again that we're looking to disenfranchise millions of

19    voters is not what we were trying to do.  What we are trying to

20    do is, hey, wait a second, let's take a look at these machines.

21    Let's slow the locomotive train down so a court of law can take

22    a look at the allegations raised in these 960 pages.  It takes

23    time to put that together.

24          Last point.

25          **THE COURT:**  Hang on.

Motion hrg.                                    7/12/2021

1              **MR. KLEINHENDLER:**  Last point and I'm done.

2              Mr. Fink criticized our initial complaint, says it

3     was horrible, it's garbage.  If that's the way he wants to

4     talk, I'll will leave it to the Court if that's --

5              **THE COURT:**  Please make your point.

6              **MR. KLEINHENDLER:**  The point is we had an error in

7     converting the Word document to the PDF document.  I even told

8     this to Mr. Fink.  We spoke for -- I even sent him --

9              **THE COURT:**  And what was the impact of the error as

10    relates to time?

11             **MR. KLEINHENDLER:**  The error was many paragraphs,

12    many paragraphs, the words were slammed so close together you

13    couldn't read them.  Okay.

14             **THE COURT:**  Okay.  All right.

15             **MR. KLEINHENDLER:**  So we -- one more second.  So

16    we --

17             **THE COURT:**  No, Mr. Kleinhendler, that's enough.

18    I've heard enough, and there's time reserved at the end.  If

19    you want to use your time in addressing that, you may do so.

20             The Court is prepared now to move on to the issue --

21             **MR. CAMPBELL:**  If I can, your Honor.  Very briefly,

22    your Honor, only to put dates on this.

23             I've had a chance to look this up.  The county boards

24    finished on November 17th, according to my records.  The Board

25    of Canvassers finished on November 23rd.  So this case was

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1  filed on November 25th.  So with respect to the Court, although

2  that's obviously three weeks from the election --

3              **THE COURT:**  Yes.

4              **MR. CAMPBELL:**  -- it's not three weeks from when the

5  case could have been filed.

6              **THE COURT:**  Yeah.  Okay.  Thank you.

7              Let's talk about mootness, counsel, a couple

8  questions about that.  This is directed, again, to Plaintiffs'

9  counsel and counsel for Plaintiffs.

10             As you acknowledged before, the U.S. Supreme Court,

11 in a filing before it, once electoral votes were cast on

12 December 14th, subsequent -- these are the words that

13 Plaintiffs' counsel inserted in a brief to the Supreme Court --

14 "Subsequent relief would be pointless and the petition would be

15 moot."

16             Is that right, Mr. Campbell?  Was that the assertion?

17             **MR. CAMPBELL:**  I believe that is accurate.  There

18 wasn't -- the first assertion, and I think this Court is aware

19 in the filing before this --

20             **THE COURT:**  No, no --

21             **MR. CAMPBELL:**  -- your Honor --

22             **THE COURT:**  I'm not asking whether that was the first

23 assertion.  I'm asking if that was the assertion that was made

24 to the Supreme Court.

25             **MR. CAMPBELL:**  At that time, and it was believed to

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   be accurate at that time, as the first assertion was believed

2   to be accurate when it was made, but things change.  This Court

3   I think is well aware of what changed actually on the 14th.  If

4   I'm correct, your Honor, that assertion was made on

5   December 11th in good faith.

6           **THE COURT:**  All right.  Given that statement -- I

7   don't know about that December 11th date.  I'm talking about

8   the statement that was made to the Supreme -- and it could have

9   been made.  I wasn't saying that it was made --

10          **MR. CAMPBELL:**  I believe that's right, your Honor.

11          **THE COURT:**  Right.  Okay.  I was just referencing the

12  date.  December 14th is the date upon which the electoral votes

13  were cast.

14          **MR. CAMPBELL:**  Correct.

15          **THE COURT:**  My question is, given the statement to

16  the Supreme Court that subsequent relief would be pointless and

17  the petition would be moot after votes were cast on the 14th,

18  why did the Plaintiffs not recognize this lawsuit as moot and

19  dismiss it voluntarily on that date, on the 14th of December?

20          Mr. Campbell.

21          **MR. CAMPBELL:**  Because my clients are lawyers, and

22  lawyers have a duty to zealously advocate for their clients.

23          Your Honor, things change.  This was a fluid

24  situation, and, if I may, by historical reference, I believe

25  when this case was filed originally before your Honor we

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    thought -- my clients thought honestly and truly that the

2    drop-dead date was December 8th, and that's what we've said to

3    this Court.  Turns out that another judge in Wisconsin did a

4    different set of calculations and said, "Well, why are you guys

5    all hurrying for December 8th.  It should be December 14th."

6          I think Defendants agree that it's December 14th

7    because that's what they said in their briefing.  Again, we --

8    my clients thought honestly and truly it was December 8th.

9    Somebody else came along and said, "Why not December 14th?" and

10   we didn't argue with that.  That's the date that we gave to the

11   Court on December 11th because by that time the analysis was

12   made in Wisconsin, and it was adopted, basically, by all

13   parties.

14         On December 14th, your Honor, something happened that

15   nobody anticipated and nobody on my side instigated or

16   commanded happen, but three of our Plaintiffs were, in their

17   opinion, properly elected as electors.  That's not something

18   that anybody, in terms of the lawyers in this case, had

19   anticipated, expected, or, necessarily, had even wanted.

20   However, once they were in their -- you can call it, again, a

21   Trump election by the Republicans -- once they were elected as

22   electors in Lansing, they believe, according to the

23   Constitution, to be the electors.

24         That changed things, and now the Supreme Court's

25   determination did have life.  It had life it did not have

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                          7/12/2021

1    before, and so, in order to respect the desires, the goals that

2    are set by the client, it was decided by -- again, not

3    everybody.  Obviously, Emily Newman didn't have any role.

4    Brandon Johnson didn't have any.  Lin Wood didn't have any role

5    in this.  But, Howard Kleinhendler, Sidney Powell, they

6    decided -- and, again, I believe appropriately so given their

7    responsibilities as lawyers to their clients -- that this case

8    was not proper to be dismissed after December 14th because

9    there were still issues that existed and remain.  When those

10   were cleared, and they were cleared in early January, shortly

11   thereafter this case was dismissed.

12        **THE COURT:**  All right.  Let me hear from Ms. Meingast

13   on that issue, please.

14        **MS. MEINGAST:**  Thank you, your Honor.  I'm not even

15   sure I even know what to say.  You know, as we put forth in our

16   brief, your Honor, as you indicated, in their pleadings to the

17   U.S. Supreme Court, the highest court in our land, Plaintiffs

18   indicated this case would be moot by the time the electors

19   voted.  This whole idea or notion that this was somehow untrue

20   or their case was revitalized because some of the Plaintiffs,

21   who were purported Republican Party electors, took a vote

22   outside the Capitol electing themselves electors is

23   preposterous.  There is no mechanism for having an alternative

24   slate of electors sent anywhere, to the archivist or anything.

25             So I think the suggestion that somehow their case was

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   reinvigorated or that they were wrong, by their own pleadings

2   that December 14th was the date by which really this would be

3   moot, as far as any relief this Court could enter, I mean,

4   really at the point that December 14th, we've sent the

5   electoral slate, the college votes, our electors vote, and it

6   goes to the archivist.

7          At this point, if you want to bring a case, you want

8   some relief, you're going to have to go sue Congress.  You're

9   going to have to go to, you know, a different -- a different

10  playing field and not this Court.  So I'm flabbergasted by this

11  idea that somehow their case was newly invigorated on the 14th

12  and that this was not something simply made up here to avoid

13  the claims that we've put forth in our pleadings.

14         **THE COURT:**  To that point -- thank you, Ms. Meingast.

15         To that point, Mr. Campbell, how -- explain to me how

16  you think that electing themselves as electorates changed

17  anything.  I've never heard this as a reason, by the way, as to

18  why your clients were not willing to dismiss after

19  December 14th.  In fact, what had been said, as I understand

20  it, was that it was -- your clients believed that I didn't have

21  any jurisdiction to consider a motion to dismiss while the

22  decision on the injunction was still on appeal.  That's what I

23  heard.  So I've never heard this explanation about there being

24  some reinvigoration because of the electors having been

25  elected, air quotes.  I never have heard that.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

1              **MR. CAMPBELL:**  I'm not sure I've heard air quotes --

2              **THE COURT:**  I'm sorry, sir?

3              **MR. CAMPBELL:**  I'm not sure I've heard air quotes in

4      a case before, but I appreciate that.

5              **THE COURT:**  All right.  Well, you see them.  Okay.

6              **MR. CAMPBELL:**  Your Honor, again, my understanding is

7      that argument is made by Defense from an e-mail exchange with

8      Stefanie Lambert, who can tell you what she was thinking about.

9              It seems to me a reasonable consideration, if I'm

10     appellate attorney, is to decide whether or not this Court has

11     jurisdiction, but I don't think there was a flat statement

12     there was no jurisdiction.  I believe it was, if I recall the

13     e-mail that was addressed in one of the pleadings, that it was

14     that there was wondering whether or not there was jurisdiction.

15     I don't think there's been any pleading ever filed in this

16     court saying that it was without jurisdiction to do something

17     or to not do something.

18             Again, the only pleadings that occur after this Court

19     rules are, basically, the Defendants and the Intervenors who

20     decided that they needed to go and file things, rather than

21     asking for an extension of time, for example.  They decided to

22     file a motion to dismiss.  That's their election.

23             I hope this Court understands why, in part, they

24     wanted to do that rather than take the courtesy of an

25     extension.  They wanted to do something that they could later

Motion hrg.                                    7/12/2021

1    hang a hat on and say, "Hey, this is stuff we should be able to

2    collect on either under 1927 or Rule 11," or whatever theory

3    they were going to come up with.

4              So in terms of what our clients' clients and what my

5    clients did in this case, they let a claim pend long enough so

6    that there was a final resolution of the issues clearly and

7    absolutely.  And, again, your Honor practiced law long enough

8    to know.  You make the decision to dismiss that case, and it

9    turns out that there is some relief for your client, there's no

10   policy in the world that's going to cover the loss that

11   occurred because of that.

12             This is, again, basic lawyering.  It's done every day

13   in this country --

14   **THE COURT:**  Yeah, I haven't -- let me stop you,

15   Mr. Campbell.  Again, my question:  Are you arguing this for

16   the first time?

17   **MR. CAMPBELL:**  I'm sorry, when you say arguing?

18   **THE COURT:**  This issue that you're bringing up about,

19   you know, the claims have been reinvigorated after

20   December 14th.  Is that a new argument that you're advancing?

21   **MR. CAMPBELL:**  Well, I don't believe the issue of the

22   date of dismissal in the Supreme Court, the filing that has

23   come up in these proceedings, as a basis for anything, and,

24   again, I know you might not love the arguments about

25   jurisdiction, but I don't believe you have Rule 11

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   jurisdiction.  That's something that's said in the Supreme

2   Court or the Sixth Circuit.  I don't believe you have Section

3   1927 jurisdiction over -- it hasn't been a part of any of the

4   pleadings.  If I'm the first person that happens to argue it,

5   it's because it's not been raised by anybody until you asked

6   the question, Judge.

7              **MR. DAVID FINK:**  Your Honor --

8              **MR. KLEINHENDLER:**  Your Honor, if I might point

9   out --

10             **THE COURT:**  Hang on a moment.  One at a time.

11             Let me hear from Mr. Fink.

12             **MR. DAVID FINK:**  Your Honor --

13             **MR. CAMPBELL:**  Your Honor, if can intervene, and I

14   apologize --

15             **THE COURT:**  No, Mr. Campbell.  Mr. Campbell --

16             **MR. CAMPBELL:**  Yes, I just want to suggest, it

17   might --

18             **THE COURT:**  No, no --

19             **MR. CAMPBELL:**  -- be better to hear from Mister --

20             **THE COURT:**  No --

21             **MR. CAMPBELL:**  -- Kleinhendler --

22             **THE COURT:**  I'm sorry, sir.

23             **MR. CAMPBELL:**  -- before Mr. Fink.

24             **THE COURT:**  Excuse me.  Excuse me.

25             **MR. CAMPBELL:**  Apologize.  I'll mute.  Thank you.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1            **THE COURT:**  Thank you.

2            Mr. Fink.

3            **MR. DAVID FINK:**  Your Honor, we've now heard for the

4    very first time the theory from the Plaintiffs that the

5    subjective belief of three of the Plaintiffs that they had

6    somehow been elected as electors, because that was their

7    subjective belief, the attorneys had to pursue that claim.

8            Now, there's a couple of problems with it.  One, of

9    course, the attorneys have a duty to only go forward with

10   something for which there is a valid, legitimate, legal theory

11   to present to the Court and facts to support it, but, the more

12   important issue, in terms of the question this Court poses,

13   which was mootness, was not once, until this hearing today, not

14   once did that distinction come up in this case, and on

15   December 14th, the date when they said the case would be moot,

16   on December 14th, if in fact they decided that due to a change

17   in circumstances it was not moot, they could have and should

18   have amended their complaint or otherwise filed something with

19   this Court to notify us of the new proceeding that they were

20   taking.

21           Now, counsel said something that I have to take

22   personally as outrageous, when he suggests that the reason that

23   we filed our motion to dismiss in this case at the time that we

24   did and the reason the State filed the motion at the time that

25   they did, was because we had some venal interest in collecting

Motion hrg.                                    7/12/2021

 1   funds in a Rule 11 sanction.

 2          The fact is in this case the basis of the election of

 3   the President of the United States was under attack.  These

 4   folks were putting in jeopardy the safety of our republic, and

 5   we chose to step up and to say, "No, this case must be and

 6   should be dismissed," and, ironically, their response at the

 7   time was, "Well, it's pending on appeal so it can't be

 8   dismissed yet."  Of course, that was absurd that the other

 9   sanction was pend -- that the motion -- the temporary relief

10   motion was pending on appeal didn't interfere with it.

11          We moved forward with our motion to dismiss.  We're

12   being asked today why we didn't adjourn it.  We did everything

13   we could to expedite it, as we should have.

14          Now, I will say this.  After we filed that motion and

15   they saw all the grounds, they still didn't dismiss.  They also

16   still didn't dismiss after January 7th when the United States

17   Congress accepted the electors.  Certainly, by then, the case

18   would have been moot, if not on December 14th, and they still

19   didn't dismiss.  They still didn't dismiss, even though they

20   had in one of their briefs on sanctions, they've said that the

21   January 6th certification rendered their claims moot, but they

22   didn't dismiss that day.

23          Instead, they kept moving forward, and then they

24   waited until January 12th, which was the date that the response

25   to our motion to dismiss was due, and on that date what did

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1   they do?  They asked for an extension.  We said, "No, we don't

2   want an extension."  We opposed it.  The Court, understandably,

3   under the circumstances granted them two days.  During those

4   two days we were compelled -- we didn't choose to do this.  We

5   were compelled to file responses to a writ of cert in the

6   Supreme Court of the United States, hardly a minor matter,

7   again, only because they wouldn't dismiss.

8          And then even when they did choose to so-call

9   voluntarily dismiss on January 14th, even when they did that,

10  they didn't dismiss the appeal.  They didn't dismiss their

11  petition for cert.  We asked them if they would.  On

12  January 18th, we asked Stefanie Junttila if they were going to

13  dismiss the appeal.  She asked us if we would consent.  Of

14  course we said we'd consent to dismissal of the appeals, but,

15  instead, after we did this, we reached out -- or my late

16  partner reached out to Ms. Junttila and said, "What's happening

17  with the dismissal of the appeals?"  And the answer she got --

18  he got was, "It's my understanding that Sidney Powell's team is

19  preparing, it and I will submit it as I receive it."

20         And then, one last point, while the Supreme Court has

21  the petition for writ pending -- and this case is clearly moot.

22  Everybody agrees today that it's moot.  They agree it was moot

23  in the pleadings they're filing now.

24         On February 4th, Sidney Powell sends out a social

25  media message on Telegram saying -- this February 4th -- "By

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   the way, assertions that all cases were lost is false.  Our

2   Michigan case in the Supreme Court is scheduled for conference

3   soon."  Signed Sid.  They never dismissed this case.  It was

4   moot from the beginning, as this Court found in its first

5   ruling.  At every stage they'd say, "It will be moot when this

6   happens, it will be moot when that happens," but they kept it

7   going.

8          **THE COURT:**  Final response.  Thank you.

9   Mr. Campbell, I'll give you the last word on that.

10         **MR. KLEINHENDLER:**  Ma'am, I just want to point out

11  something I think is very important.

12         We've raised this precise argument in ECF 112, pages

13  27-30.  I'm just going to read you just to where you can start

14  reading.  "Opposing counsel and Defendants" -- this is page 27

15  of ECF 112 that was in response to ECF 105.

16         "Opposing counsel and Defendants also allege the case

17  was moot and vexatious over the pleadings in the case that this

18  argument based on the event of the Michigan Republican slate of

19  electors voting a dual slate of electors."  We raised this

20  issue square front and center before you.  That's number one.

21         Number two, your Honor, it's not merely that three

22  electors believed subjectively that they were still in the

23  game.  All 16 electors, Michigan electors, which we have

24  nothing to do with, appeared before the capitol.  They weren't

25  allowed in, and they decided to hold a vote.  That is based on

Motion hrg.                                    7/12/2021

1  their rights under the Twelfth Amendment, and it figures into

2  what happens in Congress on January 6th when, under the Twelfth

3  Amendment, and even under the ECA, the Electoral Count Act,

4  objections to electors are permitted.  That's what the

5  Constitution says.

6          So, A, it's before you in the briefing; B, it renders

7  this thing not moot.

8          To the last point -- and this is also in the brief

9  before you, your Honor.  Again, this is ECF 112.

10         **THE COURT:**  I understand.

11         **MR. KLEINHENDLER:**  Okay.  Even after January 6th, I'm

12 going to push this, and I'm going to read you the last

13 sentence.  "There is still a nonmootness issue, because the

14 matters that were raised in this lawsuit are likely to be

15 repeated and evading review."  And we cited *Del Monte Fresh*

16 *Produce versus U.S.* 570 F.3d 316, D.C. Circuit, 2009.

17         So, yes, the election was moot.  Mr. Biden was

18 elected.  However, the issues raised in this lawsuit, because

19 they were likely to be repeated and evaded review, could have

20 still been decided by the Supreme Court.

21         Thank you, your Honor.

22         **THE COURT:**  All right.  I'm going to move on.  Thank

23 you.  I'm going to move on to that section looking at legal

24 authority.  I'm going to move on now to the actual evidence

25 that's been submitted in this case.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1            The answers, counsel, to the following questions will

2   be assessed to determine whether sanctions under Rule 11,

3   Section 1927 and/or the Court's inherent sanctions authority

4   should be imposed.  Specifically, the questions are structured

5   to determine whether Plaintiffs and/or counsel for Plaintiffs

6   should be sanctioned under Rule 11 for failure to make a

7   reasonable inquiry into fact or law, knowingly asserting a

8   groundless position, or asserting a claim for an improper

9   purpose; secondly, whether counsel for Plaintiffs should be

10  sanctioned under Section 1927 for unreasonable and vexatious

11  behavior that prolonged this litigation; and, three, whether

12  Plaintiffs and/or Plaintiffs' counsel should be sanctioned

13  under the Court's inherent authority for litigation practices

14  undertaken in bad faith through the advancement of claims

15  without merit for an improper purpose.

16           So that's noticed.  Those are the various sources of

17  sanctions, and now I will proceed.

18           And this first question here is for Plaintiffs or

19  Plaintiffs' counsel -- I'm sorry, Plaintiffs' counsel or

20  counsel for Plaintiffs' counsel.

21           Do you believe that a lawyer has a legal obligation

22  to review the plausibility of the facts alleged in the pleading

23  before signing and filing it?

24           Mr. Campbell.

25           **MR. CAMPBELL:**  I believe the answer, on behalf of all

Motion hrg.                                          7/12/2021

 1  my clients, would be yes.

 2          THE COURT:  All right.  Let me then ask you as

 3  relates to Mr. Russell Ramsland's affidavit.  Before -- I would

 4  like to know who read Russell Ramsland's declaration before

 5  attaching it to the pleadings in this case and submitting it in

 6  support of the motion for TRO?  Who on the team read it?

 7          MR. CAMPBELL:  I don't have that information, your

 8  Honor.  I --

 9          THE COURT:  Okay.  Does anybody have --

10          MR. CAMPBELL:  I know who didn't read it.

11          MR. KLEINHENDLER:  I read it, your Honor.

12          THE COURT:  Wait a minute.  Hang on one second.

13          MR. KLEINHENDLER:  Howard Kleinhendler.  I read it.

14          THE COURT:  Okay.  All right.  So all right.  Are you

15  the only person, Mr. Kleinhendler, that did?  Anyone else?

16          MR. KLEINHENDLER:  I don't know if others reviewed it

17  as well.

18          THE COURT:  Well, I need to know.  That's what this

19  hearing is for.  I need to know.  If you read it before it was

20  attached, raise your hand or speak up.

21          Okay.  Mr. Johnson read it.  When did you read it,

22  sir?  You read it?

23          MR. JOHNSON:  I don't recall when I read it.  I read

24  it before it was filed.

25          THE COURT:  Okay.  And, Mr. Kleinhendler, you read

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   it?

2           **MR. KLEINHENDLER:**  Yes.

3           **THE COURT:**  And, Mr. Rohl, you read it, sir?

4           **MR. ROHL:**  I read it prior to the -- the day of

5   filing I read the entirety of what was sent to me, including

6   that.

7           **THE COURT:**  Okay.

8           **MR. WOOD:**  Your Honor, this is Lin Wood.

9           **THE COURT:**  So the question here is read before it

10  was filed in support of -- before it was filed.

11          **MR. ROHL:**  That's correct.  That is correct, your

12  Honor, the day of.

13          **THE COURT:**  Okay.  All right.  Thank you.

14          **MR. HAGERSTROM:**  Same here.

15          **MR. WOOD:**  Your Honor --

16          **THE COURT:**  I'm sorry, Mr. Wood?

17          **MR. HAGERSTROM:**  Scott Hagerstrom.  I read through --

18  on the day it was filed, I read through --

19          **THE COURT:**  No, no, no.  I'm not asking if you looked

20  at it after it was filed.  The Court's question is --

21          **MR. HAGERSTROM:**  No --

22          **THE COURT:**  -- the Court's question is:  Was it read

23  before --

24          **MR. HAGERSTROM:**  Yes, prior to the filing.

25          **THE COURT:**  Okay.  Mr. Wood, you had your hand up,

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                  7/12/2021

 1   sir?

 2          **MR. WOOD:**  Thank you, your Honor.  I just want to

 3   make a point, which I think I made earlier.  I did not review

 4   any of the documents with respect to the complaint.

 5          **THE COURT:**  Okay.

 6          **MR. WOOD:**  My name was placed on there, but I had no

 7   involvement.  So I haven't read -- didn't read the complaint,

 8   wasn't aware of the affidavits.  I just had no involvement

 9   whatsoever in it.

10          **THE COURT:**  Did you give your permission to have your

11   name included on the pleadings or the briefs, sir?  Mr. Wood,

12   this is directed to you.

13          **MR. WOOD:**  Yes, your Honor.  Let me answer that.  I

14   do not specifically recall being asked about the Michigan

15   complaint, but I had generally indicated to Sidney Powell that

16   if she needed a, quote/unquote, trial lawyer that I would

17   certainly be willing and available to help her.

18          In this case obviously my name was included.  My

19   experience or my skills apparently were never needed so I

20   didn't have any involvement with it.

21          Would I have objected to being included by name?  I

22   don't believe so, but I did not apply for pro hoc vice

23   admission.  I had no intentions.  It's not indicated on the --

24   if you look on the complaint and the amended complaint --

25          **THE COURT:**  All right.  You gave your permission.

                   King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **MR. WOOD:**  -- there's no indication.  I'm sorry.

2          **THE COURT:**  You didn't --

3          **MR. WOOD:**  I didn't object to it, but I did not

4    know -- I actually did not know at the time that my name was

5    going to be included, but I certainly told Ms. Powell in

6    discussions that I would help her if she needed me in any of

7    these cases, and in this particular matter apparently I was

8    never needed so I didn't have anything to do with it.

9          **THE COURT:**  Did you read it before it was filed,

10   Mr. Wood, or are you saying you had no knowledge?

11         **MR. WOOD:**  I had no notice.

12         **THE COURT:**  Right.

13         **MR. WOOD:**  I didn't have any involvement in the

14   filing so I did not read it before it was filed.  It was only

15   afterwards when I found out my name was even on there.

16         So I just -- you know, I haven't received a motion

17   for sanctions.  I didn't get served with anything.  I'm just --

18   I'm here because your Honor warned me to be here, but I'm here

19   subject to my defense that I just don't think there's any

20   personal jurisdiction over me because I didn't do anything in

21   Michigan.  I didn't do anything with respect to this lawsuit.

22         **THE COURT:**  But you did --

23         **MR. WOOD:**  I didn't put my name --

24         **THE COURT:**  -- but you gave a general --

25         **MR. WOOD:**  No, I didn't --

Motion hrg.                                      7/12/2021

1          **THE COURT:**  Hold on.  So that I can properly

2   characterize your testimony.  You gave general permission to

3   Ms. Powell to use your name on any pleading that -- what?

4   Finish that sentence or restate it if I'm wrong.

5          **MR. WOOD:**  I didn't give permission for my name

6   specifically to be on any pleading.  I told Sidney, when she

7   asked, if she needed my help, I would help her from a trial

8   lawyer standpoint.  That's it.

9          **THE COURT:**  Okay.  So you were not -- were you

10  surprised to see that your name was included?

11         **MR. WOOD:**  When I found out it was included, your

12  Honor --

13         **THE COURT:**  That was my next question --

14         **MR. WOOD:**  I guess I was --

15         **THE COURT:**  Yeah, when did you find out?

16         **MR. WOOD:**  I don't -- it would have been sometime

17  well after the filing.  I didn't follow the litigation.

18         I think I first became aware that my name -- I know

19  that I was away when I saw an article in the newspaper about

20  this motion for sanctions being filed, and I was trying to

21  figure out why I was named in it and I didn't receive a copy of

22  the sanctions.  I looked.  I was on the pleadings, but only on

23  the complaint and the amended complaint.  On the subsequent

24  filings that were made with respect to the injunction, my name

25  doesn't even appear.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          So I'm only saying that I'm assuming that

2   Sidney Powell knew that I would help her.  For whatever reason,

3   whoever was drafting the complaint put my name only there, but,

4   your Honor, I just didn't have anything to do with this so I --

5   I didn't read anything.

6          **THE COURT:**  All right.

7          **MR. WOOD:**  I wasn't asked to read anything and so I

8   didn't specifically say, "Hey, put my name on there.  I want to

9   endorse this lawsuit."  I just, in general, told Ms. Powell,

10  and I think she'll affirm this, that I was there to help her

11  from a trial lawyer standpoint.  On that matter or any other

12  matter, I don't -- I didn't have any specific involvement in

13  it.

14         **THE COURT:**  All right.  Let me --

15         **MS. HALLER:**  Your Honor --

16         **MR. DAVID FINK:**  Your Honor --

17         **THE COURT:**  Hang on.  One moment.  Hang on for one

18  moment.  Ms. Haller, can you hang on for one moment, please.

19         Mr. Fink, you may be heard.

20         **MR. DAVID FINK:**  Yes, if I may, your Honor.  Mr. Wood

21  just indicated that he did not know about the sanctions motion.

22  Mr. Wood was served with our December 15th notice and

23  opportunity to withdraw the pleadings and through the Safe

24  Harbor provision.  He was served by e-mail and he was served by

25  first class mail using the addresses provided in the pleadings,

Motion hrg.                                         7/12/2021

1   and the other representation by him is blatantly false.

2              I also would indicate that Mr. Wood in Delaware

3   Circuit Court -- in Delaware court trying to defend against a

4   claim brought there --

5          **MR. CAMPBELL:**  Your Honor, I'm going to object --

6          **THE COURT:**  Hang on.  No, no, no.  Excuse me.

7              Excuse me, Mr. Campbell.  Please.  Please.  I will

8   handle this.  I am going to give everyone who I need to hear

9   from an opportunity to speak.

10             You may proceed, Mr. Fink.

11         **MR. DAVID FINK:**  Thank you.  In Delaware, Mr. Wood,

12  attempting to burnish his credentials in some way, explicitly

13  made the representation to the superior court that he was, in

14  fact, in the words of that case, "Among those cases in which

15  Wood became involved were lawsuits in Wisconsin, Michigan, and

16  Wood's own suit in the state of Georgia."  This is the case in

17  Michigan.

18             So he's ready to tell people when it helps him that

19  he's involved in this case.  He also broadcast on social media

20  regularly his participation and his advancement and endorsement

21  of this.  That said, most importantly and most relevantly here,

22  he could at any time have withdrawn the pleading or withdrawn

23  his participation.

24             We didn't want -- we didn't choose to give them a

25  chance to back out.  We did it because the court rule required

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   it.  The court rule said we couldn't seek Rule 11 sanctions if

2   we didn't give them notice and an opportunity to withdraw their

3   allegations.  We did it.  He had the notice, and he didn't

4   withdraw the allegations.  Thank you.

5           **THE COURT:**  All right.  Thank you, Ms. Haller --

6           **MR. WOOD:**  Your Honor --

7           **THE COURT:**  Hang on, please.

8           **MR. WOOD:**  Your Honor, may I be permitted --

9           **MS. HALLER:**  (Indiscernible.)

10          **THE COURT:**  Mr. Wood, hang on, sir.  I'm going to let

11  you speak momentarily, and I see that Ms. Wabeke, our court

12  reporter, and we all know, is legitimately concerned.  So one

13  at a time, and I will come right back to you, but I want to go

14  to Ms. Haller because I said that I would.  So please go ahead.

15          **MS. HALLER:**  Thank you, your Honor.  I just wanted to

16  clarify that I was one the reviewers of Russ -- Russ Ramsland's

17  affidavit in the complaint that we filed.  I couldn't remember

18  if I had, but I do recall I did.

19          **THE COURT:**  Okay.  All right.  And so you -- and you

20  actually -- you reviewed it before it was filed, counselor?

21          **MS. HALLER:**  Yes, your Honor.

22          **THE COURT:**  All right.  Very well.  And let me do a

23  housekeeping piece right here because I want to hear -- but I

24  need everyone to raise your hand and I can see you, and we'll

25  take it in that order.

               King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

1           Mr. Wood, you may respond to what Mr. Fink has said.

2           **MR. WOOD:**  Thank you, your Honor.  I was not afforded

3   any type of a hearing on the Delaware proceedings.  I didn't

4   take any position.  I didn't have an opportunity to.  That

5   matter is on appeal now to the Supreme Court of Delaware based

6   on the trial court's lack of authority to sua sponte issue a

7   ruling (indiscernible) with respect to disciplinary matters and

8   failure to have any type of a hearing.  So I'm not sure what

9   he's referring to there.

10          What I have said, I'm involved -- well, I'm involved.

11  My name showed up so I can't say I'm not involved generally,

12  but, again, I have to tell you, your Honor, I didn't receive

13  any notice about this until I saw something in the newspaper

14  about being sanctioned.  So I disagree with Mr. Fink.

15          **THE COURT:**  Okay.  Well, that can be fleshed out.

16  That can be fleshed out.

17          **MR. WOOD:**  Sure.

18          **THE COURT:**  I'm going to move on at this point.

19          **MR. WOOD:**  Because --

20          **THE COURT:**  Yes, sir.

21          **MR. WOOD:**  Let me say, because if I had been, I would

22  have obviously had a duty to consider whether or not to

23  withdraw, but I can't withdraw from something I've never asked

24  to be a part of.  I never moved to be admitted to this court,

25  to in any way be involved as counsel of record.

            King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

 1           THE COURT:  Did you feel that you had a duty --

 2           MR. WOOD:  So I just don't think that --

 3           THE COURT:  Did you feel you had a duty --

 4           MR. WOOD:  (Indiscernible.)

 5           THE COURT:  Did you feel, Mr. Wood, you needed to

 6     notify this Court of that?

 7           MR. WOOD:  Notify --

 8           THE COURT:  I don't know, I mean, that, you know,

 9     that your name was used and you're not really sure, you know,

10     you hadn't given full permission for that --

11           MR. WOOD:  I --

12           THE COURT:  -- any kind of notification to the Court

13     and saying this seems to be a --

14           MR. WOOD:  (Indiscernible.)

15           THE COURT:  This appears to the Court to be an

16     after-the-fact assessment.

17           MR. WOOD:  Well, I just don't understand that at all.

18     If the Court -- if the Court knew from the Court's record that

19     I had never moved to be admitted pro hoc vice.  So you knew,

20     the Court knew that I was not of record in this case so why

21     would I have a duty to tell the Court what you already knew?

22           Now --

23           THE COURT:  We don't even --

24           MR. WOOD:  Listen, I don't know anything --

25           THE COURT:  -- have pro hoc vice status.

                  King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1           **MR. WOOD:**  So you have --

2           **THE COURT:**  Excuse me.  We do not even have pro hoc

3    vice status here in Michigan.  So everybody -- you know, I mean

4    there's an assumption, certainly, that I am able to make, that

5    when you come into the Eastern District of Michigan, you

6    familiarize yourself with the local rules.

7           **MR. WOOD:**  I didn't (indiscernible) --

8           **THE COURT:**  So there's no responsibility --

9           **MR. WOOD:**  I didn't --

10          **THE COURT:**  -- that the Court has to do that.

11          **MR. WOOD:**  I didn't come into the district.  My name

12   was placed on a pleading.  You seem to assume that I said,

13   "Hey, I want to be part of the Michigan case."  I've made it

14   clear that that's not what happened factually.

15          **THE COURT:**  Okay.

16          **MR. WOOD:**  And that factual presentation is

17   undisputed.

18          **THE COURT:**  Okay.  Well, I don't believe it's

19   undisputed, and, certainly when you put your name --

20          **MR. WOOD:**  Who's disputing it, your Honor?  Who's

21   disputing it?

22          **THE COURT:**  Mr. Fink has --

23          **MR. WOOD:**  Who's disputing?

24          **THE COURT:**  -- disputed it.  Have you been tracking

25   with Mr. Fink?

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

1          **MR. WOOD:**  He hasn't -- Mr. Fink only knows that my

2    name appeared on the pleading.  He doesn't know how it got

3    there.

4          **THE COURT:**  Okay.

5          **MR. WOOD:**  So he has no basis to dispute what I'm

6    saying about the conversation --

7          **COURT REPORTER:**  Excuse me.

8          **MR. WOOD:**  He understands --

9          **COURT REPORTER:**  Excuse me.

10         **MR. WOOD:**  -- that I have --

11         **COURT REPORTER:**  Excuse me.  I'm sorry, Judge, I'm

12   going to have to say that please stop interrupting.  It's hard

13   enough on a Zoom hearing, let alone in open court when we are

14   live, so please stop.

15         **THE COURT:**  Thank you, Ms. Wabeke.  Absolutely,

16   absolutely.  So, counsel, here are the rules again.  One at a

17   time.  Let the court recognize you to speak after you've raised

18   your hands.

19         Mr. Fink, you may speak.

20         **MR. DAVID FINK:**  Thank you, your Honor.  To be clear,

21   Mr. Wood indicates what I do and do not know.  What I do know

22   and what we put on this record is the following:  One, we

23   served him with a Rule 11 notice.  Now, he should have known

24   already before that because it was not only public, but I think

25   we have social media comments from him, but that's irrelevant.

Motion hrg.                                      7/12/2021

1   That's not necessary today.

2           On December 15th we e-mailed him, and it did not come

3   back to us.  Then we sent first class mail to us [sic.] that

4   did not come back to us in which we notified him of the

5   potential Rule 11 filing.  It also ended up in the

6   Twitter-verse, if you will.  It became public, and,

7   interestingly, it became public not because of anything we did.

8   But, rather, because another attorney, Mark Elias, who saw our

9   notice, which was not filed with the court but only sent to the

10  parties, Mr. Elias Tweeted that notice out, and, after he did

11  that, Mr. Wood posted a Tweet saying something about he knew --

12  "You know you're over the target when you're in the sights of

13  David Fink," or something like that.

14          The point is, he knew.  He even commented publicly.

15  Equally importantly, today he's representing to this Court that

16  he did not participate in -- I think that's what I heard him

17  say -- that he had no chance to respond in Delaware.  In fact,

18  we offered, and, understandably, it wasn't at that point

19  something the Court felt was pertinent or relevant, but we

20  offered, as a potential supplemental brief with an attachment,

21  the opening brief of Ronald Poliquin, an attorney purporting to

22  represent Lin Wood in the Supreme Court of the State of

23  Delaware and filed on May 5th, 2021, and that is the document

24  in which his attorney said, "Among those cases in which Wood

25  became involved were lawsuits in Wisconsin, Michigan, and

Motion hrg.                                    7/12/2021

1    Wood's own suit."  I didn't make this stuff up.

2            **THE COURT:**  Thank you, Mr. Fink, and I would -- I'm

3    going to ask a question to Ms. Powell, and my question,

4    Ms. Powell, to you is:  Did you -- did you have an opportunity

5    to speak to Mr. Wood?  Let me -- let me restate this.

6            Did you ever at any point tell Mr. Wood you were

7    going to place his name on the pleading?

8            **MS. POWELL:**  My view, your Honor, is that I did

9    specifically ask Mr. Wood for his permission.  I can't imagine

10   that I would have put his name on any pleading without

11   understanding that he had given me permission to do that.

12   Might there have been a misunderstanding?  That's certainly

13   possible.

14           **THE COURT:**  All right.  And, Mr. Kleinhendler, sir,

15   one specific question to you, yes or no:  Did you have an

16   opportunity to speak to Mr. Wood before you placed his name on

17   the pleading?

18           **MR. KLEINHENDLER:**  Honestly, your Honor, I don't

19   recall.

20           **THE COURT:**  Okay.

21           **MR. KLEINHENDLER:**  I don't recall.  Sorry.

22           **THE COURT:**  All right.

23           **MR. BUCHANAN:**  Your Honor?

24           **THE COURT:**  Yes, Mr. Buchanan.

25           **MR. BUCHANAN:**  Thank you, your Honor.  I just wanted

                  King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   to respond to your question about who had a role in the

2   affidavit of a witness in question that you mentioned, and my

3   client doesn't recall specifically when she looked at this

4   affidavit.  She said she saw it at some point, but, again, she

5   was working at home doing basic editing, research, and so, you

6   know, she didn't have any role in terms of investigating or

7   doing due diligence on these particular affidavits.  She's not

8   saying they're accurate or inaccurate, but her role was more

9   limited.

10          **THE COURT:**  All right.  Let me move on in terms of

11   experts, those affidavits that have been submitted, and my

12   questions are going to pertain to who spoke with these

13   individuals for purposes of understanding the source of their

14   facts that they were referenced in the affidavit and basis for

15   their conclusions.  Who spoke to these experts before

16   submitting their reports as evidence?  Dealing with expert

17   reports.

18          So let me start with Joshua Merritt.  Who spoke with

19   him for purposes of determining the source of his facts and the

20   basis for his conclusions before submitting?

21          And if there is counsel here who doesn't know the

22   answer to that question because they had no involvement in it,

23   because they didn't speak, please raise your hand.  If you are

24   not -- if you were not an individual who spoke in advance to

25   Joshua Merritt about the source of his facts and the basis for

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1  his conclusion in the report that he provided, raise your hand

2  if you weren't involved with it.

3          Okay.  So I'm going -- okay.  Let me name the

4  individuals because I want to -- please keep your hand up.

5          **MR. WOOD:**  Your Honor, could you restate the

6  question, please?

7          **THE COURT:**  The question -- yes, I will.  The

8  question -- as relates to the affidavit that was submitted by

9  Joshua Merritt, my question is:  Who spoke to him in advance

10 before including his affidavit to the complaint?  You know, did

11 you speak to him for purposes of determining the source of his

12 facts around the basis of his conclusions?  Who on this call

13 had that type of conversation with Mr. Merritt?

14         **MR. JOHNSON:**  Your Honor, perhaps --

15         **THE COURT:**  No, no.  Go ahead, Mr. Johnson.  Let me

16 just do this:  Raise your hand if you had the conversation with

17 him, if anybody spoke with Joshua Merritt in advance of the

18 submission of his affidavit.

19         So right now we have Mr. Kleinhendler.

20         Mr. Johnson, did you have your hand up for that?

21         **MR. JOHNSON:**  I had my hand up that I did not speak

22 with him or, for that matter, with any of the experts.

23         **THE COURT:**  Okay.  Okay.  We'll make a note of that.

24         But, Mr. Kleinhendler, you spoke with him before the

25 affidavit was submitted, Joshua Merritt; is that true?

Motion hrg.                                    7/12/2021

1          **MR. KLEINHENDLER:** Yes.

2          **THE COURT:** All right. And did you have an

3     opportunity to speak to him about the source of his facts?

4          **MR. KLEINHENDLER:** Your Honor, he was recommended to

5     us. As there are certain things I cannot disclose,

6     unfortunately, in public about his sources, about his

7     qualifications, and the reason for that is he has worked as an

8     undercover confidential informant for multiple federal law

9     enforcement and intelligence services. It's beyond merely what

10    is stated briefly in his declaration.

11         He did -- he did tell me what those -- you know, what

12    the basis is, what type of experience he had, and, based on

13    that, looking at what he had presented, with the detail, with

14    the URLs that he had cited, with the vulnerability to the

15    Dominion pass codes that were available to be hacked on what

16    they call the dark web, it was my honest belief that what he

17    was saying was correct.

18         I will take the opportunity, your Honor, to point out

19    that the one area in his affidavit that has come into dispute

20    was his role in the 305th military intelligence. At the time

21    it was my understanding that he had spent a reasonable amount

22    of time with that unit. Subsequently -- subsequently I did

23    learn that he did train with them, your Honor. He trained with

24    the unit. I think it's called Fort Huachuca. I can't remember

25    the exact one. However, he subsequently was transferred out of

Motion hrg.                                    7/12/2021

1    there.

2          However, I point out to you that that -- that one

3    point is minor and practically irrelevant because the basis of

4    his expert opinion and his factual opinion are based on, and

5    I'm happy to talk to you in camera and give you more detail of

6    his years and years of experience in cyber security as a

7    confidential informant working for the United States

8    Government.

9          **THE COURT:**  Did you feel that it was -- did you make

10   that correction to the Court at any time?  I'm not aware of it.

11         **MR. KLEINHENDLER:**  I didn't have the time because

12   when I first learned of it, your Honor, when I first learned of

13   it, it was after all the cases had been decided and dismissed

14   and then we withdraw.  We never made a further representation

15   to this Court, an argument to this Court about his

16   qualification in that regard, and, technically, your Honor --

17   technically, your Honor, the statement is not false.  He

18   trained with the 305th.  Okay.  It's not technically false.

19   However, had I known in advance that he had transferred out, I

20   would have made that clear, but I didn't.  I had no reason to

21   doubt.

22         **THE COURT:**  Thank you, Mr. Kleinhendler.

23         Hang on a second.

24         Mr. Campbell, why do you have your hand up, sir?

25         **MR. CAMPBELL:**  Because I wanted to let you know,

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   Judge, if your questions tread into the area that you have

2   acknowledged you're going to avoid, which is the area of work

3   product or privilege, I will -- I'm asking the Court permission

4   to be able to interrupt then with objections that are direct

5   and express on that.  Hopefully your questions don't get there,

6   but I wanted to make sure that I was within your protocol to do

7   so.

8          **THE COURT:**  All right.  You may raise your hand.

9   Anyone who wants to address the Court, please raise your hand.

10         Mr. Fink.

11         **MR. DAVID FINK:**  Yes.  I just want to speak to the

12  comments regarding Mr. Merritt, and as most people know --

13         **THE COURT:**  Okay.  Mr. Fink, let me do this, sir.

14  I'm going to give you and Defense counsel an opportunity to --

15  after I have asked a couple of more questions about a couple of

16  additional purported experts, I'm going to give you a chance to

17  follow up on that.  If I could just understand -- get the lay

18  of the land in terms of these experts.

19         So let me proceed.

20         And I'd like to ask about Mr. Matthew Braynard, and

21  I'd like to know who reviewed his affidavit and who spoke to

22  him in relation to what was attached, in relation to the

23  statements in his affidavit.

24         Ms. Julia Haller, you have your hand up?

25         **MS. HALLER:**  Yes.  May I clarify, your Honor?

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

1        **THE COURT:**  Yes.

2        **MS. HALLER:**  Matt Braynard had data that we cited to

3   through our expert, William Briggs, who is also known as Matt.

4   So William "Matt" Briggs cited to Matt Braynard.  Matt Braynard

5   had information, and we did communicate with Matt Braynard to

6   the extent that we could.  He had an agreement with a different

7   attorney so our communications were more limited, and I do not

8   feel comfortable discussing all the attorney work product

9   that's involved in my communications, but I will say there were

10  communications.

11       **THE COURT:**  Okay.  Anyone else speak to Mr. Braynard?

12       All right.  How about Mr. Briggs, William Briggs?

13  Who, as has been said, he did seem to be one who interpreted or

14  provided analysis about the materials that Mr. Braynard

15  submitted.

16       Yes, Ms. Haller.

17       **MS. HALLER:**  Yes, your Honor.

18       **THE COURT:**  Did you speak with Mr. Briggs?

19       **MS. HALLER:**  Yes, your Honor.  I communicated with

20  William Briggs -- Dr. Briggs.  Yes, I communicated with

21  Dr. Briggs.

22       **THE COURT:**  All right.  And you were able to speak to

23  him about the source of his facts?

24       **MS. HALLER:**  Your Honor, everything's documented in

25  his report, including his source and information, and we

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    addressed this in 112, as well as in our other oppositions,

2    that we thoroughly had vetted and gone over with the

3    information that's cited in Dr. Briggs' report, yes.

4           **THE COURT:**  All right.  I don't know that that's

5    clearly stated, but we'll revisit that.

6           **MS. HALLER:**  Thank you, your Honor.

7           **THE COURT:**  How about Mr. Watkins?  Who reviewed the

8    affidavit of Ronald Watkins and did anyone speak to him?

9    Please raise your hand.

10          **MS. HALLER:**  Your Honor, I can qualify that I have

11   spoken to Mr. Watkins.  I do not know at what point in time

12   exactly, but I have communicated with Mr. Watkins about his

13   reports.

14          **THE COURT:**  All right.  And you've spoken to him

15   about his sources as well?

16          **MS. HALLER:**  Yes, your Honor.

17          **THE COURT:**  And the basis for his conclusions?

18          **MS. HALLER:**  Yes, your Honor.

19          **THE COURT:**  All right.  And how about -- all right.

20   So we did -- we talked about Mr. James Ramsland already, and,

21   Ms. Haller, you said that you did in fact -- what did you say?

22   You said that you reviewed it, his affidavit?

23          **MS. HALLER:**  Yes, your Honor.

24          **THE COURT:**  And you spoke with him?

25          **MS. HALLER:**  No, your Honor, I did not.

                  King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

1          **THE COURT:**  You did not speak with him?

2          **MS. HALLER:**  I did review the filing -- I mean the

3    report, but I have not communicated with him, no.

4          **THE COURT:**  All right.  Did anybody on the -- speak

5    with Mr. Ramsland?

6          Mr. Kleinhendler, go ahead, sir.

7          **MR. KLEINHENDLER:**  Yes, your Honor.  Not only did I

8    speak with him, about ten days or so before the complaint, I

9    met with him.

10         **THE COURT:**  Okay.

11         **MR. KLEINHENDLER:**  I spoke with him often I reviewed

12   drafts of his report.  I asked him clearly, "Are you

13   comfortable making these allegations?  Are you comfortable with

14   the language in the affidavit?  What are your sources?  Who

15   else has assisted you?"

16         Because he writes an affidavit that he lists ASOG

17   (ph.)  He spoke -- he briefly described some of the folks that

18   were working with him, and he submitted, your Honor, two

19   reports, an initial report and then a rebuttal -- the initial

20   was an affidavit sworn, his sworn testimony, and the rebuttal

21   was more of a 26(b) rebuttal report.

22         I worked with him on a rebuttal report after

23   analyzing and reviewing what the Defendants and the Intervenor

24   Defendants had placed before the Court, and I was involved with

25   that.  And, yes, I spoke with him, and I was comfortable, your

Motion hrg.                                    7/12/2021

1  Honor, that what we were putting before the Court was true and

2  correct.

3          **THE COURT:**  All right.  Thank you.

4          **MR. BUCHANAN:**  Your Honor, this is Mr. Buchanan.  I

5  just wanted to clarify something.  My client, Ms. Newman, did

6  communicate with Mr. Ramsland on a limited basis.

7          **THE COURT:**  For what purpose?

8          **MR. BUCHANAN:**  I think, you know, she was talking to

9  him about his affidavit in general, but, again, she was more of

10  a -- someone that was doing editing and, you know, trying to

11  gather the affidavits, including this particular one, but it

12  wasn't a substantive conversation where she was doing due

13  diligence on all the background.  She asked some questions, but

14  it was limited conversation.

15          **THE COURT:**  All right.  Thank you.  All right.  I

16  have concluded --

17          **MR. CAMPBELL:**  Your Honor, Ms. Powell has her hand

18  raised.

19          **THE COURT:**  Oh, thank you.  Ms. Powell.

20          **MS. POWELL:**  Yes, I just wanted to make clear that I

21  have spoken with Mr. Ramsland a number of times.

22          **THE COURT:**  Okay.

23          **MS. POWELL:**  I cannot say whether it was before the

24  filing or after, and I can't remember when I reviewed his

25  affidavit, whether it was before or after.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                          7/12/2021

1        **THE COURT:** Okay. All right. Let me -- as relates

2   to this section of presuit investigation and these particular

3   experts, does counsel for the Defendants or the Defendant

4   Intervenors or Plaintiffs' counsel wish to say anything related

5   to the questions or the answers that I've received with that

6   section?

7        **MR. DAVID FINK:** I would.

8        **THE COURT:** All right. Raise your hand if you'd like

9   to be heard.

10       Okay. We're going to only hear from Mr. Fink.

11       Go ahead.

12       **MR. DAVID FINK:** Thank you, your Honor. I will not

13  go into the detail, nor do I think I need to, of what our

14  concerns were with all of these affidavits. That's laid out

15  pretty clearly in our briefing. What I do want to first do is

16  respond to something quite disturbing that Mr. Kleinhendler

17  said.

18       He said that he couldn't have known while the case

19  was pending, didn't learn until later, during the sanctions

20  process, about the issues related to the Merritt affidavit.

21       And, by the way, we're calling it the Merritt

22  affidavit, but of course this is the one that's identified as

23  Spider, in what was attempted to be an anonymous presentation

24  in redacted documents, which were so poorly redacted that we

25  found out the name.

Motion hrg.                                    7/12/2021

1          But here's what's important for the Court to know.

2    We attach as Exhibit 17 to our brief in support of sanctions a

3    *Washington Post* article that details all of the issues

4    regarding Mr. Merritt.  Now, the reason that's so important is

5    not the accuracy of that article, but, rather, that article put

6    the world on notice on December 11th of 2020 -- *Washington Post*

7    let the world know that this man was not a military

8    intelligence expert.  He washed out of training.  That he,

9    himself, disavowed participation in the case.

10         All of that was in that article, and if that did not

11   put counsel on some kind of inquiry notice so they should have

12   exercised some due diligence at that point and advised the

13   Court that they had, apparently unintentionally they're saying,

14   made a major misrepresentation to the Court, I don't know what

15   could have put them on notice.  They were on notice.

16         Now, the experts that we're talking about now, the

17   Court correctly asks the question, "Did you talk to those

18   experts?"  I would simply add one more thing, which is very

19   relevant, which is talking to those experts or not, just

20   reading those reports, if they were properly vetted, would have

21   immediately told any diligent attorney that the reports were

22   desperately flawed, and I'll be very specific.  For example, we

23   heard about the concerns about -- that Mr. Ramsland raised

24   about Antrim County and the Dominion machines.  What's

25   important --

Motion hrg.                                    7/12/2021

1          **THE COURT:**  Okay.  Mr. Fink, wait a minute.  Hang on.

2    I want to stop you because I am going to cover some of that,

3    and we can -- and, you know, why don't we stop there because I

4    have some additional questions.  Of course, I'm going to let

5    everyone be heard, okay?

6          **MR. KLEINHENDLER:**  Your Honor, can I respond to

7    Mr. Fink just on Mr. Merritt?

8          **THE COURT:**  Yes.

9          **MR. KLEINHENDLER:**  Okay.  Your Honor, I learned of

10   the issues when I saw the *Washington Post* article.

11         **THE COURT:**  Okay.

12         **MR. KLEINHENDLER:**  I can tell you that many of the

13   allegations in the *Washington Post* article are false, and I

14   want to make this very clear to the Court and all counsel.  I

15   spoke with Mr. Merritt Sunday.  He is prepared to appear before

16   your Honor and discuss his qualifications and discuss, in

17   detail, his findings.  That may require a closed session for

18   part of it.  We'll let you decide.  But I want to make it clear

19   to everyone that he is prepared to come here and testify and

20   put his qualifications and his opinions to the test.  We have

21   asked in our pleadings for an evidentiary hearing.

22         Mr. Fink wants to wave around a *Washington Post*

23   article.  He can do that.  Mr. Merritt is ready to come to

24   court and put to bed any issues regarding his qualifications

25   and regarding his testimony.

Motion hrg.                                    7/12/2021

1          **MR. DAVID FINK:**  Your Honor, the only point I'm

2    making is, not whether this man is or isn't qualified, that

3    Mr. Kleinhendler has told us he learned that they made a

4    misrepresentation, whether intentional or otherwise, regarding

5    his qualifications, and he never advised the Court.  Yes, there

6    might be things in that article that aren't true.  I don't

7    know, but I know he was put on inquiry notice.  He apparently

8    did some investigation and did not notify the parties or the

9    Court.  That's --

10         **THE COURT:**  Your response to that, Mr. Kleinhendler?

11         **MR. KLEINHENDLER:**  My response to that, your Honor,

12   is when I learned of it, number one, it took awhile to contact

13   Mr. Merritt; number two, there was no further proceedings

14   before the Court.  Your Honor had already ruled on December 8th

15   that it had no subject matter jurisdiction, no standing, a

16   whole laundry list.  There was never -- there was never a

17   further opportunity, or, in my view, a reason to make a

18   correction in a case that had already been decided, and,

19   again --

20         **THE COURT:**  And it was on appeal?

21         **MR. KLEINHENDLER:**  Your Honor?

22         **THE COURT:**  And that was on appeal?

23         **MR. KLEINHENDLER:**  It was on appeal, but I want to

24   make the point.  What he said is technically not wrong.  He did

25   spend, from my understanding, seven months training with the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   305th.  Now, it may not be the full story, but I disagree with

2   the characterization that it's inaccurate, it's not true.

3                **THE COURT:**  All right.  Okay.  All right.  Thank you.

4            I have some follow-up questions about the affidavit

5   of Mr. Merritt, and the first one is:  Why was his affidavit

6   filed using a pseudonym?

7            Are you the person that can answer that question,

8   Mr. Kleinhendler?

9            **MR. KLEINHENDLER:**  Yes.  Your Honor, as we pointed

10  out -- okay, your Honor, as we pointed out, and I have it

11  here -- hold on.

12           This motion is a motion to seal.  This is ECF 50 --

13  okay, your Honor -- and this is his affidavit that he gave us

14  explaining it.  "He had worked in the areas that have made him

15  a known target, has had death threats and a price put on his

16  head by terrorist organizations.  For the safety of myself and

17  my family, I've requested to remain redacted.  I found

18  listening devices in my home and have had attempts on myself,"

19  meaning he had been tried to be killed.

20           Next paragraph, "Because of work I have done as a

21  confidential human source, confidential informant, as well as

22  work investigating spies across the globe, my identity is

23  redacted, not work which I have just done here in America, but

24  work with foreign nations."

25           Final paragraph, "I request that these extreme cases

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                          7/12/2021

1   be taken into consideration for my personal safety, my family's

2   safety, the safety of sources I have worked with.  I

3   respectfully request my persona remain redacted."

4            Those are the reasons I submitted the redaction.

5            **THE COURT:**  Thank you.  Next question:  Whose

6   decision was it to identify this individual as a former U.S.

7   military intelligence expert?

8            **MR. KLEINHENDLER:**  Your Honor, he drafted his

9   affidavit.  No one corrected that sentence.  That came directly

10  from him.

11           **THE COURT:**  Okay.  All right.  Anyone else have an

12  answer to that?

13           All right.  Let the record reflect that no one has

14  said that they do.

15           At any point, next question, during the course of

16  this litigation did anyone ask any of the attorneys or suggest

17  that Merritt was not a military intelligence expert?

18           **MS. HALLER:**  No.

19           **THE COURT:**  And that's Ms. Powell is saying no?  I'm

20  sorry who said, "No"?

21           **MS. HALLER:**  Excuse me, your Honor.  Julia Haller,

22  no.

23           **THE COURT:**  All right.  Mr. Kleinhendler, did anyone

24  ask you?

25           **MR. KLEINHENDLER:**  No, your Honor.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                          7/12/2021

1          **THE COURT:**  Okay.  Ms. Powell, I wanted to direct my

2     next question to you, and did anyone ask you if, or suggest to

3     you that, he was not a military intelligence expert?

4          **MS. POWELL:**  No, your Honor.

5          **THE COURT:**  Thank you.  And my next question for

6     Plaintiffs' counsel or counsel for Plaintiffs' counsel:  Should

7     an attorney be sanctioned for his or her failure to correct or

8     withdraw allegations that the attorney comes to know or came to

9     know are untrue?  Is this sanctionable behavior?

10          Mr. Campbell, I'll hear from you.

11          **MR. CAMPBELL:**  Again, it's going to depend on the

12     circumstances.  As the circumstances exist here, the answer

13     would be no.  One, because of the statements that you've just

14     heard.  There's an issue as to whether or not he correctly

15     identified himself.  Nobody knew that to be wrong.

16          Secondly, with the information, you've heard the

17     explanation.  It's not an inaccurate statement, although, as

18     Mr. Kleinhendler had said, he would have expanded upon that.

19     That's not the difference between being false, as Mr. Fink

20     accuses, and not.

21          So on this circumstance, with an affidavit that this

22     Court, again, did not reach the merits of, there was no *Daubert*

23     motion, there was no consideration of any of his information,

24     because this Court found that it was moot, found that there was

25     lack of standing and all these other issues, never reached the

Motion hrg.                                    7/12/2021

1  affidavits.

2       Certainly, these lawyers, who, within I think it's

3  four days of this Court's order in ECF number 7, I think, are

4  in the United States Supreme Court, not just on this case but

5  on three others, that somehow, some way this clarification or

6  further explanation that Mr. Kleinhendler clearly says he would

7  have provided if there was a means and a basis to do so or if

8  he had noted originally, is that what would qualify for what

9  the Court's asked?  The answer I think is, resoundingly, no.

10      **THE COURT:**  Did Mr. Merritt draft the affidavit on

11  his own with no assistance from counsel?

12      **MR. KLEINHENDLER:**  Yes, your Honor.  I got the

13  affidavit fully drafted.

14      **MS. HALLER:**  Your Honor, we can bring him forward to

15  testify.  We know that this is a qualification question, which

16  is appropriate on a *Daubert* motion.  We do not believe it is

17  grounds related to a sanctions motion when we have not had an

18  evidentiary hearing.  We've not had discovery.  We've not had

19  an opportunity to make this witness available.

20      So, again, as Mr. Kleinhendler pointed out, we would

21  like an evidentiary hearing.  We will bring forward our

22  witnesses.  We will have *Daubert* motions addressed because

23  Plaintiffs are capable of making them.  The same attorney made

24  motions in other courts with *Daubert* motions.  So we can

25  address the questions of qualification at that time as your

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   Honor would like.

2          **THE COURT:**  Yeah.  All right.  We'll --

3          **MR. CAMPBELL:**  So the court is aware the record is

4   clear.

5          **THE COURT:**  I will make those --

6          **MR. CAMPBELL:**  If I may, briefly.

7          The request for an evidentiary hearing is not new,

8   your Honor.  It's been in the pleadings as well.  I know it's

9   in ECF 112, and it's in other places.  We have offered that to

10  the Court, my clients have, repeatedly.  There's been no

11  acceptance by the Defendants' at all.

12         **THE COURT:**  All right.  Let me ask what steps were

13  taken to investigate the expertise of Matthew Braynard, and I

14  specifically just need to know: Who reviewed his affidavit

15  prior to submission and who spoke with him?

16         **MS. HALLER:**  Your Honor, I have represented to this

17  Court, and I repeat what I stated earlier --

18         **THE COURT:**  Okay.  You did speak to Braynard.

19         **MS. HALLER:**  Indicated we communicated, including me,

20  personally communicated with Mr. Braynard.  I cannot give you

21  the times and the dates specifically at this moment, but I can

22  tell you that there were communications, more than one, with

23  Mr. Braynard.

24         **THE COURT:**  Okay.  Anyone else?  All right.

25         Now, let me move on.  I want to talk of more about

Motion hrg.                                    7/12/2021

 1   some of the -- the content, more about the content of the

 2   reports that have been submitted.  I want to talk about,

 3   specifically, about the Briggs -- Mr. Briggs' survey, which was

 4   based on -- I'm sorry, looking at his analysis, which was based

 5   on data provided by Matthew Braynard.

 6          My question is:  What kind of survey did Mr. Braynard

 7   conduct?  Who can answer that question?

 8          **MS. HALLER:**  Dr. Briggs, your Honor, his name is

 9   Dr. William Briggs, Ph.D., Cornell professor, made his report

10   and all the work underlying it, available to this Court for

11   free.  He was not charging for what he provided, and he can

12   also testify.  He will also make --

13          **THE COURT:**  I'm just asking.  Hang on.  Hang on.

14          I just want to know, after having reviewed the

15   various documents related to Matthew Braynard's

16   interpretation -- no, I'm sorry it's Dr. Briggs'

17   interpretation.

18          **MS. HALLER:**  Yes, your Honor.

19          **THE COURT:**  Sorry.  Of Matthew Braynard's survey.  My

20   question is -- it's not clear to me what type of survey

21   Mr. Braynard conducted.  What is it?

22          **MS. HALLER:**  Dr. Briggs is a statistician who, to a

23   reasonable degree of professional certainty, would be

24   anticipated to testify in accordance with the survey provided

25   as an exhibit to the complaint.  As this case has not yet

                 King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   gotten to evidentiary proceedings or *Daubert* motions, we can

2   address this and make him available.  Dr. William M. Briggs,

3   Ph.D., can be available --

4           **THE COURT:**  I understand what his credentials are.

5           **MS. HALLER:**  Well, your Honor, I'm just trying to

6   make it clear that he would be anticipated to testify in

7   accordance with the report that was attached to the complaint.

8           **THE COURT:**  Okay.  Counsel for the City, question for

9   you, Mr. Fink:  What would be the basis, in your view, of

10  sanctioning counsel for the submission of this report?  And

11  this report I'm referring to would be the report that was

12  provided by Dr. Briggs.

13          **MR. DAVID FINK:**  The basis would be that the

14  slightest bit of due diligence, by any attorney knowledgeable

15  in the way the election proceeded, would have revealed that the

16  report was founded on -- based on, not just bad statistical

17  analysis, but bad legal analysis.  For example, in the record

18  there is a reference to the number of voters with indefinitely

19  confined status.  That's a status that doesn't exist in the

20  state of Michigan.  That's from another state.

21          There's a reference to the individuals who apply for

22  an absentee ballot and the State mails it out to them.  State

23  of Michigan has never mailed out absentee ballots and didn't

24  mail out absentee ballots in this case.

25          There's reference to early voters.  We've never had

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    what's called early voting in Michigan.

2            Apparently, apparently he believed that every time a

3    voter's residence changed that automatically that voter is

4    disenfranchised.  So people who happen to travel to Florida for

5    the winter but continue to vote absentee, he deemed them to be

6    fraudulent voters.

7            Furthermore, the actual analysis really just took the

8    simplest review to see that the numbers just didn't line up,

9    and this -- I'm not a statistician, but I play one in Court,

10   and -- but, seriously, I'm not a statistician, but I do know

11   how to look at two numbers and see if they match, and, in this

12   report, there are statistics that are just directly

13   inconsistent and stated over and over in the same report.

14           So now they also claim, for example, that -- and this

15   is fascinating because this comes up in multiple cases because

16   people rely on others.  A ballot is applied for -- an

17   application is applied for and on the same day a ballot is

18   cast, and they use that as evidence of fraud because they say

19   that's impossible because you couldn't mail it and get it back

20   that soon.  Well, the fact is that's exactly how I vote and a

21   lot of other people do.  You go into the clerk's office.  You

22   fill out the application.  The clerk gives you the ballot.  You

23   fill out your ballot.  You hand it in.  It all happens in one

24   day.  This is part of the fraud they claim.  They claim --

25           **MS. HALLER:**  Your Honor, may I respond?

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1              **THE COURT:**  No, no, not yet, Ms. Haller.

2         Go ahead, Mr. Fink.

3              **MR. DAVID FINK:**  There's also a discussion about

4    ballots based on a survey.  They did a survey, an unscien -- I

5    think it's an unscientific survey.  Maybe it was scientific,

6    but there's no law that says you can do a survey and find out

7    the percentage of people who don't remember that they applied

8    for an absentee ballot or who applied for an absentee ballot

9    and don't remember if they received it.  Based on silly things

10   like that, they came to their conclusions.

11             **THE COURT:**  I understand, yes.

12             **MR. DAVID FINK:**  So the short answer to your

13   question -- I'm sorry.

14             **THE COURT:**  No problem.

15             **MR. DAVID FINK:**  The short answer -- I'm sorry, the

16   shorter answer to the Court's question -- I guess there's no

17   short answer.  I apologize.

18        The shorter answer to the Court's question is we

19   believe anybody who closely reviewed this study and looked at

20   the way it was prepared, and I don't mean going behind what was

21   written, the document as submitted to the Court itself on its

22   face is a clearly and desperately flawed document, and they

23   should have known that.  They had that duty.  Lawyers don't get

24   to just throw things out and see what the Court will do with

25   them.  We have a duty.

               King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

1            THE COURT:  All right.  Let me --

2            MS. HALLER:  Your Honor, may I respond?

3            THE COURT:  Ms. Haller, briefly.

4            MS. HALLER:  Yes, your Honor.  We can make Dr. Briggs

5    available and to testify, and Mr. Fink can then cross-examine

6    him as in accordance with the Rules of Evidence and Rules of

7    Civil Procedure.  At this time, there is no *Daubert* motion

8    pending.

9            Mr. Fink is arguing as if he is both expert and

10   attorney.  He is not a statistician, but he is opining on the

11   lack of statisticianal basis for a report where he's never

12   questioned the witness.  Is that admissible in this court, in

13   this federal court?  Are we no longer applying the Rules of

14   Civil Procedure?

15           We have witnesses, and we have them examined, and

16   whether or not their testimony stands up under a motion is a

17   question that has yet to be addressed by this Court, and to

18   have it now as a basis -- suggested as a basis for sanctions,

19   when we have not had the opportunity to bring Dr. Briggs to

20   this court, when we have not had the opportunity to have an

21   expert opine or the question of whether he's an expert to be

22   qualified --

23           THE COURT:  Ms. Haller.

24           MS. HALLER:  Yes.

25           THE COURT:  Ms. Haller, let me point out to you that

                 King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

 1   I see a distinction between what you're saying and what

 2   Mr. Fink is saying, and the distinction is, is that Mr. Fink is

 3   pointing out areas which he thinks would have been obvious to

 4   Plaintiffs' counsel before the material by Dr. Briggs was

 5   submitted, and I have a series of questions that follow that

 6   along those same lines.  I am not -- no one is, at this point,

 7   purporting to be an expert who can understand the underlying

 8   statistical analysis.  That's not being questioned.

 9           The question is, is that on the face of these

10   submissions is there anything there that would give counsel

11   pause to say, hold on, need to know a little bit more?  I see

12   that as being a distinction, and that is the Court's response.

13           I want to move on, and you'll see from my next line

14   of questioning how that's borne out.

15           So I want to talk about Mr. Ramsland's affidavit, and

16   I want to ask specifically can anyone question the improbable

17   turnout numbers as shown in his declaration, which was attached

18   to the original compliant, numbers such as 781 percent of the

19   voting population in North Muskegon casted votes, 460 percent

20   of individuals in Zeeland Charter Township showed up.  Did

21   anyone feel that that type of a representation should be

22   questioned?

23           **MR. KLEINHENDLER:**  Your Honor.

24           **THE COURT:**  More importantly, did anybody question

25   it?

Motion hrg.                                    7/12/2021

1          **MR. KLEINHENDLER:**  I did.

2          **THE COURT:**  Okay.  Mr. Kleinhendler.

3          **MR. KLEINHENDLER:**  And "Russ, Russ, are you sure

4    about these numbers?"  And he said, "Yes, yes, I did question

5    them.  Yes, I did review, and yes, it was an error" that he

6    corrected on his reply affidavit.

7          **MR. CAMPBELL:**  ECF 49, I believe.

8          **THE COURT:**  He also goes on to talk about vote

9    switching discovered through hand counts when there have been

10   no hand recounts in Michigan as of the date that he made the

11   statement, something of which Plaintiffs, who include

12   Republican Party chairs, would have known.  What about that

13   kind of a statement, talking about the vote switching

14   discovered through hand counts when there have been no hand

15   recounts at that point?  Was that also corrected,

16   Mr. Kleinhendler?

17         **MR. KLEINHENDLER:**  I'm trying to find where you're

18   referring to.

19         **MR. CAMPBELL:**  Which paragraph, your Honor?

20         **MR. KLEINHENDLER:**  Do you have a -- because, offhand,

21   I don't --

22         **THE COURT:**  We might be able to pull that.

23         **MR. KLEINHENDLER:**  I don't -- I don't know what hand

24   counting looks like.  What paragraph?

25         **MR. DAVID FINK:**  Your Honor, that would be -- that

Motion hrg.                                    7/12/2021

 1  would be Paragraph 10 of his affidavit when he claims that the

 2  Antrim County error, which was actually reported by the clerk

 3  the night of the election, that the Antrim County error was

 4  only discoverable through a hand counted manual recount.

 5          **THE COURT:**  That is the paragraph.

 6          **MR. KLEINHENDLER:**  I'm looking, your Honor.  I'm

 7  getting into Paragraph 10.

 8          **MR. DAVID FINK:**  Your Honor, if I may, what's

 9  astounding to me is, after we have briefed this issue at least

10  twice, probably more than twice but twice to these lawyers,

11  explicitly addressing the fact that there were no hand recounts

12  in the state of Michigan at that point, that everybody should

13  have known, and that one of the Plaintiffs was the chair of the

14  Republican Party of Antrim County, of all things, who clearly

15  would have known there wouldn't have been a hand recount as of

16  November 29th, despite that, Mr. Kleinhendler, even as of

17  today, isn't even aware of where the claim is being made.

18          **MR. KLEINHENDLER:**  I don't see it in Paragraph 10.

19  Please read me the language --

20          **MR. CAMPBELL:**  I'll read that --

21          **THE COURT:**  Hang on.

22          **MR. CAMPBELL:**  (Indiscernible.)

23          **THE COURT:**  Hang on.  Stop, please.  Please stop.

24          Mr. Campbell, do you have the language in front of

25  you?

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                          7/12/2021

1              **MR. CAMPBELL:**  I believe I do, your Honor.

2              **THE COURT:**  Read it, please.

3              **MR. CAMPBELL:**  "One red flag has been seen in Antrim

4     County, Michigan.  In Michigan, we have seen reports, 6 of

5     6,000 votes in Antrim County that were switched from Donald

6     Trump to Joe Biden.  They were only discoverable through a hand

7     counted manual recount.  While the first reports have suggested

8     that it was due to a, quote/unquote, glitch -- my air quotes.

9     After an update, it was recanted and later attributed to a,

10    quote, clerical error, unquote.  This change is important

11    because if it were not due to clerical error but due to a,

12    quote, glitch, end quote, emanating from an update, the system

13    would be required to be recertified, according to Dominion

14    officials."

15             **THE COURT:**  All right.  Mr. Campbell, my question

16    goes specifically to the reference of there having been -- this

17    information having been discovered through a hand recount,

18    where we know now that the statement was made, there was no

19    such hand recount.  That is my question.

20             **MS. HALLER:**  Your Honor, if I may correct the record

21    for that.  It was the Michigan Secretary -- the county

22    secretary who did that hand recount, and that's reported on at

23    that time.  So there was what they called a hand recount.

24    Maybe it's not under the law that defines the definition, but

25    that is heavily reported at that time.

Motion hrg.                                    7/12/2021

1              **MR. DAVID FINK:**  No, your Honor.  It was not.  I'm

2    sorry.

3              **MR. CAMPBELL:**  It wasn't.

4              **THE COURT:**  Hang on.

5              **MR. DAVID FINK:**  I'm sorry.  I'm sorry.

6              **MR. CAMPBELL:**  The Court is acting as if you've seen

7    proof that the statement made by that -- no statement was made

8    by the county person.  That hasn't been attached to the

9    pleadings here.

10             **THE COURT:**  Well, I mean all right.

11             **MR. KLEINHENDLER:**  Your Honor, you asked for my

12   understanding.  My understanding when I read this was that,

13   specifically with regard to these 6,000 votes in that specific

14   county, somebody did a hand recount.  It wasn't a

15   State-sanctioned full Board of Election recount.  My

16   understanding was that somebody recounted it by hand.

17             **THE COURT:**  All right.

18             **MR. KLEINHENDLER:**  And that's how they discovered.

19             **THE COURT:**  All right.

20             **MR. KLEINHENDLER:**  Again, what you're hearing -- I

21   want to make this clear here.  You're hearing a lot of factual

22   representations by Mr. Fink, and I would please ask you to

23   double check the record before you just take it because --

24             **THE COURT:**  I don't -- I don't need to be -- I don't

25   need that cautionary instruction from you.  Thank you.

                  King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                           7/12/2021

1          Mr. Fink, your response, please.

2          **MR. DAVID FINK:**  Only to the specific statement by

3   Ms. Haller and, apparently, Mr. Kleinhendler.

4          Nobody, nobody said there was a hand recount.  A

5   clerk said that there had been an error on the publicly

6   reported but not official results the night of the election.

7   Within a day it was clarified that there had been a

8   transposition of numbers, not a recount of any kind.  A hand

9   recount is a term of art.  It is possible to obtain a hand

10  recount in this state.

11         It turns out that the Trump campaign never requested

12  such a hand recount, but, eventually, there were audits.  As of

13  this November date, it is absolutely uncontroverted and

14  uncontrovertible that no hand recount had occurred, and anyone

15  knowing the facts in this case, anyone understanding how

16  Michigan elections work, which could have been local counsel,

17  should have flagged that and seen it in Ramsland's report.

18         **MS. HALLER:**  Ramsland's report -- excuse me, your

19  Honor -- actually said "hand counting."  He does not say "hand

20  count," which is the legal term.

21         **MR. DAVID FINK:**  It says "hand counted manual

22  recount."

23         "Hand counted manual recount" is the exact --

24         **MS. HALLER:**  Hand counted --

25         **MR. DAVID FINK:**  -- what it states --

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **MS. HALLER:**  -- is a different term --

2          **THE COURT:**  Hang on.

3          **MS. HALLER:**  -- from hand count.

4          **MR. DAVID FINK:**  And there was no hand counting.

5          **THE COURT:**  All right.  Mr. Campbell --

6          **MR. CAMPBELL:**  But there's the lead, your Honor.

7    There was a report about it.  He doesn't say that it happened.

8    He doesn't swear that he was there to see it.  He says he got

9    that report, and, again, it's the point to say then they said

10   there was a glitch.  Well, if there's a glitch, this has to

11   happen.

12          So, again, as lawyers, we all know there are

13   conditions precedent and conditions subsequent.  This is not a

14   material statement, and if he happens --  if the report happens

15   to be inaccurate, then Mr. Ramsdale [sic.] can tell you whether

16   that impacts his opinion if he were here to testify at the

17   evidentiary hearing that my clients have been asking for, but,

18   otherwise, again, you are letting Mr. Fink act like he's the

19   expert to tell us what hand recount means.

20          **MR. KLEINHENDLER:**  Your Honor --

21          **THE COURT:**  Excuse me.

22          **MR. KLEINHENDLER:**  This is very important.

23          **THE COURT:**  Excuse me.  I have already asked that if

24   anyone would like to speak that you raise your hand.  Please

25   honor that.  Not right now, Mr. Kleinhendler.  Just hold on a

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    minute.

2         I just want to note for the record that Mr. Ramsland

3    did in fact submit a subsequent filing on December 3rd, and he

4    indicated that the original data that he provided, in terms of

5    turnout, voter turnout, was based on unidentified state-level

6    data that no longer exists.  However, as indicated above, these

7    results that I have shared with you, the results in the city of

8    Detroit deemed to have been 139.29 percent.  I said Zeeland was

9    an astronomical number.  I believe North Muskegon, 790 percent.

10   He indicated that that information was obtained from the State

11   and that it no longer exists.

12        However, he indicated -- however, this Court will

13   take note of the fact that there were official results that

14   were available to him even before his original claims were

15   filed, and I understand that there could be some, you know,

16   parsing of words here, but that is the point that I am getting

17   at, and Mr. Ramsland did submit what one could argue was his

18   effort and attempt to correct, but he really did not go far

19   enough because he's simply saying that the data that he relied

20   upon seems to be saying that it was inaccurate, but it's no

21   longer available.

22        All right.  So my question becomes:  Should an

23   attorney be sanctioned for his failure to correct or withdraw

24   allegations that he comes to know were not true?

25        Let me hear from Mr. Campbell.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1      **MR. CAMPBELL:**  Well, if you're asking me is that what

2  the rule says?  Yeah, the rule says if you have knowledge.

3  Now, knowledge is also defined, Judge.  It's defined as actual

4  knowledge of the fact in question.  Under the MRPC, the

5  Michigan Rules of Professional Conduct, that rule is defined.

6  So whether there's actual knowledge, your question is really

7  not a question; it's an answer.

8      Here, there is no evidence that any of the lawyers

9  had the statistical background or understanding.  I mean this

10  is why they have reports.  Nobody was confronted with proof,

11  knowledge that information was in error, inaccurate, or untrue,

12  for sure.  So -- and, again, it would have to be knowledge that

13  it was presented falsely and you don't have that here.

14      **THE COURT:**  All right.

15      **MR. CAMPBELL:**  And, again, I join the chorus.  Let's

16  have the evidentiary hearing if you have a question as to

17  whether the people who made the reports did so in good faith or

18  not.

19      **THE COURT:**  And, again, as I've already indicated, I

20  am simply inquiring as to counsel's review of affidavits that,

21  on its face, raise questions.  That is what my questioning is

22  about.

23      Mr. Fink.

24      **MR. DAVID FINK:**  If I may.  I want to speak simply to

25  the Detroit issue.  Certainly, when we saw the Ramsland report,

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   the very first time we saw it, we had the reaction that all

2   counsel should have had, which was that it was astounding that

3   139 percent could have voted in the city of Detroit.  We

4   immediately checked the records, and the record was clear that

5   something like 50.88 percent had actually voted in the city of

6   Detroit.  It was easy to find, it was publicly available, and

7   they had to be on notice that when they are making such an

8   extremely powerful, potent, and dangerous allegation they have

9   a duty of inquiry to at least look into it, and all it took was

10  30 seconds on the Internet for me to find out the correct

11  answer.

12           I also want to point out the danger that came from

13  this because --

14           **THE COURT:**  Mr. Fink, no.

15           **MS. HALLER:**  (Indiscernible.)

16           **THE COURT:**  Excuse me.

17           **MS. HALLER:**  -- as to this Court --

18           **THE COURT:**  Excuse me.

19           **MS. HALLER:**  -- we have to object.

20           **THE COURT:**  Ms. Haller, I will recognize you when you

21  have raised your hand.  Mr. Fink is allowed to finish, and I

22  will give you an opportunity to speak thereafter.

23           Go ahead, Mr. Fink.

24           **MR. DAVID FINK:**  Okay.  The suggestion that this was

25  some kind of harmless error because it was ultimately corrected

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

 1   flies in the face of the reality of what actually happened.

 2   These lies were put out into the world, and when they were put

 3   out in the world, they were adopted and believed by some of the

 4   most potent recipients of this information.

 5         So that, in the infamous January 2nd, 2021 phone

 6   conversation when then President Trump attempted to extort

 7   Secretary of State Brad Raffensperger to try to help him win

 8   his election which he'd already lost, President Trump

 9   explicitly referenced the 139 percent voting statistic in

10   Detroit as though it were fact.  These are the consequences.

11   It's the consequence of what they did and how they abused this

12   system by not having made that correction, and they should

13   have.  They never should have filed this.

14         And, no, we don't want -- we're not looking for any

15   kind of *Daubert* hearings on any of these so-called experts.

16   No, we don't think they're experts.  Our issue is the slightest

17   bit of due diligence would have alerted the lawyers that they

18   were in the position of making misrepresentations to the Court

19   and to the world.

20         **THE COURT:**  All right.  Ms. Haller.

21         **MS. HALLER:**  Yes.  Thank you, your Honor.  Mr. Fink

22   just cited to an Internet source unnamed as the source to say

23   that one of our experts, designated or anticipated to be an

24   expert, in the time that discovery would allow or an

25   evidentiary hearing would allow as a basis for a lie.  Mr. Fink

Motion hrg.                                    7/12/2021

1  is citing to unnamed Internet sources, and I submit he is

2  opining as an expert as well as arguing as an attorney without

3  foundation.  So he lacks foundation.  He's citing to hearsay,

4  and all his submissions are to claim that there are lies here.

5  We submit that that is done without legal foundation and basis.

6  Hearsay is not a basis.  Thank you, your Honor.

7          **MR. DAVID FINK:**  Your Honor, one second.

8          **THE COURT:**  Mr. Fink.

9          **MR. DAVID FINK:**  Just to be clear, I was not citing

10  an Internet source.  What I said was 30 seconds on the Internet

11  got you to the public record, which is not hearsay.  The public

12  record of the number of voters, the percentage of the

13  registered voters who voted, the public record is all I'm

14  referring to.  It was always available.  It was available to

15  all of these attorneys.

16          **THE COURT:**  And I wanted to just point out, it was

17  available on November 19th of 2020.

18          Let me go to Mr. Campbell, and then I'm going to move

19  on.

20          **MR. CAMPBELL:**  You know what, Judge, I think the

21  points have now been made relative to this, but, again, as to

22  what these numbers mean within the report and how they're to be

23  interpreted, Mr. Fink can't be the source for that.

24          **THE COURT:**  Yes, and that's -- I don't believe that's

25  his point.  It is just the matter of what an attorney, who had

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

 1    reviewed the information, what they would make of that data.

 2             Go ahead.

 3             **MR. CAMPBELL:**  But, Judge, you just asked me can a

 4    lawyer say something that's false.  So just because it's not

 5    his point, he shouldn't be able to spread the falsehoods.

 6             **THE COURT:**  All right.  I'm going to move on.

 7             **MR. KLEINHENDLER:**  Your Honor, I have a very

 8    important point that I think would help you, your Honor, and

 9    that is Mr. Fink talked about the recount in Antrim County.  I

10    just want to refer you to Mr. Ramsland's rebuttal.  It's ECF

11    49, and at pages 8-9 he has a photograph, a photograph of the

12    hand recount that was done in Antrim County and to which he

13    referred to in the moving affidavit.  That's my point, your

14    Honor.

15             **THE COURT:**  I'm going to move on to some specific --

16             **MR. CAMPBELL:**  Your Honor, if I can, can we have

17    Mr. Fink explain why there's a photograph of something that

18    shows a hand recount when he's telling everybody there's been

19    no hand recount?

20             **MR. DAVID FINK:**  Absolutely, but, I'm sorry,

21    Ms. Meingast is --

22             **THE COURT:**  Go ahead, Mr. Fink, did you want to

23    respond to that?

24             **MR. DAVID FINK:**  I've got to pull up the document.  I

25    don't have it in front of me.

             King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1              THE COURT:  Okay.

2              MR. DAVID FINK:  Because there was no hand recount,

3      as stated, but I think Attorney General Meingast has the

4      answer.

5              THE COURT:  Ms. Meingast, please.

6              MS. MEINGAST:  Just briefly, your Honor.  I'm the

7      attorney in the Antrim County *Bailey* case.

8              THE COURT:  Yes.

9              MS. MEINGAST:  The questions about this case, I'm

10     happy to shed some light.  There was certainly not any kind of

11     hand count recount that occurred before the Secretary of State

12     and the County actually did one later in December.  So what

13     the, you know, the clerks -- the county clerk and the local

14     clerks did during the canvass or during, you know, the election

15     night and the days that followed was simply look at tabulary

16     tapes and comparisons and look at those things.  There wasn't a

17     hand count of ballots or anything like that nature.  You

18     can't -- it's not even appropriate or allowed under election

19     law to do something like that at that time.

20             THE COURT:  All right.

21             MR. CAMPBELL:  Again, your Honor, the story isn't

22     what Mr. Fink said, that there's absolutely no hand recount.

23     There is something going on there, and nobody is -- neither of

24     the two counsel have said, "Hey, that's a false document."

25             So it turns out that they were aware of it, having

Motion hrg.                              7/12/2021

1  seen ECF 49.  It turns out they have no rebuttal to that

2  document.  It turns out that the expert, the person who made

3  the report, had a basis for making the statement, and we have

4  spent I don't know how long talking about a line from --

5           **THE COURT:**  And that may well be the case, that may

6  well be the case, but it is -- if that's how I choose to

7  proceed, that's how I will proceed.

8           Mr. Fink, last word on this, and I'm moving on.

9           **MR. DAVID FINK:**  I apologize, your Honor.  I know I

10  had my hand up.  I'm with somebody who is going to bring me the

11  document so I can look at it, and I can tell you and I can tell

12  Mr. Campbell unequivocally there was no hand recount as of the

13  date of this report.  I'm guessing whatever the photo is is of

14  something that was done later than that.

15          **THE COURT:**  All right.  I would like to move on now,

16  and I'm going to give you all -- you can make a note, and I

17  really don't even -- I don't know what the picture is that

18  you're referring to, but when you can pull that together, and I

19  will revisit that during the course of this hearing.  We're

20  going to move on right now.

21          All right.  Now, the amended complaint states that

22  Defendants violated the Equal Protection Clause by taking

23  several specific actions.  To be very clear, Plaintiffs' Equal

24  Protection claim was based on the notion that the votes of

25  those who voted for former President Trump were diluted.

Motion hrg.                              7/12/2021

1    Plaintiff submitted many affidavits as evidence that specific

2    things happened, thereby causing vote dilution.

3            Considering this, and the fact that counsel knows it

4    could not submit affidavits to the Court with impunity, despite

5    the fact that the affidavits are executed by others, the Court

6    is concerned that these affidavits were submitted in bad faith.

7    For this reason, I have questions about specific affidavits and

8    the factual allegations they were alleged to support.

9            I would like to first look at -- Plaintiffs assert,

10   first of all, that Defendants, "Fraudulently added tens of

11   thousands of new ballots and/or new voters to the qualified

12   voter file in two separate batches on November 4th, all or

13   nearly all of which were votes for Joe Biden."

14           Now, the amended complaint cites three pieces of

15   evidentiary support for that conclusion.  One is the affidavit

16   that's been submitted by Mr. Sitto.  That's ECF number 6-4, PDF

17   40-42 -- Pages 40-42.  The amended complaint states, "Sitto

18   observed tens of thousands of new ballots being brought into

19   the counting room."

20           Did I understand that correctly, per the affidavit,

21   that is what the affidavit states?

22           Here's my question for counsel.  First of all -- and

23   this is referenced in the amended complaint.  As I read

24   Mr. Sitto's affidavit, the affidavit does not state that he

25   actually saw these ballots brought in.  Counsel seems to be

Motion hrg.                                    7/12/2021

1   making an assumption that he had them brought in.

2           Who had anything to do with this affidavit?  Let's

3   start there.  Who prepared that affidavit at ECF number 6-4,

4   PDF?  Anybody?

5           No one knows about that, huh?

6       **MS. HALLER:**  Your Honor, can we have a moment to find

7   the document?  Because it's kind of hard to do when you have

8   this on the computer, as I do.

9       **THE COURT:**  Yes.  He said he observed tens of

10  thousands -- this is what the compliant says.  "He observed

11  tens of thousands of new ballots" -- here it is here on the

12  screen, the shared screen, and this is actually -- let's see.

13          So the question becomes -- that is a statement that's

14  made in the complaint, that Sitto observed tens of thousands of

15  new ballots being brought into the counting room, but, in fact,

16  the affidavit does not state that he actually saw it.  All

17  right.

18          All right.  He says he "heard other challengers say

19  that vehicles with out-of-state plates pulled up and unloaded

20  boxes of ballots, and, approximately 4:30, tens of thousands of

21  ballots were brought in and placed on eight long tables.

22  Unlike the other ballots, these boxes were brought in from the

23  rear of the room."

24      **MS. HALLER:**  Your Honor, what ECF document is this?

25  Because it doesn't show at the top of the screen showing.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **THE COURT:**  104.

2          **MR. CAMPBELL:**  If I may, your Honor, up above --

3   you've highlighted Paragraph 10.  Paragraph 5 describes a time

4   frame in which he is standing in the room that he's describing

5   the conduct in Paragraph 10.  I think that puts him personally.

6          **THE COURT:**  Okay.  So let me -- let me move on then,

7   and that was Mr. Campbell.  Please say your name before you

8   speak.  I think it will be helpful.

9          All right.  So even if the Court assumes -- even

10  assuming Mr. Sitto saw the ballots brought in, what is the

11  basis for concluding that there were tens of thousands, and

12  what steps, if any, did counsel take to investigate his basis?

13  And again --

14         **MR. CAMPBELL:**  This is Don Campbell.

15         **THE COURT:**  I'm not --

16         **MR. CAMPBELL:**  This is Don Campbell.

17         **THE COURT:**  Yes.

18         **MR. CAMPBELL:**  The basis for the tens of thousands is

19  I think that's what he says in the affidavit there.  I will

20  note this, that the only contrary statement that was provided

21  by the Defendants in any of its briefing up to this hearing was

22  to say that it might look like to uneducated, untrained folks.

23         **THE COURT:**  Sorry.  Hold on just one moment, please.

24  I'm sorry, hang on one moment, please.

25         Apologies, go ahead.

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1           **MR. CAMPBELL:**  Thank you.  I haven't read all of

2     Mr. Sitto's affidavit here obviously at this moment, but I

3     can't recall whether he had training or not, and I don't know

4     whether he expressed his level of education, but, you know, the

5     City seems to concede that, yeah, it could look like this

6     stuff, it's just you don't know what's really going on.

7           Now, of course the Court has not had the opportunity

8     to hear what these people actually saw or to put those people

9     under examination in an evidentiary hearing, if that's what it

10    required, and nor has it had an opportunity to really test the

11    City's position, even though it looks like that, it didn't

12    actually happen --

13          **THE COURT:**  Mr. Campbell, let me be clear, that

14    this -- I said at the outset of these particular affidavits

15    that I'm going to be questioning counsel about is that I wanted

16    to determine whether or not -- whether counsel had done its

17    proper level of investigation before submitting an affidavit.

18    It's quite similar to what the other areas that we discussed

19    previously, in terms of was there anything in the content that

20    would trigger your duty as counsel to determine whether or not

21    these statements were based in facts.

22          And for someone to say tens of thousands, and if

23    you're telling me that it is just an eyeball view of it and

24    they pulled that out, I ask you:  Is it acceptable to place

25    into an affidavit?  Do you think it is, Mr. Campbell?

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1           **MR. CAMPBELL:**  I've got to tell you, Judge, if a jury

2   believed it, it would be enough to convict somebody of a crime

3   of election fraud in a moment, yes, absolutely.

4           **THE COURT:**  Okay.

5           **MR. CAMPBELL:**  If you saw that.  I mean what other

6   proof would you have, Judge, other than your own eyes?  It's

7   outrageous --

8           **THE COURT:**  And --

9           **MR. CAMPBELL:**  I've got to get three witnesses --

10          **THE COURT:**  Excuse me.  Excuse me.  I'm asking you --

11  my question really is:  How would anyone know that that's tens

12  of thousands?

13          **MR. CAMPBELL:**  We can ask Mr. Sitto under

14  examination, but I don't think that's something he needs to put

15  into an affidavit.

16          **THE COURT:**  Question:  Did you -- that is really my

17  question.  Was that question asked?  And I don't think I got an

18  answer from any of the attorneys on this here today at the

19  hearing as to whether or not -- you know, who, who actually put

20  together this affidavit?  Did anyone on the call have anything

21  to do with it?  Anyone?

22          **MR. KLEINHENDLER:**  Your Honor, this is

23  Howard Kleinhendler.  I believe this affidavit and others were

24  filed in a companion case.  The companion case had nothing to

25  do with us, and on behalf of -- I believe it might have been

                  King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    the Trump campaign in connection with a challenge, a different

2    challenge that was made.  These were affidavits that were

3    submitted by counsel in that case.

4              **THE COURT:**  So there was no effort on -- even though

5    these affidavits -- this particular affidavit was submitted,

6    and if I'm not mistaken, attached to the complaint, you didn't

7    feel that you needed to review it before it was filed?

8              **MR. KLEINHENDLER:**  We reviewed it.  Of course we

9    reviewed it, and, frankly, it was not that inconsistent with

10   what our experts were saying.  If you look at our expert

11   reports, and -- your Honor, I don't know -- forgive me -- what

12   standard are you using here for filing a complaint?  We had a

13   good faith basis, no reason not to believe --

14             **THE COURT:**  I'm looking at the standards that are set

15   forth in the variety of options I have to impose sanctions.

16   That's what I'm looking at and --

17             **MR. KLEINHENDLER:**  Well, I'm looking at the

18   standard --

19             **THE COURT:**  Okay.  Thank you.

20             Mr. Fink, what is it you would like to say?

21             **MR. DAVID FINK:**  First, to be clear, it's astounding

22   that even today Mr. Kleinhendler isn't able to tell us what the

23   source of this is, just saying he thought it was a Trump

24   lawsuit.  This is from the *Constantino* and *McCall* case that was

25   filed in the Wayne County Circuit Court.  The case was heard by

Motion hrg.                                    7/12/2021

1    Judge Kenney, and at the time that it was before Judge Kenney,

2    Chris Thomas, the former elections director, the elections

3    director of the State of Michigan for something like 38 years,

4    under Democratic and Republican administrations, and was

5    involved in this litigation, Chris Thomas filed a detailed

6    affidavit addressing these very issues, explaining why

7    Mr. Sitto misunderstood what he may have observed, very

8    clearly.

9          Judge Kenney reviewed that and made conclusions, none

10   of which are ever referred to by the Plaintiffs, but,

11   certainly, again, I'm not saying this Court needs to or should

12   make a finding of truth or falsity of these affidavits, but the

13   Court is appropriately asking about the duty of inquiry during

14   this three-week period.  This was filed first in Wayne County

15   the week of the election.  That's when these affidavits were

16   available to them.  There clearly was an issue of fact as to

17   whether this was true, as it was responded to so clearly by

18   Chris Thomas and by Judge Kenney.

19         They had a duty at that point to investigate.

20   Lawyers -- unfortunately this kind of case is going to make

21   people around the world believe that lawyers can say or do

22   whatever they want and it doesn't have to be true; they don't

23   have to inquire.  It isn't that way.  You can't put something

24   in a pleading that you know to be false, and I do want to say

25   one thing.

Motion hrg.                                    7/12/2021

1            Earlier today the question came up about pro hoc

2    vice, and I just want to say every lawyer in Detroit, including

3    the three local counsel who signed on here, should know that in

4    the Eastern District of Michigan it's been 40 years since we

5    had pro hoc vice admission, but what we do have, what we do

6    have is an admission process in which everybody who gets

7    admitted fills out a form or takes an oath that they must swear

8    or affirm that they will honor the civility principles of this

9    court, and as Mr. Campbell well knows, one of those civility

10   principles is we are not to make factual misrepresentations to

11   the Court.  We are not to misrepresent the law or the facts to

12   the Court, and they seem to have chosen not to be sworn into

13   our district.

14            So they didn't know -- and, by the way, if somebody

15   on this call, if one of these lawyers says they didn't know

16   because they're going -- everybody blames everybody else here,

17   apparently.  They're going to say, "Local counsel didn't tell

18   us."  Again, Google it.  Google "admission to Eastern District

19   of Michigan," and it pops up right away.  There is no pro hoc

20   vice, and there hasn't been since 1981.

21            They should tell the truth.  They have a duty to tell

22   the truth, and they have a duty to not submit an affidavit to

23   this Court, whether it's attached to a complaint or not, not to

24   submit an affidavit to this Court that they have reasonable

25   cause to believe has false statements in it and to rely on it

Motion hrg.                                    7/12/2021

 1   in the allegations they then make in the complaint.

 2            Thank you.  I'm sorry if I went too long.

 3            **THE COURT:**  All right.  Let me stop --

 4            **MS. HALLER:**  Your Honor --

 5            **THE COURT:**  Hang on.  I'm going to -- let me tell you

 6   what my plan is.  I will hear from counsel, from Ms. Haller,

 7   from Mr. Campbell, and Mr. Davis appears he wants to say

 8   something.  After I have done that, we're going to take a

 9   ten-minute break.  All right.  It is now 11:00.  We've been on

10   for the last two-and-a-half hours.  I have more areas of

11   questioning.

12            Ms. Haller, I'll hear from you.

13            **MS. HALLER:**  Thank you, your Honor.

14            I would just briefly say that this was the complaint

15   and we had good faith to attach exhibits, and we spoke to our

16   anticipated experts and we reviewed the materials, and I simply

17   am confused as to the standard that's being applied when it

18   comes to filing a complaint because this was not a verified

19   complaint so I'm a little confused at the standard.

20            We did not submit falsehoods, and we have not had an

21   opportunity to have our witnesses examined, which I'm sure your

22   Honor understands that we will make the witnesses available.

23   They can be cross-examined by Mr. Fink, who doesn't need to

24   opine on what constitutes the public record without citations.

25            **THE COURT:**  All right.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **MS. HALLER:**  So citations are helpful, the standard

2     would be helpful, and thank you for your time, your Honor.

3          **THE COURT:**  All right.  Mr. Campbell.

4          **MR. CAMPBELL:**  Yeah, I just want to make sure the

5     record Mr. Fink has highlighted is understood and appreciated

6     by this Court.  Other members of the State Bar of Michigan,

7     other lawyers saw this and admitted it in a different

8     proceeding, and I've got to tell you, Judge, you've got to be

9     able to trust when something has been submitted by counsel

10    because of the oath that we take, because of the reliability on

11    everybody else within this profession that, yes, that should

12    have tremendous value.  In fact, I would say it's -- it ends

13    the discussion on whether there's good faith to submit it.

14          The counter-argument, which they want to promote,

15    they can do so at their time.  Judge Kenney did not rule that

16    that affidavit was in error.  He did not rule to any of the

17    merits in the *Constantino* case.

18          **THE COURT:**  All right.  Thank you.

19          **MR. CAMPBELL:**  So with regard to that, that is

20    further basis for the good faith to apply.

21          **THE COURT:**  Let me answer Ms. Merritt -- thank you

22    Mr. Campbell -- Ms. Merritt -- Ms. Haller's question as to

23    determining what the standard is that I'm applying here, and

24    I've said it before, but the standard is that Plaintiffs'

25    counsel submitted affidavits that the Court may believe should

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1  have been obviously questionable, if not false, on their face.

2  That is what I am getting to.  There is a responsibility.

3  There's a duty that counsel has to ensure that when you're

4  submitting a sworn statement in support of your case, actually

5  as -- presenting it as evidentiary support of your claims, that

6  you have reviewed it, that you have done some minimal due

7  diligence and that is what I am getting at.  All right.  All

8  right.

9          **MS. HALLER:**  Thank you, your Honor.

10         **THE COURT:**  We're going to take a ten-minute break.

11         **MR. CAMPBELL:**  May I ask for a slightly longer break?

12         **MR. WOOD:**  Your Honor --

13         **THE COURT:**  Hang on a second, Mr. Wood.

14         **MR. WOOD:**  I just wanted to ask when we come back

15  from the break if I could have a couple of minutes to respond

16  to something that Mr. Fink had earlier said?

17         **THE COURT:**  Yes, you can do that briefly -- all

18  right -- when we come back from the break.

19         Mr. Campbell.

20         **MR. CAMPBELL:**  Your Honor, I would ask for a

21  20-minute break and we reconvene at 11:30, if that's not a

22  problem.

23         **THE COURT:**  That's fine.

24         **MR. CAMPBELL:**  Thank you.

25         **THE COURT:**  All right.  So hang on.

          King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          Mr. Flanigan, are we -- just how are we handling this

2     from a technology standpoint, and Mr. Owen, does everyone sign

3     off?

4          **THE CLERK:**  I think Mr. Owen can stop the stream and

5     everybody can stay signed into the room, and they can simply

6     mute and turn their camera off.

7          **THE COURT:**  All right.  So those who are on this

8     screen need to mute your mics and turn the camera off.

9          **THE CLERK:**  Court is in recess until 11:30.

10              (Recess taken 11:14 a.m.)

11              (Back on the record at 11:45 a.m.)

12          **THE COURT:**  All right.  Thank you everyone.  As

13     promised, we will begin with Mr. Wood.  What would you like to

14     say on this record, sir?

15          **MR. WOOD:**  Thank you, Judge.  If you just give me

16     just a short few minutes, I think I will be listening for the

17     rest of the day because I don't have anything to really add to

18     the questions your Honor is asking.

19          What I wanted to make it clear is, as I said at the

20     beginning, that I'm appearing subject to my Defense that I'm

21     not subject to the jurisdiction of the Court personally or by

22     having appeared in the case.  My name appears on the complaint

23     and the amended complaint.  It does not contain my e-mail

24     address, does not contain any reference to me filing for any

25     type of admission, including under Local Rule 83.20.  I did not

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   sign this pleading.  You'll see I do not have a slash-S

2   signature line.  I did not have anything to do with submitting

3   the pleading.  I haven't advocated for the pleadings.

4            So when you talk about, well, the content of the

5   complaints or the content of these affidavits, I had nothing to

6   do with it, and I feel like before I am in any way subject to

7   sanctions that I ought to have the benefit of an evidentiary

8   hearing that will establish, and we could probably do it today,

9   any lawyer whose name appears on the pleadings for the

10  Plaintiffs I believe will affirm to you that, regardless of

11  whether there was some misunderstanding about why my name got

12  put on there, each lawyer will affirm to you that I did not

13  have any input into any one of these pleadings or affidavits

14  and I was not asked to have any input into them.

15           So I feel like I've been kind of lumped as counsel

16  for the Plaintiffs when I did not ever agree to appear,

17  particularly as it would apply to Rule 11.  I've practiced law

18  for 44 years, and I think I've covered 27 different states

19  outside of Georgia.  I have never appeared in a case without

20  having sought the local rules permission to do so, knowing that

21  I might, in federal court, be subjected to Rule 11.

22           So I did not subject myself to Rule 11 sanctions.

23  Section 1927 certainly does not apply to me in terms of

24  multiplying any type of proceedings, and I feel like I'm

25  entitled to due process or an evidentiary hearing that would

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                               7/12/2021

1   show that I was not asked, nor was it ever intended, that I be

2   represented as a signer or as a counsel of record to be held to

3   the standards of Rule 11.  I did not receive any e-mail notice

4   from counsel about the Safe Harbor.  I've had my office check,

5   and we've received nothing by mail.

6           So I wanted to make that position clear so that the

7   record is protected in terms of my request for the evidentiary

8   hearing, and perfected as to the record where I am taking the

9   position my appearance today is subject to my defense of lack

10  of jurisdiction either under Rule 11 or Section 1927.

11          **THE COURT:**  All right.

12          **MR. WOOD:**  So, going forward, if your Honor has

13  questions about who had involvement, I just want to go ahead

14  and in one lump sum let you know I had no involvement in any of

15  this in terms of the substantive input or with you.

16          Thank you very much, Judge.

17          **THE COURT:**  Okay, right, and let me just say -- and,

18  Mr. Fink, I'm not going to allow to you respond to that simply

19  because I am going to table that issue until the end of this

20  hearing where that is going to be the time in which I address

21  the issue of supplemental briefing, and I'm going to tell you,

22  Mr. Wood, right now, I'm going to allow you to submit a brief

23  on this issue and then allow Mr. Fink, or whomever else would

24  like to respond because I know that this issue factually is in

25  dispute.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1          All right.  Now, having said that --

2          **MR. WOOD:**  Thank you, your Honor.

3          **THE COURT:**  You're welcome, sir.

4          All right.  Let's move on now, counsel, to the issue

5   of the Carone affidavit, which is ECF number 6-5.  Ms. Carone

6   indicates that there were -- just a moment, please, and --

7   uh-oh.  We have a little technical glitch on our end, and we

8   will get that fixed.

9          Mr. Flanigan, are you aware of it?  Okay.  He may

10  have gotten kicked off --

11         **THE CLERK:**  Your Honor, I am having trouble with my

12  audio that I'm trying to work out with Jason currently.  I can

13  hear, but it's very faint.

14         **THE COURT:**  Okay.  I think that we have -- Ellen has

15  been kicked off as well.  So we need to figure it out.

16         **THE CLERK:**  Yes, she has.

17         **THE COURT:**  See if you can bring her back in.  All

18  right.

19         So, counsel, I'm going to proceed, and we're, again,

20  focusing on the Carone affidavit, wherein it stated, "There

21  were two -- "there was two vans that pulled into the garage of

22  the counting room, one on day shift and one on night shift.

23  These vans were apparently bringing food into the building.  I

24  never saw any food coming out of these vans.  Coincidentally,

25  it was announced on the news that Michigan had discovered over

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    100,000 more ballots not even two hours after the last van

2    left."  The amended complaint calls this an illegal dump.

3              Let me ask:  Who -- did anyone have an opportunity --

4    who had the opportunity to speak with Ms. Carone?  Raise your

5    hands if you did.

6              **MS. HALLER:**  Your Honor, may I?

7              **MR. CAMPBELL:**  Is there --

8              **THE COURT:**  Hang on, Ms. Haller.

9              **MR. CAMPBELL:**  Is there a particular paragraph you're

10   referring to?

11             **THE COURT:**  I just read it.

12             **MR. CAMPBELL:**  I didn't get the number, your Honor.

13   I apologize.

14             **THE COURT:**  Okay.  So this is going to be a bit of a

15   challenge.  I think I can pull it up.

16             **MR. CAMPBELL:**  If you have the number, I have it in

17   front of me.

18             **THE COURT:**  It's 6-5.

19             **MR. CAMPBELL:**  Thank you.  That's the Carone

20   affidavit.  You said there's an allegation in the complaint.

21             **THE COURT:**  I'm sorry?

22             **MR. CAMPBELL:**  As to an illegal dump.

23             **THE COURT:**  Okay.  I don't know what paragraph that

24   is in.

25             **MR. CAMPBELL:**  Thank you.  I don't mean to burden you

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

 1   with that, but I was going to look at it and understand the

 2   context.  Thank you.

 3          **THE COURT:**  Okay.  Now, let me just say that the

 4   questions that the Court has on this -- and I thought I saw

 5   another hand, but I'll just give you a moment.  Oh, I asked the

 6   question as to who spoke with Ms. Carone, if anyone.

 7          All right.  Ms. Lambert.  Thank you.  Please unmute.

 8          **MS. LAMBERT:**  Thank you, your Honor.  I have spoken

 9   with Ms. Carone but not regarding the complaint.  As the Court

10   knows, I filed the notice of appeal before this Court.

11          **THE COURT:**  Right.

12          **MS. LAMBERT:**  I have spoken with her regarding her

13   information regarding election vendors and the role that she

14   participated with an election vendor.

15          **THE COURT:**  Okay.  So you did not speak to her

16   regarding her observations that she set forth in the affidavit;

17   is that true?

18          **MS. LAMBERT:**  That's true, your Honor.  I just wanted

19   to be accurate and let the Court know that I have spoken with

20   her.

21          **THE COURT:**  I appreciate that.

22          So, yes, Mr. Kleinhendler, sir.

23          **MR. KLEINHENDLER:**  Thank you, ma'am.  I refer you to

24   the Ramsland moving affidavit, yes, which is ECF 6, Exhibit 24,

25   page 4 of 8, and the bottom of paragraph 13.  He refers to the

                  King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

 1  Melissa Carone affidavit.  It was my understanding that our
 2  expert had in fact spoken with her.  I can't state the truth
 3  because my memory is a little foggy, but I believe I had a
 4  conversation with Mr. Ramsland about this Carone affidavit.
 5  He, in turn, told me -- and, again, this is my belief, it's
 6  awhile back -- that he in fact had spoken with her.

 7          I do know, your Honor, that she had publicly
 8  testified, I believe, in Michigan about her findings, okay, and
 9  so while I don't have any recollection of directly speaking
10  with her, I am referring you to my expert, who refers to her
11  affidavit, vouches for her, and it should have been attached,
12  your Honor.  For some reason, I don't know, I guess when we
13  filed it, it wasn't attached.

14          **THE COURT:**  What wasn't attached, her vouching --
15  your expert --

16          **MR. KLEINHENDLER:**  No, no, the affidavit says, "See
17  Melissa Carone affidavit."

18          **THE COURT:**  Oh, okay.

19          **MR. KLEINHENDLER:**  And I think we had it.  I know we
20  had it, but for some reason I don't -- I don't know if it was
21  included.

22          **MS. HALLER:**  It was included.

23          **THE COURT:**  It was included.  I know that there was a
24  statement saying that it was not in one of the briefs, but it
25  has in fact been included.

          King v Whitmer, Case No. 20-cv-13134

Motion hrg.                               7/12/2021

1           All right.  Anybody else have any contact with her?

2   All right.  Thank you.

3           So my question then -- Mr. Fink, I'm sorry, sir.  I

4   didn't acknowledge you.

5           **MR. DAVID FINK:**  Of course I'm not suggesting I had

6   contact with her, but, rather, I wanted to respond briefly to

7   that and also to something that I did not respond to yet

8   from -- regarding Mr. Sitto because we took the break.

9           **THE COURT:**  Okay.  Let me -- before you do that,

10  Mr. Fink, let me ask the question that I wanted to ask other

11  than who had spoken with Ms. Carone.

12          I wanted to ask the question:  She, again, she talks

13  about her observations seeing vans pull up and then she

14  connects what she considers to be the coincidental announcement

15  from local media having stated that -- and no reference to

16  which local media to which she's referring but stating that

17  there had been a statement made that Michigan had discovered

18  over 100,000 more ballots.

19          My question is:  Is it counsel's position that

20  coincidence -- that a coincidence can serve as an

21  evidentiary -- as the basis for evidentiary support for an

22  allegation?  Because that's what this sentence is saying.

23          Mr. Campbell, you look like you want to respond.

24          **MR. CAMPBELL:**  Yes, I -- here's what I think we can

25  safely say, and maybe this is responsive.  We have an expert

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   who has relied on that affidavit for purposes related to his

2   statistical analysis, and, again, going back to the Georgia

3   case that says if you have affidavits of witnesses and you have

4   statistical data, that's enough to, in that case it was, to

5   have the court act.

6          Here we have attached the actual affidavit, but, as

7   you know, your Honor, an expert can rely on hearsay.  So in

8   terms of, you know, the information that's there, I think it's

9   properly presented, and I have to say, if a witness says things

10  that don't turn out to be entirely accurate, that can be

11  discovered through the processes that this Court is very

12  familiar with, and that happens all the time.

13         But, you know, including what they have to say

14  because they say it is not inappropriate in any way.  In fact,

15  it may turn out that we don't believe some things that they

16  said, but to give only half the story isn't how we want to

17  plead the case.

18         So, again, I'm not sure about the context in which

19  the Court is asking this.  This is a claim by the Plaintiffs

20  drafted by the lawyers to bring their claim under the various

21  federal laws that they believe apply, and we thought we were

22  timely when we did it.

23         **THE COURT:**  All right.  Mr. Fink, this is your time

24  to respond, sir.

25         Thank you, Mr. Campbell.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1          **MR. DAVID FINK:**  First, with respect to Ms. Carone,

2   we have another classic situation where if in fact -- and, by

3   the way, it's not just the expert.  The complaint explicitly

4   references, in Paragraph 94, explicitly references the Carone

5   affidavit.

6          Now, Carone makes the allegation -- and, to be clear,

7   she's not a trained election worker.  She was -- and there's no

8   dispute about this.  She was a subcontractor doing some work on

9   maintaining machines on the day of the election -- or the day

10  of the count.  She claimed that she witnessed batches of

11  ballots being run through the scanner multiple times, 50 at a

12  time, 8 or 10 times in a precinct.

13         Now, if any expert reviewing it -- and the expert

14  relied on that.  Any expert reviewing that affidavit with the

15  slightest knowledge of election procedures would know that it

16  was patently absurd because, if you ran 50 ballots through 8

17  times, you would have 350 more votes in that precinct than

18  there were voters, and there isn't a single precinct in the TCF

19  Center that had more than an 11-vote disparity.

20         Nonetheless, because they did no due diligence, they

21  didn't look at this.  They didn't check it.  They continue to

22  rely upon these findings, which are just blatantly factually

23  false.

24         Now, I want to briefly, if I may, say this.  This was

25  addressed and looked at very closely, as well as the other

Motion hrg.                              7/12/2021

1   allegations that she made, by Judge Kenney.  Earlier today,

2   just before the break, Mr. Campbell made a representation to

3   this Court that I assume comes, not out of intentional intent

4   to misrepresent the facts, but out of ignorance that comes from

5   his recent involvement in this case.

6           He said that Judge Kenney did not make findings.

7   That could not be further from the truth.  Judge Kenney made

8   extensive findings in his Opinion and Order dated November 13th

9   and very widely published and available at the time.  Certainly

10  counsel knew about this.  November 13th in his Opinion and

11  Order he explicitly discussed why it was that Ms. Carone was

12  mistaken in the representations in what she saw.

13          Importantly, in response to something this Court

14  raised earlier, he also very explicitly, directly contrary to

15  what Mr. Campbell told us before the break, Judge Kenney very

16  explicitly addressed Andrew Sitto's allegations.  He had three

17  paragraphs.  He pointed out that Andrew Sitto was a Republican

18  challenger who did not attend the walk-through meeting that

19  trained the challengers.

20          He explained, and I'll quote from him, "Mr. Sitto's

21  affidavit, while stating a few general facts, is rife with

22  speculation and guesswork about sinister motives.  Mr. Sitto

23  knew little about the process of the absentee vote counting" --

24  "voter county board activity.  His sinister motives attributed

25  to the city of Detroit were negated by Christopher Thomas'

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1  explanation that all ballots were delivered to the back of Hall

2  E at TCF Center.  Thomas," he goes on to say, "also indicated

3  the City utilized a rental truck to deliver ballots.  There's

4  no evidentiary basis to attribute any evil activity by virtue

5  of the City using a rental truck with out-of-state licenses

6  plates."

7          He also directly addressed the tens of thousands

8  ballots allegation, explaining that "That number was

9  speculation on the part of Mr. Sitto," and, he said, "It's not

10 surprising that many of the votes being observed by Sitto were

11 cast for Mr. Biden."

12         Now, my main point here is not the facts.  My

13 point --

14         **MS. HALLER:**  Your Honor.

15         **MR. DAVID FINK:**  -- is a lack of due diligence, and

16 Mr. Campbell tells us, in representing seven of these nine

17 Plaintiffs' attorneys, including, incidentally, both Mr. Wood

18 and Mr. Rohl, who seem to have diametrically opposed views of

19 what happened, but Mr. Campbell told us that Judge Kenney had

20 not ruled.  Judge Kenney had ruled.  These folks were on

21 notice, and this was important.  This was the election of the

22 President of the United States.  They should have been extra

23 careful, not just diligent, but extra careful.

24         And I have to say, the statement by Mr. Campbell, as

25 though it's a precept of law that we should all except as black

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   letter law, that if something is in a pleading that someone

2   else has filed then it's fair game for me to repeat it and say

3   it's true with no due diligence on my part, I've never seen a

4   case like that.

5           **MS. HALLER:**  May I respond?

6           **THE COURT:**  Yes, you may.  You have your hand up.

7           **MS. HALLER:**  Thank you, your Honor.

8           I would just point out that the affidavit that's

9   attached as an exhibit, which is an exhibit to the complaint,

10  which is what you're referencing as the Carone affidavit, 6-5,

11  that's documented as a document from the court, in your state

12  of Michigan circuit court.  It is not represented to be a

13  document that was created by us.  It is not represented to be

14  anything other than what it was, which is a document from a

15  different court.

16          That court had its proceedings, as we all know, that

17  later, you know, in rulings in *Constantino* and that line of

18  cases, and we know that Justice Zahra spoke out about the

19  meaningful assessment of allegations by an evidentiary hearing

20  and that -- Plaintiffs' right to an evidentiary hearing as a

21  general matter.

22          **THE COURT:**  What was the purpose for which you

23  attached it?

24          **MS. HALLER:**  Because Russ Ramsland cited to it and

25  it's a source for his exhibit, as well as an identification of

Motion hrg.                                    7/12/2021

1  a potential witness who may be anticipated to testify in

2  accordance with the exhibit at the time of a trial or an

3  evidentiary hearing or in a court process.  We had the ability

4  to cite to information making as much information as possibly

5  available to identify anticipated witnesses who would testify

6  in accordance with the statements or affidavits that were

7  included, but this particular affidavit was cited to by

8  Russ Ramsland.

9            **MR. CAMPBELL:**  If I may, your Honor?

10           **THE COURT:**  Go ahead, Mr. Fink.

11           **MR. DAVID FINK:**  I just want to say Ms. Haller is

12  simply wrong.  The affidavit is connected to the previous

13  lawsuit, but it is directly cited in their complaint, in their

14  complaint in Paragraph 94.  They directly quote from that --

15           **MS. HALLER:**  (Indiscernible.)

16           **MR. DAVID FINK:**  -- as though it is true, not just

17  the expert.

18           **MS. HALLER:**  That's right, Mr. Fink.  As you well

19  know, it's not hearsay.  It's a sworn statement in a court of

20  law, and, yet, we have citations to hearsay in other documents

21  that are similarly attached, but we are not in a *Daubert*

22  motion.  We are not on a motion for discovery as being in

23  contention.

24           The bottom line is it's a complaint where we attached

25  information to include a witness from another court, and we

Motion hrg.                              7/12/2021

1  cited to that in a complaint as sworn testimony, and, as such,

2  it's available and relied upon by our expert.

3          **THE COURT:**  Question for you, Counselor.  So then

4  you're saying that you did not attach the Carone affidavit in

5  support of your factual assertions; is that what you're saying?

6          **MS. HALLER:**  No, your Honor.  Thank you.  I am simply

7  saying that it's information in support of the complaint.  It's

8  cited to in the complaint.  It is a document that is not

9  hearsay.  It is a simple document that is a sworn statement

10  from another court that is cited to by our expert, and we rely

11  upon it to the extent that it's cited in the complaint.

12          **THE COURT:**  Well, you cited it.  You referenced it.

13  You all are the ones that placed it in the complaint, and you

14  didn't place it in there in support of your allegation?

15          **MR. CAMPBELL:**  Judge, it's there because --

16          **MS. HALLER:**  No, it is in support --

17          **THE COURT:**  Excuse me, Mr. Campbell.

18          **MR. CAMPBELL:**  -- it's believed --

19          **THE COURT:**  Mr. Campbell, excuse me.

20          **MR. CAMPBELL:**  Yes.

21          **THE COURT:**  I'm directing my question to Ms. Haller.

22          **MS. HALLER:**  It's there as it is cited.  We stand by

23  the citation, the citation Mr. Fink is referencing.  I'm not

24  sure I understand.

25          **THE COURT:**  All right.  What -- Mr. Kleinhendler,

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1   what do you have to say?

2           **MR. KLEINHENDLER:**  I'd like to say something --

3           **THE COURT:**  Briefly.

4           **MR. KLEINHENDLER:**  -- that would help us here.

5           **THE COURT:**  Okay.

6           **MR. KLEINHENDLER:**  You're looking at a specific

7   document at an isolated paragraph, but I think it's pretty

8   clear you have to read a complaint through its four corners.

9   We are writing a complaint with multiple inputs from various

10  areas, experts, fact witnesses, other statisticians, and when

11  we see that Carone affidavit, what we're seeing is this is

12  consistent with what our experts -- with what we're hearing

13  happened in Detroit.  And, your Honor, to try to take one

14  document in isolation and use that document to infer what the

15  intent was or what the due diligence of the attorneys should be

16  without looking at the entire complaint and the entire

17  submission as to what we're getting, I believe is not correct.

18  I think --

19          **THE COURT:**  I reject your premise, that that's what

20  I'm doing.

21          **MR. KLEINHENDLER:**  No, no, sorry.  Sorry.  Your

22  Honor, I apologize.  That's what Mr. Fink --

23          **THE COURT:**  All right.

24          **MR. KLEINHENDLER:**  I apologize.  Sorry.  That is what

25  Mr. Fink is asking of the Court, and that's the point I want to

Motion hrg.                                    7/12/2021

1    make.

2            The second point I want to make, your Honor, is just

3    because in a preliminary election hearing a court found that

4    one affidavit trumped another affidavit, your Honor, that does

5    not render the allegations of Ms. Carone to be false.  Okay.

6            Until she appears before you or before a jury, a fact

7    finder, and you make a decision what she's saying is false, all

8    you have is argument, and that's the point.  Mr. Fink is

9    arguing in the form of stating facts, and I have a problem with

10   that.  I'd like to make that clear for the record.

11           **THE COURT:**  All right.  Thank you.  We're going to

12   move on.

13           Mr. Campbell, what --

14           **MR. CAMPBELL:**  Again, my name was raised earlier by

15   Mr. Fink, if I may respond?

16           **THE COURT:**  Briefly.

17           **MR. CAMPBELL:**  Thank you.  You can check the record.

18   I'll tell you what I intended to say and what I thought I said,

19   that Judge Kenney did not hold a hearing and did not make any

20   determinations of credibility with regard to the weight of the

21   affidavits based on having heard from affiants themselves.  I

22   didn't say anything as effusive as that, but that's what I

23   thought I said, and that is -- I don't think he would contest

24   that point.

25           **THE COURT:**  All right.  Okay.  Moving on.

                  King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          I'd like to look on the Connarn affidavit set forth

2     in ECF number 6-6, and I want to quote specifically from it.

3     Let's see, we may need to do some screen sharing, but I will

4     quote from it.

5          "I was working as the attorney acting as poll

6     challenger with the Michigan Republican Party.  When I was

7     approached by -- where I was approached by a Republican Party

8     poll challenger, who stated that a hired poll worker of the TCF

9     Center in Wayne County was nearly in tears because she was

10    being told by other hired poll workers" -- with an S -- "at her

11    table to change the date the ballot was received when entering

12    ballots into the computer."

13         Again, I want to emphasize the sequencing here.  "The

14    affiant is stating he was working as an attorney acting as a

15    poll challenger with the Republican Party in Michigan.  He was

16    therefore -- or there he was approached by a Republican Party

17    poll challenger, who stated that a hired poll worker at the TCF

18    Center was nearly in tears because she was being told by other

19    poll workers at her table to change the data" -- I'm sorry, "to

20    change the date that the ballot was received when entering

21    ballots into the computer."

22         So here it appears to the Court that Connarn is

23    saying that she was told by an initial person that a second

24    person, who was told by a third person and other additional

25    persons, that the second person should back date ballots.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1          Question for counsel:  Does counsel believe it is

2   appropriate to support allegations on such third-hand

3   knowledge, triple hearsay testimony that counsel has no hope of

4   ever introducing into evidence?

5          Who would like to answer that question for the

6   Plaintiffs or counsel for the Plaintiffs' counsel?

7          Okay.  Mr. Campbell, go ahead.

8          **MR. CAMPBELL:**  Thank you.  Judge, that's Paragraph 1,

9   and then in Paragraph 2 there is evidence of an actual note

10  being slipped.  It gives context.  It's not even hearsay.

11         **THE COURT:**  Who is JJ?  Are you talking about that

12  note JJ?

13         **MR. CAMPBELL:**  Yeah, I'm talking about -- again,

14  that's the portion of the affidavit you put on the screen, but

15  I've got to tell you, I have no encyclopedic knowledge of that

16  particular affidavit, and I'm the latest person, other than

17  maybe Mr. Buchanan, to this case, but I mean that seems pretty

18  obvious.  It's -- you're establishing a circumstance that

19  explains the rest of the information relative to the -- what's

20  going to follow.  Again, I'm -- I'm -- I'm surprised, and a

21  little troubled, that the Court would even have a problem with

22  that.

23         **THE COURT:**  Oh, really?  Okay.  Because that's just

24  layers of hearsay.  I don't know why that would be surprising

25  to you.  I'll give --

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

 1             **MR. CAMPBELL:**  But it's not hearsay --

 2             **THE COURT:**  -- counsel an opportunity to --

 3             **MR. CAMPBELL:**  -- it's not offered for the truth of

 4    the matter asserted.

 5             **THE COURT:**  Excuse me.

 6             **MR. CAMPBELL:**  It's not offered for the truth of the

 7    matter asserted.  Again, I've got to tell you, Judge, that...

 8             **THE COURT:**  Did anyone here take any steps to

 9    identify the Republican Party poll challenger, the hired poll

10    worker, the other hired poll workers?  Any inquiry made into

11    that?

12             I will move on.

13             Let's go to Ms. Jessy Jacob's affidavit set forth at

14    ECF number 6-4 at PDF pages 36-38 and the amended complaint

15    states that "On November 4th, 2020, Jacob was instructed to

16    predate the absentee ballots received" -- I'm sorry, "Jacob was

17    instructed to predate the absentee ballots received date that

18    were not in -- that were not in the qualified voter's file, as

19    if they had been received on or before November 3rd."

20             So this is the predating of absentee ballots, and Ms.

21    Jacob estimates that this was done to "thousands of ballots."

22             Question to counsel:  Did anyone engage in any

23    inquiry to determine if there was an explanation for why such

24    predating would have taken place?

25             **MS. HALLER:**  Your Honor, I'm sorry, which exhibit are

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   we talking about?

2          **THE COURT:**  We're looking at -- certainly.  We're

3   looking at ECF number 6-4, the Jessy Jacob's affidavit, and

4   it's in PDF format pages 36 through 38.  So the allegation here

5   is that she was instructed to predate absentee ballots to the

6   date of -- to before November 3rd.

7          And the Court's question is simply:  Did counsel

8   engage in any inquiry to determine if there was an explanation

9   for why such predating may have occurred or would be happening?

10         **MS. HALLER:**  I don't remember, your Honor.  I just

11  don't remember.  I know that I may have, but I can't say.

12         **THE COURT:**  All right.  Was anyone, Ms. Haller,

13  working on the Jacob affidavit with you?  You were --

14  correct -- working on it?

15         **MS. HALLER:**  I mean I have a recollection of

16  reviewing, but I don't have a specific recollection as to -- I

17  need to refresh my recollection, to be honest.

18         **THE COURT:**  All right.  Mr. Fink.

19         **MR. DAVID FINK:**  The Jacob affidavit was filed in the

20  *Constantino* case.  Importantly, Miss Jacob was a City employee

21  who did not do work for the city clerk's office.  She was on

22  furlough from another department, and she was called in when

23  they needed additional people to assist on the election and on

24  the counting.

25         Chris Thomas provided an affidavit, which provided

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   some detail and explanation of Ms. -- of Jessy -- Ms. Jacob's

2   misunderstanding.  Most notably, she did not understand that

3   the ballots had already been checked and verified before they

4   arrived at the TCF Center, and she did not understand that

5   nobody was predating anything.  They were, on occasion, told to

6   put dates into the computer which had not yet gone into the

7   computer, but the important issue here isn't the facts.

8         What's important is Mr. Thomas had a conflicting

9   affidavit, and Judge Kenney ruled -- I won't read it.  I won't

10  bore the parties with the reading of it.  I guess it's not

11  boring, but I won't take the extra time.

12        On Page 4 of his opinion judge Kenney, in extreme

13  detail, explained why Ms. Jacob was wrong, and, nonetheless,

14  this complaint repeats what was said by Ms. Jacob as though it

15  is the gospel.

16        **MS. HALLER:**  Your Honor, what it does is not speak to

17  the gospel, but what it does is -- we briefed in 112 -- ECF 112

18  the holding of the *Constantino* court's ruling, and the three

19  dissents by the Supreme Court judges -- the justices in

20  Michigan, and how they made clear that there was in fact no

21  evidentiary hearing in that case and that they said there that

22  should be a need.

23        It was Justice Zahra who urged the circuit court to

24  meaningfully address Plaintiff's allegations by an evidentiary

25  hearing, particularly with respect to the credibility of the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    competing affidavits, and Justice Viviano says, "A court may,

2    and given the exigencies of time, sometimes must act on a

3    motion for preliminary injunctive relief based on the parties'

4    bare affidavits."

5          So the courts may rely on, in Michigan, on bare

6    affidavits, and, in doing so, that they point out the fact that

7    there needed to be an evidentiary hearing, which did not

8    actually occur, and so what happened when -- this hasn't

9    actually been heard, and so if we do have the opportunity for

10   an evidentiary hearing, we will seek to have this witness

11   brought forward.

12         **THE COURT:**  And so, again -- Mr. Fink, hold on -- the

13   issue, again, that I have here is, is that we've got a few

14   affidavits that were filed in the *Constantino* case, and the

15   question, again, that I have for counsel on the *King versus*

16   *Whitmer* matter is:  To what extent did you review the contents

17   of those affidavits before including them?  I understand that

18   they came from another -- I understand what the Supreme Court

19   rulings were, but my question is so much more simpler in that

20   I'm asking what did counsel do?  Did you do anything for

21   purposes of reviewing the content, and did you see anything

22   that will make you say, "Wait a minute, let me understand what

23   this is."  That's my question.

24         Ms. Haller can you answer that for the Court?

25         **MS. HALLER:**  Sorry, your Honor, I'm trying to unmute.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                7/12/2021

1          I guess I'm confused by the standard.  We submitted

2   the information to the Court on a good-faith basis that this is

3   a signed and sworn statement in another court of law so I'm a

4   little confused by the questions because we didn't put forth

5   false documents.  We didn't act in bad faith, and that -- and

6   my understanding is for sanctions, which is what I believe

7   we're here -- we're supposed to be talking about bad faith, and

8   I simply am at a loss because, yes, this information was

9   included in our complaint as a source, which is what typically

10  defendants want.  They want your sources, and they want an

11  opportunity to investigate those sources.  That's why we have

12  this process called discovery.  So I am confused as to what

13  we're actually talking about.

14          **THE COURT:**  Oh, okay.  Let me ask Mr. Campbell what

15  he thinks about that because I just -- I don't understand --

16  you don't think that there's -- it seems to me you're

17  concluding that you don't have any obligation, as long as you

18  have an affidavit that's been, you know, that's been sworn, a

19  sworn affidavit, that relieves counsel of any obligation to go

20  further?  Is that how you feel about that Mr. Campbell?  What

21  is your --

22          **MR. CAMPBELL:**  On the bare bones of your scenario,

23  anything that is sworn, no.  But this isn't anything that was

24  sworn.  This is somebody who was there.  That's not in dispute,

25  and now it's a question of what they saw.  But, yeah, if

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    they're willing to swear under oath as to what they saw, that

2    makes them at least a res gestae witness --

3             **THE COURT:**  But this is not even an issue.

4             **MR. CAMPBELL:**  I'm sorry, Judge, can I finish,

5    please?

6             So what we have here, and this is not just a

7    statement from somebody who was there.  This is somebody whose

8    statement was, as noted, submitted in a different case, which

9    means other lawyers saw it.  They believed it to be appropriate

10   for submission to the Court in that circumstance.

11            **THE COURT:**  So that's enough?

12            **MR. CAMPBELL:**  If I may?

13            On top of that, you have an expert with a report who

14   expressly says he's relying in part on some of the information,

15   and, oh, by the way, it supports the statistical analysis.  So

16   this is not just a statement that somebody happened to say

17   under oath, and the Court is wrong to frame it in that manner.

18            **THE COURT:**  All right.  Mr. Fink.

19            **MR. CAMPBELL:**  That question is not really indicative

20   of anything in this case, with due respect.

21            **THE COURT:**  Mr. Fink.

22            **MR. DAVID FINK:**  Ms. Haller said it exactly right

23   when she said she doesn't understand what the question is.  I

24   think that's true.  The question is what responsibility did

25   they have to vet the facts they were presenting to the Court?

                 King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                7/12/2021

1         They keep saying "it's an affidavit" and, therefore,
2    they can put it into evidence, but this is not an unquestioned
3    affidavit.  This is an affidavit that was already questioned in
4    another proceeding, and in that proceeding, not only did the
5    judge make a determination that the affidavit was not -- was
6    based on ignorance and a misunderstanding of the facts, but
7    also there were competing affidavits.  In fact, the judge said
8    that there were multiple affidavits that disagreed, but the
9    point -- with what she said, but here's what matters.  What
10   matters is they didn't talk to her and create a new affidavit.
11   They didn't --
12             **MS. HALLER:**  Has Mr. Fink --
13             **MR. DAVID FINK:**  -- work with her.
14             **THE COURT:**  Hang on, Ms. Haller.
15             **MS. HALLER:**  But Mr. Fink --
16             **THE COURT:**  Ms. Haller.
17             **MS. HALLER:**  -- is accusing us of --
18             **THE COURT:**  Ms. Haller.
19             **MS. HALLER:**  Yes, your Honor.
20             **THE COURT:**  Let him finish.
21         Go ahead, Mr. Fink.
22             **MR. DAVID FINK:**  I'm simply going to guess that
23   Ms. Haller is going to say that they did talk to her, and
24   perhaps they did.  The point is that the allegations she made
25   were very effectively refuted and then repeated here in the

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   complaint, repeated in the compliant as though there was

2   nothing, no issue, no issue of concern.  I'm sorry.

3              **THE COURT:**  Thank you.  I understand.  All right.

4              Ms. Haller, you want anything else to add?

5              **MS. HALLER:**  Thank you, your Honor.  I would just ask

6   Mr. Fink if he has spoken to this witness because he is making

7   allegations related to her testimony or anticipated testimony,

8   but I'm not clear if Mr. Fink has spoken to the witness about

9   his conclusions.

10             **THE COURT:**  Okay.  I don't even know that that is a

11  relevant question.

12             **MS. HALLER:**  Because --

13             **THE COURT:**  What do you have to respond to that,

14  Mr. Fink?

15             **MR. DAVID FINK:**  I will respond, I guess.

16             **MS. HALLER:**  May I respond?

17             **MR. DAVID FINK:**  Because I don't think my due

18  diligence is before the Court.

19             **MS. HALLER:**  Well, in an evidentiary hearing you

20  would have an opportunity to examine any of the witnesses that

21  we would bring forward.  So I -- I -- I simply do not

22  understand how you can impugn the credibility of a witness who

23  is not before this Court and go as far as to say that we've

24  provided falsehoods or acted in bad faith in some manner, and

25  that is simply all I'm saying.

Motion hrg.                                    7/12/2021

1          **THE COURT:** All right. Thank you.

2          Mr. Fink, you don't need to respond to that.

3          Mr. Kleinhendler, you don't need to respond to it.

4          The Court's moving on to the Bomer affidavit, and

5     that's set forth at 6-3, ECF 6-3, page ID 1008-10.

6          Now, the Plaintiffs' pleadings allege that Defendants

7     changed votes for Trump and other Republican candidates.  The

8     Bomer affidavit is provided in support of that claim, and,

9     specifically, the affidavit states in part, "I observed a

10    station where election workers were working on scanned ballots

11    that had issues that needed to be manually corrected.  I

12    believe some of these workers had been changing votes that had

13    been cast for Donald Trump and other Republican candidates."

14         There we go.

15         The amended complaint calls this eyewitness testimony

16    of election workers manually changing votes for Trump to votes

17    for the Biden, and, again, the amended complaint calls this,

18    "eyewitness testimony of election workers merely changing votes

19    for Trump for votes to Biden."

20         Question from this Court:  Does an affiant belief

21    that something occurred constitute evidence that the thing

22    actually occurred?

23         Who would like to take that question on from counsel

24    for -- Plaintiffs' counsel or Plaintiffs' counsel.

25         **MR. CAMPBELL:** Again, if that belief is based on

Motion hrg.                              7/12/2021

1   circumstantial or actual physical viewing of that evidence,

2   yes.

3           **THE COURT:**  And it doesn't appear to be because there

4   isn't any -- this affiant, Miss Bomer, does not say -- he says,

5   it's stated "I believe some of these workers," and I think the

6   question becomes also does counsel know what formed the basis

7   for the belief because it certainly is not apparent to this

8   court.  What's the basis of Mr. Bomer's belief that there was

9   something as significant as votes being changed from one

10  candidate to another?  What's the basis of that belief?  He

11  didn't say that he saw it.

12          **MR. CAMPBELL:**  I have to draw the line there, Judge.

13  I'm not so sure that you can say in the world of language that

14  that statement excludes seeing it.  In other words, one can

15  believe it because they saw it but not write it that way, and

16  so I think you have to allow for where language might play a

17  role here in how the thought is expressed.  Now, I'm not saying

18  that it says -- it says that she saw it, but I think this Court

19  is wrong to conclude that it means she didn't see it because,

20  if you see it, that would certainly help you to form a belief.

21          **THE COURT:**  Well, I think it's wrong for an affidavit

22  to be submitted in support -- as evidentiary support if there's

23  been no kind of minimal vetting.  I mean if you -- if you can't

24  determine from the plain language of the affidavit, what am

25  I -- how am I supposed to draw any kind of inference from it?

Motion hrg.                                7/12/2021

 1          **MR. CAMPBELL:**  It's called an evidentiary hearing.

 2          **THE COURT:**  And it's also called -- it's also called

 3  you need to preliminarily -- every lawyer has that duty to do a

 4  minimal amount of investigation before filing evidence or

 5  what's purported to be evidence to this Court.

 6          Mr. Kleinhendler, yes.

 7          **MR. KLEINHENDLER:**  Thank you, your Honor.

 8          We reviewed each one of these affidavits.  We read

 9  them.  We realized they were filed in other proceedings, and,

10  as I said earlier, they purported and were consistent with the

11  findings of our experts and the other information placed before

12  you, and that's -- you cannot -- I propose to you, your Honor,

13  you cannot look at -- you can't nitpick one and one and one and

14  say this, standing alone, has no evidentiary basis.

15          We have an affidavit from Russ Ramsland, in detail,

16  saying that the machines themselves flipped votes, detailed

17  analysis from an expert sworn before this court.  It's,

18  therefore, unremarkable and, frankly, consistent, and now we

19  have an eyewitness who saw it or believes she saw it.

20          So the notion that we did no due diligence is

21  incorrect.  We did a ton of due diligence, and also keep in

22  mind that we are -- we are -- we are proffering this to the

23  Court, and the Court can give little or no weight to this

24  evidence.

25          This is not the whole case, and if we came in with a

Motion hrg.                                    7/12/2021

1    complaint and we had one exhibit, this affidavit, I get it,

2    okay, what are you doing, but we come into court with 960 pages

3    basically the same theme of what we're doing, okay, and this,

4    to us, appears consistent with the narrative, with the

5    evidence, with the expert testimony that we're getting, and

6    that's my response to your specific question on paragraph

7    whatever it was of this affidavit.

8         **THE COURT:**  Thank you.  I'm moving on to another --

9    Mr. Fink, quickly.

10        **MR. DAVID FINK:**  Just very quickly.  This support for

11   no matter what they say goes back to, well, it's consistent

12   with what the experts said, and now they say Mr. Ramsland said

13   that there was evidence that these machines flipped votes.  We

14   haven't talked about that.  I think it's worth talking about it

15   for a moment.

16        Machines cannot possibly flip votes in the state of

17   Michigan.  It is legally impossible.  Machines tabulate votes

18   in Michigan.  They don't have votes in them.  Votes in Michigan

19   are on paper ballots.  They're scanned by machines, they're

20   counted by machines, but the machines can't flip them, and the

21   recount process is the way that you address it.

22        They can't just keep saying they didn't need to do

23   due diligence on any of these affidavits just because they have

24   some subjective belief that some of the tabulating machines

25   could have made mistakes.  If they made mistakes, they'd be

Motion hrg.                                  7/12/2021

1   rejected.

2          At a later time, at an appropriate time, I'll respond

3   to the issue in Antrim County and why that wasn't a hand

4   recount.

5          **MR. KLEINHENDLER:**  Your Honor, if I may add --

6          **THE COURT:**  No, no, no.  Let me -- I am going to ask

7   a follow-up question, sir.

8          Does anyone -- did anybody -- and, again, which has

9   been my focus, did anyone inquire as to whether or not

10  Mr. Bomer actually saw someone change a vote?  Anyone?

11         Okay.  Let the record reflect that nobody made that

12  inquiry, which was central to his affidavit.

13         All right.  I'd like to move on to -- this is going

14  back to Ms. Jacob, the affidavit wherein she -- where

15  Plaintiffs allege that Defendants permitted double voting by

16  persons that had voted by absentee ballot and in person, and

17  one piece of evidentiary support that is provided is the

18  affidavit from Ms. Jessy Jacob, and she, in that, it's stated,

19  "I observed a large number of people who came to the satellite

20  location to vote in person, but they had already applied for an

21  absentee ballot."

22         And the question that I'm asking was:  Jacob, from my

23  view of this affidavit, does not state that these people voted

24  in person and through absentee ballot, correct, because I mean

25  that -- there's a conclusion here that there was double voting?

Motion hrg.                                    7/12/2021

1          The Court is asking where in this affidavit does

2     Ms. Jacob state that persons that she saw vote in person as

3     well as through absentee ballots?

4          Can anyone answer that question?

5          **MS. HALLER:**  Your Honor, I would respectfully submit

6     that we can make these witnesses available for an evidentiary

7     hearing.

8          **THE COURT:**  No, no.

9          **MS. HALLER:**  And the Court at that time can evaluate

10    the witness' testimony.

11         **THE COURT:**  Okay.  Yeah.  You know what, I understand

12    that and I appreciate that, and, again, I will state that my

13    question is going to the minimal duty that any attorney has in

14    presenting a sworn affidavit to the Court for consideration in

15    terms of anything.

16         What is the inquiry that was made in this scenario?

17         And I'm not hearing that -- I've heard nothing.

18         **MR. CAMPBELL:**  Well, Judge, your question there is

19    about the affidavit?  Because the affidavit is as you've read

20    it.  I thought your inquiry was as to the paragraph that was

21    written and not the affidavit so I don't understand how the

22    inquiry about the affidavit would have anything to do with it.

23         **THE COURT:**  Well, you understand, sir, that I am

24    referencing a quote from the affidavit?

25         **MR. CAMPBELL:**  I understand you're referencing her

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

 1  quote.  Now, I don't hear you to take issue with the fact -- I
 2  mean that's certainly not an astounding moment, right, that
 3  some people would show up and ask to vote on the same day even
 4  though they had previously asked for absentee?
 5          THE COURT:  No, it isn't.  It is not an astounding
 6  moment, but the astounding moment here is, is that the affiant
 7  appears to conclude that this is double voting taking place.
 8          MR. CAMPBELL:  I didn't read that part of the -- I
 9  didn't hear you say that part of the affidavit.
10          THE COURT:  Oh, I'm sorry.  I did.  Well, I stated
11  that the Plaintiffs allege that --
12          MR. CAMPBELL:  Right.
13          THE COURT:  -- the Defendants permitted double voting
14  by persons that had voted by absentee ballot and in person and
15  cites, in evidentiary support of that claim, Ms. Jacob's
16  affidavit, the Jacob affidavit.
17          MR. CAMPBELL:  I get that, but, again, so -- but it's
18  in a complaint that makes that allegation that, again, if it's
19  not -- if that affidavit doesn't have to support that claim,
20  that claim may not be good.  There are other bases that is, as
21  you've indicated, the one that they pick for the footnote, if
22  you will, for where it's something to be done, and I think
23  there's inferences that can be drawn, and it should not shock
24  this Court that somebody could show up, after having asked for
25  an absentee ballot, and then decided to show up on game day --

Motion hrg.                                    7/12/2021

1    election day and make the vote, but it shouldn't shock this

2    Court to learn that there are some people who get an absentee

3    ballot vote and then show up and vote again.

4            **THE COURT:**  I don't see any evidence of that.  I

5    haven't -- yeah, it does shock me.

6            **MR. CAMPBELL:**  Again --

7            **THE COURT:**  It shocks me in the sense that --

8            **MR. CAMPBELL:**  What's there evidence of --

9            **THE COURT:**  I haven't seen.

10           **MR. CAMPBELL:**  (Indiscernible.)

11           **THE COURT:**  I don't see any evidence of that.  I'm --

12   again, you can stick with what I'm presenting here.

13           Mr. Fink, you may speak.

14           **MR. DAVID FINK:**  Only very briefly.

15           When this issue was raised by Ms. Jacob, it was

16   responded to.  I don't have the affidavit in front of me.  It

17   was responded to by Chris Thomas, who explained the process in

18   which voting works.

19           People could not vote twice.  If an attempt was made

20   to enter the second vote, the qualified voter file would have

21   reported the problem that somebody had already voted, and

22   there's a process.  It happens.  People forget.  People make

23   mistakes.  But there's a process, and she was no expert.  She

24   was very new to the process.  She came in.  She didn't know

25   what she was looking at, and I don't even know that she's still

Motion hrg.                                    7/12/2021

1    making these allegations, but what I do know is the allegations
2    were refuted.  The judge addressed them, and when the
3    Plaintiffs came back, they did no due diligence to find out if
4    they were true or even possible.
5            I just want to say real quickly that several of the
6    things they claimed here, it isn't just somebody's observation.
7    It's physical impossibility.  They're claiming things that
8    couldn't have happened either by law or fact, and they're not
9    vetting anything in what they filed.  Thank you.
10           **MR. KLEINHENDLER:**  Your Honor, I'd like to respond to
11   that, and this is what I wanted to say before.
12           **THE COURT:**  Briefly.
13           **MR. KLEINHENDLER:**  We're consistently hearing
14   testimony from Mr. Fink as to what factually happened because
15   it's against the law.  Mr. Fink has not been sworn in as a
16   witness here.
17           **THE COURT:**  I'm aware of that.
18           **MR. KLEINHENDLER:**  He's not qualified as an expert,
19   your Honor.  That's all you're getting.
20           Now, I just want to refer to these questions you're
21   asking, and I come back to the same refrain.
22           **THE COURT:**  Hang on for a second before you go any
23   further.  Do you have direct information on the questions that
24   I'm asking?  Because that's the only reason that I would allow
25   you to speak at this point, sir.  I mean did you talk to any of

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1    these affiants?  Why are you -- why are you -- what information

2    do you have?

3              **MR. KLEINHENDLER:**  My point is we talked to experts.

4              **THE COURT:**  Okay.  I understand that.

5              **MR. KLEINHENDLER:**  Okay.  And what they were telling

6    us confirmed what these affiants were telling us.

7              **THE COURT:**  Okay.  You know --

8              **MR. KLEINHENDLER:**  So there's nothing surprising

9    about what these affiants were saying.

10             **THE COURT:**  Thank you, Mr. Kleinhendler.  I've heard

11   that answer before.  I'm taking it under consideration.  Thank

12   you.

13             All right.  I'm going now into affidavits -- we have

14   multiple affidavits that have been submitted by parties

15   pertaining to -- relating to the Plaintiffs' pleading which

16   claims that Defendants counted ineligible ballots, and, in many

17   cases, did so multiple times, and there's a group, if you will,

18   of evidentiary support set forth at ECF Number 6, Page ID 903,

19   Paragraph 94, and it indicates that these are the multiple

20   affidavits from challengers stating that batches of ballots

21   were repeatedly run through the vote tabulation machine.

22             These are affidavits referenced, and they are from

23   Helminen -- this next name I'm not even going to try.  Well, I

24   can try.  Waskilewski, Mandelbaum, the Rose affidavit, the

25   Sitek affidavit, the Posch affidavit, and the Champagne

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   affidavit, as well as the Bomer affidavit.

2          Where is our court reporter?  Andrea -- Ms. Wabeke is

3   okay.  There you are.  Thank you.

4          Okay.  Question, counsel, as relates to this claim.

5          Hang on, Ms. Haller.

6          Did counsel inquire as to why a stack of ballots may

7   be run through tabulation machines more than once?  Not

8   anything to do with experts.  You know, simple question,

9   counsel of record.  Did you make that inquiry, yes or no?

10         Who did?  Raise your hand if you made the inquiry

11  after reviewing this reference in the complaint as to why a

12  stack of ballots might be run through tabulation machines.

13  These were obviously statements that were made or observations

14  that were made, conclusions that were drawn in multiple

15  affidavits.

16         Did anyone ask the simple question as to -- make an

17  inquiry as to why would that happen?  Anyone?

18         **MS. HALLER:**  Yes, your Honor.

19         **THE COURT:**  Thank you, Ms. Haller.  Go ahead.

20         **MS. HALLER:**  Can you, just for clarification, for the

21  record --

22         **THE COURT:**  Yes.

23         **MS. HALLER:**  -- please give me the citations of what

24  we're talking about.

25         **THE COURT:**  Yes.  So I'm talking about the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

 1   Plaintiffs' pleading referenced at ECF Number 6 at Page ID 942,

 2   Paragraph 190g.

 3          **MS. HALLER:**  Okay.  ECF 6, Page 942.

 4          **THE COURT:**  Right.  Page ID 942, Paragraph 190g,

 5   which references Section 2b and 2c.

 6          **MS. HALLER:**  Okay.  Your Honor, would it be a lot of

 7   trouble to put that up on the screen?

 8          **THE COURT:**  Let's see if I can do that.

 9          **MS. HALLER:**  Judge, we haven't downloaded the

10   complaint --

11          **THE CLERK:**  You want to see a copy of the complaint

12   or you want to see these affidavits?

13          **MS. HALLER:**  The Court is asking questions about

14   certain exhibit numbers, which I can't track.

15          **THE COURT:**  Ms. Mandel --

16          **THE CLERK:**  You're citing to the pleadings that --

17   your citation is to the pleading itself?

18          **MS. HALLER:**  It is.

19          **THE CLERK:**  The affidavits would take us several

20   minutes to pull out since there's no indexing by Plaintiffs.

21          **MS. HALLER:**  Is it easier to post it on the screen?

22          **THE CLERK:**  It will take us a few minutes.

23          **THE COURT:**  It will take some time.

24          **MS. HALLER:**  Are you going by names?  Can you give me

25   the names again because they're not numbered --

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1            **THE COURT:**  Let me do a quick check on -- it's

2    referenced as a group of evidentiary support at ECF Number 6 at

3    Page ID 903, Paragraph 94.  Is that section the section wherein

4    these multiple affidavits are referenced, correct?

5            All right.  So those names, Ms. Haller, and that's

6    the operative section I'm referring to is the ECF Number 6

7    document at Page ID 903, Paragraph 94.

8            **MS. HALLER:**  Okay.  Earlier your Honor had said --

9            **THE COURT:**  I did.  I did, and I'm correcting myself.

10   I actually am correcting myself in saying that in Paragraph 94,

11   ECF Number 6 at Page ID 903.  This is all part of the

12   complaint.

13           **MS. HALLER:**  No, I understand, your Honor.  It's just

14   not consistent with the documents as I -- at least as I have

15   them on the ECF filing.  So I'm just trying to get the numbers

16   because I don't have them saved by page number, to be clear.  I

17   have them by ECF number like 06-18, 06-26.  So I'm just trying

18   to find where your Honor might be.

19           **THE COURT:**  Well, if you wrote -- yeah, well, the ECF

20   at Number 6 at Page ID 903.  What is this here?  Bring it down

21   just a little more so I can see the top.  Okay.

22           **THE CLERK:**  This is the paragraph you were citing

23   from, Judge, from the amended complaint.

24           **THE COURT:**  Right.  Yes, it's Paragraph 94, and it

25   references there -- as you can see, Ms. Haller, we're

               King v Whitmer, Case No. 20-cv-13134

Motion hrg.                               7/12/2021

1    highlighting it now -- these are affidavits that are

2    referenced.

3              **MS. HALLER:**  Okay.

4              **THE CLERK:**  It would take us several minutes to pull

5    them up if you need to see them on the screen.

6              **MS. HALLER:**  No.  Thank you for the citation.  I was

7    very confused.  Now I see you're citing to the complaint

8    itself.

9              **THE COURT:**  Oh, yes, each time.  Each time I was.

10             **MS. HALLER:**  I see.  Okay.  Thank you.

11             **THE COURT:**  Yep.  And so my question is whether

12    counsel queried as to why a stack of ballots might be run

13    through tabulation machines more than once, as is claimed in

14    those series of affidavits set forth in Paragraph 94 of the

15    complaint.

16             **MS. HALLER:**  Without disclosing too much attorney

17    work product, as I think we may be, but we certainly had

18    conversations on how the tabulation machines worked.  We

19    certainly did investigations in relation to the tabulation

20    machines.  We went through the Dominion handbook, their

21    manufacturing book.  We went through all of the information

22    posted on the Michigan government website.

23             **THE COURT:**  Okay.  So you saw other explanations as

24    to why this could -- is that true -- that it would not

25    necessarily be a fraudulent reason why this could have

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   occurred?

2         **MS. HALLER:**  I'm not sure I'm clear on your Honor's

3   question.

4         **THE COURT:**  My question is:  The documents that you

5   reviewed that you just kind of referenced just a moment ago,

6   did those documents provide an all -- a reason as to why

7   ballots could be run through the tabulation machines more than

8   once, an explanation --

9         **MS. HALLER:**  Your Honor, the question depends on

10  context.  So if somebody's just testing a machine and they're

11  going through the process of testing it, then you would want to

12  do it multiple times possibly, but if you're talking about

13  within the actual counting or tabulation process, those ballots

14  are never supposed to leave the subject precinct.  Those

15  ballots are not supposed to be put through more than once.

16  Absolutely not.  That would violate Michigan law.

17        So it depends on the context of the question because,

18  of course, outside of the actual election, if you're testing or

19  if you're checking to see if the machine works, that's a

20  different question.

21        **THE COURT:**  All right.  Mr. Fink, did you want to say

22  something?

23        **MR. DAVID FINK:**  Yes, your Honor.  Thank you.

24        First of all, the issue of whether they're not

25  supposed to leave the precinct had nothing to do with what was

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   being asked.  The question was is there, in the ordinary course

2   in counting, a time which ballots would be fed more than once

3   through a tabulating machine, and the answer is an unequivocal

4   yes, absolutely, happens all the time, and there was an

5   affidavit from Chris Thomas that explained the process.  That

6   was filed in -- early on in this matter.

7            Now, what we learned -- what we learned --

8        **MS. HALLER:**  Can you cite for that, Chris Thomas'

9   affidavit, just because --

10        **MR. DAVID FINK:**  There were two.  He filed one

11   affidavit.

12        **THE COURT:**  Can you give that cite?  It was attached

13   to the State Defendants' response.  I think it's Exhibit 2 of

14   the State Defendants' response.

15            Go ahead, Mr. Fink.

16        **MR. DAVID FINK:**  Thank you.  There were two

17   affidavits by Mr. Thomas, and I'm not sure which one that is,

18   but in Paragraph 20 of an affidavit that was filed in the -- I

19   apologize, I don't know which case this was filed in, but

20   Mr. Thomas explained that with these high-speed readers, after

21   they go through, sometimes there's a jam and they have to rerun

22   the ballots.  Sometimes there's one bad ballot in the stack.

23   Sometimes a problem ballot, pulls it out, they have to rescan

24   the ballots.  It happens all the time.

25            But what Ms. Carone didn't understand, and what the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1  rest of these witnesses didn't understand, was when this occurs

2  the election worker cancels the previous count so it doesn't

3  get counted twice.  But if there is a mistake, as I explained

4  earlier, even if there's a mistake, it would mean that more

5  votes were counted in a precinct than voters appeared, and, in

6  the entire city of Detroit, at this TCF Center, there were only

7  111 additional votes over the number of voters.

8         In any one precinct --

9         MS. HALLER:  Your Honor, we object because he is

10  testifying --

11         MR. DAVID FINK:  I'm sorry, I can do this without it

12  being testimony.

13         The point is that anyone knowledgeable in election

14  procedures would know that a discrepancy of more than a dozen

15  votes would jump out, would stick out like a sore thumb.  The

16  so-called experts absolutely should have known that, and there

17  were no such discrepancies.

18         THE COURT:  Anything else, Ms. Haller?

19         MS. HALLER:  Yes.  We object to what counsel just

20  represented.

21         THE COURT:  Yeah, I understand that.  All right.  Let

22  me move on then.

23         The Plaintiffs have alleged in their pleading that

24  Defendants authorized "counting ballots without signatures or

25  without attempting to match signatures and ballots without post

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1   marks."  There are three pieces of evidentiary support that has

2   been provided in support of that allegation.

3           Now, there are three affidavits stating that the

4   affiants witnessed no signature or postmark on the ballot

5   envelopes of some counted ballots.  These affidavits were from

6   Brunell, Spalding -- all right, hang on, Mr. Johnson -- and

7   Sherer.

8           Now, my question is very straightforward, and that

9   is, simply, did any of the affiants indicate that the votes in

10  question, you know, the ballots I guess in question, if they

11  were -- if the vote ultimately was for President Biden such

12  that these affidavits would constitute evidence sufficient to

13  support Plaintiffs' vote dilution equal protection claim?

14          So that means that, as relates to Brunell, Spalding

15  and Sherer, was there an inquiry made by counsel as to whether

16  or not, at bottom, the votes in question were for President

17  Biden such that this representation, if you will, these

18  allegations would constitute evidence to support the vote

19  dilution claim?

20          Who can respond to that?

21          And before Ms. Haller may perhaps have an answer to

22  that, let me ask Mr. Johnson, did you want to respond -- did

23  you -- what did you want to say, sir?

24          **MR. JOHNSON:**  I was attempting to respond to

25  Mr. Fink's prior statement.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                          7/12/2021

1          **THE COURT:**  Okay.  Let me hold you off on that, and

2     I'll give you a moment later.

3          Ms. Haller, did you want to respond to this?

4          **MS. HALLER:**  I'm sorry, your Honor, I had to unmute.

5          I would point to Dr. Briggs' expert report because in

6     there he explains how the absentee ballots would -- that are

7     identified as missing would actually lower the count -- the

8     counted votes, and because those are -- his report does address

9     disenfranchised voters.  So I raise that as a point that

10    relates to this, but as for additional information, maybe

11    Brandon can answer.

12         **THE COURT:**  Did you ever -- all right.  That's fine.

13    I'm sorry, Mr. Kleinhendler.

14         **MR. KLEINHENDLER:**  Your Honor, I have to make a

15    point here.  It doesn't -- we don't have to show in this

16    Paragraph 95, where I think you've only mentioned two or three

17    of I think there might be a dozen affidavits highlighted there,

18    we don't have to show that a vote flipped from Biden to Trump

19    or Trump to Biden.  It is enough under the law that the

20    integrity of the voting was compromised.  That is enough in

21    itself to call --

22         **THE COURT:**  Well, the reason I say -- the reason that

23    I have asked that question is, is because it pertains directly

24    to your equal protection claim.

25         **MR. KLEINHENDLER:**  Exactly right, and that's the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

 1   point I'm trying to make to you.  For the equal protection

 2   claim, we don't have to show a flip.  We can show fraud in the

 3   counting.  It doesn't matter who got the vote.  If we show

 4   that --

 5           THE COURT:  Ultimately, sir, the relief that you're

 6   requesting -- that you requested of the Court was -- it was not

 7   just to decertify the vote.  It was to -- it was to attribute

 8   votes that Plaintiffs believe were mistakenly taken away from

 9   Trump and given to Biden, so that is why I am asking that

10   question.  I think it's a legitimate question, and let me just

11   say this.  It's fine.  Your objection to the question and to

12   the causation here is noted, but -- I don't have to have -- you

13   don't have to argue that point with me.

14           I'll let you finish up your thoughts, sir.

15           MR. KLEINHENDLER:  I'm not -- I'm not trying to argue

16   with you.

17           THE COURT:  No, no, no.

18           MR. KLEINHENDLER:  Not the point I'm trying to make.

19           THE COURT:  Okay.

20           MR. KLEINHENDLER:  The point is we had multiple

21   layers of requested relief, and the question you had,

22   specifically, was where in these affidavits does it show that

23   the malfeasance we've identified flipped the vote, and my point

24   is that's not necessary.  If there's malfeasance, then the vote

25   becomes not countable, and, therefore, you can't certify one

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                7/12/2021

 1  group of electors based on votes that have these type of

 2  problems with them.  You don't have to reach the conclusion

 3  that you have posited, which is show that it flipped from one

 4  side to the other.  That's my point.

 5          **THE COURT:**  Okay.  All right.  Thank you.

 6          Let me go on and ask as a follow up to the allegation

 7  about absentee ballots and, you know, that they had been

 8  counted without a signature, without attempting to match

 9  signatures and without postmarks.  In Michigan -- question:  In

10  Michigan, must absentee ballots be received through U.S. Mail

11  and, therefore, be postmarked to be counted?

12          **MS. HALLER:**  I think your Secretary of State was

13  actually admonished by a court this year because of the

14  guidance that she issued on the process related to absentee

15  ballots, and in that decision by the Court of Claims it was

16  made clear that the Secretary of State did not follow the

17  process as actually required under law, which brings all the

18  absentee ballots, I would submit, into question, as to how they

19  were counted.  You know, so, your Honor, in direct response to

20  your question about the process, we cannot rely on the

21  Secretary of State's guidance.

22          **THE COURT:**  Mr. Fink.

23          **MR. DAVID FINK:**  Your Honor, even now --

24          **THE COURT:**  Mr. Fink, I'm sorry, let me go to

25  Ms. Meingast, and then I'll come to you.

Motion hrg.                                          7/12/2021

1            **MR. DAVID FINK:**  Absolutely.

2            **THE COURT:**  Counselor.

3            **MS. MEINGAST:**  Thank you, your Honor.  I guess I'm

4   not hearing it right, but there was a question.  Absentee

5   ballots this year in November were counted the same as they

6   have been in every other year.  In other words, they had to be

7   received by 8:00 p.m. at the right precinct on election day.

8   There was nothing different in the way we counted absentee

9   ballots this year.

10           There was an earlier case in which Plaintiffs moved

11  for an extension of the 8:00 p.m. deadline in order to receive

12  ballots after 8:00 p.m. and for several days thereafter.  There

13  was an injunction to that effect.  It was undone by the Court

14  of Appeals, and their reasoning was count it the same way we

15  have done for every year on absent voter ballots.  So there

16  wasn't any change in the way absent voter ballots were handled

17  or processed this year.

18           **MS. HALLER:**  And we would just object to any

19  testimony by counsel, especially without citation or evidence.

20           **MS. MEINGAST:**  That would be the published opinion

21  from the Court of Appeals that reversed the injunction.

22           **MS. HALLER:**  Okay.  And thank you.  As far as the

23  Court of Appeals decision, we also have a dissent in that case.

24           **THE COURT:**  All right.  Mr. Fink, quickly, please.

25           **MR. DAVID FINK:**  Yeah, may I speak?

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1            First, the Court's direct question was:  Is a

2   postmark necessary?  Does a ballot have to be mailed?

3            And of course the answer is no.  Ballots are often

4   handed in by hand.  Some of them are handed-in boxes in front

5   of clerk's offices by hand.  Sometimes it's done right across

6   the table, right across the desk in the clerk's office, as we

7   talked earlier, but the most telling part about the answer to

8   the Court's question was that not one of the nine lawyers

9   representing the Plaintiffs interrupted or corrected Ms. Haller

10  when she repeated the misunderstanding that the Secretary of

11  State somehow handles absentee ballots.  In the state of

12  Michigan, the Secretary of State does not touch an absentee

13  ballot.

14           The absentee ballots are sent out, received, and

15  counted by local units of government, not the county, not the

16  state, but local units of government.  To the extent there

17  could have been any misunderstanding, it was corrected early on

18  in the Court of Claims by Judge Cynthia Stevens in the first

19  Trump lawsuit, but after all these months, after all this time,

20  that counsel doesn't understand -- that neither local counsel

21  nor national counsel understands that in Michigan elections are

22  run by local units of government tells the Court that there was

23  zero due diligence performed in the most important --

24  potentially important case ever filed in this state.

25           **THE COURT:**  Thank you, Mr. Fink.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                     7/12/2021

1             Mr. Johnson.

2             **MR. JOHNSON:**  Thank you, your Honor.

3             I just want to take this opportunity to make two

4    points.  I'll start with the most recent point.  Obviously, the

5    *Genetski V Benson* decision, which Ms. Haller referenced, it --

6    you know, it found that the Secretary of State had issued a

7    binding rule.  So whether or not the Secretary of State

8    actually physically handled ballots is irrelevant.  She issues

9    binding guidance.  That was the holding in the case, and that

10   is why it was ultimately found that she failed to apply the

11   proper rule-making process.

12            Second point goes back to Mr. Fink's testimony

13   regarding the Detroit count.  We had affidavits from

14   Commissioner Hartmann, and I forget the name of the other

15   woman, but the two Republican members of the Wayne County Board

16   of Canvassers who attempted to decertify the results of Wayne

17   County.  This goes to the fact of, you know, the discrepancies,

18   the irregularities in Wayne County in general, and the absentee

19   ballot counts in Detroit in particular, and that's where, I

20   believe the number was something like 76 percent of the

21   precincts were out of ballots.  He also discussed earlier

22   problems in the primary.

23            So we have public officials charged with

24   certification of the election, two of which attempted to

25   decertify.  They claimed they faced threats of physical

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                               7/12/2021

 1   violence and harassment.  That explained the initial

 2   certification despite their misgivings, but the public

 3   officials in charge of absentee ballot counting in Detroit went

 4   on record publicly, in testimony, not just with us, describing

 5   the tremendous irregularities in the counts in absentee ballots

 6   in Detroit.  So that is the point I wanted to make.  Thank you.

 7         **THE COURT:**  All right.  Mr. Fink, last word on this,

 8   and then I'm going to move on.

 9         **MR. DAVID FINK:**  Very briefly.  The percentage of

10   precincts out of balance does not mean anywhere near what it's

11   suggested.  If it's 76 percent, we're talking about precincts

12   that are out of balance by one, two, or three votes, not by a

13   lot of votes.  The total out of balance would be the issue, and

14   President Trump lost the state by 154,000 votes.  It was never

15   at issue.

16         Now, regarding those commissioners.  As everybody

17   knows, they tried retroactivity to rescind the decision that

18   they made.  That's -- the courts have -- there's just no point

19   to really get into that issue.

20         The real issue here is that the question is, and to

21   get way back to where the Court was in the first place, the

22   question is these allegations were made about the way votes

23   were counted and is there a basis to say that the absence of a

24   postmark or the failure to compare a signature proves fraud,

25   and there isn't.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                            7/12/2021

 1        **THE COURT:**  Thank you.  I'm ready to move on to the

 2   Larsen affidavit set forth at ECF 6-4, PDF Pages 25-34.

 3             Plaintiffs state in their pleadings that Defendants

 4   authorized, "systematic violations of ballot secrecy."  One

 5   piece of evidentiary support that they provide is the Larsen

 6   affidavit.

 7             The amended complaint specifically states,

 8   "Mr. Larsen observed that some ballots arriving without any --

 9   observed some ballots arrive without any secrecy sleeve.  These

10   ballots were counted after visual inspection, whereas many

11   ballots without a secrecy sleeve were placed in the problem

12   ballot box.  He found this, quote, perplexing and raised

13   concerns that some ballots were being marked as, quote, problem

14   ballots based on who the person had voted for."

15             I would like to know if counsel would agree that

16   Larsen being perplexed and his stated concern do not serve as

17   evidence that ballots were placed in the problem box because of

18   who the vote was for.  I mean can anyone agree to that,

19   Mr. Campbell?

20        **MR. CAMPBELL:**  I can't agree to what you have said,

21   that somehow the word "perplexed," as describing his

22   circumstances, undercuts any of the evidence that's there, and

23   it should be perplexing that somebody is picking the troubled

24   ballots or the questioned ballots based on who's being voted

25   for.

Motion hrg.                                           7/12/2021

1          **THE COURT:**  And you think being perplexed by an

2     observation is sufficient enough to get into court?  It's

3     sufficient to support an affidavit?  Do you feel that that

4     constitutes evidentiary support, sir?

5          **MR. CAMPBELL:**  Absolutely in this case without --

6          **THE COURT:**  Wow, okay.

7          **MR. CAMPBELL:**  Matters that are there -- I'm shocked

8     to hear a suggestion to the contrary.

9          **THE COURT:**  Yeah.  Okay.  And you're -- and this is

10    based on your theory that all of these affidavits need to be

11    viewed in context; right?

12         **MR. CAMPBELL:**  All of them need to be viewed in

13    context, of course, your Honor.  How else would you do it?

14         **THE COURT:**  I'm looking at the -- I'm looking at

15    them, in fact, individually.  I understand --

16         **MR. CAMPBELL:**  Right, not in context.  That's very

17    clear, Judge.

18         **THE COURT:**  Good, good, because I feel that every

19    affidavit that is going to be submitted in support of any of

20    these claims, there has to be a minimal belief on the part of

21    counsel that these allegations are rooted in fact, and --

22         **MR. CAMPBELL:**  And I think that's very clear.

23         **THE COURT:**  Excuse me, excuse me.

24              If you have language in an affidavit that is vague,

25    and it's clear that this language is -- this is based on his

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    own belief.  He sees something that looks a little different

2    for him so he's perplexed by it.  That's quite a low standard

3    for submission of an affidavit, but I will move on.

4              **MR. CAMPBELL:**  He's perplexed --

5              **THE COURT:**  My plan --

6              **MR. CAMPBELL:**  No, no, your Honor, he's perplexed

7    because there appears to be a choice on which ballots get

8    questions and which don't.  That -- again, if this is the

9    subjective nature in which this Court is going to view the

10   sanctions questions, which usually are objective, what can I

11   do?  But objectively, seriously, the word "perplexed" is what

12   you think is worth the time and effort of the -- all the

13   lawyers, your staff on this proceeding to talk about sanctions?

14             **THE COURT:**  And I asked you:  Did you really think

15   that it was worth it to file in support of your claims that

16   have taken up the time, energy, and space over these last

17   several months?  So I would caution you to do not question my

18   procedure.  I'm here to question what you've done, sir.  I'm

19   here to evaluate.  Hear me out --

20             **MR. CAMPBELL:**  And I am not a potted plant.

21             **THE COURT:**  I'm here to evaluate --

22             **MR. CAMPBELL:**  I am not a potted plant.  I will

23   represent my client --

24             **THE COURT:**  That is quite fine, but you -- don't

25   worry about what I'm doing at this point.  You are here to

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    answer my questions.

2            Mr. Fink.

3            **MR. DAVID FINK:**  Judge, it's probably not my place to

4    say this, but I'm concerned by the disrespect for the Court

5    that Mr. Campbell is showing, particularly in light of the

6    history of this litigation and how patient the Court has been.

7    I want to make a quick comment that the reason that "perplexed"

8    is such a significant reference in this particular affidavit.

9    This is the affidavit of an individual who claims to have

10   served as an assistant attorney general, claims to have some

11   expertise in this area, claims to understand election law.  For

12   him to then just say he's perplexed by something rather than

13   actually explaining where he sees some violation of law or

14   practice.  We thought that was significant when we saw it a

15   long time ago.

16           My concern goes back to the same issue all along, and

17   I'll get out and I'll stop here, which is just some diligence

18   should have been applied.  What diligence is due might be a

19   question for the Court, but not when there's no diligence at

20   all, and, in this case, Mr. Larsen's affidavit had already been

21   reviewed by Judge Kenney, and, in many respects, rejected and

22   counsel should have been, I believe, to our case, I believe

23   that counsel should have undertaken a serious inquiry to

24   determine the facts before making all of these allegations.

25           **MS. HALLER:**  Mr. Fink, we are available for an

Motion hrg.                                    7/12/2021

 1    evidentiary hearing, as we stand by every affidavit and
 2    document in this complaint.  We did not file false statements.
 3    We made the documents clearly identified as they were.  We did
 4    not alter documents, and any allegations that we have done
 5    something that is improper really lacks foundation, and I would
 6    just generally say that going through each affidavit or each
 7    paragraph in the complaint, we'll do so as your Honor requests.
 8    I would, just for clarity, for efficiency sake, ask that we --
 9    if we can put it up side by side with the hearing so we can see
10    where the paragraph is that we're talking about.

11            **THE COURT:**  We'll try to do that.  I have to admit
12    that I'm a little surprised that counsel is coming to a
13    sanctions hearing and does not have the documents that they
14    themselves filed in fronts of them to be able to answer these
15    questions, but, be that as it may, we will try to do what we
16    can in terms of screen sharing.

17            Yes, Mr. Campbell.

18            **MR. CAMPBELL:**  Judge, you're aware that you began
19    this sanction hearing by saying it was your announcement of a
20    show cause here today.  These types of questions that you've
21    asked were not raised by the Defendants in their proceedings,
22    and, again, there's been a lot of opportunities for them to
23    submit things.  So I don't believe that statement about
24    surprise or suggesting in any way that we've come here
25    unprepared to look at the things that the Court wants us to be

                  King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   directed towards, and, again, you have had all sorts of

2   opportunities to speak with the people who were responsible for

3   putting together this complaint and all of the attorneys who

4   stand behind its filing.

5              **THE COURT:**  All right.  Thank you.

6              I'm going to now go to the affidavit of

7   Mr. Gustafson.  That's set forth at ECF Number 6-4 at PDF Pages

8   48-49.

9              Now, Plaintiffs allege that unsecured ballots arrived

10  at the TCF Center loading garage, not in sealed ballot boxes,

11  without any chain of custody and without envelopes, after the

12  8:00 p.m. election day deadline.  They provide three pieces of

13  evidentiary support, and I want to look first at the Gustafson

14  affidavit.

15             That affidavit states, "Large quantities of ballots

16  were delivered to the TCF Center" -- here we go.  Here we go.

17  "Large quantities of ballots were delivered to the TCF Center

18  in what appeared to be mail bins with open tops.  These ballot

19  bins and containers did not have lids, were not sealed and did

20  not have the capability of having a metal seal.  The ballot

21  bins were not marked or identified any way to indicate their

22  source of origin."

23             My question to counsel at this point is:  What is

24  counsel's understanding of Michigan's requirements as to the

25  container ballots and how they are to be transported after

Motion hrg.                                    7/12/2021

1    they've been removed from the ballot drop boxes?

2           In other words, what do you understand about the

3    requirements here for ballot bins?

4           **MS. HALLER:**  Your Honor.

5           **THE COURT:**  Yes.

6           **MS. HALLER:**  I would just say we do not purport to be

7    experts in Michigan's process, but I would point out that these

8    exhibits are -- these Larsen and Gustafson are exhibits to a

9    filing in the *Constantino* case, which is attached to the

10   complaint.  It's one of the exhibits that I believe your Honor

11   is referencing.  Note that these are exhibits for the Court and

12   information that has been found in another court of law just --

13          **THE COURT:**  As has been stated, Ms. Haller, a few

14   times, and again --

15          **MS. HALLER:**  We're going to a different document,

16   your Honor.

17          **THE COURT:**  Well, I mean yeah, but we're still

18   dealing with the same kind of scenario with affidavits having

19   been filed.  Are you saying this particular affidavit was filed

20   in the *Constantino* case?

21          **MS. HALLER:**  Yes.  I'm saying this is Exhibit 6-4B.

22   I believe it's B, as opposed to Larsen, which is A, and then

23   there's a C, in that these are exhibits to a filing by

24   *Constantino,* which the whole thing was attached.

25          **THE COURT:**  Okay.  Again, I think, again, the Court

                 King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1   and counsel have a different view, and that's clear throughout

2   this hearing, as to what obligations, and, again, I really just

3   want to clarify that the Court -- I know that none of us are

4   experts in election.  We're not necessarily experts in Michigan

5   election process, but the bottom line is is that if you're

6   going to file an affidavit, in this Court's view, there should

7   be some general understanding of the process such that when you

8   see a statement by an affiant that you're willing to submit as

9   evidentiary support, is that not why an affidavit is being

10  filed?

11          If you have not asked at least the minimal questions,

12  you know, I find that problematic, and I'm just trying to

13  determine the level of inquiry that has been made here, and I

14  really do think that that's a misunderstanding that counsel has

15  in terms of where the Court is going, and I -- and I won't

16  entertain, at this point, any argument as to why you would

17  think that that's an inappropriate inquiry, because I feel that

18  it is an appropriate inquiry.

19          Mr. Fink?

20          **MR. DAVID FINK:**  Yes, your Honor.  This allegation by

21  Mr. Gustafson -- as stated by Mr. Gustafson, occurred in the

22  *Constantino* case, and so, in that case, on November 11th, Chris

23  Thomas -- Christopher Thomas did file an affidavit explaining

24  that there is no requirement that ballots be transported in

25  sealed ballot boxes.  He's not aware of any jurisdiction in

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1   Michigan sealing these ballots prior to election day and

2   employees bringing the ballots would bring the ballots to the

3   TCF Center, consistent with chain of custody.  They weren't

4   just left out someplace, but that's a factual statement.  I

5   could be wrong.  I don't think I am, but I could be wrong, but

6   what's important they certainly were on inquiry notice.

7           Once this affidavit was filed by Mr. Thomas, once

8   they'd seen this other litigation, two weeks before they filed

9   their case, all they had to do is ask and if they'd asked any

10  election official in Michigan, any clerk in Michigan would have

11  told them we don't even have sealed ballots for transferring

12  ballots around.  After the vote count, yes, you seal the

13  ballots, but before the vote count, you can't seal the ballots,

14  and they're not sealed and they're not transported that way.

15  It's them saying "we are not experts" tells us all we need to

16  know.  They didn't get experts.  They're not experts, and,

17  nonetheless, they threw this information in front of the Court,

18  hoping something would stick, in the most important litigation

19  imaginable.

20           **THE COURT:**  Thank you, Mr. Fink.  Mr. Campbell?

21           **MR. CAMPBELL:**  I hear Mr. Fink not taking any issue

22  with the facts that are described in the affidavit.  I'm not --

23           **MR. DAVID FINK:**  Right, they don't mean anything.

24  I'm sorry, I didn't mean to respond.

25           **MR. CAMPBELL:**  They mean something.  Somebody has to

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   say it, right, and all you did is produce another affidavit

2   that said, yeah, that's what was done, but until the first

3   person said it, the second person didn't comment on it, and I

4   think you can take some notice that things that are unsealed,

5   that things are unprotected, the things that are not -- that

6   are handled in the manner that even Chris Thomas says -- you

7   know, I never met Chris Thomas.  He's not here.  We don't even

8   have the chance of going over his affidavit in this kind of

9   detail.  Love to do that in an evidentiary hearing, but, again,

10  all this is is a fact of what somebody saw, and, in fact, it

11  appears that you're here to testify that it's true.  So how is

12  it -- what more diligence was needed to produce a truthful

13  affidavit from you?

14          Apologize, I should not have asked him the question.

15          **THE COURT:**  All right.  Let me --

16          **MR. DAVID FINK:**  I can speak to it, only if the Court

17  wants to.

18          **THE COURT:**  Yeah, let me say, again, I feel like I

19  have to respond again that, you know, I need to point out here

20  that my concern is is that counsel here has submitted

21  affidavits to suggest and make the public believe that there

22  was something wrong with the election.  Isn't that what this is

23  all about?  That's what these are affidavits are designed to

24  do, to show that there was something wrong in Michigan.  There

25  was something wrong in Wayne County.  These are the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    observations of what took place at the TCF Center.

2              I am simply taking those affidavits, which counsel

3    submitted, in support of the general proposition that there was

4    fraud in the Michigan election.  I'm looking at that, looking

5    at the language of the affidavit and saying is that what this

6    even says?  What level of inquiry have you made to even know --

7    I mean, you know, what -- for a person who doesn't have a lot

8    of experience, maybe they -- some of them, of course, I know

9    the poll challengers went through a training, and so -- but the

10   bottom line is is that if you see something and you're not that

11   familiar with the process, it doesn't always mean that what

12   you're seeing is what you think you're seeing.  It doesn't

13   matter that -- it doesn't always mean that what you see as

14   being odd, that it is in fact odd if you don't know the

15   process.

16             All I'm asking, counsel, is if you took the time to

17   look at those affidavits and say, well, wait a minute, there

18   might be something here in the sense of is that part of

19   Michigan's process?  I want -- that's my question:  Were those

20   -- that type of inquiry made?  And it's a germane question,

21   because the premise of this lawsuit is is that Michigan

22   election was fraudulent.

23             All right.  So, Mr. Kleinhendler, I'm sorry, sir,

24   Mr. Kleinhendler.

25             **MR. KLEINHENDLER:**  Yes, your Honor.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

 1          **THE COURT:**  You may comment briefly, sir, and then

 2   I'm going to move on.

 3          **MR. KLEINHENDLER:**  I can't say -- I reviewed some of

 4   these affidavits.  I had people working with me reviewed every

 5   single one.  I believe we did speak to some of them.  I think

 6   we did speak to some of the attorneys, at least that was my

 7   understanding, and, with regard to your specific question, it's

 8   just basic knowledge when you're transporting a bunch of

 9   documents in an unsealed container that can be tampered with

10   from a remote location, that raises a suspicion.  Whether it's

11   required under Michigan law or not, it's completely irrelevant.

12   We're not saying here even that Michigan poll workers knew that

13   they might be doing something wrong.  We have alleged here that

14   there was things going on that maybe even some of the workers

15   themselves unknowingly let slide, and so I want to make that

16   point clear.  If you're bringing something from far away and

17   it's open, that raises an issue.  Your Honor, if I handed you a

18   can of Coke that was open and I told you don't worry I didn't

19   drink from it --

20          **THE COURT:**  These are elections that have been run in

21   the state of Michigan for years.  The analogy is certainly not

22   on point, sir; it is not.

23          **MR. KLEINHENDLER:**  The second point -- well, the

24   second point I'd like to raise is the notion that we filed this

25   lawsuit as some kind of public relations.  That is not correct.

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   We filed this lawsuit on behalf of clients, who were electors,

2   who asked us to file this lawsuit.  What the public did with it

3   or didn't do it with it is beyond our control, and I reject,

4   categorically, the mantra you've heard in the papers and you're

5   hearing again now that we did this as a publicity stunt.  I

6   reject that wholeheartedly, your Honor.  We did not.  We filed

7   it on behalf of Plaintiffs who asked us to file it, and I'd

8   like to make that point clear.

9          **THE COURT:**  Okay.  And, you know, again, the analysis

10  will always be -- part of the analysis, in certain of the

11  sanctions that are available to the Court, is was the purpose

12  for which the lawsuit was filed, was it an improper purpose,

13  and this is also -- you know, I think that things can also be

14  drawn from the amount of effort that you put into a lawsuit in

15  terms of what are you really trying to do, you know, and I've

16  not drawn any conclusions at this point, but I am trying to,

17  again, drill down --

18         **MR. KLEINHENDLER:**  Your Honor, I just want to leave

19  you --

20         **THE COURT:**  Excuse me, Mr. Kleinhendler.

21         **MR. KLEINHENDLER:**  -- with --

22         **THE COURT:**  I have not finished.

23         I am trying to drill down as to the level of inquiry

24  that was made by counsel in these multiple affidavits, all

25  right, and there is no way that I could not do that and then

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                7/12/2021

1   put myself in a position where I could accurately assess

2   whether behavior here has been sanctionable, and when I say

3   here, I'm talking about through the course of the litigation.

4           All right.  I am going to move on, counsel, to the

5   Meyers' affidavit and Meyers -- part of the amended complaint,

6   it is stated that Meyers -- I'm sorry, let me give you, it's

7   ECF 6-3.  This is the Meyers affidavit at PDF Pages 130-131.

8   Per the amended complaint, Plaintiff states, "Meyers

9   observed" -- Meyers "observed passengers in cars dropping off

10  more ballots than there were people in the car."

11          In Michigan, may people other than the voter drop off

12  a ballot?  Is that allowable in Michigan, to have someone,

13  other than the person who has voted, drop off a ballot for

14  someone?  That's my question.

15      **MR. CAMPBELL:**  The answer is that you can deliver

16  somebody else's ballot.

17      **THE COURT:**  Right.

18      **MR. CAMPBELL:**  If it's legally voted, it should be

19  legally counted.

20      **THE COURT:**  All right.  I want to point everyone's

21  attention to the next affidavit, which is the Ciantar --

22  certainly, I'm certain I botched this person's name.  I

23  apologize.  I will spell it.  It is C-i-a-n-t-a-r, set forth at

24  ECF Number 6-7 at Page ID 1312-14.  There it is right there.

25          And the amended complaint states that Mr. Ciantar,

Motion hrg.                                    7/12/2021

1   independent -- "independently witnessed," while walking his

2   dog, a young couple deliver three to four large plastic clear

3   bags that appeared to be, "express bags," as reflected in

4   photographs taken contemporaneously, to a U.S. postal vehicle

5   waiting.  The use of clear express bags is consistent with

6   the -- there's a whistleblower complaint that's been referenced

7   in the context of this lawsuit.  I have not ever seen any

8   underlying documents, but it's a whistleblower suit by a U.S.

9   Postal Service worker, Jonathan Clark.

10          Putting aside the fact that Plaintiffs have not

11  provided any evidence, as I just stated, regarding the postal

12  service whistleblower claim, here are a few excerpts from the

13  Ciantar affidavit which are now on the screen.

14          "I witnessed a young couple pull into the parking lot

15  of post office and proceed to exit their van, had no markings,

16  and open up the back hatch and proceed to take three to four

17  very large clear plastic bags out and walk them over to a

18  running postal service vehicle that appeared as if it was

19  'waiting' for them."

20          Let me go further.  "There was no interaction between

21  the couple and any postal service employee, which I felt was

22  very odd.  They did not walk inside the post office like a

23  normal customer to drop off mail.  It was as if the postal

24  worker was told to meet and stand by until these large bags

25  arrived."

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1          "As you can see in the pictures," the affidavit goes

2    on to say, "the bags were clear plastic with markings in black

3    on the bag, and on the inside of these clear bags was another

4    plastic bag that was not clear, could not see what was inside.

5    There were markings on the clear bag and what looked like a

6    black security zip tie on each bag, as if it were tamper

7    evident, as if it were a tamper type of device to secure the

8    bag.  This looked odd.  What I witnessed and considered that

9    what could be in those bags could be ballots going to the TCF

10   Center or coming from the TCF Center."

11          Now, this is quite a -- I don't -- I don't think I've

12   really ever seen an affidavit that has made so many leaps.

13   This is really fantastical.  So my question to counsel here is:

14   How can you, as officers of the Court, present this type of an

15   affidavit?  This is pure -- is there anything in here that's

16   not speculative, other than the fact that the individual saw

17   individuals with plastic bags?  They don't know what were in

18   them, happened to be located at the post office, and then

19   there's a leap made there.  Someone answer that question for

20   the Court.

21          Ms. Haller.  Thank you.

22          **MS. HALLER:**  Yes, your Honor.  The witness is stating

23   or setting forth exactly what he observed and his information

24   that he bases it on and he includes pictures.

25          **THE COURT:**  What --

Motion hrg.                                        7/12/2021

1          **MS. HALLER:**  He does not say more.  He does not say

2     less than what he knows to be true.  It is a true affidavit.

3     It is a person with some information, and he is setting forth

4     that information.  When we put the case together, we put forth

5     a pattern of evidence that shows fraud.  So it's a pattern of

6     evidence that comes together, and this is one piece of a

7     pattern.  He is testifying, in his sworn statement, as to what

8     he knows to be true.  He saw these plastic bags.  He's

9     explaining what he saw, and he takes pictures of them.

10         **THE COURT:**  Okay.

11         **MS. HALLER:**  I would submit, your Honor, that it's

12    not fantastical.  It's simply what he knew to be true.

13         **THE COURT:**  You think that he is actually thinking --

14    do you think, by the language in the affidavit, Ms. Haller,

15    that he is actually stating that he believes his conclusions to

16    be true when he says things like "could be, it appeared as if

17    they might have been waiting for him."  Where is the truth in

18    that?  I mean this is pure speculation.

19         All right.  Let me move on.

20         **MS. HALLER:**  It's in the --

21         **THE COURT:**  Is there any -- Ms. Haller.

22         **MS. HALLER:**  Your Honor --

23         **THE COURT:**  Let me ask you this question:  Was there

24    any information -- what information did the affiant have to

25    make any of these conclusions in his affidavit?  I mean

Motion hrg.                                    7/12/2021

1    we're -- stay with me.

2            **MS. HALLER:**  He was speaking in the present tense and

3    he took photos.  So he saw what he saw and he documented it as

4    he did, and we don't typically rewrite what an affiant says.

5            **THE COURT:**  But don't we also as -- doesn't counsel

6    also have an obligation to evaluate that and say, "What is this

7    actually going to prove?"  He's -- he has made conclusions

8    based upon what he's observed, but there is clearly, within

9    this affidavit, nothing to support those conclusions.  This is

10   what he has -- what else is there?  This is anybody driving

11   down a street and seeing somebody with plastic bags.  You

12   automatically jump to the point, and, most importantly,

13   Ms. Haller, counsel, what is your duty here?  You said you

14   don't rewrite the observations --

15           **MS. HALLER:**  (Indiscernible.)

16           **THE COURT:**  Absolutely not.

17           **MS. HALLER:**  But your Honor --

18           **THE COURT:**  Ms. Haller, let me ask this final

19   question and then I'll let you speak.

20           My question to you is:  At what point do you have

21   that duty to say, you know what, there's really not enough

22   here?  You don't feel that -- I mean at what point do you say

23   that?

24           **MS. HALLER:**  May I respond, your Honor?

25           **THE COURT:**  Yes, please do.

                     King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **MS. HALLER:**  I would simply submit that we identified

2   a witness as a potential source in a complaint to support

3   information that we would then hope to call that person as a

4   witness who would testify, would be anticipated to be testify

5   in accordance with what he or she had stated in a declaration

6   or affidavit.  This particular witness did not jump to any

7   conclusions and made that clear in his affidavit, and he did

8   believe -- I believe he believed that he saw ballots, but I

9   think he was hesitant to actually express that, and his

10  hesitancy comes through in his declaration, but there's nothing

11  untruthful about what he says.

12          **THE COURT:**  All right.  I saw another hand up.  All

13  right.

14          **THE CLERK:**  It was Ms. Powell, your Honor.

15          **THE COURT:**  Ms. Powell, yes, and then I'll get to

16  you.

17          Ms. Powell, yes, ma'am.

18          **MS. POWELL:**  Yes, we filed a massive and detailed

19  complaint in federal court that doesn't even require us to

20  append affidavits to.

21          **THE COURT:**  Right.

22          **MS. POWELL:**  The very fact that we filed 960 pages of

23  affidavits with the complaint shows extraordinary due diligence

24  on our part.  Virtually, every question the Court has raised

25  about these affidavits calls into question the veracity of the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   affiants, and the only way to test that is in the crucible of a

2   trial or an evidentiary hearing, which the Court has denied at

3   every stage.

4           **THE COURT:** All right. Well, let me say volume,

5   certainly for this Court, doesn't equate with legitimacy or

6   veracity. So please understand that is certainly my position.

7           Mr. Kleinhendler.

8       **MR. KLEINHENDLER:** Yes, your Honor.

9       **THE COURT:** Very briefly, sir.

10      **MR. KLEINHENDLER:** Yes.

11      **THE COURT:** Very briefly.

12      **MR. KLEINHENDLER:** Yes, with regard to this specific

13  affidavit.

14          **THE COURT:** Yes, sir.

15      **MR. KLEINHENDLER:** We have amassed evidence in

16  Pennsylvania, and we've actually -- we can present it to the

17  Court, I think we have, where there was proof positive evidence

18  of United States Postal Service collusion and malfeasance in

19  connection with the delivery of ballots.

20          **THE COURT:** Oh, so that's why you thought that was --

21      **MR. KLEINHENDLER:** I'm giving you my impression on

22  this specific affidavit, where it seems to you to appear

23  bizarre to, you know, why -- you know what's the big deal, and

24  I'm telling you, your Honor, in good faith, that prior to

25  filing this, we have evidence that these very clear reports

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1    that, in connection with Pennsylvania, there was malfeasance in

2    connection with the United States Postal Service.  So when I

3    looked at this or when I heard about it, it did not appear

4    unusual to me.

5           Now, we could have -- you know, we could have a

6    discussion of what that evidence is.  I don't want to get into

7    it now, but I want to make the point for the record, we had

8    clear, very credible evidence that the United States Postal

9    Service, believe it or not, had mishandled, had done illegal

10   acts in connection with the ballots that they delivered in the

11   2020 presidential election.

12          **THE COURT:**  Got it.  Mr. Fink.

13          Let me just ask one last question of you.  The

14   reports are based on this kind of spec -- well, I just -- let

15   me ask you this:  Did you -- is there a reason that you did not

16   submit that other evidence on the postal service, which is

17   quite, quite an inflammatory claim?  Is there a reason you did

18   not submit any evidence on that?

19          **MR. KLEINHENDLER:**  Your Honor.

20          **THE COURT:**  Yes, sir.

21          **MR. KLEINHENDLER:**  I believe at the time that we

22   filed this complaint, we just had reports.  We had one

23   whistleblower, who I believe we had interviewed.  It wasn't yet

24   hard enough, your Honor, what I would call hard evidence.

25   However, however, should there be an evidentiary hearing at

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   this point, we have the who, what, and where of what happened

2   in Pennsylvania.

3                 **THE COURT:**  All right.

4                 **MR. KLEINHENDLER:**  What and where.

5                 **THE COURT:**  Mr. Fink, quickly.

6                 **MR. DAVID FINK:**  Your Honor, if I may.  We are in the

7   state of Michigan; we are not in Pennsylvania, and in the state

8   of Michigan, they made this allegation based on some paranoid

9   delusions of some witness, who never even gets to a punchline.

10  The fact is, if they've got evidence, and he says they've got

11  evidence, it should have been in the complaint.  If they don't

12  have evidence or if they don't have direct allegations, then

13  they shouldn't throw out these miscellaneous defamatory and,

14  frankly, phony allegations.

15                Now, this might all be true.  If you read it closely,

16  what it says is absolutely nothing, but it does fuel the fires

17  of the online conspirators and conspiracy theorists who want to

18  reprocess and use this to support their efforts, and that's

19  what happened here.  We'll get back to that later, but this was

20  not an accident.  This was not a case -- I'm sorry, let me just

21  finish this one thought.  I apologize, your Honor.

22                If they don't make out a legal theory with the facts

23  they're presenting, it's right for the Court to ask why they're

24  presenting the facts, and we'll get to that at the end.

25                **THE COURT:**  Let me -- I'm very close to counsel

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1   wrapping up, and what that will mean for you is is that you'll

2   have an opportunity to, very briefly, address the Court on

3   anything that you might want to clarify, just a closing

4   statement.  Please do not rehash, but based upon what has been

5   discussed here today, but before I do that, I wanted to address

6   Ms. Lambert Junttila.  Are you still with us?

7            **MS. LAMBERT:**  Yes, your Honor, I'm here.

8            **THE COURT:**  Thank you so much.  And so in your latest

9   filing, you state that "Plaintiffs' counsel had a First

10  Amendment right to bring this election challenge and,

11  therefore, they could not be subjected to sanction."  You

12  further state, Counselor, that "The U.S. Supreme Court cases

13  that support this argument are just too numerous to mention,

14  and any attempt to string cite them here would be insulting to

15  all involved."

16           I will not be insulted.  I will not be insulted.  If

17  you can tell me whether the First Amendment prevents sanction

18  -- well, let me just start here in terms of is there a point

19  where a lawyers' conduct becomes sanctionable and is no longer

20  protected by the First Amendment?  Because you seem --

21           **MS. LAMBERT:**  Your Honor --

22           **THE COURT:**  -- to be quite --

23           **MS. LAMBERT:**  Thank you, Judge, and I appreciate the

24  opportunity.  The purpose of this lawsuit, I heard the Court

25  address it earlier, whether or not it was an improper purpose

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    or to -- the premise of it was to show that the Michigan

2    election was fraudulent.  I think that these suits are critical

3    to our country to show that every vote counts and ensure that

4    every vote counts as it's intended to count.  It's not a

5    partisan issue to me.  Everyone should be able to bring

6    lawsuits to ensure election integrity, and the court system is

7    the appropriate place to bring those suits.

8            With regards to this particular case, the Court

9    didn't hear much about my role.  I filed the notice of appeal

10   before the Court.  Sidney Powell was lead counsel on this case.

11   I've spoken with her no more than two times for brief

12   conversations.  I've had a number of conversations with Howard

13   Kleinhendler, and all pleadings and briefs were prepared by

14   Howard and Sidney.  Even e-mail responses to opposing counsel,

15   I would check with them to see how they wanted me to respond

16   and then I would respond.

17           I viewed my role as the local attorney.  It was my

18   understanding that they would apply to be admitted to the bar

19   in the Eastern District of Michigan.  I know this case was only

20   alive for essentially seven days before this Court before it

21   was appealed.

22           So does that answer the Court's question?

23           **THE COURT:**  No, and thank you for letting me say that

24   and give you -- let me restate.  Again, pertaining to your

25   position that Plaintiffs' counsel had a First Amendment right

Motion hrg.                                        7/12/2021

1   to bring this election challenge, my question to you, because I

2   find that the brief itself is extremely broad as to what you

3   consider to be an attorney's First Amendment right, in their

4   capacity as an attorney, in a courtroom, and my question to you

5   is:  Is there a point where a lawyer's conduct becomes

6   sanctionable and is no longer protected by the First Amendment,

7   or are you speaking of a right that is completely unbridled?

8   Help me.

9        **MS. LAMBERT:**  Your Honor, I think that an attorney's

10  obligation is to be an advocate for their client, and as long

11  the attorney is putting forth accurate pleadings, accurate

12  information before the Court, which I have done, that, no, it

13  is protected by the First Amendment and it would be

14  unconstitutional, and the Court is the appropriate place to

15  redress grievances.

16       **THE COURT:**  Let me just -- I want you to take some

17  time and look at -- this is a case from the Sixth Circuit.

18  It's the *Mezibob* case, which you, I'm certain are familiar

19  with, *versus Allen* at 411 Fed 3rd 712.

20        And the Supreme Court has noted that "It is

21  unquestionable that in the courtroom itself, whatever right to

22  free speech an attorney has is extremely circumscribed.

23  Furthermore, it appears that no circuit court has ever granted

24  an attorney relief under the First Amendment for this narrow

25  category of speech, because an attorney, by the very nature of

Motion hrg.                                    7/12/2021

1  his job, voluntarily agrees to relinquish his right to free

2  expression in the judicial proceeding.  Our Sixth Circuit sees

3  no basis for concluding that free speech rights are violated by

4  a restriction on that expression.  In filing motions and

5  advocating for clients in court, an attorney is not engaged in

6  free expression.  She is simply doing her job."

7          And I think that is -- I was concerned, and you have

8  not done anything to put aside my concerns, Ms. Lambert, that

9  there is in fact, that is a circumscribed right that an

10  attorney has when they are acting in a capacity as a lawyer in

11  a courtroom.

12          All right.  So that is, counsel, where I'm going to

13  leave my questions here at this point, and what I would like to

14  do is to give counsel an opportunity, and I'll tell you the

15  order in which this may proceed, an opportunity to just give

16  some closing remarks and let the Court know if there's anything

17  that you would want to clarify, and I also would like to ask

18  each of you, if you feel that there is any basis upon which a

19  supplemental briefing would be helpful to this Court, based

20  upon what has been discussed today.  Please think long and hard

21  about that, because we've killed a lot of trees here, and so we

22  just -- we really want to know, you know, if you think it is

23  something that would be beneficial to the Court.  All right.

24          So let me begin with hearing from Plaintiffs'

25  counsel, and I'm going to start with Mr. Campbell.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                7/12/2021

1          **MR. CAMPBELL:**  So I understand, your Honor, this is

2     the Defendants' motion but you're asking me to go first.

3          **THE COURT:**  Yeah, I am.

4          **MR. CAMPBELL:**  I'm prepared to do so.

5          **THE COURT:**  I figured that you would.

6          **MR. CAMPBELL:**  Thank you.  The right to vote, quote,

7     the right to vote is among the most sacred rights of our

8     democracy, and, in turn, uniquely defines us as Americans.

9          Judge, I'm sure you like that, because you wrote

10    that.  That was the opening line of your 36-page opinion and

11    order denying the motion for injunctive relief, and I

12    appreciate the Court's point, but, respectfully, that statement

13    stops short of capturing what actually uniquely defines us as

14    Americans.

15         History shows us that the totalitarian regimes and

16    authoritarian rulers gladly let their subjects vote.  Nazi

17    Germany had plebiscites.  The Soviet Union held regular

18    elections, and even Hugo Chavez was happy to let folks vote for

19    him and touted himself as being popularly elected.

20         What separates our republic from the totalitarian and

21    authoritarian regimes is our system of checks and balances

22    created by the founders and preserved by generations.  That

23    guarantees each citizen a right to petition and redress

24    grievances and to challenge to the judicial branch the

25    executive's conduct of an election.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1        To ensure that each of our votes count, every vote must be

2   legally and properly counted.  It is this system of voting,

3   counting, and challenging that the public can draw confidence

4   from, and they usually do.

5        This Court has recognized and articulated the importance

6   of both capturing legal votes on a properly counting them.

7   That's the *Stein V Thomas* case cited in our briefing, and I

8   gave the cite earlier as well, where this Court said, "The

9   fundamental right invoked by the Plaintiffs the right to vote

10  and to have that vote conducted and counted accurately is the

11  bedrock of our nation.  Without elections that are conducted

12  fairly and perceived to be fairly conducted, public confidence

13  in our political institutions will swiftly erode."

14       This lawsuit was an opportunity to challenge whether it

15  was fairly conducted and to have a decision from this Court on

16  whether it was and then to move forward.

17       Twenty years ago in *Bush v Gore*, the United States Supreme

18  court, for the first time in our nation's history, exercised

19  its indispensable role in ensuring fair and accurate counts in

20  the election of a president.  The Court did not invent that

21  power for itself.  The power and authority to control the

22  outcome is firmly rooted in the Constitution.  It did, however

23  for, the first time, use its power, and it did so all because

24  one party petitioned for relief.  The relief in 2000 in *Bush v*

25  *Gore* was an order from the Court to the state of Florida to

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                        7/12/2021

1    stop counting votes.

2         In its most straightforward terms, this lawsuit asks, and

3    especially the injunctive relief asks that this Court order the

4    State of Michigan, the Secretary of State, to start counting

5    the votes and for the Governor to hold off announcing a winner

6    until the court-ordered count was completed.  Your order

7    labeled the request to be "stunning in scope" or "breathtaking

8    in its reach."  That came earlier.  I think Mr. Fink provided

9    us that also.

10        Respectfully, securing the promise of the cherished right

11   to vote by having your vote counted with only other legally

12   cast votes should not be considered so extraordinary.

13   Certainly, to my clients' clients, it was viewed as

14   self-evident and fair.  The suit and injunction were not

15   designed to disenfranchise a single lawful vote, rather, they

16   were filed to seek the relief promised in the Constitution,

17   given in *Bush v Gore* and premised on the good faith desire of

18   my clients and their clients.

19        This Court disagreed with the timing of the filing of this

20   case.  It was, however, filed as soon as it was capable of

21   being filed.

22        There may be some additional briefing you'd like on that.

23        It was filed after the deadline in the state statutes, but

24   it was largely filed as a federal claim and the due process

25   grounds.

Motion hrg.                                    7/12/2021

1       This Court applied laches to the request for an

2  injunction, but, as this Court knows, that is an affirmative

3  defense and does not usually diminish the quality of the claim

4  made.  This Court found no standing, but, in doing so, adopted

5  the dissent and not the majority from an Eighth Circuit Court

6  of Appeals case in denying the injunctive relief.  It cannot be

7  that this Court would hold that lawyers and litigants will be

8  sanctioned for essentially not knowing how another circuit's

9  law would be interpreted before it.

10       The claims here failed to win the injunction.  They failed

11  before you, and neither the Sixth Circuit, nor the U.S. Supreme

12  Court, disturbed your ruling.  That is the law of this case,

13  and my clients, the lawyers, all understand and respect that.

14  This Court wrote eloquently, "The Plaintiffs' alleged injuries

15  do not entitle them to seek their requested remedy, because the

16  harm of having one's vote invalidated or diluted is not

17  remedied by denying millions of others their right to vote."

18       That's Page 25 of your opinion.

19       This sentiment, and I think it's fair to describe it as

20  that, because the Court doesn't rely on stare decisis.  It

21  doesn't cite a case for this point, can be read differently in

22  the case law of the United States Supreme Court.  Good lawyers,

23  my lawyers, could easily read a different view in *Bush v Gore*,

24  when the Court there said, "The right to vote is protected in

25  more than the initial allocation of the franchise.  Equal

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1  protection applies as well to the manner of its exercise.

2  Having once granted the right to vote on equal terms, the state

3  may not later arbitrarily or disparagingly in treatment value

4  one person's vote over that of another."

5       And that's 531 U.S. 98 at 104 and 105.

6       The Plaintiffs are electors and voters.  Your ruling can

7  be fairly read to say that diluting one vote might be okay or

8  even some votes.  This concept of one vote might cost others

9  theirs.  My clients and their clients read the precedent

10 differently.  That should not be sanctionable.

11      City of Detroit argues in their brief that the Plaintiffs

12 bringing the action raised doubts in minds of millions of

13 Americans about the legitimacy of the 2020 presidential

14 election.  So let's get this right, part of the executive is

15 saying that court filing somehow create doubts.  The fact is

16 that folks doubted this election.  It happened.  Folks doubted

17 the 2016 election.  We saw in *Stein versus Thomas*.  Folks

18 doubted the 2000 election, *Bush v Gore*, and I grew up, as many

19 ever us, did hearing the rumors, that were more than doubts,

20 about the 1960 election.

21      Leaving aside that the doubts come from the way that the

22 executive conducted its vote and gathered those votes for

23 counting, Defendants simply have it wrong.  This case was

24 driven by doubts arising from the eyewitness accounts and the

25 statistical evidence, and it was merely part of the necessary

Motion hrg.                                    7/12/2021

1    and proper process intended to settle such doubts.

2         They followed the precedent.  They followed *Common Cause*

3    *Georgia versus Kemp*, and they brought you statistical evidence

4    and they brought you witness declarations, but, still, doubling

5    down, the State says, in ECF 105, "The terrible byproduct of

6    Plaintiffs and their counsel's efforts is reflected in January

7    insurrection of our nation's capital."  Civil complaints do

8    not foment revolution.  Bringing claims based on affidavits

9    from those who were there and others who were able to study the

10   available information does not provoke insurrection.

11        Dismissing eyewitnesses that the Defendants label, in

12   their pleadings here, as uneducated and denying access to the

13   courts to those same citizens who seek to have their petitions

14   heard and grievances redressed is what is dangerous, and it is

15   contrary to the promise and guarantees of our republic.

16             **THE COURT:**  All right, Mr. Campbell.  Thank you.  Let

17   me ask a question, sir:  Is there anything that you think that

18   you would like to submit?  Do you think that there will be any

19   benefit to a supplemental brief on behalf of Plaintiffs'

20   counsel?

21             **MR. CAMPBELL:**  Your Honor, yes is my answer to that.

22             **THE COURT:**  What's the issue so I can see if I would

23   agree with you, sir?

24             **MR. CAMPBELL:**  Well, you have highlighted various

25   portions of affidavits and asked them for context and for an

Motion hrg.                              7/12/2021

1    understanding.  You've essentially grabbed several, and, again

2    I hope you don't find this as an unfair example, but it's my

3    view, you've held us puzzle pieces, and you've asked us where

4    does this fit?  Where does this fit?  I think we ought to have

5    the opportunity to show you the cover of the box that shows

6    where those pieces fit.  I'm sure that would be helpful.

7              THE COURT:  Okay.  Let me say this.  Let us continue.

8    Mr. Buchanan is there anything, sir, you'd like to say on

9    behalf your client, Ms. Newman?  I understand, sir, your

10   position that she did not have a lot of involvement in this

11   matter.

12             MR. BUCHANAN:  That's all I would have, your Honor.

13   She didn't sign any pleadings.  She never made an appearance.

14   There was no intent for her.  She was a contract lawyer, 1099

15   employee basically, and her role was very limited, and although

16   Mr. Fink pointed out he sent the motions for sanctions to

17   Ms. Powell at that address, she never received those, and she

18   was never given the opportunity, obviously, to make any

19   decision of how to proceed or not proceed.  I got into this

20   case just recently because she just received notice of this

21   hearing.

22             THE COURT:  Let me ask you --

23             MR. BUCHANAN:  So --

24             THE COURT:  I'm sorry, go ahead.

25             MR. BUCHANAN:  That's it.  Her role was very limited.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1            **THE COURT:**  All right.  Thank you, Mr. Buchanan.

2            Mr. Fink, let me ask you a quick question:  Are you

3     disputing notice requirements as relates to Mr. Buchanan's

4     client?

5            **MR. DAVID FINK:**  Absolutely, we sent the letter --

6            **THE COURT:**  No, no, no, you don't have to.  Thank you

7     so much.

8            What I would like to do is give you, Mr. Fink, an

9     opportunity to provide a supplemental brief on this whole issue

10    of who knew -- you know, who received notice of your moving for

11    sanctions, and I would give anyone who feels that they have not

12    received the notice an opportunity to file a supplemental brief

13    on that, all right, and we can talk about time frame.  I don't

14    want to be unfair.

15           **MR. CAMPBELL:**  Your Honor, might I make a suggestion?

16           **MR. BUCHANAN:**  I have one quick comment.  I'm not

17    disputing to Mr. Fink's assertion that he sent his motion to

18    Sidney Powell's office.  The thing is my client was working

19    from home as a 1099 contract employee.  So you know, as a legal

20    matter, whether that constitutes notice, I don't know.  I'm

21    just saying that -- and I'm not questioning Mr. Fink's

22    representation at all.  I'm just saying that she never received

23    them after that.

24           So she played -- had no role in like whether to go

25    forward or not in this case, or, you know, the Safe Harbor

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                          7/12/2021

1    thing, and, most importantly, your Honor, I'm emphasizing -- I

2    don't know Mr. Fink's disputes this -- she worked five hours on

3    the matter.  She played a very limited role.  So I don't think

4    Rule 11 covers that level of involvement.  Thank you.

5            **THE COURT:**  Mr. Fink.

6            **MR. DAVID FINK:**  Your Honor, we can file a brief --

7    supplemental brief.  It will just indicate what we did do.  I

8    believe that we used the address on the pleadings.  We'll see.

9            **THE COURT:**  Okay.  So let me do this right.  So, you,

10   Mr. Fink, I am asking that you file a supplemental brief

11   identifying those individuals who you believe have received

12   notice of sanctions and then -- and the time frame in which

13   those notices were -- that notice was provided, and then

14   whoever is subject of that brief thing can also respond.

15           **MR. DAVID FINK:**  Your Honor, it would be helpful, and

16   I think probably save some paper and time for everybody, if we

17   could just find out -- no argument is necessary, but which

18   Plaintiffs' attorneys claim or believe they did not receive

19   notice so we'll only address the ones that say they didn't get

20   notice.  Mr. Wood said something.

21           **THE COURT:**  Right.  Mr. Wood.  So he's going to be

22   able to -- and Mr. Campbell is representing Mr. Wood, correct?

23           **MR. WOOD:**  Yes, your Honor.

24           **MR. CAMPBELL:**  If anybody is capable of doing that,

25   but, yes, Judge.

Motion hrg.                                         7/12/2021

1           **THE COURT:**  Okay.  All right.

2           **MR. WOOD:**  Judge, what I would say is, based on the

3    fact that I discern from today's hearing that my position may

4    be somewhat unique to the others, I'd like to have an

5    opportunity, and I will do this in conference with

6    Mr. Campbell, and I may have to get an independent counsel to

7    file formal documents and pleadings for me to seek a dismissal,

8    based on lack of jurisdiction and lack of a factual basis upon

9    which to bring a Rule 11 or a Section 1927 action against me.

10   So I'd like to be able to address that.

11           I'd also like to be able to address this issue of

12   notice.  I've already indicated I did not receive it.  So I'd

13   like to have a couple of weeks, because if I have to get

14   separate counsel, that will take sometime to get them up to

15   speed.  I would say this, that if you have all the Plaintiffs'

16   lawyers here, and if you ask them whether I asked to provide

17   substantive input into the pleadings, I think they'll tell you

18   no; whether I actually provided, they'll tell you no; whether

19   they asked me to, they'll tell you no; whether I had any

20   involvement in preparing the affidavits --

21           **THE COURT:**  I'm not going --

22           **MR. WOOD:**  -- they'll say no.

23           **THE COURT:**  Yeah, that's fine, Mr. Wood.  I'm not

24   going to do that.  What I am going to do, sir --

25           **MR. WOOD:**  If we don't have it here today, then I'm

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   entitled to an evidentiary hearing and due process, because the

2   evidence will show that there is no factual basis upon which

3   this Court can sanction me --

4          **THE COURT:**  I'm giving you an opportunity --

5          **MR. WOOD:**  -- from an evidentiary standpoint.  I

6   haven't had an opportunity for an evidentiary hearing --

7          **THE COURT:**  And the Court --

8          **MR. WOOD:**  And I didn't have anything to do with the

9   drafting of the pleading.  I'm sorry.

10         **THE COURT:**  Before I give you an opportunity for an

11  evidentiary hearing, I don't know that I will be doing that, I

12  would allow you an opportunity to file a brief stating your

13  position, all right, and you know, because you're --

14         **MR. WOOD:**  I'm just saying --

15         **THE COURT:**  Because you are in a bit of unique

16  position in that you might need to have separate counsel, I'm

17  going to give you a little bit longer to submit, and I will

18  give you -- I can't -- you know, I'll give you -- I'll give you

19  two weeks to submit something to this Court setting forth your

20  position, and we'll take it from there, all right?

21         **MR. WOOD:**  Thank you, your Honor.

22         **THE COURT:**  You're welcome, sir.

23         Let me go on to -- so, Mr. Fink, you're clear?

24  You're going to go ahead -- yes, I would like for you to go

25  ahead and -- you wanted me to just see who you needed to

Motion hrg.                                    7/12/2021

1  include in your supplemental briefing.  So who, of the

2  attorneys that are at this hearing, who, by hand show, who is

3  contesting the receipt of notice?

4          And so we have Mr. Kleinhendler.

5          **MR. KLEINHENDLER:**  Your Honor, I want to be clear,

6  your Honor.

7          **THE COURT:**  Yes, please.

8          **MR. KLEINHENDLER:**  I am contesting receipt of notice,

9  pursuant to Federal Rules of Civil Procedure 5, which is the

10 service that is required for a Rule 11 notice.  We did not

11 receive, I don't believe, Rule 5 service, and none of us, at

12 least I didn't, waive it.  So I want to preserve that, your

13 Honor, for the record.

14         **THE COURT:**  All right.  So you've heard that.  Anyone

15 else?  Mr. Wood?  Yes, Mr. Wood, we have you, sir.

16         Ms. Powell, you are also contesting notice?

17         Unmute, please.

18         **MS. POWELL:**  Yes, your Honor, on the same basis as

19 Mr. Kleinhendler.

20         **THE COURT:**  Thank you.

21         **MR. DAVID FINK:**  So --

22         **THE COURT:**  And I'll let you ask a question.  Let me

23 just get the head count.

24         Mr. Johnson, you, too sir?

25         **MR. JOHNSON:**  Yes, your Honor, and on the same

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   grounds as Mr. Kleinhendler just asserted.

2              **THE COURT:** Go ahead, Mr. Fink.

3              **MR. DAVID FINK:** All I wanted to be clear about is

4   are these attorneys saying they did not receive, by first class

5   mail and/or e-mail, what we sent, or are they saying what they

6   received was inadequate notice because they were entitled to

7   some other type of service? That's important because that

8   changes how we brief this. Apparently, Mr. Wood and Ms. Newman

9   claim they had no idea because they didn't get actual notice,

10  but I think Mr. Kleinhendler is saying that he didn't -- he

11  wasn't satisfied with the form of the notice.

12             **THE COURT:** Mr. Kleinhendler?

13             **MR. KLEINHENDLER:** Yes, I received an e-mail, your

14  Honor. I received the mailing, yes, of what they mailed, your

15  Honor. In our opposition, we argue, and I don't want that to

16  be waived by your questioning here, we argued that the Rule 11

17  motion had other procedural defectiveness. For example, they

18  bundled other arguments in the same motion. They served a

19  notice without the brief that was ultimately filed --

20             **THE COURT:** We have Safe Harbor briefing already.

21             **MR. KLEINHENDLER:** Yes, yes. All I'm -- the point

22  I'm trying to make here, your Honor, is I don't want to waive

23  any of that Safe Harbor briefing by your questioning. I just

24  want to raise the point that there was no, in my view, there

25  was no Rule 5 service, which is required for a Rule 11 motion.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    That's it.  But I did get the e-mail.  I did get the first

2    class mailing of what they mailed.

3            **THE COURT:**  All right.  There's no waiver here.

4    You're not waiving anything.

5            All right.  Ms. Powell?

6            **MS. POWELL:**  Yes, your Honor.  I simply can't verify

7    actual notice today, but I will undertake the research and

8    advise on that later.

9            **THE COURT:**  All right.  Would that involve a phone

10   call to Mr. Fink or you would rather speak through your

11   submission?

12           **MS. POWELL:**  I'll speak through our submission.

13           **THE COURT:**  Okay.  All right.  And, Mr. Johnson,

14   you're taking the same position that Mr. Kleinhendler is

15   taking; is that correct, sir?

16           **MR. JOHNSON:**  Yes.

17           **THE COURT:**  That you received it but it's -- it's not

18   just the receipt of it that you're challenging, correct?

19           **MR. JOHNSON:**  I received an e-mail.  I can verify

20   that.  I don't know if I received the first class mail.  So I

21   guess I need to verify that as well but the -- you know, the

22   service issue that he raised, yes, I'm making the same claim

23   there.

24           **THE COURT:**  Okay.  All right.  Clear, Mr. Fink?

25           **MR. DAVID FINK:**  Yes, very.  Thank you, your Honor.

                    King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **THE COURT:**  Thank you.  All right.  Before we go

2   further to hear these kind of winding -- I'm sorry, closing

3   remarks, Ms. Lambert, I'm going to allow you to submit two

4   cases for me, if don't mind.

5          **MS. LAMBERT:**  Sure.

6          **THE COURT:**  That speak on the unbridled protection

7   that the First Amendment offers to an attorney.  So I'm looking

8   for that.

9          **MS. LAMBERT:**  Thank you, Judge.  I'd also like the

10  opportunity to prepare a supplemental brief regarding a number

11  of issues that were addressed by the Court today.  Today was

12  not set for an evidentiary hearing of the witnesses, and I'd

13  request one regarding these witnesses, as well as new witnesses

14  with new evidence that support the pleadings, your Honor.

15         **THE COURT:**  You can file that.

16         **MS. LAMBERT:**  Thank you, Judge.

17         **MR. WOOD:**  Judge, this is Lin Wood again.  I hate to

18  butt in again.  I appreciate the two weeks.  Could I indulge

19  the Court to allow me to have two weeks from the receipt of

20  transcript of the hearing today?  Because if I do have to

21  engage new counsel, I think, in fairness, they're going to have

22  to review the transcript from today, as well as, obviously, the

23  pleadings that have been filed --

24         **THE COURT:**  I'm going to decline --

25         **MR. WOOD:**  -- (indiscernible) from the date of the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1    transcript --

2         **THE COURT:**  Sure.  Yeah, I'm going to decline that

3    request.  We need to kind -- we're going to take this step by

4    step.  I need to first see what it is that you're claiming, and

5    I do not want to delay that aspect of it, because it's going to

6    have implications for how quickly we can really just address

7    the sanction motion.  I would just ask, sir, that you work with

8    what you have.  I know -- you know, and reach out and try to

9    obtain counsel, if in fact you feel that that's what is

10   appropriate.  Because I'm not going --

11        **MR. WOOD:**  I --

12        **THE COURT:**  Go ahead.

13        **MR. WOOD:**  No, no.  I'm just saying I would feel like

14   if somebody came to me and said would you represent me in

15   connection with this matter, they would first want to know what

16   happened today, and so I'm just asking for the time to have the

17   transcript to be available to someone that might be interested

18   in looking at it, because, obviously, I don't want to jump in

19   asking a lawyer to do something without knowing, you know,

20   exactly what the status of the matter is, and, today, most of

21   this would not address the issues that I believe were pertinent

22   to my situation, but some parts of it would, and so that's the

23   reason I ask for the request.

24        I don't know how long it takes to get the transcript.

25   I certainly don't want an inordinate delay.  That's why I was

Motion hrg.                                    7/12/2021

1    hoping we might just go through the lawyers today and verify I

2    was not involved, but I'll do whatever your Honor wants to me

3    to do.  I'm just asking for a reasonable time.

4            **THE COURT:**  Yeah, I'm going to give you the 14 days.

5            Ms. Powell.

6            **MS. POWELL:**  I believe all the lawyers need time to

7    review the transcript and consult with our counsel before we

8    know what supplemental briefing might be needed and

9    appropriate.

10           **THE COURT:**  I don't know if I really agrees with

11   that.  You're working through -- you all have retained counsel

12   is that your position, Mr. Campbell?  I think 14 days -- 14

13   days for everybody, all right, and that would include -- we

14   will try to do whatever we can to expedite the provision of the

15   transcript, but I don't want that to be a delay.  So everyone

16   would have 14 days to submit supplemental briefing.

17           Now, I will tell you what I've done here is is that

18   I'm still trying to limit what you will provide a supplemental

19   briefing on.  I don't need to be, you know, supplied with

20   arguments that have already been made.

21           Ms. Powell, did you want to say something?

22           **MS. POWELL:**  Yes, your Honor.  We need to be able to

23   consult with counsel after this hearing and the record of this

24   hearing before we can properly provide supplemental briefing.

25           **THE COURT:**  Fourteen days is out the gate.  That's

Motion hrg.                                    7/12/2021

 1    where I am right now, 14 days.  If counsel feels that they need

 2    more time because of a delay -- not even a delay, but because

 3    of the amount of time it would take to prepare the transcript,

 4    I will consider it, but I urge you to do as much as you can

 5    without that transcript.  So there we have it.

 6          Who's next?  Doesn't look like anybody.

 7          All right.  So we're going to go back to the order in

 8    which we were proceeding.  So Mr. Buchanan has already spoken

 9    his concerns about his client.  Is there anything else that you

10    want to say?

11          **MR. BUCHANAN:**  No, your Honor.  Thank you very much.

12          **THE COURT:**  All right.  And Ms. Lambert Junttila, is

13    there anything else you would like to say?  I already asked for

14    you to submit two cases, and, Madam, just, please, keep your

15    remarks short.  You all have had ample opportunity -- and I

16    should say you have availed yourselves of the opportunities,

17    you know, through briefing, and I really don't need a wrap up

18    kind of closing remarks that rehashes your views.

19          Where is Miss Lambert Junttila?  Where are you?

20          **MS. LAMBERT:**  I'm here, your Honor.

21          **THE COURT:**  There you are.

22          **MS. LAMBERT:**  I didn't hear the Court's question.

23          **THE COURT:**  My question is:  Do you feel there's

24    anything else that you need to provide to this Court in order

25    to get me closer to making a decision, anything that you feel

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1  that there's a supplemental briefing --

2          **MS. LAMBERT:**  I'm sorry, I thought the Court already

3  ruled on that, and I apologize.  I thought the Court ruled that

4  I could file a supplemental brief regarding issues that were

5  brought up today and the cases that the Court asked me about.

6          **THE COURT:**  Okay.  I'm going to limit -- I'm

7  really -- I really feel it's in everyone's best interest, you

8  know, to not go over the top, if you will, and that's really

9  not a legal term, but I don't need -- can we agree on a limit?

10         **MS. LAMBERT:**  Your Honor, would you like a page

11 limit?

12         **THE COURT:**  Yes.

13         **MS. LAMBERT:**  Okay.  What page limit would the Court

14 like me to do?

15         **THE COURT:**  Ten, no more than ten.

16         **MS. LAMBERT:**  Thank you, Judge.

17         **THE COURT:**  Okay.  Good.  For everyone.  All right.

18         **MR. WOOD:**  What if we have an affidavit, that would

19 not be over the 10-page limit, would it?

20         **THE COURT:**  You can attach an affidavit.  That would

21 not count.  That would not go toward the page limit.

22         Yes, who is speaking?  Mr. Campbell?

23         **MR. CAMPBELL:**  Don Campbell, yes.  On your proposed

24 10-page limit, your Honor.  You addressed more than 10 items

25 and 10 affidavits that, respectfully, I'd ask to at least have

Motion hrg.                                    7/12/2021

 1  a 25-page limit.

 2          **THE COURT:**  You know what, I'm going to give you the

 3  10-page limit.  You start writing and then you come back and

 4  ask me if you think you need more, really.  That's my decision,

 5  all right.

 6          **MR. CAMPBELL:**  Thank you, your Honor.

 7          **THE COURT:**  All right.  Now, let me -- is

 8  Ms. Gurewitz still on the line?

 9          **MS. GUREWITZ:**  Yes, your Honor, I am.

10          **THE COURT:**  Ms. Gurewitz, would you like to be heard?

11          **MS. GUREWITZ:**  Yes, I would like to say on behalf of

12  the MDP and the DNC, Democratic National Committee, that the

13  briefs filed by Mr. Fink and the arguments made by him, as well

14  as the briefs filed by the attorney general on behalf of

15  Governor Whitmer, more than demonstrate that sanctions are

16  warranted here, and we would request that you order sanctions

17  against all of the attorneys who have failed to exercise their

18  responsibility.

19          **THE COURT:**  Thank you, Miss Gurewitz.

20          Mr. Paterson, are you still on the line, sir?  It

21  seems to be that you are.  Would you like to say anything in

22  closing?

23          **MR. PATERSON:**  I am, your Honor.

24          **THE COURT:**  Would you like to say anything in

25  closing?

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1          **MR. PATERSON:**  I would, just briefly.  Mr. Campbell

2     indicated that they did not intend to foment revolution or

3     insurrection by this filing but merely foment partisan

4     advantage I presume, and I think that has been achieved by the

5     use of the 982 pages of affidavits from a federal court filing.

6          It's important, it's important that it was filed in a

7     federal court and under the judicial process.  That's how it

8     will be cherry picked.  The 982 pages will be interpreted

9     throughout as a partisan advantage and cherry picking of each

10    particular or any particular fact will be utilized for that

11    partisan advantage.  To me, that is the abuse that this filing

12    has caused.  It is the abuse of the judicial system, and it

13    seems to me that the grant of a motion for sanctions is

14    critical to reestablishing and minimizing the damage this

15    filing has done and the use of the judicial system in

16    attempting to support a partisan advantage.  So I would ask

17    that the Court grant this motion.

18          **THE COURT:**  Thank you, Mr. Paterson.

19          Mr. Fink.

20          **MR. DAVID FINK:**  Thank you, your Honor.  Before I

21    begin, I'd like to say, just broadly, a quick overview of what

22    I would like to do.  I would like to respond.  I will respond

23    to what Mr. Wood indicated, as the Court recall, we said we'll

24    save that to the end.  I will respond to what Mr. Wood

25    indicated regarding his nonparticipation.  I also do want to

Motion hrg.                                    7/12/2021

1   address Mr. Rohl's affidavit, because that's something that we

2   have never briefed or discussed, and, then, finally I'll

3   conclude, but before I do that --

4        **THE COURT:**  Before you -- before you begin, I have a

5   question for you regarding Mr. Wood's -- his position.  Is it

6   necessary, do you think, sir, to take care of that now, given

7   you're going to be the supplemental briefing on this?  Is this

8   dealing with participation in the case?

9        **MR. DAVID FINK:**  Yes, I can limit it to a very few

10  words.

11       **THE COURT:**  All right.

12       **MR. DAVID FINK:**  I'll limit it to a very few words.

13  I appreciate that, your Honor.

14       I'm not certain what our supplemental briefing will

15  involve.  Are we going to be -- will we be responding -- of

16  course I'm going to brief on the notice issue.  We'll do that

17  up front.  We'll do that quickly.  Then the question is I'm

18  assuming we respond to their supplemental briefing?

19       **THE COURT:**  If you need to, yep, you can.

20       **MR. DAVID FINK:**  Okay.  What I'm suggesting, though,

21  is maybe that's the time that I address in writing the issues

22  regarding Mr. Wood.  I'm trying to avoid creating confusion for

23  the Court.

24       **THE COURT:**  Good.  I'm going to issue an order after

25  this hearing is done, and it will be laid out in terms of time

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    frames and exactly how I want you all to proceed, but go ahead.

2            **MR. DAVID FINK:**  Thank you, your Honor.  Your Honor,

3    at the outset, before I speak on the substance that we talked

4    about, there's one personal matter that I want to address.

5            **THE COURT:**  Go ahead.

6            **MR. DAVID FINK:**  And that is with the Court's

7    indulgence -- well, this is important, your Honor, if I may.

8    With the Court's indulgence, I want to take a moment to honor

9    the memory of my late partner, our late partner, Darryl

10   Bressack.  As some parties here are aware and some are not,

11   Darryl Bressack had pulled the laboring oar on most of the

12   briefs filed in this case, and, tragically, Darryl died

13   suddenly from a heart attack on the night of January 24th,

14   right in the middle of these proceedings.  In fact, we had a

15   reply brief we filed on January 26.

16           Darryl was an attorney who took his oath very

17   seriously.  He was a brilliant, dedicated, passionate, and

18   ethical lawyer, and he cared so deeply about the work that he

19   did.  I miss him for many reasons, but today he's in all of our

20   hearts in this office and at the city, because we know how

21   deeply he felt about this matter, and I only wish that he could

22   be here today, and I appreciate the Court's indulgence so I

23   could say that.  It's been on my mind for days.

24           **THE COURT:**  Certainly.

25           **MR. DAVID FINK:**  Thank you, your Honor.  Now, I will

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   limit my response regarding Mr. Wood.  The reason I need to

2   talk about it a little bit is it ties into the Rohl affidavit,

3   and that's this, Mr. Rohl filed an affidavit, and when I say he

4   filed the affidavit, he prepared an affidavit.  He signed the

5   affidavit.  It was filed in this case on behalf of all the

6   Plaintiffs, and it was filed by Ms. Junttila.

7           Now, in that affidavit, he tells us, point blank,

8   that the litigation was in, in his words, spearheaded by Sidney

9   Powell and Lin Wood, and while those are his words -- I'm

10  sorry.

11          **THE COURT:**  I'm sorry, I was telling Mr. Campbell

12  that I would not allow him to speak until you're done.

13          **MR. DAVID FINK:**  Thank you.  Now, while those are

14  Mr. Rohl's words, his words were submitted to the Court by

15  Ms. Lambert Junttila, and none of the lawyers, whose names

16  appear on these pleadings, contested anything in his affidavit.

17  Now, Mr. Rohl, as of now, is represented by the same lawyer who

18  represents Lin Wood, who represents Sidney Powell, who

19  represents all of the Plaintiffs' counsel.  I think we have to

20  assume that when something is filed, a representation is made

21  by one of the attorneys in this case, we have a right to

22  believe that we can rely on that.

23          What's happened here is -- and just to be clear, I

24  understand Mr. Campbell is an expert in ethics.  So he

25  certainly would not represent Mr. Rohl and Ms. Powell and

Motion hrg.                              7/12/2021

1   Mr. Wood if their positions and interests were adverse, and

2   this didn't just -- representation didn't start during this

3   hearing today.  They filed their appearance a little while ago,

4   and the responses on the motions were filed in February.  We've

5   been following this case for months.  They've been following it

6   for months, and nobody's corrected this.

7          Now, what's happened in this case is very

8   frustrating, and that is the Plaintiffs have played a very

9   strange game of passing the buck.  Mr. Rohl and Mr. Junttila

10  and Mr. Hagerstrom say they're not responsible because someone

11  else prepared the documents for filing.

12         **THE COURT:**  Now, Mr. Fink, let me stop you.  I

13  appreciate your advocacy here, but I mean you're going to have

14  an opportunity -- I'm giving you that opportunity, sir, to

15  bring it up in the brief, and the reason that I'm stopping you

16  is because it's going to be difficult for your statements to be

17  said and me not give the other attorneys an opportunity to

18  respond, and I really want to be fair, and so I would just ask

19  you to wrap that aspect of your remarks up, sir.

20         **MR. DAVID FINK:**  Okay.  We can -- regarding the Rohl

21  affidavit, without advocating, I would just point out that in

22  that affidavit, he does indicate that he was to hold the fort

23  while -- until a pro hoc vice application was accepted, and of

24  course was never filed because it doesn't apply.

25         I will move beyond that and we'll leave that for

                  King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                7/12/2021

 1  briefing later, and, instead, I'd like to conclude more

 2  broadly.

 3          **THE COURT:**  Thank you.

 4          **MR. DAVID FINK:**  And that is this:  Today, your

 5  Honor, we are all grateful that the Court is holding this

 6  hearing, because today is a very important day.  It's been six

 7  months -- a little over six months since our nation faced what

 8  threatened to be the greatest constitutional crisis since the

 9  Civil War.  On January 6th, that insurrection, which occurred

10  in the Capitol, which horrified most of us, maybe not everyone

11  on this screen, but most of us when we watched it, and that

12  insurrection can be directly, directly linked to the lies that

13  were spread by the attorneys in this litigation.  Shielded --

14          **MR. WOOD:**  Your Honor, I object --

15          **MR. DAVID FINK:**  Shielded by --

16          **MR. WOOD:**  Your Honor, I object to that type of

17  speculation.

18          **THE COURT:**  Okay.

19          **MR. DAVID FINK:**  I since suggested --

20          **THE COURT:**  Hang on --

21          **MR. WOOD:**  -- person who doesn't want to be accused

22  unfairly.

23          **THE COURT:**  Hang on.

24          **MR. DAVID FINK:**  I haven't even stated your name yet,

25  but I will.

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1            I'm sorry, your Honor.

2                  (Indiscernible cross-talk.)

3            **THE COURT:**  Mr. Wood.

4                  (Indiscernible cross-talk.)

5            **THE COURT:**  Mr. Wood, I ask --

6                  (Indiscernible cross-talk.)

7            **THE COURT:**  I ask for silence, Mr. Wood.

8            Mr. Fink, finish up, please.

9            **MR. WOOD:**  I object (indiscernible) --

10           **THE COURT:**  Duly noted.

11           **MR. DAVID FINK:**  These attorneys, shielded by --

12           **THE CLERK:**  Judge, I'm sorry to interrupt.  The court

13   reporter is trying to get your attention.

14           **THE COURT:**  Okay.  I'm sorry, Ms. Wabeke, where are

15   you?  There you are.

16           **COURT REPORTER:**  So counsel, we've been going since

17   8:30.

18           **THE COURT:**  Oh, my goodness.

19           **COURT REPORTER:**  With a 20-minute break, and you're

20   all interrupting each other, and that's the kind of record you

21   want for a case like this, with interruptions, dashes, and

22   unintelligible?  So, please, can we finish up, or I will have

23   to get someone else to finish up this last little bit.

24           **THE COURT:**  Oh, Ms. Wabeke, let me -- let me

25   apologize and say that I certainly don't want to -- I know that

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                      7/12/2021

1   you're under a great deal of stress, and, please, always know

2   that you just need to tell me that you need to take a break.

3   You know that.

4           **COURT REPORTER:**  Yes, Judge.

5           **THE COURT:**  Mr. Wood, and everybody else on this

6   call, I am cautioning you, do not speak when another attorney

7   is -- another co-counsel, another brother counsel, sister

8   counsel is speaking -- you know, in the Eastern District of

9   Michigan, we have civility principles -- no, no comment,

10  Mr. Campbell.

11          Mr. Fink, you may proceed, and I'm looking for you,

12  sir, to wrap it up.

13          **MR. DAVID FINK:**  I'm sorry.

14          **THE COURT:**  Do you have water there you can drink

15  because you sound -- all right.

16          **MR. DAVID FINK:**  That's okay, but thank you very

17  much.

18          The reason we brought this proceeding, the reason

19  that we brought this motion, is that these attorneys wielded

20  the weapons afforded to them by the privilege of being admitted

21  to the bar, and they wielded these weapons in this case to

22  abuse the processes of this Court in a devastating way.

23          Earlier today, Mr. Campbell was saying -- talking

24  about what this complaint did and didn't do, what it was and

25  wasn't intended to do.  To be clear, the complaint was clear.

Motion hrg.                                  7/12/2021

1    It explicitly said that it sought -- they sought in the

2    complaint and order requiring Governor Whitmer to transmit

3    certified election results that states that President Donald

4    Trump is the winner of the election.  That's what they were

5    seeking.

6            Now, that said, when we filed our Rule 11 sanctions

7    motion -- yes, we definitely talked about all the

8    misrepresentations, the failures to do due diligence, the

9    inadequacies of the expert reports, but what we focused on was

10   we filed this motion on January 5th, one day before the civil

11   insurrection in Washington.

12           In our motion, we explicitly reported to the Court,

13   not just what we said were lies being spread in the pleadings

14   in this case, but the vile and dangerous messages that were

15   being broadcast by the attorneys in this case on social media.

16   We raised the critical question.  We said, "Why was this

17   complaint not dismissed or amended by the Plaintiffs once this

18   became moot?"  And we said, "In light of the Court's decisive

19   ruling on December 7th, what purpose could this lawsuit serve?"

20           We answered that question, and with the Court's

21   indulgence, I'm going to mostly paraphrase, quickly read from

22   one part of our complaint -- our motion, because this was filed

23   on January 5th, and on January 5th we wrote, "Initially this

24   was one of several lawsuits used to support calls for state

25   legislatures to reject the will of the voters.  When the

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                              7/12/2021

1    Michigan legislature did not attempt to select a slate of

2    electors inconsistent with the will of the voters, this lawsuit

3    took on a different meaning."  On January 5th, we wrote this.

4           It was then used to support arguments for the United

5    States Congress to reject the Michigan electors on January 6th,

6    2021.  We then went on to say, "And most ominously, these

7    claims are referenced and repeated by L. Lin Wood and others in

8    support of a call for martial law."  That was before the

9    violence occurred.

10          Now, we went on to say, "The continued pendency of

11   this lawsuit accomplishes exactly the harm addressed by this

12   Court in its December 7th, 2021 opinion and order by

13   undermining people's faith in the democratic process and the

14   trust in our government.  This lawsuit has been used to

15   delegitimize the Presidency of Joe Biden."  One day later that

16   ominous prophecy became true.

17          To a great extent, because of the lies told in this

18   lawsuit, even today, millions of Americans believe the big lie

19   the big lie that Joe Biden didn't win this election, that

20   somehow the election was stolen, and there's no evidence to

21   support that, but they don't know that, because people think

22   the judicial process has some fairness in it.  People think if

23   lawyers say it in court, it must be true.  Even Mr. Campbell

24   said, if somebody said it in court, we should be able to repeat

25   it, again, because, after all, it was said in court.  So we can

Motion hrg.                              7/12/2021

1    repeat it or at least present it to a court.  So we can repeat

2    it.

3                Now, nobody can undo what happened that day, but

4    because the lies spread in this courtroom, not only did people

5    die on January 6th, but many people throughout the world, many

6    governments and people throughout the world and the United

7    States came to doubt the strength of our democratic

8    institutions in this country about.  Now, we can't undo what

9    happened on January 6th, but this Court can do something to let

10   the world know that attorneys in this country are not free to

11   use our courts to tell lies.

12               So today we ask this Court to issue the strongest

13   possible sanctions, and, to be specific, we seek the following

14   meaningful relief:

15               One, the taxpayers should be reimbursed for the

16   extraordinary expense that was paid to defend this litigation

17   both by the State and by the City.

18               These lawyers should be punished for their behavior.

19   I use that word advisedly.  Their behavior was sanctionable,

20   and they should be punished.

21               Three, whatever sanction this Court imposes should be

22   strong enough and significant enough to deter future

23   misconduct, assuming the Court comes to the conclusion that we

24   believe it will, that there was misconduct;

25               And, four, these attorneys should never again be

                King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1   allowed to appear in a court in our jurisdiction or, frankly,

2   anywhere else, and because of that, because of the way these

3   lawyers have dishonored our profession, because of the way that

4   these lawyers have taken advantage of this Court and this

5   courtroom, we believe that the most important sanction is for

6   this Court to refer all of these attorneys, first, to their own

7   state bar associations, where investigations should be

8   conducted and proper disciplinary proceedings should occur, but

9   just as important, if not more important, we ask this Court

10  refer to the Chief Judge of the Eastern District of Michigan a

11  recommendation that these attorneys be barred from practicing

12  in this district ever again, and that applies to all of the

13  attorneys here.

14          Your Honor, I may have gone a little too long on the

15  end, but I really appreciate it.  It's been a very long day and

16  we really appreciate it.

17          **THE COURT:**  It has been.  Thank you, Mr. Fink, and

18  I'm going to now hear from Ms. Meingast.

19          **MR. WOOD:**  Your Honor, may I?

20          **THE COURT:**  No, no.

21          **MR. WOOD:**  This is Mr. Wood.  He mentioned my name

22  several times.  May I respond?

23          **THE COURT:**  Excuse me, Mr. Wood.  Let me stop you.

24  Mr. Fink -- I'm not going to allow you an opportunity to

25  respond to Mr. Fink's remarks.  We're moving on to --

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1           **MR. WOOD:**  Are you silencing me?

2           **THE COURT:**  Excuse me?

3           **MR. WOOD:**  I'm sorry.  He referred specifically to

4   me.

5           **THE COURT:**  I do understand that.

6           **MR. WOOD:**  I feel like I'm entitled to due process to

7   respond.

8           **THE COURT:**  No, you're not.  I asked.  I gave

9   everyone an opportunity --

10          **MR. WOOD:**  So I'm being denied a response?  I think

11  the record shows --

12          **THE COURT:**  Mr. Wood.

13          **MR. WOOD:**  I think the record shows --

14          **THE COURT:**  Mr. Wood.

15          **MR. WOOD:**  (Indiscernible.)

16          **THE COURT:**  Mr. Wood.

17          **MR. WOOD:**  (Indiscernible.)

18          **THE COURT:**  Mr. Wood, this is not a debate.

19          **MR. WOOD:**  I'm not debating you, I said --

20          **THE COURT:**  Listen, let me warn you right now.  I am

21  not granting your request --

22          **MR. WOOD:**  I'm not debating you --

23          **THE COURT:**  Listen, let me warn you right now.  I am

24  not granting your request to respond to what Mr. Fink said.  I

25  am moving on, and I will now hear from Ms. Meingast.

               King v Whitmer, Case No. 20-cv-13134

Motion hrg.                           7/12/2021

1          Madam, proceed.

2          **MS. MEINGAST:**  Thank you, your Honor, Heather

3    Meingast, on behalf of Governor Whitmer and Secretary Benson.

4          Just briefly, your Honor, because it's clear we've

5    all had a long day.  I appreciate the Court's time and

6    attention to these motions.  I echo many of the comments that

7    Counsel Fink said.  You know, as the Court knows we moved for

8    sanctions against Ms. Powell, Mr. Rohl, Mr. Hagerstrom,

9    Ms. Junttila Lambert, here Junttila Lambert so we've done a

10   segment.

11         And, as the Court knows, our motion is brought under

12   Section 1927 and the Court's inherent authority.  You know, I

13   think we've -- nothing today that we've heard today from

14   Plaintiffs has changed the arguments that we've made in our

15   brief that we've demonstrated that sanctions are warranted

16   under Section 1927 here.

17         It's plain that Plaintiffs multiplied the case far

18   beyond that when it was moot and should have been dismissed, as

19   we've laid out in our briefing.  They had really no response

20   for that, this made-up idea that somehow their case was somehow

21   reinvigorated on December 14th, and we've also asked,

22   alternatively, for sanctions under this Court's inherent

23   authority, and part of that is showing improper purpose for

24   this litigation.  I think that's been clearly demonstrated

25   to -- our arguments, by Mr. Fink, and through our briefing,

               King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    and, so with that, we would respectfully request that the Court

2    grant our motion for sanctions as we've written it.

3              **THE COURT:**  All right.  Ms. Meingast, thank you.

4              Counsel, I want to thank you all for being here

5    today.  This was very long, but it was all very necessary.

6    This Court will be issuing an opinion and order, but, in the

7    interim, I will be issuing an order that captures the tasks, if

8    you will, the opportunities, if you will, that the Court is

9    giving counsel to address the issues that we've discussed here

10   today.  I will take -- Ms. Powell, what is your question?

11   Unmute.

12             **MS. POWELL:**  Yes, your Honor.  I would like to speak

13   to all of these issues and reiterate the points of our

14   briefing.  We're not waiving anything.  We object to virtually

15   everything Mr. Fink has said.  I have practiced law for 43

16   years and never witnessed a proceeding like this, including

17   representing attorneys in sanctions proceedings themselves.  I

18   take full responsibility myself for the pleadings in this case.

19   Ms. Newman, Mr. Wood, Mr. Johnson, and local counsel had no

20   role whatsoever in the drafting and content of these

21   complaints.  It was my responsibility and Mr. Kleinhendler's,

22   not theirs.

23             The affidavits in support of the complaint are valid.

24   Were we to have an evidentiary hearing, we would produce the

25   witnesses to testify to those affidavits.  This is not the kind

Motion hrg.                                    7/12/2021

1   of proceeding in which the affidavits can be challenged.  They

2   weren't even required to be attached to the complaint.  The

3   very fact that we attached 960 pages of affidavits reflect how

4   seriously we took this matter, how concerned we were about the

5   constitutional issues that we raised on behalf of electors, who

6   are, themselves, mentioned in the Constitution.

7           We had a legal obligation to the country and to the

8   electors to raise these issues.  It is the duty of lawyers and

9   the highest tradition of the practice of law to raise difficult

10  and even unpopular issues.  The fact that there may have been

11  even adverse precedent against us does not change that fact.

12  Were that true, there would not have been a decision called

13  *Brown versus the Board of Education*.

14          We have practiced law with the highest standards.  We

15  would file the same complaints again.  We welcome an

16  opportunity to actually prove our case.  No court has ever

17  given us that opportunity.  Instead, we are met with

18  proceedings like this brought by Mr. Fink and others, who are

19  themselves the ones who have abused the process for political

20  gamesmanship and their political purposes, and this is one of

21  the proceedings that leaves the American public with no

22  confidence either in our election system or in our judicial

23  system.

24          **THE COURT:**  All right.  Thank you for those remarks.

25          As the Court has indicated, I will be following up

King v Whitmer, Case No. 20-cv-13134

Motion hrg.                                    7/12/2021

1    with an opinion and order a little bit later and, in the

2    interim, as I said, I will issue an order referencing

3    supplemental briefings and time frames.

4              I want to thank, once again, counsel for appearing

5    today.  It has been a long day.  Again, it has been a necessary

6    day.

7              Mr. Flanigan.

8              **THE CLERK:**  Thank you all.  Court is adjourned.

9                   (Proceedings concluded 2:32 p.m.)

10                              - - -

11                  **C E R T I F I C A T I O N**

12             I, Andrea E. Wabeke, official court reporter for the

13   United States District court, Eastern District of Michigan,

14   Southern Division, appointed pursuant to the provisions of

15   Title 28, United States Code, Section 753, do hereby certify

16   that the foregoing is a correct transcript of the proceedings

17   in the above-entitled cause on the date hereinbefore set forth.

18   I do further certify that the foregoing transcript has been

19   prepared by me or under my direction.

20

21   /s/Andrea E. Wabeke                    July 14, 2021

22   Official court Reporter                Date
     RMR, CRR, CSR
23                              - - -

24

25

King v Whitmer, Case No. 20-cv-13134