# EXHIBIT 12

EFiled:  May 05 2021 12:03PM EDT
Filing ID 66573355
Case Number 69,2021

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CARTER PAGE, an individual, | ) | |
|     Plaintiff-Below, | ) | |
|     Appellant, | ) | |
| | ) | |
| v. | ) | No.: 69, 2021 |
| | ) | |
| OATH, INC., a corporation, | ) | |
| | ) | |
|     Defendant-Below, | ) | |
|     Appellee, | ) | |

---

## FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

---

### **APPELLANT'S OPENING BRIEF**

BY:   /s/Ronald G. Poliquin, Esquire
        Ronald G. Poliquin, Bar ID # 4447
        Marc J. Wienkowitz, Bar ID # 5965
        The Poliquin Firm
        1475 South Governors Avenue
        Dover, DE 19904
        Attorney for Appellants

DATED:  May 5, 2021

# **TABLE OF CONTENTS**

Table of Citations  ......................................................... i

Nature of Proceedings ................................................1

Summary of Argument  ..............................................3

Statement of Facts .....................................................4

Argument

I.    THE SUPERIOR COURT ABUSED ITS DISCRETION WHEN IT
      REVOKED APPELLANT WOOD'S *PRO HAC VICE* ADMISSION
      *SUA SPONTE.* ...................................................8

Conclusion ..............................................................34

Order on Appeal  .....................................................35

## **TABLE OF CITATIONS**

**Cases**                                                                    **Page(s)**

*ACE Am. Ins. Co. v. Underwriters at Lloyds & Cos.*, 939 A.2d 935 (Pa. Super. Ct. 2007). ...........................................................................9

*Blue Ribbon Packing Corp. v. Hughes*, 2019 WL 210449 (Pa. Super. Ct. Jan. 16, 2019. ...................................................................................9

*Bradshaw v. Unity Marine Corp., Inc.,* 147 F.Supp.2d 668 (S.D. Tex. 2001). ................................................................................................24

*Crowhorn v. Nationwide Mut. Ins. Co.,* 2002 WL 1274052 (Del. Super. Ct. May 6, 2002)............................................................. 10, 17, 25, 27, 28, 30

*Crumpler v. Superior Court*, 56 A.3d 1000 (Del. 2012). .......................8, 17, ........................................................ 18, 20, 21, 22, 23, 24, 25, 26, 27, 28

*Forrest v. Beloit Corp.*, 424 F.3d 344 (3d Cir. 2005). ..................................9

*Gottlieb v. State*, 697 A.2d 400 (Del. 1997). .................................................8

*Hahn v. Boeing Co.,* 621 P.2d 1263 (Wash 1980). .....................................18

*In re Infotechnology*, 582 A.2d 215 (Del. 1990). ..................... 18, 19, 23, 28

*In re Surrick*, 338 F3d 224 (3d Cir. 2003). ...................................................8

*In the Matter of Ramunno*, 625 A.2d 248 (Del. 1993). ................... 10, 11, 12

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020). ...............25

*Kaplan v. Wyatt*, 1984 WL 8274 (Del. Ch. 1984). ....................................18

*Lendus, LLC v. Goede*, 2018 WL 6498674 (Del. Ch. Dec. 10, 2018). .........9, ................................................................................................ 21, 22, 23, 25

*Manning v. Vellardita*, 2012 WL 1072233 (Del. Ch. 2012). .....................10

*Mruz v. Caring, Inc.*, 107 F.Supp. 2d 596 (D.N.J. 2000). ..........................21

*Mruz v. Caring, Inc.*, 166 F.Supp.2d 61 (D.N.J. 2001). ......................22, 23,

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 1990 WL 197864 (Del. 1990). .................................................................25

*Raub v. US Airways, Inc.*, 2017 WL 5172603 (E.D. Pa. Feb. 8, 2017). ......19

*Republican Party of Penn. v. Degraffenreid, et al*, 592 U.S. ___ (2021). .................................................................................26

*Sequoia Presidential Yacht Group LLC v. FE Partners LLC*, 2013 WL 3362056 (Del. Ch. Jul. 5, 2013). .................................... 21, 23, 25,

*Sheller v. Superior Court*, 158 Cal. App. 4th 1697 (Cal. Ct. App. 2008). ...20

*State v. Grossberg*, 705 A.2d 608 (Del. Super. Ct. 1997). ........ 12, 13, 14, 15

*State v. Mumford*, 731 A.2d 831 (Del. Super. 1999). .................................16

## **Constitutions**

U.S. Const. art. III, § 2, cl. 1. ....................................................................25

## **Other Authority**

Del. Ch. R. 170. . .......................................................................................10

Del. Super. Ct. Civ. R. 90.1. ......................................................... 10, 19, 31

Del. Super. Ct. Crim. R. 63. .......................................................................10

Del. Ct. Comm. Pl. Civ. R. 90.1. ................................................................10

Del. Ct. Comm. Pl. Crim. R. 62. ...............................................................10

## <u>NATURE AND STAGE OF PROCEEDINGS</u>

On July 27, 2020, Carter Page filed a complaint alleging, *inter alia*, defamation of character against Oath, Inc., a Delaware corporation that is the parent company of Yahoo! News and TheHuffingtonPost.com. Appellant L. Lin Wood ("Wood") is an attorney licensed to practice law in the State of Georgia. By order dated August 18, 2020, the Superior Court of the State of Delaware granted Wood's motion for admission *pro hac vice* pursuant to Delaware Superior Court Civil Rule 90.1 and Wood subsequently entered his appearance on Page's behalf. Oath, Inc. filed a Motion to Dismiss Page's complaint pursuant to Superior Court Civil Rule 12(b)(6) on September 18, 2020. That motion was briefed by the parties and argued before the Superior Court.

On December 18, 2020 the Superior Court, *sua sponte*, issued to Wood a Rule to Show Cause probing why he should be permitted to continue practicing before it *pro hac vice*. The Rule to Show Cause did not take issue with any of Wood's actions in the Carter Page litigation before the Delaware Superior Court, but instead focused on unrelated litigation in which Wood was involved as counsel or a party. Wood responded to the Rule to Show Cause by affidavit dated January 6, 2021 as directed. On January 11, 2021, without conducting an evidentiary hearing, the Superior Court issued an order revoking Wood's *pro hac vice* admission to practice as Plaintiff

1

Carter Page's counsel of record. The Superior Court denied Wood's request to reargue the Rule to Show Cause.

After the revocation, Wood, as a *pro se* litigant, filed a timely Motion for Reargument on January 19, 2021. In its February 11, 2021 Memorandum and Order, the trial court references in a footnote that Wood failed to file the motion electronically.

Following argument on January 27, 2021, the Superior Court granted Oath, Inc.'s Motion to Dismiss by memorandum opinion dated February 11, 2021. This is Wood's timely Appeal from the Superior Court's revocation of his *pro hac vice* privilege.

## SUMMARY OF THE ARGUMENT

1.   The Superior Court abused its discretion by *sua sponte* revoking Appellant L. Lin Wood's *pro hac vice* privileges where that revocation was based upon conduct unrelated to the litigation for which Wood was admitted to practice *pro hac vice*, where the conduct in those other jurisdictions was not found to have violated any those jurisdictions' rules of professional conduct, and where Wood's conduct before the Superior Court met the requirements of the Delaware Lawyers' Rules of Professional Conduct and did not threaten to prejudice the fairness of the proceedings.

## STATEMENT OF FACTS

Appellant L. Lin Wood is a well-known attorney who enjoys a stellar reputation in his home state of Georgia where he is licensed to practice law. With Wood's reputation comes a degree of notoriety attributable to his involvement in numerous high-profile cases around the United States where he has been admitted to practice before both state and Federal tribunals on a *pro hac vice* basis. By way of illustration, Wood represented plaintiffs challenging the results of the 2020 Presidential election in Michigan and Wisconsin. (A0071). Wood also filed suit *pro se* in Georgia challenging the 2020 General Election. (A0096). Many of the high-profile cases brought or prosecuted by Wood have conservative-leaning political undertones.

Carter Page's ("Page") defamation suit against Oath, Inc. ("Oath") carried such political undertones with it. Page's case against Oath alleged that articles published by its subsidiaries Yahoo! News ("Yahoo") and TheHuffingtonPost.com ("Huffington") falsely accused him of colluding with Russian agents to interfere with the 2016 Presidential election. (A0079 – A0082). Page's suit against Oath was filed on July 27, 2020 in the Superior Court of the State of Delaware. (A0081). Wood was admitted as Page's counsel *pro hac vice* pursuant to a Motion and Order under Superior Court Civil Rule 90.1 on August 18, 2020. (A0002). At all times relevant to Wood's representation of Page, he acted in compliance with the Delaware

Lawyers' Rules of Professional Conduct and the Superior Court Rules of Civil Procedure, including Superior Court Civil Rule 90.1.

While Page's case was pending before the Superior Court, the highly controversial General Election of 2020 took place. In the days and weeks following the election, Wood became involved in litigation contesting the election's results or the manner votes were taken or counted in critical "swing states". (A0071; A0096). Among those cases in which Wood became involved were lawsuits in Wisconsin, Michigan, and Wood's own suit in the State of Georgia. (A0071; A0096). Each of these matters was unrelated to Page's Delaware defamation lawsuit where Wood was Page's *pro hac vice* counsel of record.

On December 18, 2020, following national attention surrounding litigation challenging the outcome of the 2020 Presidential election, the trial judge in Page's case issued Wood a Rule to Show Cause and directed him to respond on or before January 6, 2021. (A0005; A0009). In that Rule to Show Cause, the trial judge focused primarily on Wood's involvement in election-related cases. (A0005 – A0008). The trial judge particularly took umbrage with Wood's involvement in litigation in Wisconsin and Georgia; the Michigan litigation is addressed only in passing in the December 18, 2020 Rule to Show Cause. (A0005 – A0008).

With respect to the Wisconsin litigation, the Superior Court focused its ire on several factors, many of which were not directly attributable to Wood. (A0006 –

A0008).  Specifically of interest were the initial pleadings which contained multiple typographical errors and a response to a Motion to Dismiss that relied upon a fictitious citation.  (A0006).  It is unclear what, if any involvement Wood had in drafting the initial pleadings in that case.  Regarding the response to the Motion to Dismiss, although Wood was listed as counsel of record, his signature was not affixed to the pleading.  (A006).

When assessing the Georgia litigation where Wood was the plaintiff, the Superior Court gave significant weight to the Georgia court's dismissal of the case.  (A0071; A0074).  In its order dismissing the case, the Georgia trial court stated that Wood did not suffer any demonstrable harm and that there was consequently no basis in law or fact to grant the injunctive relief he sought.  (A0007).  The Superior Court judge held that Wood's conduct filing the Georgia suit "*may* violate DRPC Rule 3.1".  (A0007, emphasis added).

In its February 11, 2021 Order revoking Wood's *pro hac vice* admission, the Superior Court gave little weight to Wood's response to the Rule to Show Cause.  In his response, Wood set forth that he had violated no ethical rules before the Superior Court and that neither the Wisconsin nor Georgia courts had found any ethical violation.  (A0072).  Moreover, the Superior Court ignored an affidavit submitted by Charles Slanina, Esq. setting forth that it is the province of authorities other than the Superior Court to make determinations respecting ethical violations.  (A0072 –

6

A0073).   Likewise, the Superior Court ignored Wood's proposal to voluntarily withdraw from the case and instead elected to issue an extra-disciplinary order revoking Wood's *pro hac vice* admission.  (A0012; A0069 – A0076).

Following the Superior Court's revocation of his *pro hac vice* admission, defense counsel in an unrelated matter in the Eastern District of New York moved for revocation of Wood's *pro hac vice* admission to that court.  (A0119).   Among other things, the motion to revoke Wood's *pro hac vice* admission to the Eastern District of New York cited to the Superior Court's memorandum opinion and order revoking Wood's admission *pro hac vice*.  (A0140 – A0141).

## **ARGUMENT**

I.   **THE SUPERIOR COURT ABUSED ITS DISCRETION WHEN IT REVOKED WOOD'S *PRO HAC VICE* ADMISSION *SUA SPONTE*.**

### **Question Presented**

Whether the Superior Court's *sua sponte* revocation of Wood's *pro hac vice* admission constitutes an abuse of discretion where the identified offending conduct took place in other jurisdictions, in unrelated matters, where no rules of professional conduct had been violated, and where the conduct did not prejudice the fair and efficient administration of justice constitutes an abuse of the Superior Court's discretion under Delaware Superior Court Rule of Civil Procedure 90.1.

### **Standard and Scope of Review**

This Court has held that an out-of-state attorney, upon entry of final judgment in the underlying case, has a right of appeal independent of his former client where his *pro hac vice* status has been revoked.[1]  This Court reviews a trial court's decision to impose sanctions for an abuse of discretion.[2]  When reviewing the imposition of sanctions, including revocation of an attorney's *pro hac vice* status on motion of an adverse party, the Third Circuit has adopted an abuse of discretion standard of review.[3]  Similarly, the Third Circuit has held that abuse of discretion is the

---

[1] See, *Gottlieb v. State*, 697 A.2d 400, 403 (Del. 1997).
[2] *Crumplar v. State*, 56 A.3d 1000 (Del. 2012).
[3] *In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003).

appropriate standard of review in determining the appropriateness of a trial court's response to alleged attorney misconduct.[4] Likewise, the Commonwealth of Pennsylvania applies an abuse of discretion standard to review of a trial court's revocation of an out-of-state attorney's *pro hac vice* status.[5] A trial court's *sua sponte* revocation of an out-of-state attorney's *pro hac vice* admission, however, appears to present a case of first impression to this Court.

## Merits of Argument

A.  The Superior Court has limited authority to revoke an out-of-state attorney's *pro hac vice* status.

Parties to litigation have a fundamental right to choose their counsel and that right should not be abrogated except under exceptional circumstances.[6] Delaware courts, like courts in its sister jurisdictions, acknowledge this fundamental right of litigants by permitting out-of-state attorneys to practice before them on a *pro hac vice* basis. An out-of-state attorney's *pro hac vice* admission is not infallible and without limitations, however, and it may be revoked under appropriate circumstances.[7]

---

[4] *Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005).
[5] *Blue Ribbon Packing Corp. v. Hughes*, 2019 WL 210449 (Pa. Super. Ct. Jan. 16, 2019) (citing *ACE Am. Ins. Co. v. Underwriters at Lloyds & Cos.*, 939 A.2d 935, 948 (Pa. Super. Ct. 2007).
[6] *Lendus, LLC v. Goede*, 2018 WL 6498674 at *8 (Del. Ch. Dec. 10, 2018).
[7] Del. Super. Ct. Civ. R. 90.1(e)

In admitting an out-of-state attorney to practice before them *pro hac vice*, Delaware courts are guided by their rules of procedure.[8]  A trial court's authority to revoke an out-of-state attorney's *pro hac vice* status, however, is limited.[9]  Where a party to litigation seeks the sanction of revocation of an out-of-state attorney's *pro hac vice* privileges, the moving party must demonstrate by clear and convincing evidence that the out-of-state attorney's behavior is sufficiently egregious to "call into question the fairness or efficiency of the administration of justice."[10]  Delaware trial courts also have inherent power to revoke an out-of-state attorney's *pro hac vice* status *sua sponte* in circumstances where the out-of-state attorney's continued admission *pro hac vice* would be "inappropriate or inadvisable."[11]  A trial court seeking to revoke an out-of-state attorney's *pro hac vice* admission *sua sponte* may do so only after it has given notice of the offending conduct and conducted a hearing or given the out-of-state attorney a meaningful opportunity to respond to the court.[12]

Delaware courts' inherent power to sanction attorney misconduct which occurs before it was reinforced by this Court in *Ramunno*.[13]  In that case, a Delaware trial judge found a Delaware attorney to have engaged in undignified and

---

[8] See, e.g., Del. Ch. R. 170; Del Super Ct. Civ. R. 90.1; Del. Super. Ct. Crim. R. 63; Del. Ct. Comm. Pl. Civ. R. 90.1; Del. Ct. Comm. Pl. Crim. R. 62.

[9] *Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 1274052 (Del. Super. Ct. May 6, 2002).

[10] *Manning v. Vellardita*, 2012 WL 1072233, at *2 (Del. Ch. 2012).

[11] Del. Super. Ct. Civ. R. 90.1(e); accord *In the Matter of Rammuno*, 625 A.2d 248, 249 (Del. 1993) (court raised issue of sanctions *sua sponte*).

[12] *Id.*

[13] *In the Matter of Ramunno*, 625 A.2d 248 (Del. 1993).

discourteous behavior when during an office conference; the offending attorney referred to opposing counsel in a "crude, but graphic, anal term."[14]  The attorney's remark was not overheard by opposing counsel but was heard clearly by the presiding judge and he was summarily cited for contempt.[15]  In a pre-trial hearing the following day, the Delaware attorney at issue moved for the presiding judge to recuse himself arguing that the prior day's contempt citation biased the judge against the attorney's client.[16]  In presenting his motion to the trial court, the attorney engaged in a terse colloquy with the court which resulted in further contempt sanctions.[17]

Following the trial in *Ramunno*, opposing counsel referred the matter to the Board on Professional Responsibility which charged the attorney with engaging in "undignified or discourteous conduct which is degrading to a tribunal" in violation of Delaware Lawyers Rule of Professional Conduct 3.5(c).[18]  The Board dismissed the charges following a hearing on the basis that there had been no clear and convincing showing that the attorney engaged in misconduct warranting further sanctions.[19]  On appeal, this Court remanded the matter to the Board in that its finding was inconsistent with Board Rules directing that "conviction for any crime

---

[14] *Id*. at 249
[15] *Id*.
[16] *Id*.
[17] *Id*.
[18] *Id*.
[19] *Id*.

is conclusive evidence of the commission of that crime".[20]  In reaching its final ruling

upon the matter, this Court set forth that the appropriate standard in determining the

appropriateness of sanctions is "whether [the attorney's] rude and uncivil behavior

was degrading to the court below.[21]

1.   Delaware trial courts have clear guidance in reaching the decision whether to
     revoke an out-of-state attorney's *pro hac vice* status upon motion of a party.

   In *State v. Grossberg*, the Superior Court, upon motion by opposing counsel,

revoked an out-of-state attorney's *pro hac vice* status after the out-of-state attorney

blatantly disregarded the Superior Court's order limiting extra-judicial statements

pertaining to the case before it.[22]  In *Grossberg*, the defendant was charged with

multiple homicide offenses under Title 11 of the Delaware Code.[23]  The case had

garnered significant local and national media attention.[24]  Following an office

conference with counsel, the Superior Court entered an order limiting pretrial

publicity and further limiting all persons "assisting or associated with counsel" from

making "extrajudicial statements that counsel for the State would be prohibited from

making under Rule 3.6" of the Delaware Lawyers' Rules of Professional Conduct.[25]

Shortly after entering the preceding order, the Superior Court expanded its order

---

[20] *Id*.
[21] *Id*. at 250.
[22] 705 A.2d 608 (Del. Super. 1997).
[23] *Id*. at 609.
[24] *Id*. at 609-10.
[25] *Id.* at 610.

directing that "parties make no comment to the media other than on scheduling matters.[26]

Several months after the Superior Court had entered its orders pertaining to pretrial publicity and extrajudicial statements, Grossberg's Delaware counsel moved for the admission *pro hac vice* of Robert C. Gottlieb, Esq.[27]  Gottlieb was a well-accomplished member of the New York Bar.[28]  In his affidavit of admission *pro hac vice*, Gottlieb affirmed that he would be bound by the Delaware Lawyers' Rules of Professional Conduct and he was thus admitted *pro hac vice*.

Within days of his *pro hac vice* admission, Gottlieb made a television appearance speaking about the venire and others associated with the Case.[29]  He also appeared on a local news broadcast stating that Grossberg "didn't commit a crime."[30]  Around the same time, Gottlieb had arranged for Grossberg, her parents, and himself to be interviewed by Barbara Walters on a national news broadcast.[31]  Shortly after the Barbara Walters interview was recorded, Gottlieb wrote to the court and opposing counsel ensuring that the interview strictly adhered to the court's prior order limiting media exposure and extrajudicial commentary.[32]  His letter further

---

[26] *Id.*
[27] *Id.* at 611.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*

reassured the court that Grossberg, her parents, and he "did not [. . .] discuss the evidence pertaining to the case or expected testimony.[33]

During the interview, which aired a short time after Gottlieb's letter to the court and opposing counsel, Gottlieb expressed his personal opinion that Grossberg had not committed a crime and that she should not have been charged with a crime.[34] Gottlieb further stated that "it's never too late to do what is right based on the evidence" during his portion of the interview.[35]  Gottlieb concluded his portion of the interview asking the State to look at the case anew.[36]

During her portion of the interview, Grossberg described herself as a child.[37] She also responded to questions pertaining to what the past several months had been like, her feelings toward her co-defendant, and her physical health in the time leading up to the acts forming the basis of the charges against her.[38]  Grossberg further responded to interview questions by stating she "would never hurt anything or anybody, especially something that could come from me."[39]  Grossberg concluded her portion of the interview stating "I wouldn't hurt anybody or anything, especially something of mine."[40]

---

[33] *Id.* at 613.
[34] *Id*. at 611.
[35] *Id*.
[36] *Id*.
[37] *Id*.
[38] *Id*.
[39] *Id*.
[40] *Id*. at 612.

Following the interview being aired, the State moved for sanctions against Gottlieb arguing that he had violated the Superior Court's order limiting pretrial publicity and that he was in violation of the Rules of Professional Conduct.[41] Gottlieb took the position that he had not violated the courts order nor the rules of professional conduct.[42]  In reaching its decision to revoke Gottlieb's *pro hac vice* status, the Superior Court found that his letter to the court prior to the airing of the interview was a misstatement of fact.[43]  The Superior Court further found that Gottlieb's statements to local news outlets and during the nationally televised Barbara Walters interview plainly conveyed his personal opinion as to Grossberg's innocence in violation of Delaware Lawyers' Rule of Professional Conduct 3.6 and that they were strategically timed to rekindle public interest in the Grossberg case.[44] The Superior Court further found that Gottlieb had violated Delaware Lawyers' Rule of Professional Conduct 3.6 by orchestrating the Barbara Walters interview and assisting Grossberg and her parents in violating the rule.[45]  In light of these factors, the Superior Court sanctioned Gottlieb with revocation of his admission *pro hac vice*.[46]

---

[41] *Id.*
[42] *Id.*
[43] *Id.* at 613.
[44] *Id.*
[45] *Id.*
[46] *Id.*

In *Mumford*, out-of-state counsel was admitted *pro hac vice* to represent the defendant in a condemnation matter before the Superior Court.[47] Prior to his admission *pro hac vice*, the out-of-state attorney affirmed that he would comport his behavior to the Rules of Professional Conduct and of the Superior Court.[48] During a deposition of the defendant where he used crude and profane language and engaged in threatening behavior toward opposing counsel, the defendant's out-of-state counsel failed to intervene to control the deponent.[49] Following the offending deposition, plaintiff's counsel moved revocation of the out-of-state attorney's *pro hac vice* admission.[50] The court based its conclusion that the out-of-state attorney's continued admission was inappropriate and inadvisable heavily upon the offending party's profane, hostile, and disrespectful demeanor in conjunction with the out-of-state attorney's failure to "take steps to restrain" the offending party's behavior and "attempt to restore decorum."[51]

2.     <u>*Sua sponte* imposition of sanctions upon an attorney requires Delaware trial courts to apply an objective standard.</u>

As *Ramunno* demonstrates, Delaware trial courts have broad discretion in raising the issue of sanctions *sua sponte* to address incidents of attorney misconduct

---

[47] *State v. Mumford* 731 A.2d 831, 832 (Del. Super. 1999).
[48] See e.g. *State v. Mumford*, 731 A.2d 831 (Del. Super. 1999).
[49] *Id*.
[50] *Id*. at 835.
[51] *Id*. at 835-36.

which occur in their presence.[52]   Delaware trial courts do not, however, have authority to conduct disciplinary proceedings.[53]   This is consistent with *Crowhorn* where the Superior Court acknowledged that it does not have authority to conduct disciplinary proceedings despite it having the inherent power to "disqualify an attorney for unethical conduct that is committed *in proceedings before it*."[54]

In *Crumplar v. Superior Court*, this Court first addressed the question of the standard and process required of a Delaware trial court in raising the issue of Rule 11 sanctions *sua sponte*.[55]   The Superior Court in *Crumplar* sanctioned an attorney for two perceived violations of Rule 11 *sua sponte*.[56]   The Superior Court issued its first order to show cause after the attorney had supplied the court with the incorrect case name for a correct proposition of law.[57]   The second order to show cause was issued after the attorney failed to distinguish precedent that was cited by opposing counsel.[58]   The attorney responded to the court's first order by describing the steps that he had taken in identifying the correct case name.[59]   With respect to the court's second order, the attorney responded that Rule 11 did not impose a duty to cite

---

[52] *In the Matter of Ramunno*, 625 A.2d 248 (Del. 1993).
[53] *Crumplar v. Superior Court*, 56 A.3d 1000, 1009 (Del. 2012).
[54] *Crowhorn*, 2002 WL 1274052 (Del. Super. May 6, 2002).
[55] 56 A.3d 1000 (Del. 2012).
[56] *Id*. at 1003-04.
[57] *Id*. at 1003.
[58] *Id*. at 1004.
[59] *Id*. at 1003.

contrary authority that had already been raised by the opposing party.[60]  After finding

the attorney's responses to the orders to show cause were insufficient, the Superior

Court imposed a $25,000.00 penalty and justified the sanction by noting that

asbestos settlements and verdicts are typically many times the sanction imposed.[61]

On appeal this Court acknowledged that Rule 11 imbues trial courts with

authority to impose sanctions for violations of the Rule *sua sponte*.[62]  Pursuant to

the Rule however, sanctions may only be imposed following notice and a reasonable

opportunity to respond.[63]  Because the legal profession in Delaware "demands more

than pure hearts and empty minds", this Court adopted an objective standard where

trial courts are to determine whether Rule 11 sanctions are merited.[64]

3.   A Delaware trial court lacks authority to disqualify counsel for technical
       violations of the Delaware Lawyers' Rules of Professional Conduct.

Delaware trial courts may not disqualify an attorney from representing a party

upon a finding of a technical violation of the Delaware Lawyers' Rules of

Professional Conduct relating to conflicts of interest.[65]  Where a trial court seeks to

---

[60] *Id*. at 1004.

[61] *Id*.

[62] *Id*. at 1005.

[63] *Id*.

[64] *Id.* at 1008.

[65] *In re Infotechnology, Inc*., 582 A.2d 215 (Del. 1990); see also *Kaplan v. Wyatt,* 1984 WL 8274
at *6 (Del. Ch. 1984) (adopting *Hahn v. Boeing Co.,* 621 P.2d 1263, 1266-67 (Wash. 1980)
(Holding that a trial court lacks authority to conduct quasi-disciplinary proceedings in ruling
upon motion for *pro hac vice* admission where out-of-state attorney applicant may have violated
a Rule of Professional Conduct)).

disqualify an attorney from representation in a case, there must be a showing that continued representation is prejudicial to the fairness of the proceeding.[66] This Court based its *Infotechnology* holding upon its exclusive authority to enforce the Rules of Professional Conduct and to oversee the practice of law in Delaware.[67]

4.   This Court should apply an objective standard to a trial court's *sua sponte* revocation of an out-of-state attorney's *pro hac vice* admission.

Revocation of an out-of-state attorney's *pro hac vice* admission is the ultimate sanction that a Delaware trial court may impose upon an out-of-state attorney and carries far-reaching consequences to the out-of-state attorney's reputation.[68]  A trial court moving to revoke an out-of-state attorney's *pro hac vice* admission *sua sponte* is an extraordinary action.  Though Rule 90.1(e) states that the admitting court may revoke the out-of-state attorney's *pro hac vice* upon notice and "after [. . .] a meaningful opportunity to respond" where the "continued admission *pro hac vice* [would] be inappropriate or inadvisable[,]"[69] there is little else to guide courts in determining the meaningfulness of the opportunity to respond or what constitutes inappropriate or inadvisable continued admission.   This Court's Rule 11 jurisprudence pertaining to *sua sponte* sanctions is illustrative.  In *Crumplar*, this Court acknowledged the seriousness of a trial court's imposition of Rule 11

---

[66] *Id.* at 221.
[67] *Id.* at 216-17.
[68] *Raub v. US Airways, Inc.* 2017 WL 5172603 (E.D. Pa. Feb. 8, 2017).
[69] Del. Super. Ct. Civ. R. 90.1(e).

sanctions *sua sponte*.[70]   As such, this Court required that a trial court apply an objective standard to determine whether an attorney's duties under Rule 11 were reasonable under the circumstances.[71]   Similarly, where a court seeks to revoke an out-of-state attorney's *pro hac vice* admission *sua sponte*, an objective standard should be applied to determine whether the offending conduct is serious enough to merit the extraordinary action of *pro hac vice* revocation and whether continued admission is inappropriate or inadvisable.

5.  <u>An out-of-state attorney must be notified of the conduct subjecting their *pro hac vice* admission to revocation and the out-of-state attorney must be given an opportunity to present evidence and respond orally.</u>

Because of the seriousness of repercussions that follow an out-of-state attorney's *pro hac vice* admission being revoked, trial courts must have clear guidance upon the standard that applies to such a drastic action.   It is an extraordinary course of action "that should not be taken simply out of hypersensitivity to ethical nuances or the *appearance* of impropriety.[72]   This Court held that where a trial court raises the issue of Rule 11 sanctions *sua sponte*, the responding attorney must be given notice of the error and a meaningful opportunity to present evidence and respond *orally*.[73]   Similarly, the seriousness, far-reaching consequences, and quasi-

---

[70] See *Crumplar v. Superior Court*, 56 A.3d 1000 (Del. 2012).
[71] *Id*. at 1008.
[72] *Sheller v. Superior Court*, 158 Cal. App. 4th 1697, 1711 (Cal. Ct. App. 2008).
[73] *Crumplar*, 56 A.3d at 1003. (Emphasis added).

20

disciplinary nature of a trial court's revocation of an out-of-state attorney's *pro hac vice* demand that the out-of-state attorney be given adequate notice of the offending conduct and an opportunity to present evidence and respond orally.[74]

Revocation of an out-of-state attorney's *pro hac vice* admission *sua sponte* is a quasi-disciplinary proceeding, thus, a trial court should be limited to acting upon misconduct that happens before it or within the ambit of the underlying litigation.[75] This Court has repeatedly held that it alone is responsible for the regulation of attorney conduct.[76] When moving for an out-of-state attorney's *pro hac vice* admission to be revoked *sua sponte*, a trial court should follow the same criteria as is required for the out-of-state attorney's admission to be revoked on motion of a party; that is the trial court should be convinced by clear and convincing evidence that the out-of-state attorney's continued admission *pro hac vice* would prejudice the "fair and efficient administration of justice" thus making continued admission inappropriate or inadvisable.[77]

---

[74] See *Id*; *Mruz v. Caring, Inc.*, 107 F.Supp.2d 596, 604 (D.N.J. 2000) ("Notice should consist of two things: "the conduct of the attorney that is subject to the inquiry and the specific reason this conduct may justify revocation"").
[75] Accord, 11 *Del.C.* § 1272; *Lendus*, 2018 WL 6498674 at *8.
[76] *Crumplar*, 56 A.3d at 1009 (where a trial judge believes that attorney misconduct has occurred, the proper recourse is referral to the Office of Disciplinary Counsel); *Infotechnology*, 582 A.2d at 216-17 (Court rules may not be used in extra-disciplinary proceedings; this Court has sole responsibility to govern the Bar).
[77] *Sequoia Presidential Yacht Group LLC v. FE Partners LLC*, 2013 WL 3362056 at *1-*2 (Del. Ch. Jul. 5, 2013).

At a minimum, this Court should require that trial courts invoking their inherent power to revoke an out-of-state attorney's *pro hac vice* admission *sua sponte* give the out-of-state attorney the same procedural protections as those that required under Rule 11(c)(1)(B).[78]  While sanctions under Rule 11 represent an attorney being held accountable for a serious infraction, the consequences of revoking an out-of-state attorney's *pro hac vice* admission have much more dire and far-reaching effect.[79]  Thus, out-of-state attorneys admitted *pro hac vice* should be granted an opportunity to present evidence and to be heard orally when responding to a trial court's *sua sponte* motion to revoke that admission.

B.   The Superior Court exceeded the boundaries of its inherent power to sanction when it revoked Wood's *pro hac vice* admission *sua sponte*.

1.   The Superior Court's revocation of Wood's *pro hac vice* admission was tantamount to a prohibited extra-judicial disciplinary proceeding.

The Superior Court justified its *sua sponte* revocation of Wood's admission *pro hac* vice by pointing to matters in other jurisdictions in unrelated cases which it interpreted as violations of the Delaware Lawyers' Rules of Professional Conduct by Wood.  None of the grounds relied upon by the Superior Court in revoking Wood's *pro hac vice* status occurred in its presence, nor could they reasonably be

---

[78] *Crumplar*, 56 A.3d at 1111-12.
[79] *Lendus*, 2018 WL 6498647 at *9 (Reporting requirements for *pro hac vice* revocation work a punitive effect); *Mruz v. Caring*, 166 F.Supp.2d 61, 70-71 (D.N.J. 2001) ("revocation of [*pro hac vice* admission] , once bestowed, sends a strong message which works a lasting hardship on an attorney's reputation.") (internal citations omitted); see also (A0119; A0140 – A0141).

viewed as prejudicing the fair and efficient administration of justice in the underlying litigation.[80]  The Superior Court thus acted in derogation of this Court's holdings in *Crumplar* and *Infotechnology*, prohibiting trial courts from applying their rules "in extra-disciplinary proceedings solely to vindicate the legal profession's concerns [with attorney conduct]."[81]  Trial courts freely acknowledge that their extraordinary power to revoke an out-of-state attorney's *pro hac vice* admission must be exercised with constraint.[82]

None of the conduct that the Superior Court relied upon in revoking Wood's *pro hac vice* admission occurred in the proceedings before it, thus, it cannot sanction those actions unless they are prejudicial to the fair and efficient administration of justice.[83]  In the case at bar, while admitted *pro hac vice*, the behavior at issue consisted of Wood representing clients in unrelated matters in other jurisdictions.[84] Though the cases that Wood was pursuing on his clients' behalf were controversial, there appear to have been no disciplinary actions pursued against Wood.

In the Wisconsin litigation, the Superior Court fixated on reports of poorly drafted initial pleadings and inclusion of an incorrect citation upon which the plaintiff in that matter relied in response to a motion to dismiss.   Though

---

[80] See *Id.*
[81] *Crumplar*, 56 A.3d at 1010; *Infotechnology*, 582 A.2d at 2016-17.
[82] See *Lendus*, 2018 WL 6498674 at *8; *Sequoia*, 2013 WL 3362056 at *1-*2; *Crowhorn*, 2002 WL 1274052 at *15-*16; *Mruz*, 166 F.Supp.2d at 70-71' .
[83] *Crumplar*, 56 A.3d at 1009; *Infotechnology*, 582 A.2d at 216-17.
[84] (A0005) – (A0008).

unprofessional, inartful pleadings and incorrect citations do not alone violate rules of professional conduct.[85]   Moreover, Wood's level of participation in the drafting and filing of the initial pleadings in the Wisconsin litigation is unclear and Wood did not himself sign the response to the motion to dismiss in that matter.   Had these actions occurred in Delaware before the Superior Court in the relevant litigation, the trial court would not have had adequate ground to impose Rule 11 sanctions *sua sponte* upon this record, revocation of Wood's *pro hac vice* admission upon these grounds, therefore, constitutes an abuse of discretion by the Superior Court.[86]

The Superior Court's reliance upon Wood's Georgia litigation as grounds for exercising its inherent power to revoke his *pro hac vice* admission is similarly improper.   Specifically, the Superior Court relied on the Northern District of Georgia's finding that Wood was not able to establish a factual or legal basis entitling him to the injunctive relief sought in his suit.[87]   The Superior Court entirely ignored the Northern District of Georgia's threshold finding that Wood had not established the required Article III standing for his case to go forward.[88]   The

---

[85] See, e.g. *Bradshaw v. Unity Marine Corp, Inc.*, 147 F.Supp.2d 668 (S.D. Tex. 2001) (Parties' counsel submitted poorly drafted and presented pleadings on motion for summary judgment including citation to non-existent volume of Federal Reporter series.  The District Court did not exercise discretion to find violation of professional rules in that matter.).
[86] Accord, *Crumplar*, 56 A.3d at 1009-10.
[87] See (A0007).
[88] (A0100).

Georgia litigation, thus, was disposed of on procedural grounds.[89] The remainder of the Northern District of Georgia's written decision addressing the merits of Wood's Georgia litigation, was therefore mere dicta.

The Superior Court, however, termed Wood's Georgia lawsuit as "textbook frivolous litigation".[90] The court does not, however, fails to then define or explain why the Georgia litigation is "textbook frivolous litigation".[91] The decision in *Wood, Jr. v. Raffensperger, et al*, does not at any point term the litigation as vexatious, "textbook frivolous", or as being brought in bad faith.[92] No sanctions were issued against Wood nor his counsel nor was Wood directed to pay the defendants' attorneys' fees.[93]

Invoking attorney discipline every time a case were dismissed would have a significant chilling effect on litigation. A case may be dismissed for any number of reasons and it is not a *per se* instance of attorney misconduct as implied by the Superior Court. Though the Northern District of Georgia's decision in *Wood, Jr. v. Raffensberger* was pending appeal, the Superior Court revoked Wood's *pro hac vice* admission on the basis that his filing suit "may violated DRPC 3.1". By contrast, the Georgia trial court did not seek disciplinary action against wood for violation of

---

[89] (A0100); accord U.S. Const. art. III, § 2, cl. 1; *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020).
[90] (A0074).
[91] (A0074 ).
[92] 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020).
[93] *Id*.

a rule of professional conduct therein. Wood's participation in the Georgia litigation was not a violation of Rule 3.1 of the Delaware Lawyers' Rules of Professional conduct.[94]

With respect to the Wisconsin litigation, the Superior Court was further "troubled that an error-ridden affidavit of an expert witness would be filed in support of Mr. Wood's case."[95] Incidentally, the Superior Court mistakenly states that Russell James Ramsland, Jr. submitted a false affidavit in the Georgia litigation in its Rule to Show Cause. The Superior Court conducted no inquiry as to Wood's involvement in drafting and submitting the expert affidavit. In reality, Wood's involvement with the Wisconsin litigation was limited; he was not admitted to practice *pro hac vice* and was only listed as "Counsel for Notice"; he did not at any point file a Notice of Appearance on behalf of any party.[96] The Superior Court is plainly holding Wood accountable for the errors of others directly involved in the litigation. Had Wood been afforded an opportunity to respond orally to the Court's Rule to Show Cause, his *pro hac vice* admission likely would not have been revoked.

Furthermore, the Wisconsin litigation cited by the Superior Court does not cite reference Ramsland's affidavit. The Superior Court made not effort to

---

[94] See, e.g. *Republican Party of Penn. v. Degraffenreid, et al*, 592 U.S.___ (2021), (Thomas, J. dissenting).
[95] (A0074).
[96] (A0050-A0051).

substantiate the basis for its allegation that the Ramsland affidavit contained materially false information, misidentifying the counties as to which claimed fraudulent voting occurred.  Wood was not directly involved in the drafting or submission of the Wisconsin litigation.  Wood, instead, was standby trial counsel if necessary.  Similar to the Georgia litigation, the Wisconsin litigation was dismissed on procedural grounds for lack of standing.  The misidentification of the Ramsland affidavit is only mentioned to demonstrate that individuals acting in good faith make errors, both litigators and lawyers.

Assuming, arguendo, that Wood's conduct in the Wisconsin and Georgia did constitute violations of the rules of professional conduct, the Superior Court lacked the requisite authority to revoke Wood's *pro hac vice* admission on that basis; doing so would be tantamount to the Superior Court conducting an extra-judicial disciplinary proceeding.[97]  Furthermore, none of the conduct which the Superior Court deemed improper happened in the presence of the court or in direct relation to the case before it.  This Court and Delaware trial courts have routinely held that a trial court's inherent power to sanction attorney conduct is limited to misconduct

---

[97] *Crowhorn*, 2002 WL 1274052 a*16 ("It is not for this court to determine if behavior which occurred [in an] unrelated case is *per se* unethical under the Delaware Rules of Professional Conduct.").

which happens in the court's presence, in proceedings related to the case before the court, or to conduct prejudicial to the fairness of the proceeding before it.[98]

2.   <u>Wood was given an inadequate opportunity to respond to the Superior Court's rule to show cause.</u>

Rule 11 of the Delaware Rules of Evidence require that an attorney be given written notice of offending conduct and an opportunity to present evidence and respond thereto when a trial court raises the issue of sanctions *sua sponte*.[99]   The heightened procedural protections are mandated because of the extraordinary nature of the action.[100]   A trial court's *sua sponte* revocation of an out-of-state attorney's *pro hac vice* admission is an equally extraordinary action mandating similar procedural protections.  In the case at bar, Wood was issued a rule to show cause by the Superior Court and required to respond in writing.  Wood did so.  Following Wood's response, the Superior Court took the matter under advisement, and without affording Wood an opportunity to present evidence or respond orally, revoked his *pro hac vice* admission.  The Superior Court then proceeded to deny Wood's motion for reargument.

At no point in the process of responding to the Superior Court's rule to show cause was Wood given a meaningful opportunity to respond.  Wood's written

---

[98] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., v. Stauffer Chem. Co.,* 1990 WL 197864 (Del. 1990); *Ramunno*, 625 A.2d at 250; *Crowhorn*, 2002 WL 1274052 at *15-*16; *Crumplar*, 56 A.3d at 1009; *Sequoia*, 2013 WL 3362056 at *1-*2; *Lendus*, 2018 WL 6498674 at *8.
[99] *Crumplar*, 56 A.3d at 1111-12.
[100] *Id*. at 1010-12.

response to the rule to show cause was given little weight by the presiding judge. This is evidenced in the court's January 11 memorandum order revoking Wood's *pro hac vice* admission.  The court's memorandum opinion disregards *Crumplar*'s mandate that enhanced procedural protections be afforded to an attorney responding to a trial court's *sua sponte* imposition of extraordinary sanctions.[101]

As anticipated in *Mruz*, the Superior Court's January 11 revocation of Wood's *pro hac vice* admission sent a "strong message" and has begun working considerable hardship upon Wood.  Within days of the Superior Court's revocation order being entry, counsel for the defendant in an unrelated matter moved the Eastern District of New York for revocation of Wood's *pro hac vice* admission relying, among other things, upon the Superior Court's January 11 revocation order.[102]  It is precisely occurrences such as this which mandate that this Court extend *Crumplar*'s procedural protections to *sua sponte* actions under Superior Court Civil Rule 90.1(e).

The Superior Court exercised its extraordinary power under Rule 90(e) to revoke Wood's *pro hac vice* admission for what it perceived to be violations of the Rules of Professional Conduct.  Though Wood was given an opportunity to respond, in light of the extraordinary nature of the sanction, that opportunity to respond was procedurally deficient.[103]  Moreover, the Superior Court's revocation of Wood's *pro*

---

[101] (A0073).
[102] (A0140).
[103] *Crumplar*, 56 A.3d at 1111-1112.

*hac vice* admission invaded the province of this Court's exclusive authority to police attorney misconduct with regard to the Rules of Professional Conduct; this despite the Superior Court's acknowledgement that the Office of Disciplinary Counsel and this Court have the sole authority to determine whether violations of the Rules of Professional Conduct have occurred.[104] The Superior Court's exercise of its authority under Rule 90.1(e) neglected that none of Wood's challenged conduct prejudicially disrupted the proceedings before it.

In Delaware, a trial court is justified in revoking an out-of-state attorney's *pro hac vice* admission on motion of a party only where it can be shown by "clear and convincing evidence, that the [behavior] of the attorney in question . . . will affect the fairness of the proceedings in [in the case before it]."[105]   Though *Crowhorn* addressed a trial court's inherent authority to impose Rule 11 sanctions *sua sponte*, the same standard should apply to the Superior Court's exercise of its inherent authority to revoke an out-of-state attorney's admission *pro hac vice sua sponte*. The *Crowhorn* standard of clear and convincing evidence of serious misconduct that is prejudicial to the fairness of the proceedings before the court should not be waived because the sanction is imposed by the Court *sua sponte*.

---

[104] *Infotechnology*, 582 A.2d at 220 ("[T]he Rules [of Professional Conduct] are to be enforced by a disciplinary agency"); *Crumplar*, 56 A.3d at 1009 ("If a trial judge believes an attorney has committed misconduct, referral to the Office of Disciplinary Counsel [. . .] is the proper recourse in the absence of prejudicial disruption of the proceeding."); (A0071) – (A0073).
[105] *Crowhorn*, 2002 WL 1274052 at *15-16.

Here, the Superior Court made no finding by clear and convincing evidence that Wood's continued admission *pro hac vice* would be prejudicial to the fundamental fairness of the proceedings before it, thus making continued admission "inappropriate or inadvisable."[106]  The trial court initially scheduled oral argument for the Rule to Show cause on Wednesday, January 13, 2021 at 9:30 a.m.  However, the Superior Court issued its decision on January 11, 2021 thus depriving Wood of a meaningful opportunity to respond to the Rule to Show Cause orally.  If Wood had been afforded the opportunity to respond orally, the allegations contained in the January 11, 2021 Opinion and Order could have been corrected and be put in proper context.

The Superior Court made no finding by clear and convincing evidence that Wood's continued representation would prejudicially impact the fairness of the proceedings before it.  There was no allegation that Wood acted in an inappropriate fashion in regard to the case before the Superior Court.  Despite making no factual determination as to whether Wood's continued representation of Page would be prejudicial to the underlying litigation, the trial court carried out an extra-judicial disciplinary proceeding to publicly sanction Wood with revocation of his admission *pro hac vice*.  The sanction occurred despite Wood's pending request to

---

[106] Del. Super. Ct. Civ. R. 90.1(e).

withdraw his *pro hac vice* admission.[107]  Granting Wood's request would have obviated the need for the Sanctions Order and complied with the standard this Court sought to enforce making the revocation unnecessary. Instead of granting Wood's request, the trial court sanctioned Wood in a decision that received worldwide media coverage. The sanction was issued without an oral hearing and without a finding of any professional misconduct.

The last portion of the decision pontificates on Wood's "tweets" regarding the 2020 Presidential Election.  Wood was unable to respond to this portion of the decision since the incident took place after the Rule to Show Cause was issued and the trial judge cancelled oral argument on the matter.  The Superior Court's order implies that Wood's "tweets", "and many other things", incited these riots (in reference to the events of January 6, 2021 in Washington D.C.).  Although the court below states it makes no finding regarding this conduct, and it may be considered dicta, an official court decision declaring that Wood's "tweets" no doubt incited the January 6, 2021 riot carries significant weight in the arena of public opinion.  Wood was not able to respond to such a serious and acrimonious allegation.

After the revocation, Wood, now a *pro se* litigant, filed a timely Motion for Reargument on January 19, 2021.  In its February 11, 2021 Memorandum and

---

[107] (A0014).

Order, the Superior Court references in a footnote that Wood failed to file the motion electronically.  However, Wood, as a *pro se* litigant at this point, was not able to file electronically and therefore filed a paper copy.  In addition, the Court states that "Wood's disregard for our Rules is consistent with his practice in other courts, part of the reason his *pro hac vice* status was revoked."

Wood's admission was not revoked for any conduct in the Delaware case. Rather, Wood's admission was revoked after the Superior Court's review of out-of-state decisions involving the 2020 Presidential Election. The Superior Court ignored Wood's *pro se* Motion for Reargument because it was not electronically filed.  The Superior Court abused its discretion by rejecting Wood's *pro se* Motion for Reargument.

33

## **CONCLUSION**

The lower court revoked Wood's pro hac admission based on out of state court actions where no ethical violations were found.  As a result of that decision, not only is Wood's admission to practice in Delaware revoked but sister courts are relying on the Superior Court's January 11 Order to revoke his *pro hac vice* admission elsewhere.

Remand for future hearings is futile as neither opposing counsel nor did the other courts assert misconduct by Wood to support a remedy of revocation.  In the alternative of an outright dismissal of the trial court's revocation decision, this Court should vacate the revocation decision and allow Wood to withdraw his admission *pro hac vice*, hereby rendering the issue moot.

For the foregoing reasons, Appellant L. Lin Wood respectfully requests that this Honorable Court dismiss the January 11, 2021 order of the Superior Court revoking Wood's admission *pro hac vice*.

Respectfully submitted,

/s/ Ronald G. Poliquin, Esquire
Ronald G. Poliquin I.D. # 4447
Marc J. Wienkowitz I.D. # 5965
The Poliquin Firm
1475 South Governors Avenue
Dover, DE 19904
(302) 702-5500

Dated: May 5, 2021

34