UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KING, MARIAN ELLEN
SHERIDAN, JOHN EARL HAGGARD,
CHARLES JAMES RITCHARD, JAMES
DAVID HOOPER, and DARREN WADE
RUBINGH,

       Plaintiffs,

v

GRETCHEN WHITMER, in her official
capacity as Governor of the State of
Michigan, JOCELYN BENSON, in her
official capacity as Michigan Secretary of
State and the Michigan BOARD OF STATE
CANVASSERS,

       Defendants,

CITY OF DETROIT,
       Intervening Defendant,

ROBERT DAVIS,
       Intervening Defendant,

DEMOCRATIC NATIONAL
COMMITTEE and MICHIGAN
DEMOCRATIC PARTY,

       Intervening Defendants.

_____

No. 2-20-cv-13134

HON. LINDA V. PARKER

MAG. R. STEVEN WHALEN

**DEFENDANTS WHITMER
AND BENSON'S BRIEF IN
RESPONSE TO
SUPPLEMENTAL BRIEFS BY
PLAINTIFFS' COUNSEL**

**DEFENDANTS WHITMER AND BENSON'S COMBINED RESPONSE TO
SUPPLEMENTAL BRIEFS FILED BY PLAINTIFFS' COUNSEL [ECF NO.
161 AND ECF NO. 165]**

Dana Nessel
Attorney General

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

Dated:  August 4, 2021

# TABLE OF CONTENTS

Page

Table of Contents.................................................................................. i

Index of Authorities ............................................................................. ii

Concise Statement of Issue Presented ................................................ iv

Introduction .......................................................................................... 1

Argument............................................................................................... 1

I.      This Court can and should grant the State Defendants' motion for
        sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent
        authority................................................................................... 1

        A.      Rule 11 does not control the Court's inherent authority to issue
                sanctions. ...................................................................... 1

        B.      Sanctions are warranted under 28 U.S.C. § 1927. .............. 4

        C.      The nature of the relief requested in this case is relevant to
                whether sanctions are warranted. ..................................... 7

        D.      Plaintiffs' counsel had an obligation to conduct a reasonable
                inquiry into the factual allegations underlying the complaint. ...........10

        E.      The First Amendment does not bar the issuance of sanctions in
                this case. .........................................................................14

Conclusion and Relief Requested.........................................................15

Certificate of Service ...........................................................................16

# INDEX OF AUTHORITIES

Page

**Cases**

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731 (1983) ........................15

*Bush v. Gore*, 531 U.S. 98 (2000) .......................................................... 7

*Chambers v. NASCO,* 501 U.S. 32 (1991) ............................................... 3

*Constantino et al v. City of Detroit, et al.*, Wayne County Circuit Court No. 20-014780 ...............................................................................11, 12

*Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992, at *1 (M.D. Pa. Nov. 21, 2020) .......................................... 8

*Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3rd Cir. 1994) ...............................11

*In re Itel Securities Litigation*, 79 F.2d 672 (9th Cir. 1986) .................................15

*Larsen v. Commissioner of Internal Revenue*, 765 F.2d 939 (9th Cir.1985) ..........15

*Merritt v. Int'l Ass'n of Machinists & Aerospace Workers,* 613 F.3d 609 (6th Cir. 2010) ....................................................................................10

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005) ....................................................14

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642 (6th Cir. 2006) ................................................................................ 5

*Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997) .................................10

*Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368  (6th Cir. 1996) ...............................................................................................11

*Wolfe v. George,* 486 F.3d 1120 (9th Cir.2007) .....................................................15

**Statutes**

28 U.S.C. § 1927 ...................................................................................passim

Mich. Comp. Laws § 168.794a .............................................................. 9

Mich. Comp. Laws § 168.841 ................................................................ 8

Mich. Comp. Laws § 168.879 ................................................................ 9

Mich. Comp. Laws § 168.37 ................................................................. 9

Mich. Comp. Laws § 168.37a ............................................................... 9

**Rules**

Fed. R. Civ. P. 11 ..................................................................... passim

Fed. R. Civ. P. 11(b)(3) ........................................................................ 10

Fed. R. Civ. P. Rule 11(c)(3) ........................................................... 2, 4

Fed. R. Civ. P. 11, 1993 cmts ............................................................... 2

## CONCISE STATEMENT OF ISSUE PRESENTED

1.    Whether Defendants Whitmer and Benson's motion for sanctions should be granted and an award of attorneys' fees entered in favor of the Michigan Department of Attorney General under 28 U.S.C. § 1927 or under the Court's inherent authority to award fees where Plaintiffs' counsel unreasonably multiplied the proceedings in this case and abused the judicial process?

## INTRODUCTION

Defendants Governor Whitmer and Secretary of State Benson (the State Defendants) submit the following combined response to the supplemental briefs filed by counsel Greg Rohl, Scott Hagerstrom, Sidney Powell, and Stefanie Lambert Juntilla.[1]  Plaintiffs' counsels' supplemental briefs opposing sanctions are no more persuasive than their oral arguments before this Court on July 12, 2021, or the prior briefs before that.  After voluminous briefing and ample opportunity to be heard, counsel has not articulated any valid reason why they should not be held to account for filing a patently baseless lawsuit seeking to overturn the 2020 presidential election results in Michigan.  The State Defendants respectfully submit that sanctions against Plaintiffs' counsel are appropriate here.

## ARGUMENT

I.    **This Court can and should grant the State Defendants' motion for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.**

   A.    **Rule 11 does not control the Court's inherent authority to issue sanctions.**

The State Defendants moved for sanctions under 28 U.S.C. § 1927 and alternatively or in addition to the statutory ground, pursuant to this Court's inherent

---

[1] The State Defendants did not specifically seek sanctions against the other counsel.

authority to issue sanctions.  The State Defendants did not file a "Rule 11" motion, although Intervenors Robert Davis and the City of Detroit did so.  *See* Fed. R. Civ. P. 11.

In their supplemental briefs, Plaintiffs' counsel argue that this Court cannot grant the State Defendants' motion for sanctions pursuant to its inherent authority because the "comments accompanying Rule 11 indicate that its *procedures* are controlling when the Court exercises its inherent authority."  (ECF No. 161, PageID.5804 (citing and quoting Fed. R. Civ. P. 11, 1993 cmts) (emphasis in original); *see also* ECF No. 165, PageID.6568.)  Counsel argue that "because the Court did not follow those procedures by issuing a show-cause notice under Rule 11(c)(3) before voluntary dismissal, it cannot impose sanctions under its inherent authority."  (*Id*.; *see also* ECF No. 165, PageID.6568.)

This argument is without merit, if not frivolous.  The 1993 Comments expressly state Rule 11 is not the only vehicle for pursuing sanctions, and specifically note that § 1927 and the court's inherent authority remain grounds for pursuing sanctions.  The comments caution that a court should not rely on its inherent authority if sanctions are appropriate under a specific provision, and further state that Rule 11's procedures for notice and an opportunity to respond "should ordinarily be employed":

> Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. . . . *It does not*

2

> *inhibit the court . . . in exercising its inherent powers*, or *in imposing*
> *sanctions, awarding expenses, or directing remedial action authorized*
> *. . . under 28 U.S.C. § 1927. See Chambers v. NASCO,* 501 U.S. 32
> (1991). *Chambers* cautions, however, against reliance upon *inherent*
> *powers* if appropriate sanctions can be imposed under provisions such
> as Rule 11, *and the procedures specified in Rule 11--notice,*
> *opportunity to respond, and findings--should ordinarily be employed*
> *when imposing a sanction under the court's inherent powers. . . .*

Fed. R. Civ. P. 11, 1993 cmts (emphasis added).  The relevant quote from

*Chambers v. NASCO* states:

> A court must, of course, exercise caution in invoking its inherent
> power, and it must comply with the mandates of due process, both in
> determining that the requisite bad faith exists and in assessing fees . . .
> . Furthermore, when there is bad-faith conduct in the course of
> litigation that could be adequately sanctioned under the Rules, the
> court ordinarily should rely on the Rules rather than the inherent
> power. But if in the informed discretion of the court, neither the
> statute nor the Rules are up to the task, the court may safely rely on its
> inherent power.

501 U.S. 32, 50 (1991).  The take-away is that a court may still award sanctions

pursuant to its inherent authority if other rules are not adequate to remedy the bad

faith, and in doing so a court must afford the non-movant due process, meaning

notice, an opportunity to respond, and fact-finding.  Neither the movant nor the

court must specifically follow the procedures in Rule 11 in order for the court to

exercise its inherent authority to award sanctions.

Here, the State Defendants' motion and briefs provided Plaintiffs' counsel

with notice of the legal basis and facts upon which Defendants sought sanctions.

And Plaintiffs' counsel have had the opportunity to respond to Defendants claims

through their briefing and at the hearing on July 12.  Plaintiffs' counsel have had all the process owed to them.

Finally, even if Rule 11's procedures specifically applied, Plaintiffs' counsels' reliance on § 11(c)(3) is misplaced because the requirement for a show-cause order applies when the court is considering imposing sanctions on its own initiative—meaning sua sponte or without a motion.  Here, the State Defendants filed a motion (after the voluntary dismissal in this case) and § 11(c)(3) is inapplicable.

### B.   Sanctions are warranted under 28 U.S.C. § 1927.

Plaintiffs' counsel again argue that sanctions are not warranted under § 1927 because they did not vexatiously multiple the proceedings.  The thrust of their argument is that because the duration of this lawsuit was short, sanctions are not warranted.  "A proceeding that wraps up in under two months does not qualify for sanctions under 28 U.S.C. § 1927—particularly since the plaintiffs voluntarily dismissed their claims after the Court indicated that they were not meritorious." (ECF No. 161, PageID.5808.)

But counsel cite no case from this circuit or elsewhere that has held that litigation must continue for a specific amount of time before § 1927 becomes applicable.  The duration of the litigation is an element to be considered in determining whether sanctions are warranted but duration alone is not dispositive.

The purpose of § 1927 "is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Sanctions under this provision "require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Id*. (citations omitted). Sanctions under the statute are appropriate when "an attorney ... intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Id*.

While this case was of relatively short duration, it never should have been filed in the first place. And as Defendants have argued in their previous briefs, once this suit was filed, Plaintiffs' counsel perpetuated it longer than they should have. In other words, they were dilatory, and they caused Defendants to incur additional expense as a result. Further, there was a decided element of bad faith to Plaintiffs' counsels' continued maintenance of the litigation where the legal claims lacked merit and the bulk of the requested relief became moot.

Notably, a federal court in Colorado recently granted motions for sanctions filed under Rule 11, 28 U.S.C. § 1927, and the court's inherent authority in an election case filed in that court, including a motion filed by the State Defendants. (Ex A., ECF No. 136, 8/3/21 Opinion, *O'Rourke, et al v. Dominion Voting Systems, et al*, Case No. 20-cv-03747-NRN.) This lawsuit repeated many of the

same claims of fraud and irregularity in Michigan's election that were made here and included similar constitutional claims under the Electors Clause, Equal Protection Clause, and Due Process Clause, along with state law claims.

In a thorough and persuasive opinion, the Court concluded that the plaintiffs' counsel had acted unreasonably in repeating from other unsuccessful lawsuits, including this case, various allegations of fraud and error in the states' elections without conducting their own reasonable inquiry.  (ECF No. 136, pp 52-61.)  The Court further concluded that the plaintiffs' counsels' legal claims were frivolous because they had no good faith basis to believe they had standing to bring this case in light of established precedent and the numerous post-election cases rejecting similar arguments.  (*Id.*, ECF No. 136, pp 49-51.)  The Court also found that counsel had acted in bad faith in bringing their claims.  The Court observed:

> This lawsuit was filed with a woeful lack of investigation into the law and (under the circumstances) the facts. The lawsuit put into or repeated into the public record highly inflammatory and damaging allegations that could have put individuals' safety in danger. Doing so without a valid legal basis or serious independent personal investigation into the facts was the height of recklessness.

(*Id.*, ECF No. 136, p 49.)  There are many parallels between the Colorado case and the instant case.  Indeed, that case only lasted four months and the State Defendants only filed two pleadings in the matter (apart from the sanctions briefs). But the Court concluded that the plaintiffs' counsel had vexatiously perpetuated the action by failing to dismiss the State Defendants.  The Colorado Court's

6

decision supports the granting of sanctions here under § 1927 and this Court's inherent authority.

C.      **The nature of the relief requested in this case is relevant to whether sanctions are warranted.**

Plaintiffs' counsels observe that federal courts have issued injunctions that have impacted elections, citing examples where courts have ordered recounts, new elections, or otherwise enjoined election processes.  (ECF No. 161, PageID.5810-5813; ECF No. 165, PageID.6573-6576.)  The State Defendants do not dispute that federal courts have the authority to grant injunctive relief affecting the conduct of elections.  But the only case of similar scope that Plaintiffs' counsel cite is *Bush v. Gore*, 531 U.S. 98 (2000).  There the U.S. Supreme Court's halt of the Florida recount of the presidential election allowed the previously certified vote results to stand, which had declared former President Bush the winner.  The U.S. Supreme Court did not reject or overturn the certified results of Florida's election or pick a new winner.

But that is what Plaintiffs in this case asked this Court to do. They requested that the Court direct the State Defendants to de-certify the election results and then certify results declaring former President Donald Trump the winner of Michigan's election.  (ECF No. 6, Amend. Compl., PageID.955.)  As other courts observed in similar post-election cases, such relief was unprecedented—and unwarranted.  *See, e.g.*, *Wood*, 2020 WL 6817513, at *13 ("To interfere with the result of an

election that has already concluded would be unprecedented and harm the public in countless ways."); *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078, 2020 WL 6821992, at *1 (M.D. Pa. Nov. 21, 2020) ("This Court has been unable to find any case in which a plaintiff has sought such a drastic remedy in the contest of an election, in terms of the sheer volume of votes asked to be invalidated."), aff'd 830 Fed. Appx. 377, 388 (3d Cir. Nov. 27, 2020) ("[T]he . . Complaint seeks breathtaking relief: barring the Commonwealth from certifying its results or else declaring the election results defective and ordering the Pennsylvania General Assembly, not the voters, to choose Pennsylvania's presidential electors.")

There were other problems with the forms of relief requested. The State Defendants do not certify the statewide results of the election, the Board of State Canvassers does. Mich. Comp. Laws § 168.841. Thus, these Defendants could not de-certify and re-certify results. Plaintiffs asked that the Court enjoin the State Defendants from sending the certified results to the Electoral College, (ECF No. 6, PageID.84-86,) but Governor Whitmer had already done so before Plaintiffs filed suit, which had been reported publicly. The Plaintiffs requested that the Court order the impounding of all voting machines in Michigan. (*Id*., PagedID.86, ¶ 4.) But voting equipment is purchased and maintained by Michigan's over 1,500 local units of government, who were not parties to this action. Mich. Comp. Laws §§

168.37; 168.37a; 168.794a.  Plaintiffs also requested a recount of absent voter ballots, (ECF No. 6, PageID.85, ¶ 8), which cannot be done since in-person and absent voter ballots are not segregated after they are tabulated.  Further, a recount would have been inconsistent with Michigan law that provides a date by which recounts must be requested and completed.  Mich. Comp. Laws § 168.879.  Also, only a candidate can request a recount regarding an office.  Mich. Comp. Laws § 168.879.  Former President Trump or his committee did not request a recount, which would have required the hand-counting of ballots.  The former President's failure to request a recount undermined, if not precluded Plaintiffs' request for any recount.

Further, as argued in the State Defendants prior briefs, much of this relief became moot after the Court denied the injunction or at the latest by the time the electors cast their votes on December 14, 2020.  This is relevant to whether Plaintiffs' counsel unreasonably multiplied this case in violation of § 1927.  Moreover, Plaintiffs' counsels request for this unprecedented and sweeping relief affected every voting jurisdiction in Michigan even though Plaintiffs' purported proofs of fraud or wrongdoing were principally limited to events in Wayne County.  The nature of the relief requested is also relevant in that is shows that Plaintiffs acted vexatiously or in bad faith in pursuing this case for purposes of awarding sanctions pursuant to this Court's inherent authority.

### D.   Plaintiffs' counsel had an obligation to conduct a reasonable inquiry into the factual allegations underlying the complaint.

Plaintiffs' counsel argue that they conducted a sufficient inquiry into the facts of this case, which were principally supported by various affidavits and purported expert reports, and that they should not be sanctioned as a result.  (ECF No. 161, PageID.5815-5819.) They note that other people "in the highest levels of the United States government" shared their beliefs that the affidavits demonstrated fraud, including former President Trump.  (*Id.*, PageID. 5817-5818).

Rule 11 provides that in filing a pleading with the Court, counsel certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).  Rule 11 does not require conclusive proof of causation prior to filing suit.  Instead, "[i]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (citing Fed. R. Civ. P. 11) (Advisory Committee Notes (1993 Amendments)); *see also Merritt v. Int'l Ass'n of Machinists & Aerospace Workers,* 613 F.3d 609, 626 (6th Cir. 2010), ("[T]he reasonable inquiry under Rule 11 is not a one-time obligation ... plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11.") (quoting *Runfola &*

*Assoc., Inc. v. Spectrum Reporting II, Inc*., 88 F.3d 368, 374 (6th Cir. 1996)).

The State Defendants did not move for sanctions under Rule 11, so the particular question of whether Plaintiffs' counsel violated Rule 11 is not applicable to Defendants' motion under § 1927 and the Court's inherent authority. However, the nature of the facts alleged and Plaintiffs' counsels' inquiry into those facts as they alleged in the lawsuit is relevant to resolving the State Defendants' request for sanctions on both grounds. It would be relevant, although not dispositive, to whether Plaintiffs unreasonably or vexatiously maintained this lawsuit under § 1927, and whether they acted in bad faith or with an improper purpose in filing the lawsuit for purposes of the Court's inherent authority review.

Plaintiffs assert that they reviewed various affidavits, but it was also demonstrated at the hearing that other affidavits were not vetted. (7/12/21 Trans, pp 76-80.) Plaintiffs also relied on arguments that were made and affidavits that were filed in *Constantino et al v. City of Detroit, et al*., Wayne County Circuit Court No. 20-014780. (*See, e.g*, 7/12/21 Trans, p 177.) While it may not be impermissible to rely on other counsels' work in another case, it does not relieve the instant counsel of performing their own vetting, *see, e.g*., *Garr v. U.S. Healthcare, Inc*., 22 F.3d 1274, 1278-1279 (3rd Cir. 1994), and counsel should be deemed as being on notice of any opposing affidavits and rulings in the relied upon case. The local defendants in *Constantino* submitted opposing affidavits, including

11

one from Christopher Thomas, who was acting as a consultant for the City of

Detroit and oversaw the events at the TCF Center.  (See ECF No. 31-2,

PageID.2232.)  This affidavit, submitted 12 days before Plaintiffs' filed suit,

addressed many of the inaccuracies or misunderstandings of the affiants in

*Constantino*, that were repeated in this case. (*Id*.)  Further, the state court addressed

certain of these arguments and made credibility findings in its order denying relief

on November 13, 2021.  (ECF No. 31-15, PageID.2438.)

While Plaintiffs' counsel do not have to accept Thomas's affidavit or the

state court's ruling as conclusive, neither are they free to completely disregard

these items.  Both should have put them on notice that Plaintiffs' counsel needed to

look critically at what their affiants were affirming and counsels' need to

investigate and understand the requirements of Michigan's Election Law.  That

does not appear to have happened in this case since the instant complaint and

affidavits simply repeated the same arguments without any acknowledgement.

Moreover, as this Court noted in denying the injunction, (ECF No. 62,

PageID.3326-3328), and at the hearing, (*see*, e.g., 7/12/21 Trans., pp 185-189),

many of these affidavits were simply speculative.  Other defects in various

affidavits became clear at the hearing as well, but it is sufficient to say that

Plaintiffs' counsels' vetting of the various affidavits that supported their factual

allegations was haphazard at best.  Indeed, many of these allegations were

subsequently investigated by the Senate Oversight Committee and found to be

inaccurate or insufficient to demonstrate any fraud.[2]

       To the extent Plaintiffs' counsel believed the affidavits were sufficient

evidence of fraud because other government officials, like the former President,

repeated the same beliefs is unpersuasive to say the least.  In assessing whether the

plaintiffs' counsel in the Colorado case had conducted a reasonable inquiry into the

alleged factual allegations, the Court observed that "it was not enough to merely

accept as true (or potentially true) what might be stated in the media, what had

been pushed out over the Internet, or even what was included in other lawsuits

filed around the country. Some effort at independent verification by the lawyers

who signed the Complaint was required."  (*Id.*, ECF No. 136, p 31.)  With respect

to the plaintiffs' reliance there on claims, allegations, and affidavits filed in other

cases that had all been dismissed or rejected, including this case, the Court

observed that "[g]iven the seriousness of the instant lawsuit, the fact that lawsuits

making the same substantive allegations had failed for lack of likely success on the

merits should have been a strong warning sign to Plaintiffs' counsel that they

needed to do more than just rely on allegations or affidavits filed in other cases."

(*Id.*, ECF No. 136, p 34.)  The Court determined that the plaintiffs' counsel should

---

[2] See Oversight Committee Report on The November 2020 Election in Michigan, available at Oversight Committee Report | Michigan Senate Republicans (misenategop.com).

have been on notice from the prior lawsuits, and that counsel "had a heightened duty of diligence and investigation before filing a copy-job pleading containing the same previously rejected theories and allegations." (*Id.*, ECF No. 136, p 37.)

The Court ultimately concluded that the plaintiffs' counsels' inquiry into the alleged facts was not reasonable under the circumstances and supported sanctions under Rule 11, § 1927 and its inherent authority. (*Id.*, ECF No. 136, p 53.) The Colorado Court's analysis is equally applicable here and this Court should find it persuasive.

### E.    The First Amendment does not bar the issuance of sanctions in this case.

Plaintiffs' counsel Stefanie Lambert Juntilla argues in her supplemental brief that the First Amendment prohibits this Court from sanctioning her because this lawsuit was an effort to petition the Government for redress of grievances, and courts should be wary of sanctioning those who sue the Government. (ECF No. 165, PageID.6563-6566.)

But the State Defendants motion for sanctions is against Ms. Lambert Junttila, not her clients, and Plaintiffs' counsel "retains no personal First Amendment rights" when representing her clients in the courtroom. *Mezibov v. Allen*, 411 F.3d 712, 720-721 (6th Cir. 2005). Thus, Plaintiffs' counsel has no protected right to file or maintain a meritless lawsuit. Unsurprisingly, courts have rejected similar arguments. *See Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461

14

U.S. 731, 743 (1983) ("Just as false statements are not immunized by the First
Amendment right to freedom of speech, baseless litigation is not immunized by the
First Amendment right to petition.") (internal citations omitted); *In re Harper*, 725
F.3d 1253, 1261 (10th Cir. 2013) (First Amendment does not protect the filing of
frivolous motions); *Wolfe v. George,* 486 F.3d 1120, 1125 (9th Cir.2007) ("there is
no constitutional right to file frivolous litigation" (footnote omitted)); *Larsen v.*
*Commissioner of Internal Revenue,* 765 F.2d 939, 941 (9th Cir.1985) ("The right
to petition protected by the First Amendment does not include the right to maintain
groundless proceedings."); *In re Itel Securities Litigation*, 79 F.2d 672, 676 (9th
Cir. 1986) (finding that the petitioner attorney's argument that the First
Amendment guarantees the right of any citizen to present any petition without
penalty is "frivolous").

The First Amendment does not absolve Ms. Lambert Juntilla of her ethical
obligations as a lawyer or insulate her from the imposition of sanctions in this case.

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above and in their prior briefs, Defendants
Governor Gretchen Whitmer and Secretary of State Jocelyn Benson respectfully
request that this Honorable Court enter an Order granting their motion for
sanctions under 28 U.S.C. § 1927 and/or the Court's inherent authority, and award

attorneys' fees in the amount of $11,031.50 to the Michigan Department of

Attorney General.

                                  Respectfully submitted,

                                  Dana Nessel
                                  Attorney General

                                  s/Heather S. Meingast
                                  Heather S. Meingast (P55439)
                                  Erik A. Grill (P64713)
                                  Assistant Attorneys General
                                  Attorneys for Defendant
                                  P.O. Box 30736
                                  Lansing, Michigan 48909
                                  517.335.7659
                                  Email:  meingasth@michigan.gov
                                  P55439
Dated:  August 4, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2021, I electronically filed the above
document(s) with the Clerk of the Court using the ECF System, which will provide
electronic copies to counsel of record.

                                  s/Heather S. Meingast
                                  Heather S. Meingast (P55439)
                                  Assistant Attorney General
                                  P.O. Box 30736
                                  Lansing, Michigan 48909
                                  517.335.7659

16