UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KING, et al.,

        Plaintiffs,

v.

GRETCHEN WHITMER, et al.,          Civil Case No. 20-13134
                                      Honorable Linda V. Parker

        Defendants.,

and

CITY OF DETROIT,
DEMOCRATIC NATIONAL COMMITTEE,
MICHIGAN DEMOCRATIC PARTY,
and ROBERT DAVIS,

        Intervenor-Defendants.
_____/

**<u>OPINION AND ORDER</u>**

On August 25, 2021, this Court issued a decision granting motions for
sanctions filed by Michigan Governor Gretchen Whitmer, Michigan Secretary of
State Jocelyn Benson, and the City of Detroit.  (ECF No. 172.)  In that decision,
the Court found sanctions warranted under Federal Rule of Civil Procedure
11(b)(1), (2), and (3), 28 U.S.C. § 1927, *and* the Court's own inherent authority.
(*See, e.g., id.* at Pg ID 6893-94.)  The sanctions imposed included an award of the
attorneys' fees and costs Governor Whitmer, Secretary of State Benson, and the

City of Detroit "incurred to defend this action."[1]  (*See, e.g.*, ECF No. 172 at Pg ID 6996.)  The Court ordered counsel for Governor Whitmer and Secretary of State Benson (hereafter "State Defendants") and counsel for the City of Detroit ("City") to submit time and expense records within fourteen days of the decision.  (*Id.* at Pg ID 6998.)  The Court permitted Plaintiffs' counsel to submit objections to the requested amounts within fourteen days of those filings.  (*Id.*)

On September 8, 2021, the State Defendants filed documentation requesting a fee award of $21,964.75.  (ECF No. 173 at Pg ID 7002.)  This amount reflects the work of two attorneys: Heather Meingast and Erik Grill, both employed by the Michigan Attorney General's Office.  Ms. Meingast worked a total of 38.55 hours on this matter and seeks to be compensated at an hourly rate of $395.  (ECF No. 173-2.)  Mr. Grill worked a total of 19.25 hours on this matter and seeks to be compensated at an hourly rate of $350.  (ECF No. 173-3.)

On the same date, the City filed documentation asking the Court to award it fees totaling $182,192.  (ECF No. 174-1 at Pg ID 7025.)  This amount is comprised

---

[1] Additionally, the Court referred counsel to the Michigan Attorney Grievance Commission and the appropriate disciplinary authority for the jurisdiction(s) where each attorney is admitted for investigation and possible suspension or disbarment and ordered Plaintiffs' counsel to complete at least twelve (12) hours of continuing legal education in the subjects of pleading standards (at least six hours total) and election law (at least six hours total) within six months of the decision.

of $39,999 for work "defending [this action] at the trial court level"; $26,077 in

charges related to appellate work; and $116,116 for work related to the motions for

sanctions.  (*Id.*)  The amount expended reflects work performed by three partners

at the law firm of Fink Bressack (David Fink, the late Darryl G. Bressack, and

Nathan Fink), three associate attorneys (Dave Bergh, John Mack, and Glenn

Gayer), and a law clerk (Patrick J. Masterson).  (*Id.* at Pg ID 7023.)  Fink Bressack

charged the City the following reduced blended hourly rates for these individuals:

$325 for partners, $225 for associates, and $75 for law clerks and legal assistants.

(*Id.*)  According to David Fink, the firm agreed to discount its fees by an additional

ten percent (10%) "because of the unexpectedly large volume of work involved in

the election litigation[.]"  (*Id.*)

Counsel for Plaintiffs filed objections on September 22, 2021, in which they

indicate that they take no issue with the State Defendants' requested award but

challenge the City's request on several grounds.  (ECF Nos. 175-177.)  The Court

will address each challenge below.[2]

---

[2] Three separate Objections were filed, by: (i) Plaintiffs' attorneys Scott
Hagerstrom, Julia Haller, Brandon Johnson, Howard Kleinhendler, Sidney Powell,
and Gregory Rohl (ECF No. 175); (ii) Plaintiffs' attorney Emily Newman (ECF
No. 176); and (iii) Plaintiffs' attorney L. Lin Wood (ECF No. 177).  Many of
counsel's arguments overlap, although not all.  The Court finds it generally
unnecessary to identify which arguments are asserted by which attorney(s) but will
do so in limited circumstances.

## Standards Applied

"The principal goal of Rule 11 sanctions is deterrence with compensation being a secondary goal." *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992) (citing omitted); *see also* Fed. R. Civ. P. 11(c)(4) (providing that a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."). The Sixth Circuit has advised:

> [i]n determining an appropriate sanction under amended Rule 11, the court should consider the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future. The court should also consider the circumstances of the party or parties who may have been adversely affected by the violation.

*Id.* at 420 (citation omitted). "Like the purpose of Rule 11, the goal of 28 U.S.C. § 1927 [is] not to make a party whole, but to deter and punish." *Tildon-Jones v. Boladian*, 581 F. App'x 493, 498 (6th Cir. 2014) (citing *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (2006)).

In comparison, a sanction imposed under the court's inherent authority must be compensatory rather than punitive. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). Sanctions are "limited to the fees the innocent party incurred solely because of the misconduct . . .." *Id.* at 1184. "In other words, 'the complaining party may recover only the portion of his fees that he would not have

4

paid but for the misconduct.'" *In re Bavelis*, 743 F. App'x 670, 676 (6th Cir. 2018) (ellipsis, brackets, and additional quotation marks removed) (quoting *Haeger*, 137 S. Ct. at 1187).

The Court awarded the State Defendants and the City their *reasonable* attorneys' fees. (ECF No. 172 at Pg ID 6996.) The reasonableness of the fees requested is assessed using the "lodestar method," whereby the court multiplies "the number of hours reasonably expended on the case by a reasonable hourly rate." *See Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar amount is presumed to be reasonable. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). The court may reduce the award "[w]here the documentation of hours is inadequate[.]" *Hensley*, 461 U.S. at 433. The Supreme Court has instructed district courts to also exclude fees not "reasonably expended," such as "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434. A court also has the discretion to adjust that amount based on "relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

## Fees Expended "Defending this Action"

As an initial matter, Plaintiffs' attorneys Emily Newman and L. Lin Wood assert that the City is not entitled to a fee award that includes any hours expended in connection with the motions for sanctions as those efforts were not made to

"defend this action"—the language used in the Court's sanctions decision. Interestingly, the same attorneys do not take issue with the inclusion of the hours Ms. Meingast and Mr. Grill expended on sanctions issues, which the State Defendants included in their request. In any event, to the extent there is confusion as to the Court's intended meaning, it was to include fees incurred by the City and the State Defendants in relation to the motions for sanctions.

### Work on Appeal

In comparison, the Court did not intend to include in its sanction award any fees connected to Plaintiffs' appeal. The Court made clear that it found sanctions warranted for the reasons discussed in its decision "*and not for any conduct that occurred on appeal*[.]" (ECF No. 172 at Pg ID 6992 (emphasis added).) Whether sanctions should be awarded based on Plaintiffs' pursuit of this action beyond the district court level is a decision for the Sixth Circuit Court of Appeals and/or the United States Supreme Court. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409 (1990) (concluding that "Rule 11 does not authorize a district court to award attorney's fees incurred on appeal"); *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 362 (6th Cir. 2007) (holding that a district court may not award the cost of an appeal as part of its sanctions under 28 U.S.C. § 1927).

Therefore, the Court is reducing the City's requested award by the $26,077 in fees related to the appeal.

6

## Disparity Between the State Defendants' and City's Fees

Plaintiffs' attorneys argue that any award to the City must be reduced because the City achieved the same result as the State Defendants, yet its attorneys billed five times that of the State Defendants' counsel. Absent a showing of unreasonableness as to any specific hours billed by the City's attorneys, however, the Court is unpersuaded that the City is not entitled to an award based on the actual hours its attorneys worked on this matter.

As an initial matter, Plaintiffs' attorneys do not point to any caselaw in which courts compared the fees charged by counsel on the same side when analyzing the reasonableness of one of their requests for attorney's fees. While the parties on one side of an action may have obtained the same result, that does not mean the issues focused upon were handled with the same manner or with the same depth. Further, there were issues raised by Plaintiffs' attorneys that specifically concerned only the City. Finally, with limited exceptions discussed *infra*, the Court finds the number of hours billed by the City's counsel unsurprising and not excessive given the complexity of the issues involved in this matter, the quality of the briefing and arguments presented, and the significance of this litigation to our democracy. The City's briefs were well researched and its lead counsel, David Fink, was well prepared to address the varied and sometimes unexpected arguments raised at the sanctions hearing.

7

## Block Billing

Plaintiffs' attorneys argue for a reduction in the City's award due to block billing. The Sixth Circuit has held that as long as the description of the work performed is adequate, block-billing is not contrary to the award of a reasonable attorney fee. *The Northeast Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 705 n.7 (6th Cir. 2016) (citing *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014); *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007) (Moore, J., concurring in part and dissenting in part)). Where counsel engaged in the use of vague block billing, however, courts have made across-the-board percentage cuts in the hours billed. *See, e.g., Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005) (citing cases finding a reduction of 10% or 20% in the number of hours billed by counsel appropriate due to block billing and imposing a 10% reduction).

Plaintiffs' attorneys identify six instances where the City's counsel engaged in block billing. (ECF No. 175 at Pg ID 7103-04.) Plaintiffs' attorneys assert, however, that "[t]he issue with these entries is not block billing; it's the City's choice to bill an *entire day's work* as one entry." (*Id.* at Pg ID 7104 (emphasis in original).) According to Plaintiffs' attorneys, this "makes it difficult to determine whether the time for discrete tasks was reasonable." (*Id.* (citing cases).)

Yet the City's attorneys' "block" entries are neither vague nor general. *But cf. Gratz*, 353 F. Supp. 2d at 939 (reducing the number of hours billed by counsel due to "vague and general entries such as, 'telephone conference,' 'office conference,' 'research,' and 'review article'"). Nor is the use of block billing pervasive in their billing records. *But cf. Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 283 (E.D.N.Y. 2008) (finding a reduction warranted due to the "regular practice" of block billing by almost all of the defendant's attorneys and legal assistants with the "most egregious offenders" block billing on more than 61 occasions); Report & Recommendation, *Potter v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14981 (E.D. Mich. Jan. 30, 2014), ECF No. 167 at Pg ID 15470 (finding "numerous instances of block billing, which also were vague), *adopted in* 10 F. Supp. 3d 737 (E.D. Mich. 2014). While it may have been preferable for counsel to have separately listed the tasks completed and the amount of time each task required, the City should be fully reimbursed for fees charged for the work its attorneys expended where the Court is able to assess whether the total time is reasonable given the number of tasks completed. As the Court is able to do so, it declines to reduce the requested award due to block billing.

## Vague or Duplicative Entries

An attorney's billing records must "describe the work performed *in sufficient detail* to establish that the work is reasonably related to the litigation." *Gratz*, 353 F. Supp. 2d at 939 (emphasis in original and brackets removed) (quoting *In re Samuel R. Pierce*, 190 F.3d 586, 593-94 (D.C. Cir. 1999)). Plaintiffs' attorneys assert that "a number of [the City's attorneys' billing] entries are too vague to determine how they relate to this case", although Plaintiffs' attorneys identify only one entry for 1.25 hours on November 28, 2020.  (ECF No. 175 at Pg ID 7105-06 (quoting ECF No. 174-1 at Pg ID 7029).)  Having reviewed the City's attorneys' billing records, the Court does not find entries, including the one identified, to be so insufficiently detailed that they fail to reflect "that the work was reasonably related to the litigation."[3]

Plaintiffs' attorneys also seek a reduction because more than one attorney billed for the same activities.  As the Sixth Circuit has stated, however, "[m]ultiple-lawyer litigation is common and not inherently unreasonable." *Northeast Ohio Coalition for the Homeless*, 831 F.3d at 704 (citations omitted).

_____

[3] Two entries have short descriptions: (i) a 12/1/20 entry by David Fink for "review of filings in King v. Whitmer" (ECF No. 174-1 at Pg ID 7033) and (ii) a 12/4/20 entry by Darryl Bressack for "review of Order from Judge Parker" (*id*. at Pg ID 7038).  Nevertheless, the work clearly was "related to the litigation" and a review of the docket reflects the "filings" and "order" to which the attorneys refer.

The Sixth Circuit also has stated, however, that while "multiple representation can be productive . . . there is also the danger of duplication, a waste of resources which is difficult to measure." *Id.* (quoting *Coulter v. State of Tenn.*, 805 F.2d 146, 152 (6th Cir. 1986)). Where duplicative efforts are not reasonable, the court may make across-the-board reductions of the hours billed. *Coulter*, 805 F.2d at 152.

Plaintiffs' attorneys identify only four instances where the billing records of the City's attorneys reflect duplicative efforts: (i) review of the Complaint by four attorneys (ECF No. 174-1 at Pg Id 7027-28); (ii) review of the Amended Complaint by three attorneys (*id*. at Pg ID 7030-31); (iii) reviewing and revising the City's Supplemental Brief in Support of Sanctions by two attorneys (*id.* at Pg ID 7094); and (iv) reviewing and preparing the City's response to Plaintiffs' attorneys' supplemental briefs regarding sanctions (*id.* at Pg ID 7095). But this was a complex case which, by Plaintiffs' account, needed to be resolved rapidly. Plaintiffs' Complaint, along with attached exhibits, exceeded 800 pages. (*See* ECF No. 1.) Their Amended Complaint, with exhibits, exceeded 900 pages. (*See* ECF no. 6.) The length of the pleadings alone justifies the contribution of multiple attorneys to sort through Plaintiffs' allegations. Moreover, all attorneys defending a case need to be familiar with the pleadings to adequately assist in the litigation.

11

It was not unreasonable, particularly given the complexity and significance of the litigation, for more than one attorney to prepare and draft briefs.

The number of attorneys billing for these discrete tasks does not warrant a reduction in the City's sanction award.

### "Non-Compensable" Hours

Plaintiffs' attorneys maintain that the time counsel for the City spent on "public relations efforts" and reading the news should be deducted from the fee award. Plaintiffs' attorneys point to: (i) 6.25 hours billed by Darryl Bressack on November 26, 2020 (ECF No. 174-1 at Pg ID 7027); .75 hours billed by Nathan Fink on December 5 (*id.* at Pg ID 7039); and 2.75 hours billed by David Fink on January 3, 2021 (*id.* at Pg ID 7055). None of these hours reflect "public relations efforts." Instead, the first and second reflect time counsel spent reviewing media reports and news articles about the lawsuit. The last reflects time spent reviewing a transcript from a telephone call related to the efforts by former President Trump to overturn the election results in Georgia on the basis of alleged fraud. Notably, none of the entries are only for these tasks.

There are other instances where the City's attorneys billed to review newspaper articles and social media posts related to this case or similar election fraud cases, including some filed by Plaintiffs' attorneys.

- 11/26/20: 3.75 hours billed by David Fink in part for "review of media reports regarding King lawsuit (*see, e.g., id.* at Pg ID 7027);

- 12/4/20: 4 hours billed by David Fink in part for "review of newspaper and magazine articles about Mr. Braynard" (*id.* at Pg ID 7037);

- 12/5/20: .75 hours billed by Nathan Fink in part for "review of news articles regarding pending cases in Michigan and in other states" (*id.* at Pg ID 7039);

- 1/7/21: 1 hour billed by David Fink in part for "review of media reports regarding incitement by opposing counsel (*id.* at Pg ID 7057);

- 1/28/21: 3.75 hours billed by David Fink and 5 hours billed by Darryl Bressack in part for "[r]eview of American lawyer article . . .; review of tweets from Lin Wood; review of social media postings that connect attorneys in Detroit litigation to Capitol mob" (*id.* at Pg ID 7058-59);

- 1/21/21: 1.5 hours billed by Glen Gayer for "[r]eview of social media screenshots regarding [City]'s Reply in Support of Motion for Sanctions; emails to [Darryl Bressack] regarding same" (*id.* at Pg ID 7065);

- 1/27/21: 1.5 hours billed by Glen Gayer in part for "[r]esearch regarding plaintiff's social media posts; email to [David Fink and Nathan Fink] regarding same (*id.* at Pg ID 7068);

- 5/20/21: .75 hours billed by David Fink in part for "review of Washington Post article regarding Ms. Junttila's public statements" (*id.* at Pg ID 7080);

- 6/24/21: .25 hours billed by Nathan Fink in part for "review of media reports regarding [preparing for hearing regarding Motion for Sanctions] (*id.* at Pg ID 7084);

13

- 7/19/21: 2.25 hours billed by David Fink in part for "review of recent Telegram postings by Lin Wood referring to [David Fink]; review of media reports regarding sanctions (*id*. at Pg ID 7091);

- 7/23/21: 2.5 hours billed by David Bergh in part for "review of Plaintiffs' counsel's social media posts (*id*. at Pg ID 7092); and

- 8/5/21: 2 hours billed by David Fink for "[r]eview and response to media inquiries (*id*. at Pg ID 7096).

Time spent on media-related matters might be compensable if necessary for the defense or prosecution of the lawsuit.  *See Potter*, 10 F. Supp. 3d at 750 (citing cases).  With the exception of one billing entry, however, the City's attorneys' media-related tasks were not for the purpose of dispensing information to the public about this lawsuit.  Instead, the attorneys were gathering information relevant to their defense of Plaintiffs' claims and the motives of Plaintiffs and their attorneys in prosecuting this lawsuit, the latter being relevant to the City's request for sanctions.  Reviewing newspaper articles and media posts, which were additional forums Plaintiffs' attorneys used to advance their agenda, was necessary to present counsel's improper motive and purpose in filing this lawsuit (*see* ECF No. 172 at Pg ID 6983-84).  It also uncovered information useful to undermine Plaintiffs' asserted facts and to demonstrate some of the bad faith conduct found in the Court's August 25 decision (e.g., information undermining Joshua Merritt's purported expertise and showing that such information was or should have been known by Plaintiffs' counsel) (ECF No. 172 at Pg ID 6986-88.)

14

The Court finds such efforts to be compensable.

The one exception is David Fink's August 5, 2021 billing for "[r]eview and response to media inquiries." (ECF No. 174-1 at Pg ID 7096.) By that date, the City had filed its motion for sanctions and related supplemental briefing, the motion hearing had been held, and there was nothing to do but await the Court's decision. This is the only entry where counsel was engaged in "public-relations efforts." The Court is excluding those two hours from the sanction award.[4]

### Excessive Billing

Plaintiffs' attorneys maintain that certain hours billed by the City's attorneys are unreasonable, such as the half hour billed on December 1 to read a motion containing three substantive pages and a text-only order (ECF No. 174-1 at Pg ID 7034) and two and a half hours billed on December 23 to review the City's own brief the day after it was filed (*id*. at Pg ID 7052). However, an attorney's "review" of a motion and court order—even if only a text-only order—does not necessarily describe only reading it. The Court does not find the time billed on December 1 excessive. Counsel did not bill two and a half hours on December 23 to only review the City's motion to dismiss after it was filed. (*See* ECF No. 174-1 at Pg ID 7052.) The billing entry also reflects scheduling for the motion and

---

[4] Two hours at an hourly rate of $325, reduced by 10%, or $585.

research.  Nevertheless, billing for a motion already filed appears unreasonable.
As the Court is unable to discern the length of time spent on each task in this entry,
it finds it necessary to remove the total hours from the City's award.[5]

Plaintiffs' attorney, Emily Newman, asserts that additional hours billed are
excessive.  First she points to the 83.25 hours billed between December 23 to
January 5, which she argues was mostly for work on the City's January 5, 2021
motion for sanctions.  Ms. Newman points out that the City already had sought
sanctions in connection with its motion to dismiss and had the benefit of the
research completed for that motion, its opposition to Plaintiffs' motion for
preliminary injunction, and the Court's opinion on this latter motion to assist in the
preparation of its stand-alone sanctions motion.

The City's initial request for sanctions, however, relied only on 28 U.S.C.
§ 1927, did not raise most of the arguments subsequently asserted by the City to
support a sanctions award, and extended over only two and a half pages of the
City's brief.  (*See* ECF No. 73 at Pg ID 3576-78.)  Many of the issues raised in the
City's January 5 motion for sanctions, including the merits of claims on which
Plaintiffs had not based their request for injunctive relief, were not previously
presented nor, presumably, researched.  Further, the City's response to Plaintiffs'

---

[5] Two and a half hours at an hourly rate of $225, reduced 10%, or $506.25.

16

motion for an injunction focused on the lawsuit's legal defects (e.g., standing, laches, mootness) rather than the hundreds of pages of "evidence" attached to Plaintiffs' pleadings, which required extensive hours to sort through and address to support the City's request for sanctions under Rule 11. For these reasons, the Court does not find the hours expended during this time frame excessive.

Ms. Newman also objects to the 40.5 hours billed by the City's attorneys between January 27 and February 4, 2021, mostly to prepare the City's reply brief in support of its motion to dismiss and for sanctions. Ms. Newman finds the time excessive where the City already filed its stand-alone motion for sanctions which, as the Court subsequently indicated, mooted or superseded its earlier request for sanctions. (*See* ECF No. 149 at Pg ID 5267.) Upon reflection, however, the Court was mistaken. As indicated, the City's initial request for sanctions was based on § 1927. Its subsequent motion sought sanctions only pursuant to Rule 11. As such, it was not unreasonable for the City to continue preparing its reply brief in support of its initial motion.

Ms. Newman next contends that the 40.25 hours billed by the City's attorneys between February 5 and May 20, 2021 are excessive because "[a]s of February 5, all claims had been dismissed, and all motions involving the City had been fully briefed." (ECF No. 176 at Pg ID 7120.) The docket undermines Ms. Newman's contentions, however. There were 19 docket entries between those two

dates, which included at least five motions, three response briefs, a supplemental brief, a reply brief, one notice of joinder/concurrence, and six orders.

Ms. Newman next takes issue with the 82.75 hours the City's attorneys billed between June 8, 2021—when the Court issued its notice of hearing for the motions for sanctions—and July 11, 2021—when the hearing was held. Ms. Newman points out that "[t]he only substantive activity [in the case during this period] consisted of preparing for the hearing." (*Id.*) She also points out that the attorneys for the State Defendants billed only 3.5 hours to prepare for the hearing.

The docket reflects, however, that there was more for the City's attorneys to do during this time period than prepare for the hearing. Specifically, two motions were filed and briefed to adjourn the hearing, several attorneys entered their appearances on behalf of Plaintiffs' counsel, the Michigan Senate Oversight Committee issued a 55-page report finding no evidence of widespread or systematic fraud in the election, a motion was filed and briefed regarding the Court taking judicial notice of that report, Plaintiffs' attorneys moved to not appear in person at the hearing, and the Court issued an opinion and order addressing eight motions. Further, the amount of time the State Defendants' attorneys billed for their hearing preparation is not a useful measurement of how much time the City's attorneys reasonably spent. Counsel for the City presented most of the arguments

18

on behalf of the movants during oral argument and responded to the numerous issues raised.  The Court does not find this billing excessive.

Nor does the Court find the 114.25 hours billed by the City from the date of the hearing to August 4 excessive.  Ms. Newman attributes all of these hours to the City's preparation of its supplemental briefs.  Again, the docket reflects more activity after the hearing than that.  For example, Plaintiffs' attorney L. Lin Wood had posted a video from the hearing on social media in violation of the Court's local rules, leading to the filing of an emergency motion (ECF No. 151) and a show cause order issued by the Court (ECF No. 156).  Plaintiffs' attorneys filed an emergency motion asking the Court to publicly release the video.  (ECF No. 152.)  Moreover, Plaintiffs' attorneys raised many arguments for the first time at the July 12 hearing in response to the motions for sanctions, many of which related to the City's Rule 11 motion, not the State Defendants' motion.  Additional new arguments were made (and even new facts asserted) in Plaintiffs' counsel's supplemental briefs.  Counsel for the City reasonably had to expend time responding to these new arguments.

For these reasons, the Court finds the hours expended by the City's attorneys during this period to be reasonable.

### Redactions and Written Revisions

Numerous entries are redacted from the City's attorneys' billing records and hand-written changes have been made to some of the hours billed.  Plaintiffs' attorneys argue that such redactions and revisions inhibit a meaningful review of the time entries.

As an initial matter, the City's attorneys have not billed for any hours where the billing entry is completely redacted.[6]  Therefore, it is insignificant that numerous pages are heavily redacted or that complete entries are concealed.  The handwritten changes to the hours billed reflect adjustments where limited tasks within the entry have been redacted.  Presumably counsel has adjusted the time originally billed to account for these redacted tasks.  The redactions do not prevent the Court from assessing the work done or the City's attorneys' hand-written entry of how long the task took.  Contrary to Plaintiffs' counsel's assertion, it is not difficult to interpret or understand what is claimed by the City's attorneys and to assess its reasonableness.

### Billing in Quarter-Hour Increments

Plaintiffs' attorneys argue for an across-the-board reduction in the hours billed by the City's attorneys due to the latter's use of quarter-hour billing.

---

[6] Based on the Court's calculations, the billing entries total 752.50 hours.  The City's attorneys actually have based their award on fewer (729) hours.

Courts have declined to find the practice of billing in quarter hour increments per se unreasonable. *See Bench Billboard Co. v. Toledo*, 759 F. Supp. 2d 905, 914 (N.D. Ohio 2010)*, aff'd in part, rev'd in part*, 499 F. App'x 538 (6th Cir. 2019) (citing *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 455 (1st Cir. 2009); *Fox v. Vice*, 737 F. Supp. 2d 607, 609 (W.D. La. 2010); *Winterstein v. Stryker Corp. Grp. Life Ins. Plan*, No. C 02-05746, 2006 WL 1071884, at *2 (N.D. Cal. Apr. 24, 2006)). Nevertheless, in some instances, district courts have imposed across-the-board reductions in the hours billed in this manner, reasoning that it is "suspect" and "fee enhancing." *See Bench Billboard Co.*, 759 F. Supp. 2d at 914 (citing cases and imposing a 7.5% reduction for billing in quarter-hour increments); *see also Yellow Book USA, Inc. v. Brandeberry*, No. 3:10-cv-025, 2013 WL 2319142, at *8 (S.D. Ohio May 28, 2013); *Kelmendi v. Detroit Bd. of Educ.*, No. 12-14949, 2017 WL 1502626, at *21 (E.D. Mich. Apr. 27, 2017) (imposing a 5% reduction where the vast majority of the attorneys' time entries were rounded to a half or full hour). In many of those cases, the courts found a reduction warranted because the billing records were replete with quarter-and-half-hour charges for tasks that likely took a fraction of the time (e.g., drafting letters and emails, telephone calls, and intra-office conferences). *Bench Billboard*, 759 F. Supp. 2d at 914; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (affirming the district court's across-the board reduction for quarter-hour billing

21

where the court found the hours "inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time"); *Diffenderfer v. Gomez-Colon*, 606 F. Supp. 2d 222, 229 (D.P.R.), *aff'd* 587 F.3d 445 (1st Cir. 2009) (imposing a reduction where counsel billed by the quarter hour for reading each docket entry and "at least fifty similarly menial items").  In comparison, district courts have declined to reduce charges due to quarter-hour billing where the attorney's time sheets do not reflect entries equating to menial tasks that would require less than fifteen minutes to complete, *Brandenberg v. Watson*, No. 3:10-cv-346, 2011 WL 609796, at *3 (S.D. Ohio Feb. 10, 2011), or when the law firm's regular practice is to bill in this manner, *see, Does I, II, III v. District of Columbia*, 448 F. Supp. 2d 137, 142 (D.D.C. 2006) (collecting cases).

An across-the-board reduction is inappropriate in this case.  When ignoring the billing entries for tasks connected to the appeal—which the Court already has omitted from the sanctions award—the City's attorneys' billing records reflect limited instances where a quarter-hour was billed for tasks that likely took a few minutes.  However, there are 25 instances (notably across 69-pages of billing records), reflecting quarter-hour billing for telephone conferences or emails.  (*See* ECF No. 174-1 at Pg ID 7038, 7048-49, 7053-54, 7059, 7073, 7074, 7077, 7078, 7082, 7085, 7088, 7091, 7092.)  Four of the entries were billed by an associate,

while the remaining entries were billed by partners.  The Court therefore will reduce the City's award accordingly—that is, by $1,738.13.

## Rates Charged

Plaintiffs' attorney L. Lin Wood argues that the $292.50 hourly rate charged for Nathan Fink is unreasonable.  Mr. Fink was admitted to practice in Michigan in 2011.  Mr. Wood points out that the state bar median rate for lawyers practicing six to ten years is only $250.  While true, the mean is $285—not far off from the amount charged for Mr. Fink.  Moreover, the rate charged is below the median hourly rate for civil litigators ($305), attorneys practicing in downtown Detroit ($308), and attorneys practicing in Wayne County ($295).  Lastly, this is a blended rate for all partners, with the remaining two having many more years of experience and for whom a higher hourly rate presumably would have been charged.

## Fees Related to the Motions for Sanctions

Plaintiffs' attorneys (except Ms. Newman and Mr. Wood as indicated *supra*) do not contest the City's request for an award that includes the fees related to its motions for sanctions; however, they do challenge the amount requested as being disproportional to the fees incurred to defend Plaintiffs' claims.  Plaintiffs' attorneys cite to decisions advising that sanctions "should primarily reflect fees incurred as a result of the offensive pleading" (ECF No. 175 at Pg ID 7108) (quoting *Kassab v. Aetna Indus., Inc.*, 265 F. Supp. 2d 819, 824 (E.D. Mich.

23

2003)), or "which directly resulted from the sanctionable conduct" (ECF No. 177 at Pg ID 7126 (quoting *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003)).  This case is not that straightforward.

Here, sanctions were not imposed based solely on a single offensive filing. Nor were sanctions imposed only on the authority of Rule 11.  The Court has found sanctions warranted pursuant to its inherent authority, as well as under § 1927 because Plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings.

As this Court opened its sanctions decision, "[t]his lawsuit represents a historic and profound abuse of the judicial process" and an attempt to "deceiv[e] a federal court and the American people into believing that rights were infringed, without regard to whether any laws or rights were in fact violated."  (Op. & Order at 1, ECF No. 172 at Pg ID 6890).  Plaintiffs' attorneys filed this lawsuit without conducting the required degree of diligence as to the truth of the allegations made or the merits of the legal claims asserted.  Unlike the typical case where sanctions are awarded, more was at risk in this matter than one or even a few defendants having to defend a meritless, repetitive, and/or nuisance lawsuit.  Plaintiffs' counsel "exploited their privilege and access to the judicial process" to file a lawsuit that threatened to undermine the results of a legitimately conducted

24

national election and, more significantly, "the People's faith in our democracy."
(*Id.* at 2-3, Pg ID 6891-92 (emphasis removed).)

In this litigation, "Plaintiffs' attorneys . . . scorned their oath, flouted the
rules, and attempted to undermine the integrity of the judiciary along the way."
(*Id.* at 4, Pg ID 6893.)  And even after this Court issued its decision finding
Plaintiffs' claims barred under multiple legal theories, their counsel "brazenly
assert[ed] that they 'would file the same complaints again.'"  (ECF No. 172 at Pg
ID 6989) (quoting ECF No. 157 at Pg ID 5534).)  "[Plaintiffs' attorneys] ma[de]
this assertion even after witnessing the events of January 6 and the dangers posed
by narratives like the one counsel crafted here."  (*Id.*)  The Court found sanctions
necessary to deter such dangerous behavior in the future.  For these reasons, it was
perhaps as important for the City's counsel to prepare and present their arguments
for sanctions in response to such conduct as it was to present the City's defenses to
Plaintiffs' claims.

To outline the appropriateness of sanctions in this case, counsel had to
address facts and issues not previously briefed extensively or, in some instances, at
all.  And as the Court's 110-page opinion and order granting the sanctions motions
suggests, demonstrating the frivolity of the facts asserted in Plaintiffs' pleadings,
outlining the applicable law regarding the award of sanctions under Rule 11,
§ 1927, and the Court's inherent authority, and applying that law to the

25

circumstances here required a significant amount of time.  As did responding to Plaintiffs' attorneys' constantly shifting arguments and frivolous assertions made and even repeated after being shut down by the Court (e.g., counsel's argument that the First Amendment precluded the imposition of sanctions for their conduct in this litigation).  The number of hours expended by the City's attorneys to do so is not unreasonable.

The Court therefore rejects the objections asserted by Plaintiffs' counsel to the sanctions-related fees.

## Conclusion

Plaintiffs' counsel does not identify, nor does the Court find, a reason to adjust the $21,964.75 fee award sought by the State Defendants.  While the Court finds merit to some of Plaintiffs' attorneys' objections to the $182,192 award sought by the City's attorneys, it rejects most of them.  For the reasons discussed above, the Court reduces the City's award by $28,906.38.  An award to the City of $153,285.62 is an appropriate sanction for the conduct discussed in the Court's August 25 decision, and is an amount the Court finds needed to deter Plaintiffs' counsel and others from engaging in similar misconduct in the future.  Plaintiffs' attorneys, many of whom seek donations from the public to fund lawsuits like this one, *see https://defendingtherepublic.org/*, have the ability to pay this sanction.

Accordingly,

**IT IS ORDERED** that Plaintiffs' attorneys Sidney Powell, L. Lin Wood, Howard Kleinhendler, Gregory Rohl, Stefanie Lynn Junttila, Emily Newman, Julia Z. Haller, Brandon Johnson, and Scott Hagerstrom, jointly and severally, are to pay the following amounts as sanctions within 30 days of this Opinion and Order:

1)    To Defendants Gretchen Whitmer and Jocelyn Benson, the sum of $21,964.75; and,

2)    To the City of Detroit, the sum of $153,285.62.

**IT IS FURTHER ORDERED** that if any party appeals this Opinion and Order or the Court's August 25, 2021 decision, the obligation to pay the above sanctions is **STAYED** pending resolution of all appeals.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 2, 2021