IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MICHIGAN

TIMOTHY KING, MARIAN SHERIDAN, JOHN HAGGARD, CHARLES RITCHARD, JAMES HOOPER, DAREN RUBINGH.

    Plaintiffs,

v.

GRETCHEN WHITMER, in her official capacity as the Governor of the State of Michigan,
JOCELYN BENSON, in her official capacity as Michigan Secretary of State
and
the MICHIGAN BOARD OF STATE CANVASSERS,

    Defendants,

and

CITY OF DETROIT,
DEMOCRATIC NATIONAL COMMITTEE
and
MICHIGAN DEMOCRATIC PARTY,

    Intervenor-Defendants.

Civil Action No. No. 2:20-cv-13134-LVP

## AFFIDAVIT OF JULIA Z. HALLER

I, Julia Z. Haller do hereby state and AFFIRM:

1. My name is Julia Z. Haller. I am over the age of eighteen and have personal knowledge of the facts set forth below.

2. Pursuant to this Court's Order dated August 25, 2021 [ECF 172] and Judgement dated December 2, 2021 [ECF 180], I am required to complete a total of 12 hours of continuing legal education in pleading standards (6 hours) and election law (6 hours) by February 25, 2022.

3. By voluntarily complying with the Court's Order, I do not waive any legal defenses or arguments, including those raised in the pending Appeal of this Court's final Judgement of December 2, 2021. In particular, I am not waiving the fact that I never practiced in this court or applied for admission under L.R. 83.20(d)(2).

4. The Continuing Education Classes ("CLEs") and descriptions are set forth below. Copies of certificates of attendance are provided as an Exhibit to this Declaration.

5. The following CLEs relate to pleading standards:

**The Fundamentals of Pleading Practice in State and Federal Court**
February 19, 2021, National Academy of Continuing Legal Education, nacle.com.
1.2 General credit

> Description: Detailed, precise, and accurate initial pleadings form the cornerstone of your case. From filing the initial writ or complaint to responsive pleadings such as the answer and new matter, each step in the process is crucial. This CLE course will teach you everything you need to know about the initial pleading stages of a case in both federal and state court.
>
> This course will explain what to do, and when to do it at each stage of the initial pleading process. The course covers, state court filings from the initiation of the suit to the filing of a Reply to New Matter as well as the basics of when and how to plead in a third party. The federal component of the course instructs the practitioner on the filing of the initial notice, the Complaint, Answer, and the basics of pleading in third parties.

**Developing Your Case: The Who, What, When, Why and How - 2021 Government Law Institute**
February 23, 2022, DC Bar
1.5 General Credit

Description: Those who attend this session will hear from experienced government litigators who will share tips and best practices for investigating complaints and

filing affirmative civil actions. The presenters will discuss various investigative tools available to government attorneys and the pros and cons of using different tools depending on the stage of investigation or the type of complaint. Those who attend will also learn how to develop a working theory of an affirmative case and the best way to plead a civil action to survive a motion to dismiss or to support a later dispositive motion.

**Judicial Review of Agency Decision Making 2022**
February 8, 2022, DC Bar
3.6 General Credits

Description: Join us for this popular class, during which our faculty experts address the scope of reviewability of agency rules, including the finality and presumption of reviewability; threshold defenses and standing; timing of judicial review, including mootness, ripeness, and exhaustion; statutory construction and regulatory interpretation; scope of judicial review; and remedies.

This class is a must for those attorneys involved in the federal administrative process, either for the government or on behalf of regulated individuals and organizations.

6. The following CLEs relate to election law:

**Election Crimes**
February 19, 2022, DC Bar
1.2 general credit

Description: In the third session of this five-part series, our expert speakers will address election crimes. Those who attend will learn about election-related crimes, including fraudulent registration and voting, issues relating to voting by mail and internet election crimes, and threats to election workers. The panel will share case studies and lessons learned from their experiences prosecuting election crime cases. Among the specific topics the panel will address are

- How to prepare for election cycles and work with elections departments
- How to initiate and carry out an election-related investigation without undermining the integrity of the electoral process

**Vote by Mail, Early Voting and Digitized Election Administration**
February 22, 2022, ABA
2.5 Professional Practice Credits

> Description: Early or convenience voting—the laws, rules, and procedures that allow citizens to cast ballots at a place and time other than at the precinct on Election Day—has grown dramatically in the

3

United States over the past 35 years to a point where it is a permanent part of the American election ecosystem.2 Although—or perhaps because—more than two-thirds of the states (39 plus the District of Columbia) offer some form of early voting, it remains a popular target for election reformers, who often identify higher turnout as a goal and early voting as a tool to reach it. It also continues to be a venue for bitter partisan and legal disputes.

'The digitization of elections has both improved the administration of voting and opened elections to increased vulnerabilities. When the digital revolution first dawned, campaign practitioners, election officials, and policymakers recognized the potential for increased efficiency and accuracy in election administration. Many experts saw digitization in U.S. elections as a tremendous opportunity for candidates to run more sophisticated campaigns and for states to run better elections.1 For example, collecting data about individual voters has allowed campaigns to target them with campaign messages specific to their interests; digitized election administration means more accurate and efficient election management; and leveraging data has revolutionized the efforts of election administrators, nonprofits, and campaigns to get voters to the polls.

At the same time, privacy scholars have debated the possible unintended consequences of data-driven elections—particularly with respect to the data privacy costs associated with targeted campaigning.2 Additionally, experts increasingly observed the potential for discriminatory effects in voter list maintenance methods. The 2016 presidential election further raised awareness of the possibility of cyberattacks and hacking made possible by the digitization of campaigns and voting systems.'

**Hacking Elections: Cyber Threats, Vulnerabilities, and The Way Forward**
February 23, 2022, ABA
1.5 Professional Practice Credits

Description: Cyber Threats to Elections including:
- o Cybersecurity Overview – Ruth Hill Bro
- o Foreign Interference – Suzanne Spaulding
- o Election Ecosystem – Lucy Thomson
- o Cascading Effects – David Turetsky
- o Changing Nature of Threats and Adversary Thinking – Will Carter
- o Election System Reforms

**Supreme Court Review and Preview 2021**
September 22, 2021

4

3.6 General Credits, DC Bar

Description: Our moderator will interview our expert panelists to bring out unique insights and engage them in a point/counterpoint discussion for some of the most interesting cases and issues. Those who attend will also receive insights into the 2020-21 Supreme Court term's highlights. Our distinguished panel includes experienced Supreme Court practitioners who are uniquely qualified to look at the Court's trends and statistics as well as to provide insight into its decisions.

Discussion and materials included on *Brnovich v. Democratic National Committee*, on the last day before its summer recess, the Supreme Court issued a major decision on voting rights that will make it more difficult to contest election regulations under the Voting Rights Act. By a vote of 6-3, the justices upheld two Arizona voting provisions that Democrats and civil rights groups challenged as disproportionately burdening minority voters. In an opinion by Justice Samuel Alito, the majority outlined what it described as "guideposts" for future challenges to voting laws under Section 2 of the Voting Rights Act, which bans racial discrimination in election practices. The court's three liberal justices dissented, with Justice Elena Kagan complaining that Thursday's decision "undermines Section 2 and the right it provides."

One of the provisions at the heart of the case, Brnovich v. Democratic National Committee, is known as the "out of precinct" policy. It requires election officials to throw out an entire ballot if it was cast at the wrong precinct. A voter whose name does not appear on the voting rolls in a particular precinct is allowed to cast a provisional ballot, but if election officials later conclude that she voted in the wrong place, her entire ballot is discarded – even if she was eligible to vote for statewide or national offices, like governor or president, for which her precinct would not matter.

The second provision at issue bans what is sometimes called "ballot harvesting." Enacted in 2016, a state law makes it a felony to collect and deliver another person's ballot (with exceptions for family members, caregivers, mail carriers and election officials).[1]

---

[1] https://www.scotusblog.com/2021/07/court-upholds-arizona-voting-restrictions-limits-cases-under-voting-rights-act/

5

7. I am represented herein by Donald D. Campbell of Collins Einhorn, 4000 Town Center Drive, 9th Floor, Southfield, MI 48075; (248) 351-5426; donald.campbell@ceflawyers.com.

I HEREBY AFFIRM under penalty of perjury that the foregoing is true and correct. Executed on this 24th day of February 2022.

Julia Z. Haller
Law Offices of Julia Haller
601 Pennsylvania Ave., NW
S. Building, Suite 900
Washington, DC 20004
Office: (202) 729-2201
Email: hallerjulia@outlook.com

County/City of Alexandria
Commonwealth/State of Virginia
The foregoing instrument was subscribed and sworn before me this 24 day of Feb 2022, by Julia Haller
(name of person seeking acknowledgement)

Notary Public
My commission expires: 07/31/2025

HERMAN S. BHULLAR
Notary Public
Commonwealth of Virginia
My Comm. Expires 07/31/2025
7918586